**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) | |
| SALES PRACTICES LITIGATION ) | |
| ) | **MDL No: 1840** |
| (This Document Relates to All Cases) ) | |
| ) | **No:07-md-1840-KHV JPO** |
| ) | |

## CONSOLIDATED AMENDED COMPLAINT

Plaintiffs, individually and on behalf of persons and entities similarly situated, by and through the undersigned counsel state and allege as follows:

Pursuant to the Court's August 30, 2007 Scheduling Order No. 1 (Doc. #134), Plaintiffs are filing this Consolidated Amended Complaint solely as an MDL administrative and procedural tool designed to narrow the predominant legal issues common to the underlying cases. As such, this pleading is not intended to, nor should it be construed as, superseding or supplanting the operative Complaints in the constituent actions in this MDL proceeding.

## NATURE OF THE CASE

1. Every day, millions of Americans purchase motor fuel.

2. Plaintiffs and other consumers purchase motor fuel by the gallon (or, in Puerto Rico, by the liter) based on the understanding that they are getting what they pay for in standard units of measure. The reality, however, is that Plaintiffs are not getting what they pay for in retail motor fuel transactions. Instead, each year Plaintiffs are short-changed (and Defendants are correspondingly enriched) in the billions of dollars by the mere fact that the temperature of the fuel sold by Defendants is above 60 degrees Fahrenheit.

3.      The reason for this inequity is that temperature matters.  Motor fuel expands when heated.  A given volume of motor fuel at a higher temperature has less mass and thus less energy than the same motor fuel at a cooler temperature occupying that same volume, *e.g.* the gas tank of a car.  A consumer who buys a gallon of fuel at a warmer temperature unknowingly receives less fuel (fewer molecules and less mass) than a consumer that purchases a gallon of that same fuel at a cooler temperature. The inequity is compounded because when Defendants purchase their fuel from wholesalers, they account for temperature variations by measuring fuel in terms of the U.S. petroleum gallon, the accepted industry standard, which is 231 cubic inches of fuel at 60 degrees Fahrenheit; thus, every time a Defendant sells a Plaintiff fuel at a temperature above 60 degrees, the fuel that the Plaintiff expects to get, but does not receive (because the higher temperature has expanded the fuel), remains with Defendant to sell to other consumers.  Defendants thus reap temperature-inflated profits at Plaintiffs' expense, not by delivering added value, but simply because the fuel is delivered to the Plaintiff at the pump hotter than the industry standard of 60 degrees Fahrenheit.

4.      This impact of temperature upon fuel is not new - it was recognized as early as 1923 by the National Conference on Weights and Measures, an association including representatives from government and the oil industry.  Since 1923, the industry has established methods to compensate for the temperature variations of fuel at every point in the distribution chain, other than when retailers sell to consumers at the pump.

5.      The industry compensates for temperature variations for all sales other than to the consumer by making price and/or volume adjustments based on a universal standard of one gallon at 60 degrees Fahrenheit.  For the consumer, however, even if the fuel is

significantly hotter than 60 degrees Fahrenheit, these well-established methods of temperature compensation are not applied.

6.      Consumers are instead simply given a gallon of fuel measured volumetrically (*i.e.*, 231 cubic inches), with no adjustment in price and/or volume to correct or equalize what they actually receive. So when consumers purchase motor fuel at a temperature above the universal standard of 60 degrees Fahrenheit, they receive less fuel than if they were purchasing that motor fuel at (or adjusted to) the 60 degrees Fahrenheit temperature used by the industry as the benchmark for its own internal transactions.

7.      Sales of motor fuel to consumers at temperatures higher than the industry standard is, in fact, the norm. Recently, the National Institute of Standards and Technology ("NIST") concluded, based on fuel temperature data collected from gas stations in 48 states and the District of Columbia from 2002 to 2004, that the *average* temperature of fuel *across the entire country* was 64.7 degrees Fahrenheit. More importantly, the average fuel temperature for the 29 states and territories involved in this litigation (collectively, "the Region") is above 70 degrees Fahrenheit. It is therefore commonplace for consumers in the Region to receive less motor fuel than what they paid for. At 70 degrees Fahrenheit, Plaintiffs are paying additional billions per year in the Region because retailers are delivering fuel that is, on average, at least 10 degrees higher than the industry standard without making any correction in price and/or volume. Because Defendants fill up Plaintiffs' gas tanks faster when they sell hotter fuel, Defendants profit at Plaintiffs' expense by those billions per year by selling to other consumers the fuel the Plaintiffs believed they had purchased.

8.      In short, on a daily basis, consumers are subjected to millions of unfair sales with inadequate disclosure.  From these transactions Defendants reap billions of dollars in revenue.  As the price of fuel rises, these unfair sales result in an ever-increasing windfall to Defendants at Plaintiffs' expense.  The 64.7-degree Fahrenheit estimate of NIST is only an average for the entire country.  Residents of "hot states", like those in the Region, suffer the brunt of the harms caused by Defendants' unfair practices.  Eighty-four years since this material issue was recognized by the industry, nothing has been done.  At least, not for consumers.

9.      In addition, selling "hot" fuel without any adjustment for temperature effects enables Defendants to generate hidden profits in the form of excess reimbursement for taxes they have paid on their wholesale purchases.  When Defendants pay Federal and State Motor Vehicle Fuel taxes on the gallons they purchase from wholesalers, those gallons are measured on a temperature adjusted basis at 60 degrees Fahrenheit.  However, when Defendants sell the gas at retail to Plaintiffs at a higher, non-adjusted temperature, because of the expansion of the gas they sell more than they bought. On these extra gallons, Defendants claim and receive reimbursement from Plaintiffs for motor fuel taxes, but the tax amounts received from Plaintiffs are greater than the tax amounts Defendants pay to wholesalers – the difference between these two amounts are, in effect, phantom taxes that defendants did not pay, and were not obligated to pay, and that go into Defendants' pockets as pure profit.

## THE PARTIES

10.      The Plaintiffs, whether individuals or business entities, are those named and identified in the lawsuits which have been consolidated before this Court, pursuant to 28

U.S.C. § 1407(a).   For purposes of efficiency and economy, Plaintiffs adopt those paragraphs within each of the underlying transferred actions that further identify the respective Plaintiffs, and incorporate the same by reference, as though fully set forth herein.

11.     Plaintiffs bring these cases individually and on behalf of all other similarly situated persons and entities (the "Class") who purchased gasoline or diesel fuel ("motor fuel") at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the Region, which consists of: Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia, Puerto Rico and Guam.

12.     The Defendants consist of each of the defendants named, and the Defendants Class, and identified in the lawsuits which have been consolidated before this Court, pursuant to 28 U.S.C. § 1407(a).   For purposes of efficiency and economy, Plaintiffs adopt those paragraphs within each of the underlying transferred actions that further identify the respective Defendants, and incorporate the same by reference, as though fully set forth herein.

## FACTUAL ALLEGATIONS WITH RESPECT TO ALL COUNTS

### A.  The Industry Standard Petroleum "Gallon"

13.     As early as 1923, the petroleum industry[1] recognized the effect that temperature has on the expansion and contraction of motor fuel and the corresponding

---

1 As used herein, the term "petroleum industry" is generally used to refer to the entities comprising all levels of U.S. domestic petroleum exploration, production, refining, distribution and sale, including the Defendants.

impact that that expansion and contraction has on a purchaser's ability to accurately assess the true costs incurred in connection with the sale of motor fuel.  That is, a purchaser required to pay purely by the volume of motor fuel received (and without reference to temperature) is subject to the unpredictability and inconsistency arising from the temperature of the fuel at the time of the sale.

14.     Thus, in order to facilitate the free trade of motor fuel by allowing all parties to a transaction to know the true costs associated with the product being sold, the industry decided to standardize the temperature by which to measure the amount of motor fuel sold. In other words, industry members agreed among themselves that fuel, as a fungible commodity, needed to be sold at a specified price per standard unit of measure in order to make the transaction consistent, predictable, and uniform. They did so, but at a designated temperature – 60 degrees Fahrenheit.

15.     This issue was specifically addressed during the 16th Annual Meeting of the National Conference on Weights and Measures ("NCWM") in 1923.  The NCWM is an association that includes representatives from government and the oil industry.  During the 1923 Conference, NCWM member Howard Estes warned that if an adequate system for the temperature correction of petroleum products was not developed, variations due to temperature would destroy the "accuracy of [gasoline] measurement which the NCWM is largely responsible for."  Of note, at the conclusion of the meeting the Acting Chairman of NWCM agreed that, "this matter is of great interest, and the time is rapidly approaching when something will have to be done on the question."

16.     To deal with the issue of temperature expansion the American Petroleum Institute ("API") turned to the National Bureau of Standards (the "Bureau") for assistance.

The Bureau's work resulted in the creation of a petroleum industry standard now known as ASTM-IP D-1250 ("D-1250"), which defines a standard gallon unit of petroleum as 231 cubic inches *at 60 degrees Fahrenheit* ("U.S. petroleum gallon").  Application of D-1250 to petroleum sales is simply a function of adjusting the total sales price to reflect the temperature of the product in relation to the 60 degrees Fahrenheit standard.

17.     For example, under the temperature compensation factors used at the wholesale level, if a retailer purchases 10,000 gallons of motor fuel from a wholesaler at a time when the temperature of the fuel is 90 degrees Fahrenheit, the retailer will only pay the wholesaler for the motor fuel's volumetric amount when the fuel is measured at 60 degrees Fahrenheit – that is, 2,310,000 cubic inches (231 cubic inches x 10,000 gallons). In the absence of temperature adjustment, the retailer would instead have to pay for the temperature-expanded volumetric amount of 10,000 gallons of motor fuel measured at 90 degrees Fahrenheit – that is, 2,357,800 cubic inches (235.78 cubic inches -- the volume of a gallon of gas measured at 90 degrees -- x 10,000 gallons).   Thus, temperature adjustment allows the retailer to pay less for a fixed amount (*i.e.*, mass) of gas than it would have to pay absent such adjustment. But when the retailer sells at the same 90 degrees, or any temperature over 60 degrees,  to the consumer - Plaintiffs and the Class - the retailer makes no adjustment for temperature. And because of that lack of temperature adjustment the consumer pays more for the  fixed amount of gas than he or she  would have to pay were the temperature adjusted as it was when the retailer bought from the wholesaler.

18.     The U.S. petroleum industry and various government agencies have adopted D-1250 and the U.S. petroleum gallon standard:

a.     The United States Department of Treasury, through its Bureau of Customs, which requires imported petroleum products to be declared in gallons of 231 cubic inches at 60 degrees Fahrenheit;

b.     The American Petroleum Institute, which has adopted the definition as a recommended industry standard, API 2540, also called D-1250;

c.     The American Society for Testing and Materials, which has adopted D-1250 as the recommended industry standard;

d.     The American National Standards Institute, which has adopted ANSI 711.83 as the recommended industry standard, which is identical to D-1250; and

e.     The Federal Trade Commission, which has adopted the definition of a gallon as 231 cubic inches at 60 degrees Fahrenheit in 16 C.F.R. § 500.8(B), which is a mandatory standard relating to packaged petroleum products.

19.     Since its adoption of D-1250, the U.S. petroleum industry has made adjustments of petroleum sales based on temperature at every stage of the process, *except* at the retail stage:

a.     When industry members extract crude oil in Venezuela, Alaska, Newfoundland, Sumatra or Saudi Arabia, or elsewhere, they account for it in terms of U.S. petroleum gallons of 231 cubic inches at 60° Fahrenheit.

b.     When industry members ship crude oil to refineries, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

     c.       When industry members distribute crude oil, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

     d.       When industry members refine crude oil, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

     e.       When industry members transport refined motor fuel, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

     f.       When industry members sell petroleum at wholesale, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

     g.       When industry members prepackage petroleum into quart containers, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

     h.       When industry members barrel petroleum into 55-gallon drums, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

     i.       When industry members fill petroleum into container trucks, they account for it in terms of U.S. petroleum gallons at 60° Fahrenheit.

20.    In essence, virtually all aspects of the U.S. domestic petroleum industry have adopted the temperature-compensated U.S. petroleum gallon (231 cubic inches at 60 degrees Fahrenheit) as the universal standard of measurement at every stage *except* at the retail stage.

21.    However, the standards lobbied for and used by Defendants and other members of the petroleum industry in virtually every setting are ignored with respect to retail sales of motor fuel to Plaintiffs and other consumers.  In connection with those retail sales, the amount advertised and sold as a "gallon" – and the corresponding price charged -- depends upon the temperature of the motor fuel.

### B.  The Science Involved

22.     As the petroleum industry realized almost 90 years ago, motor fuel experiences thermal expansion; it expands and contracts with changes in temperature.  This occurs because, as the molecules comprising the motor fuel increase in temperature, they move further apart and are less tightly grouped together.  The opposite occurs when those same molecules are cooled - they move closer together and are more tightly packed.

23.     Thus, when heated, motor fuel will expand in volume.  Likewise, motor fuel will contract in volume when it is cooled.  This expansion and contraction means that a given amount of fuel (*i.e.*, mass) will occupy a greater amount of space at a higher temperature and lesser amount of space at a lower temperature.

24.     For example, if a U.S. petroleum gallon of gasoline (231 cubic inches at 60 degrees Fahrenheit) is heated to 75 degrees Fahrenheit, the gasoline will expand to occupy a volume of 233.39 cubic inches, while the same amount (by mass) of gasoline at 90 degrees Fahrenheit will occupy 235.78 cubic inches.

25.     The energy released from motor fuel is due to the combustion of the individual hydrocarbon molecules within the motor fuel.  The energy content of motor fuel is generally expressed and measured in terms of British Thermal Units ("BTUs"); one BTU is the amount of thermal energy (heat) required to raise the temperature of one pound of water by one degree Fahrenheit.

26.     At a temperature higher than 60 degrees Fahrenheit, 231 cubic inches of fuel will have fewer molecules than 231 cubic inches of fuel at 60 degrees Fahrenheit.  With less molecules (*i.e.*, less mass), the warmer 231 cubic inches of fuel will contain less energy – that is, fewer BTUs – than the cooler 231 cubic inches of the same fuel.

### C.   *Defendants Profit by Selling Non-Temperature-Adjusted Motor Fuel to Consumers*

27.     Consumers purchase motor fuel with the belief that they are getting what they pay for in terms of the intended *use* of the fuel, not simply to acquire a particular *volume* of fuel.  This obvious fact was recognized by the National Bureau of Standards more than fifty years ago with respect to an analogous situation:

> "When we come to discuss the measurement of liquefied petroleum gas, the first thing to be considered is what we want to measure. When a customer purchases a month's supply is he concerned with how much it weighs, how big a swimming pool could be filled with the liquid, or the diameter of the balloon necessary to confine the vapor? Obviously not; *he is interested only in how much heat he can get by burning it.  Satisfactory methods of measurement will give this information; at least, the same number of units of the same kind obtained as the result of measurements at different times or different places, must represent the same amount of fuel* . . . Satisfactory methods of measurement in this industry must not only assure the purchaser that he is getting the commodity he wants at the price he agreed to pay; they should also permit him to compare offers made by different purveyors."[2]

28.     Nevertheless, use of the U.S. petroleum gallon, virtually uniform throughout the domestic petroleum industry, and the equity that it brings to petroleum transactions, stops one step short of the consumer.  Despite the industry- and government-wide adoption of the U.S. petroleum gallon, Defendants continue to use the non-standard, non-temperature-compensated definition of a "gallon" in their measurement of the motor fuel delivered at the retail level.

29.     Instead, the Defendants' retail motor fuel pumps, at least in the U.S., are calibrated to dispense motor fuel in gallons that measure 231 cubic inches in *every* transaction irrespective of the fuel's temperature when it is dispensed, and irrespective of the fact that in dispensing a volumetric gallon of motor fuel when that fuel has a

---

2  *See Report of the Thirtieth National Conference on Weights and Measures*, U.S. Dept. of Commerce, Natl. Bureau of Stds., Misc. Publication M167, pg. 49 (emphasis added).

temperature above 60 degrees Fahrenheit, Defendants are charging consumers more than if they dispensed a U.S. petroleum gallon of motor fuel.

30.     Thus, when Americans fill their vehicles, neither the purchase price they pay nor the amount of motor fuel they receive are compensated to account for the motor fuel lost when that fuel is sold above 60 degrees Fahrenheit.

31.     For example, if one volumetric gallon of gasoline (231 cubic inches) at 60 degrees Fahrenheit is priced at $3.00, a temperature increase of 15 degrees to 75 degrees Fahrenheit will result in an expansion of the gasoline by approximately 2.31 cubic inches. A Plaintiff who purchases a 75-degree gallon of non-temperature compensated gasoline therefore should - but does not - receive an additional 2.31 cubic inches of fuel for every 231 cubic inches dispensed or should have the price of the fuel adjusted accordingly. Because there is no temperature adjustment at the retail level, however, Plaintiffs pay an additional 3 cents for every 231 cubic inches of fuel dispensed at 75 degrees and drive away with less actual fuel (and, therefore, all else being equal, less energy content) than they paid for.

32.     The resulting inequity is obvious.  When the Defendants buy motor fuel on the wholesale market, they buy U.S. petroleum gallons, or "net gallons."  When the Defendants sell motor fuel to consumers, they sell volumetric gallons, or "gross" gallons.

33.     Because the petroleum industry buys on the net and sells on the gross, the industry makes enormous profits when motor fuel is sold at a temperature greater than 60 degrees Fahrenheit.  In essence, the industry is selling something it did not buy: the surplus motor fuel created from buying motor fuel that is temperature-compensated to 60 degrees Fahrenheit and selling motor fuel over 60 degrees Fahrenheit, without such temperature

compensation.  The principles of thermal expansion dictate that in such circumstances, the Defendants will be able to sell more gross volumetric gallons of motor fuel than they purchased on a temperature-compensated basis.

34.     For example, if Defendant X buys 10,000 U.S. petroleum gallons of motor fuel from a terminal, and the motor fuel is warmed and expands 1.5% to 10,150 gallons, Defendant X has an additional 150 gallons of motor fuel to sell to consumers.

35.     The average temperature of motor fuel sold at retail locations in the Region annually in the U.S. exceeds 60 degrees Fahrenheit, and the average temperature of motor fuel sold at Defendants' retail location in the Region exceeds 70 degrees Fahrenheit.

36.     Thus, each year Plaintiffs receive less fuel and are forced to pay more for the motor fuel that they purchase than if the fuel were dispensed using the industry standard U.S. petroleum gallon.

37.     A simple illustration demonstrates the differences this "missing" fuel can have on an average motor fuel purchase and the resulting miles per gallon:



38.     At the retail level, Defendants advertise and sell motor fuel at a specified price per standard unit of measure expressed in "gallons" without expressly defining "gallons."

39.     When a consumer fills his or her tank with motor fuel, the price they pay for a volumetric gallon is not adjusted in price or volume, with the result being that some consumers pay more than would be expected if the motor fuel were measured by the industry standard gallon.

### D.  The Technology to Temperature Compensate at the Retail Pump is Available

40.     Temperature compensation equipment, in effect, automatically adjusts the overall price paid for motor fuel to correspond to the volume of gas that would be purchased if the gas temperature were 60 degrees Fahrenheit.

41.     Temperature compensation equipment has been available for years to ensure that purchasers and sellers are treated fairly and consistently with respect to motor fuel purchases, regardless of temperature.  It has not, however, been adopted for use in the United States at the retail level.

### E.  The Petroleum Industry Has Embraced Temperature Compensation in Canada

42.     The petroleum industry, including Defendants and their representatives, has asserted that temperature compensated retail sales are not feasible or cost-effective.

43.     However, in geographic areas where temperature compensated retail sales are in the industry's economic interest, it has actively sought and facilitated the use of temperature compensation equipment at the retail level.  One such example is Canada.

44.     The average temperature of motor fuel sold annually in Canada is less than 60 degrees Fahrenheit.

45.     Consequently, if the petroleum industry were to sell motor fuel to Canadian consumers on a non-temperature-adjusted basis, the industry would provide Canadian consumers with the benefit of receiving more motor fuel (measured by mass) than they actually paid for.  For example, an amount of fuel occupying 231 cubic inches at 60 degrees Fahrenheit will contract to occupy only 228.69 cubic inches at 45 degrees Fahrenheit.  Thus, if consumers were charged in increments of 231 cubic inches when the temperature of the fuel was 45 degrees Fahrenheit, they would receive the benefit of an additional 2.31 cubic inches of fuel.  Put another way, consumers would get more fuel for less cost.  Accordingly, if the Defendants used the same non-temperature compensated "gallon" in Canada that they use to deliver motor fuel to consumers in the U.S., Canadian consumers would receive the benefit of the transaction at the Defendants' expense, and substantially diminish industry profits.

46.     Unsurprisingly, in Canada the petroleum industry voluntarily has installed automatic temperature compensation equipment at retail pumps.

47.     Thus, the petroleum industry and Defendants' position on installation of temperature compensation depends not on convenience, cost of installation, or any similar factors – it depends solely on whether Defendants will generate hidden profits from the installation and use of the equipment.  Where, as in the Region, the sales of motor fuel over 60 degrees Fahrenheit allow the petroleum industry to earn even higher profits, the industry opposes the use of temperature compensation at retail.  Where, as in Canada, the sales of motor fuel under 60 degrees Fahrenheit reduce industry profits, the industry supports the use of temperature compensation equipment at retail.

### F.  The Petroleum Industry Opposes Retail Temperature Compensation in the U.S.

48.     Because the petroleum industry profits from the sale of hot motor fuel to U.S. consumers, it has resisted efforts to change its longstanding practice of dispensing motor fuel to retail customers in non-standard, non-temperature-compensated "gallons". The industry has opposed efforts to require the installation of temperature compensating equipment at retail fuel pumps.

49.     As early as 1923, there was a movement within state weights and measures officials in the NCWM to require temperature-compensated sales beyond the wholesale level.  Advocating for temperature-compensated sales to distributors, one member at the 16th Annual Meeting of NCWM commented, "the principle of volume change is as old as the hills, but its effect is going to be noticed more and more in the gasoline business because of the increasing volume of business and the eventual rise in price of the commodity."

50.     This comment proved prescient.  As retail gasoline prices began to climb from approximately $.25 in 1920 through the dramatic increases of the 1970s, the industry's failure to adjust motor fuel prices or volumes to account for temperature generated increased governmental scrutiny as it became evident that consumers were buying motor fuel above 60° Fahrenheit which, at higher gas prices, dramatically increased the loss to consumers.

51.     In response, in the early 1970s the petroleum industry justified its refusal to sell temperature compensated motor fuel at retail by citing the costs that would be required to implement temperature correction technology, and by providing flawed temperature

survey data to governmental officials purporting to demonstrate that the overall average temperature of motor fuel sold *throughout the U.S.* was 56 degrees Fahrenheit.

52.     In fact, through its trade association, the American Petroleum Institute ("API"), the industry went so far as to take the position that it was consumers, not the oil companies, who were receiving the advantage of selling non-temperature compensated motor fuel at the retail level.[3]

53.     Less than six (6) years later, in 1979, the API openly conceded that its prior statements were wrong, and that the overall average temperature of motor fuel sold throughout the U.S. was above 60 degrees Fahrenheit.[4]

54.     Having lost the "temperature" battle over a quarter-century ago, the petroleum industry has nevertheless continued to defend its failure to sell temperature compensated motor fuel to consumers by pointing to the alleged costs involved in implementing temperature compensation technology.

55.     And yet, on this front as well, the Defendants have propounded flawed data and information to the public and governmental officials in an effort to bolster their resistance to implementing temperature correction at retail.  For example, in the 1970s the Defendants estimated total replacement costs to be in excess of $6 billion, if temperature adjustment equipment were mandated for each retail motor fuel pump.  Today, with increased scrutiny on this issue from both government and the private sector, industry officials have reduced their estimate to approximately $2.2 billion.

---

3  *Report of the Fifty-Ninth National Conference on Weights and Measures*, 1974, U.S. Dept. of Commerce, National Bureau of Standards, Special Publication 407, page 49.

4  *Symposium on Temperature Compensated Volume in the Sale of Petroleum Products*, National Bureau of Standards, Publication 79-1776, Transcript, page 96.

56.     Furthermore, as members or partners in various trade associations such as the Petroleum Marketers Association of America ("PMMA") and the California Independent Oil Marketers Association ("CIOMA"), Defendants have pressured manufacturers of available automatic temperature compensation equipment and retrofit kits not to sell such equipment in the United States.

57.     As an example, after California recently issued a certificate of use to retail pump manufacturer Gilbarco Veeder-Root for its automatic temperature compensating retail fuel dispensers (which would allow defendants to temperature adjust the fuel they sell to consumers), the Defendants through the PMMA and CIOPA, among others, advised Gilbarco that they did not like Gilbarco's plan to make such equipment available and that it was not a good idea for Gilbarco to sell such pumps in California.  After being pressured by the Defendants, who make up a significant portion of Gilbarco's customer base, Gilbarco announced that it had made a "business decision" not to sell automatic temperature compensation retail dispensing equipment or retrofit kits in the United States.

### G.  *Defendants Know That Consumers Are Unaware of the Problem*

58.     As noted above, the petroleum industry, including many of the Defendants in this case, have *voluntarily* implemented temperature correction technology on 95% of the retail motor fuel pumps in Canada where selling non-temperature corrected motor fuel works to the consumer's advantage and the Defendants' detriment.

59.     When acting as retail sellers of motor fuel in the United States, however, the Defendants have refused to install temperature compensation equipment at their retail outlets.  Moreover, when acting as franchisors, the Defendants control the specifications of

the motor fuel dispensing devices at their franchisees' retail locations and prohibit their franchisees from installing temperature compensation equipment.

60.     The Defendants do not disclose to consumers that the motor fuel being sold in the Region is not being sold in accordance with the industry standard gallon of 231 cubic inches at 60 degrees Fahrenheit.

61.     Furthermore, acknowledging that consumers have been kept uninformed regarding the lost value in motor fuel purchased above 60 degrees Fahrenheit, just within the last few months and since this litigation began, some Defendants, such as Pilot, Shell and Tesoro, have begun placing placards on some retail service station pumps informing consumers that the motor fuel being sold is not temperature adjusted:



62.     Following the initiation of the lawsuits that have been consolidated in this proceeding, industry leader Exxon Mobil also has begun placing placards on retail pumps advising consumers that they are not being provided the benefit of temperature compensated motor fuel:

63.     The Exxon Mobil placard is particularly interesting because it acknowledges a simple fact that the industry has known for more than a century but failed to disclose to consumers or address in terms of sales practices: *"The temperature of motor fuel affects the energy content of each gallon dispensed"* (emphasis added).

64.     In short, these placards merely point out that Plaintiffs and other consumers are not receiving temperature-compensated motor fuel.  They do not provide, however, information necessary for Plaintiffs to make informed purchases of non-temperature compensated motor fuel, such as the actual temperature of the fuel, and Defendants thus far have done nothing to adjust the price at which motor fuel is sold to Plaintiffs when the temperature of the fuel is above 60 degrees Fahrenheit.  Simply informing consumers that they are not receiving a standard U.S. petroleum gallon does nothing to address the problem.

### H.  Defendants' Unfair Receipt of Hidden Profits Under the Guise of Fuel Tax Reimbursements Furthers the Injustice

65.     Motor fuel is subject to a Federal Motor Fuel Tax at a rate of $.184 per "gallon" and diesel fuel is subject to a Federal Motor Fuel Tax at a rate of $.244 per "gallon."

66.     The Federal Motor Fuel Tax is imposed and remitted to the government at the wholesale level.  Retailers pay the Federal Motor Fuel Tax actually imposed and owed either to their suppliers or directly to the government.

67.     The retailers or their wholesale suppliers who owe and must remit the Federal Motor Fuel Tax have the option of using either "net gallons" (*i.e.*, temperature adjusted) or "gross gallons" (*i.e.,* non-temperature adjusted) to calculate the amount of Federal Motor Fuel Tax to be remitted.  Consequently, when motor fuel exceeds 60 degrees Fahrenheit, the motor fuel wholesaler will owe less tax by using the number of temperature-adjusted "net gallons" rather than non-temperature-adjusted "gross gallons" to calculate the amount of Federal Motor Fuel Tax.  Retailers who do not pay the tax directly to the government will calculate what is owed to their wholesaler by using the lesser number of temperature-adjusted "net gallons" rather than the greater number of non-temperature-adjusted "gross gallons" as well.

68.     For example, the Federal Motor Fuel Tax due on 10,000 gallons of non-temperature-adjusted motor fuel at a temperature of 90 degrees is $1,840 (10,000 gallons x $.184).  With temperature adjustment to 60 degrees Fahrenheit, however, the volume of the taxed gas contracts to 9,797 gallons and the amount of Federal Motor Fuel Tax due on the gas is only $1803 (9797 x $.184).

69.     In the end, consumers shoulder the economic burden of the tax as retailers pass this cost down to them at the retail pump because part of the price of a "gallon" of gasoline sold at the pump includes the amount of the Federal Motor Fuel Tax.  Since the government does not impose the Federal Motor Fuel Tax on consumers and because the tax has already been paid at the wholesale level by the retailer to its supplier or directly to the

government, the retailer is allegedly seeking reimbursement from its customers – including the Plaintiffs herein – to recoup its cost for the Federal Motor Fuel Tax previously paid. Indeed, some retailers affirmatively state that a certain amount of the posted price for motor fuel is allocated to fuel taxes through labels attached to the retail pump, such as the following example:



70.     For motor fuel exceeding 60 degrees Fahrenheit that Defendants sold Plaintiffs and the Class, Defendants charged and received from Plaintiffs and the Class an amount alleged to be reimbursement for the Federal Motor Fuel Tax previously paid by Defendants to their suppliers or directly to the government.

71.     However, the amount claimed by retailers to be reimbursement for the Federal Motor Fuel Tax is in fact calculated using the greater number of non-temperature adjusted "gross gallons" rather than the lesser number of temperature-adjusted "net gallons."

72.     Therefore, where, as in the Region, Defendants routinely sold "hot gas" to consumers, Defendants received not only a reimbursement for the Federal Motor Fuel Tax actually owed and paid to the government or their supplier by Defendants, but additional windfall monies as well.

73.     Using the same example described above, the Federal Motor Fuel Tax paid by a retailer on 10,000 gallons of 90-degree gas purchased from a wholesaler is $1803 dollars, because under a temperature-adjustment regime, the tax on that gas is measured as if the gas were only 60 degrees and therefore occupies a volume of only 9797 gallons. However, when Defendants sought to recoup that same tax amount from consumers, the volume of gas to be taxed was measured at a non-adjusted temperature of 90 degrees, making the taxable volume of gas 10,000 gallons (instead of 9797 gallons) and the tax charged    $1840    instead    of    $1803.    In    short, Defendants created their    own monetary windfall of $37.00 by paying $1,803.00 (9,797 gallons x $.184 per gallon) in Federal Motor Fuel Tax but charging to and receiving from Plaintiffs and the Class an amount of $1,840.00 (10,000 x $.184 per gallon) as alleged reimbursement for the Federal Motor Fuel Tax on the same *quantity* of gasoline.

74.     Defendants sell billions of gallons of gasoline a year.  By paying an amount of Federal Motor Fuel Tax using the lesser number of  "net gallons" (60-degree  gallons), and then charging and receiving from Plaintiffs and the Class an amount alleged to be reimbursement for the Federal Motor Fuel Tax based on the larger volume of "gross gallons" (gallons sold at higher temperatures), Defendants not only passed on the amount and economic burden of the Federal Motor Fuel Tax but *created an additional economic burden* for Plaintiffs and the Class (hereinafter the "Windfall").

75.     This Windfall for Defendants and additional economic burden for Plaintiffs and the Class was created entirely by Defendants and enabled them to reap the Windfall of additional monies and profit under the guise of reimbursing or indemnifying themselves for the amount of Federal Motor Fuel Tax they previously paid – but also for an amount they had not paid - all to the economic detriment of Plaintiffs and the Class.[5]

## **CONCLUSION**

76.     Defendants' actions are unfair, unlawful, deceptive, unjust, inequitable and entitle consumers to monetary and injunctive relief:

a.      Whenever the temperature of motor fuel rises above the recognized standard of 60 degrees, consumers are directly harmed because they do not get what they pay for in every transaction, including as to the amount and energy content of fuel purchased; and they are harmed because they pay more in federal and state taxes than required;

b.      Defendants are aware of the monies they unfairly, deceptively, and unjustly have received from Plaintiffs, and have been for more than 80 years;

c.      Defendants receive a windfall when they buy gas temperature adjusted to 60 degrees Fahrenheit, yet sell gas at temperatures over 60 degrees Fahrenheit;

d.      Defendants receive a windfall by seeking excessive reimbursement from consumers under the guise of "fuel tax";

e.      Defendants have actively resisted attempts to require temperature-adjusted

---

5   For purposes of this Consolidated Amended Complaint, it should be noted that the allegations set forth above with respect to the Federal fuel tax are analogous to the claims being made regarding State fuel tax.

retail motor fuel sales and implement automatic temperature compensation technology on retail motor fuel pumps;

f.     The oil industry, including Defendants, use temperature adjustment equipment and methodologies in motor fuel sales involving all levels of fuel distribution except for sales to Plaintiffs and other consumers; and

g.     Defendants who sell motor fuel in Canada embraced the concept of temperature-corrected retail sales in that country because it is to their economic benefit, but vehemently resist the same method of sale in the U.S.

## CLASS ACTION ALLEGATIONS

77.     The cases constituting this MDL proceeding allege class actions on behalf of Plaintiffs and all other similarly situated persons and entities (the "Class") who purchased gasoline or diesel fuel ("motor fuel") at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the Region, as defined above.

78.     By virtue of this action, Plaintiffs and Class members are, and should be considered as, pursuing and alleging all causes of action they have against Defendants arising out of the foregoing factual allegations, regardless of whether such causes of action are expressly stated or set forth herein, and to the extent necessary by applicable law, the specific claims set forth herein are pleaded in the alternative.

79.     The Class referenced above includes all putative Class members residing throughout the Region, and includes millions of individuals and other entities, and therefore the class is so numerous that joinder of all members of the Class would be impractical.

80.     The claims for relief asserted herein on behalf of Plaintiffs and the putative class members present questions of law and fact common to the Class, including:

a.   Whether Defendants sell motor fuel to consumers at temperatures above 60 degrees Fahrenheit in the Region;

b.   Whether "gallon" as that term is used in the retail sale of motor fuel is a standard unit of measure which has a recognized and permanent value, such that the value, including the mass and energy content, in one gallon does not and should not vary and is always the same in every gallon;

c.   Whether, through usage of trade, the term "gallon" in the context of motor fuel sales means the amount of product equal to 231 cubic inches at 60 degrees Fahrenheit;

d.   Whether Defendants' practice of measuring motor fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" is an unfair, fraudulent, deceptive, unlawful or unconscionable practice;

e.   Whether Defendants' practice of measuring motor fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" has harmed Plaintiffs and Class members;

f.   Whether Defendants have been unjustly enriched by seeking excessive reimbursement from their customers to recoup their costs for fuel taxes paid;

g.   Whether Defendants have been unjustly enriched from the sale of non-temperature adjusted motor fuel to Plaintiffs and Class members;

h. Whether Defendants have breached the sales contracts and agreements with Plaintiffs and Class members regarding motor fuel transactions;

i. Whether Defendants have breached the duty of good faith and fair dealing in the motor fuel sales to Plaintiffs and Class members;

j. Whether Defendants have breached the implied and express warranties in the motor fuel sales to Plaintiffs and Class members;

k. Whether Defendants have made misrepresentations regarding the motor fuel sold by Defendants to Plaintiffs and Class members;

l. Whether Defendants have conspired in the acts and omissions set forth herein, including efforts to resist attempts to require temperature adjusted retail motor fuel sales and implement automatic temperature compensation technology on retail motor fuel pumps;

m. Whether Defendants' practice of measuring motor fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" should be enjoined; and

n. Whether Defendants should be required to make Plaintiffs and Class members whole for any harm caused by the Defendants' practice of measuring motor fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" and, if so, in what amount.

81. The claims of the named representative Plaintiffs are typical of the claims of the putative Class in that:

a. Plaintiffs and Class members all purchased motor fuel from one or more of the Defendants within the Region;

b.   The claims of Plaintiffs and Class members have the same essential characteristics; and

c.   The claims of Plaintiffs and Class members arise from the same general course of conduct and are based on the same legal theories.

82.   Plaintiffs, as the representative Plaintiffs for the Class, will fairly and adequately protect the interests of the Class because:

a.   Plaintiffs have knowledge regarding the facts and circumstances that give rise to their claims and the claims of Class members;

b.   Plaintiffs are strongly interested and highly motivated to assert and protect their own rights and the rights of Class members in a vigorous fashion; and

c.   Plaintiffs have retained as class counsel numerous attorneys with substantial experience and expertise in class actions, commercial litigation and business litigation and which have the necessary and requisite resources.   These attorneys will also vigorously assert and protect the interests of Class members.

83.   The questions of law and/or fact common to Plaintiffs and Class members predominate over any questions affecting only individual members of the Class, and a class action as asserted herein is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other elements:

a.   The interests of Plaintiffs and the interests of individual Class members in controlling the prosecution of separate actions are outweighed by the advantages of adjudicating the common issues of fact and law by means of

a class action; individual actions would not be practical considering the relatively small amount of each individual Class members' claim;

b.      Upon information and belief, there are no pending certified class actions concerning the controversy at issue or the claims asserted in this case applicable to Plaintiffs or the Class members set forth herein;

c.      Concentrating litigation of these claims in this forum is desirable because it will prevent and avoid a duplication of effort and the possibility of inconsistent results, and this forum represents an appropriate forum to settle the controversy based on the location of Plaintiffs, the putative Class members, the fact that Defendants do substantial business in this jurisdiction, and the availability of witnesses and evidence; and

d.      Any difficulties that may be encountered in management of the class are greatly outweighed by the difficulties of handling multiple actions by individual class members; this class action is a superior method because it furthers judicial economy and efficiency and is in the best interests of Plaintiffs and Class members.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT-FEDERAL FUEL "TAX"

84.      To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

85.      Defendants have charged to and received from Plaintiffs and the Class more money under the guise of reimbursement for the amount of Federal Motor Fuel Taxes

previously paid by Defendants to their suppliers or government than the amount *actually paid* by Defendants to their suppliers or government in Federal Motor Fuel Taxes.

86.     Plaintiffs and the Class have conferred a monetary benefit on the Defendants in the amount equal to the Federal Motor Fuel Tax Windfall, the difference between the amount Defendants charged to and received from Plaintiffs and the Class as alleged reimbursement for the Motor Fuel Tax previously paid by Defendants to their suppliers or government and the *actual amount* of Federal Motor Fuel Tax paid by Defendants to their suppliers or government.

87.     Defendants have knowledge of and appreciate the monetary benefits conferred on them by Plaintiffs and the Class

88.     As a result of Defendants' acceptance and retention of this monetary benefit under the circumstances referenced above, Defendants have been, and continue to be, unjustly and inequitably enriched to the detriment and expense of Plaintiffs and the Class.

89.     Under principles of equity, good conscience and the cause of action for unjust enrichment, Plaintiffs and Class members are entitled to restitution from Defendants.

## COUNT II
## UNJUST ENRICHMENT-STATE FUEL "TAX"

90.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

91.     Defendants have charged to and received from Plaintiffs and the Class more money under the guise of reimbursement for the amount of State Motor Fuel Taxes previously paid by Defendants to their suppliers or governments than the amount *actually paid* by Defendants to their suppliers or governments in State Motor Fuel Taxes.

92.     Plaintiffs and the Class have conferred a monetary benefit on Defendants in the amount equal to the State Motor Fuel Tax Windfall, the difference between the amount Defendants charged to and received from Plaintiffs and the Class as alleged reimbursement for the State Motor Fuel Tax previously paid by Defendants to their suppliers or governments and the *actual amount* of State Motor Fuel Tax paid by Defendants to their suppliers or governments.

93.     Defendants have knowledge of, and appreciate, the monetary benefit conferred by Plaintiffs and the Class.

94.     As a result of Defendants' acceptance and retention of this monetary benefit under the circumstances referenced above, Defendants have been, and continue to be, unjustly and inequitably enriched to the detriment and expense of Plaintiffs and the Class.

95.     Under principles of equity, good conscience and the cause of action for unjust enrichment, Plaintiffs and Class members are entitled to restitution from Defendants.

## COUNT III
## UNJUST ENRICHMENT - OTHER

96.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

97.     Defendants buy and sell motor fuel among themselves, and with the remainder of the U.S. domestic petroleum industry, on a temperature-compensated basis, and utilize a standard industry definition of a "gallon" of petroleum as 231 cubic inches of petroleum product at 60 degrees Fahrenheit.

98.     Defendants recognize that temperature-compensated sales are the only equitable and fair method to buy and sell petroleum products, including motor fuel, due to the thermal expansion properties of liquids, including petroleum.

99.     Defendants do not sell motor fuel to consumers, including Plaintiffs and the Class, on a temperature-compensated basis and utilize a volumetric-only definition of a "gallon" as 231 cubic inches of petroleum product, without adjustment for temperature.

100.    In the Region, the average temperature of motor fuel sold by Defendants to Plaintiffs and Class members exceeds 60 degrees Fahrenheit.

101.    Defendants' refusal to sell on a temperature-compensated basis in the Region results in every 231 cubic inches of motor fuel sold to Plaintiffs and the Class having a lesser quantity of fuel and, thus, reduced product performance compared to what Plaintiffs and the Class would have received if such motor fuel was sold at 60 degrees Fahrenheit.

102.    As a result of the reduced amount of fuel in every 231 cubic inches of motor fuel sold by Defendants in the Region that is in excess of 60 degrees Fahrenheit, Plaintiffs and the Class are required to purchase more motor fuel from Defendants to obtain the same functional performance they would have received if such motor fuel was sold using Defendants' definition of a "gallon" as 231 cubic inches of petroleum product at 60 degrees Fahrenheit.

103.    Accordingly, due to the expansion of motor fuel referenced above, Defendants unfairly and unlawfully profit from the sale of motor fuel to Plaintiffs and the Class in the Region.

104.    Thus, Plaintiffs and the Class conferred a monetary benefit on Defendants.

105.    Defendants have knowledge of, and appreciate, this monetary benefit conferred by Plaintiffs and the Class.

106.    Defendants, through their refusal to sell temperature-compensated motor fuel to Plaintiffs and the Class, and through the other allegations herein, have created, accepted and retained the monetary benefit conferred by Plaintiffs and the Class.

107.    As a result of Defendants' acceptance and retention of this monetary benefit under the circumstances referenced above, Defendants have been, and continue to be, unjustly and inequitably enriched to the detriment and expense of Plaintiffs and the Class.

108.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class were, and will continue to be, damaged in an amount that has not yet been determined.

109.    Under principles of equity, good conscience and the cause of action for unjust enrichment, Plaintiffs and the Class members are entitled to restitution from Defendants.

## COUNT IV
## BREACH OF CONTRACT

110.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

111.    Many commodities are sold in variable quantities.

112.    When commodities are sold in variable quantities, they are typically sold at a specified price per standard unit of measure, which means generally that a standard unit of a particular commodity is fungible or, in other words, freely interchangeable with any other such unit of that same kind or grade.

113.    Trading of such fungible commodities at a specified price per standard unit of measure brings consistency, predictability and uniformity to transactions in that commodity.

114.    A standard unit of measure has a recognized and permanent value, such that the amount of any given commodity contained in a standard unit of that commodity is always the same.

115.    The price of a fungible commodity in a given transaction would have little if any relevance or meaning beyond that specific transaction if the price were not expressed in terms of a price per standard unit because market participants would have no reliable means of comparing the costs and benefits of any given transaction for that commodity with any other transaction for the commodity.

116.    Trading at a specified price per standard unit of measure is indispensable to a functional market for fungible commodities sold in variable quantities.

117.    For instance, the practice enables merchants to standardize their product pricing, enabling them to deliver equal amounts of a commodity at uniform prices and to compare their own prices with those of their competitors.

118.    The practice similarly enables buyers to compare pricing of various merchants, as well as to gauge from transaction to transaction whether they are paying more, less or the same for the commodity.

119.    For these reasons, the expression of a sale of a commodity in terms of a specified price per standard unit of measure has come to mean or imply that such units are fungible (*i.e.*, freely interchangeable).

120.    Motor fuel is a fungible commodity sold and purchased in variable quantities.

121.    At the retail level, Defendants advertise and sell motor fuel at a specified price per a standard unit of measure expressed in gallons.

122.    Members of the Class purchased motor fuel from Defendants at their retail outlets.

123.    Each time a Class member and one of the Defendants agreed to a sale of motor fuel, they mutually agreed that the Class member would pay a specified price per a standard unit of measure expressed in gallons, and, conversely, that Defendants would deliver motor fuel measured by that same standard unit expressed in gallons.

124.    Because Defendants advertise and sell motor fuel at a specified price per a standard unit of measure and because the expression of a sale of a commodity in terms of a specified price per standard unit of measure has come to mean or imply that such units are fungible (which is to say freely interchangeable), a term of the parties' agreement was that the "gallons" of motor fuel class members purchased from Defendants would be fungible gallons of motor fuel such that one unit of the same kind or grade would be freely interchangeable with any other like unit of the same kind or grade of motor fuel.

125.    Consequently, each time a Class member and a Defendant agreed to a sale of motor fuel, the parties mutually agreed that the Class member would pay a specified price per a unit of measure which has a recognized and permanent value, such that the amount of motor fuel contained in that standard unit would not vary and would always be the same.

126.    In other words, the parties implicitly agreed that every gallon of motor fuel sold and purchased would not vary and would contain the same amount of motor fuel.

127.    None of the Class members' agreements with any Defendant for the purchase of motor fuel included an express definition of "gallon."

128.    Because a "gallon" defined volumetrically without reference to temperature is not a standard unit of measure, such a "gallon" was not a "gallon" within the meaning of the parties' agreements for the sales of motor fuel at a specified price per gallon.

129.    Because of the regularity of observance in the petroleum industry of the definition of a "gallon" of motor fuel and because there is no other standard "gallon" unit commonly used to measure quantities of motor fuel, each time a Class member agreed to purchase motor fuel at a specified price per gallon, the Class member and the Defendant with whom he or she contracted implicitly agreed to the sale of the motor fuel at a specified price per industry standard gallon (defined as that amount of motor fuel which occupies 231 cubic inches when its temperature is 60 degrees Fahrenheit).

130.    Each time Defendants delivered motor fuel to a Class member, it delivered "gallons" (and/or fractions thereof) of motor fuel as measured volumetrically without reference to temperature.

131.    Each time Defendants delivered motor fuel to Plaintiffs or a Class member in "gallons" (and/or fractions thereof) measured volumetrically without reference to temperature, the amount of motor fuel Defendants delivered per "gallon" (and/or fractions thereof) varied depending upon the temperature of the motor fuel.

132.    As a result, each time Defendants delivered motor fuel to Plaintiffs or to a Class member when the temperature of the motor fuel was greater than 60 degrees

Fahrenheit, Defendants delivered less motor fuel to Class members than that for which Class members paid and were entitled to receive and less motor fuel than Defendants were contractually required to deliver.

133.    Consequently, each time Defendants delivered motor fuel to a Class member when the temperature of the motor fuel was greater than 60 degrees Fahrenheit, Defendants breached their contracts for sale of motor fuel with Class members.

134.    Defendants' breach of contract proximately caused Class members to sustain substantial losses in an amount to be proved at trial.

## COUNT V
## DUTY OF GOOD FAITH AND FAIR DEALING

135.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

136.    As set forth above, Plaintiffs and Class members entered into individual sales transactions and agreements with Defendants for the purchase of motor fuel pursuant to which, Plaintiffs and Class members agreed to purchase, at the prevailing posted rate, motor fuel from Defendants.

137.    Plaintiffs and Class members have fully performed their obligations with Defendants under such transactions and agreements.

138.    At all times, Defendants owed Plaintiffs and Class members a duty to exercise and act in good faith and to deal fairly with them in the performance of such sales transactions and agreements.

139.   Defendants were obligated to observe reasonable commercial standards in the sale of motor fuel to Plaintiffs and Class members, including the sale of uniform amounts of motor fuel capable of generating uniform and equivalent amounts of energy.

140.   Defendants breached these duties and obligations in the manner and the particulars set forth above, including but not limited to:

a.     Defendants' failure to sell motor fuel on a temperature-compensated basis using the petroleum industry standard definition of a "gallon" as 231 cubic inches at 60 degrees Fahrenheit;

b.     Defendants' failure to inform and notify Plaintiffs and the Class that they were not selling motor fuel on a temperature-compensated basis, and

c.     Defendants' seeking reimbursement in excess of the amount of fuel taxes they actually paid to wholesalers when they bought the gas.

141.   As a direct and proximate result of Defendants' failure to abide and comply with their obligations and duties, Plaintiffs and Class members have suffered pecuniary damages in an amount that has not yet been determined.

## COUNT VI
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

142.   To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if more fully set forth herein.

143.   Gasoline is a "good," and as such, its sale is governed by the provisions of the Uniform Commercial Code.

144.   As set forth above, Plaintiffs and Class members entered into individual sales transactions and agreements with Defendants for the purchase of motor fuel.

145.    Pursuant to such sales transactions and agreements, Plaintiffs and Class members agreed to purchase, per gallon, at the prevailing posted rate, motor fuel from Defendants that consisted of certain energy producing characteristics, including a particular uniform quantity of fuel, and Defendants agreed to sell such motor fuel that possessed such characteristics.

146.    As merchants, Defendants impliedly warranted that the motor fuel was merchantable; would pass without objection under contract description; was of even kind, quality and quantity within each unit and among all units; and conformed to the promises, affirmations and descriptions at the pump site.

147.    In addition, Defendants knew, or had reason to know, that at the time of such motor fuel purchases Plaintiffs and Class members were relying on Defendants' skill, judgment, and/or superior knowledge to select or furnish suitable motor fuel that was sufficient for the intended use by Plaintiffs and Class members (i.e., as a fuel to power an internal combustion engine), and which did not contain decreasing quantities of fuel and energy content per volumetric unit, when sold at temperatures in excess of 60 degrees Fahrenheit.

148.    Plaintiffs and Class members have fully performed their obligations with Defendants under such transactions and agreements.

149.    Defendants breached their duties under the Uniform Commercial Code, including but not limited to the express warranties of U.C.C. § 2-313 and the implied warranties of U.C.C. § 2-314, in that the motor fuel sold by them to Plaintiffs and the Class in the Region did not conform to the qualities, quantities and characteristics warranted by Defendants.

150.    As a direct and proximate result of Defendants' failure to comply with their warranties, express and implied, Plaintiffs and Class members have suffered pecuniary damages in an amount that has not yet been determined.

## COUNT VII
## MONEY HAD AND RECEIVED

151.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

152.    Through the sales transactions, contracts and agreements referenced above, Plaintiffs and Class members purchased motor fuel from, and paid money to, Defendants.

153.    Through the excess reimbursement of purported fuel "taxes," and the excess amounts paid by Plaintiffs and Class members due to Defendants' refusal to sell motor fuel on a temperature-compensated basis, Defendants have unlawfully and inequitably received or obtained possession of, excess money from Plaintiffs and Class members from such motor fuel sales.

154.    Defendants have unlawfully and inequitably benefited from the receipt of such money.

155.    In equity and good conscience, such monies rightfully belong to Plaintiffs and Class members.

156.    Defendants are obligated to make restitution to Plaintiffs, and pay over, such monies.

157.    As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have suffered pecuniary damages in an amount that has not yet been determined.

## COUNT VIII
## CONVERSION

158.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if more fully set forth herein.

159.     Defendants have received a windfall by seeking excess reimbursement  from Plaintiffs and Class members under the guise of fuel "taxes," and by refusing to sell motor fuel to Plaintiffs and Class members on a temperature compensated basis.

160.     The monies due and owing to Plaintiffs and Class members are now in the possession and under the control of Defendants, who have not attempted to return such amounts and otherwise acted with intent to continue to exercise control over such funds.

161.     Defendants have taken such monies for their own use and benefit, to the exclusion of Plaintiffs and Class members, thereby permanently depriving Plaintiffs and the Class of the use and benefit of the same.

162.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class have, and will continue to, suffer pecuniary damages in an amount not yet determined.

## COUNT IX
## FRAUDULENT MISREPRESENTATION

163.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

164.     The  Defendants  knowingly,  or  with  reason  to  know,  made misrepresentations to Plaintiffs and Class members, including but not limited to:

a.     Delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit and in non-standardized units, while concealing and remaining intentionally silent as to the consequences and/or ramifications of the absence of temperature compensation;

b.     Expressly advertising to Plaintiffs and Class members motor fuel unit prices in terms of the standard unit of a "gallon," when in fact Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically, without reference to temperature;

c.     Concealing, suppressing and omitting willfully that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

d.     Concealing, suppressing, omitting willfully, and/or failing to disclose that the standard U.S. Petroleum Gallon in the motor fuel industry, at all levels of distribution except the retailer-to-consumer level of distribution, is 231 cubic inches at 60 degrees Fahrenheit;

e.     Concealing, suppressing, omitting willfully, and failing to disclose that the amount of motor fuel sold by Defendants varies materially according to its temperature;

f.     Concealing, suppressing, omitting willfully, and/or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to actually reimburse Defendants for the taxes Defendants had paid;

g.     Concealing, suppressing, omitting willfully, and failing to disclose that, due to the diminished amount of motor fuel, each volumetric gallon of motor fuel sold by Defendants at the retail level, when sold at a temperature above 60 degrees Fahrenheit, provides reduced product performance than the product performance of a standard U.S. Petroleum Gallon, such as those the Defendants would purchase;

h.     Concealing, suppressing and omitting willfully that the term "gallon" used by Defendants in the sale of motor fuel to consumers at the retail level of distribution is not a standard unit of measure.

i.      Concealing, suppressing, omitting willfully, and failing to disclose that the amount of fuel taxes paid was less than the amount sought for reimbursement by Defendants from Plaintiffs and the Class.

165.    The misrepresentations by Defendants were material facts, and influenced Plaintiffs' decision to purchase motor fuel from Defendants.

166.    Defendants made these representations to Plaintiffs and Class members with the knowledge that such representations were false and misleading, or in the alternative, made such representations with reckless disregard for the truth of the representations.

167.    Defendants intended to do the aforementioned acts and intended that Plaintiffs and Class members would rely on Defendants' representations, concealments, suppressions or omissions in the purchase of hot motor fuel.

168.    As a direct and proximate result of Defendants' actions, omissions and fraudulent representations, Plaintiffs and Class members have suffered pecuniary damages in an amount net yet determined.

**COUNT X**
**NEGLIGENT MISREPRESENTATION**

169.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

170.    In the alternative to the Count set forth above, Defendants negligently made misrepresentations to Plaintiffs and Class Members, including but not limited to:

a. Expressly advertising to Plaintiffs and Class members motor fuel unit prices in terms of the standard unit of a "gallon," when in fact Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

b. Failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

c. Failing to disclose that the standard U.S. Petroleum Gallon in the motor fuel industry at all levels of distribution, except the retailer-to-consumer level of distribution, is 231 cubic inches at 60 degrees Fahrenheit;

d. Failing to disclose that each volumetric gallon of motor fuel sold in excess of 60 degrees Fahrenheit by Defendants at the retail level contains a lesser amount of motor fuel than the standard U.S. Petroleum Gallon;

e. Failing to disclose that each volumetric gallon of motor fuel sold in excess of 60 degrees Fahrenheit by Defendants at the retail level

provides reduced product performance than the standard U.S. Petroleum Gallon;

f. Failing to advise that the ultimate product performance/energy content of motor fuel sold by Defendants varies materially according to its temperature; and

g. Concealing, suppressing, omitting willfully, and failing to disclose that the amount of fuel taxes paid was less than the amount sought for reimbursement by Defendants from Plaintiffs and the Class.

171. The misrepresentations by Defendants were material facts, and influenced Plaintiffs' decision to purchase motor fuel from Defendants.

172. Defendants made such representations to the Plaintiffs and the Class members because Defendants failed to exercise reasonable care or competence to obtain or communicate the truth.

173. Plaintiffs reasonably relied on the representations made by Defendants.

174. As a direct and proximate result of Defendants' actions, omissions and negligent misrepresentations, Plaintiffs and Class members have suffered pecuniary damages in an amount net yet determined.

## COUNT XI
## CIVIL CONSPIRACY

175. To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

176. Defendants, and each of them, had actual or constructive knowledge of the properties and characteristics of motor fuel as set forth above, including but not limited to:

a.   Knowledge that the sale of motor fuel to Plaintiffs and Class members in volumetric gallons at a temperature above 60 degrees Fahrenheit was deceptive;

b.   Knowledge that the sale of motor fuel to Plaintiffs and Class members in volumetric gallons at a temperature above 60 degrees Fahrenheit was unconscionable;

c.   Knowledge that the sale of motor fuel to Plaintiffs and Class members in volumetric gallons at a temperature above 60 degrees Fahrenheit was not in good faith;

d.   Knowledge that the sale of motor fuel to Plaintiffs and Class members in volumetric gallons at a temperature above 60 degrees Fahrenheit was a breach of contract;

e.   Knowledge that the sale of motor fuel to Plaintiffs and Class members in volumetric gallons at a temperature above 60 degrees Fahrenheit was contrary to the accepted petroleum industry practice of measuring and selling motor fuel using a temperature-corrected, standardized gallon measurement, and

f.   Knowledge of the rights of Plaintiffs and Class members regarding such sales, and that such sales would cause pecuniary damage to Plaintiffs and Class members, all as set forth above.

177.   Defendants, and each of them, with intent to unlawfully deprive Plaintiffs and Class members of rights and property, combined, agreed and came to a meeting of the minds on an unlawful course of action to unlawfully deprive Plaintiffs and Class members

of such rights and property, by selling motor fuel to Plaintiffs and Class members on a non-temperature compensated basis, and by refusing to implement automatic temperature compensation technology.

178.   In furtherance of, and pursuant to, their unlawful plan, scheme and agreement, Defendants committed the acts set forth above, including but not limited to their continuation of non-temperature compensated motor fuel sales in the Region, such acts being unlawful, and did unlawfully deprive Plaintiffs and Class members of their rights and property.

179.   In furtherance of, and pursuant to, their unlawful plan, scheme, and agreement, Defendants conspired and acted in concert, both amongst themselves and with third parties such as the California Petroleum Marketers Association and other similarly-situated state and national entities/organizations, so as to exert undue pressure and influence upon various manufacturers and other proponents of temperature compensation at the retail level, in order to further facilitate their continued unlawful and improper course of conduct.

180.   As a direct and proximate result of the unlawful actions taken by Defendants in furtherance of their plan and scheme, Plaintiffs and Class members have suffered damages in an amount that has not yet been determined.

## COUNT XII
## FRAUDULENT CONCEALMENT

181.   To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

182. Defendants publicly represented that certain moneys of every actual gallon of motor fuel sold to Plaintiffs and the Class members were being remitted to the federal, state, and local governments as fuel taxes and that such sums were a requisite and fixed component of the price of such motor fuel when, in fact, Defendants were, and are, retaining a significant portion of such moneys collected from Plaintiffs and the Class as excess reimbursement for the taxes Defendants actually paid.

183. Defendants omitted and failed to provide Plaintiffs and Class information on the method taxes are paid by Defendants (as pre-collected fuel tax to the governments) and that they are actually profiting from the so-called fuel "taxes" that Plaintiffs and Class members are charged.

184. Defendants knew that a significant portion of the moneys they were obtaining from Plaintiffs and the Class under the guise of a federal, state, and local fuel "taxes" were, in fact, not reimbursement for taxes that had been paid by Defendants, but were simply being sought to increase Defendants' general revenue.

185. As a direct and proximate result of the unlawful actions taken by Defendants, including their fraudulent concealment, Plaintiffs and Class members are entitled to restitution for the amounts they have paid in an amount that has not yet been determined.

## COUNT XIII
## VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT

186. To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

187.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly-situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Alabama. This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

188.    Plaintiffs and Class members purchased motor fuel from Defendants for primarily personal, family or household purposes, within the context and meaning of the Alabama Code 1975, §8-19-3(2) et seq., or are persons, as defined in §8-19-3(5), purchasing for commercial needs.

189.    Motor fuel is a "good" under the Alabama Deceptive Trade Practices Act.

190.    The advertising and offering for sale and sale of motor fuel is trade or commerce or constitutes a consumer transaction under the Alabama Deceptive Trade Practices Act, Alabama Code 1975, §8-19, et seq.

191.    Defendants violated, and continue to violate, the Alabama Deceptive Trade Practices Act by engaging in deceptive, unconscionable, unlawful and inequitable acts or practices, and by making false, misleading and deceptive representations, associated with the sale, marketing or advertisement of motor fuel to Plaintiffs and Class members in the Region, including but not limited to:

    a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60° Fahrenheit on a non-temperature compensated basis;

    b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver

and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60° Fahrenheit contains a lesser amount of fuel, than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.   Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.   Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local

governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

192.   The Defendants intended that Plaintiffs would rely on the Defendants' concealments, suppressions or omissions in the purchase of hot motor fuel.

193.     Plaintiffs relied on Defendants false, misleading or deceptive acts or practices.

194.     Defendants, by engaging in the foregoing conduct, took advantage of Plaintiffs' lack of knowledge, ability, experience or capacity to a grossly unfair degree.

195.     Plaintiffs sustained actual damages, the producing cause of which was Defendants' unconscionable or deceptive acts or practices, because they received less motor fuel than they were entitled to receive and for which they paid.

196.     Defendants' sale of hot motor fuel and their unconscionable and deceptive acts and practices in connection therewith was and is reckless, shows spite or ill will or demonstrates a reckless indifference to the interests of consumers, including Plaintiffs.

197.     Defendants' conduct has further injured Plaintiffs by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

198.     Plaintiffs respectfully request that this Court enjoin Defendants from engaging in the unlawful conduct alleged herein; require Defendants to install temperature correcting equipment on their retail motor fuel dispensing devices or require Defendants to post conspicuous notice on their retail motor fuel dispensing devices notifying consumers of the temperature at which the motor fuel is being sold and the effect of temperature on the energy content of motor fuel; require Defendants to notify all affected persons of the Court's injunction; declare that selling motor fuel in nonstandard gallons or at temperatures above 60 degrees Fahrenheit without temperature adjustment violates the Alabama Deceptive Trade Practices Act; award restitution monetary damages incidental to the requested injunctive or declaratory relief; and award Plaintiffs and/or Class members a

reasonable attorneys' fee and award such other relief as the Court may deem just and proper.

## COUNT XIV
## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT

199.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

200.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly-situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Arizona.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

201.    Plaintiffs and Class members purchased motor fuel from Defendants for primarily personal, family or household purposes, within the context and meaning of the Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq.  Motor fuel is "merchandise" as defined by the Arizona Consumer Fraud Act.

202.    Defendants violated, and continue to violate, the Arizona Consumer Fraud Act by engaging in deceptive, unconscionable, unlawful and inequitable acts or practices, and by making false, misleading and deceptive representations, associated with the sale, marketing or advertisement of motor fuel to Plaintiffs and Class members in the Region, including but not limited to:

   a.    Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b. Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c. Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d. Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e. Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among the Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f. Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel, than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g. Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.   Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.   Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

203.    Defendants intended to do the aforementioned acts and intended that the Plaintiffs and Class members would rely on Defendants' concealments, suppressions or omissions in the purchase of motor fuel.

204.    The representations and practices of Defendants set forth above were deceptive because such representations were false, misleading, deceptive, and mischaracterized the characteristics of the motor fuel sold by Defendants referenced above.

205.    Defendants made such representations to Plaintiffs and Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and properties as represented by Defendants, and such representations were made to Plaintiffs and Class members by Defendants in connection with Defendants' sale of motor fuel to Plaintiffs and Class members.

206.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and Class members that the motor fuel did not have the characteristics and properties as represented by Defendants, and the fact that the motor fuel lacked such characteristics and properties was a material fact not disclosed by Defendants.

207.    Plaintiffs and Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer ascertainable pecuniary damages resulting from the purchase of motor fuel above 60 degrees in an amount that has not yet been determined.

208.    Defendants' sales of hot motor fuel and their unconscionable and deceptive acts and practices in connection therewith were, and are, reckless, show spite or ill will, or

demonstrate a reckless indifference to the interests of consumers, including Plaintiffs and Class members.

## COUNT XV
## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

209.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

210.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly-situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Arkansas.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

211.    Plaintiffs and Class members purchased motor fuel from Defendants at temperatures in excess of 60 degrees Fahrenheit.

212.    The conduct of Defendants, as further described herein, constitutes the use or employment of a deception, fraud, or false pretense in the sale of motor fuel.

213.    Specifically, Defendants violated, and continue to violate, the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §4-88-101. by engaging in deceptive, false, unconscionable, unlawful and inequitable acts or practices, and by making false, misleading and deceptive representations, associated with the sale, marketing or advertisement of motor fuel to Plaintiffs and the Class members in the Region, including but not limited to:

        a.    Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b. Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c. Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d. Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e. Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f. Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel, than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g. Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by the Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h. Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i. Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j. Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k. Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

214.     The representations and practices of Defendants set forth above were deceptive because such representations were false, misleading, deceptive, and mischaracterized the characteristics and properties of the motor fuel ultimately sold by Defendants referenced above.

215.     Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and Class members that the motor fuel ultimately sold at retail did not have the characteristics and properties as represented by Defendants, and the fact that the motor fuel lacked such characteristics and properties was a material fact not disclosed by Defendants.

216.     Plaintiffs and Class members have suffer ascertainable pecuniary damages resulting from the retail sale by Defendants of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

### COUNT XVI
### VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE

217.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if more fully set forth herein.

218.     Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the State of California.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

219.     Defendants violated, and continue to violate, the California Business and Professions Code §17200, et seq. through one or more of the following unfair, unlawful or fraudulent practices:

      a.   Delivering, to Plaintiffs and the Class, motor fuel in excess of 60 degrees Fahrenheit;

b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when in fact Defendants deliver non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel substantially in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing and omitting that the standard U.S. Petroleum Gallon in the motor fuel industry, at all levels of distribution except the retailer-to-consumer level of distribution, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing, omitting, or failing to disclose that each volumetric gallon of hot motor fuel sold by Defendants at the retail level contains a lesser amount of fuel than the standard U.S. Petroleum Gallon;

g.  Concealing, suppressing, omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to consumers at the retail level of distribution is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local

governments as "fuel taxes" and that such sums were a requisite and fixed
component of the price of such gallons, when the Defendants were, in fact,
retaining those amounts as mere profit/windfall;

i.   Violating Cal.Bus. & Prof.Code § 17500 by advertising hot motor fuel to
the public with the foregoing representations and omissions, which were
and are untrue or misleading or both and which the Defendants knew were
and are untrue or misleading to Plaintiffs and the Class or both;

j.   Violating Cal. Business & Prof. Code § 13413 by selling hot motor fuel to
the public with the foregoing representations and omissions, which were
and are deceptive or misleading or false, and of which Defendants knew
were and are deceptive or misleading or false;

k.   Concealing, suppressing, omitting or failing to disclose that when the
motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees
Fahrenheit, Defendants paid *less* federal and state fuel tax to their
suppliers or appropriate governmental entities than they charged to and
received from Plaintiffs and the Class;

l.   Concealing, suppressing, omitting or failing to disclose that Defendants
were receiving more money from Plaintiffs and the Class under the guise
of "federal and state fuel tax" than was needed to reimburse Defendants
for the federal and state fuel tax actually owed and paid to the federal
government and state governments; and

m.   Concealing, suppressing, omitting or failing to disclose that the federal
and state governments were not receiving nor owed the relevant

governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

220.    Plaintiffs and the Class have been injured by Defendants' conduct in that they have lost money and/or property as a result of Defendants' unfair, unlawful or fraudulent acts alleged above because they received less motor fuel than they were entitled to receive and for which they paid.

221.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

222.    Defendants continue to commit the unfair, unlawful or fraudulent acts alleged above.

## COUNT XVII
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (California Civil Code 1770, et. seq.)

223.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

224.    Plaintiffs bring this Count on behalf of all individuals who, within three years from the date of the filing of this Complaint, purchased hot motor fuel, for personal, family, or household purposes, from any Defendant in California.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

225.    Defendants violated and continue to violate the California Consumer Legal Remedies Act, including without limitation California Civil Code Section 1170 (a) (5), through one or more of the following unfair methods of competition and unfair or deceptive acts or practices:

    a.  Delivering, to Plaintiffs and the Class, motor fuel in excess of 60 degrees Fahrenheit;

    b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when in fact Defendants deliver non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

    c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel exceeded 60 degrees Fahrenheit;

    d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and the Class motor fuel substantially in excess of 60 degrees Fahrenheit;

    e.  Concealing, suppressing and omitting that the standard U.S. Petroleum Gallon in the motor fuel industry, at all levels of distribution except the retailer-to-consumer level of distribution, is 231 cubic inches at 60 degrees Fahrenheit;

    f.  Concealing, suppressing, omitting, or failing to disclose that each volumetric gallon of hot motor fuel sold by Defendants at the retail level contains a lesser amount of fuel than the standard U.S. Petroleum Gallon;

g. Concealing, suppressing, omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to consumers at the retail level of distribution is not a standard unit of measure;

h. Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i. Violating Cal.Bus. & Prof.Code § 17500 by advertising hot motor fuel to the public with the foregoing representations and omissions, which were and are untrue or misleading or both and which Defendants knew were and are untrue or misleading to Plaintiffs and the class or both;

j. Violating Cal. Business & Prof. Code § 13413 by selling hot motor fuel to the public with the foregoing representations and omissions, which were and are deceptive or misleading or false, and of which Defendants knew were and are deceptive or misleading or false;

k. Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

l.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

m.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

226.   Plaintiffs and Class members have been injured by Defendants' unfair methods of competition and unfair or deceptive acts or practices because they received less motor fuel than they were entitled to receive and for which they paid.

227.   Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

228.   Plaintiffs seek an order enjoining Defendants' methods, acts and practices.

229.   Plaintiffs request an award of court costs and attorney's fees, pursuant to Civil Code Section 1780 (c).

230.   Plaintiffs have provided written notice to all Defendants, pursuant to Civil Code Section 1782, of their intent to seek damages under Section 1780 for violations of

Section 1770, and said Defendants have failed to correct or rectify their violations of Section 1770 within the time specified in Section 1782.

## COUNT XVIII
## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT (Fla. Stat. § 506.201 et seq.)
## AND SECTION 526.01

231.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

232.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly-situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Florida.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

233.    Plaintiffs and Class members qualify as "consumers" under the Florida Deceptive and Unfair Trade Practices Act.

234.    The advertising and sale of motor fuel is trade or commerce under the Florida Deceptive and Unfair Trade Practices Act.

235.    Defendants violated, and continue to violate, both the Florida Deceptive and Unfair Trade Practices Act and Florida Statute § 526.01, which pertains to deceptive practices in the sale of liquid fuels, by engaging in the following unconscionable acts or practices and unfair or deceptive acts or practices in the sale of hot motor fuel, all of which were likely to mislead or deceive Plaintiffs and Class members acting reasonably in the same circumstances:

a.  Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among the Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g. Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h. Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when the Defendants were, in fact, retaining those amounts as mere profit/windfall;

i. Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j. Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k. Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and,

instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

236.    Plaintiffs and Class members were aggrieved by and sustained actual damages as a result of Defendants' conduct because they received less motor fuel than they were entitled to receive and for which they paid.

237.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

## COUNT XIX
## VIOLATIONS OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT

238.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

239.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly-situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Georgia.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

240.    Plaintiffs and Class members qualify as "persons" under the Georgia Deceptive Trade Practices Act.

241.    The advertising and sale of motor fuel is a consumer transaction under the Georgia Deceptive Trade Practices Act.

242.   Defendants violated, and continue to violate, the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372, by engaging in the following unconscionable acts or practices and unfair or deceptive acts or practices in the sale of hot motor fuel, all of which were likely to mislead or deceive Plaintiffs and Class members acting reasonably in the same circumstances:

a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60° Fahrenheit on a non-temperature compensated basis;

b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a

temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by the Defendants in the sale of motor fuel to the Plaintiffs and the Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal

and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

243.    Plaintiffs and Class members were aggrieved by and sustained actual damages as a result of the Defendants' conduct because they received less motor fuel than they were entitled to receive and for which they paid.

244.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

245.    Plaintiffs and Class members reasonably relied upon Defendants' misrepresentations, omissions of material fact, and deceptive acts or practices, as set forth more fully above, and as a result, they have sustained actual pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

## COUNT XX
## VIOLATIONS OF THE GUAM DECEPTIVE TRADE PRACTICE-CONSUMER PROTECTION ACT (5 GCA § 32101 et seq.)

246.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

247.    Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the United States territory of Guam.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

248.    Motor fuel is a "good" under the Guam Deceptive Trade Practice-Consumer Protection Act.

249.    Plaintiffs and Class members are "consumers" under the Guam Deceptive Trade Practice-Consumer Protection Act.

250.    The advertising, offering for sale and sale of motor fuel is trade or commerce under the Guam Deceptive Trade Practice-Consumer Protection Act.

251.    The Defendants violated, and continue to violate, the Guam Deceptive Trade Practice-Consumer Protection Act by engaging in the following unconscionable, false, misleading or deceptive acts or practices in connection with the sale or advertisement of hot motor fuel, all of which were false or had the capacity to deceive:

a.    Selling, to Plaintiffs and Class members, motor fuel in excess of 60° degrees Fahrenheit on a non-temperature compensated basis;

b.    Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.    Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees

Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class;

252.   Failing to disclose information concerning motor fuel, as stated above, which was known at the time of the transaction, where such failure to disclose such information was intended to induce Plaintiffs and Class members into retail sale transactions into which Plaintiffs and Class members would not have entered had the information been disclosed.

253.   The Defendants intended that Plaintiffs and Class members would rely on the Defendants' concealments, suppressions, or omissions in the purchase of hot motor fuel.

254.     Plaintiffs and Class members relied on Defendants' false, misleading or deceptive acts or practices.

255.     Defendants, by engaging in the foregoing conduct, took advantage of Plaintiffs and Class members' lack of knowledge, ability, experience or capacity to a grossly unfair degree.

256.     Plaintiffs and Class members sustained actual damages, the producing cause of which was the Defendants' unconscionable or deceptive acts or practices, because they received less motor fuel than they were entitled to receive and for which they paid.

257.     Defendants' sale of hot motor fuel and their unconscionable and deceptive acts and practices in connection therewith was and is reckless, shows spite or ill will or demonstrates a reckless indifference to the interests of consumers.

258.     Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and class members from making fully informed decisions about the motor fuel they purchase.

## COUNT XXI
## VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

259.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

260.     Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the State of Indiana.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

261.     Plaintiffs are "consumers" under the Indiana Deceptive Consumer Sales Act.

262.   Defendants and each of them are "suppliers" under I.C. 24-5-0.5-2 as they regularly engage in and solicit consumer transactions in the state of Indiana by the selling of motor fuel to the consumers in the state of Indiana including to Plaintiffs and the Class.

263.   Defendants violated and continue to violate the Indiana Deceptive Consumer Sales Act by engaging in the following unconscionable acts or practices and unfair or deceptive acts or practices in the sale of hot motor fuel, all of which were likely to mislead or deceive Plaintiffs and Class members acting reasonably in the same circumstances:

a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including

within and among the Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise

of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k. Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

264.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics of the motor fuel sold by Defendants referenced above.

265.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics of the motor fuel sold by Defendants referenced above.

266.    Defendants willfully concealed, suppressed, omitted, and failed to inform Plaintiffs and Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

267.    Plaintiffs and Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have

caused them to suffer pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

268.    Plaintiffs and Class members were aggrieved by and sustained actual damages as a result of Defendants' conduct because they received less motor fuel than they were entitled to receive and for which they paid.

269.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

## COUNT XXII
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT

270.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

271.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Kansas.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

272.    Plaintiffs and Class members are "consumers," within the context and meaning of the Kansas Consumer Protection Act, K.S.A. § 50-623, et seq.

273.    Defendants are "suppliers," within the context and meaning of the Kansas Consumer Protection Act, K.S.A. § 50-623, et seq.

274.    Defendants made various misrepresentations to Plaintiffs and Class members, and violated and continue to violate the Kansas Consumer Protect Act through

various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

    a.  Selling, to Plaintiffs and Class members, motor fuel in excess of 60° Fahrenheit on a non-temperature compensated basis;

    b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

    c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

    d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

    e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

    f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

Case 2:07-md-01840-KHV-JPO   Document 186   Filed 10/08/07   Page 83 of 143

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when the Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and,

83

> instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

275.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics and properties of the motor fuel sold by Defendants referenced above.

276.    Defendants made such representations to Plaintiffs and Class Members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and properties as represented by Defendants.

277.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

278.    Plaintiffs and Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

## COUNT XXIII
## VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT

279.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

280.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Kentucky primarily for personal, family or household purposes.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

281.    Plaintiffs and Class members are "persons" within the context and meaning of the Kentucky Consumer Protection Act, K.R.S. § 367.110, et seq.

282.    Defendants are also persons within the context and meaning of the Kentucky Consumer Protection Act, K.R.S. § 367.110, et seq.

283.    Defendants made various misrepresentations to Plaintiffs and Class members, and violated and continue to violate the Kentucky Consumer Protect Act through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

   a. Selling, to Plaintiffs and Class members, motor fuel in excess of 60° Fahrenheit on a non-temperature compensated basis;

   b. Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

   c. Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.   Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.   Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.   Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees

Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

284.   The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics and properties of the motor fuel sold by Defendants referenced above.

285.   Defendants made such representations to Plaintiffs and Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants.

286.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

287.    Plaintiffs and Class Members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

## COUNT XXIV
## VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

288.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

289.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly situated Louisiana citizens who purchased motor fuel for personal, family, and household purposes at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in Louisiana.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

290.    Defendants are "persons" within the context and meaning of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et. seq.*

291.    The advertisement, sale or offering for sale of motor fuel to be used primarily for personal, family, or household purposes is a sale or offer for sale of a consumer good under the Act.

292.   Defendants made various misrepresentations to Plaintiffs and Class members, and violated and continue to violate the Act through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel

than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant

governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

293.    Defendants intended to make the aforementioned misrepresentations and omissions and intended that Plaintiffs and Class members would rely on the Defendants' concealments, suppressions or omissions in the purchase of motor fuel.

294.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics and properties of the motor fuel sold by Defendants referenced above.

295.    Defendants made such representations to Plaintiffs and Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants.

296.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

297.    Plaintiff and Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer pecuniary harm resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

## COUNT XXV
## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (Md. Code Ann., Com. Law § 13-101 et seq.)

298.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

299.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly situated Maryland citizens who purchased motor fuel for personal, family, household, and agricultural purposes at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in Maryland ("MCPA Class").  The MCPA Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

300.    Defendants are persons within the context and meaning of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 et seq.

301.    Motor fuel is a consumer good within the context and meaning of the MCPA.

302.    The advertisement, sale or offering for sale of motor fuel to be used primarily for personal, family, household, or agricultural purposes is a sale or offer for sale of a consumer good under the MCPA.

303.    Defendants made various material misrepresentations to Plaintiffs and MCPA Class members, and violated and continue to violate the MCPA through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

a.  Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing, omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing, omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing, omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and,

instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

304.    Defendants intended to make the aforementioned misrepresentations and omissions and intended that Plaintiffs and MCPA Class members would rely on the Defendants' concealments, suppressions or omissions in the purchase of motor fuel.

305.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics and properties of the motor fuel sold by Defendants referenced above.

306.    Defendants made such representations to Plaintiffs and MCPA Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants.

307.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and MCPA Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

308.    Plaintiffs and MCPA Class members sustained actual injury as a result of their reliance on Defendants' deceptive acts or practices because they received less motor fuel than they were entitled to receive and for which they paid.

309.    Plaintiffs and MCPA Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth

above, which have caused them to suffer pecuniary harm resulting from the purchase of

motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

## COUNT XXVI
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

310.   To the extent they are not inconsistent, Plaintiffs incorporate by reference

the allegations set forth in the foregoing Paragraphs of this Consolidated Amended

Complaint as if fully set forth herein.

311.   This claim is brought by Plaintiffs on behalf of themselves and all other

similarly situated persons and entities who purchased motor fuel at a temperature greater

than 60 degrees Fahrenheit from one or more of Defendants in the State of Missouri. This

Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint

are brought.

312.   Plaintiffs and Class members purchased motor fuel from Defendants for

primarily personal, family or household purposes, within the context and meaning of the

Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

313.   Defendants made various misrepresentations to Plaintiffs and Class

members, and violated and continue to violate the Missouri Merchandising Practices Act

through various deceptive acts and practices associated and related to the sale of motor fuel

as set forth above, including but not limited to:

a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60

degrees Fahrenheit on a non-temperature compensated basis;

b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in

terms of the standard unit of a "gallon," when, in fact, Defendants deliver

and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.   Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.   Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local

governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

314.   The representations of Defendants set forth above were deceptive because such representations were false, misleading, deceptive and mischaracterized the characteristics of the motor fuel sold by Defendants referenced above.

315.    Defendants made such representations to Plaintiffs and Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants, and such representations were made to Plaintiffs and Class members by Defendants in connection with Defendants' sale of motor fuel to Plaintiffs and Class members.

316.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact not disclosed by Defendants.

317.    Plaintiffs and Class Members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer ascertainable pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

## COUNT XXVII
## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

318.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

319.    Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the State of Nevada.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

320.    In connection with Defendants' sale or advertisement of motor fuel and Defendants' subsequent performance of their agreements to sell motor fuel, Defendants

performed the following affirmative acts, among others, that constitute unconscionable commercial practices, deception, fraud and misrepresentation, in violation of the Nevada Deceptive Trade Practices Act-NRS Chapter 598 (including NRS 598.0915), all of which had the capacity to mislead Plaintiffs and Class members:

    a. Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

    b. Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

    c. Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

    d. Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

    e. Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

    f. Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel

than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant

governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

321.    Defendants intended Plaintiffs and Class members would rely upon the concealed, suppressed and omitted material facts in the purchase of motor fuel.

322.    Plaintiffs and Class members sustained ascertainable loss as a result of the Defendants' conduct because they received less motor fuel than they were entitled to receive and for which they paid.

323.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

324.    Defendants continue to commit the unlawful acts alleged herein.

## COUNT XXVIII
## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. § 56:8-1 et seq.)

325.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

326.    Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the State of New Jersey.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

327.    Motor fuel is merchandise under the New Jersey Consumer Fraud Act.

328.   In connection with Defendants' sale or advertisement of motor fuel and Defendants' subsequent performance of their agreements to sell motor fuel, Defendants performed the following affirmative acts, among others, that constitute unconscionable commercial practices, deception, fraud and misrepresentation, all of which had the capacity to mislead Plaintiffs and Class members:

a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a

temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal

and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

329.    Defendants intended Plaintiffs and Class members would rely upon the concealed, suppressed and omitted material facts in the purchase of motor fuel.

330.    Plaintiffs and Class members sustained ascertainable loss as a result of the Defendants' conduct because they received less motor fuel than they were entitled to receive and for which they paid.

331.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

332.    Defendants continue to commit the unlawful acts alleged herein.

## COUNT XXIX
## VIOLATIONS OF THE NEW MEXICO DECEPTIVE TRADE PRACTICES ACT

333.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

334.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly situated persons or entities who purchased motor fuel for personal, family, or household purposes at a temperature greater than 60 degrees Fahrenheit from one or more

of Defendants in New Mexico ("NMCPA Class").  The NMCPA Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

335.    Defendants are persons within the context and meaning of the New Mexico Consumer Protection Act ("NMCPA"), 1978, § 57-12-10 *et seq.*

336.    The Defendants made various misrepresentations to Plaintiffs and NMCPA Class members, and violated and continue to violate the NMCPA through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

   a.    Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

   b.    Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

   c.    Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

   d.    Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

   e.    Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including

within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise

of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k. Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class;

337.    Defendants intended to make the aforementioned misrepresentations and omissions and intended that Plaintiffs and NMCPA Class members would rely on the Defendants' concealments, suppressions or omissions in the purchase of motor fuel.

338.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics and properties of the motor fuel sold by Defendants referenced above.

339.    The Defendants made such representations to Plaintiffs and NMCPA Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants.

340.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and NMCPA Class members that the motor fuel did not have the characteristics

and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

341.     Plaintiffs and NMCPA Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer pecuniary harm resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

**COUNT XXX**
**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE**
**TRADE PRACTICES ACT (N.C. Gen. Stat. § 75-1 et seq.)**

342.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

343.     Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the State of North Carolina.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

344.     Defendants violated and continue to violate the North Carolina Unfair and Deceptive Trade Practices Act by engaging in the following unfair or deceptive acts or practices in the sale of hot motor fuel, all of which had the capacity to deceive Plaintiffs and Class members:

     a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

     b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver

and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local

governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.   Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

345.   Plaintiffs and Class members sustained actual damages as a result of Defendants' conduct because they received less motor fuel than they were entitled to receive and for which they paid.

346.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

347.    Defendants continue to commit the unfair, unlawful, inequitable, or fraudulent acts alleged above.

348.    Plaintiffs and Class members reasonably relied upon Defendants' misrepresentations, omissions of material fact, and deceptive acts or practices, as set forth more fully above, and as a result, they have sustained actual pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined

## COUNT XXXI
## VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT

349.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

350.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly situated persons and entities who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the State of Oklahoma.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

351.    Plaintiffs and Class members purchased motor fuel from Defendants for primarily personal, family or household purposes, within the context and meaning of the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 753(5) and (11).

352.   Defendants, individually and collectively, made various false misrepresentations to Plaintiffs and Class members, and violated and continue to violate the Oklahoma Consumer Protection Act through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a

temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g. Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h. Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i. Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j. Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k. Concealing, suppressing, omitting or failing to disclose that the federal

and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

353. The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics and properties of the motor fuel sold by Defendants referenced above.

354. Defendants made such representations to Plaintiffs and Class Members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants, and such representations were made to Plaintiff and Class members by Defendants in connection with Defendants' sale of motor fuel to Plaintiffs and Class members.

355. Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact not disclosed by Defendants.

356. Plaintiffs and Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer ascertainable pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

**COUNT XXXII**
**RECOVERY UNDER OKLAHOMA TITLE 52 § 391**

357.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

358.    Defendants' conduct in selling and offering for sale motor fuel represented to Plaintiffs and Class members to be Motor Fuel in unit prices of gallons, while in fact Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature, constitutes a violation of Okla. Stat. Title 52 § 391.

359.    The sale of motor fuel for a unit price of a gallon, when the gallon is not sold with reference to the temperature of the fuel and is thus not a "standard gallon," is the sale or offering for sale of fuel in a manner which deceived, tends to deceive or has the effect of deceiving Plaintiffs and Class members as to the nature, quality or identity of the product sold or offered for sale.

**COUNT XXXIII**
**VIOLATIONS OF THE OREGON UNFAIR TRADE PRACTICES ACT**

360.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

361.    This claim is brought by Plaintiffs on behalf of themselves and all other similarly situated individuals who purchased motor fuel for personal, family, or household purposes at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in Oregon ("OCPA Class").   The OCPA Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

362.    Defendants are persons within the context and meaning of the Oregon Unfair Trade Practices Act ("OTPA"), ORS §646.610, et seq.

363.    Motor fuel is a good within the context and meaning of the OTPA.

364.    The Defendants made various misrepresentations to Plaintiffs and OTPA Class members, and violated and continue to violate the OTPA through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

a.    Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.    Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.    Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.    Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.    Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f. Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g. Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h. Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i. Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j. Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants

for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

365.   Defendants intended to make the aforementioned misrepresentations and omissions and intended that Plaintiffs and OTPA Class members would rely on the Defendants' concealments, suppressions or omissions in the purchase of motor fuel.

366.   The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics of the motor fuel sold by Defendants referenced above.

367.   Defendants made such representations to Plaintiffs and OTPA Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants.

368.   Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiff and OTPA Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

369. Plaintiff and OTPA Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer pecuniary harm resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

**COUNT XXXIV**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

370. To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

371. This claim is brought by the Plaintiffs on behalf of themselves and all other similarly situated individuals who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the Commonwealth of Pennsylvania ("UTPCP Class"). The UTPCP Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

372. Defendants are persons within the context and meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCP"), 73 Pa. C.S.A. Section 201-1 et seq.

373. Motor fuel when used for primarily business, personal, family, or household purposes is a consumer good within the context and meaning of the UTPCP.

374. Defendants made various misrepresentations to Plaintiffs and UTPCP Class members, and violated and continue to violate the UTPCP through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

a. Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b. Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c. Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d. Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e. Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f. Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.   Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.   Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.   Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and,

instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

375.    Defendants intended to make the aforementioned misrepresentations and omissions and intended that Plaintiffs and UTPCP Class members would rely on Defendants' concealments, suppressions or omissions in the purchase of motor fuel.

376.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstates the characteristics and properties of the motor fuel sold by Defendants referenced above.

377.    Defendants made such representations to Plaintiffs and UTPCP Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and qualities as represented by Defendants.

378.    Defendants willfully concealed, suppressed, omitted and failed to inform Plaintiffs and UTPCP Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and qualities was a material fact.

379.    Plaintiffs and UTPCP Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer pecuniary harm resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

**COUNT XXXV**
**VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT**

380.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

381.     This claim is brought by Plaintiffs on behalf of themselves and all other similarly-situated individuals who purchased motor fuel at a temperature greater than 60 degrees Fahrenheit from one or more of Defendants in the state of Tennessee ("TCPA Class").  The TCPA Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

382.     Plaintiffs and the TCPA Class are "consumers" within the context and meaning of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann.§ 47-18-101, et seq.

383.     Defendants are "suppliers" within the context and meaning of the TCPA.

384.     Defendants made various misrepresentations to Plaintiffs and TCPA Class members, and violated and continue to violate the TCPA through various deceptive acts and practices associated and related to the sale of motor fuel as set forth above, including but not limited to:

    a.  Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

    b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among the Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed

component of the price of such gallons, when the Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.   Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

385.   Defendants intended to make the aforementioned misrepresentations and omissions and intended that Plaintiffs and TCPA Class members would rely on Defendants' concealments, suppressions or omissions in the purchase of motor fuel.

386.    The representations of Defendants set forth above were deceptive because such representations were false, misleading, and misstated the characteristics and properties of the motor fuel sold by Defendants referenced above.

387.    Defendants made such representations to Plaintiffs and TCPA Class members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the motor fuel did not have the characteristics and properties as represented by Defendants.

388.    Defendants willfully concealed, suppressed, omitted, and failed to inform Plaintiffs and TCPA Class members that the motor fuel did not have the characteristics and qualities as represented by Defendants, and the fact that the motor fuel lacked such characteristics and properties was a material fact.

389.    Plaintiffs and TCPA Class members relied upon Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer pecuniary harm resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

**COUNT XXXVI**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-**
**CONSUMER PROTECTION ACT (Tex. Bus. & Comm. Code § 17.41 et seq.)**

390.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

391.    Plaintiffs bring this Count on behalf of themselves and all persons similarly situated who purchased hot motor fuel from any of Defendants in the State of Texas and

who purchase hot motor fuel from any of Defendants in the future.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

392.   Motor fuel is a "good" under the Texas Deceptive Trade Practices-Consumer Protection Act.

393.   Plaintiffs are "consumers" under the Texas Deceptive Trade Practices-Consumer Protection Act.

394.   The advertising, offering for sale and sale of motor fuel is trade or commerce under the Texas Deceptive Trade Practices-Consumer Protection Act.

395.   Defendants violated and continue to violate the Texas Deceptive Trade Practices-Consumer Protection Act by engaging in the following unconscionable, false, misleading or deceptive acts or practices in connection with the sale or advertisement of hot motor fuel, all of which were false or had the capacity to deceive:

   a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

   b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

   c.   Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.   Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.   Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.   Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.   Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.   Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.   Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees

Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

396.   Defendants, by engaging in the foregoing conduct, took advantage of Plaintiffs and Class members' lack of knowledge, ability, experience or capacity to a grossly unfair degree.

397.   Plaintiffs and Class members sustained actual damages, the producing cause of which was Defendants' unconscionable or deceptive acts or practices, because they received less motor fuel than they were entitled to receive and for which they paid.

398.    Defendants' sale of hot motor fuel and their unconscionable and deceptive acts and practices in connection therewith was and is reckless, shows spite or ill will or demonstrates a reckless indifference to the interests of consumers.

399.    Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

400.    Plaintiffs and Class members reasonably relied upon Defendants' misrepresentations, omissions of material fact, and deceptive acts or practices, as set forth more fully above, and as a result, they have sustained actual pecuniary damages resulting from the purchase of motor fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

401.    The Texas Plaintiffs provided written notice to all from whom they purchased and to the Consumer Protection Division of the Texas Attorney General's Office pursuant the Texas DTPA before filing this Complaint.

402.    Plaintiffs respectfully request that this Court enjoin Defendants from engaging in the unlawful conduct alleged herein; require the Defendants to install temperature correcting equipment on their retail motor fuel dispensing devices or require Defendants to post conspicuous notice on their retail motor fuel dispensing devices notifying consumers of the temperature at which the motor fuel is being sold and the effect of temperature on the energy content of motor fuel; require Defendants to notify all affected persons of the Court's injunction; declare that selling motor fuel in nonstandard gallons or at temperatures above 60 degrees Fahrenheit without volume adjustment violates the Texas Deceptive Trade Practices-Consumer Protection Act; award monetary damages,

including any multiplied damages allowed by Texas law, in addition to the requested injunctive or declaratory relief; award Plaintiffs and/or Class members reasonable attorneys' fees and expenses, and award such other relief as the Court may deem just and proper.

## COUNT XXXVII
## VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT

403.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

404.    Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the state of Utah.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

405.    The sale of motor fuel to a person for primarily business opportunities or for personal, family, or household purposes qualifies as a consumer transaction.

406.    Defendants violated and continue to violate the Utah Consumer Sales Practices Act, Utah Code-Title 13, Chapter 11, by using the following deception, fraud, false pretense, false promise or misrepresentation in connection with advertisement, offering for sale and sale of hot motor fuel:

    a.  Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

    b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed

component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.   Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.   Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.   Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

407.   Defendants knew their representations and omissions in connection with the advertisement, offering for sale and sale of hot motor fuel were false and made with the intent to deceive Plaintiffs and Class members.

408.     Plaintiffs and Class members sustained actual damages as a result of their reliance on Defendants' deceptive acts or practices because they received less motor fuel than they were entitled to receive and for which they paid.

## COUNT XXXVIII
## VIOLATIONS OF THE UTAH TRUTH IN ADVERTISING ACT

409.     To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

410.     Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the state of Utah.   This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

411.     Defendants advertised and continue to advertise the sale of motor fuel within the state of Utah.

412.     Defendants violated and continue to violate the Utah Truth in Advertising Act by using the following deception, fraud, false pretense, false promise or misrepresentation in connection with advertisement, offering for sale and sale of hot motor fuel:

    a.   Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

    b.   Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed

component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i. Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j. Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k. Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

413.    Plaintiffs and Class members reasonably relied on Defendants' deceptive acts or practices in connection with Plaintiffs and Class members' purchases of hot motor fuel.

137

414.    Plaintiffs and Class members sustained actual damages as a result of their reliance on Defendants' deceptive acts or practices because they received less motor fuel than they were entitled to receive and for which they paid.

## COUNT XXXIX
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT OF 1977
### (Va. Code Ann. § 59.1.196, et seq.)

415.    To the extent they are not inconsistent, Plaintiffs incorporate by reference the allegations set forth in the foregoing Paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

416.    Plaintiffs bring this Count on behalf of all persons who purchased hot motor fuel from any of Defendants in the State of Virginia.  This Class is a subset of the larger Class(es) on whose behalf the other counts of this Complaint are brought.

417.    Defendants are suppliers of motor fuel under the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1.196, et seq.

418.    Motor fuel is a good under the Virginia Consumer Protection Act of 1977.

419.    The advertisement, sale or offering for sale of motor fuel to be used primarily for personal, family or household purposes is a consumer transaction under the Virginia Consumer Protection Act of 1977.

420.    Defendants violated, and continue to violate, the Virginia Consumer Protection Act of 1977 using the following deception, fraud, false pretense, false promise or misrepresentation in connection with advertisement, offering for sale and sale of hot motor fuel:

       a.  Selling, to Plaintiffs and Class members, motor fuel in excess of 60 degrees Fahrenheit on a non-temperature compensated basis;

b.  Representing, to Plaintiffs and Class members, motor fuel unit prices in terms of the standard unit of a "gallon," when, in fact, Defendants deliver and sell non-standard "gallons" of motor fuel measured volumetrically without reference to temperature;

c.  Delivering to Plaintiffs and Class members a lesser amount of motor fuel than Defendants agreed to deliver when the temperature of the motor fuel sold exceeded 60 degrees Fahrenheit;

d.  Concealing, suppressing, omitting, or failing to disclose that Defendants are delivering to Plaintiffs and Class members motor fuel in excess of 60 degrees Fahrenheit;

e.  Concealing, suppressing omitting, or failing to disclose that the standard U.S. petroleum gallon in the U.S. domestic petroleum industry, including within and among Defendants, is 231 cubic inches at 60 degrees Fahrenheit;

f.  Concealing, suppressing omitting, or failing to disclose that each volumetric gallon of motor fuel sold to Plaintiffs by Defendants at a temperature above 60 degrees Fahrenheit contains a lesser amount of fuel than Plaintiffs and Class members would have received if Defendants sold such motor fuel on a temperature compensated basis;

g.  Concealing, suppressing omitting, or failing to disclose that the term "gallon" used by Defendants in the sale of motor fuel to Plaintiffs and Class members is not a standard unit of measure;

h.  Representing that certain amounts of every non-temperature compensated gallon of motor fuel sold to Plaintiffs and Class members were reimbursement for amounts being remitted to the federal, state, and local governments as "fuel taxes" and that such sums were a requisite and fixed component of the price of such gallons, when Defendants were, in fact, retaining those amounts as mere profit/windfall;

i.  Concealing, suppressing, omitting or failing to disclose that when the motor fuel Defendants sold to Plaintiffs and the Class exceeded 60 degrees Fahrenheit, Defendants paid *less* federal and state fuel tax to their suppliers or appropriate governmental entities than they charged to and received from Plaintiffs and the Class;

j.  Concealing, suppressing, omitting or failing to disclose that Defendants were receiving more money from Plaintiffs and the Class under the guise of "federal and state fuel tax" than was needed to reimburse Defendants for the federal and state fuel tax actually owed and paid to the federal government and state governments; and

k.  Concealing, suppressing, omitting or failing to disclose that the federal and state governments were not receiving nor owed the relevant governmental entity's specified tax per gallon for every gallon of motor fuel sold to and paid for by Plaintiffs and the Class at the retail level and, instead, Defendants were retaining as a profit a portion of that specified tax per gallon charged to and received from Plaintiffs and the Class.

421.     Defendants knew their representations and omissions in connection with the advertisement, offering for sale and sale of hot motor fuel were false and made with the intent to deceive Plaintiffs and Class members.

422.     Defendants intended that Plaintiffs and Class members would rely on the Defendants' concealments, suppressions or omissions in the purchase of hot motor fuel.

423.     Plaintiffs and Class members reasonably relied on Defendants' deceptive acts or practices in connection with Plaintiffs and Class members' purchases of hot motor fuel.

424.     Plaintiffs and Class members sustained actual damages as a result of their reliance on Defendants' deceptive acts or practices because they received less motor fuel than they were entitled to receive and for which they paid.

425.     Defendants' conduct has further injured Plaintiffs and Class members by impairing competition within retail motor fuel markets and preventing Plaintiffs and Class members from making fully informed decisions about the motor fuel they purchase.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class members pray the Court for judgment against Defendants, jointly and severally, in an amount to be determined at trial, for:

a.     Compensatory, restitution and general damages;

b.     punitive damages;

c.     preliminary and permanent injunctive relief;

d.     reasonable and/or statutory attorneys' fees;

e.     costs of suit;

f.     prejudgment and post judgment interest thereon, and

g.      such other and further relief as the Court deems just, appropriate and

equitable.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby request a trial by jury on all issues so triable.

Respectfully submitted,

    *s/ Robert A. Horn*
Robert A. Horn     KS Bar No. 70254
HORN AYLWARD & BANDY, LC
2600 Grand Boulevard, Suite 500
Kansas City, MO 64105
Telephone 816-421-0700
Facsimile 816-421-0899
rhorn@hab-law.com

    *s/ Thomas V. Girardi*
Thomas V. Girardi  CA Bar No. 36603
GIRARDI AND KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017-1904
Telephone: 213-977-0211
Facsimile: 213-481-1554
tgirardi@girardikeese.com

    *s/ George A. Zelcs*
George A. Zelcs  IL Bar No. 3123738
KOREIN TILLERY LLC
205 North Michigan Plaza
Suite 1950
Chicago, Illinois 60601
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com

LEAD COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

    I hereby certify that on October 8, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

    */s/ Robert A. Horn*