## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**IN RE:  MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION**

**(This Document Relates to All Cases)**

**MDL No: 1840**

**Case No. 07-MD-01840-KHV (JPO)**

<u>**DEFENDANTS' ANSWER TO CONSOLIDATED AMENDED COMPLAINT**</u>

Defendants, for their answer to plaintiffs' Consolidated Amended Complaint ("CAC"), state as follows:

<u>**PREFACE**</u>

Pursuant to the Court's April 4, 2008 Scheduling Order No. 2 (Doc. #388), defendants file this answer solely as an administrative and procedural tool to assist the Court.  This filing is not intended to answer, nor should it be construed as an answer to, the operative complaints in the actions consolidated in this MDL proceeding.

Defendants named in the CAC consist of one hundred and forty five persons and entities, most of whom have their own counsel.  Many defendants do not interact with each other; many do no business with some others; and they operate in different locales, at different levels of the distribution chain and are vastly different in size and complexity from each other.  Defendants range from owners of one or a few corner gas stations or convenience stores, to local or national truck stop owners and operators, to national or multinational integrated energy companies.  Some defendants do not even sell motor fuel at retail.  For those who are motor fuel retailers, the local competition  for customers' business is fierce.

 Because there are such vast differences among the defendants, they cannot respond to all allegations in the CAC with a single voice.  Not all defendants have the same knowledge or point of view as each other defendant. Further, defendants, as a group, do not purport to, and cannot,

speak for "the petroleum industry," as defined and repeatedly referenced in the CAC.   No statement in this answer should be regarded as the statement of any individual defendant or group of defendants.   Instead, the answer is an accommodation to the Court as it works to manage this complex case.

## ADMITTED FACTS AND AVERMENTS

Defendants have included this section as a convenience for the parties and to the Court in order to highlight those facts that defendants believe are not in dispute.   Defendants' paragraph-by-paragraph response to the CAC begins immediately following this section. Defendants, for their partial answers to paragraphs 1 through 76, admit certain facts and aver additional facts responsive to the allegations contained in those paragraphs as set forth below in paragraphs 1 through 17 of this answer.

1.      With respect to the allegations in paragraph 1 of the CAC, defendants admit that every day, millions of Americans purchase motor fuel, which plaintiffs define in paragraph 77 of the CAC as "gasoline or diesel fuel."   Defendants further aver that "gasoline" and gasoline–oxygenate blends must meet the most recent version of ASTM D 4814, "Standard Specification for Automotive Spark-Ignition Engine Fuel," and that "diesel fuel" must meet the most recent version of ASTM D 975, "Standard Specification for Diesel Fuel Oils."   For purposes of this answer, defendants will use plaintiffs' definition of "motor fuel" as described in paragraph 77 of the CAC and subject to the requirements of the applicable ASTM standard specifications.

2.      With respect to the allegations in paragraph 2 of the CAC, defendants admit that retail customers purchase motor fuel by the gallon (or, in Puerto Rico, by the liter) and, defendants aver, such sales are "consistent, predictable and uniform."   Defendants further aver

that many of them sell their branded motor fuel to wholly independent retailers who, in turn, sell to customers.

3.      With respect to the allegations in paragraphs 38 and 99 of the CAC, defendants admit that those defendants who sell motor fuel at retail in the continental United States advertise and sell motor fuel in volumetric gallons measuring 231 cubic inches (a "volumetric gallon"), which defendants aver is the legally-accepted standard unit of measure applicable to retail motor fuel sales in the continental United States.

4.      With respect to the allegations in paragraph 18 of the CAC, defendants admit that for specified petroleum product applications, certain laws and regulations provide for volumes to be reported in temperature-adjusted terms.  Defendants aver that those laws and regulations do not apply to retail motor fuel sales in the continental United States.

5.      With respect to the allegations in paragraph 20 of the CAC, defendants admit that wholesale motor fuel transactions are sometimes accounted for on a temperature-adjusted basis. Defendants aver that statutes and regulations in force in the continental United States require that retailer defendants dispense motor fuel to their retail customers in volumetric gallons and that no statute or regulation permits or requires the retail sale of motor fuel measured on a temperature-adjusted basis or in British Thermal Units ("BTUs") or by any other measure.

6.      With respect to the allegations in paragraph 15 of the CAC, defendants admit that the National Conference of Weights and Measures ("NCWM") is an association that includes government and private sector members, drawn from many industries, and that the NCWM has on several occasions considered the adoption of model regulations pertaining to the possible retail sale of temperature-adjusted motor fuels in the continental United States.  Defendants are further informed and believe, and on that basis aver, that the NCWM has never adopted a model

regulation which would permit or require the retail sale of motor fuel on a temperature-adjusted basis.

7.     With respect to the allegations in paragraphs 13 through 17 of the CAC, defendants admit that temperature has an effect on the expansion and contraction of liquids, including motor fuels, and that this phenomenon has been widely known for ages.

8.     With respect to the allegations in paragraph 4 of the CAC, defendants admit that the impact of temperature upon fuel is not "new" and that this phenomenon has been "recognized" for decades.

9.     With respect to the allegations in paragraph 29 of the CAC, defendants admit that motor fuel is sold at retail in the continental United States by retailer defendants from dispensers calibrated to dispense motor fuel in volumetric gallons.  Defendants aver that motor fuel is sold at retail universally throughout the continental United States on a volumetric basis.  Defendants further aver that the retailer defendants' dispensers, which are subject to frequent inspection by relevant state authorities, are strictly regulated in all of the states whose laws have been implicated in this action such that any failure to dispense motor fuel in volumetric gallons would expose persons legally responsible for compliance with those laws to possible criminal and/or civil penalties.

10.     With respect to the allegations in paragraph 35 of the CAC, defendants admit that retail sales of motor fuel in excess of 60 degrees Fahrenheit have occurred in the United States and in "the Region," as defined in paragraph 11 of the CAC.  Defendants aver that retail sales of motor fuel also have occurred at and below 60 degrees Fahrenheit in the United States and in "the Region," as defined in paragraph 11 of the CAC.

11.     With respect to the allegations in paragraph 61 and 62 of the CAC, defendants admit that defendants Tesoro Refining and Marketing Company and ExxonMobil have, after the inception of this litigation, placed placards of the type illustrated at paragraphs 61 (Tesoro) and 62 (ExxonMobil) of the CAC.  The placards are the best evidence of the words set forth on the placards.

12.     With respect to the allegations in paragraph 46 of the CAC, defendants are informed and believe and on that basis admit that automatic temperature compensation equipment has been installed in some Canadian service stations on a permissive, rather than mandatory, basis.  Defendants aver that such equipment, including equipment that would permit retailer defendants to dispense temperature-adjusted units of motor fuel, has not been "adopted for use in the United States at the retail level."  Defendants further aver that until the inception of this litigation in December 2006, no authorized state regulatory body within the United States had approved the use of the temperature compensation equipment referenced in paragraphs 40 and 41of the CAC.

13.     With respect to the allegations in paragraph 57 of the CAC, defendants admit that after the inception of this litigation, California regulators issued a certificate of use to dispenser manufacturer Gilbarco Veeder-Root ("Gilbarco") on a series of retail fuel dispensers.

14.     With respect to the allegations in paragraph 65 and 66 of the CAC, defendants admit that the gasoline and diesel fuel that are subject to federal excise taxes are subject to such taxes in the amounts of $.184 and $.244 per gallon and that this excise tax is imposed and remitted to the government at the wholesale level of distribution, such that retail customers are not responsible for payment of this tax.

15.     With respect to the allegations in paragraph 67 of the CAC, defendants admit that federal tax laws permit those responsible for payment to pay the tax on the basis of either the number of gallons temperature adjusted to 60° F *or* the number of volumetric gallons withdrawn from "the rack" (i.e., at the wholesale level) at the election of the party responsible for the tax.

16.     With respect to the allegations in paragraph 69 of the CAC, defendants admit that the fuel excise taxes are a cost of doing business.

17.     With respect to the allegations in paragraph 67 of the CAC, defendants admit that federal and state motor vehicle fuel taxes are sometimes (but not always) calculated based on gallons temperature adjusted to 60° F.  Each state and the federal government has its own tax laws, which vary from jurisdiction to jurisdiction.

## NATURE OF THE CASE

18.     For their answer to paragraphs 1 through 3 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.

19.     For their answer to paragraphs 4 and 5 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants further aver that the one hundred and forty five defendants named in the CAC, ranging from owners of one or a few corner gas stations or convenience stores, to local or national truck stop owners and operators, to national or multinational integrated energy companies, do not purport to, and cannot, speak for "the petroleum industry," as defined in the CAC.  Motor fuel retailer defendants engage in fierce competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief and, on that basis deny, all averments concerning what the "petroleum industry" or "industry" did or did not know, believe, say or do at any time.  Defendants lack information and belief as to what events transpired at the 16th Annual Meeting of the NCWM in 1923 and, on that basis, deny plaintiffs' characterization of the events that transpired there.

Defendants specifically deny that they "compensate for temperature variations for all sales other than to the consumer."

20.     For their answer to paragraph 6 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above.  Defendants specifically deny that the consumer pays *more* for motor fuel measured on a volumetric basis than for the same volume of motor fuel measured on a temperature-adjusted basis (or conversely that consumers receive less fuel than they purchased).    Defendants specifically deny that there is a "universal standard of 60 degrees Fahrenheit" applicable to motor fuel sales.

21.     For their answer to paragraphs 7 and 8 of the CAC, Defendants lack information and belief and on that basis specifically deny that "the average temperature of fuel across the entire country was 64.7 degrees Fahrenheit" between 2002 and 2004 and deny that "the average fuel temperature for the states and territories constituting the Region" is above 70° F. Defendants deny that the consumer pays *more* for motor fuel measured on a volumetric basis than for the same volume of motor fuel measured on a temperature-adjusted basis (or conversely that consumers receive less fuel than they purchased).  Defendants deny the allegations contained in these paragraphs not specifically admitted above.

22.     For their answer to paragraph 9 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above.  Defendants specifically deny that they receive any "hidden profits" as a result of their individual pricing practices.

## THE PARTIES

23.     For their answer to paragraph 10 of the CAC, defendants admit that plaintiffs are those individuals and business entities named and identified in the lawsuits consolidated in this MDL proceeding.   As to further identifying information regarding the respective plaintiffs,

which plaintiffs incorporate by reference, defendants lack information and belief and on that basis deny the same for purposes of this Answer.

24.     Defendants admit the named plaintiffs purport to bring these cases on behalf of a class or classes as alleged in paragraph 11 of the CAC.

25.     For their answer to paragraph 12 of the CAC, defendants admit that the defendants consist of those defendants named in the lawsuits consolidated in this MDL proceeding who have been properly served.  As to the identification of the individual defendants named in the underlying consolidated lawsuits, which plaintiffs purport to incorporate by reference, defendants further aver that the descriptions set forth in the underlying complaints speak for themselves.  Defendants decline to respond in this Answer at this time as it is being filed solely as an administrative and procedural tool, and not intended to answer the operative complaints in the individual lawsuits consolidated in this MDL proceeding.

## FACTUAL ALLEGATIONS WITH RESPECT TO ALL COUNTS

### A.  The "Gallon"

26.     For their answer to paragraph 13 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above.  Defendants further aver that the one hundred and forty five defendants named in the CAC, ranging from the owner of one or a few corner gas stations or convenience stores, to local or national truck stop owners and operators, to national or multinational integrated energy companies, do not purport to, and cannot, speak for "the petroleum industry," as defined in the CAC.  Defendant motor fuel retailers engage in fierce local competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief and, on that basis deny, all allegations concerning what the "petroleum industry" did or did not know, believe, say or do at any time.  Defendants specifically deny that the expansion and contraction of motor fuel adversely impacts a purchaser's ability to "accurately assess the true

costs incurred in connection with the sale of motor fuel." Defendants also specifically deny that retail purchasers are subjected to any unlawful unpredictability or inconsistency.

27.     For their answer to paragraph 14 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above. Defendants lack knowledge and belief and on that basis deny all allegations concerning what the "petroleum industry," as defined in the CAC, did or did not know, say or do at any time.

28.     For their answer to paragraph 15 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above. Defendants lack information and belief as to what events transpired at the 16th Annual Meeting of the NCWM in 1923 and, on that basis, deny plaintiffs' characterization of the statement attributed to Howard Estes in this paragraph 15.

29.     For their answer to paragraph 16, Defendants admit that the American Society for Testing and Materials has issued the "Standard Guide for the Use of Petroleum Measurement Tables," designated ASTM D1250. Defendants deny that ASTM D1250 "defines a standard gallon unit of petroleum as 231 cubic inches at 60 degrees Farenheit ('U.S. petroleum gallon')." Defendants aver that ASTM D1250 simply provides a methodology for using a volume correction factor to convert measurements of petroleum to alternate conditions. Defendants further aver that ASTM D1250 is the best evidence of its contents. Defendants lack information and belief as to what role, if any, the American Petroleum Institute ("API") may have played in the development of ASTM-IP D-1250.

30.     Defendants deny the allegations in paragraph 17 in their entirety. Defendants aver that paragraph 17 is premised on the false assumption that, in the highly competitive retail

market, the unit price of motor fuel will remain the same whether the fuel is sold on a volumetric basis or a temperature-adjusted basis.

31.     For their answer to paragraph 18 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above.

32.     For their answer to paragraphs 19 through 21 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants specifically deny that the sale of motor fuel measured in volumetric gallons is confined solely to the sale of motor fuel to the end-consumer.

**B.  The Science Involved**

33.     For their answer to paragraphs 22 through 26 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants are informed and believe and on that basis admit that a British Thermal Units ("BTU") is defined as the amount of thermal energy required to raise the temperature of one pound of water by one degree Fahrenheit.   The remainder of paragraphs 22-26 contains argument to which no response is required.

**C.  No Unlawful Profit**

34.     For their answer to paragraphs 27 through 32 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants specifically deny that they "are charging consumers more than if they dispensed a U.S. petroleum gallon of motor fuel."

35.     For their answer to paragraphs 33 through 34 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above and state that the factual allegations are unintelligible and, without further clarification, defendants are unable to respond to these paragraphs.   Specifically, plaintiffs aver in paragraph 33 that the "petroleum

industry," defined elsewhere in the CAC as "the entities comprising all levels of United States domestic petroleum exploration, production, refining, distribution and sale," sells motor fuel it "did not buy." Because the "petroleum industry," as defined, includes every level of production and sale, the CAC begs the question from whom does the petroleum industry *buy* motor fuel that it sells.

36.     For their answer to paragraphs 35 through 37 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above. Defendants lack information and belief as to the average temperature of motor fuel sold at retail locations in the United States and in "the Region," and, on that basis, specifically deny these allegations. Defendants also specifically deny that plaintiffs "receive less fuel and are forced to pay more for the motor fuel they purchase than if the fuel were dispensed" based on temperature-adjusted units of measure.

37.     For their answer to paragraph 38 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above.

38.     For their answer to paragraph 39 of the CAC, defendants deny the allegations contained in this paragraph not specifically admitted above and specifically deny that "consumers pay more than would be expected if the motor fuel were measured" based on temperature-adjusted units.

### D.  Temperature Compensation Technology

39.     For their answer to paragraphs 40 through 41 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above. Defendants further aver that, upon information and belief, until the inception of this litigation in December 2006, no authorized state regulatory body within the United States had approved for use any temperature compensation equipment referenced in these paragraphs of the CAC. Defendants deny

plaintiffs' vague allegation that "[t]emperature compensation equipment has been available." Defendants lack information and belief that "[t]emperature compensation equipment . . . automatically adjusts the overall price paid for motor fuel" and, on that basis, specifically deny this allegation.

**E. Temperature Compensation in Canada.**

40.    For their answer to paragraphs 42 through 44 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants, as a group, cannot with a single voice respond to many of the allegations of these paragraphs. Defendant motor fuel retailers engage in fierce local competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief about and, on that basis deny, all allegations concerning what the "petroleum industry" did or did not know, believe, say or do at any time. Moreover, individual defendants have different views relating to the installation of temperature compensation equipment in the United States, and had, and continue to have, different views (including no view whatsoever) regarding the implementation of temperature compensation equipment in Canada.   Indeed, many defendants do not have Canadian retail operations. Defendants are informed and believe and on that basis aver that not all Canadian retailers have installed temperature compensation equipment in their service stations.   Defendants lack information and belief as to the average temperature of motor fuel sold at retail locations in Canada and, on that basis, deny the factual allegations of paragraph 44.  Defendants deny the remainder of the allegations contained in paragraphs 42 through 44 unless specifically admitted herein.

41.    For their answer to paragraph 45 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.

42.     For their answer to paragraphs 46 and 47 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants further aver that not all retailers with Canadian retail operations have elected to install such equipment. The remainder of paragraphs 46 and 47 contain argument to which no response is required.  .

## F.  Temperature Compensation in the United States

43.     For their answer to paragraphs 48 through 54 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants lack information and belief as to what events transpired at the 16th Annual Meeting of the NCWM in 1923 and, on that basis, deny plaintiffs' characterization of the statement quoted in paragraph 49. Motor fuel retailer defendants engage in fierce local competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief and, on that basis deny, the allegations of these paragraphs which are exclusively directed at the "petroleum industry."  To the extent any of the allegations in these paragraphs are directed at individual defendants, defendants, as a group, cannot with a single voice admit or deny the allegations of these paragraphs.  Individual defendants have different views concerning the implementation of temperature-adjusted sales of motor fuels in the United States (including no view at all).  Defendants specifically deny that consumers have suffered any economic loss as a result of sales of motor fuel at varying temperatures.

44.     For their answer to paragraphs 55 through 57 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  To the extent any of these allegations are directed at individual defendants, defendants, as a group, cannot with a single voice admit or deny the allegations of these paragraphs.  Defendants deny that they, individually or collectively, have "pressured manufacturers of available automatic temperature compensation equipment and retrofit kits not to sell such equipment in the United States,"

including Gilbarco.  Defendants also deny that they have knowingly propounded flawed data and information to the public "in an effort to bolster their resistance to implementing temperature correction at retail."  Defendants lack information and belief and on that basis deny that they, collectively or individually, "estimated total replacement costs to be in excess of $6 billion, if temperature adjustment equipment were mandated for each retail motor pump" or that "industry officials have reduced their estimate to approximately $2.2 billion."

### G.  Retail Sales in the United States

45.     For their answer to paragraphs 58 and 59 of the CAC, defendants cannot respond with a single voice to the factual allegations in paragraph 59 that "when acting as franchisors, the [d]efendants control the specifications of the motor fuel dispensing devices at their franchisees' retail locations and prohibit their franchisees from installing temperature correction equipment." Those defendants that employ a "franchise" system of distribution and sale do so pursuant to contracts whose terms speak for themselves.  Defendants further aver that some of them sell their branded motor fuel to independent retailers who control the specifications of the motor fuel dispensing devices located on their premises.

46.     For their answer to paragraphs 60 through 64 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants Shell and Pilot specifically deny the allegations in paragraph 61 that they have begun placing placards at stations owned and operated by them.

### H.  Federal Excise Taxes

47.     For their answer to paragraphs 65 through 75 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants specifically deny that they receive any "windfall monies" as a result of their pricing practices. As plaintiffs have admitted elsewhere, consumers pay a price for motor fuel set by competition.

*See, e.g.,* Plaintiffs Opposition to Motion to Dismiss, p. 24 (referencing "*Defendants' aggressive competition on price in retail fuel markets*").

## CONCLUSION

48.     For their answer to paragraph 76 of the CAC, defendants aver that this paragraph repeats the central allegations of plaintiffs' theory of the case and constitutes argument to which no response is required.  To the extent paragraph 76 contains any additional factual allegations to which response is required, defendants deny all material factual allegations of this paragraph.

## CLASS ACTION ALLEGATIONS

49.     For their answer to paragraph 77 of the CAC, defendants admit that plaintiffs purport to bring this lawsuit as a class action and admit that this paragraph purports to state plaintiffs' alleged class claims.   Defendants deny the remaining allegations contained in paragraph 77 not specifically admitted herein and further deny that these cases are appropriate for class action treatment.

50.     For their answer to paragraph 78 of the CAC, defendants deny the allegations of this paragraph and further specifically deny that plaintiffs are alleging any cause of action against them that has not been expressly pleaded in any of the plaintiffs' Complaints.

51.     For their answer to paragraph 79 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.  Defendants further deny that these cases are appropriate for class action treatment.

52.     For their answer to paragraph 80 of the CAC, defendants deny that any of the questions of law and fact set forth in this paragraph are common to plaintiffs' alleged class.

Defendants further deny that these cases are appropriate for class treatment and deny that common questions of law and fact predominate over individual issues.

53.     For their answer to paragraph 81 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that plaintiffs purchased motor fuel from one or more of the defendants within the "Region," and therefore, deny the same.  Defendants deny the remaining allegations contained in this paragraph and specifically deny that these cases are appropriate for class treatment and that the claims of the named plaintiffs are typical of the claims of the plaintiffs' proposed class.

54.     For their answer to paragraph 82 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore, deny the same.

55.     For their answer to paragraph 83 of the CAC, defendants deny that these cases are appropriate for class treatment, deny that common questions of law and fact predominate over individual issues, deny that class actions would be superior to other available methods for the adjudication of this controversy, deny that certifying class actions would be either fair or efficient and deny the remaining allegations of paragraph 83, including all subparts.

## CAUSES OF ACTION

### COUNT I

### UNJUST ENRICHMENT – FEDERAL FUEL "TAX"

56.     For their response to paragraph 84 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 83 as if fully set forth herein.

57.     Defendants deny the allegations in paragraphs 85 through 89 of the CAC.

## COUNT II

### UNJUST ENRICHMENT – STATE FUEL "TAX"

58.　　For their response to paragraph 90 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 89 as if fully set forth herein.

59.　　Defendants deny the allegations in paragraphs 91 through 95 of the CAC.

## COUNT III

### UNJUST ENRICHMENT – OTHER

60.　　For their response to paragraph 96 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 95 as if fully set forth herein.

61.　　For their answer to paragraphs 97 and 99 of the CAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.

62.　　Defendants deny the allegations in paragraph 98 of the CAC.

63.　　For their answer to paragraph 100 of the CAC, defendants lack information and belief as to the average temperature of motor fuel sold at retail locations in the United States and in "the Region," and, on that basis, deny the allegations contained in this paragraph.

64.　　Defendants deny the allegations in paragraph 101 of the CAC.

65.　　For their response to paragraph 102 of the CAC, defendants deny the allegations in paragraph 102 not specifically admitted above.

66.　　Defendants deny the allegations in paragraphs 103 through 109 of the CAC.

## COUNT IV

### BREACH OF CONTRACT

67.　　For their response to paragraph 110 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 109 as if fully set forth herein.

68.     For their answer to paragraphs 111 through 119 of the CAC, defendants state that these paragraphs contain legal argument to which no response is required.

69.     Defendants deny the allegations in paragraphs 120 through 126 not specifically admitted above.

70.     Defendants deny the allegations in paragraphs 127 through 129 of the CAC.

71.     Defendants admit the allegations contained in paragraph 130 of the CAC.

72.     Defendants deny the allegations in paragraphs 131 through 134 of the CAC.

**COUNT V**

**DUTY OF GOOD FAITH AND FAIR DEALING**

73.     For their response to paragraph 135 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 134 as if fully set forth herein.

74.     For their answer to paragraphs 136 through 138 of the CAC, defendants are generally without knowledge or information sufficient to form a belief as to the truth of the allegations as to who actually purchased fuel from one or more defendants and whether all plaintiffs performed their obligations under such sales transactions and agreements, and therefore deny the same.  Plaintiffs' allegations regarding a duty of good faith and fair dealing in the performance of such sales transactions and agreements are legal conclusions to which no response is required.  Defendants deny all allegations in these paragraphs not specifically admitted herein.

75.     Defendants deny the allegations contained in paragraphs 139 through 141 of the CAC.

## COUNT VI
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

76.     For their response to paragraph 142 the CAC, defendants incorporate their answers and responses to paragraphs 1 through 141 as if fully set forth herein.

77.     For their answer to paragraphs 143 through 148 of the CAC, defendants state that plaintiffs' allegations regarding whether the sale of gasoline is governed by Article 2 of the Uniform Commercial Code, the presence and application of implied warranties and related allegations constitute legal argument to which no response is required.  Defendants are generally without knowledge or information sufficient to form a belief as to the truth of the allegations as to who actually purchased fuel from one or more defendants and whether all plaintiffs performed their obligations under such sales transactions and agreements, and therefore deny the same.

78.     Defendants deny the allegations contained in paragraphs 149 and 150 of the CAC.

## COUNT VII
## MONEY HAD AND RECEIVED

79.     For their response to paragraph 151 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 150 as if fully set forth herein.

80.     For their answer to paragraph 152 of the CAC, defendants are generally without knowledge or information sufficient to form a belief as to the truth of the allegations as to who actually purchased fuel from one or more defendants and whether all plaintiffs performed their obligations under such sales transactions and agreements, including the payment of money, and therefore deny the same.

81.     Defendants deny the allegations contained in paragraphs 153 through 157 of the CAC.

## COUNT VIII

## CONVERSION

82.     For their response to paragraph 158 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 157 as if fully set forth herein.

83.     Defendants deny the allegations contained in paragraphs 159 through 162 of the CAC.

## COUNT IX

## FRAUDULENT MISREPRESENTATION

84.     For their response to paragraph 163 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 162 as if fully set forth herein.

85.     Defendants deny the allegations contained in paragraphs 164 through 168 of the CAC.

## COUNT X

## NEGLIGENT MISREPRESENTATION

86.     For their response to paragraph 169 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 168 as if fully set forth herein.

87.     Defendants deny the allegations contained in paragraphs 170 through 174 of the CAC.

## COUNT XI

## CIVIL CONSPIRACY

88.     For their response to paragraph 175 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 174 as if fully set forth herein.

89.     Defendants deny the allegations contained in paragraphs 176 through 180 of the CAC.

## COUNT XII
## FRAUDULENT CONCEALMENT

90.     For their response to paragraph 181 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 180 as if fully set forth herein.

91.     Defendants deny the allegations contained in paragraphs 182 through 185 of the CAC.

## COUNT XIII
## VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT

92.     For their response to paragraph 186 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 185 as if fully set forth herein.

93.     For their answer to paragraphs 187 and 188 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

94.      For their answer to paragraphs 189 and 190 of the CAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

95.     Defendants deny the allegations contained in paragraphs 191 through 198 of the CAC.

## COUNT XIV
## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT

96.     For their response to paragraph 199 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 198 as if fully set forth herein.

97.     For their answer to paragraphs 200 and 201 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

98.     Defendants deny the allegations contained in paragraphs 202 through 208 of the CAC.

## COUNT XV

## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

99.     For their response to paragraph 209 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 208 as if fully set forth herein.

100.     For their answer to paragraphs 210 and 211 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

101.     Defendants deny the allegations contained in paragraphs 212 through 216 of the CAC.

## COUNT XVI

## VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE

102.     For their response to paragraph 217 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 216 as if fully set forth herein.

103.     For their answer to paragraph 218 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore, deny the same.

104.     Defendants deny the allegations contained in paragraphs 219 through 222 of the CAC.

## COUNT XVII

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (California Civil Code 1770, et. seq.)

105.     For their response to paragraph 223 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 222 as if fully set forth herein.

106.     For their answer to paragraphs 224  and 228 through 230 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

107.     Defendants deny the allegations contained in paragraphs 225 through 227 of the CAC.

## COUNT XVIII

### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT (Fla. Stat. § 506.21 et. seq.)
### AND SECTION 526.01

108.     For their response to paragraph 231 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 230 as if fully set forth herein.

109.     For their answer to paragraphs 232 and 233 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

110.     For their answer to paragraph 234 of the CAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

111.     Defendants deny the allegations contained in paragraphs 235 through 237 of the CAC.

## COUNT XIX

### VIOLATIONS OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT

112.     For their response to paragraph 238 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 237 as if fully set forth herein.

113.     For their answer to paragraphs 239 and 240 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

114.   For their answer to paragraph 241of the CAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

115.   Defendants deny the allegations contained in paragraphs 242 through 245 of the CAC.

## COUNT XX

## VIOLATIONS OF THE GUAM DECEPTIVE TRADE PRACTICE – CONSUMER PROTECTION ACT (5 GCA § 32101 et seq.)

116.   For their response to paragraph 246 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 245 as if fully set forth herein.

117.   For their answer to paragraph  247 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore,deny the same.

118.   For their answer to paragraphs 248 through 250 of the CAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

119.   Defendants deny the allegations contained in paragraphs 251 through 258 of the CAC.

## COUNT XXI

## VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

120.   For their response to paragraph 259 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 258 as if fully set forth herein.

121.   For their answer to paragraph 260 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

122.   For their answer to paragraphs 261 and 262 of the CAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

123.    Defendants deny the allegations contained in paragraphs 263 through 269 of the CAC.

## COUNT XXII

## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT

124.    For their response to paragraph 270 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 269 as if fully set forth herein.

125.    For their answer to paragraph 271 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

126.    For their answer to paragraphs 272 and 273 of the CAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

127.    Defendants deny the allegations contained in paragraphs 274 through 278 of the CAC.

## COUNT XXIII

## VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT

128.    For their response to paragraph 279 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 278 as if fully set forth herein.

129.    For their answer to paragraph 280 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

130.    For their answer to paragraphs 281 and 282 of the CAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

131.    Defendants deny the allegations contained in paragraphs 283 through 287 of the CAC.

## COUNT XXIV

## VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

132. For their response to paragraph 288 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 287 as if fully set forth herein.

133. For their answer to paragraph 289 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

134. For their answer to paragraphs 290 and 291 of the CAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

135. Defendants deny the allegations contained in paragraphs 292 through 297 of the CAC.

## COUNT XXV

## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (Md. Code Ann., Com. Law § 13-101 et seq.)

136. For their response to paragraph 298 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 297 as if fully set forth herein.

137. For their answer to paragraph 299 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

138. For their answer to paragraphs 300 through 302 of the CAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

139. Defendants deny the allegations contained in paragraphs 303 through 309 of the CAC.

## COUNT XXVI
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

140.    For their response to paragraph 310 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 309 as if fully set forth herein.

141.    For their answer to paragraphs 311 and 312 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

142.    Defendants deny the allegations contained in paragraphs 313 through 317 of the CAC.

## COUNT XXVII
## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

143.    For their response to paragraph 318 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 317 as if fully set forth herein.

144.    For their answer to paragraph 319 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

145.    Defendants deny the allegations contained in paragraphs 320 through 324 of the CAC.

## COUNT XXVIII
## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
## (N.J. Stat. § 56:8-1 et seq.)

146.    For their response to paragraph 325 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 324 as if fully set forth herein.

147.     For their answer to paragraph 326 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

148.     For their answer to paragraph 327 of the CAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

149.     Defendants deny the allegations contained in paragraphs 328 through 332 of the CAC.

## COUNT XXIX

### VIOLATIONS OF THE NEW MEXICO DECEPTIVE TRADE PRACTICES ACT

150.     For their response to paragraph 333 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 332 as if fully set forth herein.

151.     For their answer to paragraph 334 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

152.     For their answer to paragraph 335 of the CAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

153.     Defendants deny the allegations contained in paragraphs 336 through 341 of the CAC.

## COUNT XXX

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. Gen. Stat. § 75-1 et seq.)

154.     For their response to paragraph 342 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 341 as if fully set forth herein.

155.     For their answer to paragraph 343 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

156.     Defendants deny the allegations contained in paragraphs 344 through 348 of the CAC.

## COUNT XXXI
## VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT

157.     For their response to paragraph 349 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 348 as if fully set forth herein.

158.     For their answer to paragraphs 350 and 351 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

159.     Defendants deny the allegations contained in paragraphs 352 through 356 of the CAC.

## COUNT XXXII
## RECOVERY UNDER OKLAHOMA TITLE 52 § 391

160.     For their response to paragraph 357 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 356 as if fully set forth herein.

161.     Defendants deny the allegations contained in paragraphs 358 and 359 of the CAC.

## COUNT XXXIII
## VIOLATIONS OF THE OREGON UNFAIR TRADE PRACTICES ACT

162.     For their response to paragraph 360 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 359 as if fully set forth herein.

163.     For their answer to paragraph 361 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

164.     For their answer to paragraphs 362 and 363 of the CAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

165.     Defendants deny the allegations contained in paragraphs 364 through 369 of the CAC.

## COUNT XXXIV

### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

166.     For their response to paragraph 370 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 369 as if fully set forth herein.

167.     For their answer to paragraph 371 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

168.     For their answer to paragraphs 372 and 373 of the CAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

169.     Defendants deny the allegations contained in paragraphs 374 through 379 of the CAC.

## COUNT XXXV

### VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

170.     For their response to paragraph 380 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 379 as if fully set forth herein.

171.     For their answer to paragraphs 381 and 382 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

172.     For their answer to paragraph 383 of the CAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

173.     Defendants deny the allegations contained in paragraphs 384 through 389 of the CAC.

**COUNT XXXVI**

**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES –**
**CONSUMER PROTECTION ACT (Tex. Bus. & Comm. Code § 17.41 et seq.)**

174.     For their response to paragraph 390 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 389 as if fully set forth herein.

175.     For their answer to paragraphs 391, 393 and 401 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

176.     For their answer to paragraphs 392 and 394 of the CAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

177.     Defendants deny the allegations contained in paragraphs 395 through 400 and paragraph 402 of the CAC.

**COUNT XXXVII**

**VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT**

178.     For their response to paragraph 403 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 402 as if fully set forth herein.

179.    For their answer to paragraph 404 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

180.    For their answer to paragraph 405 of the CAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

181.    Defendants deny the allegations contained in paragraphs 406 through 408 of the CAC.

## COUNT XXXVIII
### VIOLATIONS OF THE UTAH TRUTH IN ADVERTISING ACT

182.    For their response to paragraph 409 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 408 as if fully set forth herein.

183.    For their answer to paragraph 410 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

184.    For their answer to paragraph 411 of the CAC, defendants admit that some, but not all defendants advertised and continue to advertise the sale of motor fuel within the state of Utah.

185.    Defendants deny the allegations contained in paragraphs 412 through 414 of the CAC.

## COUNT XXXIX
### VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT OF 1977
### (Va. Code Ann. § 59.1.196, et seq.)

186.    For their response to paragraph 415 of the CAC, defendants incorporate their answers and responses to paragraphs 1 through 414 as if fully set forth herein.

187. For their answer to paragraph 416 of the CAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

188. For their answer to paragraphs 417 through 419 of the CAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

189. Defendants deny the allegations contained in paragraphs 420 through 425 of the CAC.

190. Defendants deny any and all allegations contained in the CAC not specifically admitted herein.


## JURISDICTIONAL CHALLENGES

Some defendants do not sell motor fuel at retail or own, operate or control the operations of some or all of the retail stations that advertise or sell motor fuel under their brand name in some or all of the jurisdictions at issue in cases in which they are named. The Court may lack subject matter jurisdiction over the plaintiffs' claims in these cases because the plaintiffs may lack standing to assert their claims against these defendants for reasons explained more fully below. As the Court has recognized in Scheduling Order No. 2, a challenge to subject matter jurisdiction may be made at *any* time, and all defendants preserve their right to challenge the Court's subject matter jurisdiction as more facts become known.

By the contemplated motions brought under Rule 12(b)(1), and without waiver by other defendants to raise such motions, the following defendants presently intend to seek dismissal of the claims of numerous individual plaintiffs who purport to assert claims they lack standing to assert:

Allsup's Convenience Stores, Inc.,
AMBEST, Inc.,
B-B Oil Company, Incorporated,
 BP America Inc.,
BP Corporation North America Inc.,
BP Products North America Inc.,
BP West Coast Products LLC,
Chevron USA, Inc.,
Circle K Stores, Inc.,
CITGO Petroleum Corporation,
Coastal Mart, Inc.
Coastal Mart of Oklahoma,
ConocoPhillips Company,
Costco,
Coulson Oil Company,
Diamond State Oil LLC,
E-Z Mart Stores, Inc.,
Equilon Enterprises LLC,
ExxonMobil,
Fort Smith Petroleum Equipment, Inc.,
Freeman Oil Company,
Frost Petroleum Equipment, LLC,
Gardner Oil,
Hess Corporation,
L&L Oil Company, Inc.,
La Sher Oil Company,
Ligon Oil Company, Inc.,
Love's Travel Stops & Country Stores, Inc.,
Magness Oil Company,
Marathon Oil Company,
Marathon Petroleum Company LLC,
MFA Oil Company,
Motiva Enterprises LLC,
Murphy Oil Corporation,
Murphy Oil USA, Inc.,
Petro Stopping Centers,
Petromark, Inc.,
Pilot Travel Centers LLC,
Port Cities Oil, LLC,
Presto Convenience Stores, LLC,
QuikTrip Corporation
Rivercity Energy Company, Inc.,
Sam's East, Inc,
7-Eleven, Inc.
Shell Oil Company,
Shell Oil Company, LLC,

Shell Oil Company, Inc.,
Shell Oil Products Company LLC,
Sinclair Oil Corporation,
South Pacific Petroleum Corporation,
Southwest Convenience Stores,
Speedway Petroleum Corporation,
Speedway SuperAmerica LLC,
Star Fuel Marts, LLC,
Sunoco, Inc. (R&M),
Tesoro Corp.,
The Kroger Co.,
The Pantry, Inc.,
Thomas Petroleum, Inc.,
Total Petrochemicals USA, Inc.,
TravelCenters of America,
United El Segundo, Inc.,
Valero Energy Corporation,
Valero Marketing and Supply Company,
Wal-Mart Stores, Inc.,
WilcoHess, LLC,
World Oil Corp.

To have standing a plaintiff must establish three elements: (1) a personal injury in fact; (2) that is fairly traceable to the defendant's allegedly unlawful conduct; and (3) that is likely to be redressed by the requested relief. The law is clear that plaintiffs have the threshold burden of showing that they suffered a redressable injury as a result of the defendant's conduct.

The moving defendants presently contemplate that their motions will be directed toward either or both of two groupings of plaintiffs:

(i) a group of plaintiffs who allege they purchased motor fuel in states in which defendants have not owned or operated any retail service stations during the longest applicable period of limitations; and

(ii) a group of plaintiffs who allege they purchased motor fuel in states in which defendants have owned or operated only a small fraction of the service stations that sell their branded motor fuels during the longest applicable period of limitations.

None of the plaintiffs coming within the first grouping has made, or can make, the constitutionally-required showing that a redressable injury can be traced to a defendant's conduct; thus, plaintiffs' claims must be dismissed with prejudice.  Plaintiffs coming within the second grouping can make the required showing only by presenting additional facts to establish that they in fact purchased motor fuel from the moving defendant during a relevant time period.  Absent this constitutionally-required showing, plaintiffs' claims must be dismissed.

Additionally, defendants named in complaints alleging overcollection of fuel taxes from consumers may file Rule 12(b)(1) motions with regard to at least the following taxing jurisdictions:  federal, Alabama, Arkansas, California, Florida, Georgia, Guam, Kentucky, Mississippi, Nevada, New Mexico and Texas.  While the precise contours of the motions may vary from jurisdiction to jurisdiction, the basic thrust will be that the fuel excise tax law places the legal incidence of the tax on the entities in the wholesale distribution chain (generally referred to as the position holder or supplier) and not on consumers.  Since consumers in these jurisdictions are not legally responsible for such taxes and pay no such taxes, they have no standing to sue as to those taxes.  To ease the burden on the Court, defendants may select one or two jurisdictions on which to seek the Court's rulings before proceeding to the others.

## DEFENSES

For their defenses to the claims asserted in the CAC, defendants set forth the following, which represent defenses common to all defendants.  Consistent with this Court's Scheduling Order No. 2, this answer shall be used solely as an MDL administrative and procedural tool.  As such, failure to include a defense, whether applicable to a single or multiple

defendants, shall not constitute a waiver of any such defense.  Further, no defenses personal to any defendant, including for purposes of illustration only, lack of personal jurisdiction, improper service and improper venue, are asserted herein and are reserved until such time that answers to the Complaints in the individual consolidated lawsuits are filed.

## FIRST DEFENSE

[IMMUNITY/SPECIFIC AUTHORIZATION/SAFE HARBOR]  Plaintiffs' and putative class members' claims are barred, in whole or in part, and defendants are immune from suit because state statutes and related regulations specifically permit defendants' retail method of sale of fuel and any contrary interpretation of state law would conflict with federal and state statutory schemes that comprise a comprehensive regulatory policy governing the sale of motor fuel.

## SECOND DEFENSE

[ILLEGALITY] Plaintiffs' and putative class members' claims are barred, in whole or in part, because their claims seek an illegal method of sale of retail motor fuel.

## THIRD DEFENSE

[IMPRACTICABILITY and IMPOSSIBILITY] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the doctrines of impracticability and/or impossibility because their claims seek a retail method of sale of motor fuel which is impracticable and/or impossible.

## FOURTH DEFENSE

[TIME BARS] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the applicable statutes of limitations and any other time bars applicable in any state.

## FIFTH DEFENSE

[WAIVER]  Plaintiffs' and putative class members' claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH DEFENSE

[EQUITABLE DEFENSES] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the equitable doctrines of laches, estoppel and availability of adequate remedies at law.

## SEVENTH DEFENSE

[ARBITRATION AND AWARD] Certain plaintiffs and putative class members have entered into agreements with certain defendants to arbitrate their disputes in other forums.

## EIGHTH DEFENSE

[UCC DEFENSES TO WARRANTY CLAIMS—DISCLAIMERS] Plaintiffs' and putative class members' claims for breach of implied warranty are barred due to disclaimer of or limitations on warranties.

## NINTH DEFENSE

[UCC DEFENSES TO WARRANTY CLAIMS—NOTICE] Plaintiffs and putative class members have failed to comply with the applicable provisions of commercial law by failing to give reasonable notice to defendants of alleged breaches of warranty.

## TENTH DEFENSE

[JUSTICIABILITY] Plaintiffs' and putative class members' claims are barred, in whole or in part, because the claims are not justiciable as a case or controversy, which is necessary for subject matter jurisdiction.

## ELEVENTH DEFENSE

[ABSTENTION AND PRIMARY JURISDICTION] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the doctrines of abstention and primary jurisdiction in so far as Congress, and through delegation, state Departments of Agriculture and/or related Divisions of Weights and Measures and/or state equivalents are vested with jurisdiction to regulate the purchase and sale of motor fuel.

## TWELFTH DEFENSE

[PRIVITY]  Plaintiffs' and putative class members' claims are barred by lack of privity.

## THIRTEENTH DEFENSE

[JOINDER]  Plaintiffs' and putative class members' claims are barred by their failure to join necessary or indispensable parties.

## FOURTEENTH DEFENSE

[SET-OFF] Defendants are entitled to set-off and recoupment, should any monetary remedy be awarded against them.

## FIFTEENTH DEFENSE

[NOERR-PENNINGTON DOCTRINE] Plaintiffs' and putative class members' conspiracy claims are barred by the Noerr-Pennington Doctrine and the First and Fourteenth Amendments of the United States Constitution, and other applicable state law or state constitutional provisions protecting freedom of speech and assembly and the right to petition the government.

**SIXTEENTH DEFENSE**

[STATE AND FEDERAL CONSTITUTIONAL DEFENSES] Defendants plead all constitutional limitations on liability and damages.  Plaintiffs' and putative class members' claim for punitive damages against defendants cannot be sustained, because any award of punitive damages under law, which would be penal in nature, without according defendants the same protections that are accorded to all criminal defendants would violate defendants' rights of due process.

**SEVENTEENTH DEFENSE**

[ECONOMIC LOSS DOCTRINE] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the economic loss doctrine.

**EIGHTEENTH DEFENSE**

[STATE CONSUMER PROTECTION – STATUTORY STANDING]In those states in which consumer protection statutes and/or little FTC Act statutes prohibit or limit certain persons or entities from maintaining such a claim, or otherwise prohibit or limit such claims relating to purchases made for certain purposes, defendants plead that such claims are barred, in whole or in part, to the extent that the claims have been brought by or on behalf of those persons or entities or which relate to those purposes.

**NINETEENTH DEFENSE**

[STATE CONSUMER PROTECTION – STATUTORY BAR]  To the extent that any state statute bars claims on the basis that the conduct complained of is approved, acquiesced in, conflicts with, or comprehensively regulated by a governmental agency or board, or on the basis of a similar limitation, such claim is barred.

## TWENTIETH DEFENSE

[CIVIL CONSPIRACY]  Plaintiffs' and putative class members' claims for civil conspiracy are barred because there is no independent cause of action for civil conspiracy.

## TWENTY-FIRST DEFENSE

[FAILURE TO STATE A CLAIM]  Plaintiffs fail to state a claim upon which relief can be granted.

## TWENTY-SECOND DEFENSE

Defendants hereby plead any and all defenses available to it, now or which may hereinafter be applicable.  Defendants reserve the right to amend their answer as discovery progresses to plead additional defenses, and to assert additional cross-claims, counterclaims or third party claims.

## ADDITIONAL INDIVIDUAL DEFENSES APPLICABLE TO PARTICULAR STATES

## ALABAMA

1.	Plaintiffs' and putative class members' claims are barred, in whole or in part, because they failed to make a written demand for relief under Ala. Code § 8-19-10(e).

2.	Plaintiffs' and putative class members' claims are barred, in whole or in part, because no private right of action on behalf of a class exists under the Alabama Deceptive Trade Practices Act, Ala. Code 8-19-10(f).

3.	Plaintiffs' and putative class members' claims are barred, in whole or in part, because defendants did not knowingly engage in the conduct alleged to violate the Alabama Deceptive Trade Practices Act, per Ala. Code § 8-19-13.

4.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because their claims for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment are mutually exclusive to the remedies provided under the Alabama Deceptive Trade Practices Act, per Ala. Code § 8-19-15(a).

5.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because a cause of action cannot lie for conversion of cash under Alabama law.

## CALIFORNIA

Plaintiffs' and putative class members' claims under the California Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, are barred, in whole or in part, because plaintiffs failed to give proper notice to defendants at least thirty days before commencing an action for damages under the statute.

## GEORGIA

Plaintiffs' claims for the alleged violation of the Georgia Deceptive Trade Practices Act fail to state a claim for damages because the sole remedy provided under the Georgia Deceptive Trade Practices Act is injunctive relief.

## INDIANA

1.      Plaintiffs' claims under the Indiana Deceptive Consumer Sales Act are barred, in whole or in part, by plaintiffs' failure to give timely notice of those claims.  See Ind. Code § 24-5-0.5-5(a).

2.      Plaintiffs' claims under the Indiana Deceptive Consumer Sales Act are barred, in whole or in part, because plaintiffs have not engaged in any consumer transactions as defined in Indiana Code § 24-5-0.5-2(a)(1).

3.     Plaintiffs' claims under the Indiana Deceptive Consumer Sales Act are barred to the extent plaintiffs seek injunctive relief.   See Ind. Code § 24-5-0.5-4.

## KANSAS

Section 50-634 bars any plaintiff from recovering any civil penalties as provided in Section 50-636.  Kan. Stat. Ann. § 50-634(b) (West 2008).

## LOUISIANA

Putative class members' claims under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.*, are barred, in whole or in part, because a private claim under LUTPA may be brought by a person individually but not in a representative capacity to recover actual damages.

## OKLAHOMA

.   52 O.S. § 391 does not provide a civil private right of action.

## UTAH

1.     Plaintiffs' and putative class members' claims are barred, in whole or in part, because no private right of action for damages on behalf of a class exists under the Utah Consumer Sales Practices Act, Utah Code § 13-11-19.

2.     Plaintiffs have failed to provide requisite notice prior to bringing an action under the Utah Truth in Advertising Act, Utah Code Ann. 13-11a-4(5).

3.     Plaintiffs' and putative class members' claims are barred, in whole or in part, because defendants did not knowingly and intentionally engage in the conduct alleged to violate the Utah Consumer Sales Practices Act.  Utah Code § 13-11-4(2).

4.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because defendants had no knowledge that the represented price was not genuine and had made reasonable efforts to determine whether the represented price was genuine.  Utah Code § 13-11a-3(4).

## PRAYER FOR RELIEF

Having fully answered plaintiffs' CAC, defendants pray to be dismissed, for their costs incurred in defending these lawsuits, for attorneys' fees where available by law, including fees and costs available under any state consumer protection statutes, and for such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Martin M. Loring      KBA # 20840
Martin M. Loring
Husch Blackwell Sanders, LLP
4801 Main Street, Suite 1000
Kansas City  MO  64112
816-983-8142
816-983-8080 (fax)
Martin.loring@huschblackwell.com

Defendants' Liaison Counsel

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the District of Kansas, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons on this 21st day of April 2008.

/s/<u>Martin M. Loring</u>
Martin M. Loring