**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE: MOTOR FUEL TEMPERATURE )
SALES PRACTICE LITIGATION   )
              ) **MDL No:  1840**
THIS DOCUMENT RELATES TO ALL )
CASES            )

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR LEAVE TO AMEND PLEADINGS**

COME NOW Defendants and in opposition to the Motion for Leave to Amend Pleadings

(the "Motion") filed by Plaintiffs respectfully state to the Court as follows:

## INTRODUCTION

The Court should deny Plaintiffs' Motion because Plaintiffs seek to make the proposed

Second Consolidated Amended Complaint ("SCAC") an "operative" pleading that will have an

uncertain relationship to the underlying complaints.  Far from being a simple "roadmap for the

litigation," as Plaintiffs claim, the proposed SCAC:  (1) would circumvent the Court's orders and

contradict the great weight of legal precedent that consolidated pleadings in MDL proceedings

are merely administrative in nature and do not supersede underlying complaints; (2) would

violate 28 U.S.C. § 1407(a) and Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523

U.S. 26, 28 (1988) by seeking to make this Court the trial court for cases that should be

transferred to the originating courts at the end of the MDL proceedings; (3) seeks to impose

Kansas choice-of-law rules on the underlying cases when clear authority requires that this Court

apply the choice-of-law rules of the state of each transferor court; and (4) attempts to subject

numerous defendants who have never operated in Kansas to a new case-or-controversy in the

District of Kansas for which there is no personal jurisdiction or proper venue.  Also, Plaintiffs

violated Local Rule 15.1 by not attaching the amendments they desired to the underlying complaints and they failed to meet the amendment deadline set by this Court months ago.

## BACKGROUND FACTS

Recognizing that the many cases before it in this MDL proceeding are separate actions that must be returned to the transferor jurisdictions at the end of pretrial proceedings pursuant to 28 U.S.C. § 1407(a), the Court has repeatedly stated that the consolidated pleadings in this case are for administrative purposes only, and shall not be operative pleadings or supersede the underlying pleadings in the constituent cases.  On August 30, 2007, the Court issued Scheduling Order No. 1, which provided:

> ***Solely as an MDL administrative and procedural tool*** designed to narrow the predominant legal issues common to the underlying cases, plaintiffs (acting by and through their appointed Lead Counsel) shall file a consolidated amended complaint by October 5, 2007.  ***The consolidated amended complaint shall not supersede any pleading in the constituent cases in the MDL proceeding***.

(Order No. 1, ¶ 3 (emphasis added).)

The Court reaffirmed this fundamental point during the April 2, 2008 scheduling conference, when the Court again informed the parties that the Court was authorizing the use of consolidated pleadings as administrative tools that would not supersede the pleadings pending in the underlying actions.  (Tr. of Apr. 2, 2008 Hr'g at 36 ("This is ***solely [an] administrative and procedural tool*** in the MDL context to frame the predominant issues") (emphasis added).)  The Court reiterated its position on consolidated pleadings in Scheduling Order No. 2 ("Order No. 2").  (Order No. 2, ¶ 2 (ordering that Defendants' Answer to the Consolidated Complaint, like the Consolidated Complaint, "shall be used solely as an administrative and procedural tool designed to narrow the predominant legal and factual issues common to the underlying cases, i.e., the joint answer shall <u>not</u> supersede any answers already on file in the underlying cases.").)

On April 4, 2008, the Court issued Order No. 2, which provided Plaintiffs with more than three months to add parties or otherwise amend the underlying operative pleadings.[1]  (Order. No. 2.)  The Court informed the Plaintiffs, however, that July 15, 2008 was the "absolute drop dead date" for amending the underlying pleadings.[2]  (Tr. Apr. 2, 2008 Hr'g at 44-45.)  Upon Plaintiffs' request, the Court subsequently extended that amendment deadline to July 30, 2008, but in no way suggested that Plaintiffs could simply amend the consolidated complaint, which is purely administrative in nature.  Nor did the Court ever suggest that Plaintiffs could unilaterally retain the right to amend the underlying complaints in the future, after their deadline for amendment had passed.

On July 30, 2008, Plaintiffs filed their Motion seeking "leave to file a Second Amended Consolidated Complaint and to amend certain of the underlying complaints."  (Motion at 1.)  Contrary to this Court's prior orders, Plaintiffs wish to treat the SCAC as "operative."  SCAC at 2 n.1.  Plaintiffs' Motion further states that there are "dozens of complaints in the underlying constituent cases consolidated in this MDL proceedings [sic] to which Plaintiffs desire some form of amendment."  (Motion at 3.)  Yet, Plaintiffs did not identify which of the "dozens" of underlying complaints they wish to amend; nor did plaintiffs attach draft amended complaints for any of the underlying actions as required by District of Kansas Local Rule 15.1; nor did plaintiffs even identify with any particularity what amendments they would make to each complaint.  In short, Plaintiffs' failed to follow Judge Easterbrook's colorful advice that pleadings should be "straightforward" enough "so that judges and adverse parties need not try to fish a gold coin

---

[1] Indeed, as early as August 2007, the Court requested Plaintiffs to amend their pleadings to clean up the parties before the Consolidated Amended Complaint was to be filed on October 5, 2007.  (*See* doc. 134, Scheduling Order, at ¶ 8.)  Plaintiffs failed to do so.

[2] The Court stated: "I'm going to set a deadline of two weeks thereafter, July 15, for the Plaintiffs to file any motions to substitute or amend the pleadings, whether it has to do with parties or claims."  It is "an absolute drop dead date."  (Tr. Apr. 2, 2008 Hr'g at 44-45.)

from a bucket of mud." <u>United States ex rel. Garst v. Lockheed-Martin Corp.</u>, 328 F.3d 374, 378 (7th Cir. 2003).

Substantively, the SCAC, if allowed, would dramatically change the landscape of this case. The proposed SCAC would add 39 new defendants not named in any underlying complaint, yet the SCAC never informs the Court or Defendants to which complaints these defendants are to be added. The proposed SCAC would sponsor 13 new plaintiffs who have never sued any of the defendants in the underlying complaints, but again does not give a clue as to which complaints these plaintiffs would join. Eleven purported "Region"-wide class representatives, who never alleged such a class in any underlying complaint, also would be added to some as-yet unnamed complaint or complaints. The proposed SCAC would pile on 14 defendant classes, with 13 defendant class representatives that have never been named a purported class representative in any underlying complaint. Again, no indication is given as to which complaint or complaints would be subject to these additions. (SCAC, Exhs. A-D). The SCAC also would assert liability for fuel sales that are not at issue in any underlying complaint by substantially expanding the number of jurisdictions at issue for several defendants through the amendment of one or more complaints somewhere. (SCAC, Exh. A).

If permitted, these proposed significant changes to the landscape of this MDL proceeding would unduly lengthen, likely by many months, the schedule the Court set months ago. Plaintiffs never discussed this major schedule-busting issue with Defendants or the Court at any time before their motion was filed, although they had months to do so.[3] Further, as discussed below, the SCAC would unduly prejudice defendants and only serve to further confuse this already complex case, both substantively and procedurally.

---

[3] Nor did Plaintiffs ever approach the Court or Defendants to discuss a change of the consolidated pleadings from a convenient administrative tool to the controlling pleadings in the case meant to supplant the authority of the transferee courts.

## **ARGUMENT**

**I.      Standard under Federal Rule of Civil Procedure 15.**

Although Federal Rule of Civil Procedure 15 does not directly relate to amendments to consolidated pleadings in an MDL proceeding or govern whether such consolidated pleadings may be treated as "operative," it provides a starting place for analyzing amendments to complaints in general.  Under Rule 15, the Court should deny a proposed amendment if granting the Motion will cause "undue prejudice" to the Defendants or if Plaintiffs acted with "undue delay, bad faith or dilatory motive."  Foman v. Davis, 371 U.S. 178 (1962).  As discussed below, Defendants will be unduly prejudiced if the Court grants the Motion and allows Plaintiffs to treat the SCAC as operative.  Further, Plaintiffs' failure to timely amend their underlying complaints and their suggestion that they might amend them in unspecified ways at unidentified later dates demonstrates their undue delay.

**II.     The Proposed SCAC Ignores the Court's Prior Rulings on Consolidated Pleadings and Contradicts Well Established Legal Authority.**

Plaintiffs' Motion ignores the Court's repeated clear statements that the consolidated pleadings in this case are solely "***administrative and procedural tools***" and "***shall not supersede any pleading in the constituent cases***."  (Order No. 1, ¶ 3 (emphasis added); see also Tr. of Apr. 2, 2008 Hr'g at 36; Order No. 2.)  The Court issued these orders for good reason.  These consolidated cases are before the District of Kansas under the MDL process ***solely for pretrial proceedings***.  28 U.S.C. § 1407(a).  At or before the conclusion of such pretrial proceedings, each action must be remanded "to the district from which it was transferred."  Id.; see also Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 28 (1988).  As such, the Court has consistently and carefully indicated that the complaints filed in the underlying actions

(i.e., the actions that must be remanded after pretrial proceedings) are the operative pleadings in these cases, not the consolidated complaint.[4]

This Court's rulings follow a well developed and consistent body of case law that has rejected attempts to convert "consolidated" or "master" pleadings into operative documents. See, e.g., In re Propulsid Prods Liab. Litig., 208 F.R.D. 133, 141 (E.D. La. 2002) ("consolidation is intended only as a procedural device used to promote judicial efficiency and economy."); In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., 489 F. Supp. 2d 932, 936 (D. Minn. 2007) ("Consolidation of a master complaint is merely a procedural device designed to promote judicial economy, and, as such, it does not affect the rights of the parties in separate suits."); In re Rezulin Prods. Liab. Litig., 390 F. Supp. 2d 319, 330 at n.62 (S.D.N.Y. 2005) (noting that consolidation "is a procedural device designed to promote judicial economy, and consolidation cannot effect a merger of the actions or the defenses of the separate parties").

In Propulsid, the court examined the history of consolidated pleadings and the limitations on their scope in MDL cases:

> [C]onsolidation is not supposed to "merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." See 9 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2382, at 255 (1971). Rather, consolidation is intended only as a procedural device used to promote judicial efficiency and economy. See Diana E. Murphy, Unified and Consolidated Complaints in Multidistrict Litigation, 132 F.R.D. 597 (1991).

In re Propulsid Prods. Liab. Litig., 208 F.R.D. at 141 (footnote and certain parenthetical indications omitted).

---

[4] The vast majority of the dozens of cases in this MDL proceeding (all but two actions) are not pending before the District of Kansas. In the two cases that are in this District for trial, only a smattering of the more than 150 defendants in the consolidated proceedings are named parties. American Fiber & Cabling, LLC, et al. v. BP Corp. North America, et al. (Case No. 07-2053 JWL); Wilson v. Ampride, Inc. (Case No. 06-2582 KHV). The plaintiffs in those two actions are all Kansas residents and they only purport to represent Kansas purchasers. Id.

The court also concluded that treating consolidated complaints as "operative" was inadvisable because it would create a litany of problems:

> If the master complaint in the present case were to be treated as a traditional complaint, many significant and perhaps unintended consequences would follow. First, it would make applicable Louisiana's choice-of-law rules even though the class action for which class certification is sought was filed in Indiana. Second, it would complicate the matter of the subsequent remand of the individual MDL actions back to the transferor court by introducing confusion as to which court is the transferor court in light of the fact that two substantive complaints—one in Louisiana and one in Indiana—have been filed. Indeed, taking this to the extreme, a master complaint, if given the status of a traditional complaint, could be used to circumvent the remand requirement of 28 U.S.C. § 1407 by substituting itself for all individual actions filed in the MDL and thereby frustrate the intended effect of that statute as recognized in the Supreme Court's decision in <u>Lexecon, Inc. v. Milbreg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26, 39 (1988). In light of these concerns the master complaint should not be given the same effect as an ordinary complaint. Instead, it should be considered as only an administrative device to aid efficiency and economy.

<u>Id.</u> at 141-42.

The problems that concerned the <u>Propulsid</u> court are present in this case as well, but to an even greater extent. First, Plaintiffs' proposed SCAC would frustrate 28 U.S.C. § 1407, which requires the transferee court to return each constituent action to the transferor court following completion of coordinated or consolidated pretrial proceedings. <u>Lexecon</u>, 523 U.S. at 28. If the SCAC is deemed an operative complaint originally filed in the District of Kansas, Plaintiffs will artificially create an argument for trying all cases in this District, thus circumventing the otherwise controlling obligation to remand the underlying cases back to the transferor jurisdictions.

Second, treating the SCAC as operative will work substantive and procedural harm on defendants, many of which have not conducted business in Kansas. According to Exhibit A to the SCAC, Plaintiffs concede that 27 of the multiple-state defendants do not operate in Kansas at

all.[5]   Additionally, according to Exhibits B and C, another 69 of the current single-state defendants and 38 of the proposed new defendants have not been or will not be sued for any operations in Kansas.  Together, there are at least 134 defendants without any alleged ties to Kansas.  However, if the SCAC becomes the operative complaint, the SCAC arguably will create a new case or controversy in the District of Kansas.  All Defendants then would be at risk of facing trial on the merits in this District even if many of those defendants have not conducted business in Kansas and many more have not been previously sued here.  If used in that way, the SCAC would violate well settled rules of personal jurisdiction and the proper venue for trial.

Moreover, if the SCAC becomes "operative," Kansas' choice-of-law rules arguably would govern all of the cases originally brought under the common law and statutory schemes of 28 jurisdictions.  See Propulsid, 208 F.R.D. at 141 (stating that the choice-of-law rules of the MDL district would apply if a consolidated complaint was deemed "operative"); but see In re Rezulin Prods. Liab. Litig., 390 F. Supp. 2d 319, 330 n.62 (S.D.N.Y. 2005) (holding use of consolidated complaint did not alter choice-of-law rules).  Defendants have not consented to Kansas' choice-of-law rules governing all of the cases, including cases having nothing whatsoever to do with Kansas.

## III.   Plaintiffs' Only Cited "Support" For Their Proposed Approach Actually Supports Denying Their Motion.

Plaintiffs have cited a single order from In re Educational Testing Service Praxis Principles of Learning Teaching: Grades 7-12 Litigation, MDL No. 1643 (E.D. La. Apr. 13, 2005) as purported support for their request to make the SCAC the "operative" complaint.  The

---

[5] These defendants are: Alon, Skinny's Inc., Southwest Convenience Stores, Albertson's, New Albertson's Inc., SUPERVALU, Crown Central, Exxon Mobil Corporation, E-Z Mart, Gate Petroleum, Getty Petroleum Marketing Inc., Hess Corporation, MapCo Express Inc. (DELEK US Holdings, Inc.), Marathon Petroleum Company, LLC, Murphy Oil USA, Inc., Racetrac Petroleum, Inc., Safeway, Sheetz, Inc., Speedway Super America LLC, Sunoco Inc., Susser Petroleum Company, Stripes, Town & Country, Terrible Herbst Oil, Co., The Pantry (Inc.), Tetco, WaWa, and Worsley Companies, LLC.  (SCAC, Exhibit A.)

one-page order upon which they rely, however, did not turn the master complaint into the "operative" complaint.[6]   The court merely ordered that, for efficiency, the court would accede to the parties' *joint request* to have the court dismiss the causes of action in the underlying complaints not listed in the master complaint.[7]   However, as here, the master complaint in Educational Testing Service continued to be "purely an administrative device to streamline pleadings and motion practice, and [was] done solely for the convenience of the Court and the parties."  It did "not affect any substantive or legal rights and [did] not supplant or supersede any complaint subject" to the MDL.[8]   At bottom, Educational Testing Service, simply provides no basis for Plaintiffs' proposed departure from established procedure in MDL actions.

Moreover, the fact that the parties in Educational Testing Service had *jointly requested* the procedure at issue in that case makes it inapposite here.  Even if one were to incorrectly assume that the court in Educational Testing Service had deemed the master complaint "operative," the conversion of a master complaint into an "operative" pleading is only arguably appropriate when *all parties consent* to it being treated as such.   In re Conagra Peanut Butter Prods. Liab. Litig., No. 07-md-1845, 2008 WL 2885951, at *4 (N.D. Ga. 2008) (noting that a master complaint in an MDL proceeding should be "used as a substantive pleading *only when the parties have consented* to such an arrangement") (emphasis added); see also In re Guidant Corp. Implantable Defibrillators Prods. Liab., 489 F. Supp. 2d at 935-36.  For all the reasons set forth in this memorandum, Defendants do not consent to using the SCAC as the operative complaint here.  For this reason alone, Plaintiffs' request should be denied.

---

[6] A true and accurate copy of the April 13, 2005 Order Plaintiffs cite is attached hereto as Exhibit A.

[7] Joint Motion To Supplement Order Amending Pretrial Order No. 2, a true and accurate copy of which is attached hereto as Exhibit B.

[8] Plaintiffs' Administrative Master Complaint at 1, a true and accurate copy of which is attached hereto as Exhibit C.

**IV.    Significant Confusion and Uncertainty will Result if the Court Grants the Motion.**

The pleadings in a massive and complex MDL proceeding, such as this one, brought by experienced plaintiffs' counsel should be "straightforward" enough to allow all Defendants to understand the allegations against them, where they have been sued, by whom, in what capacity the plaintiffs propose to proceed, and which jurisdictions' laws are at issue.  The proposed SCAC utterly fails in this regard and would unduly prejudice the Defendants by confusing the parties, the claims, and the class issues involved in the underlying lawsuits.

Plaintiffs are seeking a hybrid approach to the pleadings that both makes the SCAC "operative" for all purposes and reserves a right to amend the underlying complaints in unspecified ways at undefined future points in the litigation.  (Motion at 3.)  In that regard, Plaintiffs propose that the SCAC serve as "a template to which all individual actions should be deemed conformed, unless counsel in an individual case within a reasonable period of time notifies the Court otherwise."  (Motion at 2.)  Also, Plaintiffs apparently would like to have the SCAC govern the case if the Court certifies the "Region"-wide class, but if they fail in that regard, then they would like the underlying complaints to spring back to life so their individual class representatives can advance state subclasses.  These concepts are baffling.  Defendants cannot fairly defend themselves against shape-shifting pleadings that are or are not operative depending on Plaintiffs' current needs.  A few examples demonstrate the confusion Plaintiffs have sown by their proposed shifting-sands approach.

**A.    Region wide claims.**

The SCAC attempts to state "Region wide" claims against several defendants.  (SCAC ¶ 19, Exh. A.)  However, most defendants have not been sued in each state in the "Region."  Thus, Defendants are uncertain whether the Plaintiffs are attempting to use the SCAC as a

substitute for actually filing suit against defendants in the underlying states and serving process within those states.  On this point, Plaintiffs provide little guidance.  Plaintiffs merely state that the SCAC provides "a template to which all individual actions should be deemed conformed." (SCAC ¶ 6.)

> **B.**     **Right of plaintiff counsel in underlying actions to change the pleadings.**

While Plaintiffs' "deemed conformed" approach to amendment is confusing enough on its face, Plaintiffs make the situation more confusing by proposing a mechanism for individual attorneys in the underlying actions to change the issues being litigated in the MDL unilaterally at some indeterminate future date.  According to Plaintiffs, the underlying actions will not be deemed conformed if "counsel in an individual case within a reasonable time notifies the Court otherwise."  (SCAC ¶ 6.)

> **C.**     **Plaintiffs attempt to add defendants in the SCAC who have never been sued.**

Plaintiffs concede that they have listed defendants in the SCAC who have never been sued in any underlying case.  By simply listing those defendants in the Exhibits to the SCAC, are Plaintiffs deeming the underlying complaints conformed?  If so, which underlying complaints are deemed amended?  If Plaintiffs are recognizing that due process requires that the new defendants be named and served in the underlying actions, are those amendments to be done "within a short period of time" or can individual counsel in the underlying cases notify the Court otherwise "within a reasonable time"?  Again, the SCAC does not answer these questions.

> **D.**     **Defendant classes.**

Exhibit C to the SCAC, which purports to identify defendant classes, raises similar problems.  From Plaintiffs' "deemed conformed" approach, Defendants cannot determine whether they face individual claims by the plaintiffs listed in just one underlying action or

whether the individual plaintiffs listed are deemed to be bringing individual claims against the defendants as purported class representatives in each underlying action.

Plaintiffs did not provide proposed amendments to the underlying complaints, and therefore Defendants are left to guess at these and other questions, and the Court is left to decide this issue in the dark. Certainly, the SCAC answers none of these questions, which only begin to scratch the surface of the confusion created by Plaintiffs' proposed amendments.

## V.     The Court Should Deny the Motion because of Plaintiffs' Undue Delay and Failure to Abide By Local Rule 15.1.

As noted above, the Court set a firm date for amending the underlying pleadings – July 30, 2008. Plaintiffs failed to comply. Instead, on the date amendments were due, Plaintiffs chose to inform the Court that there were "dozens of complaints in the underlying constituent cases consolidated in this MDL proceedings [sic] to which Plaintiffs desire some form of amendment." (Motion at 3.) Plaintiffs did not identify which of the "dozens" of underlying complaints they wished to amend; they did not attach draft amended complaints for any of the underlying actions; they did not even identify with any particularity what amendments they would make to each complaint. Rather than comply with the Court's Order, Plaintiffs improperly seek to use the Motion and the SCAC as an open-ended opportunity for amending the pleadings.

Further, Plaintiffs have failed to comply with District of Kansas Local Rule 15.1, which required them to "set forth a concise statement of the amendment or leave sought to be allowed with the proposed pleading attached." Despite conceding that they need to amend the underlying complaints, Plaintiffs did not attach any proposed pleadings. This violation of Rule 15.1 is not merely technical. Had Plaintiffs complied with the Rule and attached a copy of the amendments to the underlying complaints, Defendants might not need to guess what Plaintiffs are attempting under their "deemed amended" theory.

Plaintiffs' proposed expansive SCAC and open-ended approach to future amendments also imperil the Court's schedule for the remainder of the case. At a minimum, new defendants would need to be added, served and given an opportunity to respond in the underlying cases if and when the underlying complaints are amended. If the underlying complaints are amended at some point in the indeterminate future, new and perhaps existing Defendants may have motions to dismiss one or more of the claims of the amended complaints. The new defendants also will need to be given time to catch up to the almost two years of litigation proceedings in the case, including ongoing discovery. The Court may well decide to halt all discovery so all parties can go forward in discovery on the same schedule. Plaintiffs' delay and unorthodox approach will impose yet further delays – likely many months – to the schedule this Court set out long ago.

This Court should deny Plaintiffs' Motion because Plaintiffs are out of time to amend the underlying complaints, their proposal violates Local Rule 15.1, and their proposed open-ended approach to future amendments threatens the case schedule and prejudices Defendants.

WHEREFORE, Defendants respectfully move the Court to deny Plaintiffs' Motion for Leave.

Respectfully submitted,

Dated: September 2, 2008                         Greensfelder, Hemker & Gale, P.C.

                                                 By: /s/Gregory C. Mollett
                                                     Gregory C. Mollett

                                                 David M. Harris, Esq.
                                                 Gregory C. Mollett, Esq.
                                                 Sandra B. Gallini, Esq.
                                                 10 South Broadway, Ste. 2000
                                                 St. Louis, MO 63102
                                                 Tel:  (314) 241-9090
                                                 Fax:  (314) 241-4245

KC-1627746-1

*Attorneys for Defendants Equilon
Enterprises LLC and Motiva Enterprises
LLC.*

and

Gibson, Dunn & Crutcher, LLP

By: /s/Austin V. Schwing_____
        Austin V. Schwing

Fredrick Brown, Esq.
Austin V. Schwing, Esq.
Lindsey E. Blenkhorn, Esq.
Gibson, Dunn & Crutcher LLP
One Montgomery Street, Suite 3100
San Francisco, CA  94104-4505
Tel.:  (415) 393-8200
Fax:  (415) 374-8420

*Attorneys for Defendants
Flying J Inc. and Kentucky Flying J Inc.*

and

Husch Blackwell Sanders, LLP

By:   /s/ Martin M. Loring_____
Martin M. Loring (Kan. Bar #20840)
4801 Main Street, Suite 1000
Kansas City, MO  64112
Phone: 816-983-8142
Fax: 816-983-8080
martin.loring@huschblackwell.com
*Liaison Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that this pleading was filed electronically on the CM/ECF System on September 2, 2008, which caused all CM/ECF participants to be served by electronic means, as is more fully shown by the Court's Notice of Electronic Filing.

<u>/s/   Defendants' Liaison Counsel    </u>

KC-1627746-1