## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION** | **MDL No: 1840** |
| **(This Document Relates to All Cases)** | **Case No. 07-MD-01840-KHV (JPO)** |

## DEFENDANTS' ANSWER TO SECOND CONSOLIDATED AMENDED COMPLAINT

Defendants, for their answer to plaintiffs' Second Consolidated Amended Complaint ("SCAC"), state as follows:

## PREFACE

Pursuant to the Court's November 20, 2008 Order and previous Court orders, defendants[1] file this answer solely as an administrative and procedural tool to assist the Court. This filing is not intended to answer, nor should it be construed as an answer to, the operative complaints in the actions consolidated in this MDL proceeding.

Defendants named in the SCAC consist of more than one hundred persons and entities, most of whom have their own counsel. Many defendants do not interact with each other; many do no business with some others; and they operate in different locales, at different levels of the distribution chain and are vastly different in size and complexity from each other. Defendants range from owners of one or a few corner gas stations or convenience stores, to local or national truck stop owners and operators, to national or multinational integrated energy companies. Some defendants do not even sell motor fuel at retail. For those who are motor fuel retailers, the local competition for customers' business is fierce.

---

[1] On December 22, 2008, the United States Bankruptcy Court for the District of Delaware, at the request of Flying J Inc., entered an Order for Relief under chapter 11 of title 11 of the United States Code in Case 08-13384. That Order results in an automatic stay of this litigation as to Flying J Inc.

Because there are such vast differences among the defendants, they cannot respond to all allegations in the SCAC with a single voice. Not all defendants have the same knowledge or point of view as each other defendant. Further, defendants, as a group, do not purport to, and cannot, speak for "the petroleum industry," as defined and repeatedly referenced in the SCAC. No statement in this answer should be regarded as the statement of any individual defendant or group of defendants. Instead, this answer is an accommodation to the Court as it works to manage this complex case.

## ADMITTED FACTS AND AVERMENTS

Defendants have included this section as a convenience for the parties and to the Court in order to highlight those facts that defendants believe are not in dispute. Defendants' paragraph-by-paragraph response to the SCAC begins immediately following this section. Defendants, for their partial answers to paragraphs 1 through 77, admit certain facts and aver additional facts responsive to the allegations contained in those paragraphs as set forth below in paragraphs 1 through 17 of this answer.

1.      With respect to the allegations in paragraph 1 of the SCAC, defendants admit that every day, millions of Americans purchase motor fuel, which plaintiffs have previously defined as "gasoline or diesel fuel." Defendants further aver that "gasoline" and gasoline–oxygenate blends must meet the most recent version of ASTM D 4814, "Standard Specification for Automotive Spark-Ignition Engine Fuel," and that "diesel fuel" must meet the most recent version of ASTM D 975, "Standard Specification for Diesel Fuel Oils." For purposes of this answer, defendants will use plaintiffs' definition of "motor fuel" as described in paragraph 77 of the Consolidated Amended Complaint and subject to the requirements of the applicable ASTM standard specifications.

2.      With respect to the allegations in paragraph 2 of the SCAC, defendants admit that retail customers purchase motor fuel by the gallon (or, in Puerto Rico, by the liter) and, defendants aver, such sales are "consistent, predictable and uniform."  Defendants further aver that many of them sell their branded motor fuel to wholly independent retailers who, in turn, sell to customers.

3.      With respect to the allegations in paragraphs 39 and 109 of the SCAC, defendants admit that those defendants who sell motor fuel at retail in the continental United States advertise and sell motor fuel in gallons measuring 231 cubic inches without regard to temperature (a "gallon"), which defendants aver is the legally-accepted standard unit of measure applicable to retail motor fuel sales in the continental United States.

4.      With respect to the allegations in paragraph 18 of the SCAC, defendants admit that for specified petroleum product applications, certain laws and regulations provide for volumes to be reported in temperature-adjusted terms.  Defendants aver that those laws and regulations do not apply to retail motor fuel sales in the continental United States.

5.      With respect to the allegations in paragraph 20 of the SCAC, defendants admit that wholesale motor fuel transactions are sometimes accounted for on a temperature-adjusted basis.  Defendants aver that statutes and regulations in force in the continental United States require that retailer defendants dispense motor fuel to their retail customers in gallons and that no statute or regulation permits or requires the retail sale of motor fuel measured on a temperature-adjusted basis or in British Thermal Units ("BTUs") or by any other measure.

6.      With respect to the allegations in paragraph 15 of the SCAC, defendants admit that the National Conference of Weights and Measures ("NCWM") is an association that includes government and private sector members, drawn from many industries, and that the

NCWM has on several occasions considered the adoption of model regulations pertaining to the possible retail sale of temperature-adjusted motor fuels in the continental United States. Defendants are further informed and believe, and on that basis aver, that the NCWM has never adopted a model regulation which would permit or require the retail sale of motor fuel on a temperature-adjusted basis.

7.      With respect to the allegations in paragraphs 13 through 17 of the SCAC, defendants admit that temperature has an effect on the expansion and contraction of liquids, including motor fuels, and that this phenomenon has been widely known for ages.

8.      With respect to the allegations in paragraph 4 of the SCAC, defendants admit that the impact of temperature upon fuel is not "new" and that this phenomenon has been "recognized" for decades.

9.      With respect to the allegations in paragraph 29 of the SCAC, defendants admit that motor fuel is sold at retail in the continental United States by retailer defendants from dispensers calibrated to dispense motor fuel in gallons.  Defendants aver that motor fuel is sold at retail universally throughout the continental United States in gallons.  Defendants further aver that the retailer defendants' dispensers, which are subject to frequent inspection by relevant state authorities, are strictly regulated in all of the states whose laws have been implicated in this action such that any failure to dispense motor fuel in gallons would expose persons legally responsible for compliance with those laws to possible criminal and/or civil penalties.

10.      With respect to the allegations in paragraph 35 of the SCAC, defendants admit that retail sales of motor fuel in excess of 60 degrees Fahrenheit have occurred at certain unidentified locations and at certain unidentified times in the United States and in "the Region," as defined in paragraph 11 of the SCAC.  Defendants aver that retail sales of motor fuel also

4

have occurred at and below 60 degrees Fahrenheit in the United States and in "the Region," as defined in paragraph 11 of the SCAC.

11.     With respect to the allegations in paragraph 62 and 63 of the SCAC, defendants admit that defendants Tesoro Refining and Marketing Company and ExxonMobil have, after the inception of this litigation, placed placards at company owned service stations of the type illustrated at paragraphs 62 (Tesoro) and 63 (ExxonMobil) of the SCAC.  The placards are the best evidence of the words set forth on the placards.

12.     With respect to the allegations in paragraph 47 of the SCAC, defendants are informed and believe and on that basis admit that automatic temperature compensation equipment has been installed in some Canadian service stations on a permissive, rather than mandatory, basis.  Defendants aver that such equipment, including equipment that would permit retailer defendants to dispense temperature-adjusted units of motor fuel, has not been "adopted for use in the United States at the retail level."  Defendants further aver that until the inception of this litigation in December 2006, no authorized state regulatory body within the United States had approved the use of the temperature compensation equipment referenced in paragraphs 41 and 42 of the SCAC.

13.     With respect to the allegations in paragraph 58 of the SCAC, defendants admit that after the inception of this litigation, California regulators issued a certificate of use to dispenser manufacturer Gilbarco Veeder-Root ("Gilbarco") on a series of retail fuel dispensers.

14.     With respect to the allegations in paragraph 66 and 67 of the SCAC, defendants admit that the gasoline and diesel fuel that are subject to federal excise taxes are subject to such taxes in the amounts of $.184 and $.244 per gallon and that this excise tax is imposed and

remitted to the government at the wholesale level of distribution, such that retail customers are not responsible for payment of this tax.

15.     With respect to the allegations in paragraph 68 of the SCAC, defendants admit that federal tax laws permit those responsible for payment to pay the tax on the basis of either the number of gallons temperature adjusted to 60° F *or* the number of gallons withdrawn from "the rack" (i.e., at the wholesale level) at the election of the party responsible for the tax.

16.     With respect to the allegations in paragraph 70 of the SCAC, defendants admit that the fuel excise taxes are a cost of doing business.

17.     With respect to the allegations in paragraph 68 of the SCAC, defendants admit that federal and state motor vehicle fuel taxes are sometimes (but not always) calculated based on gallons temperature adjusted to 60° F.  Each state and the federal government have its own tax laws, which vary from jurisdiction to jurisdiction.

I.      **NATURE OF THE CASE**

18.     For their answer to paragraphs 1 through 3 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.

19.     For their answer to paragraphs 4 and 5 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants further aver that the more than one hundred defendants named in the SCAC, ranging from owners of one or a few corner gas stations or convenience stores, to local or national truck stop owners and operators, to national or multinational integrated energy companies, do not purport to, and cannot, speak for "the petroleum industry," as defined in the SCAC.  Motor fuel retailer defendants engage in fierce competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief and, on that basis deny, all averments concerning what the "petroleum industry" or "industry" did or did not know, believe, say or do at any time.  Defendants lack

6

information and belief as to what events transpired at the 16th Annual Meeting of the NCWM in

1923 and, on that basis, deny plaintiffs' characterization of the events that transpired there.

Defendants specifically deny that they "compensate for temperature variations for all sales other

than to the consumer."

20.     For their answer to paragraph 6 of the SCAC, defendants deny the allegations

contained in this paragraph not specifically admitted above.  Defendants specifically deny that

the consumer pays *more* for motor fuel measured by the gallon than for the same volume of

motor fuel measured on a temperature-adjusted basis (or conversely that consumers receive less

fuel than they purchased).  Defendants specifically deny that there is a "universal standard of 60

degrees Fahrenheit" applicable to motor fuel sales.

21.     For their answer to paragraphs 7 and 8 of the SCAC, Defendants lack information

and belief and on that basis specifically deny that "the average temperature of fuel across the

entire country was 64.7 degrees Fahrenheit" between 2002 and 2004 and deny that "the average

fuel temperature for the states and territories constituting the Region" is above 70° F.

Defendants deny that the consumer pays *more* for motor fuel measured by the gallon than for the

same volume of motor fuel measured on a temperature-adjusted basis (or conversely that

consumers receive less fuel than they purchased).  Defendants deny the allegations contained in

these paragraphs not specifically admitted above.

22.     For their answer to paragraph 9 of the SCAC, defendants deny the allegations

contained in this paragraph not specifically admitted above.  Defendants specifically deny that

they receive any "hidden profits" as a result of their individual pricing practices.

II.     **THE PARTIES**

23.     For their answer to paragraph 10 of the SCAC, defendants admit that plaintiffs are

those individuals and business entities named and identified in the lawsuits consolidated in this

1659214v1

MDL proceeding. As to further identifying information regarding the respective plaintiffs, which plaintiffs incorporate by reference, defendants lack information and belief and on that basis deny the same for purposes of this Answer.

24.     Defendants admit the named plaintiffs purport to bring these cases on behalf of a class or classes as alleged in paragraph 11 of the SCAC.

25.     For their answer to paragraph 12 of the SCAC, defendants admit that the defendants consist of those defendants named in the lawsuits consolidated in this MDL proceeding who have been properly served. As to the identification of the individual defendants named in the underlying consolidated lawsuits, which plaintiffs purport to incorporate by reference, defendants further aver that the descriptions set forth in the underlying complaints speak for themselves. Defendants decline to respond in this Answer at this time as it is being filed solely as an administrative and procedural tool, and not intended to answer the operative complaints in the individual lawsuits consolidated in this MDL proceeding.

## III.     FACTUAL ALLEGATIONS WITH RESPECT TO ALL COUNTS

### A. The "Gallon"

26.     For their answer to paragraph 13 of the SCAC, defendants deny the allegations contained in this paragraph not specifically admitted above. Defendants further aver that the more than one hundred defendants named in the SCAC, ranging from the owner of one or a few corner gas stations or convenience stores, to local or national truck stop owners and operators, to national or multinational integrated energy companies, do not purport to, and cannot, speak for "the petroleum industry," as defined in the SCAC. Defendant motor fuel retailers engage in fierce local competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief and, on that basis deny, all allegations concerning what the "petroleum industry" did or did not know, believe, say or do at any time. Defendants specifically deny that the expansion

8

and contraction of motor fuel adversely impacts a purchaser's ability to "accurately assess the true costs incurred in connection with the sale of motor fuel."  Defendants also specifically deny that retail purchasers are subjected to any unlawful unpredictability or inconsistency.

27.    For their answer to paragraph 14 of the SCAC, defendants deny the allegations contained in this paragraph not specifically admitted above.  Defendants lack knowledge and belief and on that basis deny all allegations concerning what the "petroleum industry," as defined in the SCAC, did or did not know, say or do at any time.

28.    For their answer to paragraph 15 of the SCAC, defendants deny the allegations contained in this paragraph not specifically admitted above.  Defendants lack information and belief as to what events transpired at the 16th Annual Meeting of the NCWM in 1923 and, on that basis, deny plaintiffs' characterization of the statement attributed to Howard Estes in this paragraph 15.

29.    For their answer to paragraph 16, Defendants admit that the American Society for Testing and Materials has issued the Standard Guide for the Use of Petroleum Measurement Tables, designated ASTM D1250.  Defendants deny that ASTM D1250 "defines a standard gallon unit of petroleum as 231 cubic inches at 60 degrees Fahrenheit ('U.S. petroleum gallon')." Defendants aver that ASTM D1250 simply provides a methodology for using a volume correction factor to convert measurements of petroleum to alternate conditions.  Defendants further aver that ASTM D1250 is the best evidence of its contents.  Defendants lack information and belief as to what role, if any, the American Petroleum Institute ("API") may have played in the development of ASTM-IP D-1250.

30.    Defendants deny the allegations in paragraph 17 in their entirety.  Defendants aver that paragraph 17 is premised on the false assumption that, in the highly competitive retail

9

market, the unit price of motor fuel will remain the same whether the fuel is sold by the gallon or on a temperature-adjusted basis.

31.     For their answer to paragraph 18 of the SCAC, defendants deny the allegations contained in this paragraph not specifically admitted above.

32.     For their answer to paragraphs 19 through 21 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants specifically deny that the sale of motor fuel measured in gallons is confined solely to the sale of motor fuel to the end-consumer.

**B.  The Science Involved**

33.     For their answer to paragraphs 22 through 26 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants are informed and believe and on that basis admit that a British Thermal Units ("BTU") is defined as the amount of thermal energy required to raise the temperature of one pound of water by one degree Fahrenheit.  The remainder of paragraphs 22-26 contains argument to which no response is required.

**C.  No Unlawful Profit**

34.     For their answer to paragraphs 27 through 32 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants specifically deny that they "are charging consumers more than if they dispensed a U.S. petroleum gallon of motor fuel."

35.     For their answer to paragraphs 33 through 34 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above and state that the factual allegations are unintelligible and, without further clarification, defendants are unable to respond to these paragraphs.  Specifically, plaintiffs aver in paragraph 33 that the "petroleum

10

industry," defined elsewhere in the SCAC as "the entities comprising all levels of United States domestic petroleum exploration, production, refining, distribution and sale," sells motor fuel it "did not buy." Because the "petroleum industry," as defined, includes every level of production and sale, the SCAC begs the question from whom does the petroleum industry *buy* motor fuel that it sells.

36.    For their answer to paragraphs 35 through 38 of the SCAC, (defendants deny the allegations contained in these paragraphs not specifically admitted above. Defendants lack information and belief as to the average temperature of motor fuel sold at retail locations in the United States and in "the Region," and, on that basis, specifically deny these allegations. Defendants also specifically deny that plaintiffs "receive less fuel and are forced to pay more for the motor fuel they purchase than if the fuel were dispensed" based on temperature-adjusted units of measure.

37.    For their answer to paragraph 39 of the SCAC, defendants deny the allegations contained in this paragraph not specifically admitted above.

38.    For their answer to paragraph 40 of the SCAC, defendants deny the allegations contained in this paragraph not specifically admitted above and specifically deny that "consumers pay more than would be expected if the motor fuel were measured" based on temperature-adjusted units.

### D. Temperature Compensation Technology

39.    For their answer to paragraphs 41 through 42 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above. Defendants further aver that, upon information and belief, until the inception of this litigation in December 2006, no authorized state regulatory body within the United States had approved for use any temperature compensation equipment referenced in these paragraphs of the SCAC. Defendants deny

11

plaintiffs' vague allegation that "[t]emperature compensation equipment has been available." Defendants lack information and belief that "[t]emperature compensation equipment . . . automatically adjusts the overall price paid for motor fuel" and, on that basis, specifically deny this allegation.

**E. Temperature Compensation in Canada.**

40.     For their answer to paragraphs 43 through 45 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants, as a group, cannot with a single voice respond to many of the allegations of these paragraphs. Defendant motor fuel retailers engage in fierce local competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief about and, on that basis deny, all allegations concerning what the "petroleum industry" did or did not know, believe, say or do at any time. Moreover, individual defendants have different views relating to the installation of temperature compensation equipment in the United States, and had, and continue to have, different views (including no view whatsoever) regarding the implementation of temperature compensation equipment in Canada.   Indeed, many defendants do not have Canadian retail operations. Defendants are informed and believe and on that basis aver that not all Canadian retailers have installed temperature compensation equipment in their service stations.   Defendants lack information and belief as to the average temperature of motor fuel sold at retail locations in Canada and, on that basis, deny the factual allegations of paragraph 45.  Defendants deny the remainder of the allegations contained in paragraphs 43 through 45 unless specifically admitted herein.

41.     For their answer to paragraph 46 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.

42.     For their answer to paragraphs 47 and 48 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants further aver that not all retailers with Canadian retail operations have elected to install such equipment. The remainder of paragraphs 47 and 48 contain argument to which no response is required.

### F.  Temperature Compensation in the United States

43.     For their answer to paragraphs 49 through 55 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants lack information and belief as to what events transpired at the 16th Annual Meeting of the NCWM in 1923 and, on that basis, deny plaintiffs' characterization of the statement quoted in paragraph 50. Motor fuel retailer defendants engage in fierce local competition in the retail sale of motor fuels; accordingly, defendants lack knowledge and belief and, on that basis deny, the allegations of these paragraphs which are exclusively directed at the "petroleum industry."  To the extent any of the allegations in these paragraphs are directed at individual defendants, defendants, as a group, cannot with a single voice admit or deny the allegations of these paragraphs.  Individual defendants have different views concerning the implementation of temperature-adjusted sales of motor fuels in the United States (including no view at all).  Defendants specifically deny that consumers have suffered any economic loss as a result of sales of motor fuel at varying temperatures.

44.     For their answer to paragraphs 56 through 58 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  To the extent any of these allegations are directed at individual defendants, defendants, as a group, cannot with a single voice admit or deny the allegations of these paragraphs.  Defendants deny that they, individually or collectively, have "pressured manufacturers of available automatic temperature compensation equipment and retrofit kits not to sell such equipment in the United States,"

13

including Gilbarco.  Defendants also deny that they have knowingly propounded flawed data and information to the public "in an effort to bolster their resistance to implementing temperature correction at retail."  Defendants lack information and belief and on that basis deny that they, collectively or individually, "estimated total replacement costs to be in excess of $6 billion, if temperature adjustment equipment were mandated for each retail motor pump" or that "industry officials have reduced their estimate to approximately $2.2 billion."

### G.  Retail Sales in the United States

45.     For their answer to paragraphs 59 and 60 of the SCAC, defendants cannot respond with a single voice to the factual allegations in paragraph 60 that "when acting as franchisors, the [d]efendants control the specifications of the motor fuel dispensing devices at their franchisees' retail locations and prohibit their franchisees from installing temperature correction equipment." Those defendants that employ a "franchise" system of distribution and sale do so pursuant to contracts whose terms speak for themselves.  Defendants further aver that some of them sell their branded motor fuel to independent retailers who control the specifications of the motor fuel dispensing devices located on their premises.

46.     For their answer to paragraphs 61 through 65 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.  Defendants Shell and Pilot specifically deny the allegations in paragraph 62 that they have begun placing placards at stations owned and operated by them.

### H.  Federal Excise Taxes

47.     For their answer to paragraphs 66 through 76 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.   Defendants specifically deny that they receive any "windfall monies" as a result of their pricing practices. As plaintiffs have admitted elsewhere, consumers pay a price for motor fuel set by competition.

1659214v1

*See, e.g.,* Plaintiffs' Opposition to Motion to Dismiss, p. 24 (referencing "*Defendants' aggressive competition on price in retail fuel markets*").

## IV.     SUMMARY OF ALLEGATIONS

48.     For their answer to paragraph 77 of the SCAC, defendants aver that this paragraph repeats the central allegations of plaintiffs' theory of the case and constitutes argument to which no response is required.  To the extent paragraph 77 contains any additional factual allegations to which response is required, defendants deny all material factual allegations of this paragraph.

## V.     <u>CLASS ACTION ALLEGATIONS</u>

49.     For their answer to paragraphs 78 through 80 of the SCAC, defendants admit that plaintiffs purport to bring this lawsuit as a class action and admit that these paragraphs purport to state plaintiffs' alleged class claims.  Defendants deny the remaining allegations contained in paragraphs 78 through 80 not specifically admitted herein and further deny that these cases are appropriate for class action treatment.

50.     For their answer to paragraph 81 of the SCAC, defendants deny the allegations of this paragraph and further specifically deny that plaintiffs are alleging any cause of action against them that has not been expressly pleaded in any of the plaintiffs' Complaints.

51.     For their answer to paragraph 82 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore deny the same.  Defendants further deny that these cases are appropriate for class action treatment.

52.     For their answer to paragraph 83 of the SCAC, defendants deny that any of the questions of law and fact set forth in this paragraph are common to plaintiffs' alleged class.

1659214v1

Defendants further deny that these cases are appropriate for class treatment and deny that common questions of law and fact predominate over individual issues.

53.     For their answer to paragraph 84 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations that plaintiffs purchased motor fuel from one or more of the defendants within the "Region," and therefore, deny the same.  Defendants deny the remaining allegations contained in this paragraph and specifically deny that these cases are appropriate for class treatment and that the claims of the named plaintiffs are typical of the claims of the plaintiffs' proposed class.

54.     For their answer to paragraph 85 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and therefore, deny the same.

55.     For their answer to paragraphs 86 through 90 of the SCAC, defendants state that these paragraphs set forth plaintiff's requested relief rather than factual allegations requiring an answer.  Defendants deny that plaintiffs are entitled to the requested relief, deny that these cases are appropriate for class treatment and deny all allegations of paragraphs 86 through 90.

56.     Defendants deny the allegations contained in paragraphs 91 and 92 of the SCAC and deny that these cases are appropriate for class treatment.

57.     For their answer to paragraph 93 of the SCAC, defendants deny that these cases are appropriate for class treatment, deny that common questions of law and fact predominate over individual issues, deny that class actions would be superior to other available methods for the adjudication of this controversy, deny that certifying class actions would be either fair or efficient and deny the remaining allegations of paragraph 93, including all subparts.

## VI.    CAUSES OF ACTION

### COUNT I

### UNJUST ENRICHMENT – FEDERAL FUEL "TAX"

58.    For their response to paragraph 94 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 93 as if fully set forth herein.

59.    Defendants deny the allegations in paragraphs 95 through 99 of the SCAC.

### COUNT II

### UNJUST ENRICHMENT – STATE FUEL "TAX"

60.    For their response to paragraph 100 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 99 as if fully set forth herein.

61.    Defendants deny the allegations in paragraphs 101 through 105 of the SCAC.

### COUNT III

### UNJUST ENRICHMENT – OTHER

62.    For their response to paragraph 106 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 105 as if fully set forth herein.

63.    For their answer to paragraphs 107 and 109 of the SCAC, defendants deny the allegations contained in these paragraphs not specifically admitted above.

64.    Defendants deny the allegations in paragraph 108 of the SCAC.

65.    For their answer to paragraph 110 of the SCAC, defendants lack information and belief as to the average temperature of motor fuel sold at retail locations in the United States and in "the Region," and, on that basis, deny the allegations contained in this paragraph.

66.    Defendants deny the allegations in paragraph 111 of the SCAC.

67.    For their response to paragraph 112 of the SCAC, defendants deny the allegations in paragraph 112 not specifically admitted above.

68.    Defendants deny the allegations in paragraphs 113 through 119 of the SCAC.

1659214v1

## COUNT IV
## BREACH OF CONTRACT

69.     For their response to paragraph 120 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 119 as if fully set forth herein.

70.     For their answer to paragraphs 121 through 129 of the SCAC, defendants state that these paragraphs contain legal argument to which no response is required.

71.     Defendants deny the allegations in paragraphs 130 through 136 not specifically admitted above.

72.     Defendants deny the allegations in paragraphs 137 through 139 of the SCAC.

73.     Defendants admit the allegations contained in paragraph 140 of the SCAC.

74.     Defendants deny the allegations in paragraphs 141 through 144 of the SCAC.

## COUNT V
## DUTY OF GOOD FAITH AND FAIR DEALING

75.     For their response to paragraph 145 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 144 as if fully set forth herein.

76.     For their answer to paragraphs 146 through 148 of the SCAC, defendants are generally without knowledge or information sufficient to form a belief as to the truth of the allegations as to who actually purchased fuel from one or more defendants and whether all plaintiffs performed their obligations under such sales transactions and agreements, and therefore deny the same.  Plaintiffs' allegations regarding a duty of good faith and fair dealing in the performance of such sales transactions and agreements are legal conclusions to which no response is required.  Defendants deny all allegations in these paragraphs not specifically admitted herein.

77.     Defendants deny the allegations contained in paragraphs 149 through 151 of the SCAC.

1659214v1

## COUNT VI
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

78.     For their response to paragraph 152 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 151 as if fully set forth herein.

79.     For their answer to paragraphs 153 through 158 of the SCAC, defendants state that plaintiffs' allegations regarding whether the sale of gasoline is governed by Article 2 of the Uniform Commercial Code, the presence and application of implied warranties and related allegations constitute legal argument to which no response is required.  Defendants are generally without knowledge or information sufficient to form a belief as to the truth of the allegations as to who actually purchased fuel from one or more defendants and whether all plaintiffs performed their obligations under such sales transactions and agreements, and therefore deny the same.

80.     Defendants deny the allegations contained in paragraphs 159 and 160 of the SCAC.

## COUNT VII
## CIVIL CONSPIRACY

81.     For their response to paragraph 161 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 160 as if fully set forth herein.

82.     Defendants deny the allegations contained in paragraphs 162 through 166 of the SCAC.

## COUNT VIII
## VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT

83.     For their response to paragraph 167 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 166 as if fully set forth herein.

84.     For their answer to paragraphs 168 and 169 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

85.     For their answer to paragraphs 170 and 171 of the SCAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

86.     Defendants deny the allegations contained in paragraphs 172 through 179 of the SCAC.

## COUNT IX
## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT

87.     For their response to paragraph 180 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 179 as if fully set forth herein.

88.     For their answer to paragraphs 181 and 182 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

89.     Defendants deny the allegations contained in paragraphs 183 through 189 of the SCAC.

## COUNT X
## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

90.     For their response to paragraph 190 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 189 as if fully set forth herein.

91.     For their answer to paragraphs 191 and 192 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

92.     Defendants deny the allegations contained in paragraphs 193 through 197 of the SCAC.

## COUNT XI

## VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE

93.     For their response to paragraph 198 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 197 as if fully set forth herein.

94.     For their answer to paragraph 199 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore, deny the same.

95.     Defendants deny the allegations contained in paragraphs 200 through 203 of the SCAC.

## COUNT XII

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (California Civil Code 1770, et. seq.)

96.     For their response to paragraph 204 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 203 as if fully set forth herein.

97.     For their answer to paragraphs 205 and 209 through 211 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

98.     Defendants deny the allegations contained in paragraphs 206 through 208 of the SCAC.

## COUNT XIII

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT (Fla. Stat. § 506.21 et. seq.)
## AND SECTION 526.01

99.     For their response to paragraph 212 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 211 as if fully set forth herein.

100.     For their answer to paragraphs 213 and 214 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

101.     For their answer to paragraph 215 of the SCAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

102.     Defendants deny the allegations contained in paragraphs 216 through 218 of the SCAC.

**COUNT XIV**

**VIOLATIONS OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT**

103.     For their response to paragraph 219 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 218 as if fully set forth herein.

104.     For their answer to paragraphs 220 and 221 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

105.     For their answer to paragraph 222 of the SCAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

106.     Defendants deny the allegations contained in paragraphs 223 through 226 of the SCAC.

**COUNT XV**

**VIOLATIONS OF THE GUAM DECEPTIVE TRADE PRACTICE – CONSUMER PROTECTION ACT (5 GCA § 32101 et seq.)**

107.     For their response to paragraph 227 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 226 as if fully set forth herein.

108.    For their answer to paragraph 228 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore, deny the same.

109.    For their answer to paragraphs 229 through 231 of the SCAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

110.    Defendants deny the allegations contained in paragraphs 232 through 239 of the SCAC.

## COUNT XVI
## VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

111.    For their response to paragraph 240 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 239 as if fully set forth herein.

112.    For their answer to paragraph 241 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

113.    For their answer to paragraphs 242 and 243 of the SCAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

114.     Defendants deny the allegations contained in paragraphs 244 through 250 of the SCAC.

## COUNT XVII
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT

115.    For their response to paragraph 251 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 250 as if fully set forth herein.

116.    For their answer to paragraph 252 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

1659214v1

117.     For their answer to paragraphs 253 and 254 of the SCAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

118.     Defendants deny the allegations contained in paragraphs 255 through 259 of the SCAC.

## COUNT XVIII

### VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT

119.     For their response to paragraph 260 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 259 as if fully set forth herein.

120.     For their answer to paragraph 261 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

121.     For their answer to paragraphs 262 and 263 of the SCAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

122.     Defendants deny the allegations contained in paragraphs 264 through 268 of the SCAC.

## COUNT XIX

### VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

123.     For their response to paragraph 269 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 268 as if fully set forth herein.

124.     For their answer to paragraph 270 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

125.     For their answer to paragraphs 271 and 272 of the SCAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

1659214v1

126.     Defendants deny the allegations contained in paragraphs 273 through 278 of the SCAC.

## COUNT XX

## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (Md. Code Ann., Com. Law § 13-101 et seq.)

127.     For their response to paragraph 279 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 278 as if fully set forth herein.

128.     For their answer to paragraph 280 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

129.     For their answer to paragraphs 281 through 283 of the SCAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

130.     Defendants deny the allegations contained in paragraphs 284 through 290 of the SCAC.

## COUNT XXI

## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

131.     For their response to paragraph 291 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 290 as if fully set forth herein.

132.     For their answer to paragraphs 292 and 293 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

133.     Defendants deny the allegations contained in paragraphs 294 through 298 of the SCAC.

1659214v1

## COUNT XXII

## VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

134.    For their response to paragraph 299 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 298 as if fully set forth herein.

135.    For their answer to paragraph 300 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

136.    Defendants deny the allegations contained in paragraphs 301 through 305 of the SCAC.

## COUNT XXIII

## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. § 56:8-1 et seq.)

137.    For their response to paragraph 306 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 305 as if fully set forth herein.

138.    For their answer to paragraph 307 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

139.    For their answer to paragraph 308 of the SCAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

140.    Defendants deny the allegations contained in paragraphs 309 through 313 of the SCAC.

## COUNT XXIV

## VIOLATIONS OF THE NEW MEXICO DECEPTIVE TRADE PRACTICES ACT

141.    For their response to paragraph 314 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 313 as if fully set forth herein.

1659214v1

142.     For their answer to paragraph 315 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

143.     For their answer to paragraph 316 of the SCAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

144.     Defendants deny the allegations contained in paragraphs 317 through 322 of the SCAC.

## COUNT XXV

### VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. Gen. Stat. § 75-1 et seq.)

145.     For their response to paragraph 323 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 322 as if fully set forth herein.

146.     For their answer to paragraph 324 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

147.     Defendants deny the allegations contained in paragraphs 325 through 329 of the SCAC.

## COUNT XXVI

### VIOLATIONS OF THE OKLAHOMA CONSUMER PROTECTION ACT

148.     For their response to paragraph 330 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 329 as if fully set forth herein.

149.     For their answer to paragraphs 331 and 332 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

1659214v1

150.    Defendants deny the allegations contained in paragraphs 333 through 337 of the SCAC.

## COUNT XXVII
### RECOVERY UNDER OKLAHOMA TITLE 52 § 391

151.    For their response to paragraph 338 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 337 as if fully set forth herein.

152.    Defendants deny the allegations contained in paragraphs 339 and 340 of the SCAC.

## COUNT XXVIII
### VIOLATIONS OF THE OREGON UNFAIR TRADE PRACTICES ACT

153.    For their response to paragraph 341 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 340 as if fully set forth herein.

154.    For their answer to paragraph 342 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

155.    For their answer to paragraphs 343 and 344 of the SCAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

156.    Defendants deny the allegations contained in paragraphs 345 through 350 of the SCAC.

## COUNT XXIX
### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

157.    For their response to paragraph 351 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 350 as if fully set forth herein.

1659214v1

158.     For their answer to paragraph 352 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

159.     For their answer to paragraphs 353 and 354 of the SCAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

160.     Defendants deny the allegations contained in paragraphs 355 through 360 of the SCAC.

## COUNT XXX
### VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

161.     For their response to paragraph 361 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 360 as if fully set forth herein.

162.     For their answer to paragraphs 362 and 363 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

163.     For their answer to paragraph 364 of the SCAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

164.     Defendants deny the allegations contained in paragraphs 365 through 370 of the SCAC.

## COUNT XXXI
### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES –
### CONSUMER PROTECTION ACT (Tex. Bus. & Comm. Code § 17.41 et seq.)

165.     For their response to paragraph 371 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 370 as if fully set forth herein.

1659214v1

166.    For their answer to paragraphs 372, 374 and 382 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

167.    For their answer to paragraphs 373 and 375 of the SCAC, defendants state that these paragraphs are statements of the law rather than fact, and therefore no answer is required.

168.    Defendants deny the allegations contained in paragraphs 376 through 381 and paragraph 383 of the SCAC.

## COUNT XXXII
### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT

169.    For their response to paragraph 384 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 383 as if fully set forth herein.

170.    For their answer to paragraph 385 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

171.    For their answer to paragraph 386 of the SCAC, defendants state that this paragraph is a statement of the law rather than fact, and therefore no answer is required.

172.    Defendants deny the allegations contained in paragraphs 387 through 389 of the SCAC.

## COUNT XXXIII
### VIOLATIONS OF THE UTAH TRUTH IN ADVERTISING ACT

173.    For their response to paragraph 390 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 389 as if fully set forth herein.

174.    For their answer to paragraph 391 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

1659214v1

175.     For their answer to paragraph 392 of the SCAC, defendants admit that some, but not all defendants advertised and continue to advertise the sale of motor fuel within the state of Utah.

176.     Defendants deny the allegations contained in paragraphs 393 through 395 of the SCAC.

## COUNT XXXIV
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT OF 1977
### (Va. Code Ann. § 59.1.196, et seq.)

177.     For their response to paragraph 396 of the SCAC, defendants incorporate their answers and responses to paragraphs 1 through 395 as if fully set forth herein.

178.     For their answer to paragraph 397 of the SCAC, defendants are without knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore deny the same.

179.     For their answer to paragraphs 398 through 400 of the SCAC, defendants state that these paragraphs are a statement of the law rather than fact, and therefore no answer is required.

180.     Defendants deny the allegations contained in paragraphs 401 through 406 of the SCAC.

181.     Defendants deny any and all allegations contained in the SCAC not specifically admitted herein.


## JURISDICTIONAL CHALLENGES

Some defendants do not sell motor fuel at retail or own, operate or control the operations of some or all of the retail stations that advertise or sell motor fuel under their brand

name in some or all of the jurisdictions at issue in cases in which they are named.  The Court may lack subject matter jurisdiction over the plaintiffs' claims in these cases because the plaintiffs may lack standing to assert their claims against these defendants for reasons explained more fully below.  As the Court has recognized in Scheduling Order No. 2, a challenge to subject matter jurisdiction may be made at *any* time, and all defendants preserve their right to challenge the Court's subject matter jurisdiction as more facts become known.

By the contemplated motions brought under Rule 12(b)(1), and without waiver by other defendants to raise such motions, the following defendants presently intend to seek dismissal of the claims of numerous individual plaintiffs who purport to assert claims they lack standing to assert:

> Allsup's Convenience Stores, Inc.,
> AMBEST, Inc.,
> B-B Oil Company, Incorporated,
> BP America Inc.,
> BP Corporation North America Inc.,
> BP Products North America Inc.,
> BP West Coast Products LLC,
> Chevron USA, Inc.,
> Circle K Stores, Inc.,
> CITGO Petroleum Corporation,
> Coastal Mart, Inc.
> Coastal Mart of Oklahoma,
> ConocoPhillips Company,
> Costco,
> Coulson Oil Company,
> Diamond State Oil LLC,
> E-Z Mart Stores, Inc.,
> Equilon Enterprises LLC,
> ExxonMobil,Flash Market, Inc.
> Fort Smith Petroleum Equipment, Inc.,
> Freeman Oil Company,
> Frost Petroleum Equipment, LLC,
> Gardner Oil,
> Hess Corporation,
> J&P Flash, Inc.,
> L&L Oil Company, Inc.,

La Sher Oil Company,
Ligon Oil Company, Inc.,
Love's Travel Stops & Country Stores, Inc.,
Magness Oil Company,
Marathon Oil Company,
Marathon Petroleum Company LLC,
MFA Oil Company,
Motiva Enterprises LLC,
Murphy Oil Corporation,
Murphy Oil USA, Inc.,
Petro Stopping Centers,
Petromark, Inc.,
Pilot Travel Centers LLC,
Port Cities Oil, LLC,
Presto Convenience Stores, LLC,
QuikTrip Corporation
Rivercity Energy Company, Inc.,
Sam's East, Inc,
7-Eleven, Inc.
Shell Oil Company,
Shell Oil Company, LLC,
Shell Oil Company, Inc.,
Shell Oil Products Company LLC,
Sinclair Oil Corporation,
South Pacific Petroleum Corporation,
Southwest Convenience Stores,
Speedway Petroleum Corporation,
Speedway SuperAmerica LLC,
Star Fuel Marts, LLC,
Sunoco, Inc. (R&M),
Tesoro Corp.,
The Kroger Co.,
The Pantry, Inc.,
Thomas Petroleum, Inc.,
Thorntons Inc.,
Total Petrochemicals USA, Inc.,
TravelCenters of America,
United El Segundo, Inc.,
Valero Energy Corporation,
Valero Marketing and Supply Company,
Wal-Mart Stores, Inc.,
WilcoHess, LLC,
World Oil Corp.

To have standing a plaintiff must establish three elements: (1) a personal injury in fact; (2) that is fairly traceable to the defendant's allegedly unlawful conduct; and (3) that is likely to be redressed by the requested relief. The law is clear that plaintiffs have the threshold burden of showing that they suffered a redressable injury as a result of the defendant's conduct.

The moving defendants presently contemplate that their motions will be directed toward either or both of two groupings of plaintiffs:

> (i) a group of plaintiffs who allege they purchased motor fuel in states in which defendants have not owned or operated any retail service stations during the longest applicable period of limitations; and

> (ii) a group of plaintiffs who allege they purchased motor fuel in states in which defendants have owned or operated only a small fraction of the service stations that sell their branded motor fuels during the longest applicable period of limitations.

None of the plaintiffs coming within the first grouping has made, or can make, the constitutionally-required showing that a redressable injury can be traced to a defendant's conduct; thus, plaintiffs' claims must be dismissed with prejudice. Plaintiffs coming within the second grouping can make the required showing only by presenting additional facts to establish that they in fact purchased motor fuel from the moving defendant during a relevant time period. Absent this constitutionally-required showing, plaintiffs' claims must be dismissed.

Additionally, defendants named in complaints alleging overcollection of fuel taxes from consumers may file Rule 12(b)(1) motions with regard to at least the following taxing jurisdictions: federal, Alabama, Arkansas, California, Florida, Georgia, Guam, Kentucky, Mississippi, Nevada, New Mexico and Texas. While the precise contours of the motions may vary from jurisdiction to jurisdiction, the basic thrust will be that the fuel excise tax law places the legal incidence of the tax on the entities in the wholesale distribution chain (generally

referred to as the position holder or supplier) and not on consumers.  Since consumers in these jurisdictions are not legally responsible for such taxes and pay no such taxes, they have no standing to sue as to those taxes.  To ease the burden on the Court, defendants may select one or two jurisdictions on which to seek the Court's rulings before proceeding to the others.

## DEFENSES

For their defenses to the claims asserted in the SCAC, defendants set forth the following, which represent defenses common to all defendants.  Consistent with this Court's Scheduling Order No. 2, this answer shall be used solely as an MDL administrative and procedural tool.  As such, failure to include a defense, whether applicable to a single or multiple defendants, shall not constitute a waiver of any such defense.  Further, no defenses personal to any defendant, including for purposes of illustration only, lack of personal jurisdiction, improper service and improper venue, are asserted herein and are reserved until such time that answers to the Complaints in the individual consolidated lawsuits are filed.

## FIRST DEFENSE

[IMMUNITY/SPECIFIC AUTHORIZATION/SAFE HARBOR]  Plaintiffs' and putative class members' claims are barred, in whole or in part, and defendants are immune from suit because state and territorial statutes and related regulations specifically permit defendants' retail method of sale of fuel and any contrary interpretation of state law would conflict with federal and state statutory schemes that comprise a comprehensive regulatory policy governing the sale of motor fuel.

## SECOND DEFENSE

[ILLEGALITY] Plaintiffs' and putative class members' claims are barred, in whole or in part, because their claims seek an illegal method of sale of retail motor fuel.

35

1659214v1

## THIRD DEFENSE

[IMPRACTICABILITY and IMPOSSIBILITY] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the doctrines of impracticability and/or impossibility because their claims seek a retail method of sale of motor fuel which is impracticable and/or impossible.

## FOURTH DEFENSE

[TIME BARS] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the applicable statutes of limitations and any other time bars applicable in any state or territory.

## FIFTH DEFENSE

[WAIVER]  Plaintiffs' and putative class members' claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTH DEFENSE

[EQUITABLE DEFENSES] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the equitable doctrines of laches, estoppel and availability of adequate remedies at law.

## SEVENTH DEFENSE

[ARBITRATION AND AWARD] Certain plaintiffs and putative class members have entered into agreements with certain defendants to arbitrate their disputes in other forums.

## EIGHTH DEFENSE

[UCC DEFENSES TO WARRANTY CLAIMS—DISCLAIMERS] Plaintiffs' and putative class members' claims for breach of implied warranty are barred due to disclaimer of or limitations on warranties.

**NINTH DEFENSE**

[UCC DEFENSES TO WARRANTY CLAIMS—NOTICE] Plaintiffs and putative class members have failed to comply with the applicable provisions of commercial law by failing to give reasonable notice to defendants of alleged breaches of warranty.

**TENTH DEFENSE**

[JUSTICIABILITY] Plaintiffs' and putative class members' claims are barred, in whole or in part, because the claims are not justiciable as a case or controversy, which is necessary for subject matter jurisdiction. In particular, Plaintiffs' claims must be dismissed with prejudice because they amount to political questions for which this Court lacks subject matter jurisdiction.

**ELEVENTH DEFENSE**

[PREEMPTION]  Plaintiffs' claims are barred, in whole or in part, by the Supremacy Clause of the United States Constitution,  article VI, § 2, because those claims are preempted and/or precluded by federal law, including, but not limited to, the United States Constitution, article I, § 8 [5], which gives to Congress the power to fix the standard of weights and measures, 15 U.S.C. § 272 *et seq*., and the system created by Congress, whereby federal regulators and state legislators and regulators set weights and measures standards.

**TWELFTH DEFENSE**

[ABSTENTION, PRIMARY JURISDICTION and COMITY]  Plaintiffs' and putative class members' claims are barred, in whole or in part, by the doctrines of abstention, primary jurisdiction and comity in so far as Congress, and through delegation, state Departments of Agriculture and/or related Divisions of Weights and Measures and/or state equivalents are vested with jurisdiction to regulate the purchase and sale of motor fuel.

## THIRTEENTH DEFENSE

[PRIVITY]  Plaintiffs' and putative class members' claims are barred by lack of privity.

## FOURTEENTH DEFENSE

[JOINDER]  Plaintiffs' and putative class members' claims are barred by their failure to join necessary or indispensable parties.

## FIFTEENTH DEFENSE

[SET-OFF] Defendants are entitled to set-off and recoupment, should any monetary remedy be awarded against them.

## SIXTEENTH DEFENSE

[NOERR-PENNINGTON DOCTRINE] Plaintiffs' and putative class members' conspiracy claims are barred by the Noerr-Pennington Doctrine and the First and Fourteenth Amendments of the United States Constitution, and other applicable state or territorial law or constitutional provisions protecting freedom of speech and assembly and the right to petition the government.

## SEVENTEENTH DEFENSE

[STATE AND FEDERAL CONSTITUTIONAL DEFENSES] Defendants plead all constitutional limitations on liability and damages.  Plaintiffs' and putative class members' claim for punitive damages against defendants cannot be sustained, because any award of punitive damages under law, which would be penal in nature, without according defendants the same protections that are accorded to all criminal defendants would violate defendants' rights of due process.

## EIGHTEENTH DEFENSE

[ECONOMIC LOSS DOCTRINE] Plaintiffs' and putative class members' claims are barred, in whole or in part, by the economic loss doctrine.

## NINETEENTH DEFENSE

[STATE CONSUMER PROTECTION – STATUTORY STANDING] In those states and territories in which consumer protection statutes and/or little FTC Act statutes prohibit or limit certain persons or entities from maintaining such a claim, or otherwise prohibit or limit such claims relating to purchases made for certain purposes, defendants plead that such claims are barred, in whole or in part, to the extent that the claims have been brought by or on behalf of those persons or entities or which relate to those purposes.

## TWENTIETH DEFENSE

[STATE CONSUMER PROTECTION – STATUTORY BAR]  To the extent that any state or territorial statute bars claims on the basis that the conduct complained of is approved, acquiesced in, conflicts with, or comprehensively regulated by a governmental agency or board, or on the basis of a similar limitation, such claim is barred.

## TWENTY-FIRST DEFENSE

[CIVIL CONSPIRACY]  Plaintiffs' and putative class members' claims for civil conspiracy are barred because there is no independent cause of action for civil conspiracy.

## TWENTY-SECOND DEFENSE

[FAILURE TO STATE A CLAIM] Plaintiffs fail to state a claim upon which relief can be granted.

1659214v1

## TWENTY-THIRD DEFENSE

[VOLUNTARY PAYMENT DOCTRINE]  Plaintiffs' and putative class members' claims are barred, in whole or in part, by the voluntary payment doctrine.

## TWENTY-FOURTH DEFENSE

Defendants hereby plead any and all defenses available to them, now or which may hereinafter be applicable.  Defendants reserve the right to amend their answer as discovery progresses to plead additional defenses, and to assert additional cross-claims, counterclaims or third party claims.

## ADDITIONAL INDIVIDUAL DEFENSES APPLICABLE TO PARTICULAR STATES

## ALABAMA

1.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because they failed to make a written demand for relief under Ala. Code § 8-19-10(e).

2.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because no private right of action on behalf of a class exists under the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-10(f).

3.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because defendants did not knowingly engage in the conduct alleged to violate the Alabama Deceptive Trade Practices Act, per Ala. Code § 8-19-13.

## CALIFORNIA

Plaintiffs' and putative class members' claims under the California Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, are barred, in whole or in part, because plaintiffs failed

to give proper notice to defendants at least thirty days before commencing an action for damages under the statute.

### GEORGIA

Plaintiffs' claims for the alleged violation of the Georgia Deceptive Trade Practices Act fail to state a claim for damages because the sole remedy provided under the Georgia Deceptive Trade Practices Act is injunctive relief.

### INDIANA

1.      Plaintiffs' claims under the Indiana Deceptive Consumer Sales Act are barred, in whole or in part, by plaintiffs' failure to give timely notice of those claims.  See Ind. Code § 24-5-0.5-5(a).

2.      Plaintiffs' claims under the Indiana Deceptive Consumer Sales Act are barred, in whole or in part, because plaintiffs have not engaged in any consumer transactions as defined in Indiana Code § 24-5-0.5-2(a)(1).

3.      Plaintiffs' claims under the Indiana Deceptive Consumer Sales Act are barred to the extent plaintiffs seek injunctive relief.   See Ind. Code § 24-5-0.5-4.

### KANSAS

Section 50-634 bars any plaintiff from recovering any civil penalties as provided in Section 50-636.  Kan. Stat. Ann. § 50-634(b) (West 2008).

### LOUISIANA

Putative class members' claims under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq*., are barred, in whole or in part, because a private claim under LUTPA may be brought by a person individually but not in a representative capacity to recover actual damages.

## OKLAHOMA

52 O.S. § 391 does not provide a civil private right of action.

## TEXAS

Plaintiffs and putative class members' claims are barred, in whole or in part, because plaintiffs never delivered to defendants the written notice that is a prerequisite to bringing a suit for violation of the Deceptive Trade Practices Act under Section 17.505(a) of the Texas Business and Commerce Code.

## UTAH

1.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because no private right of action for damages on behalf of a class exists under the Utah Consumer Sales Practices Act, Utah Code § 13-11-19.

2.      Plaintiffs have failed to provide requisite notice prior to bringing an action under the Utah Truth in Advertising Act, Utah Code Ann. 13-11a-4(5).

3.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because defendants did not knowingly and intentionally engage in the conduct alleged to violate the Utah Consumer Sales Practices Act.  Utah Code § 13-11-4(2).

4.      Plaintiffs' and putative class members' claims are barred, in whole or in part, because defendants had no knowledge that the represented price was not genuine and had made reasonable efforts to determine whether the represented price was genuine.  Utah Code § 13-11a-3(4).

42

## PRAYER FOR RELIEF

Having fully answered plaintiffs' SCAC, defendants pray to be dismissed, for their costs incurred in defending these lawsuits, for attorneys' fees where available by law, including fees and costs available under any state consumer protection statutes, and for such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Martin M. Loring      KBA # 20840
Martin M. Loring
Husch Blackwell Sanders, LLP
4801 Main Street, Suite 1000
Kansas City  MO  64112
816-983-8142
816-983-8080 (fax)
Martin.loring@huschblackwell.com

Defendants' Liaison Counsel

43

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the District of Kansas, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons on this 12th day of January, 2009.

/s/<u>Martin M. Loring</u>
Martin M. Loring

44

1659214v1