IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | MDL No. 1840 |
| | ) | |
| (This Document Relates to All Cases) | ) | Case No. 07-MD-1840-KHV |
| _____ | ) | |

## SCHEDULING ORDER NO. 3

On November 4, 2009, following up on status conferences with the parties' liaison and lead counsel, the undersigned U.S. Magistrate Judge, James P. O'Hara, filed an order (doc. 1406). The status conference order noted several major structural concerns about future practice and procedure in this MDL proceeding. Most notably, those concerns included finding an efficient way to manage the dozens of recently filed motions for class certification (and various other dispositive and non-dispositive motions) and minimizing the risk of piecemeal rulings, re-litigation of conditional class certification and dispositive motion rulings by transferor courts, multiple or unnecessarily protracted appeals, and appeals to circuits that have no relation to the issues in controversy. The parties were directed to confer and then suggest ways to address these concerns, specifically outlining their proposals about not only what should be done, and when, but why it makes sense for this Court – as opposed to the respective transferor courts – to engage in the litigation process given that fact discovery is nearly complete. On November 16, 2009, after a lengthy and productive meet-and-confer process, the parties filed a joint motion (**doc. 1423**) for entry of Scheduling Order

No. 3.[1]   The instant motion reflects agreement on many case-management issues, e.g., staying all but very isolated discovery pending a conditional ruling on at least one motion for class certification.   The parties' agreements and separately stated positions have been fully considered by Judge O'Hara and by Kathryn H. Vratil, the U.S. District Judge who is presiding in this MDL proceeding.   The parties' joint motion is granted in part and denied in part, on the terms set forth below.

## I.   CLASS CERTIFICATION

In early June 2009, plaintiffs filed 32 separate motions to certify various proposed classes in the multiple cases joined in this MDL proceeding (docs. 1088-90, 1095-99, 1102-04, 1106-08, 1110-21, 1123, 1125-28, 1131, & 1134).   As relates to applying Fed. R. Civ. P. 23, the parties have stipulated in their joint motion that the following questions are presented in most, if not all, of the pending certification motions:[2]

---

[1] Scheduling Order No. 2 was filed on April 4, 2008 (doc. 388).   Some of the deadlines in Scheduling Order No. 2 have been extended (*see* docs. 1229, 1406, & 1428). As things currently stand, fact discovery must be completed by January 18, 2010, with expert disclosure and summary judgment motion deadlines running into December 2010.

[2] Plaintiffs maintain that four cases raise claims related *solely* to defendants' fuel tax reimbursement methodologies: *VanDyne et al v. Murphy Oil Company Inc et al,* KS Case No. 2:07-cv-02284-KHV-JPO; *Ditzfeld Transfer, Inc. v. Pilot Travel Centers, LLC et al,* KS Case No. 2:07-cv-02283-KHV-JPO; *Rutherford et al v. Racetrac Petroleum, Inc.*, KS Case No. 2:07-cv-02390-KHV-JPO; and *Cozza, et al. v. Murphy Oil, et al.*, KS Case No. 2:07-cv-02394.   Plaintiffs' counsel in those four cases believe the six basic agreed common certification questions as set forth in the instant motion and this order do not apply to the motions to certify those four cases to the extent these common certification questions reference fuel temperature, for the reason set forth in the motions to certify in those cases (*see, e.g. Ditzfeld* Motion to Certify (doc. 1114)).   Defendants disagree, i.e., as outlined in their briefs in opposition to the four motions, defendants believe these four cases raise similar class certification issues related to fuel temperature as the other cases in this litigation.   In

    (1)     Do common questions predominate?[3]

    (2)     Is the class ascertainable?[4]

    (3)     Do intra-class conflicts exist?[5]

    (4)     Is the class manageable?[6]

---

any event, the Court simply notes that none of the four cases in question were commenced in the District of Kansas – all four simply were transferred here for MDL purposes.

[3] Specifically, defendants argue that a finding of predominance is precluded because the following issues are not susceptible of class-wide proof: (a) whether class members purchased fuel above 60° F from the defendant against whom certification is sought; (b) whether class members would have paid less or received more fuel for the same price had each transaction been on a temperature-adjusted basis; (c) whether the fuel purchased by class members was purchased by defendants at wholesale on a temperature-adjusted basis; (d) whether class members purchased more fuel above 60° F than below 60° F; (e) whether defendants' conduct caused injury to plaintiffs; and (f) whether a common methodology exists for proving damages. Conversely, plaintiffs argue that common questions predominate because there are class-wide sources of proof enabling plaintiffs to prove these issues.

[4] Defendants argue the class cannot be ascertained because allegedly no class member knows the temperature of the motor fuel at the time of purchase or whether the gas station at issue is "controlled" by a defendant. Plaintiffs argue that, although some class members do know the temperature of the motor fuel at the times of some of their purchases, this issue is irrelevant to a certification analysis, and that the proposed classes are therefore ascertainable.

[5] Defendants argue that certain groups oppose automatic temperature control ("ATC"), thereby precluding findings of typicality, adequacy of representation, and class cohesiveness. Plaintiffs dispute this contention and its relevancy to class certification.

[6] Defendants argue that class members are located all over the world, that these class members will have to prove individual damages, that "fluid recovery" is not an option, and that defendants are entitled to set-off on an individual basis. Plaintiffs argue that defendants are not legally entitled to a set-off, and further that a fluid recovery damages methodology would moot this point; in any event, plaintiffs assert that defendants' claims do not preclude a finding of manageability.

(5)     Is the predominant relief sought injunctive or monetary?[7]

(6)     Is a class action a superior method for resolving the controversy?  Should the issues be resolved by legislative and regulatory policy-makers?

The instant motion also reflects the parties' agreement that, at a minimum, resolution of the above-described questions in the context of one (or a few) of the 32 pending class certification motions would be instructive on the same or similar questions presented in the other class certification motions.   The parties differ, as noted below, on how these questions should be addressed.

As plaintiffs point out, the Court's November 4, 2009 order strongly encouraged the parties to select no more than three certification motions for the Court to consider, such as the purportedly narrowest proposed class (the *Lerner* case (*see* doc. 1088)),[8] the purportedly broadest proposed class (the *Rushing* case (*see* doc. 1132)),[9] and/or the proposed class in Kansas (the *Wilson* and *American Fiber* cases (*see* doc. 1106)).[10]  Further, the parties were

---

[7] Defendants argue and plaintiffs dispute that monetary damages predominate over the injunctive relief plaintiffs seek.  The parties thus disagree about defendants' claim that the alleged predominance of the damages remedy precludes certification of a 23(b)(2)-stand-alone class or certification of a 23(b)(2)-class in combination with a 23(b)(3)-class.  The parties also disagree whether an injunctive class is sufficiently cohesive, based on the intra-class conflicts and many of the same issues described in connection with the 23(b)(3)-predominance requirement.

[8] This proposed class includes consumers in six specified counties in southern California.

[9] This proposed class includes consumers in California, Florida, Texas, Alabama, Georgia, North Carolina, Arizona, South Carolina, and Tennessee.

[10] This proposed class includes consumers in Kansas.

encouraged to withdraw all issues unique to a particular state's law, or at least stipulate that such issues ultimately are not dispositive of class certification in the MDL context.

Plaintiffs state in the instant motion that they believe the approach suggested by the Court is sound and should be adopted.  Unfortunately, for a variety of stated reasons, defendants are unwilling to stipulate to the suggested key-issues approach.  But even defendants acknowledge that a complete resolution of the issues presented in the Kansas motion would be "highly instructive" to the parties as to this Court's (and any transferor court's) propensity to rule on the same questions presented in the certification motions pending in all of the other constituent cases.

Defendants suggest that a ruling limited to all issues presented by the Kansas class certification motion (doc. 1106) would present the most efficient and cost-effective approach to prepare these cases for ultimate remand to the transferor courts, while most appropriately preserving the parties' rights.  According to defendants, disposition of the Kansas motion in its entirety, as opposed to disposition only of the key issues applicable to all the class certification motions, more appropriately comports with the consolidation ruling from the Judicial Panel on Multi-District Litigation ("JPML"), complies with the requirements of Fed. R. Civ. P. 23, and maximizes the suitability of any appeal from this Court's ruling(s) to the Tenth Circuit Court of Appeals under Rule 23(f).  Defendants assert that some of the state-specific issues and arguments that would need to be decided in ruling the Kansas class certification motion are: (1) whether certain claims are not recognized under Kansas law; (2) whether certain clams require proof of individual reliance under Kansas law; and (3) whether

the named Kansas plaintiffs did not purchase from some or all of the named Kansas defendants.

Although plaintiffs strongly disagree, defendants suggest that, in connection with the Court's ruling on the Kansas motion, the Court should defer ruling on *any* of the other pending certification motions until such time that: (1) the Tenth Circuit denies a petition for appeal under Rule 23(f); (2) the Tenth Circuit accepts and decides an appeal; or (3) the time for filing a petition under Rule 23(f) expires with no petition having been filed.  Upon exhaustion of all Rule 23(f) appeals, defendants suggest a status conference be held to discuss further procedure as appropriate, including a process to identify the implications the ruling on the Kansas motion has for the other pending certification motions, and whether the remaining cases should be remanded to the transferor courts; defendants state that a single and focused round of briefing on the impact of the ruling on the Kansas motion would occur at that time.

The instant motion reflects agreement that, following the conclusion of the briefing on all of the pending class certification motions (scheduled for December 14, 2009), briefing on defendants' pending *Daubert* motions (scheduled for January 22, 2010), and after any hearing(s) the Court deems appropriate,[11] the class certification issues will be ripe for

---

[11] Defendants believe this Court should consider their pending *Daubert* motions (docs. 1306 & 1308) in connection with its resolution of the Kansas class certification motion and hold an oral argument and evidentiary hearing in connection with the resolution of all three motions.  According to plaintiffs, there is no need for the Court to conduct a separate hearing on defendants' *Daubert* motions because a *Daubert* analysis is not required at the class certification stage.  Of course, the Court has discretion, under D. Kan. Rule 7.2, to grant (or

adjudication.  Having considered and reflected on the parties' competing positions, the Court has determined that, once all the pertinent briefs have been filed, the Court will  decide the Kansas class certification motion.  The Court will decide later whether oral argument, an evidentiary hearing, or both would materially assist resolution of that motion and defendants' related *Daubert* motions.  The Court also will determine later (after all briefing is complete), whether it really is necessary to rule on the stipulated key issues presented in the specific context of the *Lerner* and *Rushing* cases.

Regardless of whether only the Kansas class certification motion is ruled, the Court believes that the stay arrangements suggested by defendants pending resolution of any timely filed Rule 23(f) appeal is most consistent with Fed. R. Civ. P. 1, which calls for the just, speedy, and inexpensive  management of this MDL proceeding.  However, as explained in more detail in Section V below, *if* plaintiffs obtain a favorable class certification ruling, then the Court will require the parties to engage promptly in mediation or another alternative dispute resolution ("ADR") process regardless of any Rule 23(f) appeal.

## II.  REMAINING DISCOVERY

Per the parties' agreement, all "written" discovery and depositions shall be stayed until the Court rules on the certification motion(s) referenced above.  The Court agrees with the parties that this stay will allow the parties to conserve their resources until receiving the benefit of the certification ruling.

---

decline) an oral argument and evidentiary hearing for *any* motion.

The stay includes any party's obligation to supplement its initial disclosures under Fed. R. Civ. P. 26(e)(1) and Scheduling Order No. 2.  As agreed by the parties, the stay excludes: (1) discovery related to certification experts; (2) discovery that might be ordered should Judge Vratil change her present inclination to defer ruling on the outstanding issue of defendants' alleged First Amendment privilege in the context of the parties' cross-motions for review of Judge O'Hara's discovery rulings (docs. 1195 & 1214); and (3) discovery as later may be agreed by the specific parties concerned, or as permitted by the Court upon motion by a party for good cause shown.

After Judge Vratil makes her class certification decision, the Court will convene a status conference, as agreed by the parties.  The basic purpose of this conference will be to determine the scope and timing of the remaining discovery (including fact discovery and any discovery related to merits experts to be conducted in this Court, if any) before the dissolution of this MDL and remand of constituent cases to their respective transferor courts.

As earlier indicated, the current fact discovery cutoff is January 18, 2010 (*see* doc. 1406 at 2).  The Court is mindful that plaintiffs' most recently stated position is that four months should be allowed to complete fact discovery after a class certification motion has been ruled, while defendants argue that at most two months should be allowed, provided the Court finds plaintiffs have shown good cause for *any* extension of fact discovery (*id*. at 1-2).  Assuming the constituent MDL cases remain in this District instead of just being sent back to the transferor courts, the Court will decide later how much time to allow for discovery.  For now, though, all parties and counsel should bear in mind that they probably will be

expected to complete fact discovery more along the lines of what defendants have suggested. Also, if the Tenth Circuit declines to permit an interlocutory appeal of Judge Vratil's ruling on class certification (whether in favor of plaintiffs or defendants), or at the conclusion of any such appeal, she intends to place at least the two Kansas cases on a very fast track for trial.

## III.  DISPOSITIVE MOTIONS

Five dispositive motions are pending before Judge Vratil: (1) certain defendants' motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment, based on the political-question doctrine (doc. 1242);[12] (2) defendant Citgo Petroleum Corporation's motion for summary judgment (doc. 742);[13] (3) defendant Marathon Petroleum Company LLC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) (doc. 684) (which has been converted to a motion for summary judgment by court order (*see* doc. 735));[14] (4) defendant Marathon's motion for summary judgment (doc. 1254);[15] and (5) the

_____

[12] Defendants believe this motion is dispositive of *all* claims in the MDL proceeding. The motion relies upon application of federal law to common fact issues regarding lack of Article III subject matter jurisdiction.  There do not appear to be any issues unique to any individual state.

[13] CITGO argues in this motion that it does not own, operate, or control any CITGO®-branded retail station.  CITGO challenges plaintiffs' Article III standing.  CITGO believes this motion is dispositive of all claims against CITGO in all 23 cases in which CITGO currently is a defendant and relies on state agency law that supposedly is uniform across the states at issue.  Further, CITGO does not believe there are any dispositive issues that are unique to any individual state.

[14] This motion is similar to CITGO's summary judgment motion, i.e., Marathon argues that does not own, operate, or control any Marathon®-branded retail station. Marathon asserts this motion is dispositive of all claims in all six cases in which it currently

joint motion for judgment on the pleadings filed by defendants in cases asserting claims under California law (doc. 1258).[16]  Briefing on the first four motions is complete, and the last motion should be fully briefed by December 3, 2009.

The parties agree that the first motion (doc. 1242), based on the political question doctrine, should be resolved as soon as practicable.  The Court agrees and plans to rule – soon.

The parties essentially agree there is no pressing need at this time for the Court to devote attention to the fourth and fifth motions.  Plaintiffs suggest that the Court defer ruling on these two motions until after deciding at least one of the pending class certification motions.  Defendants suggest that both motions be decided by the transferor courts after remand of all constituent cases at the conclusion of this MDL proceeding.  The Court need not and will not decide until later which of these approaches to follow.

Defendants would like the Court to rule at this time on the second and third motions.  CITGO, in particular, believes its summary judgment motion should be decided without further delay (*see* doc. 1422).   However, the Court agrees with plaintiffs that any consideration of the CITGO and Marathon motions can and should be deferred until after the Court has decided at least one of the class certification motions.

_____

is a defendant.

[15] Marathon argues in this motion that ATC-compensated retail motor fuel sales, as advocated under plaintiffs' theory of the case, would be illegal.

[16] Defendants argue in this motion that, under California law, plaintiffs' claims in California are barred because of the equitable-abstention doctrine and additional arguments.

## IV.  NON-DISPOSITIVE MOTIONS

Two discovery-related motions are pending before Judge O'Hara: (1) defendants' motion to compel plaintiffs to supplement certain interrogatory answers (doc. 1356); and (2) plaintiffs' motion to compel a deposition of defendant Marathon pursuant to Fed. R. Civ. P. 30(b)(6) (doc. 1390).  Briefing on the first motion was completed recently, and the second motion will be ripe for decision soon.  Judge O'Hara plans to rule both motions before Judge Vratil makes her certification decision, but of course the deadlines for compliance with his orders will take into account the above-described stay of discovery to which the parties have agreed.

## V.  ADR

*If* Judge Vratil later decides to conditionally certify one or more classes, the Court is firmly of the view that the parties should promptly proceed to engage in an ADR process, presumably mediation, without awaiting the outcome of any Rule 23(f) appeals that might be pursued.  Accordingly, within seven calendar days of any such ruling, plaintiffs shall submit to defendants good faith proposals to settle *all* of these cases.  Within seven calendar days of plaintiffs' proposals, defendants shall make their good faith responses to same.  Within four calendar days of defendants' settlement counter-proposals, each side's liaison counsel shall submit independently a confidential settlement report to Judge O'Hara; the reports need not be served upon opposing parties and in any event **shall not** be filed with the Clerk's Office.  The reports shall briefly set forth the parties' settlement efforts to date, current evaluations of the case, views concerning future settlement negotiations and the

overall prospects for settlement, and a specific recommendation regarding mediation and/or any other ADR method, together with an indication concerning who has been selected by the parties (preferably jointly) to serve as a mediator or other neutral in an ADR process.  In the hopefully unlikely event the parties cannot agree on a mediator (or other ADR neutral), the Court will appoint a special master of its own choosing to conduct settlement proceedings at such time and places, and in such formats, as the Court shall prescribe.  The cost of the special master shall initially be assessed 50 per cent to plaintiffs and 50 per cent to defendants.  Absent further order of the Court, the ADR process shall commence within 45 calendar days of any ruling that conditionally certifies one or more classes.  An ADR report, on the form located on the Court's Internet website, must be filed by defendants' liaison counsel the first business day after conclusion of the ADR process:

*(http://www.ksd.uscourts.gov/attorney/adr/adrreport.pdf)*.

IT IS SO ORDERED.

Dated this 20th day of November, 2009, at Kansas City, Kansas.

   /s Kathryn H. Vratil         
Kathryn H. Vratil
U.S. District Judge

  s/ James P. O'Hara          
James P. O'Hara
U.S. Magistrate Judge