**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE: MOTOR FUEL TEMPERATURE** ) | |
| **SALES PRACTICES LITIGATION** ) | |
| ) | **MDL No. 1840** |
| **(This Document Relates to All Cases)** ) | **Case No. 07-MD-1840-KHV** |
| ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiffs bring putative class action claims for damages and injunctive relief against motor fuel retailers in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia and Guam ("the Region").[1] This matter comes before the Court on <u>Certain Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction (Rule 12(b)(1)) Or In The Alternative, For Summary Judgment (Rule 56), Under Political-Question Doctrine</u> (Doc. #1242) filed July 24, 2009.[2] For substantially the reasons set forth in <u>Plaintiffs' Response In</u>

---

[1] Plaintiffs assert claims individually and on behalf of similarly situated persons and entities who purchased gasoline or diesel fuel at temperatures greater than 60 degrees Fahrenheit from one or more defendants in the Region. Following a transfer order of the Judicial Panel on Multidistrict Litigation ("JPML"), the Court has jurisdiction over consolidated pretrial proceedings in these actions. See 28 U.S.C. § 1407; Doc. #1 filed June 22, 2007.

[2] The following defendants filed the motion: 7-Eleven, Inc., Circle K Stores, Inc., Kum & Go, LC, Murphy Oil USA, Inc., Pilot Travel Centers, LLC, Marathon Petroleum Company LLC, Speedway SuperAmerica, LLC, Sheetz, Inc., Mac's Convenience Stores, LLC, RaceTrac Petroleum, Inc., QuickTrip Corporation, The Pantry, Inc., Star Fuel Marts, LLC and WAWA, Inc.
The following defendants have joined in the motion: B-B Oil Company, Inc., Coulson Oil Company, Inc., Diamond State Oil LLC, Flash Market Inc., J&P Flash Inc., The Kroger Co., Magness Oil Co., Maverik, Inc., Port Cities Oil LLC, Rivercity Energy Company, Inc., South Pacific Petroleum Corp., Thorntons Inc., WR Hess Company, Tesoro Refining and Marketing Company and Dansk Investment Group Inc. See Doc. #1410 filed November 5, 2009 and Doc. #1430 filed November 20, 2009. The remaining defendants have not joined in the motion.

Opposition To Certain Defendants' Motion To Dismiss For Lack Of SubjectMatter Jurisdiction, Or In the Alternative, For Summary Judgment Under Political-Question Doctrine (Doc. #1354) filed October 2, 2009, the Court finds that the motion should be overruled.[3]

Plaintiffs claim that because defendants sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion, they are liable under state law theories including breach of contract, breach of warranty, fraud and consumer protection.[4] Plaintiffs seek damages and injunctive relief, including (without limitation) installation of automatic temperature correction ("ATC") devices. Defendants seek dismissal under Rule 12(b)(1), Fed. R. Civ. P., or in the alternative, summary judgment under Rule 56(c), Fed. R. Civ. P.[5] Defendants argue that

---

[3] The Court finds that oral argument will not materially assist in the disposition of this motion or promote the speedy, just and inexpensive determination of this matter. Accordingly, defendants' request for oral argument is overruled.

[4] In overruling defendants' earlier motion to dismiss, the Court summarized plaintiffs' factual allegations. See In re Motor Fuel Temperature Sales Practices Litig., 534 F. Supp.2d 1214, 1216-18 (D. Kan. 2008) (citing Consolidated Amended Complaint (Doc. #186)). The Court incorporates that memorandum and order by reference.

[5] Through evidence outside the complaint, defendants attack the factual accuracy of plaintiffs' allegations. In ruling on a Rule 12(b)(1) motion, the Court has wide discretion to allow affidavits and other documents and to resolve disputed jurisdictional facts. See Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (court's reference to evidence outside pleadings does not convert Rule 12(b)(1) motion to Rule 56 motion); RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996) (in factual Rule 12(b)(1) motion, trial court free to weigh evidence and satisfy itself as to its power to hear case).

When determining whether to dismiss on the basis of the political question doctrine, the Court conducts a "discriminating inquiry into the precise facts and posture of the particular case." Schroder v. Bush, 263 F.3d 1169, 1173-74 (10th Cir. 2001) (quoting Baker v. Carr, 369 U.S. 186, 217 (1962)). Here, although the parties dispute facts based on evidentiary submissions, the Court need not decide any disputed facts to resolve the issue of justiciability. The Court has carefully examined the arguments and evidence presented and finds that the record is sufficient to conduct a "discriminating inquiry into the precise facts and posture of the particular case" to determine whether the political question doctrine may preclude exercise of subject matter jurisdiction over the case. Schroder, 263 F.3d at 1173-74 (quoting Baker, 369 U.S. at 217); see also Lane v. Halliburton,

(continued...)

plaintiffs' claims present nonjusticiable political questions under all six prongs set out in Baker v. Carr, 369 U.S. 186 (1962). Defendants focus their arguments on the first four factors, as follows: (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department;" (2) "a lack of judicially discoverable and manageable standards for resolving it;" (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;" and (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government." 369 U.S. at 217.[6] Defendants argue that plaintiffs' claims revolve around policy choices and value determinations which are constitutionally committed to Congress and that the judiciary is "particularly ill-suited" to resolve the issues because courts are "fundamentally under equipped to formulate national policies or develop standards for matters not legal in nature." Defendants' Brief (Doc. #1244) at 43-44 (quoting Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986)). Specifically, defendants assert that implementation of ATC devices would alter the definition of a "gallon" and

---

[5](...continued)
529 F.3d 548, 558 (5th Cir. 2008).

The parties dispute whether the political question doctrine implicates subject matter jurisdiction. The Tenth Circuit has noted that "[d]eeply rooted ambiguity in the nature and justification of the political question doctrine has prevented clear classification of the appropriate type of dismissal in political question cases." Schroder, 263 F.3d at 1171 n.1 (citing Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3534.3 at 517-525 (2d ed. 1984)). The Tenth Circuit has concluded, however, that clear classification is immaterial: "[T]here is probably more room for confusion than benefit in attempting to analogize political question dismissal to dismissal for failure to state a claim, or to dismissal for lack of jurisdiction. Some cases will be appropriate for dismissal on the pleadings, others will require further development." Schroder, 263 F.3d at 1171 n.1 (further quotations omitted).

[6] The remaining prongs, on which defendants do not focus, include (5) "an unusual need for unquestioning adherence to a political decision already made" or (6) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." See Baker, 369 U.S. at 217.

3

thereby interfere with a "weights and measures" determination which the Constitution has explicitly committed to Congress. Defendants argue that through its partnership with state regulators and the National Conference on Weights and Measures ("NCWM"), Congress has defined a "gallon" solely in terms of volume.[7] Defendants also note that for years, many fora have debated whether to mandate ATC and assert that the Court should abstain from that policy debate.

Plaintiffs ably point out the many substantial flaws in defendants' argument; the Court briefly touches only a few. Defendants declare that the Constitution gives Congress exclusive power over weights and measures, but then assert that this case creates a clash between the Court and *state* regulators. Such a clash does not implicate the political question doctrine. See Gordon v. State of Texas, 153 F.3d 190, 194 (5th Cir. 1998). Further, only by the most strained reasoning – that anything having to do with "weights and measures" is off limits to federal courts – could this Court find that the issues in these suits are exclusively committed to the political branches.

The "political question" doctrine reflects the principle that under our Constitution, some questions cannot be answered by the judicial branch. Out of due respect for our coordinate branches and recognizing that a court is incompetent to make final resolution of certain matters, these political questions are deemed nonjusticiable. See Baker, 369 U.S. at 198. A declination of jurisdiction under the political question doctrine presupposes that another branch of government is both capable of and better suited for resolving the "political" question. See Vieth v. Jubelirer, 541 U.S. 267, 277 (2004). In support of their argument that this case presents a political question, defendants rely primarily upon four cases. Two of those cases have been reversed, and the Second Circuit has

---

[7] The Court has previously rejected defendants' arguments that this suit necessarily challenges any federal definition of a "gallon." See In re Motor Fuel, 534 F. Supp.2d 1214 (D. Kan. 2008).

rejected the reasoning of the third. See In re African-American Slave Descendants Litig., 375 F.Supp. 2d 721 (N.D. Ill. 2005), reversed in part, 471 F.3d 754 (7th Cir. 2006); Connecticut v. Am. Elec. Power Co., 406 F. Supp. 2d 265 (S.D.N.Y. 2005), reversed, 582 F.3d 309 (2d Cir. 2009); California v. Gen. Motors Corp., No. C06-05755 MJJ, 2007 WL 2726871 (N.D. Cal. Sept. 17, 2007), reasoning rejected by Am. Elec. Power Co., 582 F.3d 309 (2d Cir. 2009). The fourth case, Schroder v. Bush, 263 F.3d 1169 (10th Cir. 2001), is clearly distinguishable because of the extremely broad relief which plaintiffs sought in that case. See id. at 1171 (asking court to order president and cabinet secretaries to oversee trade agreements and control currency to maintain market conditions favorable to small farmers).

Although defendants argue that this case touches on policy judgments that are being debated by political branches, plaintiffs' claims do not call on the Court to formulate national policies. A determination that defendants have breached their contracts and deceived consumers would not be a formulation of national policy on ATC. Judicial review is not foreclosed by the fact that the political branches are debating the wisdom of ATC – particularly where, as here, they have taken no action. See Am. Elec. Power. Co., 582 F.3d at 321-24.

Finally, the Court would have no duty to order ATC as a remedy for any proven tort or contract violation. Defendants make no reasonable argument that the other remedies which plaintiffs seek – e.g., money damages, accurate information to consumers about the temperature of the fuel which they purchase and the effect of temperature on that fuel – would require the Court to make impermissible policy determinations.

**IT IS THEREFORE ORDERED THAT** Certain Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction (Rule 12(b)(1) , Or In The Alternative, For Summary Judgment (Rule

<u>56), Under Political-Question Doctrine</u> (Doc. #1242) filed July 24, 2009, be and hereby is **OVERRULED for substantially the reasons stated in <u>Plaintiffs' Response In Opposition To Certain Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Or In The Alternative, For Summary Judgment Under Political-Question Doctrine</u> (Doc. #1354) filed October 2, 2009.**

Dated this 3rd day of December, 2009 at Kansas City, Kansas.

<u>s/Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Court