**FILED**

In re Motor Fuels Sales Practices Litigation

**MAR - 1 2010**

Objection of Class Member R. Duke Dougherty, Jr. to Settlement Agreement

TIMOTHY M. O'BRIEN, Clerk

By_____ Deputy

I object to the settlement on the grounds that the class was formed without regard for the rights of unnamed class members; the notice and its mandated procedures sent to unnamed class members are legally insufficient; and the proposed settlement itself is unjust and legally insufficient.

I The Class was Formed without Regard for the Rights of the Unnamed Class Members

a) Class Members were impressed into a relationship with Class Counsel through an opt out procedure. Such a procedure is unethical and unprofessional as it places a burden on the unwilling client to get out of a relationship he had no part in creating.

In this case, the procedure is especially pernicious as it burdens the unwilling client with proving his purchase of gasoline at Costco in order to opt out. Most burdensome is that the notice sent to Class Members came over a half year after the April 22, 2009 cutoff for gasoline purchases covered by the class action. Finding a receipt for such an old purchase would not be possible for most Class Members.

Further, many Class Members have not been Costco members (and thus eligible to purchase gasoline there) for years. They might have to look for a receipt several or even eight years old. Most such Class Members would not have any way to prove their purchase, and thus would not have any way to comply with the requirements of one who wishes to opt out.

The burden of proving a gasoline purchase at Costco in order to opt out is an unnecessary requirement unless the only objective is to place obstacles in the way of those who wish to opt out. Costco members cannot purchase gasoline without swiping their Costco card. Therefore, Costco's database would have a record of all member purchases. Indeed, if it did not, how could the Class Members have been identified in the first place? It's clear that the procedural irregularities of this class action allowed the ranks of the class to swell based on Costco's computer records, but then those involuntarily thrown into the class have to prove that they really belong in the class if they want to opt out of it.

b) The Class Representatives have not been shown to represent the interests of the Class Members. In any case, but especially in one with such an extraordinary Settlement Agreement awarding nothing to Class Members but $2500 each to the Class Representatives and up to $10,000,000.00 to Class Counsel, the issue of collusion must be considered.

These Class Representatives were not shown to be free of any direct or indirect personal, business, or social relationship with Class Counsel and that in the future, they would not receive, directly or indirectly, any personal, business, or social benefit from having facilitated a multimillion dollar payday for Class Counsel. Only Class Representatives free of any such ties and future benefit would share the same concerns as the Class Members.

Further, at the point Class Counsel shifted to seeking solely injunctive relief for the Class Members, the retention of any incentive fee for Class Representatives created a conflict of interest as the two groups became split on the receipt of a monetary award.

c) The interests of the Class Members from the fourteen conversion states materially differ from those of the seven other states. Assuming arguendo that Class Counsel and the Defendant wish to maximize injunctive relief under this Settlement Agreement, with an optimistic yet realistic outcome, the Class Members from the fourteen conversion states will be able to purchase gasoline from temperature-correcting fuel pumps within five years. On the other hand, the Class Members from the other seven states will not.

Only if circumstances change will Defendant install and convert to temperature-correcting fuel pumps in the seven non-conversion states. And there is nothing in the Settlement Agreement that tends to bring about those changed circumstances. The Settlement Agreement does not mandate that Defendant begin purchasing gasoline on a temperature-corrected basis in the seven states. So even assuming the good faith of Class Counsel and Defendant, the more likely outcome is that Class Members in the seven non-conversion states will not obtain the future injunctive relief of being able to buy gasoline from temperature-correcting fuel pumps. Therefore, their interests are materially different from those in the fourteen conversion states.

In light of the fact that injunctive relief is the only remedy proposed for the Class Members, the conflict of interest is total and absolute.

d) The interests of Class Members who are no longer—or who in the future cease to be—members of Costco differ materially from those who remain as Costco members. Only Costco members can purchase gasoline at Costco. Therefore, even in the best-case scenario of full conversion to temperature-correcting fuel pumps in all twenty-one states, former members will not share in the injunctive relief. In light of the fact that injunctive relief is the only remedy proposed for the Class Members, this conflict of interest is total and absolute.

II The Notice and Procedures Deriving from such Notice are Legally Insufficient

a) The undersigned objector received notice via the backside of a 4.25" x 6" postcard. Small postcards are notorious for being mistaken for junk mail or inadvertently mixed with junk mail that is discarded without being read. And adding words such as "Important" to postcards only make them look all the more like junk mail. Everyone knows that postcards are not used for important communication—unless, of course, the sender does not consider it important for the recipient to actually receive and read it. Also, postcards are somewhat less likely to be forwarded to a new address by the postal service. This raises the likelihood that many Class Members never received—or did not know they received—notice of the class action.

Had this class been formed through an opt-in system, it can be assumed that Class Counsel would not have notified prospective Class Members in a manner that maximizes the likelihood of the notice never being read.

Further, the undersigned objector offers the caution that if some Class Members received notice along with their credit-card statements, the notices may have been marketed to appear like the mandatory notices that occasionally come from credit-card companies. As is well known, the habit of most people is to ignore those notices because they cannot understand them.

b) The postcard notice fails to provide notice of the most essential facts regarding the Settlement Agreement. The only accurate and easily understood notice would include a sentence in bold type that read: **"You will not be paid anything, but the five people who have chosen the lawyers representing you will receive $2500.00 each, and those lawyers will receive up to $10,000,000.00."** Instead, the postcard states, "Except for the representatives, the class will not receive any payment." The average person would have no idea what that means. He may, in fact, think he could be one of the representatives as he considers himself a representative customer of Costco. As to attorneys fees—that is entirely withheld from the postcard notice.

For those Class Members residing in the seven non-conversion states, a proper notice would include a sentence that read: **"Costco will install automatic temperature correcting pumps in some states, but it will not do so in your state of [   ] unless in the future Costco begins to purchase its gasoline on a temperature correcting basis."** Instead, the postcard states, "Costco will install automatic temperature correcting pumps in certain states under specified conditions." Allowing that generic statement in a notice sent to a resident of a non-conversion state amounts to deceit. An ordinary person reading that might well think that "certain states" means all of the states listed in bold in the first paragraph. Thus, he would see his state listed and conclude that Costco will install the pumps in his state.

The improprieties of the postcard notice would lead the average class member to pay no further attention to the matter, whereas a notice that clearly stated the essential facts above would convince most people that the settlement is grossly unjust. Some number of them might not expend the effort to exclude themselves, and many who would, might still find themselves constrained by the nefarious burden of proving their gasoline purchase (as noted in I a) supra.) Nonetheless, the wrongs of an opt out system and the burdensome requirement of proof for doing so cannot be used to excuse the further wrong of a postcard notice that fails to inform the class members of the essential facts of the settlement.

c) The Class Members are not told the size of the loss they suffered from Costco's fuel pumps. Neither the postcard notice, the detailed notice, nor the proposed Settlement Agreement itself provide this crucial information. No responsible citizen can make an informed decision about participating in a suit unless he knows the extent of his damages. No decent person would sue another over a trifle, but a decent person might think otherwise if the amount were significant. Good, decent citizens would, of course, differ on what they consider to be trifles or significant. But none could come to a conclusion without knowing the actual facts of the matter.

In the present case, the Class Members cannot exercise their sense of fair play and respect for the judicial system without knowing how much they were overcharged by the fuel pumps at Costco. No doubt, a mathematical formula with variables for actual temperature and pump price per gallon is employed to arrive at the overcharge per gallon. Then Costco's computer records could show how many gallons each particular member purchased on warm-weather days. Actual hourly temperatures are archived in databases, so the calculation for each member could be precisely adjusted by a simple computer model.

The essential fact required, however, is merely the "ballpark" extent of the overcharge. When the pump price is $2.509 and the temperature is 75°, how much is the overcharge? Is it three cents, three tenths of a cent, or three thousandths of a cent? Most would consider three

cents per gallon a significant overcharge, but very few would attach significance to three thousandths of a cent. But they would have to know in order to make up their minds.

The size of the overcharge is important for several reasons. First, Class Members have to decide whether they want to participate in a suit. Second, Class Members who wish to participate have to know if it's fair that they receive nothing for their losses. Third, Class Members who participate have to know if it's fair for Costco to delay installing temperature correcting pumps for up to five years (or never in some states) while they have to continue paying the overcharges. Fourth, Class Members who participate have to judge the size of their loss against the fairness of the size of the payment to the Class Representatives and the fees to Class Counsel.

d) Class Members are not told the likelihood of success should this case proceed to trial. This is important for them in deciding whether they should contentedly absorb their losses and be satisfied with injunctive relief coming up to five years later. When considered along with the size of the overcharge, this is also important for them in deciding if Class Counsel seems to be competently representing their interests or if they should opt out and perhaps seek counsel on their own.

e) In no place are Class Members given an analysis of the various contingencies allowing Costco to avoid total compliance with the injunctive measures, and the likelihood of any of those contingencies actually occurring. An attorney has an obligation to clearly and completely explain all the ramifications of a course of action and, most especially, to completely explain a settlement agreement.

f) The detailed notice to which a diligent Class Member must turn in order to understand his basic right to object contains the legal term "Proof of Service" which is unnecessary for any purpose except to cast doubt in Class Members and dissuade them from objecting.

g) The requirements set forth in the detailed notice burden dissatisfied Class Members by making them send their objections to three different addresses. As Class Counsel is putatively representing all Class Members and has, along with Defendant, made it impossible for most to opt out by requiring proof of gasoline purchase in order to do so, it should be Class Counsel who's responsible for providing copies of objections to the Defendant and the Court.

h) The detailed notice does not advise Class Members that they can object if they think Class Counsel is being paid too much or if they think the Class Representatives are to receive an unfair advantage. Instead, it merely states: "...you can object to the proposed settlement if you don't think the proposed settlement is fair, reasonable or adequate." This would create a misleading perception in most people that they can only object to the settlement vis a vis the Defendant (i.e. the lack of compensation for overcharges or the agreement about converting to temperature compensating fuel pumps).

In the "Objecting To The Proposed Settlement" sections, one section should be entitled "Reasons for Objecting". This section should contain a notice that "You can object to the proposed settlement for any reason you think is important. The key parts of this settlement

include: 1) extinguishing your right to ever be compensated for fuel overcharges at Costco; 2) providing for the conversion to temperature compensating fuel pumps in some states but not in others; 3) providing an incentive fee to the Class Representatives of $2500.00 each; and 4) providing attorneys fees and expenses of up to $10,000,000.00 to Class Counsel. You have the right to object to any provision of this settlement."

      i) The detailed notice camouflages the payment to Class Counsel by writing it in letters and failing to mention if Defendant will oppose its award by the Court. Most Class Members will be deceived by omission in the postcard notice where there is no mention of the attorneys fees. And even those who read the detailed notice may scan right over the words "ten million dollars." Helping to assure that outcome, it is placed in a section entitled "How Will The Lawyers Be Paid?" It should be in a section entitled "How Much Will The People Beside The Class Members Make On This Settlement?" or at the very least, "How Much Will The Lawyers Be Paid?"

No reasonable client would be unconcerned about how much money his attorney is demanding and expecting to make on a case. No reasonable client or customer in any professional or business relationship is able to judge the fairness of the relationship without the basic facts of how much each side of the relationship expects to profit.

That Costco may be willing to pay such a high fee to Class Counsel suggests very strongly that Costco is saving an even greater amount with the settlement, and that savings is coming from the interests of the Class Members who will receive no compensation at all.

      j) Neither the postcard notice nor the detailed notice explain the pros and cons of temperature compensating fuel pumps. Numerous sections of the proposed Settlement Agreement reference the need for regulatory approval for the installation of temperature compensating pumps, and in Section 4.6, opposing counsel agree to provide each other with information about such regulatory requirements in the conversion states. It can only boggle the mind of Class Members reading the proposed Settlement Agreement as to why counsel would have to agree to share information about the legal requirements of a state when a state's laws and regulations are supposed to be a matter open to the public generally, and presumably already known to the litigating attorneys.

Of greater concern, the import of these references is that temperature compensating fuel pumps are in fact prohibited in some jurisdictions. So the question naturally arises as to why that would be. Why would a jurisdiction prohibit a device that ensures consumers are not shortchanged in their gasoline purchases? A logical answer might be that there's some downside to such devices. Perhaps they're prone to malfunctioning and actually cause more overcharges than they prevent. Perhaps they increase the risk of an explosion at a gasoline pump. There must be some negative quality that prompts some jurisdictions to regulate them. The Class Members cannot make an informed choice about supporting the installation of these devices unless their counsel gives them all the pros and cons of doing so. And yet, counsel provides no such information on this key element of the proposed Settlement Agreement.

III The Proposed Settlement is Unjust and Legally Insufficient

a) Class Counsel should provide their services Pro Bono. Class Counsel have captured their client Class Members through an opt out system from which most cannot meet the requirements to escape and in any event have not been given the essential facts that would allow them to make an informed choice about doing so. Then Class Counsel structured a settlement in which those captured Class Members receive not a penny for their losses. Not 100% plus punitive damages, not 100% without punitive damages, not 80%, nor 50%, nor 10%, nor even 1%. Class members get absolutely nothing to compensate them for their losses. Further, the settlement will not even provide injunctive relief for Class Members in the many states where conversion will not occur, and it cannot provide injunctive relief to those Class Members who are no longer members of Costco regardless of where they live.

So just what did those many Class Members receive in services from Class Counsel? The right to say that they sued Costco? The right to say they sued for no other purpose than to harass Costco?

b) The Class Representatives should not be paid an incentive fee. First, they have chosen Class Counsel who have ill served the interests of the unnamed Class Members. Second, they would be receiving a substantial fee while the unnamed Class Members receive no compensation whatsoever, and that creates a divergence of interests that makes them unrepresentative of the class. Third, this is not the type of case where Class Representatives make special sacrifices from which the Class Members derive benefit.

In other cases, Class Representatives may undergo intrusions on their privacy which are embarrassing or even humiliating. Where the maker of an IUD (intra-uterine device) is sued because the device caused bleeding or infertility, Class Representatives would have their entire medical history opened to scrutiny. Class Representatives would be deposed about embarrassing matters such as whether they engaged in rough sex or ever had sexually transmitted diseases.

In the present case, there is no possible embarrassment or humiliation, except perhaps of a discovery that Class Representatives might derive future benefit from having facilitated such a windfall for Class Counsel.

c) Injunctive relief is insufficient for past losses. If this case is, in fact, a just and valid action, then the Settlement Agreement denies Class Members compensation for their losses. The structure of the Settlement Agreement illogically trades compensation for those losses for a promise not to aggravate those losses for more than an additional five years.

d) The cost of gasoline should be adjusted downward on warm-weather days until the temperature compensating pumps are installed. Though the proposed settlement leaves the Class Members ignorant of the matter, common sense suggests that Costco uses a mathematical formula to set its gasoline prices. Likewise, there must be a mathematical formula to show how much consumers are shortchanged by the pumps subject to this action. In order to prevent further overcharging to Costco customers during the transition to new pumps, those two formulas must be merged to arrive a price that would be substituted on days when the temperature exceeds 61°.

This would protect consumers from further overcharges and would remove any incentive for delaying the installation of new pumps.

e) Assuming arguendo that Class Counsel should be compensated, such compensation should be awarded in proportion to the total percentage of fuel pumps converted compared to the total of all pumps in all twenty-one states included in this action. Section 7.3 of the Settlement Agreement directs the payment of Class Counsel within fifteen days of the effective date. That, of course, would precede any injunctive relief. There is no incentive for Class Counsel to push for compliance with the injunctive aspects of the Settlement Agreement if they are paid in full even without that compliance.

f) Contingencies are written into the proposed settlement that— should they arise—would allow the Defendant to circumvent the only remedy provided to the Class Members. Among them, it appears that Costco will be allowed to forgo corrective measures entirely in the seven states where it does not presently purchase gasoline on a temperature-corrected basis unless a post-settlement change occurs in the method of its purchases. If this provision be deemed fair by the Court,(i.e. that Defendant should not be forced to sell gasoline on a temperature-corrected basis in states where it doesn't buy gasoline on a temperature-corrected basis) then ipso facto the suit against Costco in those seven states is groundless ab initio and the harvesting of clients in those seven states by Class Counsel resulted in the improper formation of a class.
Section 4.5 is entitled Force Majeure. But its use of the term encompasses affordability, and the section allows Costco to forgo installing the temperature compensating equipment if Costco and Class Counsel should agree that the equipment is not affordable.
Section 4.7 contemplates Class Counsel settling with another fuel retailer and gives Defendant Costco the right to unilaterally provide less relief to Class Members if the settlement with the other fuel retailer is more lenient than this proposed Settlement Agreement with Costco.
Section 4.8 is deceptively entitled Supply Disruption. But it provides Defendant an option not to install temperature compensating fuel pumps in conversion states where it experiences commercially material increases in the price of fuel.

g) Class Counsel have a conflict of interest in that in any future class action, they will be judged by the future corporate defendant based on how lenient they were in enforcing the post-settlement duties of this corporate Defendant. By being lenient in this case, Class Counsel could hope to win a larger award of attorney fees in any subsequent case where they seek a settlement since it would be apparent to such subsequent corporate defendant that Class Counsel will not vigorously pursue enforcement as long as they get their lucrative attorneys fees. The only way to prevent this conflict of interest is to make it to the financial disadvantage of Class Counsel to forgo vigorous enforcement of the injunctive provisions. (see point III e) supra)

h) The right of the Defendant to withdraw from the settlement if more than 2500 people opt out demonstrates that Class Counsel are being compensated for turning over to Defendant the legal rights of the unnamed Class Members. Rather than representing the unnamed Class Members, Class Counsel are functioning as computer-wielding bounty hunters exploiting

Defendant's database to round up clients and exchange their legal rights for the $10,000,000.00 bounty of attorney fees.

    i) By two sections of the proposed Settlement Agreement, Class Counsel have entered into a conspiracy to subvert the interests of their clients, the Class Members. In Section 13.3 Class Counsel have agreed not to assist any person to object to the Settlement Agreement. In Section 14.9 Class Counsel have agreed to oppose any objectors to the Settlement Agreement. Objectors, of course, would be Class Members, and Class Members, of course, are the putative clients of Class Counsel to whom Class Counsel owe their professional allegiance rather than to a Settlement Agreement drafted and agreed to without any input from those Class Members.

    As noted I b) supra, the Class Representatives have been shown not to share the interests of the Class Members. The Class Representatives stand to gain in ways that the Class Members will not. So the only way for Class Counsel to understand, let alone represent, the interests of the Class Members is to communicate with them. But no communication was attempted with them before drafting and executing the Settlement Agreement, and the Settlement Agreement itself binds Class Counsel to oppose the only material communication they might receive after its execution (i.e. objections). This creates a novel version of the attorney-client relationship—perhaps welcomed by the former, but at what loss of respect from the latter?

    In summary, this class action is not about vindicating the rights of the Class Members, but instead about extinguishing those rights for the benefit of the Defendant in exchange for payments to Class Counsel and the Class Representatives.

*[Signature]*    26 Feb 2010

R. Duke Dougherty, Jr.    Date
P.O. Box 4293
Topeka, KS 66604
(785) 273-5696

## PROOF OF SERVICE

I, R. Duke Dougherty, Jr., state that I served the attached Objection to Settlement Agreement on both

| Class Counsel | and | Costco Counsel |
|---|---|---|
| Robert A. Horn | | David F. McDowell |
| Horn Aylward & Bandy, LLC | | Morrison & Foerster LLP |
| 2600 Grand Blvd., Ste. 1100 | | 555 W. Fifth St. |
| Kansas City, MO 64108 | | Los Angeles, CA 90013 |

by depositing a true and correct copy of this objection in the U.S. Mail, postage prepaid on this 26 day of February, 2010.

R. Duke Dougherty, Jr.