# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION | ) ) ) ) | MDL No. 1840 |
| [This Document Relates To All Cases.] | ) ) | Case No. 07-1840-KHV |

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs bring putative class action claims for damages and injunctive relief against motor fuel retailers in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia and Guam. Plaintiffs claim that because defendants sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion, they are liable under state law theories which include breach of contract, breach of warranty, fraud and consumer protection. Following a transfer order of the Judicial Panel on Multidistrict Litigation ("JPML"), the Court has jurisdiction over consolidated pretrial proceedings in these actions. <u>See</u> 28 U.S.C. § 1407; Doc. #1 filed June 22, 2007. This matter comes before the Court on <u>Plaintiffs' Motion To Review And Set Aside The Magistrate Judge's Order Dated May 28, 2009</u> ("Plaintiffs' Motion For Review") (Doc. #1195) filed June 11, 2009 and <u>Defendants' Motion For Review Of Magistrate O'Hara's Orders (Docs. 1080, 1196)</u> ("Defendants' Motion For Review") (Doc. #1214) filed June 25, 2009. For reasons stated below, the Court sustains plaintiffs' motion and overrules defendants' motion.

## I.    Legal Standards

Upon objection to a magistrate judge order on a non-dispositive matter, the district court may modify or set aside any portion of the order which it finds to be clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a);[1] 28 U.S.C. § 636(b)(1)(A).  With regard to fact findings, the Court applies a deferential standard which requires the moving party to show that the magistrate judge order is clearly erroneous.  See Burton v. R.J. Reynolds Tobacco Co., 177 F.R.D. 491, 494 (D. Kan. 1997). Under this standard, the Court is required to affirm the magistrate judge order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)); see also Smith v. MCI Telecomm. Corp., 137 F.R.D. 25, 27 (D. Kan. 1991) (district court generally defers to magistrate judge and overrules only for clear abuse of discretion).  With regard to legal matters, the Court conducts an independent review and determines whether the magistrate judge ruling is contrary to law.  See Sprint Commc'ns Co. v. Vonage Holdings Corp., 500 F. Supp.2d 1290,  (D. Kan. 2007); see also 11 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice And Procedure § 3069  (2d ed., 2009 update). Under this standard, the Court conducts a plenary review and may set aside the magistrate judge decision if it applied an incorrect legal standard or failed to consider an element of the applicable

---

[1]        With regard to timely objections to a magistrate judge ruling on a non-dispositive matter, Rule 72(a) provides that the district judge must "modify and set aside any part of the order that is clearly erroneous or is contrary to law."  Rule 72(a), Fed. R. Civ. P.; see also 28 U.S.C. § 636(b)(1)(A).  By contrast, with regard to timely objections to a magistrate judge report and recommendation on a dispositive matter, Rule 72(b)(3) provides that the district judge must conduct a de novo review and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Rule 72(b)(3), Fed. R. Civ. P.; see also 28 U.S.C. § 636(b)(1).

standard. See, e.g., Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc., No. 2:02-CV-950 TS, 2009 WL 5066679, at *2 (D. Utah Dec. 16, 2009); Jensen v. Solvay Chem., Inc., 520 F. Supp.2d 1349, 1350 (D. Wyo. 2007); Dias v. City & County of Denver, Colo., No. CIVA07CV00722-WDM-MJW, 2007 WL 4373229, at *2 (D. Colo. Dec. 7, 2007); McCormick v. City of Lawrence, Kan., No. 02-2135-JWL, 2005 WL 1606595, at *2 (D. Kan. July 8, 2005). Cf Weekoty v. United States, 30 F. Supp.2d 1343, 1344 (D.N.M. 1998) (applying de novo review to magistrate judge legal determination on non-dispositive matter).

## II.    Procedural History

On May 28, 2009, Magistrate Judge James P. O'Hara issued a memorandum and order on the following discovery motions: Plaintiffs' Motion To Compel Discovery And Memorandum In Support (Doc. #668) filed December 8, 2008; Plaintiffs' Motion To Compel Discovery From Petroleum Marketers and Convenience Store Association of Kansas And Memorandum In Support (Doc. #738) filed February 2, 2009; and defendants' Motion To Quash And For Protective Order (Doc. #999) filed April 9, 2009. See Doc. #1080.

In the first motion, plaintiffs sought information and documents from certain defendants relating to their communications with trade associations, weights and measures organizations and government agencies. See Doc. #668. Defendants objected that producing the information would infringe their First Amendment right to freely associate to pursue political, social and economic ends. See Doc. #697 filed January 9, 2009 at 1, 10-23. Defendants also asserted that under the doctrine set forth in E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965) (the "Noerr-Pennington doctrine"), the documents which plaintiffs sought were inadmissible and therefore irrelevant and that

plaintiffs' requests were unduly burdensome. <u>See</u> Doc. #697 at 3, 23-29.

In the second motion, plaintiffs sought documents from the Petroleum Marketers and Convenience Store Association of Kansas ("PMCA-KS"), a non-party trade association of petroleum distributors, retailers and convenience stores in Kansas, regarding – among other things – its membership, financial contributors and lobbying and strategy efforts concerning ATC for retail motor fuel. <u>See</u> Doc. #738 and Exhibit A thereto. Various defendants who are members of that organization objected that producing the documents would infringe their First Amendment rights to free speech and freedom to associate to pursue political, social and economic ends.[2] <u>See</u> Doc. #783 at 1, 7-32. Defendants also asserted that under <u>Noerr-Pennington</u>, the documents were inadmissible and therefore irrelevant and that plaintiffs' requests were unduly burdensome. <u>Id.</u> at 2, 21-30.

In the third motion, defendants sought to quash subpoenas which plaintiffs had issued to the California Independent Oil Marketers Association ("CIOMA"), the Petroleum Marketers Association of America ("PMAA"), the Association for Convenience and Petroleum Retailing ("NACS"), NATSO, Inc. and the Society of Independent Gasoline Marketers of America ("SIGMA"), all of which are non-party trade associations of petroleum distributors, retailers, truck stop operators and/or convenience store owners. <u>See</u> Doc. #999 filed April 9, 2009; Doc. #1000 filed April 9, 2009 at 3.[3] The subpoenas sought documents regarding – among other things – trade

---

[2]     The PMCA-KS joined in defendants' briefing. <u>See</u> <u>Third Party Joinder By Petroleum Marketers And Convenience Store Association Of Kansas</u> (Doc. #987) filed April 7, 2009.

[3]     CIOMA, PMAA, NACS, NATSO and SIGMA joined in defendants' motion to quash. <u>See</u> Doc. #1003 filed April 13, 2009; Doc. #1016 filed April 23, 2009; Doc. #1020 filed April 27, 2009; Doc. #1032 filed May 1, 2009. Defendants' motion to quash did not address the subpoena
(continued...)

association membership, financial contributors and lobbying and strategy efforts concerning ATC for retail motor fuel. See Doc. #601 filed October 16, 2008; Doc. #662 filed December 5, 2008; Docs. #964, #965, #966, all filed March 27, 2009. Various defendants who are members of those organizations asserted that the subpoenas violated their First Amendment right to associate and that under Noerr-Pennington, the documents were inadmissible and therefore irrelevant. See Doc. #1000 at 1-2, 7-18. Defendants also argued that the joint-defense/common-interest privilege protected against disclosure, see id. at 2, 19-20, and that the subpoenas imposed unreasonable and undue burdens on defendants and the trade associations. See Doc. #1000 at 21-23.

Judge O'Hara found that the parties' dispute involved three categories of information: (1) membership lists of trade associations, (2) financial contributors of trade associations and (3) information relating to past political activities of defendants, including lobbying and legislative affairs of their trade associations. See id. at 7-8.[4] Regarding membership lists and financial contributors, Judge O'Hara found that the First Amendment right to associate protected against compelled disclosure of confidential information. See id. at 8, 16, 19. He ruled that to the extent such information had been publicly disclosed, however, the First Amendment privilege did not apply. See id. at 8. As to defendants' past political activities, Judge O'Hara found that the First Amendment protected against compelled disclosure of internal trade association communication

---

[3](...continued)
to PMCA-KS. See Doc. #999 at 1 n.6.

[4]        Judge O'Hara noted defendants' argument that plaintiffs' discovery requests and subpoenas sought information in these three categories. See id.; see also Doc. #697 filed January 9, 2009 at 1-2; Doc. #1000 filed April 9, 2009 at 9-10. Plaintiffs did not dispute that categorization. See Doc. #714 filed January 20, 2009; Doc. #1023 filed April 28, 2009. Judge O'Hara made no contrary findings and analyzed the First Amendment issues based on these categories. This Court therefore accepts this categorical approach to the issues on review.

concerning legislative and lobbying efforts regarding ATC for retail motor fuel. See id. at 9-12, 18-19. He ruled, however, that the First Amendment did not protect *all* communications between defendants and trade associations – or within trade associations – regarding ATC for retail motor fuel. See id. at 13. With regard to information relating to lobbying and legislative affairs of trade associations, Judge O'Hara found that the First Amendment privilege only applied to "internal evaluations of lobbying and legislation, strategic planning related to advocacy of their members' positions, and actual lobbying on behalf of members." Id. at 13. Judge O'Hara found that the First Amendment did not protect against compelled disclosure of other communication to, from or within trade associations. Id.

As to plaintiffs' motions to compel (Docs. #668 and #738), Judge O'Hara sustained the motions in part. See Doc. #1080 at 19-20, 25. With respect to both motions, he found that the First Amendment right to associate protected against disclosure of confidential membership and financial contributor information and internal trade association communications regarding legislative affairs and lobbying efforts concerning ATC for retail motor fuel. See id. at 8-19. He sustained plaintiffs' motions to compel membership and financial contributor information which had been publically disclosed, see id. at 8-9, and communications to, from or within trade associations which did not constitute internal communications regarding legislative affairs and lobbying efforts concerning ATC for retail motor fuel. See id. at 12-13.[5] Judge O'Hara further ordered that (1) by July 26, 2009,

_____

[5]     Judge O'Hara stated as follows:

In addition to documents containing information that would disclose the trade associations' internal evaluation of lobbying strategies, positions on legislation, and actual lobbying, however, defendants have withheld documents with a much more tenuous connection to the "past political activities" of the associations and their members. For example, defendants have objected to providing information about

(continued...)

defendants produce non-privileged documents and prepare a new privilege log, using his order as a guide, and (2) by July 10, 2009, plaintiffs file any motions for in camera review regarding application of First Amendment privilege to specific documents. See Doc. #1080 at 24-25.[6]

Judge O'Hara sustained defendants' motion to quash. See Doc. #1080 at 23, 25. He found that the First Amendment right to associate protected against disclosure of confidential membership and financial contributor information and internal trade association communications regarding legislative affairs and lobbying efforts concerning ATC for retail motor fuel. See id. at 8-20. As to remaining documents, he found that the burden on trade associations to review and produce the documents outweighed plaintiffs' need for them. See id. at 22-23. Judge O'Hara ordered that by July 10, 2009, plaintiffs could serve on the trade associations "much narrower and targeted subpoenas for *specific* categories of documents (that the court has not deemed privileged)." Id. at

---

[5](...continued)
any communication that they have had with trade associations regarding the subject of temperature adjustment in retail sales of motor fuel. Defendants also assert a privilege over documents shared among multiple trade associations. Likewise, as defense counsel stated at the May 13, 2009, oral argument, defendants contend that all internal communications of trade associations, regardless of whether the communications relate to lobbying or legislative strategies, are subject to the associational privilege. The court wishes to make clear that defendants have met their prima facie burden only with respect to the associations' internal evaluations of lobbying and legislation, strategic planning related to advocacy of their members' positions, and actual lobbying on behalf of members. Any other communications to, from, or within trade associations are not deemed protected under the First Amendment associational privilege.

Id. at 11-12 (footnotes omitted).

[6]       On June 25, 2009, Judge O'Hara entered an order which stayed these requirements pending this Court's review of his memorandum and order. See Doc. #1213.

23 (emphasis in original).[7]

On June 11, 2009, defendants filed a motion which asked Judge O'Hara to reconsider his ruling on plaintiffs' motions to compel and their motion to quash. See Doc. #1192. Defendants asserted that the First Amendment categorically protects against disclosure of strategic communication between trade associations and similar groups regarding lobbying and legislative affairs concerning ATC for retail motor fuel. See Doc. #1193 at 1-2, 7-8. On June 15, 2009, Judge O'Hara overruled defendants' motion, finding that defendants had merely re-asserted arguments which had been fully considered and rejected. See Doc. #1196 at 3.

## III. Analysis

Plaintiffs do not dispute Judge O'Hara's ruling that the First Amendment protects against disclosure of trade association confidential membership and financial contributor information. They object, however, to that part of Judge O'Hara's order of May 28, 2009 (Doc. #1080) which held that the First Amendment protects against disclosure of *internal* trade association communications regarding legislative and lobbying activities regarding ATC for retail motor fuel. See Plaintiffs' Motion For Review (Doc. #1195) at 7.

Defendants object to the orders of May 28 and June 15, 2009 (Doc. #1196). Defendants assert that the First Amendment protects against disclosure of *communication between trade associations and other similar groups* regarding collective lobbying and legislative activity concerning ATC for motor fuel. See Defendants' Response To Plaintiffs' Motion To Review And Set Aside The Magistrate Judge's Order Dated May 28, 2009 And Defendants' Memorandum In Support Of Motion To Review Magistrate Judge Orders (Docs. 1080, 1196) ("Defendants'

---

[7]    It appears that the stay which Judge O'Hara entered on July 25, 2009 does not apply to this deadline. See Doc. #1213 and Doc. #1202 filed June 19, 2009.

Memorandum") (Doc. #1215) filed June 25, 2009 at 28-29.  Defendants also assert that the First

Amendment protects against disclosure even those documents which are publicly available.  See id.

at 33-37.

The United States Constitution guarantees a right to associate to engage in activities which

the First Amendment protects, including speech, assembly, petition for the redress of grievances and

the exercise of religion.[8]  See Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984); NCAAP v. State

of Ala., 357 U.S. 449, 462-63 (1958).[9]  These First Amendment protections apply in the context of

---

[8]     The First Amendment provides as follows:

Congress shall make no law respecting an establishment of religion, or prohibiting
the free exercise thereof; or abridging the freedom of speech, or of the press; or the
right of the people peaceably to assemble, and to petition the government for a
redress of grievances.

U.S. Const., Amend. I.

[9]     In NCAAP v. Alabama, the state sought to enjoin activities of the National
Association for the Advancement of Colored People ("NCAAP") because it had not complied with
state foreign corporation filing requirements, from which the NCAAP claimed it was exempt.  The
trial court issued an ex parte restraining order and ordered the NCAAP to produce records which
included  members' names and addresses.   The NCAAP claimed that the order to produce
documents violated the First Amendment and did not comply with it.  The trial court found the
NCAAP in contempt and imposed a $100,000 fine.  The Alabama Supreme Court refused to review
the contempt judgement, and the United States Supreme Court granted certiorari review.
In NCAAP v. Alabama, with regard to associational rights, the Supreme Court stated as
follows:

Effective advocacy of both public and private points of view, particularly
controversial ones, is undeniably enhanced by group association, as this Court has
more than once recognized by remarking upon the close nexus between the freedoms
of speech and assembly.  It is beyond debate that freedom to engage in association
for the advancement of beliefs and ideas is an inseparable aspect of the "liberty"
assured by the Due Process Clause of the Fourteenth Amendment, which embraces
freedom of speech. Of course, it is immaterial whether the beliefs sought to be
advanced by association pertain to political, economic, religious or cultural matters,
and state action which may have the effect of curtailing the freedom to associate is

(continued...)

discovery orders.  See Grandbouche v. Clancy, 825 F.2d 1463, 1466 (10th Cir. 1987).  Specifically,

the Supreme Court has recognized that in the context of discovery, the First Amendment creates a

qualified privilege from disclosure of certain associational information.  See NAACP, 357 U.S. at

462.  The privilege is not absolute.  See Buckley v. Valeo, 424 U.S. 1, 65-66 (1976) (per curiam);

Perry v. Schwarzenegger, 591 F.3d 1147, 1159 (9th Cir. 2010).  In evaluating claims of associational

privilege in the discovery context, the Court applies a burden-shifting analysis.  See Perry, 591 F.3d

at 1160-61; McCormick, 2005 WL 1606595, at *7; Wyoming v. USDA, 239 F. Supp.2d 1219, 1236

(D. Wyo. 2002), appeal dismissed as moot, 414 F.3d 1207 (2005); In re GlaxoSmithKline PLC, 732

N.W.2d 257, 270-71 (Minn. 2007).[10]  First, the parties asserting the privilege must make a prima

_____

[9](...continued)
        subject to the closest scrutiny.

357 U.S. at 460 (citations omitted).

        [10]      Grandbouche appears to be the only case in which the Tenth Circuit has addressed
the First Amendment associational privilege with regard to discovery disputes between private
litigants.  In Grandbouche, the National Commodity and Barter Association ("NCBA"), an
organization which espoused dissident views on the federal tax system, claimed that various agents
of the Internal Revenue Service had illegally seized information from the NCBA to harass and
intimidate its members and deter membership.  In discovery, defendants sought NCBA membership
information to refute the claim that their actions deterred membership.  Plaintiffs objected based on
First Amendment associational rights.  The district court found that the First Amendment did not
apply to discovery orders in private litigation and ordered plaintiffs to produce the information.  825
F.2d at 1466.  Plaintiffs did not comply, and the district court dismissed the action as a sanction
under Rule 37(b)(2)(C), Fed. R. Civ. P.  On appeal, the Tenth Circuit found that an order compelling
discovery can invoke First Amendment scrutiny.  Id.  Specifically, it found that when the subject
of a discovery order claims a First Amendment privilege not to disclose certain information, the
court must conduct a balancing test before it can order disclosure.  Id.  The Tenth Circuit did not
discuss the need to make a prima facie showing of chill on associational rights, however, or who
bears the burden in this regard.
        Although the Tenth Circuit has not articulated a burden-shifting analysis with regard to
private discovery disputes regarding associational privilege, it has applied a burden-shifting analysis
to claims of associational privilege with respect to grand jury subpoenas.  See, e.g., NCBA v.
United States, 951 F.2d 1172 (10th Cir. 1991).  In NCBA, in connection with a money laundering
                                                                                              (continued...)

facie showing that the privilege applies. See Perry, 591 F.3d at 1160; GlaxoSmithKline, 732 N.W.2d at 269-70; McCormick, 2005 WL 1606595, at *7. To make this showing, defendants must demonstrate an objectively reasonable probability that compelled disclosure will chill associational rights, i.e. that disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests. See NCAAP, 357 U.S. at 462-63; Perry, 591 F.3d at 1160; Wyoming, 239 F. Supp.2d a 1236-37; GlaxoSmithKline, 732 N.W.2d at 270. If defendants make a prima facie showing, the burden shifts to plaintiffs to demonstrate a compelling need for the requested information. Id. In the Tenth Circuit, to determine whether plaintiffs have a compelling need, the Court considers the following factors: (1) the relevance of the information sought; (2) plaintiffs' need for the information; (3) whether the information is available from other sources; (4) the nature of the information sought; and (5) whether defendants have placed the information in issue. See Grandbouche v. Clancy, 825 F.2d 1463, 1466-67 (10th Cir. 1987) (citing Silkwood v.

---

[10](...continued)
investigation, a grand jury subpoenaed bank documents regarding the NCBA. The NCBA moved to quash, arguing that the subpoenas infringed First Amendment associational rights. The district court found that the NCBA had made a prima facie showing of chill on associational rights and ordered an evidentiary hearing. See id. at 1174. After the hearing, the district court found that the government had shown a compelling need for the records and could not obtain the information by less intrusive means. Id. The district court therefore declined to quash the subpoenas. On appeal, the Tenth Circuit affirmed. It found that when a party makes a prima facie showing of First Amendment infringement, the government must show a compelling need for the information and that a substantial relationship exists between the records sought and that compelling need. See id. at 1174. The Tenth Circuit agreed with the district court that the government had demonstrated a compelling need for the information. See id.

Although the Tenth Circuit has not applied a burden-shifting analysis with regard to private discovery disputes regarding associational privilege, the district courts which have addressed the issue in this circuit apparently agree that it applies. See Wyoming, 239 F. Supp.2d at 1236-37; Heartland Surgical Specialty Hosp. LLC v. Midwest Div., Inc., No. 05-2164-MLW-DWB, 2007 WL 852521, at *3 (D. Kan. March 16, 2007); McCormick, 2005 WL 1606595, at *7.

Kerr-McGee Corp, 563 F.2d 433, 438 (10th Cir. 1977));[11] McCormick, 2005 WL 1606595 at *7; see also Point Rushton, LLC v. Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am., No. C09-5232BHS, 2009 WL 5125395, at *4 (W.D. Wash. Dec. 18, 2009) (balancing Grandbouche factors against First Amendment associational rights); Christ Covenant Church v. Town of Sw. Ranches, No. 07-60516-CIV, 2008 WL 2686860, at *7-8 (S.D. Fla. June 29, 2008) (same). After examining these factors, the Court determines "whether the privilege must be overborne by the need for the requested information." Grandbouche, 825 F.2d at 1466.

### A. Whether Judge O'Hara Incorrectly Ruled That The First Amendment Protects Against Disclosure Of Internal Trade Association Communications Regarding Legislative Affairs And Lobbying Efforts Concerning ATC For Retail Motor Fuel (Plaintiffs' Objection)

Plaintiffs contend that Judge O'Hara incorrectly ruled that the First Amendment protects against disclosure of internal trade association communications concerning legislative affairs and lobbying efforts regarding ATC for retail motor fuel. Specifically, plaintiffs assert that he incorrectly found that (1) a presumptive privilege applies to internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel; (2) defendants made a prima facie showing that the First Amendment right to associate protects such communications; and (3) defendants' First Amendment interest in not disclosing such information

---

[11]  In Grandbouche, the Tenth Circuit found that before ordering disclosure of information which the First Amendment protects, the court must balance the following factors to determine whether the need for information outweighs the First Amendment privilege: (1) relevance; (2) need; (3) availability from other sources; and (4) nature of the information sought. Id. at 1466. The Tenth Circuit also stated that the court must determine the validity of the claimed First Amendment privilege and consider whether the opposing party has put the information in issue. See id. at 1466-67. Here, the Court considers the validity of the privilege in determining whether defendants have made a prima facie showing that the privilege applies.

outweighs plaintiffs' need to obtain it.[12]

### 1. Whether Judge O'Hara Incorrectly Found That Such Communications Are Presumptively Privileged

Plaintiffs assert that internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel are not presumptively privileged under the First Amendment. Judge O'Hara found that where information goes to core associational activity, it is presumptively prima facie privileged. See Memorandum And Order (Doc. #1080) at 7-9. With regard to confidential membership and financial contributor information, he found that such information involves core associational activity and is presumed privileged and that the balance of factors weigh against disclosure. See id. at 8, 16. Plaintiffs do not object to that ruling. With regard to internal trade association communications regarding legislative and lobbying on ATC for retail motor fuel, however, it is unclear whether Judge O'Hara applied a presumptive privilege.[13]

Judge O'Hara found that based on Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., No. 05-2164-MLB-DWB, 2007 WL 852521 (D. Kan. March 16, 2007), internal trade

---

[12]     Plaintiffs also assert that Judge O'Hara incorrectly found that the Noerr-Pennington doctrine precludes disclosure of internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel. See Plaintiffs' Motion For Review (Doc. #1195) at 11-12. Judge O'Hara found that Noerr-Pennington does not directly bar discovery and that even without considering it, plaintiffs had not shown a compelling need for internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel. See Doc. #1080 at 19 n.4.

[13]     Judge O'Hara stated that "[w]hile some courts have espoused a general recognition that the 'past political activities' of associations and their members are core associational activities entitled to a presumption of privilege, case law provides little guidance on the type of information that might fit under the past-political-activity umbrella." Doc. #1080 at 9 (citing Wyoming, 239 F. Supp.2d at 1237; Int'l Action Ctr. v. United States, 207 F.R.D. 1, 3 (D.D.C. 2002)). He noted that even if such information is not presumed privileged, defendants could still satisfy their prima facie burden "by demonstrating that disclosure of the information would chill the associations' First Amendment rights." Id.

association communications regarding lobbying and legislative issues are prima facie privileged. See Doc. #1080 at 9-10. He also found, however, that (1) a reasonable probability exists that disclosure of internal trade association communication regarding lobbying and legislative issues would deter membership due to fear that exposure of their beliefs would subject members to economic reprisal or other public hostility; and (2) plaintiffs could use information regarding trade association lobbying and legislative strategy to gain an unfair advantage in current congressional debates over ATC for retail motor fuel. See Doc. #1080 at 11-12.[14] Judge O'Hara therefore

---

[14]      Specifically, Judge O'Hara stated as follows:

> The court finds the reasoning in [Heartland] applies equally well in this case. As in [Heartland], the trade associations' internal communications and evaluations about advocacy of their members' positions on contested political issues, as well as their actual lobbying on such issues, "would appear to be a type of political or economic association that would . . . be protected by the First Amendment privilege." It is undisputed that a primary purpose of each of the trade association is to advocate on behalf of its collective members. . . . If the trade associations were forced to disclose confidential communications exchanged in conjunction with pursuing their right to advocate, there is a reasonable probability that such disclosure would interfere with the core of the associations' activities by inducing members to withdraw from the associations, or dissuading others from joining the associations, because of fear that exposure of their beliefs would subject them to economic reprisal or other public hostility.
>
> The court is not persuaded, as suggested by plaintiffs, that this likely harm could be eliminated by protecting the identities of the associations' members. Current or potential members of an association could reasonably fear that exposure of their beliefs expressed in private legislative strategy sessions or lobbying could subject them, as members of the motor fuel industry as a whole, to economic reprisal or public hostility. Moreover, it is undisputed the trade associations – and defendants as members – are engaged in current congressional debates over temperature-adjusted retail sale of motor fuel. Disclosure of the associations' evaluations of possible lobbying and legislative strategy certainly could be used by plaintiffs to gain an unfair advantage over defendants in the political arena. The court therefore concludes that defendants have met their burden of showing the production of trade association strategic lobbying documents and evaluations of legislation would have a chilling effect.

(continued...)

14

concluded that defendants had met their burden to show that disclosure would have a chilling effect on the exercise of associational rights. See id. at 12.

To the extent that Judge O'Hara may have presumed First Amendment privilege for internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel, his conclusion is contrary to law. Both plaintiffs and defendants contend that Heartland presumed First Amendment privilege with regard to trade association lobbying and legislative efforts. See Plaintiffs' Motion For Review (Doc. #1195) at 9-10 (Heartland incorrectly found generalized privilege for trade association lobbying and legislative strategy); Defendant's Memorandum (Doc. #1215) at 7-8 (under Heartland, disclosure of trade association lobbying and legislative activity presumptively chills First Amendment rights).[15] If Heartland presumed such a

---

[14](...continued)
Id. at 10-12 (footnotes and citations omitted).

[15]      In Heartland, an antitrust case, plaintiff sought to compel discovery regarding lobbying and legislative efforts by the Kansas Hospital Association ("KHA"), non-party hospital trade association. KHA objected based on First Amendment association privilege. Plaintiff argued that KHA had not made a prima facie showing that producing the information would have a chilling effect on its members. See Heartland, 2007 WL 852521, at *4. Magistrate Judge Donald W. Bostwick disagreed. He found that producing KHA's internal legislative strategy would appear to interfere with KHA's internal organization and lobbying activities and would therefore have a chilling effect on the organization and its members. See id. at *4. Judge Bostwick concluded that information regarding KHA's legislative and lobbying strategy is "precisely the type of internal associational activity and past political activity that the First Amendment was designed to protect." Id. at *5. He concluded that KHA had met its prima facie burden to show that the privilege applied and that the balance of factors weighed against disclosure. See Heartland, 2007 WL 852521, at *5-7.
      Judge Bostwick did not explicitly state that he was applying a presumptive prima facie privilege. Rather, based on his conclusion that the First Amendment was intended to protect against disclosure of internal associational activity and past political activity, he appears to have implicitly assumed that KHA had made a prima facie showing of associational privilege. In doing so, he followed Wyoming v. USDA, 239 F. Supp.2d 1219 (D. Wyo. 2002), where the district court noted that federal courts have consistently found that disclosure of internal associational activities – i.e.
(continued...)

privilege, it appears to be the only case which has done so. While it appears that some courts may have found presumptive privilege for group membership, financial contributors and past political activities of group members, see, e.g., Wyoming, 239 F. Supp.2d at 1237; Beinin v. Ctr. for Study of Popular Culture, No. C 06-02298 JW, 2007 WL 1795693, at *3 (N.D. Cal. June 20, 2007) (apparently assuming chilling effect of disclosing names or groups which supported lawsuit); Int'l Action Ctr. v. United States, 207 F.R.D. 1, 3-4 (D.D.C. 2002) (apparently assuming chilling effect of disclosing membership and volunteer lists, contributor lists and past political activities and names of individuals who planned to attend political protests), those cases apparently concerned the identity and political activities of group members and contributors – issues which the parties here do not contest. The cases did not address internal group lobbying and legislative communications.

In a matter of first impression, the Ninth Circuit recently addressed the scope of First Amendment privilege against compelled disclosure of similar information – internal campaign communications. See Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010). In that case, plaintiffs challenged Proposition 8, which amended the California Constitution to provide that California only recognizes marriage between a man and a woman. See id. at 1152. Proponents of Proposition 8 intervened to defend the lawsuit, and plaintiffs sought to discover information relating to their internal campaign communications regarding campaign strategy and advertising. See id. The proponents sought a protective order based on First Amendment associational privilege. The

[15](...continued)
membership lists, volunteer lists, financial contributor information and past political activities of members – satisfy a prima facie showing of First Amendment privilege because disclosure of these activities chills freedom of association. See id. at 1237. In Wyoming, the court addressed discovery of communications between organizations, however, not internal associational activity, and the district court did not presume a prima facie privilege. See id. at 1239-40.

district court declined to issue a protective order, finding that the proponents had not identified any way in which First Amendment privilege could apply, except perhaps as to the identity of rank-and-file volunteers.  See Perry v. Schwarzenegger, – F.R.D. –, No. C 09-2292 VRW, 2009 WL 3234131, at *4 (N.D. Cal. Oct. 1, 2009).[16]  The proponents then sought a writ of mandamus, which the Ninth Circuit granted.  See Perry, 591 F.3d at 1152.

In Perry, the Ninth Circuit found that the district court had erred in finding as a categorical matter that First Amendment associational privilege does not apply to disclosure of internal campaign communications.  See id. at 1161-63.  The Ninth Circuit found that the existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities.  In this regard, the Ninth Circuit found that participating in campaigns is unquestionably a protected activity and that disclosure of internal campaign communications can have a chilling effect on protected activity. See id. at 1162-63.[17]  Turning to the facts in its case, the Ninth Circuit found that the proponents had demonstrated a prima facie showing of chill on their associational rights.  See id. at 1163-64. Specifically, the Ninth Circuit found that the proponents had presented declarations from several individuals which attested to the impact that compelled disclosure would have on participation and

---

[16]     Plaintiffs in Perry did not seek membership lists.  See id. at *2.

[17]     Specifically, the Ninth Circuit stated as follows:

[D]isclosure of internal campaign information can have a deterrent effect on the free flow of information within campaigns.  Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private.  Compelling disclosure of internal campaign communications can chill the exercise of these rights.

Id. at 1162-63 (footnote omitted).

17

formulation of strategy.  See id. at 1163.  One declaration stated as follows:

> I can unequivocally state that if the personal, nonpublic communications I have had regarding this ballot initiative-communications that expressed my personal political and moral views-are ordered to be disclosed through discovery in this matter, it will drastically alter how I communicate in the future....
>
> I will be less willing to engage in such communications knowing that my private thoughts on how to petition the government and my private political and moral views may be disclosed simply because of my involvement in a ballot initiative campaign. *I also would have to seriously consider whether to even become an official proponent again.*

Id. (emphasis added).[18]  The Ninth Circuit found that because the proponents had made a prima facie showing that disclosure could have a chilling effect, the burden shifted to plaintiffs to demonstrate a need for the information which was sufficient to justify the deterrent effect on the proponents' associational rights.  See id. at 1164.   The Ninth Circuit found that plaintiffs had not demonstrated sufficient need for the information.[19]  See id. at 1165.  It issued a writ of mandamus and directed the district court to enter a protective order consistent with its opinion.  See id.

---

[18]    The Ninth Circuit quoted this declaration as an example of the evidence which the proponents produced.  The opinion does not reveal the substance of the other declarations.  The Ninth Circuit noted that although the evidence lacked particularity, it was consistent with the "self-evident conclusion" that plaintiffs' discovery requests implicated First Amendment interests.  Id. at 1163.

[19]    In determining whether plaintiffs had demonstrated sufficient need for the information, the Ninth Circuit found as follows:

> Plaintiffs can obtain much of the information they seek from other sources, without intruding on protected activities.  Proponents have already agreed to produce all communications actually disseminated to voters, including "communications targeted to discrete voter groups."  Whether campaign messages were designed to appeal to voters' animosity toward gays and lesbians is a question that appears to be susceptible to expert testimony, without intruding into private aspects of the campaign.  Whether Proposition 8 bears a rational relationship to a legitimate state interest is primarily an objective inquiry.

Id. at 1164-65 (footnote omitted).

18

In <u>Perry</u>, the Ninth Circuit cited with approval Judge O'Hara's finding that disclosure of trade association internal lobbying and legislative communications might reasonably interfere with association rights and his finding that First Amendment privilege protected only private, internal communications on the matter. <u>See id.</u> at 1165, n.12. The Ninth Circuit, however, did not presume that such communications are prima facie privileged. Instead, it required the proponents to demonstrate that disclosure would create an objectively reasonable probability of chill on First Amendment rights. The proponents did so by presenting declarations which demonstrated that compelled disclosure of internal campaign communications could deter membership in their organization.

In another case, <u>In re Glaxosmithkline PLC</u>, 732 N.W.2d 257 (Minn. 2007), the Minnesota Supreme Court addressed First Amendment privilege with regard to communications between pharmaceutical manufacturers, lobbyists and trade associations concerning the importation of drugs from Canada. The case involved state investigation of a pharmaceutical company's alleged antitrust violations. Under a confidentiality agreement and protective order, the pharmaceutical company produced documents regarding its communications with other pharmaceutical manufacturers, lobbyists and trade associations regarding importation of drugs from Canada. <u>See id.</u> at 262. With regard to certain documents, the state disagreed with the company's confidentiality designation and sought to publically release them under Minnesota law. <u>See id.</u> The pharmaceutical company and trade associations sought to protect them against public disclosure based on First Amendment associational rights. <u>See id.</u> at 267. The trial court issued a protective order based in part on the First Amendment right to petition. <u>See id.</u> at 263. The Minnesota court of appeals reversed, finding that federal courts have rejected a discovery privilege based on the right to petition. <u>See In re</u>

Glaxosmithkline PLC, 713 N.W.2d 48, 56 (Minn. App. 2006).  The Minnesota court of appeals then addressed whether First Amendment associational rights precluded public disclosure.  See id.  It rejected the argument, finding no evidence in the record to support a finding that the proposed disclosure would interfere with associational rights.  See id. at 57.

The pharmaceutical company petitioned for review by the Minnesota Supreme Court.  In granting review, the Minnesota Supreme Court addressed as a matter of first impression whether infringement on First Amendment associational rights may form the proper basis for a protective order.  See Glaxosmithkline, 732 N.W.2d at 268.  It found that a district court had discretion to enter such an order and outlined a two-step analysis.  See id. at 269.  It directed that under the first step, the party seeking a protective order must establish a prima facie showing of potential chilling effect on its associational rights.  Second, if the party meets this burden, the district court should balance the competing interests.  See id.  With regard to the prima facie showing, the Minnesota Supreme Court stated that through "objective and articulable" facts, the party seeking protection must make an evidentiary showing of a reasonable probability of chill on an association right.  See id. at 271.  The Minnesota Supreme Court remanded the case to the district court to determine whether to issue a protective order based on First Amendment associational rights.  See id. at 273.

Perry and Glaxosmithkline are consistent with the weight of authority which requires that a party seeking First Amendment association privilege demonstrate an objectively reasonable probability that disclosure will chill associational rights, i.e. that disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests.  See, e.g., NCAAP, 357 U.S. at 462-63; United States v. Comley, 890 F.2d 539, 544 (1st Cir. 1989); Wyoming,

20

239 F. Supp.2d at 1236-37. Although some cases may support a presumptive privilege regarding group membership and financial contributor information, e.g., Wyoming, 239 F. Supp.2d at 1237; Beinin, 2007 WL 1795693, at *3; Int'l Action, 207 F.R.D. at 3-4, only one case – Judge Bostwick's opinion in Heartland – has even arguably presumed prima facie privilege with regard to trade association internal lobbying and legislative activities. The Supreme Court has cautioned that an evidentiary privilege should be strictly construed and accepted only to the very limited extent that excluding relevant evidence "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel v. United States, 445 U.S. 40, 50 (1980) (quoting Elkins v. United States, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)). In light of this policy and established weight of authority, Judge O'Hara's decision would be contrary to law if it presumed that internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel are prima facie privileged under the First Amendment.

> **2.** **Whether Judge O'Hara Incorrectly Found That Defendants Made A Prima Facie Showing That Disclosing Such Communications Would Chill Their Associational Rights**

As noted, to meet their burden of showing a prima facie case of First Amendment associational privilege, defendants must through "objective and articulable" facts make an evidentiary showing of a reasonable probability of chill on an association right. Glaxosmithkline, 732 N.W.2d at 271; see also NCAAP, 357 U.S. at 462-63; Wyoming, 239 F. Supp.2d a 1236-37. Plaintiffs assert that Judge O'Hara did not require defendants to make this showing. In concluding that defendants had met their burden to show that disclosure would have a chilling effect, see Doc. #1080 at 12, Judge O'Hara found (1) a reasonable probability that disclosure of internal trade association communication regarding lobbying and legislative issues would deter membership due

to fear that exposure of their beliefs would subject members to economic reprisal or other public hostility; and (2) plaintiffs could use information regarding trade association lobbying and legislative strategy to gain an unfair advantage in current congressional debates over ATC for retail motor fuel. See Doc. #1080 at 11-12.

Plaintiffs contend that defendants produced no evidence to support these findings. See Plaintiffs' Motion For Review (Doc. #1195) at 8-9, n.3. Defendants disagree, asserting that they demonstrated a reasonable probability that disclosure would chill association rights. See Defendants' Memorandum (Doc. #1215) at 8 n.33. In their briefs on the underlying motions, defendants argued that disclosure would have a chilling effect on membership. They produced no evidence, however, to support their assertion. See Doc. #783 at 15; Doc. #697 at 15-16.[20]

---

[20]     Defendants' "evidence" was as follows:

[C]an there be any doubt that while this litigation is pending, a company will consider membership in a trade association but ultimately decide against membership out of fear that its confidential activities and strategies will be disclosed; and as a result, that its ability to advocate its positions on public policies will be made less effective in the political arena. Many companies who are not involved in this litigation likely would elect not to join such entities or would withdraw from membership entirely, notwithstanding their belief in the mission of the entities or their desire to make their speech and point of view more effective.
* * *
Most alarming is the fact that at the very same time that the issue of temperature compensation is being deliberated and studied extensively in the federal and state political branches by government officials charged with developing weights-and-measures standards, plaintiffs attempt to use the coercive power of this federal court to compel disclosure regarding defendants' protected lobbying and petitioning activities with respect to the same issue. Compelled disclosure of this information could have adverse effects on the ability of trade associations and their members "to collectively advocate" positions on temperature compensation by "inducing members to withdraw from the organization or dissuading others from joining the organization because fear of exposure of their beliefs will lead to . . . harassment [or] [economic] reprisal," [Heartland], 2007 WL 852521, at *3, or to

(continued...)

22

Defendants also argued that plaintiffs could use the information to gain undue advantage in the ongoing public policy debate on ATC for retail motor fuel. See Doc. #783 at 14; Doc. #1000 at 8. Again, defendants presented no evidence on this point. Nor did they explain the "unfair" advantage to which they referred.[21] Defendants did present declarations from trade associations which stated that producing the requested information would cause undue burden on association resources and negatively effect their ability to advocate on behalf of members before legislative and regulatory bodies. See Doc. #1055 at 14-15. In part, this evidence goes to whether the discovery requests are unduly burdensome. More fundamentally, it implies that under the First Amendment, trade associations cannot be compelled to dedicate to discovery requests resources which they could otherwise use to petition the government. Defendants cite no authority for this extreme proposition

---

[20](...continued)
"interfere[ence] with the internal organization or affairs of the group." Id. at *4.
* * *
[C]an there be any doubt that while this litigation is pending, a company will consider and ultimately decide against membership out of fear that its activities will be disclosed, that it will be attacked in the public by consumer groups, that it will be harassed for documents by plaintiffs, or that it will face economic reprisal in the form of being compelled to undertake an expensive and laborious effort to produce information for plaintiffs in this litigation?

Doc. #783 at 15; #697 at 15-16. These propositions, however, are not so self-evident as to relieve defendants of their burden to prove an objectively reasonable chill on the exercise of associational rights. One could just as plausibly argue that faced with litigation which challenges long-standing industry-wide practices, opponents would stampede to man the barricades and trade associations would enjoy a surge of membership and financial support. For this reason, skillful rhetoric is not a substitute for evidence which demonstrates that disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests. See Sherwin-Williams Co. v. Spitzer, No. 1:04CV185(DNH/RFT), 2005 WL 2128938, at *5 (N.D.N.Y. Aug. 24, 2005) (speculation of membership withdrawal insufficient for prima facie showing).

[21]     Even if plaintiffs gained an unfair political advantage, it is not clear how that advantage would chill the exercise of defendants' associational rights or those of others.

23

and they have not demonstrated an objectively reasonable probability that compelled disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests. See NCAAP, 357 U.S. at 462-63; Perry, 591 F.3d at 1160; GlaxoSmithKline, 732 N.W.2d at 270; Wyoming, 239 F. Supp.2d a 1236-37. In sum, on this record, defendants have not shown an objectively reasonable probability that compelled disclosure of internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel would chill associational rights. The Court therefore reverses Judge O'Hara's decision on this ground.

### 3. Whether Judge O'Hara Incorrectly Found That The Balance Of Factors Weighs In Favor Of Non-Disclosure

Even if defendants had demonstrated a prima facie showing of First Amendment privilege with regard to internal trade association communications concerning legislative and lobbying on ATC for retail motor fuel, plaintiffs have shown that the balance of factors weighs in favor of disclosure. Judge O'Hara applied the Grandbouche factors and found that plaintiffs had not shown a particular need for the information which outweighed defendants' First Amendment associational interest. See Memorandum And Order (Doc. #1080) at 14-19.[22] As noted, to

---

[22]     Judge O'Hara did not specifically discuss each factor individually. He stated as follows:

The court finds that plaintiffs have not met their burden of overcoming the First Amendment privilege attached to the associations' lobbying and legislative documents. Although the information might meet the minimal relevancy standards of Fed. R. Civ. P. 26(b)(1), it does not meet the heightened "certain relevance" and need standards applicable in this First Amendment context. As noted above, there is no dispute in this case that defendants joined together in trade associations to advocate against ATC. If plaintiffs wish to challenge defendants' contentions about their knowledge of ATC issues at the retail level, plaintiffs can directly inquire

(continued...)

determine whether plaintiffs' need for the information outweighs defendants' First Amendment interest in not disclosing it, the Court considers the following factors: (1) the relevance of the information sought; (2) plaintiffs' need for the information; (3) whether the information is available from other sources; (4) the nature of the information sought; and (5) whether defendants have placed the information into issue. See Grandbouche, 825 F.2d at 1466-67.

As to the first factor – the relevance of the information sought – plaintiffs assert that information regarding internal trade association communications with regard to legislative and lobbying on ATC for retail motor fuel is highly relevant to their claim that defendants conspired to oppose implementation of ATC for retail motor fuel in the United States and defendants' contentions regarding the availability, feasibility and legality of ATC. See Doc. #1195 at 13. Judge O'Hara found that although the information might be minimally relevant to plaintiffs' claims, it did not have "certain relevance" or go to the heart of plaintiffs' claims. Doc. #1080 at 18. He did not, however, explain his findings in this regard. Defendants contend that under Noerr-Pennington, their petitioning efforts cannot form the basis for liability and therefore the information is irrelevant to

---

[22](...continued)
through interrogatories. Likewise, plaintiffs can obtain information about whether defendants helped create the very circumstances under which defendants claim it was impractical, impossible, or illegal to use ATC at retail by examining the readily available public positions taken by the trade associations. The nature of the information sought – showing the internal strategic processing done by associations as they prepare to advocate on behalf of their collective members – is highly privileged because it involves a core associational activity protected by the First Amendment. Plaintiffs have not shown that they have a particular need in obtaining this information such that the First Amendment protection accorded it should be overborne.

Doc. #1080 at 18-19.

plaintiffs' claims.[23] See Defendants' Memorandum (Doc. #1215) at 19-20, 24-25. This argument ignores the fact that exceptions to immunity may apply, see, e.g., Assoc. Container Transp. (Australia) Ltd v. United States, 705 F.2d 53, 59 (2d Cir. 1983) (Noerr-Pennington does not protect abuses of governmental process), and that the Noerr-Pennington doctrine itself does not bar discovery.[24] See N.C. Elec. Membership Corp. v. Carol. Power & Light Co., 666 F.2d 50, 52-53 (4th Cir. 1981). Judge O'Hara found that the parties do not dispute that defendants joined together in trade associations to oppose ATC. This fact alone demonstrates the relevance of the requested information. On this record, internal trade association communications relating to legislative and lobbying on ATC for retail motor are directly relevant to plaintiffs' claim that defendants conspired to oppose implementation of ATC and defendants' contentions regarding the availability, feasibility and legality of ATC. The first factor therefore weighs in favor of disclosure.

As to the second factor – plaintiffs' need for the information – plaintiffs assert that they need the information to determine what occurred within the trade associations with regard to the alleged conspiracy and defendants' contentions regarding the availability, feasibility and legality of ATC. Judge O'Hara found that plaintiffs had not demonstrated a particular need for the information. This

---

[23]     The Noerr-Pennington doctrine protects from antitrust liability concerted efforts to restrain or monopolize trade by petitioning the government or influencing public officials. See Noerr, 365 U.S. at 136; Pennington, 381 U.S. at 670.

[24]     Defendants' argument also overlooks whether trade association efforts to lobby the National Conference on Weights and Measures ("NCWM) constitute quasi-legislative activity. The parties hotly contest this issue. Plaintiffs contend that because the NCWM is not a governmental entity, the First Amendment does not protect lobbying efforts directed toward it. Defendants disagree and assert that they constitute valid efforts to influence governmental action. See Doc. #1215 at 14-17. To determine whether such conduct constitutes a valid effort to influence governmental action, the Court must examine the context and nature of the activity to determine whether it constitutes political or commercial activity. See Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 501-05 (1988). Judge O'Hara did not address this issue.

court disagrees. The second factor weighs in favor of disclosure.

As to the third factor – whether the information is available from other sources – plaintiffs assert that they cannot obtain the information from other sources. Judge O'Hara found that plaintiffs could discover information about defendants' contentions regarding the availability, feasibility and legality of ATC through interrogatories and by examining public positions taken by the trade associations. These methods of discovery, however, would not necessarily reveal the same information. Also, they would not reveal information regarding the alleged conspiracy. The third factor weighs in favor of disclosure.

As to the fourth factor – the nature of the information sought – Judge O'Hara found that the "nature of the information sought – showing the strategic processing done by associations as they prepare to advocate on behalf of their collective members – is highly privileged because it involves a core associational activity protected by the First Amendment." Doc. #1080 at 19. Plaintiffs do not address the fourth factor. Based on this record, the fourth factor appears to weigh against disclosure.[25]

As to the fifth factor – whether defendants placed the information into issue – plaintiffs assert that by claiming that ATC was unavailable, impossible, impractical or illegal, defendants have put in issue their state of mind and their conduct regarding efforts to create particular standards regarding ATC. Judge O'Hara did not address this factor. Information regarding internal trade

---

[25]    The Tenth Circuit has not explained the fourth factor. Other courts have looked to whether the nature of the information is privileged and central to First Amendment values. See Point Rushton, 2009 WL 5125395, at *5; Christ Covenant Church, 2008 WL 2686860, at *9. To the extent the fourth factor focuses on whether the information sought implicates First Amendment rights, it appears redundant to the requirement that defendants make a prima facie showing of chill on associational rights.

association communications with regard to legislative and lobbying on ATC issues appears to be directly relevant to defendants' assertions that ATC was unavailable, impossible, impractical or illegal. Indeed, if defendants did not assert a defense that ATC is impossible, impractical or illegal, the Court might decline to order the requested discovery. Accordingly, the fifth factor weighs strongly in favor of disclosure.

In light of the above analysis, the balance of factors weighs heavily in favor of disclosure. Thus, even if defendants had demonstrated a prima facie showing of First Amendment privilege with regard to internal trade association communications concerning legislative and lobbying on ATC for retail motor fuel, the Court would reverse Judge O'Hara's ruling. On this record, plaintiffs have demonstrated a compelling need for the information which outweighs any First Amendment interest in not disclosing it. The Court therefore finds that the First Amendment associational privilege does not protect against disclosure of *internal* trade association legislative and lobbying activities regarding ATC for retail motor fuel.

**B.      Whether Judge O'Hara Incorrectly Found That The First Amendment Does Not Protect Against Disclosure Of Communication Between Trade Associations Regarding Collective Lobbying And Petitioning Activity (Defendants' Objection)**

Defendants assert that Judge O'Hara incorrectly ruled that the First Amendment does not protect against disclosure of collective lobbying and legislative communication between trade associations and similar groups regarding ATC for motor fuel. To support their assertion, defendants cite case law which suggests that under certain circumstances, the First Amendment may protect against disclosure of communication between organizations. See Doc. #1215 at 29-31 (citing Fed. Election Comm'n v. Machinists Non-Partisan Political League, 655 F.2d 380, 386-90, 395-96

28

(D.C. Cir. 1981) (assuming FEC could show compelling interest to subpoena communication among political groups, FEC lacked subject matter jurisdiction to investigate matter); Beinin, 2007 WL 1795693, at *4 (First Amendment privilege applied to names of e-mail correspondents who offered plaintiff verbal support in litigation); Wyoming v. USDA, 208 F.R.D. 449, 455 (D.D.C. 2002) (First Amendment protects against disclosure of communication among non-party environmental advocacy groups where information sought did not go to heart of lawsuit and plaintiff could obtain needed information from defendants and did not try to do so before making extraordinarily broad discovery request); Int'l Action Ctr., 207 F.R.D. at 3-4 (First Amendment precluded discovery of information regarding plaintiffs' political activities and affiliates where defendant did not show relevance or that it had pursued alternative sources); Glaxosmithkline, 732 N.W.2d at 267-73 (district court has discretion to issue protective order based on First Amendment right to associate; remanding case for district court to decide whether First Amendment protects public disclosure of pharmaceutical company communication with lobbyists and trade associations); Britt v. Superior Court of San Diego County, 574 P.2d 766, 770-77 (Cal. 1978) (vacating on First Amendment association privilege grounds trial court discovery order which required individual plaintiffs to disclose private association affiliations and activities); Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 21 P.3d 1157, 1162-64 (Wash. App. 2001) (First Amendment protects from disclosure correspondence between non-profit organizations where plaintiff did not show relevance and materiality or that it had tried to obtain information by other means)). These cases, however, do not compel a conclusion that the First Amendment precludes disclosure of communications between trade associations in this case.

To invoke First Amendment associational privilege, defendants must demonstrate or make

a prima facie showing that the privilege applies.  See McCormick, 2005 WL 1606595, at *7.[26]  Here,

Judge O'Hara found that defendants had not made a prima facie showing that First Amendment

privilege applies to lobbying and legislative communications between trade associations regarding

ATC for retail motor fuel.  See Doc. #1080 at 12-13.  Although defendants do not articulate it in so

many words, they apparently contend that Judge O'Hara should have applied a presumptive

privilege to legislative and lobbying communication between trade associations and similar groups

regarding ATC for retail motor fuel.[27]  For reasons discussed above, the Court disagrees that a

presumptive privilege applies.  On the facts of this case, defendants have not shown an objectively

reasonable probability that disclosure of lobbying and legislative communications between trade

associations regarding ATC for retail motor fuel would chill their First Amendment rights.  Judge

O'Hara's conclusion that defendants have not shown a prima facie privilege is not clearly erroneous

or contrary to law.[28]  The Court will not set aside Judge O'Hara's ruling on this ground.

---

[26]  As noted, to demonstrate a prima facie case, defendants must show an objectively reasonable probability that compelled disclosure will chill First Amendment rights, i.e. that it will deter membership in the trade associations because of fear that exposure of members' beliefs will result in threats, harassment or reprisal which may affect physical well-being, political activities or economic interests.  See NCAAP, 357 U.S. at 462-63; Perry, 591 F.3d at 1160 ; Wyoming, 239 F. Supp.2d a 1236-37; Glaxosmithkline, 732 N.W.2d at 270.

[27]  Defendants argue that Judge O'Hara's ruling is inconsistent because the same First Amendment rationale applies to *internal* legislative and lobbying activity by trade associations and lobbying and legislative communication *between* trade associations.  See Doc. #1215 at 31-33.  Defendants may have a point, but the inconsistency arises from a premise which the Court concludes is contrary to law: Judge O'Hara's finding that the First Amendment protects against disclosure of internal trade association legislative and lobbying activities.  By reversing that finding, the Court cures the inconsistency.

[28]  In finding that defendants had shown a prima facie privilege, Judge O'Hara stated as follows:

    Defendants also assert a privilege over documents shared among multiple trade
                                                                    (continued...)

30

**C.** **Whether Judge O'Hara Incorrectly Found That The First Amendment Does Not Protect Against Disclosure Of Publicly Available Documents (Defendants' Objection)**

Defendants assert that Judge O'Hara erred in finding that the First Amendment associational privilege does not protect against disclosure of information which is publically available. Judge O'Hara found that the privilege protected against disclosure of *confidential* information regarding trade association membership, financial contributors and internal lobbying and legislative activity. See Doc. #1080 at 8. With regard to information which has been publicly disclosed, however, he found that defendants had not shown a reasonable probability that disclosure of such information would chill First Amendment rights. See id.

Defendants assert that in deciding whether they had met their prima facie burden, Judge

---

[28](...continued)
associations. . . . The court wishes to make clear that defendants have met their prima facie burden only with respect to the associations' internal evaluations of lobbying and legislation, strategic planning related to advocacy of their members' positions, and actual lobbying on behalf of members. Any other communications to, from, or within trade associations are not deemed protected under the First Amendment associational privilege.

Doc. #1080 at 12-13.

In a footnote, with regard to documents shared among multiple trade associations, Judge O'Hara stated as follows:

When information is shared among trade associations, its highly confidential nature is tarnished. The further information gets from the heart of an association the less it is connected to the association's core associational activities. Moreover, the association's willingness to share the information diminishes the possibility that the information is of the type that would put the association at risk of losing members if the information were disclosed. Recognizing such shared information as protected would expand too far the privilege designed to protect the rights of individuals to associate.

Id. at 12-13 n.27.

O'Hara should not have considered whether information is publically available.  Defendants assert that whether information is publically available is not part of the prima facie analysis, but a factor to consider under the second-step balancing test.  See Doc. #1215.  Defendants miss the point.  The Court reaches the second-step balancing test *only if* defendants satisfy their prima facie burden to show a First Amendment privilege.  See McCormick, 2005 WL 1606595, at *7.  If defendants do not make that prima facie showing, the Court need not conduct the balancing test.  As noted, to demonstrate a prima facie case, defendants must show an objectively reasonable probability that compelled disclosure will chill First Amendment associational rights, i.e. that it will deter membership in the trade associations because of fear that exposure of members' beliefs will result in threats, harassment or reprisal which may affect physical well-being, political activities or economic interests.  See NCAAP, 357 U.S. at 462-63; Wyoming, 239 F. Supp.2d a 1236-37; Glaxosmithkline, 732 N.W.2d at 270.  When information is already publically available, compelled disclosure will presumably have much less of a chilling effect – if any – on First Amendment rights.  Certainly, in this case, defendants did not demonstrate that disclosure of publically available information would chill their associational rights.  Judge O'Hara did not err in concluding that defendants had not met their burden to show a reasonable probability that disclosure of such information would chill First Amendment rights.  See, e.g., Anderson v. Hale, No. 00 C 2021, 2001 WL 503045, at *5-6 (N.D. Ill. May 10, 2001) (defendants could not make prima facie showing that associational privilege applied to publically identified group members).  The Court will not reverse Judge O'Hara's ruling on this ground.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion To Review And Set Aside The Magistrate Judge's Order Dated May 28, 2009 (Doc. #1195) filed June 11, 2009 be and hereby is

**SUSTAINED.** The Court reverses that portion of Judge O'Hara's order of May 28, 2009 (Doc. #1080) which found that the First Amendment protects against disclosure of *internal* trade association legislative and lobbying activities regarding ATC for retail motor fuel.

**IT IS FURTHER ORDERED** that <u>Defendants' Motion For Review Of Magistrate O'Hara's Orders (Docs. 1080, 1196)</u> (Doc. #1214) filed June 25, 2009 be and hereby is **OVERRULED.**

Dated this 4th day of March, 2010 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United Stated District Judge