## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| _____ ) | |
| IN RE: MOTOR FUEL TEMPERATURE ) | **MDL No. 1840** |
| SALES PRACTICES LITIGATION ) | |
| ) | **Case No. 07-MD-1840-KHV** |
| **(This Document Relates to All Cases)** ) | |
| ) | |
| _____ ) | |

### DEFENDANT COSTCO WHOLESALE CORPORATION'S RESPONSE IN
### OPPOSITION TO OBJECTIONS TO THE SETTLEMENT AGREEMENT

Pursuant to the Court's March 4, 2010 Order [Doc. No. 1582], Defendant Costco

Wholesale Corporation ("Costco") submits this response in opposition to certain

objections to the settlement agreement, filed by proposed Settlement Class Members, and

requests that the Court reject the objections and grant final approval of the settlement

agreement.

## I.    INTRODUCTION

As with any settlement, the settlement agreement in this case reflects a

compromise.  First, it provides for certification of a conditional Settlement Class, even

though the Court has not yet determined whether the various actions against Costco could

be maintained as a class action.[1]  Second, the settlement agreement provides the

Settlement Class with injunctive relief that directly addresses Plaintiffs' claims in this

case.  In exchange, the Settlement Class Members have agreed to release their claims

against Costco and forgo any claims for restitution or damages.

The settlement has been met with the overwhelming approval of the more than 10

million Settlement Class Members to whom notice of the settlement was distributed.

Only 3,022 Class Members have timely opted out and significantly fewer – 29 – filed the

18 objections before the Court.  The issues the objectors raise do not undermine the

---

[1]  Indeed, the Court has not yet certified a class as to any of the MDL Defendants.

la-1067730

fundamental fairness of the compromise reached, and, accordingly, their objections should not impede final approval of the settlement.  Furthermore, the objectors raise a relatively small number of issues.  Many of the objections do not merit a response.

Costco files this memorandum to address the challenges to the adequacy of the benefit to the Settlement Class.  Specifically, certain objectors assert that injunctive relief, as opposed to damages, constitutes insufficient consideration to the Settlement Class.  These objectors further assert that the settlement fails to include a benefit to Settlement Class Members who live in the Non-Conversion States (*see*, *infra*, section II.A), or who are no longer Costco members.  These objections are without merit, and the Court should reject them for the following reasons.

*First*, the law encourages compromise and settlement, and the proposed settlement agreement reflects a compromise.  Costco has agreed to provide injunctive relief that directly implements Plaintiffs' vision for the sale of motor fuel on a temperature-adjusted basis, in exchange for the Settlement Class Members' release of claims against Costco.  As such, the settlement achieves a specific goal of the litigation.  Overall, the proposed settlement represents a fair, adequate, and reasonable alternative to protracted litigation, in which Plaintiffs' recovery is far from certain.

*Second*, the injunctive relief Costco has agreed to provide constitutes bargained-for consideration.  Costco is the only defendant in this MDL proceeding who has elected to seriously pursue settlement.  The fact that regulatory approval may be required before Costco can provide the promised injunctive relief, or even that regulatory approval may not ultimately be achieved, does not negate the consideration offered by Costco.

*Third*, Settlement Class Members living in the Non-Conversion States stand to benefit from the settlement because Costco has agreed to convert to automatic temperature compensation ("ATC") at existing retail stations and install ATC at any new retail stations if Costco begins to consistently purchase motor fuel on a temperature-adjusted basis in the Non-Conversion States.  In addition, Settlement Class Members in

2

Non-Conversion States can access the benefit of the change to ATC in Conversion States. Likewise, once Costco has implemented the injunctive relief, even former Costco members will have the opportunity to avail themselves of it if they rejoin Costco, an opportunity that many may exercise in light of the high percentage of membership renewals Costco enjoys.

*Finally*, as a result of this litigation, Costco began, in December 2007, to explicitly inform its gas purchasers that Costco does not adjust for temperature or other factors which may affect the energy content of each gallon dispensed at its fuel pumps. This added transparency regarding the manner in which Costco sells motor fuel enables Costco customers to make informed purchasing decisions.

For these reasons, and those stated below, Costco submits that the objections should be overruled, and the settlement agreement should be approved.

## II.    RELEVANT BACKGROUND

The named Plaintiffs, Zachary Wilson, Joann Korleski, James Graham, Phyllis Lerner, and Herb Glazer ("Plaintiffs"), have alleged on behalf of themselves and others similarly situated, that Costco sold motor fuel in various states without disclosing or adjusting for temperature expansion and, as a result, Costco is liable under these states' common law (for claims that include breach of contract and breach of warranty) as well as under the various states' consumer protection statutes.  Costco denies all liability with respect to any and all facts and claims alleged against it.  In particular, Costco denies that any Plaintiff was damaged as a result of Costco's failure to sell motor fuel on a temperature-adjusted basis.[2]  Notwithstanding the strength of Costco's defenses in this

---

[2] Costco maintains that it has not misrepresented or omitted any material information about what Costco is selling – uniform units of 231 cubic inches of gasoline in accordance with the plain meaning and applicable statutory definition of a gallon. Moreover, because Costco's retail sales practices are governed by state law, questions exist (*see* Defendants' Joint Motion to Dismiss [Doc. Nos. 196-197]) whether Costco can sell motor fuel on a temperature-adjusted basis without regulatory permission.  Costco also believes that issues presented in this action are further complicated by the long-running debate in the weights and measures community over the economic benefits, if

action, Costco engaged in settlement negotiations with Plaintiffs and agreed to a settlement to resolve Plaintiffs' claims against Costco.

### A.     Overview of Settlement

On April 12, 2009, Costco and Plaintiffs entered into a settlement agreement that resolves all of the claims against Costco in this MDL proceeding, subject to the Court's final approval.  (Stipulation of Class Action Settlement Agreement and Release ("Settlement Agreement") at 1, attached hereto as Exhibit 2.)  Plaintiffs filed an unopposed motion on April 22, 2009, seeking conditional certification of the Settlement Class and preliminary approval of the settlement agreement.  [Doc. No. 1015.]  On August 13, 2009, the Court entered an order, *inter alia*, preliminarily certifying the Settlement Class and preliminarily approving the settlement agreement.  (August 13, 2009 Memorandum and Order at 21 [Doc. No. 1273].)  The final settlement approval hearing is set for April 1, 2010.  [Doc. Nos. 1273, 1284.]

The Settlement Class is defined as follows:

> All residents of the States at Issue who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court, and members of the Court's immediate family.

(Settlement Agreement § 2.1.)  The "States at Issue" are Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia, and Guam.  (*Id.* § 1.17.)  Of the 28 States at Issue, Costco and Plaintiffs agree that Costco has not sold motor fuel in 7 of them:  Arkansas, Delaware, Louisiana, Mississippi, Oklahoma, the District of Columbia, and Guam.  (*Id.*)  The parties further

---

any, of retail temperature adjustment.  (*See* National Conference on Weights and Measures Press Release July 16, 2009, attached hereto as Exhibit 1.)

la-1067730

agree that Costco does not currently purchase motor fuel on a temperature-adjusted basis in 7 additional States:  Indiana, Kansas, Maryland, Missouri, New Jersey, Oregon, and Pennsylvania (the "Non-Conversion States").  (*Id.*)  Therefore, there are 14 States in which Costco currently purchases motor fuel on a temperature-adjusted basis:  Alabama, Arizona, California, Florida, Georgia, Kentucky, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Utah, and Virginia (the "Conversion States").  (*Id.*)

In exchange for release of Settlement Class claims, including claims for any type of restitution or damages, Costco agreed to convert its motor fuel dispensers to automatic temperature compensation (ATC) dispensers at existing retail stations and install ATC equipment at any new retail stations in the Conversion States pursuant to the schedule and terms set forth in the settlement agreement.  (Settlement Agreement §§ 4.2-4.4.) Costco also agreed that, if it begins to consistently purchase motor fuel on a temperature-adjusted basis in the Non-Conversion States, it will likewise convert its motor fuel dispensers in those States to ATC at existing retail stations and install ATC at new retail stations.  (*Id.*)

The settlement agreement provides that, if in Costco's good faith judgment there is any regulatory approval required before Costco can proceed with ATC, class counsel shall "take all reasonable steps to seek such regulatory approval required by law . . . so that Costco can fully comply with [its] obligations . . . ."  (*Id.* § 4.6.)  In the event regulatory approval is denied, Costco will not be required to convert to ATC in that State, and the State will cease to constitute a "Conversion State."  (*See id.* §§ 4.5, 4.6, 9.)

### B.    Overview of Objections

Pursuant to the Court's August 13, 2009 Order, and the settlement agreement, 10,134,738 notices were sent between September 15, 2009, and January 29, 2010, to the proposed Settlement Class, informing Settlement Class Members of the terms of the settlement and explaining Class Members' rights to opt out by February 23, 2010, or to object to the proposed settlement by March 2, 2010.  (Declaration of Michelle Acpal

("Acpal Dec.") ¶¶ 3-5; 9, attached hereto as Exhibit 3.)  A total of 3,022 members (about 0.03 percent) timely opted out of the class, (*See* Declaration of David F. McDowell ("McDowell Dec.") ¶ 3, attached hereto as Exhibit 4), and a mere 29 objectors (about 0.0003 percent) filed 18 objections to the proposed settlement agreement with the Court.[3] With regard to the number of objectors, Costco has counted liberally — and certain objections that Costco has attributed to two objectors could reasonably be attributed to one.[4]

Of the 18 objections, 2 were made by individuals who unequivocally opted out of the proposed class, and thus lack standing to object.[5]  *In re Integra Realty Res.*, 262 F.3d 1089, 1102 (10th Cir. 2001) ("Non-settling defendants generally have no standing to complain about a settlement, since they are not members of the settling class.") (citations omitted).  In addition, 1 objection was submitted by an individual who is not a Settlement Class Member and who also has no standing to object.[6]  (See Acpal Dec. ¶ 10.)  *See In re Integra Realty Res.*, 262 F.3d at 1102.

---

[3] Objections were filed by (1) Gary Hendrix, (2) Dacus and Sondra Grant, (3) Bruce R. Hudson, (4) Patricia Ann Eagan, (5) Ronald Schroeder, (6) William A. and Nancy L. Wood, (7) Sid and Sue Hasler, (8) Chuck and Tessa Balkon, (9) Daniel C. Perry, (10) Diane Olbert, (11) Malcolm and Edythe Newbourne, (12) Brian Rush, (13) R. Duke Dougherty, (14) Amy Alkon and Nicolas S. Martin, (15) Daryl Chilimidos, (16) Mike McKerley, Bonnie Anderson, Carroll Putnam, David Kenner, Charles Zuravin, and Karen Waldvogel, (17) Jeffery Schroeder, and (18) Jeff Weinstein.  [Doc. Nos. 1296, 1300, 1349, 1350, 1352, 1383, 1401, 1402, 1405, 1425, 1431, 1438, 1577, 1578, 1579, 1581, 1584, 1585.]

[4] For example, the objection submitted by Sid and Sue Hasler is from a joint e-mail account belonging to the couple, but the e-mail is "signed" by Sid Hasler.  The Court's docket reflects this objection as being filed by Sid and Sue Hasler; therefore, in the interest of being inclusive, Costco has counted this objection as originating from two objectors.  [Doc. No. 1401.]

[5] *See* Objections by Patricia Ann Eagan and Ronald Schroeder.  [Doc. Nos. 1350, 1352.]

[6] *See* Objection by Carroll Putnam.  [Doc. No. 1581.]

Of the remaining 15 objections, 1 "objection" consists solely of a newspaper article the objectors forwarded to the Court, unaccompanied by any written objection.[7] Another five objections protest the action as frivolous and/or request the Court to dismiss the action.[8]  This leaves 10 objections[9] filed by 17 objectors out of 10,134,738 Settlement Class Members – just 0.0002 percent of the Settlement Class.

When the dust settles, only 7 objections include any complaint that the injunctive relief contemplated by the settlement agreement constitutes an inadequate benefit to the Settlement Class: (1) Gary Hendrix, (2) R. Duke Dougherty, (3) Amy Alkon and Nicholas S. Martin ("Alkon/Martin"), (4) Daryl Chilimidos, (5) Mike McKerley, Bonnie Anderson, Carroll Putnam, David Kenner, Charles Zuravin, and Karen Waldvogel ("McKerley et al."), (6) Jeffery Schroeder, and (7) Jeff Weinstein (collectively, the "Objectors").  Costco has tailored its response to address specifically these Objectors' contentions that the contemplated injunctive relief constitutes insufficient consideration to the Settlement Class, and that it fails to afford a benefit to Settlement Class Members who live in the Non-Conversion States or who are no longer Costco members.[10]

---

[7] *See* Objection by Malcolm and Edythe Newbourne.  [Doc. No. 1431.]

[8] *See* Objections by Dacus and Sondra Grant, Bruce R. Hudson, Sid and Sue Hasler, Daniel C. Perry, and Brian Rush.  [Doc. Nos. 1300, 1349, 1401, 1405, 1438.]

[9] Objector Putnam filed his objection jointly with McKerley et al.; therefore, his lack of standing does not affect the consideration of his co-filers' objections.

[10] Costco leaves to Plaintiffs to address the remaining objections, which include assertions that the lawsuit is frivolous (and attorneys' fees to Class Counsel are not proper), the opt-out process is too burdensome, notice is inadequate (particularly as it relates to Class Counsel's attorneys' fees), and the cost of compliance will exceed the benefit to the Settlement Class.  With respect to objections regarding the anticipated fees request, Costco intends to scrutinize any attorneys' fees request carefully to determine whether the request is reasonable.  *See Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-21640-KHV, 08-2133-KHV, 08-2149-KHV, 2009 U.S. Dist. LEXIS 60125, at *35-37 (D. Kan. Jul. 14, 2009) (noting fee requests made in non-adversarial setting can lead to unreasonable fees requests).

7

III.    ARGUMENT

The response of the Settlement Class to the proposed settlement has been overwhelmingly positive.  As discussed above, despite the fact that over 10 million Settlement Class Members received notice, only 29 filed objections, and only 3,022 Settlement Class Members timely opted out.[11]  (*See* Acpal Dec. ¶ 3; McDowell Dec. ¶ 3.) The objections, in particular, are insignificant in number – only a miniscule 0.00029% of the Settlement Class objected to the Settlement – and support a finding that the settlement is adequate:

> [A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members.  If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (citation omitted).  *Accord Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (finding 18 objections out of 5 million class members was evidence of "overwhelming approval").

The fact that the objectors and opt-outs represent a tiny fraction of the Settlement Class also supports a finding that the settlement is fair and reasonable.  *See West v. First Franklin Fin. Corp.*, No. 06-2064-KHV/JPO, 2007 U.S. Dist. LEXIS 79286, at *4 (D. Kan. Oct. 24, 2007) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable, and as well as to the class's reaction to the settlement."); *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2007 U.S. Dist. LEXIS 67368, at *29-30 (D. Kan. Sept. 11, 2007) ("While the number of objectors is not controlling, a relatively small number of objectors can be taken as some indication that the class members as a

---

[11] Some of the objectors object not to the settlement, but to the bringing of claims against Costco in the first instance.  For example, "objector" Brian Rush states "Costco has never 'wronged' me" and objects to the settlement because he believes Plaintiffs' claims are frivolous, not because he found the settlement unfair or inadequate.  [Doc. No. 1438.]

group did not think the settlement was unfair.") (internal quotations and citations omitted).

A.    **The Injunctive Relief Contemplated By The Settlement Constitutes Adequate Consideration.**

The Court should reject the Objectors' contention that the injunctive relief provided by the settlement agreement is insufficient consideration, and that without monetary damages the settlement is inadequate.  (*See* Objections by Dougherty, Alkon/Martin, Chilimidos, McKerley et al., J. Schroeder, and Weinstein [Doc. Nos. 1577, 1578, 1579, 1581, 1584, 1585].)  The Court should also reject the Objectors' specific contention that injunctive relief cannot compensate Settlement Class Members for past wrongs.  (*E.g.*, Objections by Dougherty and Alkon/Martin.)  The focus of this case is on alleged consumer deception, and the compromise reached in the settlement must be examined within this context and with the strength of Plaintiffs' claims in mind.

"The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."  *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977) (quoting *Tulsa City Lines v. Mains*, 107 F.2d 377, 380 (10th Cir. 1939)).  In the class action context, in particular, there is a "strong judicial policy in favor of settlements."  *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).  In criticizing the injunctive relief contemplated by the settlement, the Objectors fail to recognize that the very nature of a settlement is compromise in the interest of expeditious and cost-effective conclusion of the litigation.  *See County of Santa Fe v. Public Serv. Co.*, 311 F.3d 1031, 1053 (10th Cir. 2002) ("The premise of a settlement and compromise is that each party has an arguable position that it agrees to give up in exchange for an expeditious, inexpensive, and amicable resolution of the matter.").  Consistent with this premise, each party to a settlement necessarily receives less (sometimes much less) than what he or she *may* have obtained *if* he or she ultimately prevailed on the merits.  This alone is insufficient to support a finding that the

9

settlement is unfair, unreasonable, or inadequate.  *See Seiffer v. Topsy's Int'l, Inc.*, 70

F.R.D. 622, 627 (D. Kan. 1976) ("[T]he fact that a proposed settlement of a class action

may only amount to a fraction of potential recovery does not, in and of itself, mean that

the proposed settlement is grossly inadequate and should therefore be disapproved.").

        The injunctive relief contemplated by the settlement agreement is fair, reasonable,

and adequate.  Indeed, at least one "objection" recognizes that injunctive relief of the type

contemplated in the settlement agreement is appropriate, and states:  "have Costco install

temperature sensors, forget about this lawsuit."  (Objection by Sid and Sue Hasler [Doc.

No. 1401].)  The other Objectors overlook the value of the injunctive relief provided by

the settlement.  The settlement calls for Costco to conform its motor fuel sales practices

to Plaintiffs' vision for such practices – in States where Costco purchases motor fuel on a

temperature-adjusted basis, it will begin selling it on a temperature-adjusted basis.  The

absence of nonmonetary relief does not render a settlement unfair.  *See Bolger v. Bell

Atlantic Corp.*, 2 F.3d 1304, 1311 (3d Cir. 1993) (nonpecuniary benefits may support a

class action settlement); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d

500, 507 (E.D. Pa. 2007) (finding settlement that consists entirely of prospective

injunctive relief, with no monetary payment to the class, as fair, reasonable, and

adequate).

        Moreover, Costco's promises in the settlement agreement are bargained for, and

therefore constitute adequate consideration.[12]  Restatement (Second) Contracts § 71(2)

---

        [12] Objector Weinstein's contention that the settlement lacks consideration because
"opt outs" would receive everything that class members receive without releasing their
claims for money damages fails to account for the provision in the agreement that gives
Costco the option to rescind the agreement in the event 2,500 or more Class Members opt
out.  (Settlement Agreement § 3.3.2.)  Under this section, if the consideration Costco
anticipates receiving – the release of Class Members' claims – is substantially
undermined by the numbers of opt-outs, at Costco's election, the settlement agreement
can be "rescinded, cancelled, and annulled," and the parties returned to their pre-
settlement positions.  (*See id.*)  Thus, contrary to Weinstein's assertions, there is
consideration for the release of Class Members' claims.  Moreover, the cases on which
Weinstein relies are factually inapposite, and do not involve settlement agreements where
class members receive prospective injunctive relief.  *See Molski v. Gleich*, 318 F.3d 937

(1981) ("A . . . return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.").

First, Costco has agreed to the certification of a conditional Settlement Class, even though the Court has not yet determined whether any of the actions in this MDL proceeding – against Costco or any other Defendant – could be maintained as a class action.  Second, substantial uncertainty exists as to Plaintiffs' likelihood of success on their claims.  At this time, no determination has been made by the Court with respect to the merits of Plaintiffs' claims, and even some of the Objectors have opined that, on the merits, Plaintiffs' claims are dubious.  (*See* Objections by Grant, Hasler, Rush, and J. Schroeder [Doc. Nos. 1300, 1401, 1438, 1584].)  Thus, Costco's promise to convert to ATC in the Conversion States (if lawfully able) comes at a time when Plaintiffs' recovery is far from certain, and constitutes consideration sufficient to support the settlement agreement.  When the class claims suffer from a fatal flaw, the "settlement cannot be attacked as too low."  *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 749 (7th Cir. 2001).  Furthermore, Costco's promise is not an illusory promise, because performance is not optional.  *See* Restatement (Second) of Contracts § 77 cmt. a (1981) (defining illusory promise as "words of promise which by their terms make performance entirely optional with the 'promisor'").  Pursuant to the settlement, Costco must convert to ATC or install ATC in the Conversion States where Costco is lawfully able to sell temperature-adjusted fuel.

Objectors further argue that the injunctive relief is distant and speculative because the settlement provides that Costco will be excused from converting to ATC in States where there is no regulatory approval to do so.  This possibility alone does not detract

---

(9th Cir. 2003) (involved the certification of a non-opt-out settlement class where rights to statutory damages were extinguished by the consent decree); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) (involved class that received *nothing* in exchange for surrendering colorable legal claims); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) (involved a sub-class received *no* opportunity for *any* relief).

from a determination that Costco's promise constitutes adequate consideration. Restatement (Second) of Contracts § 78 (1981) ("[T]he fact that a rule of law renders a promise voidable or unenforceable does not prevent it from being consideration."). Costco has agreed to convert to ATC in the Conversion States if it is lawfully permitted to do so.  However, in the event that a regulatory authority does not permit Costco to sell motor fuel on a temperature-adjusted basis in certain Conversion States, Costco contends that would be strong evidence that Plaintiffs lack viable claims in those States. *See In re Mex. Money Transfer Litig.*, 267 F.3d at 743 (affirming adequacy of settlement where no federal or state law required defendant to make disclosures in the manner advocated by plaintiffs).

Finally, as a result of this litigation, Costco customers have received additional transparency at the pump.  In December 2007, Costco posted a notice on its fuel dispensers stating: "This device dispenses gasoline solely by volume measured in standard gallons (231 cubic inches).  It does not adjust for temperature or other factors which may affect the energy content of each gallon dispensed." (Legal Notice By Order of the Court at 2, attached hereto as Exhibit 5.)  This disclosure provides added transparency regarding the manner in which Costco sells motor fuel and enables customers to make informed decisions in purchasing motor fuel.

Accordingly, Costco respectfully submits that the consideration bargained for in the settlement agreement is adequate, and any objections to the contrary should be rejected.

**B.      The Settlement Provides A Benefit To The Settlement Class As A Whole.**

The settlement provides fair and reasonable benefits to all Settlement Class Members, notwithstanding the Objectors' contentions that there is no value in the settlement for Settlement Class Members living in Non-Conversion States or for Settlement Class Members who are no longer Costco members.  (*See* Objections by

12

Hendrix, Dougherty, Alkon/Martin, and McKerley et al. [Doc. Nos. 1296, 1577, 1578, 1581].)

Settlement Class Members living in Non-Conversion States benefit from the promised injunctive relief in two ways.  First, in the event that Costco begins to consistently purchase motor fuel on a temperature-adjusted basis in the Non-Conversion States, Costco has agreed to convert to ATC at existing retail stations and install ATC at any new retail stations.  (Settlement Agreement §§ 4.2-4.3.)  Currently, Costco does not purchase motor fuel on a temperature-adjusted basis in the Non-Conversion States. Consequently, Costco questions whether Plaintiffs even have viable claims in Non-Conversion States.  This case is about alleged consumer deception and fraud.  There can be no viable consumer deception or fraud claims in those States where Costco purchases motor fuel in the same manner as Costco sells it.  In other words, it is Costco's position that no Settlement Class Member in a Non-Conversion State has been harmed in any way by the conduct alleged in this action.  *See DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995) ("Counseling strongly in favor of the settlement is the fact that the plaintiffs did not have a very strong case . . . . Accordingly, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation."). Nevertheless, the settlement delivers a benefit to these Settlement Class Members because Costco has agreed to convert to ATC in the Non-Conversion States if Costco changes the manner in which it purchases motor fuel in those States, *i.e.*, if Costco begins to purchase on a temperature-adjusted basis.

Second, Settlement Class Members living in Non-Conversion States can currently avail themselves of the injunctive relief in Conversion States.  Costco memberships provide members with worldwide access to Costco warehouses.  (Member Benefits and

Costco Services Brochure at 14, attached hereto as Exhibit 6.)[13]  Thus, a Costco member living in a Non-Conversion State can take advantage of ATC pumps in Conversion States when traveling and purchasing fuel — something one must frequently do when traveling by car.  This issue is analogous to the issue presented in *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249 (D. Kan. 2006).  In that case, certain objectors objected to financial planning services provided pursuant to a settlement because those objectors already received financial planning services.  *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1266.  In recognizing that the financial planning services may be "of diminished value" to the objectors, the *In re Sprint Corp.* court refused to find that the services were of "no value whatsoever" because "the decision to take advantage of these sessions rests with each individual class member."  *Id.*  Likewise, although the injunctive relief may be of "diminished value" to Settlement Class Members living in Non-Conversion States, it cannot be said that it is of "no value whatsoever."

With respect to those Settlement Class Members who are former Costco members, it also cannot be said that the settlement provides no value whatsoever for those Members.  Former Costco members can always rejoin the ranks of current Costco members.  In fact, Costco has a high percentage of renewals, over 87% in 2009.  (Costco Annual Report 2009 at 2, attached hereto as Exhibit 7.)[14]  The overwhelming majority of the Settlement Class is comprised of Costco members whose memberships are current or who are likely to renew.  (*See* Acpal Dec. ¶¶ 6-7.)  In fact, of the 29 objectors, only 2

---

[13] Also available at http://content.costco.com/Images/Content/Misc/PDF/09EX0308_ServiceDirectory.pdf, viewed on March 18, 2010.

[14] also available at http://phx.corporate-ir.net/External.File?item=UGFyZW50SUQ9MjQ1ODV8Q2hpbGRGRJRD0tMXxUeXBlPTM=&t=1, viewed on March 18, 2010.

la-1067730

objectors affirmatively state that they are former Costco members.[15]  (*See* Objections by J. Schroeder and McKerley et al. [Doc. Nos. 1584, 1585])

Finally, Costco's decision to undertake the conversion to ATC in the Conversion States results in a benefit to the Settlement Class as a whole, even Class Members living in Non-Conversion States and Settlement Class Members who are no longer Costco members.  Through the settlement agreement, Costco has made a commitment to implement Plaintiffs' vision for the sale of motor fuel.  Costco's acts as a market leader in this realm may very well create market pressure for other motor fuel retailers to follow suit, thereby resulting in a larger benefit to the Settlement Class, regardless of whether any given Member resides in a Conversion State, or a Non-Conversion State, or is no longer a Costco member.

## IV.    CONCLUSION

For the foregoing reasons, Costco respectfully requests that the Court reject the objections, and grant final approval of the proposed settlement.

Dated: March 19, 2010                             Respectfully submitted,


By: /s/ David F. McDowell
David F. McDowell
MORRISON & FOERSTER LLP
555 West 5th Street, Suite 3500
Los Angeles, CA 90013-1024
Telephone:  (213) 892-5383
Facsimile:  (213) 892-5454
E-mail: dmcdowell@mofo.com

---

[15] However, 1 of these objectors – Carroll Putnam, who objects jointly with McKerley et al. – lacks standing because he is not a Settlement Class Member.  Putnam was not included in Costco's notice distributions, his membership expired November 30, 2001, and he did not purchase gasoline at Costco.  (Acpal Dec. ¶ 10.)

Gregory L. Musil (KS #13398)
Amy E. Morgan (KS #18796)
POLSINELLI SHUGHART PC
6201 College Boulevard, Suite 500
Overland Park, KS 66211
Telephone:  (913) 451-8788
Facsimile:  (913) 451-6205
E-mail: gmusil@polsinelli.com
          amorgan@polsinelli.com

Attorneys for Defendant
Costco Wholesale Corporation

16

la-1067730

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of March, 2010, **Defendant Costco Wholesale Corporation's Response in Opposition to Objections to the Settlement Agreement** was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

/s/ Gregory L. Musil
Gregory L. Musil
Attorney for Defendant
Costco Wholesale Corporation

la-1067730