# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION | ) ) ) **MDL No: 1840** |
| (This Document Relates to All Cases) | ) ) ) **No: 07-md-1840-KHV-JPO** |

Public, Redacted Version

## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

COME NOW Plaintiffs Zachary Wilson, Joan Korleski, James Graham, Phyllis Lerner and Herb Glazer (hereinafter collectively referred to as the "Class Plaintiffs"), and move the Court for an order granting final approval to the Settlement with Defendant Costco Wholesale Corp. ("Costco"), in accordance with the Settlement Agreement previously filed with the Court. In further support, Class Plaintiffs state as follows:

## I.   OVERVIEW OF SETTLEMENT

The Settlement satisfies the necessary requirements of Federal Rule of Civil Procedure 23, and meets the fairness factors required by the Tenth Circuit Court of Appeals.[1]  The fairness of the Settlement is evident from the reaction of the Class, both in terms of objections[2] and opt-outs,[3] and the reaction from state officials.[4]  The Settlement benefits are determinable, and will

---

[1] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002).
[2] Of the 10,134,738 class members who received direct notice of this Settlement, only 29 filed an objection (a 0.0003% objection rate).
[3] There were 3,022 opt-outs (a .03% opt-out rate).
[4] *See* Section III(D) below.

yield substantial benefit to Class Members.[5]  Final approval of the Settlement is both appropriate and warranted.

## II.   APPLICABLE LEGAL STANDARDS

### A.   *Settlement In General*

When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.[6]  Indeed, counsels' judgment as to the fairness of the agreement is entitled to "substantial weight"[7] and the court "should not substitute its business judgment for that of counsel absent evidence of fraud or overreaching."[8]

Settlement is a favored method for resolving disputes,[9] and this Court's decision to approve the Settlement should be influenced by the strong federal policy of encouraging settlement of civil litigation.[10]  This policy is no less true in class actions.[11]  In fact, settlement is especially favored in class actions because it minimizes litigation expenses and reduces the strain on judicial resources.[12]  The federal courts have addressed the relationship between the policy in favor of class-action settlements and the scope of judicial inquiry:

---

[5] *See* Affidavit of Dr. Andrew Safir, attached hereto as Exhibit 1. Dr. Safir has determined that implementation of ATC pumps on the phase-in schedule set forth in the Settlement will result in a net benefit to Class Members that exceeds $100 million within five years after the end of the phase-in period.

[6] *Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp.2d 1179, 1182 (D. Kan. 2002). *See also, Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("[A]bsent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel.").

[7] *Law v. National Collegiate Athletic Ass'n*, 108 F. Supp.2d 1193, 1196 (D. Kan. 2000).

[8] *Seiffer v. Topsy's International, Inc.*, 70 F.R.D. 622, 626 (D. Kan. 1976).

[9] *See TGB, Inc. v. Bendis*, 36 F.3d 916, 923-924 (10th Cir. 1994) (noting that "federal policy generally encourages settlement").

[10] *See Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1186 (10th Cir. 1972); *see also Sears v. Atchison, Topeka, Santa Fe R.R. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984), *cert. denied*, 471 U.S. 1099 (1985).

[11] *See, e.g., Williams Foods, Inc. v. Eastman Chem. Co.*, No. 99C16680, 2001 WL 1298887, at *2 (D. Kan. Aug. 8, 2001) (applying Rule 23 class action principles to a state class action and noting that "[s]ettlement is especially favored in class actions because it minimizes litigation expenses of all parties and reduces strain on judicial resources."); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("federal courts naturally favor the settlement of class action litigation").

[12] *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Dept. Of Energy Stripper Well Exemption Lit.*, 653 F. Supp. 108, 115

Voluntary out of court settlement of disputes is highly favored in the law...The court will not, therefore, substitute its own judgment for the good faith negotiations of experienced counsel .... The Court should not turn the settlement hearing into a trial on the merits....Thus, the trial court has a limited scope of review for determining fairness. The very purpose of settlement is to avoid trial of sharply disputed issues and the cost of protracted litigation...The Court may limit its fairness proceeding to whatever is necessary to aid it in reaching a just and informed decision....An evidentiary hearing is not required.[13]

This Court is well aware of the inherent value in amicably resolving litigation. The Court has consistently encouraged some form of alternative dispute resolution, and even ordered the parties to engage in the process.[14] This Settlement resulted from earnest, reasoned negotiations contemplated by the Court in these prior orders.

B.    *Class Settlement Approval*

Approval of a class action settlement involves a two-stage process. First, the court makes a preliminary fairness evaluation of the proposed settlement.[15] If the court is satisfied as to the certifiability of the class and the results of its initial inquiry into the fairness, reasonableness, and adequacy of the settlement, the court will direct that notice be given to the class of a formal fairness hearing alerting class members of their rights to express their views on the settlement.[16] The first step has been completed in this case. The Court granted preliminary approval on August 13, 2009, and notice has been given to more than 10,000,000 Class Members.

At the second stage, pursuant to Federal Rule of Civil Procedure 23(e), the court may approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class, and may approve a settlement, voluntary dismissal, or compromise that

---

(D. Kan. 1986) ("It is in the interests of the courts and the parties that there should be an end to litigation and the law favors the peaceful settlement of controversies.").

[13] *In re Agent Orange Product Liability Litigation,* 597 F. Supp. 740, 758-760 (E.D.N.Y 1985), *aff'd.,* 818 F.2d 226 (2nd Cir. 1987); *Bowling v. Prizer, Inc.,* 143 F.R.D. 141 (S.D. Ohio 1992); *Cotton,* 559 F.2d at 1330-32.

[14] *See* Scheduling Order No. 2, Doc. #388, at 4; Scheduling Order No. 3, Doc. # 1429, at 11.

[15] *See* Manual for Complex Litigation § 21.632, at 320 (4th ed. 2004).

[16] *Id.* § 21.633, at 321-322; *see also Marcus,* 209 F. Supp. 2d at 1181.

would bind class members after a hearing and on finding that the settlement meets the requisite requirements of Rule 23(a)(b) and (e).

Pursuant to Federal Rule of Civil Procedure 23(e)(2), a class action settlement must also be "fair, reasonable, and adequate."[17]  The Tenth Circuit has outlined four factors that must be considered in assessing whether a proposed class settlement is fair, reasonable and adequate:

(1)  whether the proposed settlement was fairly and honestly negotiated;
(2)  whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3)  whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4)  the judgment of the parties that the settlement is fair and reasonable.[18]

## III.  LEGAL ANALYSIS AND ARGUMENT[19]

### A.  *APPLICATION OF RULE 23(A) AND (B)*

#### 1.  Numerosity

Certification is proper where the putative class is so numerous that joinder is "impracticable."[20]  There is no set formula to determine if the class is so numerous that it should be certified; rather, the determination is made on a case-by-case basis.[21]  The number of class members involved may be established by evidence that provides some ascertainable number or otherwise by reasonable estimate.[22]

There are more than 10,000,000 Class Members.[23]  Numerosity is present.

---

[17] *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *see also Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993).

[18] *Rutter*, 314 F.3d at 1188; *Gottlieb*, 11 F.3d at 1014; *Epstein v. Wittig*, No. 03-4081, 2005 WL 3276390, at *6 (D. Kan. Dec. 2, 2005).

[19] In further support, Class Plaintiffs incorporate by reference the Kansas Plaintiffs' Motion to Certify (Doc. # 1106), Reply In Support of Certification (Doc. # 1502), Plaintiffs' Response to Objections (Doc. # 1597) and Costco's Response to Objections (Doc. # 1598).

[20] Fed. R. Civ. P. 23(a)(1); *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 671-72 (D. Kan. 2008).

[21] *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) (*cited in Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)).

[22] *Rex*, 585 F.2d at 436.

[23] *See* Declaration of Michelle Acpal, Exhibit 3 to Costco's Response to Objections, Doc. #1598, a true and accurate copy of which is attached hereto as Exhibit 2.

2.      Commonality

Rule 23(a)(2) requires only a single question of law or fact that is common to the class.[24] It is irrelevant that the amount of damages among individual class members may differ, because it is the action and policies of Defendants with respect to the class as a whole that are challenged.[25] The "commonality" requirement of Rule 23(a) is a low bar, and courts have generally given it a "permissive application."[26]

It is undisputed that the higher the temperature of motor fuel occupying a volumetric gallon (231 cubic inches), the less energy it will contain, the fewer miles it will propel a car, and the less value it has.[27] Prior to commencement of this litigation, Costco did not inform Class Members of this material fact.[28] Prior to this litigation, Costco has always sold gasoline to Class Members without compensating for temperature.[29] Class Plaintiffs and Class Members were thus subjected to the same treatment by Costco during the same type of transaction, resulting in the same type of harm. Costco's conduct has been uniform and gives rise to the claims of Class Plaintiffs and the Class Members. Commonality is established.

3.      Typicality

The typicality requirement does not mandate that the claims of the representative plaintiffs be identical to those of the other class members.[30] Rather, the Court should look to see if the claims of the representative plaintiffs are "significantly antagonistic" to the claims of the

---

[24] *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).
[25] *Olenhouse v. Commodity Credit Corp,*. 136 F.R.D. 672, 680 (D. Kan. 1991) (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).
[26] 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1763, at 221 (3rd ed. 2005).
[27] Deposition of John O'Brien, Exh. 3, pgs. 18-22; Deposition of Defendants' expert Harri Kytomaa, Exhibit 4, pg 112.
[28] *See* Costco's Responses to Plaintiffs' Second Interrogatories No. 49-50, pgs. 56-58, attached hereto as Exhibit 5.
[29] *See* Costco's Responses to Plaintiffs' First Interrogatories No. 2(e), pg. 11, attached hereto as Exhibit 6.
[30] *Olenhouse*, 136 F.R.D. at 680.

proposed class.[31]  Like commonality, typicality results directly from the nature of plaintiffs' claims.[32]  Thus, a representative plaintiff's claim may differ factually from the claims of the class and still be typical if the claim arises from the same practice or course of conduct and is based on the same legal theory.[33]

Temperature compensation ensures that ██████████████████████████████ ████████████████████████████████████████[34]  Indeed, "selling fuel adjusted to the volume at 15 C (60 F) throughout the distribution system is the most equitable way fuel can be sold without the buyer or seller gaining a competitive advantage.  Allowing a distributor to buy product at wholesale by gross volume and sell it at retail by net volume is not equitable."[35] However, prior to this litigation, Costco never disclosed to Class Members that motor fuel sold at Costco stores did not account for temperature fluctuations.  Thus, all Class Members were injured by not receiving a uniform, equitable gallon of motor fuel.  Cleary, the claims of the Class Plaintiffs and the claims of the Class Members are typical.

In addition, the claims of the Class Plaintiffs are not "significantly antagonistic" to the Class.  Transparent and equitable transactions have inherent value for all consumers, not just the Class Plaintiffs.[36]  For that reason, packaged petroleum products are already **required** to be

---

[31] *Id.*; *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995).
[32] *Sibley*, 254 F.R.D. at 674 .
[33] *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996); *see also Newberg on Class Actions* § 18:9 (4th ed. 2002) ("[T]ypicality refers to the nature of the claim or defense, and not to the specific facts from which it arose or the relief sought.").
[34] Document Bates No. ████████████, Exhibit 7, pg. 2, ¶ 9 (filed under seal).
[35] NCWM L&R Committee's 2005 Final Report, pgs. 6-7, attached hereto as Exhibit 8.
[36] *See* 2001 Report of the NCWM L&R Committee, Exhibit 9, pg. 7 (regarding temperature compensation for vehicle tank meters, temperature compensation is the "most equitable way to sell products"); excerpts from NCWM's ATC Steering Committee January, 2008 Progress Report, Exh. 10, pg. 31 (temperature compensation "would provide transparency in unit price v. volume" and temperature compensation "is a superior method of measurement"); excerpts from the California Energy Commission's 2009 Fuel Delivery Temp. Study, Exhibit 11, pg. 2 ("If ATC were mandated for use at retail stations, consumers would be able to more accurately and fairly compare prices because variations in temperature would be corrected by the ATC equipment."); 2006 Interim Report of the NCWM Laws & Regulations Committee, Exhibit 12, pg. 4 (Temperature compensation is "the most equitable way fuel can be sold without the buyer or seller gaining a competitive advantage").

temperature compensated.[37]   Because of such inherent equity and fairness, this Settlement has the support of Class Members in both Conversion States and Non-Conversion States.[38] Moreover, as this Court has previously noted, mere speculative allegations of antagonism do not defeat a finding of typicality.[39]   Typicality is present.

### 4.    Adequacy Of Representation

There are two elements to the adequacy of representation inquiry: 1) whether conflict exists among class members with respect to their interests and 2) whether counsel is qualified to conduct the litigation as a class.[40]

There has been no demonstrated conflict between Class Members because no conflict exists.   When motor fuel temperature can greatly exceed the 60° Fahrenheit industry benchmark, temperature compensation alleviates inequity.   Weights and measures officials,[41] the California Energy Commission[42] and some Defendants[43] agree.   That very fact was utilized by oil companies and trade associations to market the idea of temperature compensation in Canada.[44] With this Settlement, Costco has agreed to install ATC equipment in each state at issue where Costco purchases fuel on a gross basis, thus eliminating the inequity to all Class Members that arises when a retailer buys net and sells gross.

---

[37]  *See* 16 C.F.R. § 500.8(B).
[38]  Class Plaintiffs Herb Glazer, Phyllis Lerner, Joan Korleski and James Graham reside in Conversion States.  Class Plaintiff Zachary Wilson resides in a Non-Conversion State.
[39]  *See In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. at 614 n.2.
[40]  *Sibley*, 254 F.R.D. at 674; *Rutter*, 314 F.3d at 1187-88; *Olenhouse*, 136 F.R.D. at 680.
[41]  *See* Exhibits 8-10, 12 hereto.
[42]  *See* Exhibit 11, hereto.
[43]  *See, e.g.*, Document Bates No. ███████, Exhibit 7, pg. 2, ¶ 9 (filed under seal) (Temperature compensation ensures that "██████████████").
[44]  *See* Exhibit 7, pg. 2 ███████████████████████████████████████████████████ ████████████); statements of the Canadian Petroleum Products Institute, Plaintiffs' Motion to Compel (Doc. # 665), pg. 15 ("the more important issue . . . is energy" and consumers are "getting the same energy content in slightly different volumes . . . it doesn't matter that you're getting less volume (when the temperature is below 60° Fahrenheit) because you're still getting the same amount of energy and your car will travel the same distance").

As to Class Counsel, this Court previously noted their qualifications when appointing them to leadership positions.[45]

### 5.   Predominance

Predominance and manageability overlap because, if issues unique to individual class members predominate over common issues, a trial could involve individualized class member inquiry.[46]  However, manageability is a *trial* criterion that is *irrelevant* when a class is certified for settlement purposes:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.[47]

Thus, Class Plaintiffs are not required to prove the elements of their claims and the claims held by the Class, because the Settlement nullifies that requirement.  So, as with the manageability factor with which it is intertwined, the predominance requirement does not require or involve any individualized proof in a class certified for settlement purposes only.

Because the claims do not have to be proven on a class wide basis, the predominant issues for settlement are the common questions and issues set forth above: does temperature affect the quality and quantity of motor fuel; does Costco notify Class Members of that fact (or did Costco provide such notice prior to being sued); does Costco compensate motor fuel sales to take such factors into account; and does Costco notify Class Members that it did or did not account for such factors.  The Court is not required to determine whether there was a duty to

---

[45] *See* Orders, Doc. #145 (appointing Thomas V. Bender as Plaintiffs' Liaison Counsel), Doc. #150 (appointing Thomas V. Girardi as Plaintiffs' Co-Lead Counsel), and Doc. #179 (appointing Robert A. Horn as Plaintiffs' Co-Lead Counsel and Chair of the Plaintiffs' Lead Counsel Group).

[46] *See Simer v. Rios,* 661 F.2d 655, 677 (7th Cir. 1981) (the predominance issue incorporates manageability); *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 439 (4th Cir. 2003) (manageability is a requirement for predominance).

[47] *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  The Supreme Court further held that "[s]ettlement is relevant to a class certification" and that "settlement is a factor in the calculus."  *Id.* at 619, 622.

disclose facts to Class Members or whether each Class Member has been harmed, nor must the Court resolve any other trial liability issues.

Furthermore, the effect of the various states' laws on the predominance requirement does not apply to this settlement Class. Federal courts have specifically addressed this situation. In affirming a certification of a settlement class involving the consumer protection and antitrust laws of fifty states, the Court in *In re Warfarin Sodium Antitrust Litigation* held:

> However, when dealing with variations in state laws, the same concerns with regard to case manageability that arise with litigation classes are not present with settlement classes, and thus these variations are irrelevant to certification of a settlement class . . . [A]lthough there may be situations where variations in state laws are so significant so as to defeat commonality and predominance even in a settlement class certification, this is not such a case. We agree with the district court that the fact there may be variations in the rights and remedies available to injured class members under the various laws of the fifty states in this matter does not defeat commonality and predominance.[48]

The holding in the *Warfarin* case has been echoed by other courts,[49] including cases when state law variances were found "irrelevant" for settlement purposes especially when the focus (like this case) is on "one defendant, one product, and one course of conduct".[50] As in those cases, the claims in this litigation arise under broadly recognized legal principles, and any differences in state laws are not a factor and do not defeat predominance in this settlement context.

There are core common questions relative to this Settlement. Those common questions predominate over any individual issues and do not implicate potential state law variances.

---

[48] *In re Warfarin Sodium Antitrust Litigation,* 391 F.3d 516, 529-30 (3rd Cir. 2004).
[49] *See, e.g., Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022-23 (9th Cir. 1998) ("In this case, although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification.").
[50] *See In re Serzone Products Liability Litigation,* 231 F.R.D. 221, 240 (S.D.W. Va. 2005).

6.    Superiority

A class settlement is clearly superior to "other available methods for fairly and efficiently adjudicating the controversy".[51] The Class consists of more than 10,000,000 members, whose individual claims are relatively small in relation to the costs of prosecuting a lawsuit. Thus, from the consumers' standpoint, "a class action facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes."[52] Moreover, there are no other lawsuits against Costco alleging these claims. Finally, it is desirable to concentrate this litigation in this Court which the Judicial Panel on Multidistrict Litigation found to be a proper forum.

7.    Notice to the Class Was Proper

Per the directive of Rule 23, notice was provided to the Class informing them about the Settlement. The notice informed Class members (1) of the nature of the pending litigation, (2) of the Settlement's general terms, (3) that complete information was available from the court files, and (4) that any Class member could appear and be heard at the Fairness Hearing. These are the essential requirements of an effective notice, and there is no requirement that the notice be unduly specific.[53] Indeed, this Court specifically approved the Class Notice, finding that it "contains the criteria set forth in Rule 23(c)(2)(B) and a fair description of the settlement pursuant to Rule 23(e)(3).[54]

In light of the foregoing, all certification requirements relative to a class settlement have been satisfied. The provisions of Rule 23(a) and (b) are no bar to final approval of this Settlement.

---

[51] Fed. R. Civ. P. 23(b)(3).
[52] *In re Warfarin Sodium Antitrust Litigation,* 391 F.3d at 534.
[53] *See* 4 Newberg, §11:53.
[54] *See* Order, Doc. # 1284, at 2.

B.    *APPLICATION OF THE FAIRNESS FACTORS*

After consideration of the Rule 23(a) and (b) requirements, the Court must next consider whether the Settlement is "fair, reasonable, and adequate" under the four factors enumerated by the Tenth Circuit.[55]   Here, all four factors are satisfied.

1.        The Settlements Were Fairly and Honestly Negotiated.

A settlement is deemed to have been fairly and honestly negotiated when it was "reached after arm's-length negotiations" conducted "by experienced counsel for the class."[56]   The non-collusive nature of negotiations and the experience of counsel are important factors militating in favor of final approval of class action settlements.[57]

The record before the Court amply supports a conclusion that the negotiation and settlement of this class litigation were fairly and honestly conducted.   Prior to and during settlement negotiations, Class Counsel reviewed voluminous documents and data and interviewed key witnesses.   Class Counsel prepared for negotiations by conducting a thorough investigation of the strengths and weaknesses of the case, including, among other things, reviewing Defendant's discovery responses, documents and other data supplied by this and other Defendants, investigating the legal and factual issues through interviews with Class Plaintiffs, witness and expert witnesses, and evaluating the case under applicable legal standards.   Class Counsel was thus fully positioned to evaluate the merits of the case as to both liability and damages.

---

[55] Fed. R. Civ. P. 23(e)(2); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). *See also Gottlieb*, 11 F.3d at 1014.

[56] *Marcus*, 209 F. Supp. 2d at 1182.

[57] *See, e.g., United States v. Colo.*, 937 F.2d 505, 509 (10th Cir. 1991) (finding lack of collusion and employment of experienced counsel showed settlement was fairly and honestly negotiated); *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 626 (D. Colo. 1976) (finding that "each settlement was arrived at through arms-length and extensive negotiations between counsel for the plaintiffs and counsel for settling defendants and that such counsel engaged in no collusion whatsoever in arriving at such settlements").

[59] *See* Plaintiffs' Response to Objections, Doc. # 1597, pg. 22-23.

The proposed Settlement was reached after extensive and arm's-length negotiations by respected and experienced counsel thoroughly familiar with the applicable law and consumer class action litigation. Nothing in the course of the negotiations of the settlement discloses collusion or any other grounds to doubt its fairness. Indeed, as noted elsewhere, the parties have not agreed to an attorney fee,[59] a fact weighing heavily against any notion of collusion.

2.      The Ultimate Outcome of the Litigation Was In Doubt

In assessing the fairness, reasonableness, and adequacy of the proposed settlement, the Court must balance the benefits afforded to members of the settlement classes and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation. Generally, the principal risks to be assessed are the difficulties and complexities of proving liability and damages.[60]

Plaintiffs alleged that Defendant failed to provide consumers with all material facts regarding Defendant's retail motor fuel sales practices and failed to correct its motor fuel sales to compensate for temperature. Such acts and omissions, under Plaintiffs' theory, gave rise to several statutory and common law claims. Defendant denied Plaintiffs' allegations. Defendant argued that it, and all other fuel retailers, had always sold motor fuel at retail on a gross gallon basis. Defendant also argued that consumers were not deceived or misled by Defendant's failure to provide them with additional information related to its motor fuel sales.

If Plaintiffs' allegations were ultimately correct, then Defendant would be faced with the prospect of a significant monetary verdict in favor of Plaintiffs, as well as the obligation to pay its own litigation fees and costs, and the litigation fees and costs of Plaintiffs' counsel. If

---

[60] *Walsh v. Great Atl. & Pac. Tea Co.,* 96 F.R.D. 632, 642 (D.N.J.), *aff'd,* 726 F.2d 956 (3d Cir. 1983).

Defendant's arguments were all correct, then Plaintiffs faced a potential dismissal of their claims and no recovery of any kind. Disputed questions of law and fact placed the ultimate outcome of this litigation in doubt. This Court already noted that fact.[61] This element weighs in favor of approval.

3.    The Value of an Immediate Recovery Outweighs the Possibility of Future Relief

Courts have consistently held that "[t]he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement."[62] This Settlement provides reasonable injunctive relief that goes to the heart of Plaintiffs' claims, especially when weighed against the certain delays and considerable risks of litigating these cases to judgment. Plaintiffs' expert economist Dr. Andrew Safir has determined that Costco's implementation of ATC pumps on the phase-in schedule set forth in the Settlement will result in a net benefit to Class Members that exceeds $100 million within five years after the end of the phase-in period.[63] Such benefits can hardly be characterized as illusory or inconsequential.

Moreover, even if some Plaintiffs could have possibly recovered a more valuable benefit by pursuing litigation, such relief would have only been obtained after considerable expense and delay. If the litigation, including the remaining discovery, expert witness and pretrial briefing process, were to continue it unquestionably would be complex, expensive, and protracted. Settlement will reduce the litigation expense of the parties, dispose of burdensome litigation, and promote judicial economy — all significant factors weighing in favor of

---

[61] *See* Order granting preliminary approval, Doc. #1273, at 15.
[62] *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Bullock v. Administrator of the Estate of Kircher*, 84 F.R.D. 1, 10 (D. N.J. 1979); *Slade v. Shearson, Hammill & Co., Inc.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978).
[63] See Exhibit 1 hereto.

settlement.[64]   In recognition of this fact, many courts have admonished that the settlement

process should not be transformed into a trial over what relief might have been gained but for the

settlement:

> Neither should it be forgotten that compromise is the essence of a settlement. The
> trial court should not make a proponent of a proposed settlement justify each term
> of settlement against a hypothetical or speculative measure of what concessions
> might have been gained; inherent in compromise is a yielding of absolutes and an
> abandoning of highest hopes.[65]

In short, the proposed Settlement presents meaningful relief for the Class that outweighs

the uncertainty of future relief.[66]   In granting preliminary approval, this Court observed that "the

costs of continued litigation are high, and it is possible that plaintiffs could receive little or no

pecuniary relief."[67]   This element weighs in favor of approval.

4.   The Parties and the Parties' Counsel Believe that the
     Settlement is Fair, Reasonable, and Adequate

The parties' view of the settlements as fair, reasonable, and adequate is entitled to great

weight.[68]   When a settlement is reached by experienced counsel after negotiations in an

adversarial setting, there is an initial presumption that the settlement is fair and reasonable.[69]

Class Counsel are all experienced complex and class action attorneys, and are

knowledgeable about the factual and legal issues in the case.   Class Counsel have worked

---

[64] *See Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded docket is factor for consideration).
[65] *Cotton,* 559 F.2d at 1331; *accord, Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 154 (S.D. Ohio 1992); *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).
[66] *See Dep't. of Energy Stripper Well Exemption Litig.,* 653 F. Supp. 108, 117 (D. Kan. 1986) ("The risks of continued litigation are substantial for all of the parties"); *see also In re King Resources,* 420 F. Supp. at 626 (noting uncertainty of plaintiffs prevailing without settlement, and likely delay of disbursement of funds given probable appeal).
[67] *See* Order granting preliminary approval, Doc. #1273, at 15.
[68] *Rutter,* 314 F.3d at 1188; *Ashley v. Reg. Transp. Dist. & Amalgamated Transit Union,* No. 05-0156, 2008 WL 384579, at *7 (D. Colo. Feb. 11, 2008) ("Counsel's judgment as to the fairness of the agreement is entitled to considerable weight."); *see also Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 288-89 (D. Colo. 1997) ("[T]he recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight."); *Alvarado Partners, L.P. v. Mehta,* 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties.").
[69] *Marcus,* 209 F. Supp. 2d at 1182.

diligently to prosecute this action over the last three and one half years. They have engaged in significant discovery, and performed extensive analysis of the data and documents provided by Defendant. Unlike the myopic view of attorneys for the objectors, Class Counsel have scrutinized the vast expanse of this case and are intimately familiar with the facts and nuances surrounding the claims of the Class. In these circumstances, Class Counsel believe that the Settlement is fair and reasonable, and their evaluation should be afforded considerable weight.

C.   *REACTION OF THE CLASS MILITATES IN FAVOR OF APPROVAL*

1.   Only A Fraction Of The Class Opted-Out

Although the number of opt-outs is not an express "fairness" factor that this Court must consider in determining whether the Settlement is fair and reasonable, this fact speaks volumes. From the 10,134,738 Class Members, only 3,022 Class Members chose to exclude themselves from the Settlement.[70] Since Class Members are presumed to know what is in their best interest, the small percentage who opted out (.03%) strongly suggests that the vast majority of the Class (more than 99.97%) find the Settlement fair, reasonable and adequate.[71]

2.   An Even Smaller Fraction Of The Class Objected

Of the 10,134,738 class members who received direct notice of this Settlement, only 29 filed an objection (a 0.0003% objection rate).[72] As addressed elsewhere,[73] the majority of

---

[70] Plaintiffs are unaware of how many such opt-outs are Costco employees.

[71] *See Austin v. Penn. Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").

[72] To call this an infinitesimal number of objections in the class action context would be an understatement. *See, e.g., TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of approximately 56% of class); *Parker v. Anderson*, 667 F.2d 1204, 1207 (5th Cir. 1982) (approving approval of class action settlement over objections of all but one of eleven named plaintiffs); *Cotton*, 559 F.2d at 1333 (approving settlement over objections of counsel purporting to represent almost 50% of class); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803-04 (3d Cir. 1974) (approving class settlement even though more than 20% of class objected); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors represented fewer than 4% of class).

[73] *See* Plaintiffs' Response to Objections, Doc. # 1597.

objections were filed by serial objectors who, historically, seek compensation for objecting or who have objections to class actions and the tort system of justice in general.   None of the objections justify the disapproval of this Settlement.

However, the fact that there were minimal objections from class members in this <u>direct</u> class notice program is significant and weighs heavily in favor of approving the Settlement.[74]  As the Court noted in *Stripper Well Exemption:*

> Finally, the near-unanimous support for the settlement agreement is a factor favoring approval by the Court. While a settlement stands or falls on its merits and not on a head count between its proponents and objectors, the overwhelming support for the settlement carries some persuasive force.[75]

Judge Lungstrum recently made the same observation in granting final approval of a class settlement in *Williams v. Sprint*, "[w]hile the number of objectors is 'not controlling,' a relatively small number of objectors can be taken as 'some indication that the class members as a group did not think the settlement was unfair.'"[76]  Judge Lungstrum's logic applies with particular force here, where the objection rate is a mere fraction of the objection rate found to be unpersuasive in *Williams.*[77]

### D.   REACTION BY GOVERNMENT OFFICIALS MILITATES IN FAVOR OF APPROVAL

Pursuant to 28 U.S.C. § 1715, specific notice of this Settlement was sent to the weights and measures officials in **each State at issue**, including Virginia,[78] as well as to the attorney

---

[74]  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007).
[75]  653 F. Supp. at 116; *see also In re King Resources*, 420 F. Supp. at 627 (finding lack of challenge to the settlements "significant").
[76]  *Williams v. Sprint/United Management Company*, 2006 WL 3256840, at *1 (D. Kan. Nov. 9, 2006) (*citing Cotton*, 559 F.2d at 1331 and *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 506 n.4 (5th Cir. 1981)).
[77]  Of the 1,697 class members in *Williams*, only two objected, resulting in a 0.11% objection rate. *See* Order of Final Approval of Settlement, *Williams*, 2006 WL 326840, at *1. The objection rate in this case is 0.0003%, far less than the extremely low 0.11% rate in *Williams.*
[78]  *See* Exhibit 13 hereto (CAFA Notice).

general of each state at issue, and the United States Attorney General,[79] *viz.*:

- Eric H. Holder, Jr., Attorney General of the United States;
- Dustin McDaniel, Attorney General of Arkansas;
- Edmund G. Brown, Jr., Attorney General of California;
- Joseph R. Biden, III, Attorney General of Delaware;
- Thurbert E. Baker, Attorney General of Georgia;
- Stephen N. Six, Attorney General of Kansas;
- Troy King, Attorney General of Alabama;
- Terry Goddard, Attorney General of Arizona;
- Peter Nickles, Attorney General of the District of Columbia;
- Bill McCollum, Attorney General of Florida;
- Greg Zoeller, Attorney General of Indiana;
- Jack Conway Attorney General of Kentucky;
- James D. Caldwell, Attorney General of Louisiana;
- Jim Hood, Attorney General of Mississippi;
- Catherine Cortez Masto, Attorney General of Nevada;
- Gary King, Attorney General of New Mexico;
- W.A. Drew Edmondson, Attorney General of Oklahoma;
- Tom Corbett, Attorney General of Pennsylvania;
- Douglas F. Gansler, Attorney General of Maryland;
- Chris Koster, Attorney General of Missouri;
- Anne Milgram, Attorney General of New Jersey;
- Roy Cooper, Attorney General of North Carolina;
- John Kroger, Attorney General of Oregon;
- Henry McMaster, Attorney General of South Carolina;
- Robert E. Cooper, Jr., Attorney General of Tennessee;
- Mark Shurtleff, Attorney General of Utah;
- Greg Abbott, Attorney General of Texas;
- Bill Mims, Attorney General of Virginia;
- Steadman Hollis, Director, Alabama Dept. of Agriculture & Industry;
- Gene Palma, Interim Director, Arizona Dept. of Weights & Measures;
- Jeffrey X. Mason, Supervisor, DC Government Weights & Measures;
- Maxwell Gray, Chief, Florida Dept. of Agriculture & Consumer Services;
- Lawrence J. Stump, Director, Indiana Weights & Measures;
- Tim Tyson, Director, Kansas Department of Agriculture, Weights & Measures Division;
- Tom Pugh, Director, Arkansas Bureau of Standards;
- Edmund Williams, Director, California Div. of Measurement Standards;

---

[79] As noted elsewhere, some Objectors referred to Virginia to support their argument that some of the settlement states prohibit ATC. *See* Objection of Alkon and Martin, at n.10. Notably, however, the CAFA Notice was sent to Mr. Dale Saunders, Program Superintendent for the Virginia Product and Industry Standards Office. Mr. Saunders filed no objection to the relief contemplated by this Settlement. The Notice was also sent to Mr. Bill Mims, the Attorney General for Virginia; he also filed no objection to this Settlement.

- Steve W. Connors, Administrator, Delaware Department of Agriculture;
- Richard Lewis, Director, Georgia Department of Agriculture;
- Lanny Arnold, Director, Kentucky Department of Agriculture;
- Todd Thompson, Director, Louisiana Dept. of Agriculture and Forestry;
- Richard W. Wotthlie, Chief, Maryland Department of Agriculture;
- Richard Benton, DVM, Director, Mississippi Dept. of Agriculture & Commerce;
- Louis E. Greenleaf, State Superintendent, New Jersey Weights & Measures;
- Russ Wyckoff, Administrator, Oregon Department of Agriculture;
- Carol P. Fulmer, Director, South Carolina Department of Agriculture;
- Joe Benavides, Regulatory Branch Chief, Texas Department of Agriculture;
- Ronald G. Hayes, Director, Missouri Department of Agriculture;
- Stephen Benjamin, Director, North Carolina Department of Agriculture;
- Joe Gomez, Division Director, New Mexico Department of Agriculture;
- Sancho Dickinson, Director, Oklahoma Dept. of Agriculture, Food & Forestry;
- John Dillabaugh, Director, Bureau of Ride & Measurement Standards;
- Robert G. Williams, Administrator, Tennessee Department of Agriculture;
- Brett Gurney, Program Manager, Utah Department of Agriculture & Food;
- Dale Saunders, Program Superintendent, Virginia Product & Industry Standards;

Not one of these attorneys general or weights and measures officials filed an objection to this Settlement.[80] If the Settlement was unfair and unreasonable, or if the relief afforded by the Settlement was violative of any state laws, these governmental officials could have stated as much.[81] They have not.

E.   *OPINIONS OF PROFESSOR ROBERT KLONOFF SUPPORT FINAL APPROVAL*

The fairness of this Settlement is also supported by the opinions of Professor Robert Klonoff, a Dean and Professor of Law at Lewis & Clark Law School in Portland, Oregon.[82] Prof. Klonoff is an Associate Reporter for the American Law Institute's ongoing class action (and other multi-party litigation) project, "Principles of the Law of Aggregate Litigation." As

---

[80]   Indeed, the only written response to the CAFA Notice was a short statement from the Office of the Attorney General for the State of Texas, a copy of which is attached hereto for the Court's convenience as Exhibit 14.

[81]   Objections or intervention in class action settlements by state officials is not unknown. *See, e.g.,* Order, *In re TD Ameritrade Accountholder Litig.*, No. C 07-2852, (N.D. Cal. Oct. 23, 2009), attached to Brief of Objectors Alkon and Martin as Exhibit 1, at 3 (discussing objections filed by the Texas Attorney General). Thus, such officials clearly know how to object and intervene. The fact that they did not do so in this case is telling.

[82]   Prof. Klonoff was formerly the Douglas Stripp/Missouri Professor of Law at the University of Missouri-Kansas City School of Law (UMKC) in Kansas City, Missouri. *See* Declaration of Professor Robert Klonoff, attached to Plaintiffs' Response to Objections (Doc. # 1597) as Exhibit 2.

noted in his Declaration, Prof. Klonoff has reviewed an extensive amount of information about this Settlement and this litigation, including the positions taken by the serial objectors. In the final calculus, Prof. Klonoff wholeheartedly agrees that this Settlement meets the relevant criteria and should be approved.

## IV.   CONCLUSION

Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm.[83]   A settlement will usually not be considered a total win for either side.[84]   Rather, the essence of any settlement is compromise; compromise "between the maximum possible recovery and the inherent risks of litigation. The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable."[85]   Plaintiffs respectfully suggest that this Settlement strikes a balance between the polarized positions demonstrated in recent pleadings, and is truly a fair, adequate and reasonable settlement.  Final approval is warranted.

---

[83]   *See* 28 U.S.C. §1711(a).
[84]   *In Re Mexico Money Transfer Litigation*, 164 F. Supp.2d 1002, 1014 (N.D. Ill. 2000).
[85]   *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002) (citation omitted); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 282-3 (D. Colo. 1997).

Respectfully submitted this 1st day of April, 2010.

Respectfully submitted,

*s/ Robert A. Horn*

Robert A. Horn       KS Bar No. 70254
HORN AYLWARD & BANDY, LC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone 816-421-0700
Facsimile 816-421-0899
rhorn@hab-law.com

*s/ Thomas V. Girardi*

Thomas V. Girardi  CA Bar No. 36603
GIRARDI AND KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017-1904
Telephone: 213-977-0211
Facsimile: 213-481-1554
tgirardi@girardikeese.com

LEAD COUNSEL FOR PLAINTIFFS

*s/ Thomas V. Bender*

Thomas V. Bender     Ks. Bar #22860
WALTERS BENDER STROHBEHN
      & VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196
(816) 421-6620
(816) 421-4747 (Facsimile)
tbender@wbsvlaw.com

LIAISON COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

On this date a true and correct copy of the foregoing document was sent via electronic mail to the following:

Sid & Sue Hasler
sshasler@verizon.net

Theodore Frank
Attorney for Objector Amy Alkon and Nicolas Martin
tedfrank@gmail.com

Kenneth Nelson
Attorney for Objector Kenner
kennelson@mclaw.com,

N. Albert Bacharach, Jr.
Attorney for Objector Putnam
N.A.Bacharach@att.net,

Frank H. Tomlinson
Attorney for Objector McKerley
htomlinson@bellsouth.net,

Paul S. Rothstein
Attorney for Objector Anderson
psr@rothsteinforjustice.com,

Edward W. Cochran
Attorney for Objector Zuravin
edwardcochran@wowway.com,

Darrel Palmer, LLM
Attorney for Objector Waldvogel
darrell.palmer@palmerlegalteam.com

            */s/ Joseph A. Kronawitter*