IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION ) ) ) | MDL No: 1840 |
| (This Document Relates to All Cases) ) ) | No: 07-md-1840-KHV-JPO |

**ALKON OBJECTORS' MOTION TO STRIKE PLAINTIFFS' APRIL 1 BRIEFING, OR, IN THE ALTERNATIVE, STRIKE DECLARATION OF DR. ANDREW SAFIR UNDER *DAUBERT*, AND MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Plaintiffs' only evidence of class benefit is the declaration of Dr. Andrew Safir. But Dr. Safir's testimony was submitted in violation of a court order. Moreover, his testimony, while purporting to be expert testimony, is merely a conclusory *ipse dixit*; as such, it is inadmissible under *Daubert*. For each of these two independent reasons, the Court should strike Dr. Safir's testimony, and find that the parties have failed to carry their burden that the settlement is fair, reasonable, and adequate.

**I.     The Plaintiffs' April 1 Briefing Was Submitted in Violation of the Court's Scheduling Order.**

On August 13, 2009, the Court provided preliminary approval settlement where class members received nothing, but the representative plaintiffs would receive thousands and the plaintiffs' attorneys would receive $10 million. This was purportedly justified by portions of the settlement that called for injunctive relief—but the injunctive relief in question provided no benefits to the class. In January 2010, numerous parties objected; the Alkon objectors, among others, noted that the proposed injunctive relief was not a benefit to the class.

On March 4, 2010, the Court ordered the parties to file a response to objections by March 19, 2010. Dkt. No. 1582. The plaintiffs did file a response, Dkt. No. 1598, but that response failed to provide any evidence that the injunctive relief provided positive benefits to the class. Not until April 1, 2010—the morning of the fairness hearing, thirteen days after the Court's order provided, and more than seven months after the court scheduled the fairness hearing—did the plaintiffs respond to the objections by presenting purported evidence of the benefits of the injunctive relief. Dkt. No. 1620.

This briefing was filed late, in violation of the Court's order of March 4, 2010. It was highly prejudicial to objectors, who did not have adequate notice of the alleged evidence in support of the supposed fairness of the settlement, did not have an opportunity to formally request discovery, and had to construct an argument on the fly why the evidence was lacking at the hearing itself.

Throughout this proceeding, plaintiffs have repeatedly demanded the strictest construction of the technicalities briefing schedules and have repeatedly called for briefs to be stricken, even when they suffered no prejudice. Yet they have no trouble deliberately sandbagging evidence in violation of court orders—to the prejudice of the class they purport to represent. This double standard should not be countenanced. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (judicial estoppel protects "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment"). There was no good faith reason to delay submitting evidence until the morning of the fairness hearing, much less to violate the court's March 4 order, and, if the Court is to grant plaintiffs' request to strike Alkon's supplemental briefing (Dkt. No. 1645), fairness requires it to strike the plaintiffs' late-filed April 1 briefing (Dkt. No. 1620).

**II.    Dr. Safir's Testimony Is Wholly Conclusory and Thus Inadmissible Under *Daubert*.**

    **A.    Dr. Safir's Testimony Is Wholly Conclusory.**

On April 1, 2010, the morning of the hearing, the plaintiffs presented the declaration of Dr. Andrew Safir, who presented calculations alleging that there were $100 million in benefits to the future Costco purchasers from injunctive relief.

Alkon Objectors' Motion to Strike
No. 07-md-1840

2

But an examination of the Safir declaration shows that that there is nothing expert about his testimony: the only thing he does is *assume* that Costco will expand the size of the average gallon of gas it sells without raising the price at the pump for this additional expense, and then perform simple multiplication. But Safir gives no basis for this assumption—indeed, he contradicts it within the same declaration when he assumes that Costco will pass along to consumers the entire $2700/pump cost of reconfiguring gas stations to provide temperature-adjusted gasoline. Safir Declaration ¶ 13. Safir gives no economic reasoning to support his assumption of 0% pass-through of costs; he cites to no economic literature and performs no study showing that demand for gasoline is so elastic that vendors are at the mercy of their customers even when marginal costs rise.[1] In fact, the words "elasticity" and "cross-elasticity" are entirely absent from his declaration. *Cf. Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 258 (7th Cir. 1998) (discussing role of elasticity of demand in affecting price when costs rise). Nor does Safir address the empirical evidence from Hawaii or any of the findings of regulators' reports that show that temperature-adjustment simply causes prices to rise in line with costs and does not provide any material benefit to consumers as a whole.

Such a flimsy economic model would not pass muster in peer-reviewed economic literature, and, after *Daubert* and *Kumho Tire*, it does not pass muster in federal court, either. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 139 (1999); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1079 (10th Cir. 2006); *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1030 (D. Kan. 2006) (excluding economic expert testimony calculating damages where entire calculation based

---

[1] Indeed, the class complaint alleges quite the opposite.

on "underlying assumptions" without independent analysis of basis for assumptions); *First Savs. Bank, v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1084 (D. Kan. 2000) (excluding expert testimony on damages where expert "based his opinion on an assumption of the very fact that his report is intended to prove"); *In re Aluminum Phosphide Antitrust Litig.*, 893 F. Supp. 1497, 1504-07 (D. Kan. 1995).

Simply claiming one's expertise and then asserting a conclusion without performing the economic analysis that experts in the field would perform precludes admission of proposed expert evidence—even if the testifying expert is a Nobel Prize winner. *In re Brand Name Prescription Drugs Antitrust Litigation*, 1999 U.S. Dist. Lexis 550 (N.D. Ill. Jan. 19, 1999) (excluding testimony of Nobel Prize-winning economist Robert Lucas when opinions not based on evidence), *aff'd on other grounds*, 186 F.3d 781 (7th Cir. 1999); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Expert testimony that is speculative is not competent proof and contributes "nothing to a 'legally sufficient evidentiary basis.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 445, 454 (2000) (*citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993)). "Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Group Ltd.*, 509 U.S. at 242.

### B. Dr. Safir's Testimony Is Also Excludable for Failure to Consider Relevant Factors.

Among the factors that Safir did not consider in the specific case of Costco is the fact that Costco does not just charge a price for its gasoline, but also charges its customers in

Alkon Objectors' Motion to Strike
No. 07-md-1840

4

inconvenience. As one of the plaintiffs' counsel described at oral argument, Costco members sit in long lines to take advantage of the low prices for gasoline; Costco members whose time is more valuable than the difference in savings will shop for gasoline somewhere else. The long lines also mean that the demand for Costco's gasoline exceeds the supply in gas pumps available to serve Costco's customers during Costco's restricted business hours. Both of these facts suggest that Costco has room to increase its prices to reflect the increased costs from a gallon of gas that, on average, will be ever so slightly larger than 231 cubic inches, without losing sales. But Safir did not consider this fact, either.

Nor did Safir consider the effect of cross-subsidization on cumulative class benefits. Take the example used by plaintiffs' counsel in oral argument at the fairness hearing. Petrina buys ten gallons of 60-degree gasoline at $2/gallon; Pauline shows up at the pump in the heat of the afternoon, and buys ten gallons of 90-degree gasoline at $2/gallon. Pauline will be getting 2% less power from her "hot gas" due to swellage, despite paying the same price as Peterina. But see what happens when temperature adjustment is used to sell the gasoline:

|  | Status quo | After ATC |
|---|---|---|
| Petrina, who buys gas at 60 degrees on average, pays | $20.00 for 10.0 gallons of gasoline, or $2.00/gallon. | $20.20 for 10.0 gallons of temperature-adjusted gasoline, or $2.02/gallon. |
| Pauline, who buys gas at 90 degrees on average, pays | $20.00 for 10.0 gallons of gas, which equals 9.8 gallons of temperature-adjusted gas, or an adjusted rate of $2.04/gallon. | $20.20 for 10.0 gallons of temperature-adjusted gasoline, or $2.02/gallon. |
| In total, Costco is selling | 19.8 gallons of temperature-adjusted gas for $40.00, or $2.02/adjusted gallon. | 20.0 gallons of temperature-adjusted gasoline for $40.40, or $2.02/gallon. |

Alkon Objectors' Motion to Strike
No. 07-md-1840

5

Some consumers win; some consumers lose.[2]  Pauline gets cheaper gasoline; Petrina has to pay more for the same amount of gasoline.  All in all, it is a wash amongst consumers, literally borrowing from Petrina to pay Pauline.[3]  One can argue that the end result is more "fair" (if one makes the questionable assumption that temperature control can be achieved without raising costs to consumers or taxpayers)[4] but this is the sort of fairness for legislators or regulators (or free-market pressure created by efforts to compete for consumers) to evaluate.  Class counsel, whose duty is to the entire class of Costco gasoline purchasers, not just some of them, has no basis to claim fees for achieving this intra-class "fairness," because the class *as a whole* receives no benefit.

The status quo, where Petrina pays less on average for her gasoline than Pauline does, is an example of what is called "cross-subsidization": a wealth transfer from one class plaintiff consumer to another class plaintiff consumer, rather than between defendant vendors and plaintiff consumers.[5]  It is worth noting that consumers cross-subsidize each other all the time without it

---

[2] Because of rounding to the nearest penny, in this particular example, based on plaintiffs' oral argument, the two consumers are technically paying 0.01% less for gasoline.  This should not be construed as a benefit to the class: with different numbers in the example, rounding could have consumers paying 0.01% more.  On average, rounding will neither be a benefit nor a cost to consumers.

[3] In reality, unless individual consumers make a point of buying gas only at certain times of the day, the lifetime differences between consumers are going to be substantially smaller than 2%.

[4] While the parties argue that installation would cost only about $2700/pump in parts and labor, they provide no data on the opportunity costs of having the pump out of service, the additional maintenance costs of having more complicated equipment, or the costs to taxpayers of the more complicated testing required to confirm the accuracy of the equipment.

[5] Note that the cross-subsidization would occur even if Petrina's or Paulina's average-temperature purchase were below or above sixty degrees: so long as consumers purchase gas at

becoming a federal case. In air travel, business travelers who buy their plane tickets at the last minute subsidize vacation travelers who purchase cheaper tickets long in advance. In grocery stores, consumers who take the time to cut coupons are subsidized by those who do not. And in the case of gas stations themselves, even if temperature-controlled pricing is implemented, there will still be cross-subsidization elsewhere: customers who pay cash will subsidize the gas purchases of those who use credit cards (which raises the costs of the vendor, who pays interchange fees). Customers who buy the highly profitable car washes, groceries, and cigarettes at gas station convenience stores are providing the vast bulk of profits that permit the gas station to operate, and are effectively subsidizing the customers who buy the lower- (or zero-) margin gas and leave without paying for anything else.

---

different temperatures on average and there is no temperature adjustment, the consumers buying gas at higher temperatures will be subsidizing the consumers buying gas at lower temperatures.

Plaintiffs argue that the Alkon objectors failed to demonstrate that they "understand" cross-subsidization. Dkt. No. 1663 at 2. The *ad hominem* attack is strange: plaintiffs do not provide an alternative definition of cross-subsidization. The Alkon objectors assure the Court that their counsel understands the concept of cross-subsidization. For one thing, counsel for Alkon objectors would never argue, as plaintiffs do (Dkt. No. 1663 at 2 n. 6), that the basic economic principle of cross-subsidization ceases to have any meaning outside of the legal doctrine of antitrust and must be "pirated" to be used in other economic contexts: such an argument reflects either a fundamental misunderstanding of economics or a deliberate attempt to mislead the Court.

For the record, the Alkon objectors' counsel, Theodore H. Frank, is a *summa cum laude* graduate in economics from Brandeis University, where he took graduate-level courses in econometrics and economic modeling. He was also awarded an Olin Fellowship in Law and Economics at the University of Chicago Law School, where he published a comment on the application of game theory to antitrust tie-ins. *See The Economic Interest Test and Collective Action Problems in Antitrust Tie-in Cases*, 61 U. Chi. L. Rev. 639 (1994). He has spoken at law schools across the country about the economics of class action settlements. And all of this is quite irrelevant: as noted above, a Nobel Prize in Economics does not save an economically invalid argument, and plaintiffs cite no precedent or law for the proposition that a court cannot consider basic economic principles in rejecting an economically invalid argument unless the lawyer whose brief rebuts the economically invalid argument has economic training.

Now, certainly, a legislature or regulatory agency can examine a given cross-subsidization and decide that the cross-subsidization is unfair and pass laws or regulations to bar it. (Or a legislature might decide that fairness requires more cross-subsidization, as in the case of the recent federal health-care reform bill, which mandates healthy consumers to purchase health insurance to better cross-subsidize insurance purchasers who are sick and reduce average insurance costs.) In this case, regulators have repeatedly looked at the issue and decided that the cross-subsidization issue did not merit action. And the Alkon objectors take no position on whether the sale of gasoline subject to swellage without appropriate disclosure is consumer fraud meriting damages. But the elimination of cross-subsidization *within* a class is a benefit to a subclass at the expense of another subclass, and not a benefit to the class as a whole. As such, it provides no reason to approve the settlement. *Cf. also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (class certification is improper when the class definition included some members "who claim harm from the very same acts from which other members of the class have benefitted").

Dr. Safir considered none of this in his testimony. This provides additional, independent, grounds for finding his proffered testimony inadmissible. *Concord Boat v. Brunswick*, 207 F.3d 1039, 1057 (8th Cir. 2000) ("Because of the deficiencies in the foundation of the opinion, the expert's resulting conclusions were 'mere speculation'" and inadmissible).[6]

---

[6] The Alkon Objectors do not agree with plaintiffs's claim that the admissibility of Dr. Safir's testimony has already been briefed and argued on April 1, 2010. Dkt. No. 1663 at 2 n. 5. *First*, the Alkon Objectors were not given notice or opportunity to participate in the April 1 hearing on the admissibility of Dr. Safir's testimony because the plaintiffs failed to submit Dr. Safir's declaration until April 1, 2010. *Second*, even if the Court rules in favor of the admissibility of earlier Safir testimony, it has no bearing on whether ***this*** testimony satisfies *Daubert*. The fact that an expert submits testimony that satisfies *Daubert* during an earlier part of the case does not give that expert *carte blanche* to submit inadmissible conclusory testimony later.

Alkon Objectors' Motion to Strike
No. 07-md-1840

**CONCLUSION**

There are two independent reasons to strike Dr. Safir's declaration: *first*, it was filed prejudicially late on the morning of the fairness hearing, in violation of the Court's March 4 order; *second*, and more importantly, it is not competent expert evidence.  There are two independent reasons why Dr. Safir's testimony fails to meet *Daubert*: *first*, his testimony is pure *ipse dixit* conclusion about the critical issue in dispute; *second*, there is no evidence that Dr. Safir considered critical factors regarding the market for Costco gasoline sales.  As such, his methodology fails to meet *Daubert* standards, and it would be reversible error to credit his testimony.

Dated:  May 5, 2010

Respectfully submitted,

*/s/Theodore H. Frank*
Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW
No. 23-6
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tedfrank@gmail.com

Attorney for Objectors
Amy Alkon and Nicolas Martin

## PROOF OF SERVICE

      I hereby certify that this document was filed through the CM/ECF system which will automatically generate a Notice of Electronic Filing (NEF) and send it by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service.

      Executed on May 5, 2010.

                                    */s/ Theodore H. Frank*_____
                                    Theodore H. Frank