## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| [This Document Relates To All Cases.] | ) | **Case No. 07-1840-KHV** |
| _____ | ) | |

### <u>MEMORANDUM AND ORDER</u>

Plaintiffs bring putative class action claims for damages and injunctive relief against motor fuel retailers in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia and Guam. Plaintiffs claim that because defendants sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion, they are liable under state law theories which include breach of contract, breach of warranty, fraud and consumer protection. Following a transfer order of the Judicial Panel on Multidistrict Litigation ("JPML"), the Court has jurisdiction over consolidated pretrial proceedings in these actions. <u>See</u> 28 U.S.C. § 1407; Doc. #1 filed June 22, 2007. This matter comes before the Court on <u>Kansas Plaintiffs' Motion For Class Certification And Memorandum In Support</u> ("<u>Motion For Class Certification</u>") (Doc. #1106) filed June 1, 2009 and <u>Defendants' Motion To Exclude Testimony Of Andrew Safir</u> (Doc. #1308) filed September 30, 2009. On April 1, 2010, the Court heard oral argument on the motions. After careful consideration of the parties' arguments, evidence and legal authority, for reasons stated below, the Court sustains in part plaintiffs' motion to certify a class and overrules defendants' motion to exclude expert testimony.

## I.      Legal Standards

The determination of class certification is committed to the broad discretion of the trial court. See Shook v. El Paso County ("Shook I"), 386 F.3d 963, 967 (10th Cir. 2004).  In determining the propriety of a class action, the question is not whether plaintiffs have stated a cause of action or will prevail on the merits, but whether they meet the requirements of Rule 23, Fed. R. Civ. P.  See Shook I, 386 F.3d at 971 (quoting Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982)). In deciding whether the proposed class meets the requirements of Rule 23, the Court accepts plaintiffs' substantive allegations as true, though it need not blindly rely on conclusory allegations and may consider the legal and factual issues which the complaint presents.  See Shook I, 386 F.3d at 968 (quoting J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)); see also Vallario v. Vandehey, 554 F.3d 1259, 1265 (10th Cir. 2009).  The Court should not pass judgment on the merits of the case, but must conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are met.  DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010) (quotations and citations omitted).

As the parties seeking class certification, plaintiffs have the burden to prove that the requirements of Rule 23 are satisfied.  See Shook I, 386 F.3d at 968; D. Kan. Rule 23.1(d).[1]  In doing so, plaintiffs must first satisfy the prerequisites of Rule 23(a).  To do so, they must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact

---

[1]      D. Kan. Rule 23.1(d) states as follows:

(d) Burden of Proof; Notice.  Any party seeking to maintain a case as a class action bears the burden of presenting an evidentiary basis to the court showing that the action is properly maintainable as such. * * *

D. Kan. Rule 23.1(d)

are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class. See Rule 23(a), Fed. R. Civ. P.[2]  After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b), Fed. R. Civ. P.[3]

---

[2]      Rule 23(a) states as follows:

(a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
　　(1) the class is so numerous that joinder of all members is impracticable;
　　(2) there are questions of law or fact common to the class;
　　(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
　　(4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed. R. Civ. P.

[3]      Rule 23(b) states as follows:

(b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
　　(1) prosecuting separate actions by or against individual class members would create a risk of:
　　　　(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
　　　　(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
　　(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
　　(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
　　　　(A) the class members' interests in individually controlling the
(continued...)

Here, plaintiffs seek to certify a class under Rules 23(b)(2) and (b)(3).  Under Rule 23(b)(2), class certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  By its terms, Rule 23(b)(2) imposes two independent but related requirements.  First, plaintiffs must show that defendants' actions or inactions are based on "grounds generally applicable to all class members."  Shook v. Bd. of County Comm'rs of County of El Paso ("Shook II"), 543 F.3d 597, 604 (10th Cir. 2008).[4]  Second, plaintiffs

---

[3](...continued)
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Rule 23(b), Fed. R. Civ. P.

[4]      In Shook I, under Rule 23(b)(2), state inmates sought to certify a class for declaratory and injunctive relief regarding lack of adequate mental health care while incarcerated.  The district court found that plaintiffs sought to reform jail practices and that the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) (2000), precluded it from granting such relief.  See Shook v. Bd. of County Comm'rs of County of El Paso, 216 F.R.D. 644, 647 (D. Colo. 2003).  The district court found that class certification was therefore inappropriate.  See id.

On appeal, the Tenth Circuit reversed.  The Tenth Circuit found that the PLRA does not alter the analysis for class certification under Rule 23.  See Shook I, at 969-70.  The Tenth Circuit concluded that the district court erred by not specifically addressing the traditional Rule 23 factors in denying class certification.  See id. at 972.  It remanded with instructions to consider plaintiffs' claims under Rule 23.  See id. at 974.

On remand, the district court again denied class certification, finding that plaintiffs did not meet the commonality and typicality requirements of Rule 23(a)(2) and (3).  See Shook v. Bd. of County Comm'rs of County of El Paso, No. 02-cv-00651-RPM, 2006 WL 1801379, at *1 (D. Colo. June 28, 2006).  Specifically, the district court found that plaintiffs' claims were not common and typical because the circumstances giving rise to class members' claims varied greatly, and the claims were not based on the same course of conduct by defendants.  See id. at **9-10.  Also, the district court found that plaintiffs did not meet the requirements of Rule 23(b)(2).  Specifically, it found that
(continued...)

must demonstrate that the injunctive relief which they request is "appropriate for the class as a whole." Id. Together these requirements demand "cohesiveness among class members with respect to their injuries[.]" Id. This cohesiveness has two elements. First, plaintiffs must show that the proposed class is sufficiently cohesive that any class-wide injunctive relief will satisfy the requirement of Rule 65(d) that every injunction "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1);[5] Stricklin, 594 F.3d at 1199; Shook II, 543 F.3d at 604. Second, plaintiffs must show that class members' injuries are "sufficiently similar" that they can be remedied in a single injunction without differentiating between class members. Stricklin, 594 F.3d at 1199 (quoting Shook II, 543 F.3d at 604). Thus, to satisfy Rule 23(b)(2) at the class certification stage, plaintiffs must describe in reasonably particular detail the injunctive relief which they seek so that the Court can at least conceive of an injunction

---

[4](...continued)
because plaintiffs' claims arose from various factual circumstances and legal theories, defendants did not act or refuse to act on grounds generally applicable to the class. See id. at *11-12.

On appeal, the Tenth Circuit affirmed. See Shook II, 543 F.3d 597. It found that the district court did not abuse its discretion in refusing to certify under Rule 23(b)(2). See id. at 603-04. The Tenth Circuit found that under Rule 23(b)(2), class members' injuries must be sufficiently similar so that a single injunction can address them without differentiating among class members. See id. at 604. By way of example, the Tenth Circuit noted that plaintiffs' prayer for relief – to enjoin defendants from using restraints, pepper spray and tasers against prisoners exhibiting signs of mental illness "in circumstances that pose a substantial risk of serious harm to such prisoners" – required the district court to craft an injunction which accounted for specific circumstances of individual inmates. See id. at 605.

[5]     Rule 65 states in part as follows:

(1) Contents. Every order granting an injunction and every restraining order must:
        (A) state the reasons why it issued;
        (B) state its terms specifically; and
        (C) describe in reasonable detail – and not by referring to the complaint or
        other document – the act or acts restrained or required.

Fed. R. Civ. P. 65(d)(1).

5

which would satisfy the requirements of Rule 65(d) and Rule 23(b)(2).  See id., 594 F.3d at 1199;

(quoting Shook II, 543 F.3d at 605) (further citations and quotations omitted).

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

(A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action.

Id.

## II.   Factual Background

This multidistrict litigation includes two cases which plaintiffs filed in the District of Kansas ("the Kansas cases").  In Wilson v. Ampride, Inc., Case No. 06-2582, Zachary Wilson and Wonderland Miracle Carnival Company ("Wonderland") bring suit against BP Products North America, Inc. a/k/a BP Corporation North America, Inc., Casey's General Stores, Inc., Chevron USA, Inc., Circle K Stores, Inc., CITGO Petroleum Corporation, ConocoPhillips Company, Costco Wholesale Corporation, Flying J, Inc., Petro Stopping Centers, LP, 7-Eleven, Inc., Shell Oil Company,[6] Valero Marketing and Supply Company and Wal-Mart Stores, Inc. d/b/a Sam's Club.

---

[6]      Plaintiffs state that they plan to substitute Equilon Enterprises, LLC d/b/a Shell Oil Products for Shell Oil Company.  See Exhibit 1 to Kansas Plaintiffs' Reply In Support Of Motion For Class Certification ("Plaintiffs' Reply") (Doc. #1526) at 3 n.27.

See Complaint (Doc. #1) filed December 29, 2006 in Case No. 06-2582.[7]  Plaintiffs allege civil conspiracy, breach of duty of good faith and fair dealing, violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A § 50-623 et seq., and quantum meruit/unjust enrichment.  See id. Plaintiffs seek damages and injunctive relief requiring defendants to retrofit and install temperature-correction devices to avoid future damages.  See id.

In American Fiber & Cabling, LLC v. BP West Coast Products, LLC, Case No. 07-2053, Mathew Cook brings suit against BP West Coast Products, LLC a/k/a BP Corporation North America, Inc., Casey's General Stores, Inc., Chevron USA, Inc., ConocoPhillips Company, Kroger Co., Kum & Go, LC, Quiktrip Corp., 7-Eleven, Inc., Shell Oil Company and Valero Marketing and Supply Company.  See Complaint (Doc. #1) filed January 31, 2007 in Case No. 07-2053.[8]  There, plaintiff alleges violation of the KCPA, civil conspiracy, breach of duty of good faith and fair

---

[7]        Robert Soetaert and Bob Soetaert Trucking, LLC also joined as plaintiffs but voluntarily dismissed their claims without prejudice.  See Doc. #758 filed February 12, 2009 in Case No. 07-1840 ¶ 4.

Plaintiffs also sued Ampride, Inc., but it appears that they have not obtained service on that defendant.  On May 27, 2010, the Court ordered plaintiffs to show cause in writing why it should dismiss the action without prejudice as to Ampride, Inc. for lack of prosecution under Rule 4(m), Fed. R. Civ. P.  See Notice And Order To Show Cause (Doc. #50) filed in Case No. 06-2582.

Plaintiffs also sued Coastal Mart, Inc., Exxon Mobil Corporation, MFA Oil Company, Pilot Travel Centers, LLC, Presto Convenience Stores, LLC, Sinclair Oil Corporation and Total Petrochemicals USA, Inc. but stipulated to dismiss those claims without prejudice.  See Doc. #469 filed June 16, 2008 in Case No. 07-1840 (Coastal Mart); Doc. #462 filed June 11, 2008 in Case No. 07-1840 (Exxon); Doc. #439 filed May 16, 2008 in Case No. 07-1840 (MFA Oil); Doc. #487 filed June 24, 2008 in Case No. 07-1840 (Pilot Travel); Doc. #603 filed October 21, 2008 in Case No. 07-1840 (Presto Convenience); Doc. #1453 filed December 8, 2009 in Case No. 07-1840 (Sinclair Oil); (Doc. #496) filed June 30, 2008 in Case No. 07-1840 (Total Petrochemicals).

[8]        American Fiber & Cabling, LLC and Robert Miller also joined as plaintiffs but voluntarily dismissed their claims without prejudice.  See Doc. #758 filed February 12, 2009 in Case No. 07-1840.

Plaintiffs also sued Exxon Mobil Corporation but stipulated to dismiss those claims without prejudice.  See Doc. #462 filed June 11, 2008 in Case No. 07-1840.

dealing, unjust enrichment/quantum meruit, fraudulent misrepresentation and negligent misrepresentation.  See id.  Plaintiff seeks damages and injunctive relief enjoining defendants from engaging in the alleged unlawful conduct and requiring them to install temperature correcting equipment on their retail motor fuel dispensing devices or post conspicuous notices to consumers regarding the effect of temperature expansion on the energy content of motor fuel.  See id.

In Wilson, plaintiffs seek to certify a class on claims of unjust enrichment and violation of the KCPA against all defendants except Costco Wholesale Corporation and Flying J, Inc.[9]  In addition, plaintiffs seek to certify a class on civil conspiracy claims against the following

---

[9]      In their motion for class certification, plaintiffs ask the Court to certify a class on their claims of unjust enrichment, breach of duty of good faith, violations of the KCPA and civil conspiracy.  See Motion For Class Certification (Doc. #1106) at 8.  With their reply brief, however, plaintiffs provide Exhibit 1 which sets forth the claims on which plaintiffs seek certification against each defendant.  See Plaintiffs' Reply (Doc. #1526) at 6 and Exhibit 1 thereto.  Exhibit 1 does not include claims for breach of duty of good faith, negligent misrepresentation or fraudulent misrepresentation.  See id.

Exhibit 1 includes Sam's West, LLC, but not Wal-Mart Stores, Inc. d/b/a Sam's Club.  Sam's West, LLC is not a defendant in either Kansas case.  See Exhibit 1 to Plaintiffs' Reply (Doc. #1526).  The Court therefore assumes that the summary of claims against Sam's West, LLC applies to Wal-Mart Stores, Inc. d/b/a Sam's Club, defendant in Wilson.

Plaintiffs have agreed to settle claims against Costco for injunctive relief and the possibility of attorneys' fees.  See In re Motor Fuel Temperature Sales Practices Litg., 258 F.R.D. 671 (D. Kan. 2009).  On August 13, 2009, the Court granted preliminary approval of the proposed settlement and preliminarily certified a settlement class.  In re Motor Fuel, 258 F.R.D. at 679-81.  On April 1, 2010, the Court held a hearing on final approval of the settlement.  That matter remains under advisement.  In light of the pending settlement, plaintiffs' motion does not seek class certification on claims against Costco.  See Plaintiffs' Reply (Doc. #1526) at 6 n.30.

Claims against Flying J, Inc. are stayed pending bankruptcy.  See Doc. #1082 filed May 29, 2009.  In light of the bankruptcy stay, plaintiffs do not seek to certify a class on their claims against Flying J at this time.  See Plaintiffs' Reply (Doc. #1526) at 6 n.30.

Defendants object that plaintiffs' motion is procedurally improper because they have not asked to consolidate the two underlying cases.  See Defendants' Opposition To Kansas Plaintiffs' Motion For Class Certification And Memorandum In Support ("Defendants' Opposition") (Doc. #1321) at 5 n.1.  Because the analysis is the same for both cases, it makes sense for the Court to decide the issues in one motion.  The Court may later consolidate the cases, or certify a separate class in each case.

8

defendants: BP Products North America, Inc., Chevron USA, Inc., Circle K Stores, Inc., ConocoPhillips Company, Petro Stopping Centers, LP and Shell Oil Company.

In <u>American Fiber</u>, plaintiff seeks to certify a class on claims of unjust enrichment and violation of the KCPA against all defendants except BP West Coast Products, LLC.[10]  <u>See</u> <u>Plaintiffs' Reply</u> (Doc. #1526) at 6 and Exhibit 1 thereto.  In addition, plaintiff seeks to certify a class on civil conspiracy claims against the following defendants: Chevron USA, Inc., ConocoPhillips Company, Kroger Co., Kum & Go, LC, Quiktrip Corp. and Shell Oil Company.

Specifically, the Kansas plaintiffs seek to certify the following class:

> All individuals and entities that, at any time between January 1, 2001 and the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants.

<u>Motion For Class Certification</u> (Doc. #1106) at 8.[11]  With regard to the KCPA claims, plaintiffs propose the following subclass:

> All individuals, sole proprietors and family partnerships that, at any time between January 1, 2001 and the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants.

<u>Id.</u> at 9.[12]

---

[10]     Plaintiffs' summary of defendants against whom they seek class certification includes BP Products North America, Inc. but not BP West Coast Products, LLC.  <u>See</u> <u>Plaintiffs' Reply</u> (Doc. #1526) at 6 and Exhibit 1 thereto.  Plaintiffs do not explain why they do not seek to certify a class on claims against BP West Coast Products, LLC.

[11]     The proposed class definition excludes (a) federal judges who have presided over the case, (b) persons employed by defendants and (c) affiliates of defendants.  <u>See</u> <u>id.</u>

[12]     Plaintiffs do not explain why they request a subclass for the KCPA claims.  The proposed subclass includes all individuals, *sole proprietors and family partnerships* who purchased retail motor fuel above 60 degrees Fahrenheit – as opposed to the proposed class which includes all

(continued...)

### III.     Analysis

To obtain class certification, plaintiffs must show that the prerequisites of Rule 23(a) are satisfied and demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).  Here, plaintiffs seek to certify a class under Rule 23(b)(2) and (b)(3).  Defendants assert that plaintiffs cannot meet the requirements of Rule 23(a), (b)(2) or (b)(3).  In addition, defendants assert that the proposed class is not ascertainable.

### A.     Rule 23(a) Prerequisites

To satisfy the prerequisites of Rule 23(a), plaintiffs must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class.  See Rule 23(a), Fed. R. Civ. P.  Defendants assert that plaintiffs cannot satisfy the third and fourth requirements, i.e. typicality and adequate representation.

---

[12](...continued)
individuals *and entities* who purchased retail motor fuel above 60 degrees Fahrenheit.  It appears that plaintiffs request the subclass to comply with requirements for asserting claims under the KCPA.  Under the KCPA, a "consumer" has private remedies against an act or practice which violates the act.  See K.S.A § 50-634.  The KCPA defines "consumer" as an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes."  K.S.A. § 50-624(b).  It appears that "entities" do not have standing to assert claims under the KCPA.  See, e.g., Wayman v. Amoco Oil Co., 923 F.Supp. 1322, 1363 (D. Kan. 1996) (corporation or similar entity cannot assert claim under KCPA), aff'd 145 F.3d 1347 (10th Cir. 1998); CIT Group/Sales Fin., Inc. v. E-Z Pay Used Cars, Inc., 29 Kan. App.2d 676, 685, 32 P.3d 1197, 1204 (2001) (KCPA protection limited to individuals and sole proprietors).

Defendants assert that the Court should strike plaintiffs' request for a subclass because they did not request it in their complaints.  See Defendants' Opposition (Doc. #1321) at 28 n.29.  The Court declines to do so.  Under Rule 23(c)(5), the Court may divide a class into subclasses when appropriate.  See Fed. R. Civ. P. 23(c)(5).  Defendants cite no authority to support their position that plaintiffs forfeit the right to request a subclass if they do not do so in their complaint.

### 1.    Numerosity

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); <u>see also</u> <u>Trevizo v. Adams</u>, 455 F.3d 1155, 1162 (10th Cir. 2006).  To satisfy this requirement, plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.  <u>See</u> <u>Rex v. Owens ex rel. State of Okla.</u>, 585 F.2d 432, 436 (10th Cir. 1978).  The Court has no set formula for determining whether plaintiffs meet this requirement.  <u>Id.</u>  Plaintiffs state that the number of proposed class members is sufficiently large to make joinder impracticable because Kansas has a population of approximately 2,775,994 people, defendants operate or control a large number of retail motor fuel stations in the state and the average temperature of motor fuel sold in the state exceeds 60 degrees Fahrenheit.  Defendants do not assert that plaintiffs cannot satisfy the numerosity requirement.  On this record, the Court finds that the proposed class is so numerous that joinder of all members would be impracticable.   Accordingly, plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### 2.    Commonality

Rule 23(a)(2) requires plaintiffs to show that "questions of law or fact are common to the class." Fed. R. Civ. P. 23(a)(2). This inquiry requires the Court to find only whether common questions of law or fact exist; unlike Rule 23(b)(3), such questions need not predominate under this element.  <u>See</u> <u>Olenhouse v. Commodity Credit Corp.</u>, 136 F.R.D. 672, 679 (D. Kan. 1991). Plaintiffs identify several common factual and legal issues including (1) whether defendants sell motor fuel at retail at temperatures above 60 degrees Fahrenheit without adjusting for temperature; (2) whether this practice is unfair, deceptive or unlawful; (3) whether defendants have unjustly

benefitted from selling non-temperature adjusted motor fuel and/or by seeking excessive reimbursement to recoup their costs for fuel taxes paid; (4) whether defendants have breached the duty of good faith and fair dealing; and (5) whether defendants have conspired to resist attempts to require temperature adjusted retail motor fuel sales and implement automatic temperature compensation technology on retail motor fuel pumps.  Defendants do not assert that plaintiffs cannot meet the commonality requirement.  On this record, the Court finds that questions of law or fact are common to the class.  Accordingly, plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).

### 3.     Typicality

Rule 23(a)(3) requires plaintiffs to show that their claims are typical of the claims of the class which they seek to represent.  See Fed. R. Civ. P. 23(a)(3); Stricklin, 594 F.3d at 1198. The interests and claims of the representative plaintiffs and class members need not be identical to satisfy typicality.  See id. (citing Anderson, 690 F.2d at 800).  If the claims of the representatives and class members are based on the same legal or remedial theory, differing fact situations of class members do not defeat typicality.  See id. at 1198-99 (citing Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988)); Jamieson v. Vatterott Educ. Ctrs., Inc., 259 F.R.D. 520, 547 (D. Kan. 2009).

#### a.     Differing Fact Situations

Plaintiffs assert that their claims are typical of class members' claims because they are based on the same legal theories and arise from the same pattern of conduct by defendants. Defendants attempt to defeat typicality by pointing out factual differences among representative plaintiffs.  See Defendants' Opposition (Doc. #1321) at 28-27.  They state that representative plaintiffs did not purchase fuel pursuant to fleet contracts or other negotiated contracts like certain

12

class members did.  Defendants also state that Cook has produced receipts of fuel purchases by his wife, so the parties must examine all of his receipts to determine who made which fuel purchases. Defendants state that Wilson has produced receipts of fuel purchases by his company's employees and the parties will have to examine receipts to determine purchases for which he may assert a claim.  See id. at 28-29.  Defendants assert that these issues are not present with regard to other class members.  See id.  Defendants also contend that the parties will have to litigate whether Wilson can assert a KCPA claim for business-related fuel purchases, and that this issue is not common to the class.  See id. at 29.

Defendants' assertions do not defeat a finding of typicality under Rule 23(a)(3).  As noted, the interests and claims of the representative plaintiffs and class members need not be identical; differing fact situations do not defeat typicality so long as the claims of the representatives and class members are based on the same legal or remedial theory.  See Stricklin, 594 F.3d at 1198-99.  Here, the claims of the representative plaintiffs and class members are based on the same legal and remedial theories and arise from the same pattern of conduct by defendants: all of them allegedly suffered injury on account of defendants' sale of motor fuel for specified prices per gallon without disclosing or adjusting for temperature expansion.  Thus, the differing factual situations which defendants cite do not defeat typicality.  See id. at 1198-99; Adamson, 855 F.2d at 676; Jamieson, 259 F.R.D. at 546; cf. Doll v. Chic. Title Ins. Co., 246 F.R.D. 683, 687 (D. Kan. 2007) (claims not typical where plaintiffs filed outside limitations period and must invoke discovery rule to maintain claims).

### b.    Standing

To meet the typicality requirement of Rule 23(a)(3), a class representative

must have standing to pursue the class claims.  See Rector v. City & County of Denver, 348 F.3d

935, 950 (10th Cir. 2003).  Defendants contend that Cook and Wilson lack standing to assert claims

against certain defendants because they cannot confirm that they purchased fuel from them.  See

Defendants' Opposition (Doc. #1321) at 27, 29.  Specifically, defendants contend that Cook cannot

show that he purchased motor fuel from Casey's General Stores, Inc., Chevron USA, Inc., Kroger

Co. or 7-Eleven, Inc.,[13] see id. at 27, and that Wilson cannot prove that he purchased motor fuel from

Petro Stopping Centers, LP.  See id. at 29.  In response, plaintiffs do not claim that they purchased

motor fuel from these defendants.  See Plaintiffs' Reply (Doc. #1526) at 10.[14]

        Plaintiffs contend that even if they did not purchase fuel directly from these defendants, they

have standing to assert claims against them because they allege a conspiracy among defendants.[15]

See Plaintiffs' Reply (Doc. #1526) at 10.  Kansas law recognizes a civil conspiracy claim which

imposes joint and several liability upon co-conspirators.  See Emig v. Am. Tobacco Co., 184 F.R.D.

379, 386 (D. Kan. 1998) (citing Petrol. Energy, Inc. v. Mid-Am. Petrol. Inc., 775 F. Supp. 1420,

_____

[13]     Defendants also contend that Cook cannot show that he purchased motor fuel from
"BP."  Defendants' Opposition (Doc. #1321) at 27.  Defendants do not specify whether they refer
to BP Products North America, Inc., BP West Coast Products, LLC, or both.  See id.  Cook asserts
claims only against BP West Coast Products, LLC, so the Court assumes that defendants' argument
applies to that company.  As noted, plaintiffs do not seek to certify a class on claims against BP
West Coast Products, LLC.  See Exhibit 1 to Plaintiffs' Reply (Doc. #1526).

[14]     Both parties discuss whether Cook has standing to assert claims against Exxon Mobil,
but Cook has dismissed those claims without prejudice.  See Doc. #462 filed June 11, 2008 in
Case No. 07-1840.

[15]     As noted, plaintiffs seek to certify a class on civil conspiracy claims against the
following defendants: BP Products North America, Inc. (Wilson and Wonderland only), Chevron
USA, Inc. (Wilson, Wonderland and Cook), Circle K Stores, Inc. (Wilson and Wonderland only),
ConocoPhillips Company (Wilson, Wonderland and Cook), Kroger Co. (Cook only), Kum & Go,
LC (Cook only), Quiktrip Corp. (Cook only), Petro Stopping Centers, LP (Wilson and Wonderland
only) and Shell Oil Company (Wilson, Wonderland and Cook).  See Exhibit 1 to Plaintiffs' Reply
(Doc. #1526).

1429 (D. Kan. 1991)).  Where defendants' conduct results from a conspiracy, they are legally liable to plaintiffs even though they had no previous contact with them.  <u>See</u> <u>Emig</u>, 184 F.R.D. at 386 (citing 1 <u>Newberg on Class Actions</u> § 3.18, at 3-106 (3d ed. 1992)).  Thus, under Kansas law, even if plaintiffs did not purchase motor fuel directly from some defendants, it appears that they would have standing to assert claims for civil conspiracy claims against them.  <u>See</u>, <u>e.g.</u>, <u>Emig</u>, 184 F.R.D. at 386.

As noted, defendants assert that Cook cannot prove that he purchased fuel from Casey's General Stores, Inc., Chevron USA, Inc., Kroger Co. and 7-Eleven, Inc.  As to Casey's General Stores, Inc. and 7-Eleven, Inc., Cook seeks to certify a class on claims of unjust enrichment and violation of the KCPA, but not civil conspiracy.  <u>See</u> Exhibit 1 to <u>Plaintiffs' Reply</u> (Doc. #1526). Because Cook does not assert that he purchased fuel directly from these defendants, it appears that he does not have standing to assert claims against them.  Accordingly, as to claims against Casey's General Stores, Inc. and 7-Eleven, Inc., Cook does not satisfy the typicality requirements of Rule 23(a)(3).  <u>See</u> <u>Rector</u>, 348 F.3d at 950.

As to Chevron USA, Inc. and Kroger Co., Cook seeks to certify a class on claims of civil conspiracy, unjust enrichment and violation of the KCPA.  Under <u>Emig</u>, it appears that even though Cook may not have purchased motor fuel directly from these defendants, he would have standing to assert civil conspiracy claims against them.  As to claims for unjust enrichment and violation of the KCPA, however, it appears that Cook does not have standing.  In this regard, plaintiffs have not shown that Cook's claims against Chevron USA, Inc. and Kroger Co. are typical of claims of class members who purchased motor fuel directly from these defendants.  Accordingly, as to claims against Chevron USA, Inc. and Kroger Co., Cook does not satisfy the typicality requirements of

15

Rule 23(a)(3).[16]

Defendants assert that Wilson cannot prove that he purchased motor fuel from Petro Stopping Centers, LP.  As to this defendant, Wilson seeks to certify a class on claims of civil conspiracy, unjust enrichment and violation of the KCPA.  See Exhibit 1 to Plaintiffs' Reply (Doc. #1526).  Under Kansas law, it appears that Wilson would have standing to assert a claim for civil conspiracy.  See, e.g., Rector, 348 F.3d at 950; Emig, 184 F.R.D. at 386.  As to claims for unjust enrichment and violation of the KCPA, however, it appears that Wilson does not have standing.  In this regard, plaintiffs have not shown that Wilson's claims against Petro Stopping Centers, LP are typical of claims of class members who purchased motor fuel directly from this defendant.  Accordingly, as to claims against Petro Stopping Centers, LP, Wilson does not satisfy the typicality requirements of Rule 23(a)(3).[17]

Based on the foregoing analysis, the Court will not certify a class on Cook's claims against Casey's General Stores, Inc., Chevron USA, Inc., Kroger Co. and 7-Eleven, Inc. or the claims of Wilson and Wonderland against Petro Stopping Centers.  As to remaining claims, plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

---

[16]      Wilson and Wonderland also seek class certification on KCPA, unjust enrichment and civil conspiracy claims against Chevron USA, Inc.  Defendants do not challenge whether Wilson and Wonderland have standing to assert these claims.
         Wilson and Wonderland do not assert claims against Kroger Co.

[17]      Defendants do not challenge whether Wonderland can satisfy the typicality requirement with regard to claims against Petro Stopping Centers, LP.  As discussed above, it appears that entities do not have standing to assert claims under the KCPA.  Accordingly, the Court finds that Wonderland's claims against Petro Stopping Centers, LP are not typical of individuals who purchased fuel from Petro Stopping Centers, LP.  The Court therefore does not certify a class on Wonderland's claims against Petro Stopping Centers, LP.

## 4.      Adequacy Of Representation

Rule 23(a)(4) requires plaintiffs to show that they will fairly and adequately protect the interests of the class.  To meet this requirement, the representative plaintiffs must be members of the class which they seek to represent and show that (1) their interests do not conflict with those of class members and (2) they will be able to prosecute the action vigorously through qualified counsel.  See E. Tex. Motor Freight Sys., Inc., v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002); Olenhouse, 136 F.R.D. at 680.  Minor conflicts among class members do not defeat class certification; to defeat class certification, a conflict must be "fundamental" and go to specific issues in controversy.  Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).   A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in benefit to other class members.  See id.  In such situations, the named representatives cannot adequately represent the interests of the class because their interests are actually or potentially antagonistic to or in conflict with interests and objectives of other class members.  See id.

Defendants contend that representative plaintiffs have a conflict of interest with class members because not every purported class member wants temperature adjustment of retail motor fuel sales.  In support of this contention, defendants present evidence that the American Trucking Association, Inc. ("ATA"), the largest diesel fuel consumer group in the United States, has repeatedly taken a public position against implementation of automatic temperature correction ("ATC") in retail sales of motor fuel.  See Declaration of Richard Moskowitz, Defendants' Exhibit 7 (Doc. #1343-8) filed September 30, 2009.[18]  Defendants also cite a report by the California Energy

_____

[18]      On January 14, 2008, Moskowitz, ATA vice president and regulatory affairs counsel,
(continued...)

[18](...continued)
wrote the following to the National Conference on Weights and Measures ("NCWM"):

> For more than a year, ATA has closely followed the debate over ATC. Early on, ATA adopted a position opposing temperature compensation on a *permissive basis,* concluding that [it] would disadvantage diesel fuel consumers. . . .[by allowing] retailers to manipulate the system by installing temperature compensation equipment where the average temperature of the fuel dispensed is below 60 degrees and refrain from such installations where the average temperature of the fuel dispensed is above 60 degrees.

> Perhaps more important, permissive temperature compensation could undermine fair trade and transparency in the retail marketplace. * * * The use of temperature compensation equipment by an unknown portion of the retail fuel providers will greatly complicate our members' ability to determine the most economical place to refuel. Compensating and non-compensating retailers . . . would no longer be selling comparable volumes of product, making it impossible to make an educated purchasing decision.

> It took ATA a longer period of time to formulate a position on mandatory ATC. After analyzing the issue and considering its impact upon consumers of diesel fuel, **_ATA has decided to oppose mandatory ATC_**. * * *

> ATA and its members recognize that the retail motor fuels industry is highly competitive, with gas stations competing fiercely to attract additional business on the basis of a penny per gallon. * * *

> We are concerned that consumers such as the trucking industry will bear the cost of installing temperature compensation devices on fuel dispensers. The cost of retrofitting a retail fuel pump is estimated to be $2,000 per pump. [This expense] would increase the retailers' cost of goods sold and we expect that this increased cost ultimately would be passed on to the consumer. * * *

> ATA does not believe that ATC technology will ensure that every gallon yields the same energy content. . . . BTU reductions from various renewable blends (e.g. ethanol and biodiesel), have a much greater impact upon energy content than temperature.

> Finally, we would like to suggest that the NCWM consider the importance of a uniform method of sale for motor fuels nationwide. . . . We believe it would be detrimental to our industry if various states each adopt their own systems for measuring motor fuel, with some opting for ATC, possibly others adopting methods

(continued...)

18

Commission ("CEC") which, after conducting a cost-benefit analysis, concluded that implementing ATC at retail in California would result in a negative net cost to society. See CEC Report of March 2009, Defendants' Exhibit 18 (Doc. #1343-19) filed September 30, 2009.[19]  In essence, defendants

_____

[18](...continued)
that measure BTUs, and others continuing traditional systems of fuel measurement. We believe it is important to maintain the pricing transparency in today's marketplace that is so beneficial to fuel consumers and the trucking industry. Therefore, we would recommend that the NCWM consider new language that prohibits states from adopting ATC at the retail level. * * *

Exhibit A to Declaration of Richard Moskowitz (Doc. #1343-8) (emphasis in original).  In a letter to the NCWM dated May 4, 2009, Moskowitz stated as follows:

* * * With the recent findings of the California Energy Commission ("CEC") that implementation of ATC will result in additional costs for retailers and consumers with virtually no quantifiable benefit, we wish again to express our opposition to implementation of ATC at the retail level. * * *

As we have commented previously, we are concerned that the trucking industry will bear the cost of installing ATC devices on fuel dispensers.  The CEC's cost benefit analysis confirmed this.  Therefore, we stand by our previous statement that the installation of ATC devices is a solution that is more expensive than the problem it is trying to address.  * * *

Exhibit B to Declaration of Richard Moskowitz (Doc. #1343-8) (emphasis in original).

[19]       In part, the executive summary of the CEC report states as follows:

This report quantifies the benefits and costs associated with temperature compensation for retail sales of gasoline and diesel fuels in California.  The cost-benefit analysis concludes that the results are negative or a net cost to society under all the options examined, however when quantified by cents per gallon these costs are small. * * *

If ATC had been installed at retail gasoline stations during the one-year study period, the quantity of net gasoline gallons sold would have been approximately 15.5 billion or about 117 million gallons less compared to the status quo (no ATC at retail outlets) because the [average temperature of] fuel was warmer (71.1 degrees Fahrenheit) than the 60 degree Fahrenheit reference standard.  * * *

(continued...)

assert that because class members may disagree whether they would benefit from injunctive relief requiring mandatory implementation of ATC at retail, plaintiffs cannot adequately represent the class.  As an initial matter, however, defendants' argument goes only to plaintiffs' request for injunctive relief of mandatory implementation of ATC at retail.  It does not demonstrate an intra-class conflict of interest regarding plaintiffs' claims for money damages.

In Albertson's, Inc. v. Amalgamated Sugar Co., 503 F.2d 459 (10th Cir. 1974), plaintiffs asserted putative class antitrust claims against beet sugar processors.  In particular, plaintiffs alleged that defendants calculated freight charges based on an illegal tying arrangement and price discrimination.  They sought to bring class action claims on behalf of all direct purchasers of beet

_____

[19](...continued)
If ATC were mandated for use at retail stations, consumers would be able to more accurately and fairly compare prices because variations in temperature would be corrected by the ATC requirement.  California consumers could expect a slight financial benefit of approximately $258,000 per year due to this increased price transparency.

California retail station owners would experience additional expenses for the ATC retrofit equipment and slightly higher inspection fees.  If ATC devices are mandated, California businesses would incur a total first cost [sic] between $103.8 million and $127.4 million, or between $10,704 and $13,136 per retail outlet.  Recurring costs for more expensive ATC-ready dispensers, maintenance, and higher inspection fees would total between $7.4 million and $20.6 million per year. * * *

If the only criterion for assessing the merit of mandatory ATC installations for use at California retail stations is a net benefit to consumers, the Transportation Committee (Committee) of the California Energy Commission concludes that ATCs should not be required since the results of the cost-benefit analysis show a net cost for consumers.

 However, the Committee recommends that the Legislature also consider whether the possible value of increased fairness, accuracy, and consistency of fuel measurement, in addition to the benefits quantified in the cost-benefit analysis, justify mandating ATC at California retail stations. * * *

CEC Report of March 2009 (#1343-19).

20

sugar on claims for injunctive relief regarding the method by which defendants calculated freight charges.  As to this request, the trial court refused to certify a class, finding a conflict of interest between class members because the requested injunctive relief would result in some class members paying a lower price and gaining a competitive advantage over other class members.[20]  On appeal, the Tenth Circuit affirmed.  It found that ordinarily, the fact that class members will benefit unevenly is not a conflict which will preclude class certification.  See Albertson's, 503 F.2d at 464. On the facts of the case, however, the Tenth Circuit found that because the named representatives and class members were business competitors, the case involved much more than a "mere disparity" in benefit.  Id.  The requested injunctive relief would substantially change the competitive business positions of certain class members vis-a-vis other class members, and the Tenth Circuit therefore found that the district court did not abuse its discretion in denying class certification based on lack of commonality of interest among class members.  See id.

Unlike Albertson's, class members in this case are not business competitors and defendants do not contend that differing circumstances would cause some class members to benefit at the expense of others.  Cf. Valley Drug, 350 F.3d at 1190 (class certification improper where some class members derive net economic benefit from same conduct which named representatives allege unlawful).  Rather, defendants assert that class members hold differing opinions as to whether requiring ATC at retail would benefit the class as a whole.  In other words, defendants contend that some class members oppose ATC at retail because they believe that it will result in higher fuel prices with no corresponding benefit to class members.

_____

[20]     Plaintiffs also sought money damages for conspiracy and monopoly.  As to those claims, the trial court certified a class.  See Albertson's, 503 F.2d at 460.  The parties did not appeal that ruling.  See id.

21

Class actions are not forbidden in every case in which class members may disagree. See Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 486 (5th Cir. 1982); Reese v. Miami-Dade County, 209 F.R.D. 231, 233 (S.D. Fla. 2002). Here, the alleged difference of opinion goes to the ultimate merits of the case. Before plaintiffs may obtain injunctive relief requiring defendants to install ATC, they must prove that the requested relief will benefit the class as whole. If the evidence shows that mandating ATC would actually harm the class, plaintiffs will not prevail on their request for injunctive relief. Here, defendants emphatically contend that implementing ATC at retail will not result in any benefit to – and will actually harm – class members. See, e.g., Defendants' Opposition (Doc. #1321) at 20, 26 (defendants' expert confirms that requiring ATC at retail will cause price of fuel to increase with no countervailing benefit); Expert Report Of Kevin Murphy, Defendants' Exhibit 3 (Doc. #1343-4) filed September 30, 2009 at 19-20. Under these circumstances, the Court finds that defendants will adequately represent the countervailing position of class members who oppose implementation of ATC at retail. See, e.g., Curley v. Brignoli, Curley & Roberts Assoc., 915 F.2d 81, 86 (2d Cir. 1990); Horton, 690 F.2d at 487; Dierks v. Thompson, 414 F.2d 453, 456-57 (1st Cir. 1969); Groover v. Michelin N. Am., Inc., 192 F.R.D. 305, 306-07 (M.D. Ala. 2000); Reese, 209 F.R.D. at 233; Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n, 192 F.R.D. 568, 574 (W.D. Mich. 1999); Messier v. Southbury Training Sch., 183 F.R.D. 350, 358 (D. Conn. 1998); Wyatt v. Poundstone, 169 F.R.D. 155, 162 (M.D. Ala. 1995). Accordingly, plaintiffs have satisfied the adequacy of representation requirement of Rule 23(a)(4).[21]

---

[21]     Defendants assert that hypothetical purchasers who regularly buy fuel at colder temperatures would object to ATC at retail. See Defendants' Opposition (Doc. #1321) at 26-27. Speculative conflicts do not negate adequacy of representation under Rule 23(a)(4). See Allen v. Holiday Universal, 249 F.R.D. 166, 181 (E.D. Pa. 2008). In Allen, the court noted as follows:

(continued...)

**B.     Rule 23(b) Requirements**

In addition to meeting the requirements of Rule 23(a), plaintiffs must show compliance with one of three qualifying tests under Rule 23(b) to determine whether a class action may be maintained.  Here, plaintiffs seek to certify a class under subsections (b)(2) and (b)(3).  Under Rule 23(b)(2), plaintiffs seek class-wide injunctive relief which requires defendants to install temperature correcting equipment on their retail motor fuel dispensing devices and to post conspicuous notices to consumers regarding the effect of temperature expansion on the energy content of motor fuel.  See Complaint (Doc. #1) filed December 29, 2006 in Case No. 06-2582 and Complaint (Doc. #1) filed January 31, 2007 in Case No. 07-2053.[22]  Defendants assert that (1)

---

[21](...continued)
> If, in every putative class action, courts were to speculate as to whether each individual class member wished to pursue the lawsuit, and if such speculation sufficed to negate the adequacy of the named representatives, the class active device would rapidly become extinct.

Id. at 182.

[22]     In their motion for class certification, plaintiffs state that the Court may award any of the following injunctive relief: (1) enjoining defendants from selling motor fuel at temperatures in excess of 60 degrees Fahrenheit at prices not adjusted to account for temperature expansion; (2) requiring defendants to disclose what the price of a gallon of motor fuel would be if it were adjusted to the equivalent of a standard U.S. petroleum gallon (i.e. a gallon at 60 degrees Fahrenheit); (3) requiring defendants to disclose the temperature of motor fuel sold in Kansas; (4) requiring defendants to disclose that they are not selling motor fuel in fungible, industry-standard units and that warmer fuel has less energy content than a U.S. petroleum gallon; (5) enjoining defendants from collecting excess taxes on sales of motor fuel at temperatures exceeding 60 degrees Fahrenheit; and (6) enjoining defendants from exerting coercive pressure and undue influence on ATC pump manufacturers and those who seek to use them.  See Plaintiffs' Memorandum (Doc. #1106) at 18-19.
Defendants assert that plaintiffs' motion includes requests for injunctive relief which plaintiffs did not include in their complaints and that the Court should not consider them because the time to amend the complaints has passed.  See Defendants' Opposition (Doc. #1321) at 51-52. The parties have not fully briefed issues regarding the type of injunctive relief which plaintiffs may recover and the Court makes no ruling in this regard.  In any event, whether plaintiffs may seek additional injunctive relief is not material to the Court's ruling herein.

plaintiffs cannot meet the requirements of Rule 23(b)(2); and (2) class certification under Rule 23(b)(2) is improper because plaintiffs predominantly seek money damages.

### 1.    Rule 23(b)(2) Requirements

Rule 23(b)(2) provides that an action may be maintained as a class action if the requirements of Rule 23(a) are met and the party opposing certification has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole.  See Fed. R. Civ. P. 23(b)(2).[23]  By its terms, Rule 23(b)(2) imposes two independent but related requirements.  First, plaintiffs must show that defendants' actions or inactions are based on "grounds generally applicable to all class members."  Shook II, 543 F.3d at 604.  Second, plaintiffs must demonstrate that the requested injunctive relief is "appropriate for the class as a whole."  Id.  Together, the requirements demand a certain cohesiveness among class members with respect to their injuries such that (1) the requested injunction will satisfy the requirements of Rule 65(d); and (2) class members' injuries are sufficiently similar that they can be remedied in a single injunction without differentiating among class members.  See Stricklin, 594 F.3d at 1199-1200.

To meet the first requirement of Rule 23(b)(2), plaintiffs must show that defendants' actions or inactions are based on grounds which apply generally to all class members.  Plaintiffs assert that defendants have acted uniformly with respect to all class members by, inter alia, (1) selling motor

---

[23]    Rule 23(b)(2) states that a class action may be maintained if Rule 23(a) is satisfied and if:

the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Rule 23(b)(2), Fed. R. Civ. P.

24

fuel above 60 degrees Fahrenheit without adjusting to temperature; (2) measuring motor fuel delivered at retail by a non-standard, non-temperature-adjusted gallon; (3) collecting excessive reimbursement from retail customers to recoup their costs for fuel taxes paid;[24] and (4) conspiring in said acts and in resisting attempts to implement ATC for retail motor fuel.  See Motion For Class Certification (Doc. #1106) at 17.  These allegations clearly involve conduct by defendants which applies generally to all class members.  Accordingly, plaintiffs have satisfied the first requirement of Rule 23(b)(2).

To meet the second requirement, plaintiffs must show that the requested injunctive relief is appropriate for the class as a whole.  Plaintiffs assert that injunctive relief is appropriate because it is authorized by law and will provide relief to the class as a whole.  See Motion For Class Certification (Doc. #1106) at 18-19.  Defendants disagree.  They assert that injunctive relief is not appropriate because the proposed class lacks cohesiveness and would be unmanageable. See Defendants' Opposition (Doc. #1321) at 50-51.

Defendants assert that the proposed class lacks cohesiveness because several class members oppose ATC at retail.[25]  See id. at 51.  To satisfy the cohesiveness requirement of Rule 23(b)(2), the injuries sustained by class members must be sufficiently similar so they can be addressed in a single

---

[24]     Defendants assert that plaintiffs' so-called "tax claims" are improper because their complaints did not assert a claim based on fuel tax overpayments.  See Defendants' Opposition (Doc. #1321) at 35 n.37.  Plaintiffs respond that tax overpayment is included generally in their unjust enrichment claims, as an alternative damage methodology regarding the way in which defendants have over-reimbursed themselves.  See Plaintiffs' Reply (Doc. #1526) at 6-7.  The parties have not fully briefed this issue and the Court makes no ruling in this regard.  In any event, whether the so-called tax claims are properly in the case is not material to the Court's ruling herein.

[25]     As discussed above, it appears that some class members may oppose ATC at retail because they believe it will result in higher fuel prices with no corresponding benefit to class members.

injunction which need not differentiate between class members.  See Vallerio, 554 F.3d at 1259.

Here, plaintiffs contend that class members suffered the same injury as a result of the same conduct

by defendants, i.e. that class members paid more and/or received less fuel because defendants did

not adjust the price or amount of fuel dispensed to account for temperature expansion.  Their claims

do not involve varying circumstances which indicate that equitable relief would not apply uniformly

to class members.  Cf. id. at 1267 (if equitable relief not uniformly applicable and time-consuming

inquiry into individual circumstances required, little gained from class certification).  Defendants

do not contend that circumstances vary among individual class members, so that the requested

injunctive relief would not apply uniformly to the class.  Rather, defendants assert that class

members *differ in opinion* as to whether they would benefit from the requested injunctive relief.

This issue goes directly to the merits of plaintiffs' claim for injunctive relief.  It does not

demonstrate lack of cohesiveness with respect to class member injuries.[26]

On this record, the Court can conceive of an injunction which will satisfy the requirements

of Rule 65(d) and Rule 23(b)(2). Specifically, the Court believes that it could craft the requested

injunction – to require defendants to implement ATC at retail motor fuel sales and/or and post

conspicuous notices regarding the effect of temperature expansion on motor fuel – in specific terms

which  describe  in  reasonable  detail  the  act  or  acts  restrained  or  required.    See

Fed. R. Civ. P. 65(d)(1).  Moreover, as discussed above, the requested injunctive relief satisfies the

requirements of Rule 23(b)(2).  Accordingly, the Court concludes that plaintiffs have satisfied the

---

[26]      Defendants assert that the requested injunctive relief would cause confusion among
class members because this case does not involve all service stations in Kansas and therefore not all
service stations would implement ATC.  See Defendants' Opposition (Doc. #1321) at 51.  Again,
this argument goes to the merits of plaintiffs' claim for injunctive relief.  It does not demonstrate
lack of cohesiveness with respect to class member injuries.

requirements of Rule 23(b)(2).

Defendants assert that the proposed class would be unmanageable because the requested injunctive relief would require individual inquiries into factors regarding (1) individual purchasing behavior of each class member; (2) the temperature of fuel at thousands of retail stations; and (3) retailers' individual pricing decisions, including how the per-unit retail price would change if ATC were required. See Defendants' Opposition (Doc. #1321) at 51. The Court disagrees. As discussed above, plaintiffs allege that class members have suffered similar injuries caused by the same conduct by defendants. To obtain the requested injunctive relief, plaintiffs will not need to prove individual circumstances regarding each class member. Accordingly, manageability concerns do not preclude certification under Rule 23(b)(2).

### 2. Whether Certification Under Rule 23(b)(2) Is Improper Because Plaintiffs Predominantly Seek Money Damages

Defendants assert that class certification under Rule 23(b)(2) is improper because plaintiffs predominantly seek money damages. See Defendants' Opposition (Doc. #1321) at 49-50. According to the Advisory Committee Notes to Rule 23, class certification under subdivision (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Advisory Committee Notes regarding 1966 amendments to Fed. R. Civ. P. 23. Defendants assert that because plaintiffs seek hundreds of millions of dollars in damages, their claim for damages is not merely incidental to injunctive relief. See Defendants' Opposition (Doc. #1321) at 49.[27]

---

[27] Defendants assert that the Court cannot grant the requested injunctive relief because the State of Kansas is a necessary party which plaintiffs have not joined. See Defendants' Opposition (Doc. #1321) at 50. Defendants have not filed a motion on the issue and the Court makes no ruling in this regard. Moreover, the issue goes to the merits of plaintiffs' claims and does

(continued...)

The courts have not spoken in one voice on the extent to which a court may certify a Rule 23(b)(2) class where plaintiffs also seek monetary relief.  Some courts have held that Rule 23(b)(2) certification is only appropriate if the request for monetary relief is incidental or ancillary to a primary prayer for injunctive or declaratory relief.  See, e.g., Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001); Allison v. Citgo Petrol. Corp., 151 F.3d 402, 411-15 (5th Cir. 1998) (monetary relief predominates and precludes Rule 23(b)(2) certification unless it is incidental to and flows directly from requested injunctive or declaratory relief and does not depend in significant way on intangible, subjective differences between class members' individual circumstances).  Other courts have found that where plaintiffs seek Rule 23(b)(2) certification on a claim which involves both injunctive relief and non-incidental monetary damages, the court should determine whether Rule 23(b)(2) certification is important in light of the relative importance of the remedies sought, given all the facts and circumstances of the case.  See Robinson v. Metro-N. Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001); see also Dukes v. Wal-Mart Stores, Inc., — F.3d —, Case Nos. 04-16688, 04-16720, 2010 WL 1644259, at *36 (9th Cir. April 26, 2010) (to determine whether monetary relief predominates, court should consider on case-by-case basis objective effect of relief sought).  The Tenth Circuit has found that where plaintiffs principally seek monetary relief, district courts do not abuse their discretion by refusing to certify a class under Rule 23(b)(2).  See Fincher ex rel. Fincher v. Prudential Prop. & Cas. Ins. Co., Case Nos. 08-1109 and 08-1159, 2010 WL 1544361, at *12-13 (10th Cir. April 20, 2010); Monreal v. Potter, 367 F.3d 1224, 1236-37 (10th Cir. 2004); Boughton v. Cotter Corp., 65 F.3d 823, 827 (10th Cir. 1995).  The Tenth Circuit has not addressed, however, whether certification under Rule 23(b)(2) is allowable where plaintiffs assert

---

[27](...continued)
not implicate of Rule 23.

substantial claims for both injunctive and monetary relief.

On the facts of this case, the Court believes that the Tenth Circuit would allow certification under Rule 23(b)(2).  As discussed below, the Court is adopting a "hybrid" approach under which it will certify a Rule 23(b)(2) class for injunctive relief and consider at a later date whether to certify a Rule 23(b)(3) class for damages.  Thus the Rule 23(b)(2) class will not include claims for monetary relief which will predominate over claims for injunctive relief.  See Dukes, 2010 WL 1644259, at *40.  Moreover, on the facts of this case, plaintiffs' request for monetary damages does not predominate.  Although the total amount of claimed damages is high, the proposed class includes over a million class members, so the amount of monetary damages claimed for each class member is relatively low.  See id. at *36 (comparison between amount of damages and importance of injunctive and declaratory relief for each plaintiff far more relevant to establishing predominance than total size of potential monetary recovery for whole class); Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 434 (S.D.N.Y. 2009).  In addition, if plaintiffs' allegations are true, the requested injunctive relief will provide considerable positive value to class members.  See Robinson, 267 F.3d at 164 (court may certify Rule 23(b)(2) class if positive value of injunctive relief predominates and class treatment would be efficient and manageable and achieve appreciable measure of judicial economy); Jermyn, 256 F.R.D. at 434.  Moreover, defendants' claim that plaintiffs have suffered little or no monetary damage cuts against their assertion that this lawsuit is primarily about money damages.  See Schreiber v. NCAA, 167 F.R.D. 169, 176 (D. Kan. 1996).  Indeed, with regard to claims against Costco Wholesale Corporation, plaintiffs have agreed to forego damages and settle their claims for injunctive relief and the possibility of attorneys' fees.  See In re Motor Fuel

29

Temperature Sales Practices Litg., 258 F.R.D. 671 (D. Kan. 2009).[28]  This fact alone suggests that

the requested injunctive relief predominates.  On the facts of this case, the Court finds that plaintiffs'

claims for monetary damages do not preclude class certification under Rule 23(b)(2).  See In re

Universal Serv. Fund Tel. Billing Practices Litig., 219 F.R.D. 661, 680 (D. Kan. 2004) (certifying

Rule 23(b)(2) class where monetary damages claim significant but injunctive relief claim also

potentially significant); cf. In re Urethane Antitrust Litig., 237 F.R.D. 440, 453-54 (D. Kan. 2006)

(declining Rule 23(b)(2) certification where claim for injunctive relief dubious and court doubted

that plaintiffs would pursue case without monetary damages claim).[29]

---

[28]    On August 13, 2009, the Court granted preliminary approval of the proposed settlement and preliminarily certified a settlement class.  In re Motor Fuel, 258 F.R.D. at 679-81. On April 1, 2010, the Court held a hearing on final approval of the settlement.  That matter remains under advisement.  In light of the pending settlement, plaintiffs' motion does not seek class certification on plaintiffs' claims against Costco.  See Plaintiffs' Reply (Doc. #1526) at 6 n.30.

[29]    The Court agrees with the following statement from Newburg On Class Actions:

When the parties dispute which form of relief is predominant with respect to the appropriateness of Rule 23(b)(2) for any class certification, it is counterproductive for the court to expend time to try to resolve this largely discretionary question, which does not address the merits of the case.  Rather, the court should conclude that when the Rule 23(a) prerequisites are satisfied and declaratory or injunctive relief is sought as an integral part of the relief for the class, then Rule 23(b)(2) is applicable regardless of the presence or dominance of additional prayers for damages relief for class members.  With this approach, the court has at least four options for class certification.  First, under Rule 23(c)(4)(A), the court could limit the Rule 23(b)(2) certification to certain issues only.  Second, the court could certify the injunction claims under Rule 23(b)(2) and the damages claims under Rule 23(b)(3).  Third, the court could certify the entire class initially under Rule 23(b)(2), bifurcate the trial so that the defendant's liability potentially for both forms of relief is determined initially, and reconsider the class certification category if the plaintiffs and the class are successful at the liability stage. . . . [Fourth,] the court could certify special claims or issues under Rule 23(b)(2) and treat all the nondesignated claims or issues as individual or incidental ones to be determined separately after liability to the class has been adjudicated.

(continued...)

### C.        Scope Of Class Certification

As noted, plaintiffs also seek to certify a class for damages under Rule 23(b)(3). Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members," and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

With respect to plaintiffs' request for certification under Rule 23(b)(3), defendants raise substantial concerns regarding whether individual issues predominate over common issues of law and fact and therefore preclude Rule 23(b)(3)certification.  See Defendants' Opposition (Doc. #1321) at 30-45.  The Court shares many of these concerns.  In particular, the Court questions whether plaintiffs can establish common methods to prove individual class member damages, including the temperature of dispensed fuel with respect to individual class member transactions.[30]

---

[29](...continued)

2 Newburg On Class Actions § 4:14 (4th ed.).

[30]       Plaintiffs assert that their economic expert, Dr. Andrew Safir, can determine dispensed fuel temperature based on ambient temperature and storage tank temperature.  See Plaintiffs' Reply (Doc. #1526) at 16.  Defendants contend that Dr. Safir's report is procedurally improper and that his models are flawed and unreliable.  See Reply Memorandum Of Law In Support Of Motion To Exclude Testimony Of Andrew Safir (Doc. #1568) filed January 22, 2010 at 14-23.  The parties disagree on the correct standard for determining the admissibility of expert

(continued...)

Under these circumstances, the Court finds it appropriate to bifurcate the damage portion of plaintiffs' claims and certify a class under Rule 23(b)(2) with regard to the liability and injunctive aspects of plaintiffs' claims.  Pursuant to Rule 23(c)(4), the Court may certify a class as to particular issues.[31]  In <u>Robinson</u>, the Second Circuit found that district courts should take full advantage of this provision and certify separate issues to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies.  267 F.3d at 167.  Here, litigating liability and injunctive relief for the class as a whole would reduce the range of issues in dispute and promote judicial economy.  This will allow the Court to adjudicate the highly cohesive Rule 23(b)(2) phase of the proceeding, including liability, without the cost and time required for the class notice and opt-out process required under Rule 23(b)(3).  <u>See</u> <u>Dukes</u>, 2010 WL 1644259, at *40.  If plaintiffs succeed on the liability and injunctive relief portions of their claims, the Court will consider whether to certify a class for damages under Rule 23(b)(3).

### D.   Class Definition

Defendants assert that the proposed class is not ascertainable.  As noted, plaintiffs seek to certify the following class:

---

[30](...continued)

reports for class certification purposes.  <u>Compare</u> <u>Motion To Certify Class</u> (Doc. #1106) (plaintiffs need only submit plausible methodology at class certification) <u>and</u> <u>Plaintiffs' Response To Motion To Exclude Testimony Of Andrew Safir</u> (Doc. #1518) at 5 (court need only determine whether expert's methodologies show some hallmarks of reliability), <u>with</u> <u>Defendants' Opposition</u> (Doc. #1321) at 24 (court should weigh conflicting expert testimony at class certification stage).

[31]      Rule 23(c)(4) states as follows:

(4) Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

Fed. R. Civ. P. 23(c)(4).

> All individuals and entities that, at any time between January 1, 2001 and the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants.

Motion For Class Certification (Doc. #1106) at 8.  Defendants assert that the proposed class is not administratively feasible because to determine class membership, the Court would need to make individual inquiries regarding the temperature of fuel which each class member purchased.  See Defendants' Opposition (Doc. #1321) at 29-30.

The Tenth Circuit has ruled that difficulties in identifying class members do not defeat class certification under Rule 23(b)(2).  See Shook II, 543 F.3d at 611 (citing Shook I, 386 F.3d at 972).  Unlike class certification under subsection (b)(3), Rule 23 does not impose mandatory notice and opt-out requirements for class certification under subsection (b)(2).  See id.  Thus, concerns relevant to providing notice – such as identifiability – are not properly part of the Rule 23(b)(2) analysis.  See id.  Accordingly, defendants' argument that the proposed class is not ascertainable does not defeat class certification under Rule 23(b)(2).[32]

**IT IS THEREFORE ORDERED** that Kansas Plaintiffs' Motion For Class Certification And Memorandum In Support (Doc. #1106) filed June 1, 2009 be and hereby is **SUSTAINED in**

---

[32]    In anticipation of defendants' argument, plaintiffs propose the following alternative class definition:

> All individuals and entities who purchased non-temperature adjusted motor fuel between January 1, 2001 and the present in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants.

Motion For Class Certification (Doc. #1106) at 10.  The alternative class includes *all* individuals and entities who purchased non-temperature adjusted fuel, as opposed to all individuals and entities who purchased non-temperature adjusted fuel *at a temperature greater than 60 degrees Fahrenheit*.  Because the Court finds that unascertainability is not an obstacle to Rule 23(b)(2) certification, it does not consider plaintiffs' request for an alternate class definition.

**part.**  The Court grants plaintiffs' motion as to the liability and injunctive aspects of plaintiffs' claims as to certain defendants.  Specifically, the Court finds that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(2) as to the liability and injunctive aspects of plaintiffs' claims as set forth below.

In <u>Wilson v. Ampride, Inc.</u>, Case No. 06-2582, the Court certifies a Rule 23(b)(2) class as to the liability and injunctive aspects of plaintiffs' claims for unjust enrichment and violation of the KCPA against the following defendants: BP Products North America, Inc. a/k/a BP Corporation North America, Inc., Casey's General Stores, Inc., Chevron USA, Inc., Circle K Stores, Inc., CITGO Petroleum Corporation, ConocoPhillips Company, 7-Eleven, Inc., Shell Oil Company, Valero Marketing and Supply Company and Wal-Mart Stores, Inc. d/b/a Sam's Club.

In addition, the Court certifies a Rule 23(b)(2) class as to the liability and injunctive aspects of plaintiffs' claims civil conspiracy against the following defendants: BP Products North America, Inc. a/k/a BP Corporation North America, Inc., Chevron USA, Inc., Circle K Stores, Inc., ConocoPhillips Company and Shell Oil Company.

The Court does not certify a class on plaintiffs' claims against Costco Wholesale Corporation, Flying J, Inc. or Petro Stopping Centers, LP.

In <u>American Fiber & Cabling, LLC v. BP West Coast Products, LLC</u>, Case No. 07-2053, the Court certifies a Rule 23(b)(2) class as to the liability and injunctive aspects of plaintiffs' claims for unjust enrichment and violation of the KCPA against the following defendants: ConocoPhillips Company, Kum & Go, LC, Quiktrip Corp., Shell Oil Company and Valero Marketing and Supply Company.

In addition, the Court certifies a Rule 23(b)(2) class as to the liability and injunctive aspects

34

of plaintiffs' civil conspiracy claims against the following defendants: ConocoPhillips Company, Kum & Go, LC, Quiktrip Corp. and Shell Oil Company.

The Court does not certify a class on plaintiffs' claims against BP West Coast Products, LLC, Casey's General Stores, Inc., Chevron USA, Inc., Kroger Co. and 7-Eleven, Inc.

**IT IS FURTHER ORDERED** that as to the liability and injunctive aspects of plaintiffs' claims for unjust enrichment and civil conspiracy, the Court certifies a class consisting of the following:

> All individuals and entities that, at any time between January 1, 2001 and the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants.

Specifically excluded from the class are (a) federal judges who have presided over this case, (b) persons employed by defendants and (c) affiliates of defendants.

**IT IS FURTHER ORDERED** that as to the liability and injunctive aspects of plaintiffs' claims for violation of the KCPA, the Court certifies a subclass consisting of the following:

> All individuals, sole proprietors and family partnerships that, at any time between January 1, 2001 and the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants.

Specifically excluded from the subclass are (a) federal judges who have presided over this case, (b) persons employed by defendants and (c) affiliates of defendants.

**IT IS FURTHER ORDERED** that in <u>Wilson v. Ampride, Inc.</u>, Case No. 06-2582, Zachary Wilson and Wonderland Miracle Carnival Company are hereby designated as class representatives.

**IT IS FURTHER ORDERED** that in <u>American Fiber & Cabling, LLC v. BP West Coast Products, LLC</u>, Case No. 07-2053, Mathew Cook is hereby designated as class representative.

**IT IS FURTHER ORDERED** that the Court appoints the following counsel for the Kansas classes: Robert A. Horn of Horn Alward & Bandy, LLC in Kansas City, Missouri; Thomas V. Bender of Walters Bender Strohbehn & Vaughan, P.C. in Kansas City, Missouri; and George A. Barton of the Law Offices of George A. Barton, P.C. in Kansas City, Missouri.

**IT IS FURTHER ORDERED** that Defendants' Motion To Exclude Testimony Of Andrew Safir (Doc. #1308) filed September 30, 2009 be and hereby is **OVERRULED without prejudice.** Defendants may re-assert their arguments if and when the Court considers whether to certify a class as to damages under Rule 23(b)(3).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Leave To File A Sur-Reply In Opposition To Motion To Exclude Testimony Of Andrew Safir (Doc. #1575) filed February 17, 2010 be and hereby is **OVERRULED as moot.**

**IT IS FURTHER ORDERED** that on or before **June 18, 2010,** the parties show cause in writing why the Court should not consolidate the Kansas cases, Wilson v. Ampride, Inc., Case No. 06-2582 and American Fiber & Cabling, LLC v. BP West Coast Products, LLC, Case No. 07-2053, for all purposes.

Dated this 28th day of May, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United Stated District Judge