# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| (This Document Relates to All Cases) | ) | **Case No. 07-MD-1840-KHV** |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiffs bring putative class action claims for damages and injunctive relief against motor fuel retailers in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia, Puerto Rico and Guam. See Second Consolidated Amended Complaint (Doc. #652) filed December 1, 2008 ¶ 11. Plaintiffs claim that because defendants sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion, they are liable under state law theories which include breach of contract, breach of warranty, fraud and consumer protection.[1]  On August 13, 2009, the Court entered an order which granted conditional class certification and preliminary approval of a proposed settlement with Costco

---

[1]     Following a transfer order of the Judicial Panel on Multidistrict Litigation ("JPML"), the Court has jurisdiction over consolidated pretrial proceedings in these actions. See 28 U.S.C. § 1407; Doc. #1 filed June 22, 2007.

The second consolidated amended complaint asserts claims based on motor fuel sales in Delaware and Puerto Rico, but the Court cannot locate a constituent case which asserts such claims. One MDL case asserts claims based on motor fuel sales in the Virgin Islands. See Bryan v. Esso Virgin Islands, Inc., Case No. 08-2517. The second consolidated amended complaint, however, does not mention such claims. See Second Consolidated Amended Complaint (Doc. #652) filed December 1, 2008 ¶ 11.

Wholesale Corporation ("Costco"), a defendant in 20 of the MDL cases.[2] See Memorandum And

---

[2]        Costco is a defendant in the following cases: Conlin v. Chevron USA, Inc., Case No. 07-2359-KHV (civil conspiracy, unjust enrichment and consumer protection claims under Tennessee law); Wash v. Chevron USA, Inc., Case No. 07-2361-KHV (civil conspiracy, breach of duty of good faith and fair dealing and unjust enrichment claims under Mississippi law); Kohut v. Chevron USA, Inc., Case No. 07-2371-KHV (unjust enrichment, deceptive trade practice and breach of warranty claims under Nevada law); Sagalyn v. Chevron USA, Inc., Case No. 07-2374-KHV (civil conspiracy, breach of duty of good faith and fair dealing, consumer protection and unjust enrichment claims under Maryland law); Redstone v. Chevron USA, Inc., Case No. 07-2375-KHV (civil conspiracy, unjust enrichment and unfair trade practice claims under Florida law); Aguirre v. BP W. Coast Prods., LLC, Case No. 07-2391-KHV (consumer fraud, unfair trade practice and breach of contract claims under California, New Mexico, Arizona, Nevada and Texas law); Couch v. BP Prods. N. Am. Inc., Case No. 07-2397-KHV (consumer protection, deceptive trade practice, breach of contract and unjust enrichment claims under Alabama, Mississippi, Nevada and Texas law); Graham v. Chevron USA, Inc., 07-2399-KHV (civil conspiracy, breach of duty of good faith and fair dealing, consumer protection and unjust enrichment claims under Virginia law); Lerner v. Costco Wholesale Corp., Case No. 07-2405-KHV (false and misleading representation under the Lanham Act, 15 U.S.C. § 1125(a), and consumer fraud, negligent misrepresentation, fraudulent misrepresentation, breach of duty of good faith and fair dealing, civil conspiracy and unjust enrichment claims under California law); Cook v. Hess Corp., Case No. 07-2492-KHV (deceptive trade practice, breach of contract, fraudulent concealment, conversion and unjust enrichment claims under Alabama law); Wyatt v. BP W. Coast Prods., LLC, Case No. 07-2507-KHV (unjust enrichment and consumer fraud claims under California law); Jenkins v. BP Prods. N. Am. Inc., Case No. 07-2508-KHV (unjust enrichment, deceptive trade practice and breach of warranty claims under Utah law); Korleski v. BP Prods. N. Am. Inc., Case No. 07-2531-KHV (consumer protection, breach of contract, unjust enrichment and civil conspiracy claims under South Carolina law); Wilson v. Ampride, Inc., Case No. 06-2582-KHV (civil conspiracy, breach of duty of good faith and fair dealing, consumer protection and unjust enrichment claims under Kansas law); Foster v. BP Prods. N. Am. Inc., Case No. 07-2296-KHV (civil conspiracy,  breach of duty of good faith and fair dealing, consumer protection and unjust enrichment claims under Tennessee law); Vanderbilt v. Ampride, Inc., 07-2281-KHV (civil conspiracy, breach of duty of good faith and fair dealing, consumer protection and unjust enrichment claims under Missouri law); Rushing v. Chevron USA, Inc., Case No. 07-2300-KHV (consumer fraud and breach of contract claims under Alabama, Arizona, Arkansas, California, Florida, Georgia, Louisiana, Mississippi, New Jersey, New Mexico, Nevada, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia and District of Columbia law); Barker v. ConocoPhillips Co., Case No. 07-2345-KHV (civil conspiracy, unjust enrichment, unfair trade practice and consumer fraud claims under Arizona and New Mexico law); Delgado v. Allsup's Convenience Stores, Inc., Case No. 07-2347-KHV (civil conspiracy, breach of duty of good faith and fair dealing, deceptive trade practice and unjust enrichment claims under New Mexico law); Williams v. BP Prods. N. Am. Inc., Case No. 07-2355-KHV (civil conspiracy, breach of duty of good faith and fair dealing, deceptive trade practice and unjust enrichment claims under

(continued...)

Order (Doc. #1273) filed August 13, 2009.  On April 1, 2010, the Court held a hearing regarding

final approval of the settlement.  This matter comes before the Court on Plaintiffs' Motion And

Memorandum In Support Of Final Approval Of Class Action Settlement ("Plaintiff's Motion For

Final Settlement Approval") (Doc. #1620) filed April 1, 2010; Plaintiffs' Motion For Order Striking

Supplemental Suggestions In Support Of Objections To Settlement (Doc. #1634) filed April 15,

2010; Objectors' Opposition To Plaintiffs' Motion For Order Striking Supplemental Suggestions

In Support Of Objections To Settlement, And Objectors' Request For Leave Nunc Pro Tunc To File

Supplemental Suggestions (Doc. #1644) filed April 23, 2010; and Alkon Objectors' Motion To

Strike Plaintiffs' April 1 Briefing, Or, In The Alternative, Strike Declaration Of Dr. Andrew Safir

Under *Daubert*, And Memorandum In Support (Doc. #1665) filed May 5, 2010.  For reasons stated

below, the Court sustains the objectors' motion for leave to file supplemental suggestions and

overrules the other motions.

## I.      Legal Standards

### A.      Class Certification

The determination of class certification is committed to the broad discretion of the trial court.

See Shook v. El Paso County, 386 F.3d 963, 967 (10th Cir. 2004).  In determining the propriety of

a class action, the question is not whether plaintiffs have stated a cause of action or will prevail on

the merits, but whether they meet the requirements of Rule 23, Fed. R. Civ. P.  See id. at 971

(quoting Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982)).  In deciding

whether the proposed class meets the requirements of Rule 23, the Court accepts plaintiffs'

---

[2](...continued)
Alabama law).

substantive allegations as true, though it need not blindly rely on conclusory allegations and may consider the legal and factual issues which the complaint presents.  See Shook, 386 F.3d at 968 (quoting J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)); see also Vallario v. Vandehey, 554 F.3d 1259, 1265 (10th Cir. 2009).  The Court should not pass judgment on the merits of the case, but must conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are met.  DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010).

As the parties seeking class certification, plaintiffs have the burden to prove that the requirements of Rule 23 are satisfied.  See Shook, 386 F.3d at 968; D. Kan. Rule 23.1(d).[3]  In doing so, plaintiffs must first satisfy the prerequisites of Rule 23(a).  To do so, they must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class. See Rule 23(a), Fed. R. Civ. P.[4]  After meeting these requirements, plaintiffs must demonstrate that

---

[3]      D. Kan. Rule 23.1(d) states as follows:

(d) Burden of Proof; Notice.  Any party seeking to maintain a case as a class action bears the burden of presenting an evidentiary basis to the court showing that the action is properly maintainable as such. * * *

D. Kan. Rule 23.1(d).

[4]      Rule 23(a) states as follows:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(continued...)

the proposed class action fits within one of the categories described in Rule 23(b), Fed. R. Civ. P.[5]

Here, plaintiffs seek to proceed under Rule 23(b)(3).  Under that provision, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available

---

[4](...continued)
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[5]      Rule 23(b) states as follows:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In

determining predominance and superiority under Rule 23(b)(3), the Court considers the following

factors:

> (A)   the class members' interests in individually controlling the prosecution or
>        defense of separate actions;
> (B)   the extent and nature of any litigation concerning the controversy already
>        begun by or against class members;
> (C)   the desirability or undesirability of concentrating the litigation of the claims
>        in the particular forum; and
> (D)   the likely difficulties in managing a class action.

Id.  In deciding whether to certify a settlement class, the Court need not inquire whether the case,

if tried, would present difficult management problems under Rule 23(b)(3)(D).  See Amchem Prods.

Inc. v. Windsor, 521 U.S. 591, 620 (1997).  All of the other requirements apply, however, and

demand even heightened attention in the settlement context.  See id.  Such attention is vital because

in the settlement context, the Court generally lacks an opportunity to adjust the class as it becomes

informed by the proceedings as they unfold.  See id.

## B.    Settlement Fairness

Under Rule 23(e), claims of a certified class may be settled, compromised or dismissed only

with court approval.  Fed. R. Civ. P. 23(e).[6]  The Court may approve a settlement upon finding that

---

[6]      Rule 23(e) states as follows:

(e) Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses
of a certified class may be settled, voluntarily dismissed, or compromised only with
the court's approval.  The following procedures apply to a proposed settlement,
voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all class members
> who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may approve it only
> after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any

(continued...)

it is fair, reasonable and adequate.  See Fed. R. Civ. P. 23(e)(2).  In evaluating a proposed

settlement, the Court's main concern is to ensure that the rights of passive class members are not

jeopardized.  See 7B Charles Alan Wright, et al., Federal Practice & Procedure § 1797. 1, at 79 (3d

ed. 2005); see also Amchem Prods., 521 U.S. at 623 (Rule 23(e) inquiry protects unnamed class

members from unjust or unfair settlements affecting their rights when representatives become

fainthearted before action is adjudicated or are able to secure satisfaction of individual claims by

compromise).  It is generally accepted that where settlement precedes class certification, e.g.,

approval for settlement and certification are sought simultaneously, as here, district courts must be

"even more scrupulous than usual" when examining the fairness of the proposed settlement.  In re

Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004); accord Hanlon v. Chrysler

Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); see also Manual for Complex Litigation, Fourth §

21.612, at 313 (2004) ("Class actions certified solely for settlement, particularly early in the case,

sometimes make meaningful judicial review more difficult and more important.  Courts have held

that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than

approval of settlements reached only after class certification has been litigated through the adversary

process.").

---

[6](...continued)
       agreement made in connection with the proposal.
       (4) If the class action was previously certified under Rule 23(b)(3), the court
       may refuse to approve a settlement unless it affords a new opportunity to
       request exclusion to individual class members who had an earlier opportunity
       to request exclusion but did not do so.
       (5) Any class member may object to the proposal if it requires court approval
       under this subdivision (e); the objection may be withdrawn only with the
       court's approval.

Fed. R. Civ. P. 23(e).

In determining whether the settlement is fair, reasonable and adequate, the Court should consider the following factors:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002); Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984).   The proponents of the settlement are responsible for providing sufficient evidence to support a conclusion that the settlement is fair.  See Gottlieb v. Wiles, 11 F.3d 1004, 1015 (10th Cir. 1993), overruled in part on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002); In re Sprint Corp. ERISA Litig., 443 F. Supp.2d 1249, 1256 (D. Kan. 2006).

## II.     Factual Background

On April 22, 2009, class representatives Zachary Wilson, Joanne Korleski, Phyllis Lerner, Herb Glaser and James Graham entered into a settlement agreement with Costco.  See Stipulation Of Class Action Settlement Agreement And Release ("Settlement Agreement"), Exhibit 1 to Unopposed Motion Of Plaintiffs For Order Conditionally Certifying Settlement Class, Preliminarily Approving Class Action Settlement, Directing Distribution Of Class Notice, Setting Hearing For Final Approval Of Class Action Settlement And Appointing Class Counsel ("Motion For Preliminary Settlement Approval") (Doc. #1015) filed April 22, 2009.  Wilson is class representative in Wilson v. Ampride, Inc., Case No. 06-2582-KHV, which asserts Kansas claims.  Korleski is class representative in Korleski v. BP Prods. N. Am. Inc., Case No. 07-2531-KHV, which asserts South Carolina claims.  Lerner and Glaser are class representatives in Lerner v. Costco Wholesale

-8-

Corp., Case No. 07-2405-KHV, which asserts Lanham Act and California claims.  Graham is class

representative in Graham v. Chevron USA, Inc., Case No. 07-2399-KHV, which asserts Virginia

claims.

### A.    Terms Of Proposed Settlement

Plaintiffs allege that Costco sold motor fuel without adjusting for temperature in

28 jurisdictions:  Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana,

Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico,

North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah,

Virginia, the District of Columbia and Guam.  The proposed settlement defines those states as the

"States at Issue."[7]  Settlement Agreement ¶ 1.17.  Of the 28 States at Issue, Costco does not sell

motor fuel in seven jurisdictions:  Arkansas, Delaware, Louisiana, Mississippi, Oklahoma, District

of Columbia and Guam.  In the remaining 21 jurisdictions, Costco sells motor fuel without adjusting

for temperature.  See id.  In 14 of those 21 jurisdictions – Alabama, Arizona, California, Florida,

Georgia, Kentucky, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Utah

and Virginia – Costco purchases fuel on a temperature adjusted basis.  See id.  In the other seven

jurisdictions – Indiana, Kansas, Maryland, Missouri, New Jersey, Oregon and Pennsylvania – Costco

does not purchase fuel on a temperature adjusted basis.  See id.

For settlement purposes only, the parties agree that the Court may certify the following class:

All residents of the States at Issue who, between January 1, 2001 and the date of this
Agreement, purchased motor fuel from Costco at a temperature above 60 degrees
Fahrenheit, excluding: (a) officers and employees of Costco or its affiliates; and

---

[7]    The proposed settlement does not mention motor fuel sales in Puerto Rico or the
Virgin Islands.  As noted, the Court cannot locate a constituent case which involves motor fuel sales
in Puerto Rico.  Costco is not a defendant in the case which involves motor fuel sales in the Virgin
Islands.  See Bryan v. Esso Virgin Islands, Inc., Case No. 08-2517.

(b) the Court, and members of the Court's immediate family.

Settlement Agreement ¶ 2.1.  If the Court does not grant final approval of the settlement, certification of the settlement class will be vacated and the parties will return to their respective positions as if they had never entered into the settlement agreement.  See id. ¶ 2.2.

The settlement provides that within 150 days after the Court enters an order which preliminarily approves the proposed settlement, Costco will communicate notice to settlement class members in substantially the form of Exhibit B to the settlement agreement.  See id. ¶ 3.1.  The notice will direct interested persons to a web site which Costco will maintain for 180 days after the Court enters its order.  See id. ¶ 3.2; Motion For Preliminary Settlement Approval (Doc. #1015) at 20.  The web site will contain the detailed notice which is attached as Exhibit D to the settlement agreement.  See id. ¶ 3.2.  Said notice will describe the class claims and proposed settlement and explain how class members can object to or opt out of the proposed settlement.  See Exhibit D to Settlement Agreement.  If more than 2,500 members opt out, Costco may rescind the settlement agreement.  See id. ¶ 3.3.2.

In exchange for release of settlement class claims, Costco agrees to the following: (1) within five years, at existing retail locations in Alabama, Arizona, California, Florida, Georgia, Kentucky, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Utah and Virginia (the 14 "conversion states"), Costco will convert all motor fuel dispensers to automatic temperature compensation ("ATC") dispensers;[8] (2) for new retail stations in the conversion states, Costco will install ATC dispensers; and (3) if Costco begins to purchase motor fuel on a temperature adjusted basis in the remaining seven jurisdictions – Indiana, Kansas, Maryland, Missouri, New Jersey,

---

[8]     The agreement sets forth detailed requirements regarding the number of dispensers which Costco must install by the end of each year.  See id. ¶ 4.4.

Oregon and Pennsylvania (the "non-conversion states") – it will convert its motor fuel dispensers in those states to ATC dispensers. See id. ¶¶ 4.2-4.3. If any of the conversion states require regulatory approval to convert motor fuel dispensers to ATC dispensers, class counsel shall take all reasonable steps to seek such approval. See id. ¶ 4.6. If any conversion state denies regulatory approval, retail stations in that state will be excluded from the settlement. See id.[9]

If class representatives and class counsel enter into any agreement to resolve any claim concerning ATC which is materially more favorable to Costco than the settlement agreement with Costco, at any time before Costco completes installation of ATC dispensers, Costco may adopt the materially more favorable terms in place of its obligations under the settlement agreement. See id. ¶ 4.7. Also, if Costco loses a commercially material amount of its motor fuel supply and/or experiences commercially material increases in price of motor fuel in a conversion state as a result of the settlement agreement, Costco may elect to rescind the settlement agreement as to that state. See id. ¶ 4.8.

Class counsel may apply to the Court for an award of fees and costs in this action.[10] Costco agrees to pay any fees and costs which the Court awards. Such payment will not reduce any of Costco's obligations to the settlement class. See id. ¶ 7.1.

Class counsel will ask the Court to provide an incentive fee of $2,500 to class representatives Wilson, Lerner, Glaser, Graham and Korleski. Any such award will be deducted from amounts

---

[9]     Costco is not liable for any breach of the agreement which results from acts or omissions of a third party or other cause beyond Costco's control. See id. ¶ 4.5.

[10]     The settlement agreement does not provide a cap for attorneys' fees. See Settlement Agreement ¶ 7.1. The detailed notice on Costco's website, however, states that class counsel's fee request will not exceed $10 million. See Exhibit D to Motion For Preliminary Settlement Approval (Doc. #1015) ¶ 9.

awarded for class counsel fees and costs.  See id. ¶ 7.4.

The Court will have continuing jurisdiction to enforce the settlement terms and final judgment.  The parties will submit to the Court's jurisdiction for purposes of implementing and enforcing terms of the settlement agreement.  See id. ¶ 8.1.

The effective date of the agreement is the last date on which all of the following have occurred: the Court enters final judgment approving the settlement in a manner which is substantially consistent with the terms and intent of the agreement and either (1) 35 days have passed after service on the parties and objectors, if any; or (2) if an appeal is taken or the time to appeal is extended, the date on which all appellate rights with respect to final judgment have expired.  See id. ¶ 1.8.

**B.      Conditional Class Certification And Preliminary Court Approval Of Proposed Settlement**

On April 22, 2009, plaintiffs filed a motion for conditional class certification and preliminary approval of the proposed settlement.  See Doc. #1015.  On August 13, 2009, the Court entered an order which granted plaintiffs' motion.  Specifically, the Court conditionally certified a settlement class, preliminarily approved the proposed settlement, appointed settlement class counsel and scheduled a final approval hearing for April 1, 2010.  See Memorandum And Order (Doc. #1273).

**C.      Class Notice And Opt Outs**

On August 27, 2009, the Court approved the following notice to the proposed settlement class:

**TO: All residents of Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia and Guam who purchased gasoline from Costco, between**

-12-

**1/1/01 and 4/22/09**

The Court in In re Motor Fuel Temperature Sales Practices Litigation, Case No. 07-MD 1840 (U.S. Dist. Ct., KS) has preliminarily certified a class comprised of the persons identified above and preliminarily approved a proposed class action settlement. The complaint alleges that Costco (and others) misled consumers by marketing motor fuel at temperatures above 60 degrees Fahrenheit without adjusting for the fuel's temperature. Costco denies any wrongdoing. If the settlement is approved, Costco will install automatic temperature correcting pumps in certain states under certain conditions. Except for the representatives, the class will not receive any payment.

If you are in the class defined above, your rights may be affected by this settlement. If you do NOT want to be bound by a class judgment, the Court will exclude you ONLY if you send a letter by mail stating: "I request that I be excluded from the Settlement in In re Motor Fuel Temperature Sales Practices Litigation, MDL Docket No. 1840." You must also include: (1) your full name and current address; (2) your signature[;] and (3) proof of gasoline purchase from Costco after 1/1/01. You must postmark your exclusion request to [Notice Administrator and Address] **no later than 2/23/10. REQUESTS FOR EXCLUSION THAT ARE NOT POSTMARKED ON OR BEFORE 2/23/10 WILL NOT BE HONORED.**

If you do nothing, you WILL be included in the class and will be bound by the settlement and class judgment. You will not be able to pursue any other lawsuit against Costco concerning or relating to the claims alleged in these lawsuits. You may also file with the court objections to the settlement by [DATE]. The Court will hold a hearing in this case on [DATE], to consider whether to approve the settlement. You may ask to appear at the hearing, either in person or through an attorney of your choosing. For further information regarding the settlement and your rights to participate or object, visit http://www.Costco.com/fuelsettlement.pdf or write to Fuel Settlement Notice, P.O. Box 34680, Seattle, WA 98124[.]

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE.**

Exhibit A to Notice Of Filing Of Proposed Revised Class Notice (Doc. #1278) filed August 21, 2009

(emphasis in original); see Order (Doc. #1284) filed August 27, 2009.

Between September 9, 2009 and January 29, 2010, Costco sent notice to each member of the

settlement class which it could identify, for whom it had a useable electronic or physical mail

address. See Declaration Of Michelle Acpal Certifying Completion Of Distribution Of Notice Of

Class Action Settlement ("Acpal Declaration") (Doc. #1599) filed March 19, 2010 ¶ 6.[11]
Specifically, Costco provided notice to 10,134,738 settlement class members. See id. ¶ 3. The
notice provided deadlines of February 23, 2010 to opt out of the settlement and March 2, 2010 to
object to the settlement. See id. ¶ 9. The notice also directed class members to Costco's website,
http://www.Costco.com/fuelsettlement.pdf, for detailed information regarding the settlement.

### D.    Opt Outs

The notice to proposed settlement class members stated that to opt out of the settlement, by
February 23, 2010, class members must provide proof of a gasoline purchase from Costco after
January 1, 2001. See Exhibit A to Notice Of Filing Of Proposed Revised Class Notice (Doc.
#1278). Costco and plaintiffs, however, agreed to remove the proof of purchase requirement.
Beginning September 22, 2009, Costco prominently posted the following notice on its website:
"NOTE, IF YOU CHOOSE TO OPT OUT OF THE SETTLEMENT, **A RECEIPT IS NO
LONGER REQUIRED**." Declaration Of David F. McDowell Regarding Persons Who Requested
To Opt Out Of The Class Action Settlement ("McDowell Declaration") (Doc. #1600) filed March
19, 2010 ¶ 4 (emphasis in original).

Before February 23, 2010, Costco received 3,022 requests to opt out of the settlement class.
See McDowell Declaration (Doc. #1600) ¶ 3.[12] After February 23, 2010, Costco received twelve

---

[11]    The record does not identify the criteria which Costco used to determine potential
settlement class members or whether Costco sent notice to all Costco members or only settlement
class members. For instance, the record does not reflect whether Costco sent notice to (1) all
persons who were Costco members during the relevant time; (2) only those Costco members who
purchased fuel during the relevant time; or (3) only those Costco members who purchased fuel at
specific temperatures during the relevant time.

[12]    Of these opt out requests, 552 had proof of gasoline purchase and 2,470 had no proof
or inadequate proof of gasoline purchase. See McDowell Declaration (Doc. #1600) ¶ 3.

requests to opt out of the settlement class.  See id.  Costco proposes to honor all opt out requests and allow 3,034 members to opt out of the settlement class.  See id. ¶ 5.

**E.      Objections To Proposed Settlement**

**1.      Individual Letters And/Or Emails**

The Court received 13 letters and/or emails from class members who object to the settlement.  See letter dated September 19, 2009 from Gary Hendrix of Coolidge, Arizona (Doc. #1296) filed September 21, 2009; letter from Dacus And Sondra Grant (undated, address redacted) (Doc. #1300) filed September 25, 2009; letter dated September 22, 2009 from Bruce R. Hudson of Naples, Florida ("Hudson Objection") (Doc. #1349-1) filed October 1, 2009;[13] letter dated September 25, 2009 from Patricia Ann Eagan of Sacramento, California (Doc. #1350) filed October 1, 2009; letter dated September 19, 2009 from Ronald Schroeder of Cottonwood Heights, Utah (Doc. #1352) filed September 24, 2009; letter dated October 16, 2009 from Bill and Nancy Wood of Menifee, California (Doc. #1383) filed October 21, 2009; email dated October 27, 2009 from Sid Hasler (location unknown) (Doc. # 1401) filed October 27, 2009; email dated October 27, 2009 from Chuck Balkon of Nolensville, Tennessee (Doc. #1402) filed October 28, 2009; letter dated September 24, 2009 from Daniel C. Perry of Buda, Texas (Doc. #1405) filed November 2, 2009; letter (undated) from Diane Olbert of Austin, Texas (Doc. #1425) filed November 17, 2009; newspaper article sent by Malcolm and Edythe Newbourne of Marco Island, Florida (Doc. #1431) filed November 23, 2009; letter dated November 27, 2009 from Brian Rush of Scottsdale, Arizona (Doc. #1438) filed December 1, 2009; letter dated March 2, 2010 from Jeffery Schroeder of San Juan Capistrano, California ("Schroeder Objection") (Doc. #1584) filed March 5, 2010.

---

[13]      The same document is filed again as (Doc. #1351).

These proposed class members object to the proposed settlement on the following grounds: (1) the proposed settlement pays nothing to class members; (2) the proposed settlement pays excessive attorneys' fees; (3) the case is frivolous; (4) the matter should be handled by state regulators; (5) the cost of compliance will exceed benefits to class members; (6) plaintiffs' attorneys are not acting in the best interests of the class; (7) the objectors disdain class action lawsuits in general; (8) the proposed settlement provides no benefit to class members who are no longer members of Costco; (9) the opt out procedure is unfair and should not require proof of gasoline purchase; and (10) class representatives should not receive $2,500 while class members receive nothing.

### 2.    Pro Se Briefs

Two proposed settlement class members filed pro se briefs objecting to the settlement. See Objection By R. Duke Dougherty, Jr. Of Topeka, Kansas ("Dougherty Objection") (Doc. #1577) filed March 1, 2010; Objection By Jeffrey L. Weinstein Of Athens, Texas ("Weinstein Objection") (Doc. #1585) filed March 5, 2010. They complain that (1) the opt out procedure is unfair and should not require proof of gasoline purchase; (2) class representatives have not represented the interests of class members; (3) class members in states which are getting ATC under the settlement have a conflict of interest with members in states which are not getting ATC under the settlement; (4) notice to class members was insufficient; (5) the settlement authorizes excessive attorneys' fees; (6) class representatives should not receive an incentive fee; (7) injunctive relief is insufficient to remedy past losses; (8) until ATC pumps are installed, Costco should lower the price of gas on warm days; (9) class counsel should be paid based on the number ATC pumps actually installed; (10) the proposed class is not adequately defined and is not ascertainable; and (11) the

proposed settlement rewards attorneys with little or no benefit to class members.

### 3.   Briefs Filed By Counsel

One individual and two groups of proposed settlement class members retained attorneys to file objections on their behalf.  Individual objector Daryl Chilimidos, of California, complains that (1) the class definition provides no way for a class member to determine whether he or she is part of the class; (2) the settlement approval process denies class members their due process right to be heard because they must file objections to attorneys' fees before class counsel have filed their fee request with the Court; (3) counsel should not be paid until class members receive benefits under the settlement; (4) the settlement provides no money to class members; and (5) if the Court does not approve $10 million in attorneys' fees, class members should receive the difference.  See (Protective) Objection And Notice Of Intention To Appear At Fairness Hearing On Proposed Settlement And Award Of Attorneys' Fees And Expenses ("Chilimidos Objection") (Doc. #1579) filed March 2, 2010.

The first group of objectors is comprised of Amy Alkon of Santa Monica, California and Nicolas Martin of Indianapolis, Indiana (the "Alkon Objectors").  They complain that (1) injunctive relief is economically worthless and will harm class members who must subsidize the cost of settlement; (2) the proposed settlement does not compensate for alleged past wrongdoing; (3) former Costco members and non-conversion state customers receive no access to injunctive relief although their rights are extinguished; (4) some class members receive more gas from volumetric gallons than they would under ATC; (5) injunctive relief is distant and illusory for many class members; (6) class counsel breached their fiduciary duty to the class by not negotiating for reversion to the class of any denied fee request; (7) class representatives recovered cash only for themselves and their attorneys;

(8) class notice is insufficient under Rule 23 because it does not set forth the basis for requested attorneys' fees.  <u>See</u> <u>Objection To Proposed Settlement</u> ("<u>Alkon Objection</u>") (Doc. #1578) Filed March 1, 2010.

The second group of objectors is comprised of Mike McKerley of Birmingham, Alabama; Carroll Putnam of Jacksonville, Florida; Charles B. Zuravin of West Palm Beach, Florida; Bonnie Anderson of Ocala, Florida; David V. Kenner of Kansas City, Missouri; and Karen Waldvogel of San Diego, California ("McKerley Objectors").  They complain that the proposed settlement (1) does not account for various state consumer protection laws; (2) does not provide damages for millions of dollars in tax overpayments; (3) does not provide benefit to class members and only provides benefit to future Costco members who may or may not be members of the settlement class; (4) contains no provision to enforce, monitor or publicize compliance with the settlement; and (5) provides no information regarding the basis for $10 million in attorneys' fees to class counsel. <u>See</u> <u>Objection And Notice Of Intent To Appear At Fairness Hearing</u> ("<u>McKerley Objection</u>") (Doc. #1581) filed March 3, 2010.[14]

## F.    April 1, 2010 Hearing And Post-Hearing Filings

On April 1, 2010, the Court heard oral argument from counsel for plaintiffs, Costco, the Alkon Objectors and the McKerley Objectors.  <u>See</u> Doc. #1624.  On the same day, plaintiffs filed a motion for final approval of the Costco class settlement.  <u>See</u> Doc. #1620.  In support of the motion, plaintiffs present an affidavit from their economic expert, Dr. Andrew Safir, who estimates that by the year 2020, consumers will benefit by more than $100 million from Costco's conversion to ATC dispensers under the proposed settlement.  <u>See</u> <u>Affidavit Of Dr. Andrew Safir</u> ¶ 15,

---

[14]    It appears that the same objection was re-filed as Doc. #1589 on March 8, 2010.

Exhibit 1 to Plaintiff's Motion For Final Settlement Approval (Doc. #1620).

On April 8, 2010, the McKerley Objectors filed supplemental suggestions in support of their objections. See Doc. #1630. In their supplemental suggestions, the McKerley Objectors assert that the proposed settlement does not account for differences between various state consumer protection laws. See id. On April 15, 2010, plaintiffs filed a motion to strike the supplemental suggestions. Specifically, plaintiffs assert that the supplemental suggestions are out of time and contain legal authorities which objectors should have supplied earlier. On April 23, 2010, the McKerley Objectors filed a motion for leave nunc pro tunc to file the supplemental suggestions out of time. See Doc. #1644.

On April 25, 2010, the Alkon Objectors filed a response to plaintiffs' motion for final settlement approval, arguing that the Safir affidavit is conclusory and inadmissible under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). See Doc. #1645. On May 3, 2010, plaintiffs filed a reply in support of their motion for final settlement approval, asserting that the Court should strike the Alkon Objectors' response because it is untimely under D. Kan. Rule 6.1(d). See Doc. #1663.[15] On May 5, 2010, the Alkon Objectors filed a surreply which responds to plaintiffs' request

---

[15]    Plaintiffs have not filed a separate motion to strike the response. Rule 6.1(d) provides a response time of 14 days for nondispositive motions and 21 days for dispositive motions. See D. Kan. Rule 6.1(d). The Alkon Objectors filed their response on April 25, 2010 – 24 days after plaintiffs filed the motion for final settlement approval. Thus the response is late regardless whether the motion is dispositive or nondispositive.

Under the Court's local rules, the Alkon Objectors should have sought leave to file their response out of time. See D. Kan. Rule 15.1(a). Nevertheless, in light of the Court's independent duty to ensure that the rights of passive class members are not jeopardized, see 7B Federal Practice & Procedure § 1797. 1, at 79; Amchem Prods., 521 U.S. at 623 (1997), the Court will consider their response.

for the Court to strike the response.  See Doc. #1664.[16]

Also, on May 5, 2010, the Alkon Objectors filed a motion to strike plaintiffs' motion for final settlement approval or, alternatively, to strike Safir's affidavit in support of said motion.  See Doc. #1665.  Specifically, the Alkon Objectors assert that (1) plaintiffs filed the motion in violation of the Court's scheduling order and (2) the Safir affidavit is inadmissible under Daubert.

### G.    Class Certification In Kansas Cases

On May 28, 2010, in Wilson v. Ampride, Inc., Case No. 06-2582 and American Fiber & Cabling, LLC v. BP West Coast Products, LLC, Case No. 07-2053, the two Kansas cases in this MDL proceeding, the Court certified a class as to defendants other than Costco.[17]  See In re Motor Fuel Temp. Sales Practices Litig., – F.R.D. –, 2010 WL 2160889 (D. Kan. May 28, 2010).  Plaintiffs sought class certification under Rule 23(b)(2) and (3).  Specifically, under Rule 23(b)(2), plaintiffs sought to certify a class for injunctive relief requiring defendants to install temperature correcting equipment on their retail motor fuel dispensing devices and to post conspicuous notices to consumers regarding the effect of temperature expansion on the energy content of motor fuel.  Under Rule 23(b)(3), plaintiffs also sought to certify a class for damages.  The Court found that plaintiffs had satisfied the prerequisites of Rule 23(a).  See id. at **5-8.  As to plaintiffs' claims for injunctive relief, the Court found that the proposed class was cohesive and manageable and that plaintiffs had

---

[16]    Under the Court's local rules, the Alkon Objectors should have sought leave of Court before filing their surreply.   See D. Kan. Rule 15.1(a).  Nevertheless, because plaintiffs' reply contained a new request to strike the Alkon Objectors' response, the Court will allow the surreply.

[17]    Costco is a defendant in Wilson but not in American Fiber.  In light of the proposed settlement with Costco, plaintiffs' motion did not seek class certification on their claims against Costco.  See Kansas Plaintiffs' Reply In Support Of Motion For Class Certification (Doc. #1526) filed December 15, 2009 at 6 n.30.

satisfied the requirements of Rule 23(b)(2).  <u>See</u> <u>id.</u> at \*\*9-10.[18]  As to plaintiffs' claims for

damages, the Court expressed concern whether plaintiffs could establish common methods to prove

individual class member damages, including the temperature of dispensed fuel with respect to

individual class member transactions.  <u>See</u> <u>id.</u> at \*12.  Under the circumstances, the Court found that

it was appropriate to bifurcate the damage portion of plaintiffs' claims and certify a class with regard

to the liability and injunctive aspects of plaintiffs' claims.  <u>See</u> <u>id.</u>  In doing so, the Court found that

it could adjudicate the highly cohesive Rule 23(b)(2) phase of the proceeding without the cost and

time required for the class notice and opt-out requirements of Rule 23(b)(3).  <u>See</u> <u>id.</u>  The Court

stated that if plaintiffs succeed in establishing liability and obtaining injunctive relief, it would

consider whether to certify a class for damages under Rule 23(b)(3).  <u>See</u> <u>id.</u>[19]

### III.   Analysis

As noted, plaintiffs seek final approval of the proposed settlement with Costco.  Before

reaching the merits of the proposed settlement, the Court will consider plaintiffs' motion to strike

the supplemental suggestions filed by the McKerley Objectors, the McKerley Objectors' motion for

leave to file supplemental suggestions, and the Alkon Objectors' motion to strike plaintiffs' motion

---

[18]   Rule 23(b)(2) states that a class action may be maintained if Rule 23(a) is satisfied and if

the party opposing the class has acted or refused to act on grounds that apply
generally to the class, so that final injunctive relief or corresponding declaratory
relief is appropriate respecting the class as a whole[.]

Rule 23(b)(2), Fed. R. Civ. P.

[19]   On June 11, 2010, defendants requested permission to appeal the class certification
ruling under Rule 23(f), Fed. R. Civ. P.  <u>See</u> Doc. #01018439432 in Tenth Circuit Case No. 10-601
and Doc. #01018439552 in Tenth Circuit Case No. 10-602.  The Tenth Circuit has not yet ruled on
the request.

for final settlement approval or, in the alternative, to strike the Safir affidavit.

**A.**   **Plaintiffs' Motion To Strike Supplemental Suggestions By McKerley Objectors (Doc. #1634) And McKerley Objectors' Motion For Leave To File Supplemental Suggestions (Doc. #1644)**

The notice to proposed settlement class members stated that they could file objections to the proposed settlement no later than March 2, 2010.  See Acpal Declaration (Doc. #1599) ¶ 9.  On March 3, 2010, the McKerley Objectors filed an objection and notice of intent to appear at the hearing on April 1, 2010.[20]  See Doc. #1581.  In the objection, among other things, the McKerley Objectors state that the proposed settlement does not account for variations in state consumer protection laws.  See id.  The objection, however, does not cite any legal authority or identify any specific differences in state consumer protection laws.  See id.

At the hearing on April 1, 2010, counsel for the McKerley Objectors argued that because of differences among various state consumer protection laws, the proposed settlement requires that to receive the same benefit, some class members must surrender more rights than others.  See Transcript at 79:17 to 80:2.  The Court asked counsel to give an example of particular states in which remedies materially differ.  Counsel stated that he was aware of differences in state statutes, that he had not briefed the particulars and that he would be happy to provide a supplemental comparison of the different states.  The Court and counsel exchanged comments about potential differences among various state laws, but they said nothing further regarding counsel's offer to file supplemental suggestions.  Tr. 80:4 to 81:23.

One week later, on April 8, 2010, the McKerley Objectors filed supplemental suggestions in support of their objection to the settlement.  See Doc. #1630.  In the supplemental suggestions,

---

[20]   The objection states that it was mailed on March 2, 2010.  See Doc. #1581.

the McKerley Objectors cite legal authorities which purportedly support their assertion that the proposed settlement does not account for differences between various state consumer protection laws.  See id.  Plaintiffs assert that the supplemental suggestions are out of time and contain legal authorities which objectors should have supplied earlier.  In response, the McKerley Objectors ask the Court to grant them leave to file the supplemental suggestions.[21]

Under the Court's local rules, the McKerley Objectors should have sought leave of Court before filing supplemental suggestions.  See D. Kan. Rule 15.1(a).[22]  In determining whether to approve the proposed settlement, however, the Court has an independent duty to ensure that the rights of passive class members are not jeopardized.  See 7B Federal Practice & Procedure § 1797.1, at 79; see also Amchem Prods., 521 U.S. at 623.  In light of this duty, the Court will not strike the supplemental suggestions.

**B.     Alkon Objectors' Motion To Strike Plaintiffs' Motion For Final Settlement Approval And/Or, Alternatively, To Strike The Safir Affidavit (Doc. #1665)**

On the day of the settlement hearing, April 1, 2010, plaintiffs filed a motion for final settlement approval.  In support of the motion, plaintiffs present an affidavit from their economic expert, Dr. Andrew Safir, and other evidence that the proposed settlement is fair and reasonable.

---

[21]     The McKerley Objectors do not state why they did not cite the legal authorities in their original objection or seek leave to file the supplemental suggestions.

[22]     Rule 15.1(a) states as follows:

**(a) Requirements of Motion.**  A party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right must:
  (1) set forth a concise statement of the amendment or leave sought;
  (2) attach the proposed pleading or other document; and
  (3) comply with the other requirements of D. Kan. Rules 7.1 through 7.6.

D. Kan. Rule 15.1(a).

See Plaintiff's Motion For Final Settlement Approval (Doc. #1620) and exhibits thereto. The Alkon Objectors ask the Court to strike plaintiffs' motion because it is out of time under the Court's scheduling order. Specifically, the Alkon Objectors assert that the motion is out of time under the Court's order of March 4, 2010, which ordered that by March 19, 2010, plaintiffs and Costco file responses to objections to the proposed settlement.

The Alkon Objectors are mistaken. The Court's order of March 4, 2010 did not set a deadline for plaintiffs to file a motion for final settlement approval. See Doc. #1582. Indeed, in its order preliminarily approving the proposed settlement, the Court contemplated that at the final approval hearing, plaintiffs would present evidence to support their contention that the proposed settlement is fair and reasonable. See In re Motor Fuel Temp. Sales Pract. Litig., 258 F.R.D. 671, 679-81 (D. Kan. 2009). Nothing in the Court's orders precluded plaintiffs from presenting such evidence in the form of a motion for final settlement approval. Accordingly, the Court overrules the Alkon Objectors' motion to strike plaintiffs' motion for final settlement approval.

Alternatively, the Alkon Objectors ask the Court to strike Safir's affidavit. Specifically, the Alkon Objectors assert that the Safir affidavit is conclusory and inadmissible under Daubert. As demonstrated below, in deciding whether to approve the proposed settlement, the Court need not rely on the Safir affidavit. Accordingly, the Court overrules as moot the Alkon Objectors' motion to strike the Safir affidavit.

### C.     Settlement Class Certification

Plaintiffs seek certification of the proposed settlement class.  To obtain class certification, plaintiffs must show that the prerequisites of Rule 23(a) are satisfied and demonstrate that the proposed class action fits within one of the categories described in Rule 23(b). Here, plaintiffs seek

-24-

to certify a class under Rule 23(b)(3).

### 1.    Class Definition

As noted, plaintiffs propose the following settlement class:

> All residents of the States at Issue who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court, and members of the Court's immediate family.

Settlement Agreement ¶ 2.1.  Some class members object that the class definition provides no way for class members to determine whether they are part of the settlement class.  See Chilimidos Objection (Doc. #1579) at 2; Weinstein Objection (Doc. #1585) at 1-2. Specifically, these objectors assert that (1) the definition is ambiguous as to whether "temperature above 60 degrees Fahrenheit" refers to fuel temperature or ambient temperature, see Weinstein Objection (Doc. #1585) at 1; (2) the definition provides no way for class members to determine whether they purchased fuel at a temperature above 60 degrees, see Chilimidos Objection (Doc. #1579) at 2; and (3) to determine who is a class member, the Court must make individual fact findings regarding temperature at the time of purchase, see Weinstein Objection (Doc. #1585) at 1-2.

This Court has found that defining the class is of "critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action."  Sibley v. Sprint Nextel Corp., 254 F.R.D. 662, 670 (D. Kan. 2008) (citing Manual for Complex Litigation § 21,222, at 270 (4th ed. 2005) and Fed. R. Civ. P. 23(c)(1)(B) (court certification order must define class and class claims, issues or defenses)) (internal quotations omitted).

Under the circumstances of this case, the proposed settlement class definition adequately serves the foregoing purposes.  Under the proposed settlement, all Costco fuel purchasers at certain

-25-

stores will receive the proposed injunctive relief, i.e. the ability to purchase ATC fuel.  Because the injunctive relief is available to all Costco fuel purchasers regardless of class membership, it is not necessary to identify individual class members to determine who is entitled to relief.  Morever, to the extent future courts may need to determine who is bound by a final judgment, the definition provides objective criteria for making such a determination.  See 1 Newburg On Class Actions § 2:4 (4th ed. 2002) (res judicata effect of judgment arises only in subsequent litigation).  Finally, as discussed below, the definition sufficiently identifies class members for purposes of providing the best notice practicable under the circumstances.  See Fed. R. Civ. P. 23(c)(2).[23]

Regarding the first objection, i.e. that it is unclear whether the class definition refers to fuel temperature or ambient temperature, the Court finds that any such ambiguity does not render inadequate the proposed settlement class definition.  As noted, because all Costco fuel purchasers

---

[23]     Rule 23(c)(2) provides as follows:

(2) Notice.
        (A) For (b)(1) or (b)(2) Classes.  For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.
        (B) For (b)(3) Classes. For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
                (i) the nature of the action;
                (ii) the definition of the class certified;
                (iii) the class claims, issues, or defenses;
                (iv) that a class member may enter an appearance through an attorney if the member so desires;
                (v) that the court will exclude from the class any member who requests exclusion;
                (vi) the time and manner for requesting exclusion; and
                (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).

can participate in the proposed injunctive relief, it is not necessary to identify individual class members to determine who is entitled to relief.  For purposes of determining who is bound by a final judgment, the Court's opinions in this case clarify that the relevant temperature is dispensed fuel temperature.  See, e.g., In re Motor Fuel, 2010 WL 2160889, at 12; In re Motor Fuel Temp. Sales Practices Litig., 534 F. Supp.2d 1214, 1217 (D. Kan. 2008).  For purposes of providing the best notice practicable, the alleged ambiguity is immaterial.  Plaintiffs' economic expert, Dr. Safir, has suggested a strong correlation between dispensed fuel temperature and ambient temperature.  See Affidavit Of Dr. Andrew Safir ¶¶ 48-51, Exhibit 1 to Plaintiffs' Response To Motion To Exclude Testimony Of Andrew Safir (Doc. #1518) filed December 15, 2009.  Defendants dispute the reliability of this testimony, see Reply Memorandum Of Law In Support Of Motion To Exclude Testimony Of Andrew Safir (Doc. #1568) filed January 22, 2010 at 14-23, but it is sufficient for purposes of finding that settlement class members received the best notice practicable under the circumstances.  In other words, even if proposed settlement class members read the class definition to mean ambient temperature instead of dispensed fuel temperature, they received adequate notice to determine whether they might be in the settlement class and would want to opt out.

The second objection, i.e. that the class definition provides no way for class members to determine whether they purchased fuel at a temperature above 60 degrees, is without merit.  In its order granting class certification for injunctive relief in the Kansas cases, the Court questioned whether – for purposes of certifying a class for damages under Rule 23(b)(3) – plaintiffs can establish common methods to prove dispensed fuel temperature with respect to individual class member transactions.  See In re Motor Fuel, 2010 WL 2160889, at *12.  Obviously, it would be difficult for individual class members to determine the exact fuel temperature of each fuel purchase.

Nevertheless, if class members regularly purchased fuel from Costco, or if they knew that they purchased fuel on a hot day, they would have information sufficient to form an opinion as to whether they might be in the proposed settlement class and whether they would want to opt out. Rule 23 requires that the Court direct "the best notice that is practicable under the circumstances." Under these circumstances, the Court finds that the proposed settlement class definition is not incompatible with the best practicable notice to class members.

The third objection, i.e. that to determine who is a class member, the Court must make individual fact findings regarding temperature at the time of purchase, does not defeat class certification. Rule 23 does not require plaintiffs – or the Court – to determine individual class members. See 1 Newburg On Class Actions § 2:4 (4th ed. 2002). To meet the requirements of Rule 23, membership of the class must be distinguishable, or at least definable at the outset. See id. It does not have to be ascertainable so that every potential class member can be identified. See 7A Federal Practice & Procedure § 1760.[24] If the general outlines of class membership are

_____

[24] Rule 23 does not require that individual class members be determined even at the time of final judgment. See 1 Newburg On Class Actions § 2:4 (4th ed. 2002). Rule 23(c)(3) provides as follows:

> (3) Judgment. Whether or not favorable to the class, the judgment in a class action must:
>> (A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and
>> (B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

Fed. R. Civ. P. 23(c)(3).

This provision requires only that the final judgment describe the class; it need not identify individual class members. See 1 Newburg On Class Actions § 2:4 (4th ed. 2002). The Rules Advisory Committee explained as follows:

(continued...)

-28-

determinable at the outset of litigation, a class will be deemed to exist.  See 7A Federal Practice & Procedure § 1760; Donovan v. Philip Morris USA, Inc., — F.R.D. —, No. 06cv12234-NG, 2010 WL 2532650, at *5 (D. Mass. June 24, 2010) (to be ascertainable, all class members need not be identified at outset; class need only be determinable by stable and objective factors).  Here, the general outlines of class membership are based on stable and objective factors, i.e. the purchase of fuel within a specified time period at a temperature in excess of 60 degrees Fahrenheit.

The Court agrees with the following statement by Professor Newburg that the relevant inquiry is whether the proposed class meets the requirements of Rule 23:

> [I]t is reasonable to conclude that class actions may be maintained whenever a class meets the Rule 23 prerequisites.  There is no special rule requiring the existence of a "class" unless, of course, one construes the words by definition to mean as defined by Rule 23.  This additional exercise is not very helpful.  Parties and the court should properly focus on Rule 23 criteria rather than on any such initial inquiry.  When all is said and done, it does become necessary to be able to identify a specific class member for purposes of res judicata and related principles.  However, it is settled that no court can predetermine the res judicata effect of its own judgment, so that the issue arises only in subsequent litigation.

1 Newburg On Class Actions § 2:4 (4th ed. 2002).  Accordingly, the Court focuses its analysis to the prerequisites of Rule 23(a).

---

[24](...continued)
The judgment in a class action maintained as such to the end will embrace the class, that is, in a class action under subdivision (b)(1) or (b)(2), those found by the court to be class members; in  a class action under subdivision (b)(3), those to whom the notice prescribed by subdivision (c)(2) was directed, excepting those who requested exclusion or who are ultimately found by the court not to be members of  the class. The judgment has this scope whether it is favorable or unfavorable to the class.  In a (b)(1) or (b)(2) action the judgment "describes" the members of the class, but need not specify the individual members; in a (b)(3) action the judgment "specifies" the individual members who have been identified and describes the others.

Id. (quoting Rules Advisory Committee Notes, 1966 Amendments to Rule 23, 39 Federal Rules Decisions pp 69, 105).

### 2.      Rule 23(a) Prerequisites

To satisfy the prerequisites of Rule 23(a), plaintiffs must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class.  See Fed. R. Civ. P. 23(a).

### a.      Numerosity

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); see also Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).  To satisfy this requirement, plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.  See Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978).  The Court has no set formula for determining whether plaintiffs meet this requirement.  Id.  Plaintiffs have presented evidence that the proposed settlement class exceeds 10 million members.  See Acpal Declaration (Doc. #1599) ¶¶ 3, 6.  On this record, the Court finds that the proposed settlement class is so numerous that joinder of all members would be impracticable.  Accordingly, plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### b.      Commonality

Rule 23(a)(2) requires plaintiffs to show that "questions of law or fact are common to the class." Fed. R. Civ. P. 23(a)(2).  This inquiry requires the Court to find only whether common questions of law or fact exist; unlike Rule 23(b)(3), such questions need not predominate under this element.  See Olenhouse v. Commodity Credit Corp., 136 F.R.D. 672, 679 (D. Kan.

1991).  Here, plaintiffs assert that Costco engaged in the same conduct with respect to all settlement class members, i.e. it did not compensate retail motor fuel sales for temperature and did not inform class members of the detrimental effect that thermal expansion has on quality of motor fuel.  On this record, the Court finds that questions of law or fact are common to the class.  Accordingly, plaintiffs have satisfied the commonality requirement of Rule 23(a)(2).

### c.    Typicality

Rule 23(a)(3) requires plaintiffs to show that their claims are typical of the claims of the class which they seek to represent.  See Fed. R. Civ. P. 23(a)(3); Stricklin, 594 F.3d at 1198.  The interests and claims of the representative plaintiffs and class members need not be identical to satisfy typicality.  See id. (citing Anderson, 690 F.2d at 800).  If the claims of the representatives and class members are based on the same legal or remedial theory, differing fact situations of class members do not defeat typicality.  See id. at 1198-99 (citing Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988)); Jamieson v. Vatterott Educ. Ctrs., Inc., 259 F.R.D. 520, 547 (D. Kan. 2009).  Here, the claims of the representative plaintiffs and class members are based on the same legal and remedial theories and arise from the same pattern of conduct by defendants: all of them allegedly suffered injury on account of Costco's sale of motor fuel for specified prices per gallon without disclosing or adjusting for temperature expansion.  On this record, the Court finds that plaintiffs's claims are typical of the claims of the class which they seek to represent.  Thus, plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### d.    Adequacy Of Representation

Rule 23(a)(4) requires plaintiffs to show that they will fairly and adequately protect the interests of the class.  To meet this requirement, representative plaintiffs must be

members of the class which they seek to represent and show that (1) their interests do not conflict with those of other class members, and (2) they will be able to prosecute the action vigorously through qualified counsel.[25]   See E. Tex. Motor Freight Sys., Inc., v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks, 314 F.3d at 1187-88; Olenhouse, 136 F.R.D. at 680.  Minor conflicts among class members do not defeat class certification; to defeat class certification, a conflict must be "fundamental" and go to specific issues in controversy.  Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).[26]

Some class members object that a conflict of interest exists between settlement class members in conversion states and settlement class members non-conversion states.  As noted, the proposed settlement includes residents of 28 states:  Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia and Guam.  See Settlement Agreement ¶ 1.17.  In seven states – Arkansas, Delaware, Louisiana, Mississippi, Oklahoma, District of Columbia and Guam – Costco does not sell motor fuel and agrees to do nothing.  See id. ¶ 1.17, ¶¶ 4.1-4.3.[27]  In 14 states, i.e. the conversion states (Alabama, Arizona,

---

[25]     The Court finds that plaintiffs satisfy the second requirement – they have and apparently will continue to prosecute the action vigorously through qualified counsel.

[26]     In opposing class certification in the Kansas cases, defendants asserted that some class members oppose ATC at retail because they believe that it will result in higher fuel prices with no corresponding benefit to class members.  See In re Motor Fuel, 2010 WL 2160889, at *7.  The Court found that the alleged difference of opinion went to the ultimate merits of the case – i.e. whether mandatory implementation of ATC fuel at retail would benefit the class as a whole.  The Court addresses below whether the proposed settlement benefits class members.

[27]     It is unclear why the proposed settlement class includes residents of these states.

California, Florida, Georgia, Kentucky, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Utah and Virginia), Costco purchases fuel on a temperature adjusted basis and agrees that over the next five years, it will convert its existing motor fuel dispensers to ATC dispensers and install ATC dispensers at any new retail stations.  See id. ¶ 1.17, ¶¶ 4.2-4.3.  In seven states, i.e. the non-conversion states (Indiana, Kansas, Maryland, Missouri, New Jersey, Oregon and Pennsylvania), Costco does not purchase fuel on a temperature adjusted basis but agrees that if it begins to purchase motor fuel on a temperature adjusted basis, it will convert its motor fuel dispensers in those states to ATC dispensers.  See id. ¶ 1.17, ¶¶ 4.2-4.3.

In Amchem Products, Inc. v. Windsor, the Supreme Court found that where members of a settlement class have divergent interests and receive diverse benefits under a settlement, the structure of the settlement must assure fair and adequate representation for the diverse groups and individuals affected.  521 U.S. at 627.  Amchem involved a pre-packaged, global settlement of current and future asbestos-related claims of individuals who were, or some day might be, adversely affected by past exposure to certain asbestos products.  The proposed settlement provided compensation for certain types of claims and no compensation for other types of claims.  521 U.S. at 603-04.  The district court found that the settlement was fair and reasonable and certified a settlement class.  See Georgine v. Amchem Prods., Inc., 157 F.R.D. 246, 315-25 (E.D. Pa. 1994).  On appeal, the Third Circuit vacated the district court order, finding that the proposed settlement class did not satisfy the requirements of Rule 23.  See Georgine v. Amchem Prods., Inc., 83 F.3d 610, 624-34 (3d Cir. 1996).  Specifically, under Rule 23(b)(3), the Third Circuit found that non-common questions predominated because class members were exposed to different asbestos products, in different ways, over different periods, for differing amounts of time, and that some

-33-

members suffered no physical injury while others suffered disabling or deadly diseases.  See id. at

626-28.  In addition, with respect to adequacy of representation under Rule 23(a)(4), the Third

Circuit found a conflict of interest between those class members who were currently injured and

would want to maximize current pay-outs, and those class members who might suffer future injury

and would want to reduce current pay-outs and protect against inflation for future pay-outs.  See id.

at 630-31.  The Supreme Court granted certiorari and agreed with the Third Circuit that the proposed

settlement class did not satisfy the adequacy of representation requirement of Rule 23(a)(4).[28]

Specifically, the Supreme Court found that under the proposed settlement, the interests of

individuals within the common settlement class were not sufficiently aligned and that the settling

parties had achieved a global settlement with no structural assurance of adequate representation for

diverse groups and individuals affected by the settlement.  See id. at 626.  Although the named

representatives alleged a range of complaints, each served generally as a representative for the

whole, and not for a separate constituency of the class.  See id.  Under those circumstances, the

Supreme Court found no assurance – either in terms of the settlement or in the structure of

negotiations – that the named representatives operated under a proper understanding of their

representational responsibilities.  See id. at 627.

Here, the proposed settlement provides three types of relief to three distinct groups within

the settlement class:  To residents of seven states in which Costco does not sell motor fuel, the

---

[28]     The Supreme Court granted certiorari to determine the role which settlement may
play in determining class certification under Rule 23.  See Amchem Prods., 521 U.S. at 619.  The
Third Circuit had found that each of the requirements of Rule 23(a) and (b) "must be satisfied
without taking into account the settlement."  Georgine, 83 F.3d at 626 (quotation and citation
omitted).  The Supreme Court found that when faced with a request for settlement-only class
certification, a district court need not inquire whether the case, if tried, would present intractable
management problems, but that the other requirements demand undiluted and even heightened
attention in the settlement context.  See Amchem Prods., 521 U.S. at 620.

settlement provides no relief.  To residents of 14 states in which Costco sells motor fuel which it purchases on a temperature adjusted basis, the settlement provides for conversion of Costco's motor fuel dispensers to ATC dispensers.  To residents of seven states in which Costco sells motor fuel which it does not purchase on a temperature adjusted basis, the settlement provides a possibility that Costco will convert its fuel dispensers *if* it begins purchasing fuel on a temperature adjusted basis. Because the settlement provides different relief to different groups within the settlement class, it appears that the interests of the named representatives are not aligned with every member of the settlement class.  Four of the named representatives (Korleski, Lerner, Glaser and Graham) are residents of conversion states which will receive ATC under the settlement (South Carolina, California and Virginia).  One representative (Wilson) is a resident of Kansas, a non-conversion state which will not receive ATC unless Costco begins to purchase fuel on a temperature adjusted basis in that state.  It appears that each named representative purports to serve generally as a representative for the entire settlement class, even though his or her interests are not the same as class members who reside in states which would receive different relief under the proposed settlement.  Under the circumstances, the structure of the proposed settlement does not assure that named representatives have operated under a proper understanding of their representational responsibilities to three distinct subgroups.  Accordingly, plaintiffs have not shown that the named representatives are adequate representatives for the proposed settlement class.

The Alkon Objectors assert that the proposed settlement does not account for significant differences among various state consumer protection laws.  See Supplemental Suggestions In Support Of Objections To Settlement (Doc. #1630) filed April 8, 2010.[29]  The courts have not

---

[29]     The Alkon Objectors also assert that hypothetical purchasers who regularly buy fuel
(continued...)

spoken in one voice on the extent to which variation in state consumer protection laws precludes certification of a settlement class.  Compare Ersler v. Toshiba Am., Inc., No. CV-07-2304 (SMG), 2009 WL 454354, at **5-6 (E.D.N.Y. Feb. 24, 2009) (variation in state consumer laws not fatal to class settlement approval) with In re Grand Theft Auto Video Game Consumer Litig., 251 F.R.D. 139, 154-57  (S.D.N.Y. 2008) (variation in state consumer laws precluded certification of settlement class).  Plaintiffs contend that the Alkon Objectors have not explained how any variation in state law would undermine the proposed settlement in this case.  See Plaintiffs' Motion For Order Striking Supplemental Suggestions In Support Of Objections To Settlement (Doc. #1634) filed April 15, 2010 at 6.  It is plaintiffs' burden, however, to show that the named representatives can adequately represent the interests of all members of the proposed settlement class.  See Trevizo, 455 F.3d at 1162.  To do so, plaintiffs would need to show that state laws are not materially different, so that a representative from one state can adequately represent the interests of class members who reside in different states.  Plaintiffs have made no attempt to do so.  On this record, the Court finds that plaintiffs have not shown that the named representatives can adequately represent the proposed settlement class.

To address this problem, the parties could restructure the proposed settlement to (1) assure that representatives from conversion states represent class members from conversion states and representatives from non-conversion states represent class members from non-conversion states; and (2) create subclasses which account for any material differences in state laws.  One way to do so

---

[29](...continued)
at colder temperatures may receive less volume per gallon if Costco converts to ATC under the proposed settlement.  See Objection To Proposed Settlement (Doc. #1578) filed March 1, 2010 at 14-16.  Speculative conflicts do not negate adequacy of representation under Rule 23(a)(4).  See Allen v. Holiday Universal, 249 F.R.D. 166, 181 (E.D. Pa. 2008). The Court addresses below whether the proposed settlement benefits class members.

would be to create subclasses with a named representative for each state.[30]   Under this scenario, other than South Carolina, California, Virginia and Kansas, additional representatives would be needed to represent class members from remaining states.[31]   If the parties restructured the proposed settlement in this way, however, it appears that Korleski, Lerner, Glaser, Graham and Wilson would adequately represent the interests of class members in South Carolina, California, Virginia and Kansas.

### 3.      Rule 23(b) Requirements

In addition to meeting the requirements of Rule 23(a), to determine whether a class action may be maintained, plaintiffs must show compliance with one of three qualifying tests under Rule 23(b).  Here, plaintiffs seek to certify a settlement class under subsection (b)(3).  Under that provision, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  See Amchem Prods., 521 U.S. at 623.[32]

---

[30]      Alternatively, plaintiffs could show that no material differences exist under state laws and that a representative from one state can adequately represent the interests of class members in other states.

[31]      Under a re-structured settlement, it is difficult to see how the proposed settlement could include residents from states in which Costco does not sell motor fuel.  That, however, is a question for another day.

[32]      Rule 23(b)(3) is designed to bind all class members – except those who affirmatively choose to opt out – in situations where class action treatment is not as clearly called for as in situations under Rule 23(b)(1) and (2), but where class suit "may nevertheless be convenient and desirable."  Amchem Prods., 521 U.S. at 614-15 (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 697).  Specifically, Rule 23(b)(3) is designed to cover cases "in which a class action would achieve
(continued...)

-37-

As discussed above, plaintiffs have not structured the settlement in a way to assure that the named plaintiffs represent class members with similar interests.  As proposed, the same issues which prevent the Court from finding that the named plaintiffs can adequately represent the proposed settlement class – i.e. differing interests between class members of conversion states, non-conversion states and states in which Costco does not sell motor fuel and potential variances in state consumer protection laws – would preclude the Court from finding that common issues predominate under Rule 23(b)(3).[33]

---

[32](...continued)
economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Id.

[33]    If the parties restructured the proposed settlement to include a named representative to represent a subclass for each state, it appears likely that the settlement classes would satisfy the predominance and superiority requirements of Rule 23(b)(3).  In particular, it appears that common questions would predominate over individual questions as to whether Costco is liable to class members for selling motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion.  Moreover, in light of the limited size of potential financial recovery and possibility of inconsistent results, a class action would be a far more superior method of resolving the claims than individual suits.

In Amchem, the Supreme Court found that the predominance test is readily met in certain cases alleging consumer or securities fraud.  See id. at 625.  That reasoning would apply to the settlement classes here.  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following non-exhaustive factors:

    (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); Amchem Prods., 521 U.S. at 623.  In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).  See Amchem Prods., 521 U.S. at 620.  All of the
(continued...)

### D.      Fairness Of Proposed Settlement

Under Rule 23(e), the Court may approve a class action settlement upon finding that it is fair, reasonable and adequate.  See Fed. R. Civ. P. 23(e)(2).  As discussed above, to ensure adequate representation of settlement class members, the settling parties would need to restructure the settlement to account for differing interests between class members in conversion states, non-conversion states and states in which Costco does not sell motor fuel, and any material variation in state consumer protection laws.  If the parties restructured the settlement to ensure adequate representation of settlement class members, it appears that the proposed settlement would be fair, reasonable and adequate for class members in conversion and non-conversion states.

---

[33](...continued)
other requirements apply, however, and demand even heightened attention in the settlement context. See id.

As to the first factor, class members do not have a strong interest in individually controlling the prosecution of separate actions.  The amounts at stake for individual class members are so small that prosecuting separate suits would be costly and impracticable.  Moreover, with respect to proving liability and obtaining injunctive relief, common issues predominate such that the settlement class would be sufficiently cohesive to warrant adjudication by representation.  See In re Motor Fuel, 2010 WL 2160889, at **9-12.  This factor weighs in favor of class certification.

As to the second factor, the Court is not aware of any other litigation by class members concerning the controversy.  This factor weighs in favor of class certification.

As to the third factor, in light of the limited size of potential financial recovery from individual suits, it is desirable to concentrate the claims in a single forum.  See, e.g., Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 880 (7th Cir. 2000) (for small-stakes cases, class suit is best, perhaps only, way to proceed).  Moreover, bringing individual suits in differing forums could risk inconsistent results, particularly with respect to plaintiffs' claims for injunctive relief.  This factor weighs in favor of class certification.

As to the fourth factor, likely difficulties in managing a class action at trial do not apply in the settlement context.  See Amchem Prods, 521 U.S. at 620.  As noted, in the Kansas cases, due to uncertainties regarding whether plaintiffs can establish common methods to prove individual class member damages, the Court deferred ruling on plaintiffs' request to certify a class for damages under Rule 23(b)(3).  See In re Motor Fuel, 2010 WL 2160889, at *12.  Those concerns involve trial manageability issues and would not defeat certification of the proposed settlement classes.  See Amchem Prods., 521 U.S. at 620.

### 1.    Conversion States

In the conversion states – Alabama, Arizona, California, Florida, Georgia, Kentucky, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Utah and Virginia – Costco purchases fuel on a temperature adjusted basis.  Under the proposed settlement, Costco agrees that in those states, over the next five years, it will convert existing motor fuel dispensers to ATC dispensers and install ATC dispensers at any new retail stations.  See Settlement Agreement ¶ 1.17, ¶¶ 4.2-4.3.  To determine whether the proposed settlement is fair, reasonable and adequate, the Court would consider the following factors:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks, 314 F.3d at 1188.

As to the first factor, the Court has no doubt that the parties reached the settlement through fair and honest negotiations.  The settling parties in the conversion states are represented by top-notch lawyers who have vigorously litigated the case on behalf of their clients. This factor weighs in favor of approving the proposed settlement.

As to the second factor, the case presents serious questions of law and fact which place the ultimate outcome of litigation in doubt.  Defendants hotly contest liability, and it is possible that plaintiffs would be unsuccessful in proving liability if the cases proceed to trial.  Moreover, even if plaintiffs succeeded in proving liability, it is possible that they would recover only injunctive relief for the class.  In deciding class certification in the Kansas cases, the Court found that at this stage in the case, questions regarding plaintiffs' ability to establish common methods to prove individual

class member damages preclude certifying a Rule 23(b)(3) class for damages. <u>See</u> <u>In re Motor Fuel</u>, 2010 WL 2160889, at *12. Under the circumstances, the second factor weighs in favor of approving the proposed settlement as to the conversion states.

As to the third factor, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Obtaining injunctive relief for temperature adjusted motor fuel sales is a primary goal of plaintiffs' cases. For the conversion states, the proposed settlement achieves that goal. While plaintiffs also claim damages for past fuel purchases, it is questionable whether they would be able to obtain such relief on a class-wide basis. The proposed settlement would produce certainty for plaintiffs and Costco and greatly reduce litigation expenses. The third factor weighs in favor of approving the proposed settlement.

As to the fourth factor, Costco and the named plaintiffs obviously believe that the settlement is fair and reasonable. This factor weighs in favor of approving the settlement.

In evaluating a proposed settlement, the Court's main concern is to ensure that the rights of passive class members are not jeopardized. <u>See</u> 7B <u>Federal Practice & Procedure</u> § 1797.1, at 79; <u>see also</u> <u>Amchem</u>, 521 U.S. at 623. As to class members in the conversion states, the Court is satisfied that the proposed settlement achieves this goal. As discussed above, it is questionable whether plaintiffs could succeed in proving liability, particularly with respect to the ability to establish common methods to prove individual class member damages. The proposed injunctive relief responds to plaintiffs' claims and provides the same relief which plaintiffs might obtain if they proceeded to trials. Under the circumstances, the Court finds that if the parties restructured the proposed settlement to assure adequate representation, the settlement would probably be fair, reasonable and adequate as to class members in conversion states. <u>See</u>, <u>e.g.</u>, <u>Manual For Complex</u>

Litigation Fourth § 21.62 (reasonableness depends on analysis of class allegations and claims and responsiveness of settlement to those claims; adequacy involves comparison of relief granted relative to what class members might have obtained without using class action process).

### 2. Non-Conversion States

In the non-conversion states – Indiana, Kansas, Maryland, Missouri, New Jersey, Oregon and Pennsylvania – Costco does not purchase fuel on a temperature adjusted basis.  Under the proposed settlement, Costco agrees that if it begins to purchase motor fuel on a temperature adjusted basis in any of those states, it will convert motor fuel dispensers in that state to ATC dispensers.  See Settlement Agreement ¶ 1.17, ¶¶ 4.2-4.3.  As noted, to determine whether the proposed settlement is fair, reasonable and adequate, the Court considers the following factors:

> (1) whether the proposed settlement was fairly and honestly negotiated;
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks, 314 F.3d at 1188.

As to the first factor, the Court has no doubt that the parties in the non-conversion states reached the proposed settlement through fair and honest negotiations.  As noted, the settling parties are represented by top-notch lawyers who have vigorously litigated the case on behalf of their clients.  This factor weighs in favor of approving the proposed settlement.

As to the second factor, the case presents serious questions of law and fact which place the ultimate outcome of the litigation in doubt.  Defendants hotly contest liability, and it is possible that plaintiffs would be unsuccessful if the cases proceeded to trial.  This is particularly true in the non-conversion states, where Costco does not purchase fuel on a temperature adjusted basis and

-42-

presumably does not gain an unfair advantage by selling non-temperature adjusted fuel to class members.  Under these circumstances, it appears that plaintiffs would face an uphill battle in proving liability against Costco in the non-conversion states.  This factor therefore weighs in favor of approving the proposed settlement.

As to the third factor, the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.  While the value of injunctive relief in the non-conversion states may seem low – i.e. the possibility that Costco will convert its pumps to ATC *if* it begins purchasing fuel on a temperature adjusted basis – it seems reasonable under the circumstances.  Because Costco does not purchase fuel on a temperature adjusted basis in the non-conversion states, it presumably does not gain an unfair advantage by selling non-temperature adjusted fuel to class members in those states.  Therefore, if the cases proceeded to trial, it is unlikely that plaintiffs could prove liability against Costco in the non-conversion states.  Under the proposed settlement, class members receive assurance that Costco will change its practice if it begins purchasing fuel on temperature adjusted basis.  The proposed settlement would produce certainty for plaintiffs and Costco and greatly reduce litigation expenses.  Under the circumstances, the third factor weighs in favor of approving the proposed settlement.

As to the fourth factor, Costco and the named plaintiffs obviously believe that the settlement is fair and reasonable.  This factor therefore weighs in favor of approving the settlement.

In evaluating a proposed settlement, the Court's main concern is to ensure that the rights of passive class members are not jeopardized.  See 7B Federal Practice & Procedure § 1797.1, at 79; see also Amchem Prods., 521 U.S. at 623.  As to class members in the non-conversion states, the Court is satisfied that the proposed settlement achieves this goal.  As discussed above, in the non-

-43-

conversion states, Costco does not purchase fuel on a temperature adjusted basis and plaintiffs would unlikely prove liability in those states. The proposed settlement provides certainty to class members that should Costco begin purchasing temperature adjusted fuel in any non-conversion state, it would convert pumps in that state to ATC. Under the circumstances, the Court finds that if the parties restructured the proposed settlement to assure adequate representation, it would probably be fair, reasonable and adequate as to class members in non-conversion states. See, e.g., Manual For Complex Litigation Fourth § 21.62 (reasonableness depends on analysis of class allegations and claims and responsiveness of settlement to those claims; adequacy involves comparison of relief granted relative to what class members might have obtained without using class action process).

### 3.    States In Which Costco Does Not Sell Motor Fuel

In the states in which Costco does not sell motor fuel – Arkansas, Delaware, Louisiana, Mississippi, Oklahoma, District of Columbia and Guam – the settlement provides no relief. As an initial matter, because Costco does not sell motor fuel in these states, the Court questions whether settlement class members even exist. As noted, to determine whether the proposed settlement is fair, reasonable and adequate, the Court considers the following factors:

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks, 314 F.3d at 1188.

As to the first factor, the representative plaintiffs are not from states where Costco does not sell motor fuel. Accordingly, it appears that neither the representative plaintiffs nor their lawyers have represented the interests of class members in states in which Costco does not sell motor fuel.

Under these circumstances, the Court cannot find that the proposed settlement was fairly and honestly negotiated as to these class members.  This factor weighs against approving the proposed settlement as to class members in states in which Costco does not sell motor fuel.

As to the second factor, because Costco does not sell motor fuel in these states, it appears that class members in these states would not have viable claims against Costco.  Thus, as to these class members, the case does not present serious questions of law and fact which place the ultimate outcome of the litigation in doubt.  This factor weighs against approving the proposed settlement as to class members in states in which Costco does not sell motor fuel.

As to the third factor, the proposed settlement provides no relief to class members in states in which Costco does not sell motor fuel.  On the other hand, if the cases proceeded to trial, it is unlikely that plaintiffs could prove liability against Costco in these states.  Under these circumstances, the third factor is neutral, i.e. it does not weigh in favor of approving or not approving the proposed settlement as to class members in states in which Costco does not sell motor fuel.

As to the fourth factor, Costco and the named plaintiffs obviously believe that the settlement is fair and reasonable.  Because the named plaintiffs do not represent class members in states in which Costco does not sell motor fuel, however, this factor is neutral.

In evaluating a proposed settlement, the Court's main concern is to ensure that the rights of passive class members are not jeopardized.  See 7B Federal Practice & Procedure § 1797.1, at 79; see also Amchem, 521 U.S. at 623.  As to class members in states in which Costco does not sell motor fuel, it is not clear that the proposed settlement achieves this goal.  As discussed above, because Costco does not sell motor fuel in these states, is it unclear whether class members exist

and, if so, whether they have viable claims against Costco. The proposed settlement provides no relief to class members in states in which Costco does not sell motor fuel and the named representatives do not appear to represent the interests of class members in these states. Under these circumstances, the Court cannot determine whether the proposed settlement would be fair, reasonable and adequate as to class members in states in which Costco does not sell motor fuel.[34]

See, e.g., Manual For Complex Litigation Fourth § 21.62 (reasonableness depends on analysis of class allegations and claims and responsiveness of settlement to those claims; adequacy involves comparison of relief granted relative to what class members might have obtained without using class action process).

### 4.    Objections

#### a.    No Money To Class Members

Some class members object that the proposed settlement provides no money to class members. See, e.g., Alkon Objection (Doc. #1578) at 10-11; Chilimidos Objection (Doc. #1579) at 7; Exhibit to McKerley Objection (Doc. #1581) at 2-4; Weinstein Objection (Doc. #1585) at 3. As discussed above, as to non-conversion states, because Costco does not purchase fuel on a temperature adjusted basis, it is unlikely that plaintiffs could prevail on their claims. Moreover, as to both conversion and non-conversions states, even if plaintiffs could prove liability, it is questionable whether they could establish common methods to prove individual class member damages. See In re Motor Fuel, 2010 WL 2160889, at *12. In light of these apparent

---

[34]    In light of this conclusion, with regard to class members in states in which Costco does not sell motor fuel, the Court does not address class member objections to the proposed settlement.

difficulties in plaintiffs' cases, the proposed settlement would be fair, reasonable and adequate.[35]
Objections regarding no monetary payment to class members would not prevent the Court from
approving the proposed settlement as to class members in conversion and non-conversion states.

### b. Proposed Injunctive Relief Benefits Only Future Costco Members

Some class members object that the proposed settlement will only benefit
future Costco members. See, e.g., Alkon Objection (Doc. #1578) at 12-13; Exhibit to McKerley
Objection (Doc. #1581) at 2-3. These objectors contend that this result is unfair because some future
Costco members are not class members, yet they would benefit from the proposed injunctive relief,
while some class members will not be future Costco members and therefore would not benefit from
the proposed injunctive relief. While individual circumstances may vary, it appears that all class
members will have a right to purchase ATC fuel from Costco in conversion states.[36] As discussed,
if the cases proceed to trial, it is unlikely that plaintiffs would prevail on claims in non-conversion
states, and uncertain whether they could establish individual damages on claims in conversion states.
Under these circumstances, the proposed settlement would provide relief which is fair, reasonable
and adequate. Objections that the proposed settlement benefits only future Costco members would
not prevent the Court from approving the proposed settlement as to class members in conversion and
non-conversion states.

---

[35] The Court notes that individual class members had a choice to opt out of the
settlement to try to prove damages on an individual basis.

[36] The objectors assert that some class members may move out of conversion states and
will not have access to the ATC pumps. Even so, they will have an opportunity to purchase ATC
fuel if they travel to a conversion state. As to class members who are no longer members of Costco,
they can choose to renew their memberships to obtain ATC fuel if they wish.

c.      **Proposed Injunctive Relief Does Not Benefit Class Members**

Some class members object that the proposed injunctive relief would not benefit class members. See, e.g., Hudson Objection (Doc. #1349-1); Alkon Objection (Doc. #1578) at 8-10. Specifically, these objectors contend that under the proposed settlement, class members would end up paying higher prices to compensate Costco for the cost of installing ATC pumps, which would outweigh any economic benefit of purchasing ATC fuel.

As an initial matter, the Court notes that if Costco continued to litigate these cases, class members who purchase fuel and other goods from Costco would presumably subsidize those costs as well. At the settlement fairness hearing, counsel for plaintiffs represented that each Costco station has approximately 16 pumps which would cost approximately $2,500 to $2,700 each to convert to ATC. Tr. at 23:11-29. In California, Costco sells gas at 82 stores, more than in any other conversion state. Id. at 24:5-7. Assuming that each California store has 16 pumps which would cost $2,700 each to convert to ATC, it would cost $3,542,400 to convert all California pumps to ATC. On its face, this amount seems high. At the settlement hearing, however, class counsel represented that Costco has 4,350,217 members in California,. Tr. 25:22-23. If each member purchased fuel, the cost of conversion would be less than one dollar per member. To fully evaluate the cost of conversion, the Court would need to compare the total cost of conversion with the total amount of Costco's annual fuel sales and net profits therefrom.[37] The proposed settlement plans to phase the pump conversion over five years, so the cost of conversion presumably would be spread over five years. Moreover, once the cost of conversion is paid, class members who purchase ATC fuel from

---

[37]      If the parties choose to restructure the settlement for each conversion state, they should provide information regarding the number of Costco members who purchase fuel and Costco's total annual fuel sales and net profits therefrom.

Costco would presumably reap economic benefits.  In addition, those class members would benefit from increased price transparency and fairness, accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping.  See Exhibit 7 ¶ 15 (filed under seal); California Energy Commission ("CEC") Report of March 2009 (Doc. #1343-19) filed September 30, 2009.[38]

Some objectors contend that after installing ATC, Costco would simply adjust its fuel price to account for temperature variation, so class members would receive no economic benefit from the proposed injunctive relief.  See Alkon Objection (Doc. #1578) at 8; Exhibit to McKerley Objection (Doc. #1581) at 4.  The proposed settlement does not limit Costco's ability to alter fuel price based on temperature.  Nevertheless, the Court has no reason to believe that market pressures would allow it to do so.  Class members would have a choice to purchase fuel from various vendors who do not adjust for fuel temperature.  Costco would therefore need to keep fuel prices competitive to attract class members and other fuel purchasers.  At the settlement fairness hearing, counsel for Costco stated that Costco is committed to selling at the low price in the market and that because Costco is not likely to change its pricing philosophy, it may be at a competitive disadvantage if it sells temperature adjusted fuel while its competitors do not.  See Tr. at 57:7-25.  Thus, while objectors are correct that Costco would be free to adjust its prices to account for fuel temperature, it does not appear likely that it would do so.  Even so, if it did, class members would be free to purchase fuel from other vendors.  In the end, it appears that class members would benefit from the choice whether

---

[38]    After conducting a cost-benefit analysis, the CEC concluded that implementing ATC at retail in California would result in a negative net cost to society which, when quantified by cents per gallon, is small.  See CEC Report of March 2009 (Doc. #1343-19).  The CEC recommended that the state legislature consider whether the possibility of increased fairness, accuracy and consistency of fuel measurement would justify mandating ATC at California retail stations.  See id.

to buy temperature adjusted fuel from Costco or non-temperature adjusted fuel from other fuel vendors.

Some objectors contend that some class members would receive more gas without ATC. <u>See</u> <u>Alkon Objection</u> (Doc. #1578) at 14-16.  As an initial matter, the Court notes that said class members are hypothetical and objectors do not contend that they, or anyone they know, frequently buy gas at cooler temperatures and would therefore receive more overall gas if Costco did not implement ATC.  More importantly, if class members believe they will be worse off purchasing ATC fuel from Costco, they will be free to purchase fuel from vendors who do not adjust for temperature.  Thus, the proposed injunctive relief would not harm class members who purchase fuel in cold weather.  On this record, the Court would need additional information regarding the cost of conversion to determine whether it would outweigh potential benefits to class members.  Otherwise, it does not appear that these objections would prevent the Court from approving the proposed settlement as to class members in conversion and non-conversion states.

### d.        Proposed Injunctive Relief Is Illusory

Some objectors complain that the proposed injunctive relief is illusory. <u>See</u> <u>Alkon Objection</u> (#1578) at 13, 16-18; Exhibit to <u>McKerley Objection</u> (Doc. #1581) at 4. Specifically, they complain that (1) injunctive relief to class members in non-conversion states is contingent on Costco purchasing fuel on an ATC basis; (2) Costco has five years to phase in ATC pumps; (3) Costco can avoid performance in certain circumstances; and (4) Costco's installation of ATC depends on diligence of class counsel to seek regulatory approval for Costco after they have been paid. <u>See</u> <u>Alkon Objection</u> (#1578) at 13, 16-18.

As discussed above, it appears that the proposed injunctive relief in non-conversion states

would be fair, reasonable and adequate.  In non-conversion states, Costco does not purchase fuel on a temperature adjusted basis and it is unlikely that plaintiffs could prove liability in those states.  The proposed settlement would provide certainty that should Costco begin purchasing temperature adjusted fuel in any non-conversion state, it would convert pumps in that state to ATC.  Under the circumstances, the proposed injunctive relief for non-conversion states would be reasonable.

As to the five year period for converting pumps to ATC, the Court is satisfied that the provision is reasonable.  As noted, by converting pumps over five years, any costs which Costco would pass to class members presumably would be spread over five years as well.  Moreover, Costco has represented that it needs time to navigate possible hurdles with state regulatory agencies regarding implementation of ATC fuel in each conversion state.  Tr. 52:25 to 53:9.  Under the circumstances, the five-year phase in period is reasonable.

As to Costco's ability to avoid performance, the proposed settlement agreement provides that Costco will not be liable if it fails to meet an obligation due to an act or omission of a third party or other cause beyond Costco's control, including inability to procure sufficient and affordable ATC equipment or state regulatory approval.  See Settlement Agreement ¶ 4.5.[39]  At the settlement

---

[39]     The settlement agreement states as follows:

   **4.5.    Force Majeure.**  Costco shall not be liable for failure to perform any obligation set forth in this Agreement, and any such failure shall not be considered a breach of or non-compliance with the terms of Agreement, if such failure results from the actions or omissions of a third party or other cause beyond Costco's control. This provision shall apply, for example, if Costco is unable to procure sufficient and affordable (as agreed to by Class Counsel and Costco or if failure to agree by the Parties, then as determined by the Court) ATC equipment to comply with its obligations....    It shall also apply if Costco is unable to meet the five-year implementation deadline ... due to delays in any regulatory approval that is required by law.

(continued...)

-51-

hearing, class counsel represented that Costco has indicated that the cost of conversion will not prevent it from moving forward with the settlement.  Tr. 22:24 to 23:6.  In light of this assurance, the force majeure clause is reasonable under the circumstances.[40]

The proposed settlement agreement provides that Costco may rescind the agreement if it loses a commercially material amount of its motor fuel supply and/or experiences commercially material increases in price of motor fuel in a conversion state as a result of the settlement agreement. See Settlement Agreement ¶ 4.8.[41]  At the settlement hearing, counsel for Costco represented that to date, Costco has not experienced any issues regarding supply disruption. Tr. 52:20-24. The Court notes that should Costco experience supply disruption, its remedy would be to rescind the agreement, which would put the parties back to their original positions.  See C.J.S. Contracts § 488 (object of rescission to return parties to same position they would have occupied had they not entered into contract).  If that occurred, it appears that plaintiffs would re-acquire the right to bring

---

[39](...continued)
Settlement Agreement ¶ 4.5 (emphasis in original).

[40]    The Court notes that if Costco attempted to exercise the force majeure clause unjustly, class members could bring suit for damages and/or specific performance.  Moreover, the Court would retain jurisdiction to enforce the settlement terms and final judgment.

[41]    The settlement agreement states as follows:

**4.8.    Supply Disruption.**  If Costco, as a direct or indirect result of the Settlement agreement (determined solely in the good faith subjective judgment of Costco), loses a commercially material amount of its current motor fuel supply and/or experiences a commercially material increase in the price of motor fuel in a Conversion State, the Agreement shall, at Costco's election, be rescinded, cancelled, and annulled as applied to that state if ATC shall not have been installed and operating with requisite public notice in the majority of Retail Locations in that State for at least one year. If Costco exercises this option, it shall provide Class Counsel with written notice of its election.

Settlement Agreement ¶ 4.8 (emphasis in original).

suit on their original claims.  Under the circumstances, the supply disruption clause is reasonable.[42]

With regard to state regulatory approval, the proposed settlement agreement provides that if Costco determines that state regulatory approval is required, class counsel will take all reasonable steps to seek such approval.  See Settlement Agreement ¶ 4.6.[43]  Some objectors contend that class counsel would not have an incentive to secure regulatory approval because they already would have received their attorneys' fees under the settlement.  The proposed settlement agreement requires Costco to pay attorneys' fees within 15 days after the effective date (as defined in the agreement). See Settlement Agreement ¶¶ 1.8, 7.3.  In response to the objection, however, plaintiffs state that class counsel will request that 50 per cent of the fee be paid within 15 days of the effective date and the remaining 50 per cent be paid on yearly benchmarks related to Costco's installation of ATC equipment.  Under the amended fee proposal, it appears that class counsel would retain a monetary incentive to obtain regulatory approval.  If the parties restructure the settlement to assure adequate representation and the Court awards attorneys' fees, it would have an opportunity to evaluate the

---

[42]     Again, if Costco attempted to exercise the supply disruption clause unjustly, class members could bring suit for damages and/or specific performance.  Moreover, the Court would retain jurisdiction to enforce the settlement terms and final judgment.

[43]     The settlement agreement states as follows:

**4.6.     Regulatory Approval.** Following Preliminary Approval, Class Counsel and Company Counsel shall provide each other with any and all non-privileged evidence in their possession concerning whether or not any Conversion State allows or prohibits ATC.  If in the good faith judgment of the Company there is any regulatory approval required as a matter of law, beginning on the Effective Date, the Company shall notify Class Counsel and Class Counsel agree to take all reasonable steps to seek such regulatory approval required by law from each of the Conversion States so that Costco can fully comply with the obligations of this Settlement Agreement.

Settlement Agreement ¶ 4.6 (emphasis in original).

timing of payment of attorneys' fees to ensure that counsel have proper incentives to implement the settlement agreement. Thus, objections that the proposed injunctive relief is illusory would not prevent the Court from approving of the proposed settlement as to class members in conversion and non-conversion states.

### e.    Inadequate Means To Ensure Compliance

Some objectors complain that the proposed settlement does not contain a provision to enforce, monitor or publicize compliance with the settlement. Exhibit to McKerley Objection (Doc. #1581) at 2. The proposed settlement requires Costco to provide class counsel a compliance report every six months. See Settlement Agreement ¶ 4.8.[44] If the parties restructure the settlement, it should require Costco to file regular compliance reports with the Court. With that modification, the proposed settlement would provide adequate information for the Court and class members to monitor and enforce Costco's compliance with the proposed settlement.

### f.    Unfair Opt Out Procedure

Some objectors assert that the opt out procedure is unfair and should not require class members to show proof of gasoline purchase. See, e.g., Dougherty Objection (Doc. #1577) at 1. Specifically, they complain that the proof of purchase requirement places too high a burden on those who want to opt out. See id. As noted, between September 9, 2009 and January 29, 2010, Costco sent class members notice which stated that proof of gasoline purchase

---

[44]    The settlement agreement states as follows:

**4.8.    Compliance Reporting.** Within six months of the Effective Date, and within each six month period thereafter during the Term of this Settlement, Costco will serve on Class Counsel a declaration executed under penalty of perjury describing Costco's compliance with the requirements of section 4.

Settlement Agreement ¶ 4.8 (emphasis in original).

was required to opt out.  See Acpal Declaration (Doc. #1599) ¶ 6; Exhibit A to Notice Of Filing Of Proposed Revised Class Notice (Doc. #1278).  The notice also directed class members to Costco's website for detailed information regarding the settlement.  Exhibit A to Notice Of Filing Of Proposed Revised Class Notice (Doc. #1278).  Beginning September 22, 2009, Costco prominently displayed the following notice on its website: "NOTE, IF YOU CHOOSE TO OPT OUT OF THE SETTLEMENT, **A RECEIPT IS NO LONGER REQUIRED**." McDowell Declaration (Doc. #1600) filed March 19, 2010 ¶ 4 (emphasis in original).  Under the circumstances, the website provided adequate notice that class members did not have to show proof of purchase to opt out of the proposed settlement.  Objections that the opt out procedure is unfair would not prevent the Court from approving of the proposed settlement as to class members in conversion and non-conversion states.

### g.      Class Representatives Should Not Be Paid

Some class members object that class representatives should not be paid while class members receive nothing.  See, e.g., Dougherty Objection (Doc. #1577); Schroeder Objection (Doc. #1584).  The proposed settlement provides that class counsel will ask the Court to award class representatives an incentive fee of $2,500 each and that *if* the Court awards the fee, it will be deducted from the amount awarded to class counsel for fees and costs.  See Settlement Agreement ¶ 7.4.  If the parties restructure the settlement and ask the Court to award class representative incentive fees, the Court will determine whether the circumstances warrant such an award and, if so, an appropriate amount.  See, e.g., Bruner v. Sprint Mgmt. Co., No. 07-2164-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (looking to hours expended by class representatives to

determine incentive fee).[45]

Some class members assert that because class representatives intend to seek an incentive fee, they are not acting in the best interests of class members.  See Dougherty Objection (Doc. #1577) at 1; Alkon Objection (Doc. #1578) at 21-22.  Courts have found that incentive awards to class representatives are justified if necessary to induce individuals to become named representatives, or to compensate them for personal risk incurred or additional effort and expertise provided for the benefit of the class.  See, e.g., UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp., No. 08-1423, 352 Fed. Appx. 232, 234 (10th Cir. Sept. 11, 2009).  Here, the proposed settlement allows class representatives to request an award of $2,500, but it does not require an incentive payment.  Instead, it leaves the Court discretion to award incentive fees if warranted.  Under the circumstances, the fact that class representatives have secured the right to request an incentive fee does not demonstrate that they have acted contrary to the interests of class members.  Objections regarding class representative incentive fees would not prevent the Court from approving the proposed settlement.

### h.    Excessive Attorneys' Fees

Some class members object that the results achieved by the proposed settlement do not warrant attorneys' fees of $10 million.  See, e.g., Hudson Objection (Doc. #1349-1); Weinstein Objection (Doc. #1585) at 3.  The proposed settlement provides that class counsel may ask the Court to award fees and costs in this action, not to exceed $10 million.[46]  See Settlement

---

[45]    If the parties restructure the proposed settlement and request class representative fees, they should submit detailed information regarding what the representatives have done in pursuit of the lawsuits.

[46]    The record reveals no detail regarding any agreement by the settling parties to limit
(continued...)

Agreement ¶ 7.1.  Similar to incentive fees to class representative, the proposed settlement allows class counsel an opportunity to request up to $10 million in attorneys' fees, but it does not *require* such payment.  Instead, it leaves the Court discretion to award attorneys' fees, if warranted.  Under the circumstances, the Court is confident that any fee award would be reasonable.  See, e.g., Gottlieb v. Barry, 43 F.3d 474, 482 n.4 (10th Cir. 1994) (citing factors for reasonable attorneys' fees set forth in Johnson v. Ga. Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

Some class members object that class counsel fees should be based on the number of ATC pumps actually installed, or that counsel should not be paid until class members receive benefits under the settlement.  See Dougherty Objection (#1577) at 7; Chilimidos Objection (Doc. #1579) at 5.  If class counsel applies for attorneys' fees under a restructured settlement, the Court will determine an award which is reasonable under the circumstances.

Some class members assert that if the Court does not approve $10 million in attorneys' fees, class members should receive the difference, and that class counsel have breached fiduciary duties to the class by not negotiating for reversion to the class of any denied fee request.  See Alkon Objection (Doc. #1578) at 18-21; Chilimidos Objection (Doc. #1579) at 9.  These objections misapprehend the settling parties' agreement.  Costco has agreed to pay attorneys' fees which the Court deems reasonable, not to exceed $10 million.  It has not agreed to pay $10 million regardless of the Court's reasonableness determination.  At the settlement fairness hearing, counsel for Costco represented that Costco intends to vigorously oppose *any* fee application.  Tr. 52:15-19.  The Court

---

[46](...continued)
attorneys' fees.  As noted, the settlement agreement does not provide a cap for attorneys' fees.  See Settlement Agreement ¶ 7.1.  The detailed notice on Costco's website, however, states that class counsel's fee request will not exceed $10 million.  See Exhibit D to Motion For Preliminary Settlement Approval (Doc. #1015) ¶ 9.

has no doubt that Costco will seek a reasonable fee significantly less than $10 million dollars.[47]

Under the circumstances, the Court has no reason to believe that Costco would have agreed to pay

$10 million, regardless of the Court's determination of reasonable attorneys' fees.  The fact that

class counsel did not negotiate such a provision does not suggest that they have breached fiduciary

duties to the class.  Objections regarding class counsel's plan to request attorneys' fees would  not

prevent court approval of the proposed settlement.

### i.    Insufficient Notice

Some class members object that notice to the proposed settlement class was

insufficient.  Specifically, they assert that the notice did not include sufficient information regarding

terms of settlement, including proposed payments to lawyers and class representatives, the fact that

class members in non-conversion states will not receive ATC fuel, the amount of loss suffered by

class members, the likelihood of success if the case proceeded to trial, or the basis for class counsel's

request for attorneys' fees up to $10 million.  See Dougherty Objection (Doc. #1577) at 3-5; Alkon

Objection (Doc. #1578) at 24-25; Exhibit to McKerley Objection (Doc. #1581) at 4.  Because the

notice communicated class certification as well as proposed class settlement, it must comply with

the requirements of subsections (c)(2) and (e) of Rule 23.[48]  See Larson v. Sprint Nextel Corp., No.

---

[47]    To the extent some class members might be concerned that they will subsidize an
attorneys' fee award through higher prices at Costco, it is in their best interests that the Court award
a lower amount and that the balance revert back to Costco.

[48]    For classes certified under Rule 23(b)(3), subsection (c)(2)(B) requires the following
notice:

> For any class certified under Rule 23(b)(3), the court must direct to class members
> the best notice that is practicable under the circumstances, including individual
> notice to all members who can be identified through reasonable effort.  The notice
> must clearly and concisely state in plain, easily understood language:

(continued...)

07-5325, 2009 WL 1228443, at *2 (D.N.J. April 30, 2009).  Regarding notice of class certification,

subsection (c)(2) imposes more stringent requirements than subsection (e) imposes with regard to

class settlement.  See id.[49]  With respect to a proposed class settlement, subsection (e) requires only

that the Court direct notice "in a reasonable manner to all class members who would be bound by

the proposal."  Fed. R. Civ. P. 23(e).  Here, the objections go to notice regarding the proposed

settlement.  Thus, Rule 23(e) provides the relevant standard.  The notice directed class members to

a web site with detailed information regarding the terms of settlement, including proposed payments

to class counsel and class representatives.  The web site did not contain information regarding the

---

[48](...continued)

|      |                                                                                      |
|------|--------------------------------------------------------------------------------------|
| (i)  | the nature of the action;                                                            |
| (ii) | the definition of the class certified;                                               |
| (iii)| the class claims, issues, or defenses;                                               |
| (iv) | that a class member may enter an appearance through an attorney if the member so desires; |
| (v)  | that the court will exclude from the class any member who requests exclusion;        |
| (vi) | the time and manner for requesting exclusion; and                                    |
| (vii)| the binding effect of a class judgment on members under Rule 23(c)(3).               |

Fed. R. Civ. P. 23(c)(2)(B).

With respect to a proposed class settlement, subsection (e) requires the Court to direct notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e).

[49]      In addition to the requirements of Rule 23, the Due Process Clause of the United States Constitution guarantees unnamed class members the right to notice of class certification or settlement.  See U.S. Const., amend. V; DeJulius v. New England Healthcare Employees Pension Fund, 429 F.3d 935, 943-44 (10th Cir. 2005).  This due process right does not require actual notice to each party intended to be bound by adjudication of a class action.  See DeJulius, 429 F.3d at 944. The Court must give "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Id. (quoting In re Integra Realty Res., Inc., 262 F.3d 1089, 1110-11 (10th Cir. 2001)).  The legal standards for satisfying Rule 23(c)(2)(B) and due process are coextensive and substantially similar.  See DeJulius, 429 F.3d at 944.

amount of loss suffered by class members or the likelihood of success if the case proceeded to trial.

That information, however, does not appear to be readily available to plaintiffs.  Under the

circumstances, the content of notice regarding the proposed settlement was adequate under Rule

23(e).  See, e.g. Ashley v. Reg'l Transp. Distr. & Amalgamated Transit Union Div. 1001 Pension

Fund Trust, No. 05-cv-01567-WYD-BNB, 2008 WL 834579, at *4 (D. Colo. Feb. 11, 2008).

One objector complains that Costco provided notice on a note card which looked like junk

mail.  See Dougherty Objection (Doc. #1577) at 2.  If the parties restructure the settlement, their

application for approval should provide a physical copy of the actual notice which Costco sent to

class members and explain how the notice was sent.

Some class members complain that they will not have an opportunity to object to class

counsel's fee application.  See Alkon Objection (Doc. #1578) at 25; Chilimidos Objection

(Doc. #1579) at 2-3.  With respect to any request for attorneys' fees, the Court will employ the

procedure set forth in D. Kan. Rule 54.2.[50]  Should the parties choose to restructure the proposed

---

[50]    Rule 54.2 provides as follows:

(a) Consultation Required. A party who moves for statutory attorney's fees pursuant
to Fed. R. Civ. P. 54(d)(2) must promptly initiate consultation with the other party
or parties.
(b) Where the Parties Agree. If the parties reach agreement, they must file an
appropriate stipulation and request for an order.
(c) Where the Parties Disagree. If they are unable to agree, the moving party must
file the following within 30 days of filing the motion:
(1) a statement that, after consultation in accordance with this rule, the parties
have been unable to reach an agreement with regard to the fee award; and
(2) a memorandum setting forth the factual basis for each criterion that the
court is asked to consider in making an award.
(d) Statement of Consultation. The statement of consultation must set forth the date
of the consultation, the names of those who participated, and the specific results
achieved.
The court will not consider a motion for statutory attorney's fees made

(continued...)

settlement, Costco should maintain its web site and provide updated information regarding the restructured settlement and any fee request by class counsel.  If the settling parties reach an agreement with respect to proposed attorneys' fees, they should file details regarding the agreement and the basis therefor, and serve such information on all class members who filed objections to the proposed settlement.  The Court will allow class members 30 days to file objections to any such agreement.  If the settling parties do not reach an agreement with respect to proposed attorneys' fees, class counsel shall serve any motion for attorneys' fees on all class members who filed objections to the proposed settlement.  Within 30 days, class members may file objections to any motion for attorneys' fees by class counsel.[51]

### E.      Conclusion

As discussed above, the parties have not structured the proposed settlement in a way to assure that named representatives have operated under a proper understanding of their representational responsibilities to distinct subgroups within the settlement class.  In addition,

---

[50](...continued)
pursuant to Fed. R. Civ. P. 54(d)(2) until the moving party files the statement of consultation in compliance with this rule.
(e) Memorandum and Response. The memorandum in support of the Rule 54 motion must be supported by time records, affidavits, or other evidence.  The memorandum need not be filed at the same time as the motion.  This is an exception to Rule 7.1(a).  Other parties have 14 days to file a response to the memorandum in compliance with this rule.
(f) Discovery. Discovery may not be conducted in connection with motions for awards of attorney's fees unless the court permits upon motion and for good cause.

D. Kan. Rule 54.2.

[51]      As noted, class members also object that (1) the case is frivolous; (2) the matter should be handled by state regulators; (3) they do not like class action lawsuits; and (4) until ATC pumps are installed, Costco should lower the price of gas on warm days.  The Court has reviewed these objections and finds them to be without merit.

plaintiffs have not shown that representatives from one state can adequately represent the interests of class members who reside in different states with presumably different laws. Accordingly, plaintiffs have not shown that the named representatives are adequate representatives under Rule 23(a)(4).

The parties could restructure the proposed settlement in a way to (1) assure that representatives from conversion states represent class members from conversion states and that representatives from non-conversion states represent class members from non-conversion states; and (2) create subclasses which account for any material differences in state laws. As to states in which Costco does not sell motor fuel, however, it is unclear whether class members exist and whether a restructured agreement should include such states. As to class members in conversion and non-conversion states, if the parties choose to restructure the settlement to assure adequate representation, it appears that the proposed settlement classes would satisfy the predominance and superiority requirements of Rule 23(b)(3), and that the proposed settlement would be fair, reasonable and adequate under Rule 23(e).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion And Memorandum In Support Of Final Approval Of Class Action Settlement (Doc. #1620) filed April 1, 2010 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Order Striking Supplemental Suggestions In Support Of Objections To Settlement (Doc. #1634) filed April 15, 2010 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Objectors' Opposition To Plaintiffs' Motion For Order Striking Supplemental Suggestions In Support Of Objections To Settlement, And Objectors'

<u>Request For Leave Nunc Pro Tunc To File Supplemental Suggestions</u> (Doc. #1644) filed April 23, 2010 be and hereby is **SUSTAINED.**   The Court grants leave for the McKerley Objectors to file supplemental suggestions in support of their objections to the proposed settlement.

**IT IS FURTHER ORDERED** that <u>Alkon Objectors' Motion To Strike Plaintiffs' April 1 Briefing, Or, In The Alternative, Strike Declaration Of Dr. Andrew Safir Under *Daubert*, And Memorandum In Support</u> (Doc. #1665) filed May 5, 2010  be and hereby is **OVERRULED**.

Dated this 13th day of August, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge