# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) <br> SALES PRACTICES LITIGATION ) <br> ) <br> [This Document Relates To All Cases.] ) <br> ) | MDL No. 1840 <br> Case No. 07-1840-KHV |

## MEMORANDUM AND ORDER

Plaintiffs bring putative class action claims for damages and injunctive relief against motor fuel retailers in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia, Puerto Rico and Guam. See Second Consolidated Amended Complaint (Doc. #652) filed December 1, 2008 ¶ 11.[1] Plaintiffs claim that because defendants sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion, they are liable under state law theories which include breach of contract, breach of warranty, fraud and consumer protection. This matter comes before the Court on The Owner-Operator Independent Drivers Association's Objections To The Magistrate Judge's July 7, 2010 Order Re: Defendant Exxon Mobil Corporation's Motion To Compel (Doc. #1697) filed July 21, 2010. For reasons stated below, the Court overrules the objections.

**I.   Legal Standards**

Upon objection to a magistrate judge order on a non-dispositive matter, the district court may modify or set aside any portion of the order which it finds to be clearly erroneous or contrary to law.

---

[1] Following a transfer order of the Judicial Panel on Multidistrict Litigation, the Court has jurisdiction over consolidated pretrial proceedings in these actions. See 28 U.S.C. § 1407; Doc. #1 filed June 22, 2007.

Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). With regard to fact findings, the Court applies a deferential standard which requires the moving party to show that the magistrate judge order is clearly erroneous. See Burton v. R.J. Reynolds Tobacco Co., 177 F.R.D. 491, 494 (D. Kan. 1997). Under this standard, the Court is required to affirm the magistrate judge order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)); see also Smith v. MCI Telecomm. Corp., 137 F.R.D. 25, 27 (D. Kan. 1991) (district court generally defers to magistrate judge and overrules only for clear abuse of discretion). With regard to legal matters, the Court conducts an independent review and determines whether the magistrate judge ruling is contrary to law. See Sprint Commc'ns Co. v. Vonage Holdings Corp., 500 F. Supp.2d 1290, 1346 (D. Kan. 2007); see also 11 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice And Procedure § 3069 (2d ed., 2009 update). Under this standard, the Court conducts a plenary review and may set aside the magistrate judge decision if it applied an incorrect legal standard or failed to consider an element of the applicable standard. See, e.g., Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc., No. 2:02-CV-950 TS, 2009 WL 5066679, at *2 (D. Utah Dec. 16, 2009); Jensen v. Solvay Chem., Inc., 520 F. Supp.2d 1349, 1350 (D. Wy. 2007); Dias v. City & County of Denver, Colo., No. CIVA07CV00722-WDM-MJW, 2007 WL 4373229, at *2 (D. Colo. Dec. 7, 2007); McCormick v. City of Lawrence, Kan., No. 02-2135-JWL, 2005 WL 1606595, at *2 (D. Kan. July 8, 2005); cf Weekoty v. United States, 30 F. Supp.2d 1343, 1344 (D.N.M. 1998) (applying de novo review to magistrate judge legal determination on non-dispositive matter).

**II.     Procedural History**

On May 26, 2010, Exxon Mobil Corporation ("Exxon") filed a motion to compel production of documents by Owner-Operator Independent Drivers Association of America ("OOIDA"), a non-party trade association which represents the interests of independent owner-operators and professional drivers on issues that affect truckers. See Doc. #1671. Among other things, Exxon sought to discover documents and communications between OOIDA and the law firm of Korein Tillery related to studies regarding the temperature of motor fuel and the impact of temperature on energy content of motor fuel.[2] See id. at 1. In response to the motion to compel, OOIDA asserted that attorney-client privilege protects against disclosure of the documents. See Doc. #1685 at 2, 4-10.[3] Specifically, OOIDA asserted that it had retained Korein Tillery for legal advice and counsel regarding the interests, rights and damages of it and its members relating to sales of hot motor fuel. See Doc. #1685 at 9. OOIDA asserted that Korein Tillery continued to represent and advise it on hot fuel issues, including analysis of pending hot fuel litigation, pending state and federal legislative and regulatory measures addressing the sale of hot fuel and implementation of automatic temperature compensation equipment. See id. ¶¶ 8, 11-12.

---

[2]     George Zelcs of Korein Tillery serves as co-lead counsel for plaintiffs in the MDL proceeding. See Doc. #148 filed September 11, 2007. Although OOIDA is not a party in the MDL proceeding, some of its members are named plaintiffs.

[3]     In response to the motion to compel, OOIDA also asserted that attorney work product doctrine protects against disclosure of some documents. See Doc. #1685 at 2, 10-18. The magistrate judge rejected that argument and ordered OOIDA to produce those documents by July 21, 2010. See Doc. #1694 at 8-12. OOIDA does not challenge that portion of the magistrate judge ruling. See Doc. #1697 at 7 n.1.
     OOIDA also asserted that the First Amendment protects against disclosure of some documents. See Doc. #1685 at 2. The parties have agreed to defer that issue pending the Tenth Circuit ruling on appeal from this Court's Memorandum And Order (Doc. #1583) filed March 4, 2010. See Doc. #1697 at 4 n.1.

On July 10, 2010, Magistrate Judge James P. O'Hara issued a memorandum and order which took under advisement Exxon's motion to compel with respect to documents for which OOIDA asserted attorney-client privilege. See Doc. #1694 at 13. Judge O'Hara found approximately 100 documents at issue.[4] See id. at 2-3. Regarding whether attorney client privilege might apply, Judge O'Hara stated as follows:

> The court notes initially that the vast majority of the documents OOIDA is withholding under the attorney-client privilege are dated after the last lawsuit was filed in this MDL action. Thus, it is quite unlikely that those documents contain legal advice and counseling regarding whether OOIDA or its members should file suit. Second, while the court agrees with OOIDA that "OOIDA is entitled to retain counsel to provide it legal advice with regard to hot fuel issues, including with respect to ongoing hot fuel litigation involving some of OOIDA's members," the establishment of an attorney-client relationship does not mean that every communication between OOIDA and its counsel – even every communication that discusses the hot fuel issue – is privileged. "Legal advice must predominate for the communication to be protected." Thus, to the extent that a document actually seeks or gives legal advice (and, as asserted by OOIDA, such advice might include such things as an analysis of OOIDA's and its members' rights and recourse with respect to "the sale of hot motor fuel"), it is protected by the privilege. But documents in which OOIDA does not seek legal advice or Korein Tillery does not provide legal advice are not privileged.

Id. at 6-7 (footnotes and citations omitted). Based on the privilege log which OOIDA provided, Judge O'Hara found that it was impossible to determine whether attorney client privilege applied.[5]

---

[4] Judge O'Hara found that the documents relate to this MDL litigation and the issue of hot fuel. See Doc. #1694 at 2-3. He noted that documents which specifically mention this MDL litigation involve the following topics: (1) OOIDA members who are named plaintiffs; (2) possible witnesses and consultants; (3) calculations of loss and damages; (4) gathering information and preparing materials; and (5) media coverage. See id.

[5] With regard to the privilege log, Judge O'Hara stated as follows:

It is impossible for the court to determine from OOIDA's privilege log which category each withheld document falls in. For example, emails "regarding motor fuel" and "regarding motor fuel pumps," may simply contain facts about these topics

(continued...)

See id. at 7. He ordered that on or before July 21, 2010, OOIDA submit the documents for *in camera* review by the Court.[6] See id.

On July 21, 2010, OOIDA filed objections to the magistrate judge order of July 7, 2010. See Doc. #1697. In the objections, OOIDA asserts that Judge O'Hara applied the wrong legal standard regarding attorney client privilege and that under the correct legal standard, the Court need not conduct an *in camera* review.

On July 26, 2010, OOIDA filed a motion asking the court to stay the July 21 deadline for it to submit the documents for *in camera* review. See Doc. #1700. On the same date, Exxon filed a motion to enforce the magistrate judge order of July 7, 2010 and to hold OOIDA in contempt for not producing the documents for *in camera* review by the July 21 deadline. See Doc. #1701. On September 16, 2010, Judge O'Hara entered an order which stayed the deadlines of his July 7 order and overruled the motion to hold OOIDA in contempt of court. See Doc. #1714.

---

[5](...continued)
(not privileged) or they may contain a legal analysis about these topics (privileged). It appears that many of the documents are from OOIDA to Korein Tillery, giving Korein Tillery information (such as possible witnesses and loss calculations) for use by plaintiffs (whom, as mentioned, Korein Tillery also represents) in this litigation. These documents do not seem to fall under the scope of the attorney-client relationship – the providing of such information to one's attorney is clearly not the rendering of legal advice by the attorney and is unlikely involved in the seeking of legal advice by the client. More importantly, if this information was shared with plaintiffs, "[s]ubmission of the document to [a] third party removes any cloak of privilege."

Doc. #1694 at 7 (footnote and citation omitted).

[6] Judge O'Hara ordered that before OOIDA submitted the documents to the Court, it should take a "hard look" at whether attorney client privilege applies to each document. Doc. #1694 at 7-8. He stated that "[t]he court expects that the documents submitted for review will number far fewer than the 100 listed on the current version of the privilege log." Id. at 8.

**III. Analysis**

OOIDA objects to the magistrate judge order of July 7, 2010 (Doc. #1694). Specifically, OOIDA asserts that Judge O'Hara applied the wrong legal standard regarding attorney client privilege. OOIDA contends that in determining whether attorney client privilege applies, Judge O'Hara mistakenly applied federal common law which is in "stark conflict" with Kansas law. Doc. #1697 at 2. In the July 7 order, Judge O'Hara stated that the parties seemed to agree that either Kansas law or federal law applies to the attorney client privilege determination.[7] See Doc. #1694 at 3. Judge O'Hara found that because plaintiffs' claims are based on diversity jurisdiction, pursuant to Rule 501, Fed. R. Evid., state law governs the matter.[8] See Doc. #1697 at 3. Judge O'Hara nevertheless found that because no conflict exists between Kansas law and federal law, he would apply federal law. See Doc. #1697 at 3.

OOIDA contends that federal common law regarding attorney client privilege is in "stark conflict" with Kansas law. Doc. #1697 at 2. As an initial matter, it is not clear that any such conflict exists. See, e.g., Soc'y of Prof'l Eng'g Employees in Aerospace, IFPTE Local 2001 v. The Boeing Co., Nos. 05-1251-MLB, 07-1043-MLB, 2009 WL 3711599, at *3 n.9 (D. Kan. Nov. 3, 1999)

---

[7] Judge O'Hara did not state the basis for his observation. In its objections to the magistrate judge order, OOIDA contends that Missouri law applies. See Doc. #1697 at 7 n.2. OOIDA states, however, that the Court may apply Kansas law because no conflict exists between Missouri law and Kansas law. See id.

[8] Rule 501 states, in part, as follows:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

(elements of attorney client privilege under federal law identical to elements under Kansas law); ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y., 183 F.R.D. 276, 278 n.1 (D. Kan. 1998) (generally makes no difference whether court applies federal or Kansas law regarding attorney client privilege); In re A.H. Robins Co., 107 F.R.D. 2, 8 (D. Kan. 1985) (Kansas statute regarding attorney client privilege typical of laws of other jurisdictions); see also Cypress Media, Inc. v. City of Overland Park, 268 Kan. 407, 423, 997 P.2d 681, 692 (2000) (noting ERA Franchise suggests no conflict between federal and Kansas law regarding attorney client privilege).[9]

In its objections to the magistrate judge order, OOIDA states that because it is located in Grain Valley, Missouri, the law of Missouri governs whether attorney client privilege applies. See Doc. #1697 at 7 n.2. OOIDA further states that because Kansas law on the issue is typical of laws of other jurisdictions, it perceives no conflict in applying Kansas law instead of Missouri law. See id. (citing In re A.H. Robins, 107 F.R.D. at 8). OOIDA provides no explanation as to how or why Kansas law on attorney client privilege is similar to Missouri law and other jurisdictions, yet in

---

[9] Under federal law, the essential elements of attorney client privilege are as follows:

(1) [W]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.

In re Grand Jury Subpoena to Kansas City Bd. of Pub. Util., 246 F.R.D. 673, (D. Kan. 2007).

Under Kansas law, the essential elements of attorney client privilege are as follows:

(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

Cypress Media, 997 P.2d at 689 (citations omitted).

"stark conflict" with federal common law.

OOIDA contends that Judge O'Hara mistakenly held that attorney client privilege applies *only* to documents in which OOIDA actually seeks legal advice or in which its attorneys give legal advice. See Doc. #1697 at 5, 12. OOIDA asserts that this holding is contrary to the Kansas Supreme Court decision in Cypress Media, Inc. v. City of Overland Park, Kan., 268 Kan. 407, 997 P.2d 681 (2000). On this record, it is not clear that OOIDA's interpretation of the magistrate judge ruling is correct. In articulating the standard for attorney client privilege, Judge O'Hara did not use the word "only." Judge O'Hara found that for attorney client privilege to apply, "legal advice must predominate." Doc. #1694 at 6 (citing Burton v. R.J. Reynolds Tobacco Co., 170 F.R.D. 481, 484 (D. Kan. 1997)). He stated that "to the extent a document actually seeks or gives legal advice," the attorney client privilege protects against disclosure, but that the privilege does not apply to "documents in which OOIDA does not seek legal advice or Korein Tillery does not provide legal advice." Doc. #1694 at 6-7.

In Cypress Media, the Kansas Supreme Court refused to adopt unqualifiedly the position that attorney client privilege applies *only* to communications which are made for the specific purpose of giving or receiving legal advice. See id., 268 Kan. at 421, 997 P.2d at 690.[10] The Kansas

---

[10] In Cypress Media, under the Kansas Open Records Act, K.S.A. §§ 45-215 et seq., the Kansas City Star sought to obtain copies of billing statements by attorneys for the City of Overland Park, Kansas. Among other things, the City claimed that attorney client privilege protected against disclosure. The trial court found that the privilege applied only if communications were made for the purpose of giving or receiving legal advice. See id., 268 Kan. at 410-11, 997 P.2d at 685. It ordered the City to prepare a detailed privilege log. See id. The City prepared a log which did not provide proper analysis as to why the privilege applied. See id., 268 Kan. at 413, 997 P.2d at 686. The trial court found that the City had not complied with its order and ordered the City to produce the attorney billing statements. See id. The trial court certified its ruling for interlocutory appeal and ordered a stay pending an outcome on appeal. See id. The Kansas Court of Appeals granted the City's request to take an interlocutory appeal to the Kansas Supreme Court.
(continued...)

Supreme Court noted, however, that such a position appears to be consistent with its prior pronouncements of the law. See id. It found that its prior pronouncements suggested that attorney client privilege attaches to communications related to the giving or receiving of legal advice. See id. The Kansas Supreme Court further stated that those statements did not add an element to the statutory definition of attorney client privilege, but rather served as an aid in its interpretation and explanation.[11] See id.

OOIDA apparently contends that contrary to Cypress Media, Judge O'Hara applied an unqualified rule that attorney client privilege applies *only* to communications which are made for the specific purpose of giving or receiving legal advice. His order could equally be read, however, as using such language as an aid in interpreting and explaining the definition of attorney client privilege. Until Judge O'Hara conducts an *in camera* review and decides which documents the attorney client privilege protects, if any, the Court cannot determine that his ruling is erroneous.[12] Thus, to the extent OOIDA contends that the magistrate judge applied the wrong legal standard in

---

[10](...continued)
See id.

[11] The Kansas statute regarding attorney client privilege states as follows:

[Subject to certain exceptions,] communications found by a judge to have been between a lawyer and his or her client in the course of that relationship and in professional confidence, are privileged.

K.S.A. § 60-426(a).

Subsection (c) provides that "communications" includes "advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship." K.S.A. § 60-424(c)(2).

[12] The Court expresses no opinion whether OOIDA's position is correct. The Court has no doubt, however, that Judge O'Hara has read OOIDA's objections and will be mindful of its position during his *in camera* review of the documents.

his order of July 7, the Court overrules the objection as premature. To the extent OOIDA contends that *in camera* review is unnecessary, the Court overrules the objection. See, e.g., Mounger v. Goodyear Tire & Rubber Co., No. 99-2230-JWL, 2000 WL 33712198, at *1-2 (D. Kan. Sept. 22, 2000) (court has discretion to review documents *in camera* where party makes initial, factual showing that privilege exists and parties genuinely dispute accuracy of withholding).

**IT IS THEREFORE ORDERED** that The Owner-Operator Independent Drivers Association's Objections To The Magistrate Judge's July 7, 2010 Order Re: Defendant Exxon Mobil Corporation's Motion To Compel (Doc. #1697) filed July 21, 2010 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that on or before **October 26, 2010,** OOIDA shall produce the documents at issue to Judge O'Hara for *in camera* review.

Dated this 21st day of October, 2010 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> Kathryn H. Vratil
> United Stated District Judge