# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE<br>SALES PRACTICES LITIGATION | )<br>)<br>)    MDL No: 1840 |
| (This Document Relates to All Cases) | )<br>)<br>)    No: 07-md-1840-KHV-JPO |

---

## ALKON OBJECTORS' OPPOSITION TO APPROVAL OF AMENDED SETTLEMENT

COME NOW Amy Alkon and Nicolas S. Martin ("Objectors"), members of the putative class, to object to the proposed settlement between Plaintiffs and Defendant Costco Wholesale Corp. ("Costco") and hereby give notice that they intend to appear at any Fairness Hearing through their counsel, Theodore H. Frank.

In further support hereof, Objectors provide the following memorandum and authorities.

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................3

I. Prospective Injunctive Relief Fails To Compensate Class Members. .................................4

II. The Injunctive Relief is Economically Worthless And Will Harm Class Members Who Must Subsidize The Cost Of Settlement. ..........................................................................7

III. Some Class Members Receive More Gas From Volumetric Gallons Than They Would With Automatic Temperature Compensation ("ATC") "Gallons." ..................................12

IV. The Class Representatives Are Self-Dealing. ..................................................................12

V. The Settlement's Amendment To Expand The Class Means That Much Of The Class Has Never Been Given Notice Or An Opportunity To Object..................................................14

VI. To Date, Notice Is Insufficient Under Rule 23(h) Because It Fails To Set Forth The Basis For Attorneys' Fees. ...........................................................................................................15

CONCLUSION.......................................................................................................................16

PROOF OF SERVICE...........................................................................................................18

## INTRODUCTION

Class members Amy Alkon and Nicolas S. Martin renew their objection and oppose approval of the proposed amended settlement. In addition to the problems identified in their initial objection, the Alkon objectors submit additional evidence and argument against approval of this settlement.

*First*, as a matter of law, prospective injunctive relief is not a benefit to the class compensating the class for any alleged harm from consumer fraud. This settlement, based entirely on prospective injunctive relief, is thus impermissible. "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (Wood, J.).

*Second*, even if the court views prospective injunctive relief as a potential benefit to the class, the settling parties have failed to meet their burden proving that the injunctive relief is actually a benefit to the class. Their only evidence in support of this proposition, the declaration of Dr. Andrew Safir, is inadmissible under *Daubert* because it relies upon speculation rather than sound economic analysis. *See* Declaration of Dr. David R. Henderson. Moreover, the evidence is that the prospective injunctive relief will *not* be a benefit to the class. *Id.*

*Third*, the evidence is that the proposed injunctive relief will make some members of the class worse off. *Id.* ¶¶ 16-22. As such, the class is not cohesive and cannot be certified for purposes of injunctive relief.

*Fourth*, the proposed incentive awards to the representative plaintiffs are disproportionate and violate Rule 23.

*Fifth*, the amendments to the settlement expand the class, but the new class members were never given notice and an opportunity to object to the settlement. For this independent reason, the amended settlement cannot be approved.

*Sixth*, intervening precedent supports the Alkon objectors' argument that the class notice failed to comply with Fed. R. Civ. Proc. 23(h). *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). The attorneys' fees are part of the class settlement, and are a material factor in determining the fairness of the settlement, but the class has not been given notice of the basis of the proposed attorneys' fees.

For these six independent reasons, in addition to the reasons given in the Alkon objectors' objection, it would be reversible error to approve the amended settlement.

## I.    Prospective Injunctive Relief Fails To Compensate Class Members.

As an initial premise, let us agree that injunctive relief must be of material benefit to justify attorneys' fees under 28 U.S.C. § 1712(b). For example, a settlement that required the CEO of Costco to write "I will not defraud the class" a hundred times on a chalkboard is not the sort of injunctive relief that entitles attorneys to lodestar compensation.

But injunctive relief cannot just be free-flowing "good"; the fairness of a settlement is determined by the benefit *to the class*—the putative clients of class counsel. One could conceive of a hypothetical settlement where, as part of the injunctive relief, Costco builds and endows a $200 million scholarship fund for impoverished children in Topeka. Certainly, the scholarship fund is a social good; but it is not a benefit *to the class*. As such, it would be inappropriate to include it in the calculations of the fairness of the settlement *to the class*. A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d

Cir. 1987); *cf. also In re Washington Public Power Supply Sys. Lit.,* 19 F.3d 1291, 1302 (9th Cir. 1994). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members"); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308-09 (9th Cir. 1990) (charitable donation not tied to class is not a class benefit); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 ("There is no indirect benefit to the class from the defendant's giving the money to someone else.").

So the fact that this settlement purports to provide benefits to future purchasers of Costco gasoline is not a benefit to the class. No changes in future Costco disclosures or sales practices will benefit consumers who were already misled by previous Costco statements. *True*, 2010 WL 707338 at *19 ("No changes to future advertising by Honda will benefit those who already were misled by Honda's representations regarding fuel economy"). *Cf. also Figueroa*, 517 F. Supp. 2d at 1306, 1316, 1328-29 (rejecting coupon settlement despite settling parties' claim that prospective injunctive relief requiring changes in advertising would benefit the class). "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654.

Note that this is *not* an argument that injunctive relief is *never* a benefit to the class. There are class actions where a class can receive injunctive relief that addresses their past injuries. For example, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), is an injunction-only settlement approved by the Ninth Circuit. *Hanlon* is not inconsistent with *Synfuel*. *Hanlon* was a case alleging a product defect, and class members received "a redesigned improved replacement latch to be installed free of charge." The class members here receive nothing—unless they happen by coincidence to overlap with future purchasers of Costco gasoline.

Here, there is no claim that the product is defective. The claim is that Costco is making misrepresentations. The proper analogy to this settlement would be if the *Hanlon* settlement, instead of installing a replacement latch, instead simply agreed that future vehicles would have a properly functioning latch (or, worse, agreed to disclose that the latch did not work). That hypothetical settlement, analogous to this one and the rejected settlements in *Synfuel*, *True*, and *Figueroa*, is both inferior to the one the Ninth Circuit approved in *Hanlon* and does not support a claim of benefit to the class.

A couple of other hypothetical consumer fraud class action settlements demonstrate the point. Imagine a settlement of *Seinfeld v. Kramer Non-Fat Yogurt*, where a class sues a shop selling "non-fat yogurt" that turns out to be full of fat. *Cf.* Larry David, "The Non-Fat Yogurt," *Seinfeld* (NBC Nov. 4, 1993). If the parties settled for injunctive relief whereby the defendant agreed to provide non-fat yogurt in the future, that would be of no benefit to the class for their *previous* injuries—even if, as here, there happened to be some overlap between the class members and the set of people who purchased non-fat yogurt in the future. The class members only benefit to the extent they make additional purchases from the defendant, and that benefit is presumably reflected in the price they pay for those new purchases.

Another example: imagine the hypothetical consumer fraud class action *Gatsby v. West Egg*, where the class sues over West Egg selling packages of a dozen eggs that only have ten eggs in them. If the parties settled with injunctive relief that required West Egg to include at least twelve eggs in every "dozen eggs" package, that again provides no benefit to the class for their ***previous*** injuries, even if, once again, there happened to be some overlap between the class members and the set of people who purchased West Eggs in the future. The lack of benefit becomes even more apparent if West raises its price for a "dozen" eggs from $2.00 to $2.40.

The prospective injunctive relief cannot, as a matter of law, be considered a benefit to the class even if there were 100% overlap between beneficiaries and class members. This is an independent reason to reject the settlement.

## II.     The Injunctive Relief is Economically Worthless And Will Harm Class Members Who Must Subsidize The Cost Of Settlement.

The only evidence the settling parties present in support of the value of injunctive relief is the Declaration of Dr. Andrew Safir. On April 1, 2010, the morning of the fairness hearing, the plaintiffs presented the declaration of Dr. Andrew Safir, who presented calculations alleging that there were $100 million in benefits to the future Costco purchasers from injunctive relief.

But an examination of the Safir declaration shows that that there is nothing expert about his testimony: the only thing he does is ***assume*** that Costco will expand the size of the average gallon of gas it sells without raising the price at the pump for this additional expense, and then perform simple multiplication. But Safir gives no basis for this assumption—indeed, he contradicts it within the same declaration when he assumes that Costco will pass along to consumers the entire $2700/pump cost of reconfiguring gas stations to provide temperature-

adjusted gasoline. Safir Declaration ¶ 13. Safir gives no economic reasoning to support his assumption of 0% pass-through of costs; he cites to no economic literature and performs no study showing that demand for gasoline is so elastic that vendors are at the mercy of their customers even when marginal costs rise.

Such a flimsy economic model would not pass muster in peer-reviewed economic literature, and, after *Daubert* and *Kumho Tire*, it does not pass muster in federal court, either. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 139 (1999); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1079 (10th Cir. 2006); *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1030 (D. Kan. 2006) (excluding economic expert testimony calculating damages where entire calculation based on "underlying assumptions" without independent analysis of basis for assumptions); *First Savs. Bank, v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1084 (D. Kan. 2000) (excluding expert testimony on damages where expert "based his opinion on an assumption of the very fact that his report is intended to prove"); *In re Aluminum Phosphide Antitrust Litig.*, 893 F. Supp. 1497, 1504-07 (D. Kan. 1995).

Simply claiming one's expertise and then asserting a conclusion without performing the economic analysis that experts in the field would perform precludes admission of proposed expert evidence—even if the testifying expert is a Nobel Prize winner. *In re Brand Name Prescription Drugs Antitrust Litigation*, 1999 U.S. Dist. Lexis 550 (N.D. Ill. Jan. 19, 1999) (excluding testimony of Nobel Prize-winning economist Robert Lucas when opinions not based on evidence), *aff'd on other grounds*, 186 F.3d 781 (7th Cir. 1999); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district

court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Expert testimony that is speculative is not competent proof and contributes "nothing to a 'legally sufficient evidentiary basis.'" *Weisgram v. Marley Co.*, 528 U.S. 440, 445, 454 (2000) (*citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)). "Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Group Ltd.*, 509 U.S. at 242.

As the declaration of economic expert Dr. David R. Henderson shows, Dr. Safir's testimony is fraught with speculative premises and is not reliable. Henderson Decl. ¶¶ 7-15. His conclusions must be excluded from evidence.

The proposed injunction is at best economically worthless because Costco can freely adjust the posted price of fuel to counteract any temperature correction. In the fast-moving market for the retail price of fuel, there's no reason to suppose that automatic temperature compensation will translate into *any* benefit to consumers, and the parties have provided no evidence to the contrary, though the burden is on them to prove the fairness of the settlement. As economist David R. Henderson demonstrates, the change in the cost structure will be offset by changes in price; consumers will not be getting free gasoline, and will realize no benefit. Henderson Decl. ¶¶ 14-22. Any finding by the court that Costco would not pass on the additional costs to consumers would be clearly erroneous.

Precisely for this reason, regulatory agencies have concluded that automatic temperature compensation ("ATC") would yield no economic benefit to consumers. The National Conference of Weights and Measures ("NCWM"), a group composed of state and local weights and measures officials, has rejected the use of ATC at retail. At its July 2009 National Conference, an NCWM

---

Objection of Amy Alkon and Nicolas Martin
No. 07-md-1840

9

committee withdrew two proposals that would have allowed or mandated ATC at retail. In reaching its decision, the committee reviewed reports, studies, and received public comments where an "overwhelming majority" were opposed to the measures. NCWM, *Addendum Sheet to the Interim Report of the Laws and Regulations Committee* (Docket No. 1343-18 at 3). The primary reasons for withdrawing the proposals "were conference consensus against ATC, economic cost factors, ***lack of benefit to consumers***, absence of uniformity in the marketplace, and the additional cost to Weights and Measures officials and service companies."  *Id* (emphasis added). As part of its reasoning, the NCWM cited a thorough study by the state of California.

California regulators undertook a year-long cost-benefit analysis and concluded that automatic temperature compensation ("ATC") would result in no economic benefit, and that ATC would actually *harm* consumers because they would bear the costs of new equipment. In October 2007, the California legislature directed the California Energy Commission ("CEC"), in partnership with two other agencies, to complete a "comprehensive survey and cost benefit analysis" of temperature correction, including the utility of "[r]equiring the installation of temperature correction or compensation equipment at the pump."  Cal. Bus. & Prof. Code. § 13630. On March 11, 2009—20 days after the Settlement Agreement was signed—the five CEC Commissioners unanimously adopted its final 147-page report. The commission found that the "cost-benefit analysis concludes that the results are ***negative or a net cost to society*** under all the options examined."  *Fuel Delivery Temperature Study* ("CEC Report")[1] at 1 (emphasis added). "It is also unlikely that there are any plausible circumstances consumers could receive a small net benefit with installed ATC devices at California's retail stations."  *Id.*

---

[1] Cal. Energy Comm'n, *Fuel Delivery Temperature Study*, No. CEC-600-2009-002-CMF. Available online at http://www.energy.ca.gov/ transportation/fuel_delivery_temperature_study/documents/index.html

---

The commission found that switching to ATC at retail would not result in savings, although the average size of "gallons" dispensed would increase. This is because "retail station owners will in fact raise their fuel prices to compensate for selling fewer units, all other things being equal." *Id.* at 105-6. Because gas retailers will adjust prices to maintain their profitability, "this potential benefit to consumers perceived by some stakeholders is not expected to materialize." *Id.* at 71. The installation of ATC at Costco is therefore economically worthless to the class.

Although the proposed settlement provides no benefit, class members who buy fuel from Costco will be forced to bear the costs of ATC. The CEC estimated the initial costs of installing ATC equipment at about $9,707–11,761 per station. *Id.* at 58. However, the costs would not be born by the retailers, but would instead be passed on to consumers; "the balance of evidence points to complete or near-complete pass-through of ATC-related costs from retail station owners to consumers." *Id.* at 106. Therefore, class members who continue to buy fuel from Costco will end up footing the bill for their own supposed injunctive relief.

The proposed settlement is even worse than the CEC report estimates because class members will be forced to absorb the costs of the settlement itself, including attorneys' fees. Self-dealing settlements like those of Putative Class Counsel raise the costs to Costco of selling fuel, and raise prices to class members like Objectors without concomitant benefits. If attorneys' fees are awarded in a suit that makes consumers worse off, it creates the incentive for other attorneys to engage in socially wasteful class-action litigation that injures consumers.

The proposed settlement makes Costco members worse off than if the suit had never been brought, and such a settlement cannot imaginably be fair to the class, much less one entitling attorneys to fees. This is an independent reason to reject the settlement.

### III.     Some Class Members Receive More Gas From Volumetric Gallons Than They Would With Automatic Temperature Compensation ("ATC") "Gallons."

This Court cannot assume that class members would receive more fuel from ATC gallons than volumetric gallons. As Dr. Henderson's declaration demonstrates, the price of volumetric gallons adjusts to reflect average swellage. Thus the 50% of class members whose fuel purchases are at below-average fuel temperatures benefit from the *status quo* because they are cross-subsidized by the 50% of class members whose fuel purchases are at above-average fuel temperatures; switching to ATC will make these class members worse off. Henderson Decl. ¶¶ 16-21.

In such a circumstance, the court cannot find the settlement adequate, or a benefit to the class: making some class members better off at the expense of other class members without increasing the total welfare of the class is not a class benefit. Moreover, it would be impermissible to certify such a class. *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (class certification is improper when the class definition included some members "who claim harm from the very same acts from which other members of the class have benefitted."). "It is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent." *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463 (10th Cir. 1974). The class is misdefined, and cannot be certified. This is an independent reason to reject the settlement.

### IV.     The Class Representatives Are Self-Dealing.

Though plaintiffs purport to represent and seek to bind thousands of absent class members, they have recovered cash for only for themselves and their attorneys. This insubstantial

relief is striking because plaintiffs claimed that damages were on the order of "billions of dollars." Second Consolidated Amended Complaint (Docket No. 520-1 at ¶ 8). In other words, plaintiffs brought a multi-billion dollar lawsuit that they are settling for zero dollars, a 0% success rate.[2] Meanwhile, the representative class members receive $2,500 and there has been no notice of the fees the attorneys will request.

In *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006), the Seventh Circuit held that a similar representative payment was "untenabl[y]" beyond the pale of approval:

> We treated the disproportion—$2,000 one class member, nothing for the rest—as proof that the class device had been used to obtain leverage for one person's benefit. [citations omitted]  Here the proposed award is $3,000 to the representative while other class members are frozen out. . . .

> Such a settlement is untenable. We don't mean by this that all class members must receive $100; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty. [citation omitted]  But if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum?  And, if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment to Murray implies, then the failure to afford effectual relief to any other class member makes the deal look like a sellout.

This settlement is even worse than the settlement criticized in *Murray* as "untenable."  In *Murray*, one class representative received $3,000, three times maximum possible statutory damages; here, there are five class representatives seeking $2,500 over an injury that optimistically amounts to a few dozen dollars. In *Murray*, the 1.2 million unnamed class members were entitled to split a fund of $947,000; here, an unknown number of millions of class members

---

[2] Costco "sold more than $5 billion worth of gasoline in fiscal 2009."  Costco, *FY 2009 Annual Report* at 4, *supra* note **Error! Bookmark not defined.**. This represents approximately 1% of the nation retail fuel market, so Costco's share of the "billions of dollars" of damages that plaintiffs alleged would be in the tens of millions of dollars.

ended up with $0 in relief for their alleged past injuries. Here, the "success" of plaintiffs is an abysmal failure, greater than the failure criticized in Murray, and representative plaintiffs are seeking $2,500 in direct rewards after winning zero for all other class members. Many of the representative plaintiffs were signed up only after Costco made it clear they would not contest the case, and faced no risk of deposition or discovery. The $2,500 incentive payment is inappropriate.

## V.     The Settlement's Amendment To Expand The Class Means That Much Of The Class Has Never Been Given Notice Or An Opportunity To Object.

Class members are entitled to the "best notice practicable under the circumstances."  Fed. R. Civ. Proc. 23(c)(2)(B). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175 (1974).

The original settlement covered purchasers of Costco gasoline from January 1, 2001, through April 22, 2009. The amended settlement covers purchasers of Costco gasoline from January 1, 2001, through "the date of this Agreement," *i.e.*, January or February 2011. Docket No. 1769-1 at § 2.1. People who were not in the original class but who purchased gasoline in the twenty-plus months since April 22, 2009 are bound by the amended settlement but have not been given a chance to object. This is impermissible, and is an independent reason to reject the settlement.

**VI.      To Date, Notice Is Insufficient Under Rule 23(h) Because It Fails To Set Forth The Basis For Attorneys' Fees.**

Though class counsel will request attorneys' fees, class members are given no information on what basis class counsel are making their claim. The amount of the fee request is relevant to the fairness of the settlement: if not for the internal conflicts of interest prohibiting class certification, the settlement might be reasonable if class counsel are only requesting a few hundred dollars in fees, but the settlement would be unreasonable if class counsel are asking for over a million dollars in fees, which would far outstrip the benefit to the class.

If class counsel are asking for "excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000). But the class has been kept in the dark whether this has happened.

Fed. R. Civ. Proc. 23(h)(1), added as part of the 2003 amendments to the Federal Rules, directly addresses this issue. Notice of a motion for attorneys' fees must be "directed to class members in a reasonable manner." "For motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e). . . . In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Notes of Advisory Committee on 2003 Amendments to Rule 23(h)(1).

If the fee request is high, then the settlement structure was clearly designed to benefit the attorneys at the expense of the class. But for the conflict of interest between class counsel and

their clients, the defendants could have agreed to a better settlement for the class by offering the class refunds for purchasing allegedly overpriced gasoline. Defendants could pay the same total amount for a superior settlement if class counsel had agreed to a reduction in their attorneys' fees. But the class has been deprived of learning any basis for a fee request.

This is independent grounds for rejecting the settlement. Given the inadequate notice, approval of the settlement would be reversible error. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).

## CONCLUSION

There are six independent reasons to reject the settlement:

*First*, the settlement provides only prospective relief, which is, as a matter of law, insufficient recompense for consumer fraud allegations.

*Second*, according to the only valid economic expert testimony in the case, as well as research by expert regulatory agencies, the proposed injunctive relief will not benefit the calss, and may actually harm the class by saddling them with costs for an economically useless technology.

*Third*, the proposed settlement harms as much as half of the class by increasing the price they pay for Costco gasoline. Because of this, there is a conflict of interest within the class, and certification is inappropriate.

*Fourth,* the settlement is "untenable" because of the exaggerated recovery for class representatives, including class representatives who have incurred no burden or threatened burden, and have added nothing to the settlement other than to permit class counsel to create subclasses in an effort to create approval of a self-dealing settlement.

---

Objection of Amy Alkon and Nicolas Martin
No. 07-md-1840

*Fifth*, the amended settlement expands the class affected by the settlement without giving these new class members the constitutionally required opportunity to object or opt out.

*Sixth*, the notice procedure violates Rule 23(h).

This is a self-serving settlement to benefit attorneys at the expense of class members, and the Court should reject the settlement as failing to comply with the requirements of Rule 23(a)(4) and Rule 23(e).

Dated:  February 18, 2011

Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank (D.C. Bar No. 450318)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW
No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tedfrank@gmail.com

Attorney for Objectors
Amy Alkon and Nicolas Martin

<u>**PROOF OF SERVICE**</u>

I declare that:

I am employed in the District of Columbia. I am over the age of 18 years and not party to the within action; my office address is 1718 M Street NW, No. 236, Washington DC 20036.

On February 18, 2011, I served the attached:

**ALKON OBJECTORS' OPPOSITION TO APPROVAL OF AMENDED SETTLEMENT**

  X    By Federal Express in that I caused such envelope(s) to be delivered via Federal Express to the addressee(s) designated.

| Robert A. Horn | David F. McDowell |
|---|---|
| HORN AYLWARD BANDY | MORRISON & FOERSTER LLP |
| 2600 Grand Boulevard, Suite 1100 | 555 West Fifth Street, 35th Floor |
| Kansas City, MO 64108 | Los Angeles, CA 90013-1024 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 18, 2011.

*/s/ Theodore H. Frank*
Theodore H. Frank