**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| [This Document Relates To All Cases.] | ) | **Case No. 07-1840-KHV** |
| _____ | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on <u>Defendants' Motion To Exclude Any Testimony Of</u>

<u>Kurt V. Krueger Concerning Purported Economic Injury</u> (Doc. #2697) filed November 1, 2011.

Under Rule 702, Fed. R. Evid., and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579

(1993) and its progeny, defendants ask the Court to exclude only the opinions or testimony of Kurt

V. Krueger, Ph.D. that plaintiffs might use to support an "argument of economic injury." <u>Id.</u> For

the following reasons, the Court sustains defendants' motion in part, limiting the testimony of

Dr. Krueger to the content of his expert reports.

**Legal Standard**

Federal Rule of Evidence 702 requires district courts to act as gatekeepers, only admitting

expert testimony that is both relevant and reliable.  The Rule provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods reliably to the facts of the
> case.

Fed. R. Evid. 702.

The Court therefore must determine at the outset whether an expert will testify to scientific,

technical or other specialized knowledge that will help the trier of fact understand or determine a

fact in issue.  Daubert, 509 U.S. at 592-93; see Fed. R. Evid. 104(a), 702.  This requires a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and whether the expert can properly apply it to the facts in issue.  Daubert, 509 U.S. at 592-93; see Fed. R. Evid. 104(a), 702.  The purpose of this inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire, 526 U.S. at 152.

The touchstone of the Court's inquiry is whether the testimony helps the factfinder understand evidence or determine a fact in issue.  BioCore, Inc. v. Khosrowshahi, 183 F.R.D. 695, 699 (D. Kan. 1998).  Expert opinions that address matters that are equally within the competence of the factfinder to understand and decide are not helpful to the factfinder and therefore inadmissible.  McGowan v. Cooper Indus., Inc., 863 F.2d 1266, 1273 (6th Cir. 1988) (citing Fed. R. Evid. 701-02); see Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).  But the Court's gatekeeping functions are not meant to supplant "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . [as] the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596 (citation omitted).

Courts have broad discretion in deciding whether to admit expert testimony, but should resolve doubts in favor of admissibility.  Id.; Kieffer v. Weston Land, Inc., 90 F.3d 1496, 1499 (10th Cir. 1996); see Fed. R. Evid. 702 advisory committee's note; Daubert, 509 U.S. at 588-89.  As the proponents of expert testimony, plaintiffs bear the burden of establishing admissibility under Rule 702.  Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 n. 4 (10th Cir. 2001).

**Analysis**

Defendants move to exclude only the opinions or testimony of Kurt V. Krueger, Ph.D. that plaintiffs might use to support an "argument of economic injury." Doc. #2697. They argue that Dr. Krueger "has conducted absolutely no economic analysis to determine whether consumers are injured as a result of the allegedly wrongful act of selling motor fuel by volumetric gallons." Defendants' Memorandum Of Law In Support Of Their Motion To Exclude Any Testimony Of Kurt V. Krueger Concerning Purported Economic Injury (Doc. #2701) filed November 1, 2011 at 1.

Dr. Krueger has issued two expert reports in this case, Report Of Kurt V. Krueger, Ph.D. – July 11, 2011, Ex. B, Doc. #2703 filed November 1, 2011 ("Initial Krueger Report"), and Report Of Kurt V. Krueger, Ph.D. – October 4, 2011, Ex. C, Doc. #2703 ("Krueger Rebuttal Report"). His first report contains an analysis of the fuel temperature and sales data that defendants provided during discovery. He used the data to compare the amount of federal excise taxes which defendants paid and the amount which they charged consumers as reimbursement for the excise taxes which defendants had already paid. Based on his analysis, Dr. Krueger concluded that "[w]hen gross gallons sold exceed net gallons purchased, the retailers' wholesale cost per gallon on excess gross gallons is zero and their revenue includes the price of fuel plus the excise taxes built into the price charged to consumers but not actually paid to the government." Initial Krueger Report at 2.

Dr. Krueger also used the data to determine whether defendants stored gasoline and diesel fuel at temperatures hotter than 60 degrees Fahrenheit. Among other things, Dr. Krueger opined that the fuel stored in defendants' tanks routinely exceeded 60 degrees Fahrenheit; that defendants sell more fuel during the five hottest months (June, July, August, September and October) than in the five coldest months (December, January, February, March and April); and that in the two remaining

3

months – May and November – the average fuel temperature exceeds 60 degrees.  Id. at 3.

The Krueger Rebuttal Report is mainly a response to a report of defendants' expert, Kevin Murphy, Ph.D.   It discusses Dr. Murphy's econometric model and states that the model is "underspecified" and "deficient."  Krueger Rebuttal Report at 3-5.

Defendants do not ask to exclude Dr. Krueger's opinions with respect to Dr. Murphy's regression model.  Rather they ask the Court to exclude any economic opinions that Dr. Krueger may try to assert as to the effect of his fuel temperature analysis.  In other words, defendants ask the Court to limit Dr. Krueger's testimony to his expert reports.  Specifically, defendants take aim at a single sentence in the Initial Krueger Report and use Dr. Krueger's deposition testimony to argue that he has no opinion regarding whether plaintiffs suffered economic harm under the status quo. The sentence on which defendants focus states that "[w]hen gross gallons sold exceed net gallons purchased, the retailers' wholesale cost per gallon on excess gross gallons is zero and their revenue includes the price of fuel plus the excise taxes built into the price charged to consumers but not actually paid to the government."  Doc. #2701 (quoting Initial Krueger Report ¶ 4).  Dr. Krueger's deposition testimony explains that this sentence in his report does not relate to damages, but simply states that "if you sell more gallons than you purchased, then you didn't pay anything in terms of the accounting of it."  Doc. #2703-1 at 108:17-109:1.  Dr. Krueger's deposition testimony further states that he has no opinion on whether defendants are liable to plaintiffs on their claims, 2703-1 at 80:10-81:2; whether plaintiffs suffered harm because defendants sell motor fuel without adjusting for or disclosing temperature, 81:3-4; or whether retailers profit from selling "hot fuel," Doc. #2703-4 at 15:4-16:2, 24:20-25.

Plaintiffs argue that Dr. Krueger "clearly presented his opinions regarding Plaintiffs'

economic harm." <u>Plaintiffs' Response To Defendants' Motion To Exclude Any Testimony Of Kurt V. Krueger Concerning Purported Economic Injury</u> (Doc. #3083) filed December 6, 2011 at 5.  For support, they rely on Dr. Krueger's analysis of Dr. Murphy's opinion, which defendants have not moved to exclude.  They also rely on Dr. Krueger's deposition testimony regarding "market failure" based on asymmetric information.  Dr. Krueger's reports do not mention market failure and he testified that he had not "done any kind of empirical analysis to demonstrate the . . . market failure issue, whether . . . retailers profit or consumers lose."  Doc. #2703-4 at 15:22-16:2.  Moreover, Dr. Krueger did not state an opinion with respect to the market failure issue, but only mentioned the issue by way of explaining his understanding of plaintiffs' claims.  <u>See</u> Doc. #2703-4 at 14:20-15:3 (because motor fuel expands with temperature, "the claim is that . . . there's a market failure or lack of information to the consumer with regards to what it is they're purchasing"); <u>id.</u> at 15:11-14 ("I just understand the nature of the claims . . . but . . . I haven't delved into any sort of economic analysis . . . to support the claim.").  It therefore appears that defendants' motion raises a false issue; Dr. Krueger does not profess to have an opinion on market failure, liability or injury to plaintiffs.  Accordingly, this aspect of defendants' motion is moot.

Defendants also argue that Dr. Krueger's analysis of the fuel temperature and sales data which they provided during discovery should be excluded because the analysis is an improper attempt "to cloak a review of limited documents and exercise in mathematics as expert economic opinion."  Doc. #2701 at 5.  The <u>Initial Krueger Report</u>, however, states that Dr. Krueger compiled temperature and sales raw data and analyzed the data by comparing the amount of federal excise tax which defendants paid with the amount of taxes which defendants passed on to consumers, and determining whether defendants stored gasoline at temperatures higher than 60 degrees Fahrenheit.

Initial Krueger Report at 2-3. Dr. Krueger reached several conclusions, including that when gross gallons sold exceed net gallons purchased, motor fuel retailers pass on to consumers excise taxes that they do not have to pay; that on average, motor fuel retailers in Kansas sell fuel that is hotter than 60 degrees Fahrenheit; and that surface air temperature alone does not provide an accurate indicator of stored fuel temperature. Id. Contrary to defendants' bald assertion, it is not clear that Dr. Krueger's testimony is based on "simplistic extrapolation and childish arithmetic with the appearance of authority . . . that make a joke of the concept of expert knowledge." Doc. #2701 (quoting First Sav. Bank v. U.S. Bancorp, 117 F. Supp.2d 1078, 1085 (D. Kan. 2000)). Moreover, defendants' reply states that they "do not seek to exclude this temperature variation 'analysis;' they only seek to exclude any economic opinions [Dr. Krueger] later might try to assert as to the effect of his temperature analysis." Defendants' Reply In Support Of Motion To Exclude Any Testimony Of Kurt V. Krueger Concerning Purported Economic Injury (Doc. #3159) filed December 30, 2011 at 3. At this time, the Court can go no further than to limit Dr. Krueger's trial testimony to the content of his reports. The appropriate way to attack Dr. Krueger's opinions is by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" at trial. Daubert, 509 U.S. at 596 (citation omitted).

**IT IS THEREFORE ORDERED** that Defendants' Motion To Exclude Any Testimony Of Kurt V. Krueger Concerning Purported Economic Injury (Doc. #2697) filed November 1, 2011 be and hereby is **SUSTAINED in part**. The Court hereby limits the testimony of Kurt V. Krueger, Ph.D. to the content of his two expert reports, Report Of Kurt V. Krueger, Ph.D. – July 11, 2011, Ex. B, Doc. #2703 filed November 1, 2011, and Report Of Kurt V. Krueger, Ph.D. – October 4, 2011, Ex. C, Doc. #2703.

Dated this 19th day of January, 2012 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge