**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) | |
| SALES PRACTICES LITIGATION ) | |
| ) | **MDL No. 1840** |
| [This Document Relates To All Cases.] ) | **Case No. 07-1840-KHV** |
| _____ ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on <u>Defendants' Motion To Exclude Portions Of The Expert Report And Testimony Of Robert Reynolds</u> (Doc. #2630) filed November 1, 2011.  Under Rule 702, Fed. R. Evid., and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and its progeny, defendants move to exclude one sentence from the report and testimony of plaintiffs' expert Robert Reynolds, which states that "[t]he use of temperature correction at retail would be a fairer and more transparent practice for all parties, including consumers."  For the following reasons, the Court sustains defendants' motion with respect to Reynolds' opinion on the relative fairness of temperature correction at retail and overrules the motion with respect to Reynolds' opinion on transparency.

**Legal Standard**

Federal Rule of Evidence 702 requires district courts to act as gatekeepers, only admitting expert testimony that is both relevant and reliable.  The Rule provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court must therefore determine at the outset whether an expert will testify to scientific, technical or other specialized knowledge that will help the trier of fact understand or determine a fact in issue. Daubert, 509 U.S. at 592-93; see Fed. R. Evid. 104(a), 702. This requires a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and whether the expert can properly apply it to the facts in issue. Daubert, 509 U.S. at 592-93; see Fed. R. Evid. 104(a), 702. The purpose of this inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. It is therefore important that the expert's opinion be testable, i.e. capable of being challenged in some objective sense, and not just a subjective opinion that cannot reasonably be assessed for reliability. Fed. R. Evid. 702 advisory committee's note; see Kumho Tire, 526 U.S. at 149-53; Daubert, 509 U.S. at 590.

The touchstone of the Court's inquiry is whether the testimony helps the factfinder understand evidence or determine a fact in issue. BioCore, Inc. v. Khosrowshahi, 183 F.R.D. 695, 699 (D. Kan. 1998). Courts have broad discretion in deciding whether to admit expert testimony, but should resolve doubts in favor of admissibility. Id.; Kieffer v. Weston Land, Inc., 90 F.3d 1496, 1499 (10th Cir. 1996); see Fed. R. Evid. 702 advisory committee's note; Daubert, 509 U.S. at 588-89.

An expert witness's personal belief as to the weight of evidence, however, would invade the province of the jury. Lawrence v. Raymond Corp., No. 3:09 CV 1067, 2011 WL 3418324, at *4 (N.D. Ohio Aug. 4, 2011); Oxford Gene Tech. Ltd. v. Mergen Ltd., 345 F. Supp.2d 431, 435 (D. Del. 2004). Expert opinions that address matters that are equally within the competence of the

factfinder to understand and decide are not helpful to the factfinder and therefore inadmissible. McGowan v. Cooper Indus., Inc., 863 F.2d 1266, 1273 (6th Cir. 1988) (citing Fed. R. Evid. 701-02); see Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir.1994).  But the Court's gatekeeping functions are not meant to supplant "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . [as] the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596 (citation omitted).  As the proponents of expert testimony, plaintiffs bear the burden of establishing admissibility under Rule 702.  Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 n. 4 (10th Cir. 2001).

## **Analysis**

Reynolds' report states as follows:

> While fuel temperature correction is not used at retail in the United States, fuel sold in Canada is temperature corrected.  Obviously, Canada's climate is colder, and fuel temperature generally is below 60°F.  Using temperature correction at the retail level in Canada benefits the retail segment of the petroleum industry.  <u>The use of temperature correction at retail would be a fairer and more transparent practice for all parties, including consumers.</u>

Expert Report Of Robert Reynolds, Ex. A, Doc. #2632 at 13 (emphasis added).

Defendants take aim at the underlined sentence.  They do not deny that Reynolds is a fuel industry expert, but simply assert that his statement regarding the relative fairness and transparency of using temperature correcting pumps at retail is not an expert opinion, i.e. not based on scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702; Memorandum Of Law In Support Of Defendants' Motion To Exclude Portions Of The Expert Report And Testimony Of Robert Reynolds (Doc. #2632) filed November 1, 2011 at 3-4.  Defendants also argue that Reynolds' opinion invades the

3

province of the jury because whether defendants' current method of selling motor fuel is "fair" or "transparent," if relevant at all, is a lay determination for the jury. Doc. #2632 at 3-4.

Plaintiffs counter that the context in which this opinion appears in Reynolds' report justifies permitting the opinion. They cite Reynolds' 25 years of experience in the industry, his detailed description of the motor fuel distribution system, his extensive knowledge and expertise of motor fuel sold on a net or gross basis throughout the supply chain and his opinion regarding phantom taxes.

Defendants' reply relies on Reynolds' deposition testimony to undermine his expert report. Reynolds testified that while employed by 7-11 Stores, he sold motor fuel at retail without adjusting for temperature, and that at the time he did not think that such a practice deceived his customers. Defendants conclude that this testimony makes Reynolds' opinion regarding the relative fairness and transparency of the status quo unreliable. But defendants miss the point. The sentence in Reynolds' expert report that defendants challenge says nothing about whether the status quo is deceptive, but only whether it is "fair" or "transparent." This argument is therefore without merit.

**I. Transparency**

The Court overrules defendants' objection to Reynolds' opinion that temperature correction of motor fuel at retail would be more transparent. Reynolds has extensive experience in the motor fuel industry and the manner in which motor fuel is sold at various stages of the supply chain. In the early 1980s, before starting his own fuel industry consulting firm, Reynolds was a buyer for a motor fuels company. Reynolds report states that when the temperature of motor fuel purchased at retail "exceeds 60º F, the customer receives a volumetric gallon that has expanded and weighs less than a temperature compensated gallon." Expert Report Of Robert Reynolds, Ex. A, Doc. #2632 at 14.

It also states that motor fuel retailers benefit from phantom taxes by paying federal gas taxes on net gallons purchased but collecting those taxes based on gross gallons sold. Defendants do not object to these opinions.

Based on Reynolds' entire report, the Court finds that his opinion regarding the relative transparency of the status quo in retail motor fuel sales and temperature correction of motor fuel at retail is based on his specialized knowledge and experience in the field and will assist the trier of fact to understand the evidence or to determine a fact in issue. Although it seems obvious that temperature correction at retail would be more transparent than the status quo, Reynolds' opinion is not simply his personal belief as to the weight of the evidence, nor does it address a matter that is equally within the competence of the factfinder. See Standard Indus., Inc. v. Mobil Oil Corp., 475 F.2d 220, 227-28 (10th Cir. 1973); Francis v. S. Pac. Co., 162 F.2d 813 (10th Cir. 1947), aff'd, 333 U.S. 445 (1948). His knowledge of the properties of motor fuel and how it is bought and sold at wholesale provide sufficient basis for his opinion that the use of temperature correction at retail would be more transparent. Reynolds' opinion therefore does not invade the province of the jury. For these reasons the Court overrules defendants' motion to exclude Reynolds' testimony regarding transparency.

**II. Fairness**

Unlike transparency, fairness is primarily in the eye of the beholder. Determining what is more "fair," less "fair" or "unfair," requires mostly subjective comparisons that are difficult to assess for reliability. See Daubert, 509 U.S. at 590. Reynolds offers little objective basis for his opinion, and the Court therefore sustains defendants' motion to exclude Reynolds' opinion that the use of temperature correction at retail would be "fairer." See Daubert, 509 U.S. at 590; see also

Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1079 (10th Cir. 2006) (not abuse of discretion to exclude expert opinion not supported by explanation); Koken v. Black & Veatch Constr., Inc., 426 F.3d 39, 47 (1st Cir. 2005) (same).  Although Reynolds' opinion on phantom taxes and how motor fuel is bought and sold throughout the retail supply chain may help a factfinder understand the evidence or determine a fact in issue, his personal opinion on fairness will not.  If pertinent to resolving plaintiffs' claims, the jury alone should assess whether temperature correction at retail would be more "fair" than the status quo.  See Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 889 (10th Cir. 2006); Sawyer v. Sw. Airlines Co., 243 F. Supp.2d 1257, 1268 (D. Kan. 2003).

**IT IS THEREFORE ORDERED** that Defendants' Motion To Exclude Portions Of The Expert Report And Testimony Of Robert Reynolds (Doc. #2630) filed November 1, 2011 be and hereby is **SUSTAINED in part**.  The Court sustains the motion as to Robert Reynolds' opinion regarding the fairness of using temperature correction at retail and overrules the motion as to his opinion regarding the transparency of using temperature correction at retail.

Dated this 19th day of January, 2012 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge