# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) | |
| SALES PRACTICES LITIGATION ) | |
| ) | **MDL No. 1840** |
| **This Document Relates To:** ) | **Case No. 07-1840-KHV** |
| ) | |
| <u>Wilson, et al. v. Ampride, Inc., et al.,</u> ) | |
|        **Case No. 06-2582-KHV,** ) | |
| ) | |
| **and** ) | |
| ) | |
| <u>American Fiber & Cabling, LLC, et al. v. BP Products</u> ) | |
| <u>North America Inc., et al.,</u> ) | |
|        **Case No. 07-2053-KHV.** ) | |
| _____ ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs in <u>Wilson v. Ampride, Inc.</u>, 06-2582-KHV (D. Kan.) and <u>American Fiber &</u>

<u>Cabling, LLC v. BP Products North America Inc.</u>, 07-2053-KHV (D. Kan.) bring class action claims

for damages and injunctive relief against defendants which either own, operate or control gas

stations in Kansas. Plaintiffs claim that because defendants sell motor fuel for a specified price per

gallon without disclosing or adjusting for temperature expansion, they are liable under Kansas law

for unjust enrichment, civil conspiracy and violating the Kansas Consumer Protection Act

("KCPA"), K.S.A. §§ 50-623 to 50-679a. On May 28, 2010, the Court certified classes under Rule

23(b)(2), Fed. R. Civ. P., as to the liability and injunctive relief aspects of plaintiffs' claims.[1]

---

[1]        The Court certified classes under Rule 23(b)(2) in each of the Kansas cases. As to
plaintiffs' claims for unjust enrichment and violation of the KCPA, the classes include "[a]ll
individuals and entities that, at any time between January 1, 2001 and the present, purchased motor
fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas
station owned, operated or controlled by one or more of the Defendants." <u>Memorandum And Order</u>
(Doc. #1675) at 34. As to plaintiffs' claims for violation of the KCPA, the classes include "[a]ll
individuals, sole proprietors and family partnerships that, at any time between January 1, 2001
                                                                                        (continued...)

<u>Memorandum And Order</u> (Doc. #1675) at 34-35.  It bifurcated and did not certify plaintiffs' claims for damages.  <u>Id.</u> at 31-32.  Two sets of defendants separately sought permission to appeal that decision under Rule 23(f), Fed. R. Civ. P., and the Tenth Circuit summarily denied both.  <u>Order</u> (Doc. #01018487742) in Case Nos. 10-601 and 10-604.  On June 20, 2011, the U.S. Supreme Court decided <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (2011).  Defendants argue that <u>Dukes</u> requires the Court to decertify the (b)(2) classes.  This matter is before the Court on <u>Defendants'</u> <u>Motion To Decertify The Kansas Classes</u> (Doc. #3039) filed November 12, 2011, which the Court construes as a motion for reconsideration of the class certification order,[2] and <u>Plaintiffs' Response</u> <u>In Opposition To Defendants' Motion To Decertify Class</u> (Doc. #3133) filed December 21, 2011, which the Court construes as a motion to redefine the class and a renewed motion for class certification under Rules 23(b)(3) and (c)(4).[3]

### Legal Standards

Prior to final judgment, the Court has discretion under Rule 23(c)(1)(C) to decertify the class altogether, or to alter or amend its certification order.  Fed. R. Civ. P. 23(c)(1)(C); <u>DG ex rel.</u> <u>Stricklin v. Devaughn</u>, 594 F.3d 1188, 1201 (10th Cir. 2010).  Indeed, a class certification order is

---

[1](...continued)
the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants."  <u>Id.</u> at 35.  The Court denied plaintiffs' request to certify the classes under Rule 23(b)(3).  <u>Id.</u> at 31-32.

[2]     Under D. Kan. Rule 7.3(b), a motion for reconsideration must be based on (1) an intervening change in controlling law, (2) the availability of new evidence or (3) the need to correct clear error or prevent manifest injustice.  D. Kan. Rule 7.3(b).

[3]     Plaintiffs previously sought class certification under Rules 23(b)(2) and (b)(3), but did not seek certification of particular issues under Rule 23(c)(4).  <u>See</u> <u>Kansas Plaintiffs' Motion For</u> <u>Class Certification And Memorandum In Support</u> (Doc. #1106) filed June 1, 2009 at 1-2.

"inherently tentative," particularly before notice is sent to potential class members.  Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  To determine whether decertification or other alteration or amendment of its certification order is appropriate, the Court applies the rubric for class certification in Rule 23.

The Court has considerable discretion in making class certification decisions.  DG, 594 F.3d at 1194.  It must, however, conduct a rigorous analysis to determine whether the parties seeking certification have shown that the putative class satisfies the prerequisites of Rule 23.  D. Kan. Rule 23.1(d); Dukes, 131 S. Ct. at 2551-52; DG, 594 F.3d at 1194.  In doing so, the Court accepts as true the substantive allegations of the complaint but does not blindly rely on conclusory allegations, for "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable."  Id. at 2551; Falcon, 457 U.S. at 160; Shook v. El Paso Cnty., 386 F.3d 963, 968 (10th Cir. 2004) (Shook I).  Although the Court does not consider whether plaintiffs will prevail on the merits, this "rigorous analysis" often overlaps with the merits of the plaintiffs' claims.  Dukes, 131 S. Ct. at 2251-52; see DG, 594 F.3d at 1194.

### Factual And Procedural Background

This multidistrict litigation includes two cases which plaintiffs filed in the U.S. District Court for the District of Kansas.  This order concerns only those two cases.  In Wilson v. Ampride, Inc., No. 06-2582 (D. Kan.), Zachary Wilson and Wonderland Miracle Carnival Company bring suit against BP Products North America, Inc. a/k/a BP Corporation North America, Inc.; Casey's General Stores, Inc.; Chevron USA, Inc.; Circle K Stores, Inc.; ConocoPhillips Company; Costco Wholesale Corporation; Petro Stopping Centers, LP; 7-Eleven, Inc.; Equilon Enterprises, LLC d/b/a

Shell Oil Products US;[4] Valero Marketing and Supply Company; and Wal-Mart Stores, Inc. d/b/a

Sam's Club.[5]  In American Fiber & Cabling, LLC v. BP West Coast Products, LLC, No. 07-2053

(D. Kan.), Mathew Cook brings suit against BP West Coast Products, LLC a/k/a BP Corporation

North America, Inc.; Casey's General Stores, Inc.; Chevron USA, Inc.; ConocoPhillips Company;

Kroger Company; Kum & Go, LC; Quiktrip Corporation; 7-Eleven, Inc.; Equilon Enterprises, LLC

d/b/a Shell Oil Products US; and Valero Marketing and Supply Company.[6]

---

[4]    Over the objection of Shell Oil Company, the Court allowed plaintiffs to substitute Equilon Enterprises, LLC d/b/a Shell Oil Products US – a subsidiary of Shell – for Shell in both Kansas cases.  Order (Doc. #2202) filed October 28, 2011 at 1; Pretrial Order (Doc. #2558) filed November 1, 2011 at 2-3 n.1.

[5]    Robert Soetaert and Bob Soetaert Trucking, LLC also joined as plaintiffs but voluntarily dismissed their claims without prejudice.  Stipulation Of Voluntary Dismissal Without Prejudice (Doc. #758) filed February 12, 2009 ¶ 4.
       Plaintiffs sued Ampride, Inc., but it appears that they have not obtained service on that defendant.  On May 27, 2010, the Court ordered plaintiffs to show cause in writing on or before June 10, 2010, why it should not dismiss the action without prejudice as to Ampride, Inc. for lack of prosecution under Rule 4(m), Fed. R. Civ. P.  Notice And Order To Show Cause (Doc. #1673). Plaintiffs never responded.  On May 28, 2010, plaintiffs dismissed Ampride, Inc. without prejudice. Notice Of Dismissal Without Prejudice (Doc. #1674).
       Plaintiffs sued MFA Oil Company; Exxon Mobil Corporation; Coastal Mart, Inc.; Pilot Travel Centers, LLC; Total Petrochemicals USA, Inc.; Presto Convenience Stores, LLC; Sinclair Oil Corporation; CITGO Petroleum Corporation; and Flying J, Inc., but stipulated to dismiss claims against these defendants without prejudice.  Stipulation Of Dismissal Without Prejudice (Doc. #439) filed May 16, 2008 (MFA Oil Company); Stipulation Of Dismissal Without Prejudice (Doc. #462) filed June 11, 2008 (Exxon Mobil Corporation); Stipulation Of Dismissal Without Prejudice (Doc. #469) filed June 16, 2008 (Coastal Mart, Inc.); Stipulation Of Dismissal Without Prejudice (Doc. #487) filed June 24, 2008 (Pilot Travel Centers, LLC); Stipulation Of Dismissal Without Prejudice (Doc. #496) filed June 30, 2008 (Total Petrochemicals USA, Inc.); Stipulation Of Dismissal Without Prejudice (Doc. #603) filed October 21, 2008 (Presto Convenience Stores, LLC); Stipulation Of Dismissal Without Prejudice (Doc. #1453) filed December 8, 2009 (Sinclair Oil Corporation); Agreed Order Granting Joint Motion For Voluntary Dismissal (Doc. #2182) filed October 19, 2011 and Joint Motion For Voluntary Dismissal (Doc. #2174) filed October 14, 2011 (CITGO Petroleum Corporation); Stipulation Of Dismissal Without Prejudice (Doc. #3174) filed January 9, 2012 (Flying J, Inc.).

[6]    American Fiber & Cabling, LLC and Robert Miller joined as plaintiffs but voluntarily
(continued...)

On May 28, 2010, the Court certified several classes in both Kansas cases.  Memorandum And Order (Doc. #1675).  In the Wilson case, the Court certified a class under Rule 23(b)(2) as to the liability and injunctive relief aspects of plaintiffs' unjust enrichment and KCPA claims against BP Products North America, Inc. a/k/a BP Corporation North America, Inc., Casey's General Stores, Inc., Chevron USA, Inc., Circle K Stores, Inc., ConocoPhillips Company, 7-Eleven, Inc., Shell Oil Company, Valero Marketing and Supply Company and Wal-Mart Stores, Inc. d/b/a Sam's Club.[7] It also certified a class under Rule 23(b)(2) as to the liability and injunctive relief aspects of plaintiffs' civil conspiracy claims against BP Products North America, Inc. a/k/a BP Corporation North America, Inc.; Chevron USA, Inc.; Circle K Stores, Inc.; ConocoPhillips Company; and Shell Oil Company.  The Court excluded from these classes plaintiffs' claims against Costco Wholesale Corporation, Flying J, Inc. and Petro Stopping Centers, LP.[8]

In the American Fiber & Cabling case, the Court certified a class under Rule 23(b)(2) as to the liability and injunctive relief aspects of plaintiffs' unjust enrichment and KCPA claims against

---

[6](...continued)
dismissed their claims without prejudice.  Stipulation Of Voluntary Dismissal Without Prejudice (Doc. #758) filed February 12, 2009.  Plaintiffs sued Exxon Mobil Corporation but stipulated to dismiss those claims without prejudice.  Stipulation Of Dismissal Without Prejudice (Doc. #462) filed June 11, 2008.

[7]     The class also included CITGO Petroleum Corporation, which plaintiffs have since voluntarily dismissed from the case without prejudice.  Agreed Order Granting Joint Motion For Voluntary Dismissal (Doc. #2182); and Joint Motion For Voluntary Dismissal (Doc. #2174).

[8]     Plaintiffs did not ask to include Costco in the classes because they had reached a settlement for injunctive relief and the possibility of attorneys' fees.  Memorandum And Order (Doc. #1675) at 8 n.9.  At the time, claims against Flying J, Inc. were stayed pending bankruptcy, and now have been voluntarily dismissed without prejudice.  Id.; Stipulation Of Dismissal Without Prejudice (Doc. #3174) filed January 9, 2012.  And in certifying the (b)(2) classes, the Court found that Wilson – a named plaintiff in Wilson v. Ampride, Inc., 06-2582-KHV (D. Kan.) – could not satisfy the typicality requirements of Rule 23(a)(3) as to Petro Stopping Centers, LP.  Memorandum And Order (Doc. #1675) at 16.  So the Court did not certify claims against that defendant.  Id.

5

ConocoPhillips Company; Kum & Go, LC; Quiktrip Corporation; Shell Oil Company; and Valero Marketing and Supply Company.  The Court also certified a class under Rule 23(b)(2) as to the liability and injunctive relief aspects of plaintiffs' civil conspiracy claims against ConocoPhillips Company; Kum & Go, LC; Quiktrip Corporation; and Shell Oil Company.  The Court excluded from these classes plaintiffs' claims against BP West Coast Products, LLC; Casey's General Stores, Inc.; Chevron USA, Inc.; Kroger Company; and 7-Eleven, Inc.[9]

On August 20, 2010, the Court consolidated the two Kansas cases and designated Wilson v. Ampride, 06-2582, as the lead case.  Order (Doc. #1708).  On November 1, 2011, Magistrate Judge James P. O'Hara entered the Pretrial Order (Doc. #2558) which supersedes all pleadings with respect to the issues scheduled for trial on May 7, 2012.  Under the Pretrial Order, plaintiffs are limited to three theories: (1) violations of the KCPA, (2) unjust enrichment and (3) civil conspiracy. On behalf of the (b)(2) classes, plaintiffs seek attorneys fees under the KCPA, K.S.A. § 50-634(e)(1) and (2), declaratory judgment that certain motor fuel sales practices are unlawful and violate the KCPA, and various forms of injunctive relief.

On plaintiffs' claims for unjust enrichment and civil conspiracy, the class certification order defined the liability and injunctive relief classes as "All individuals and entities that, at any time between January 1, 2001 and the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants." Memorandum And Order (Doc. #1675).  With regard to plaintiffs' KCPA claims, the Court defined the liability and injunctive relief classes as "All individuals, sole

---

[9]     The Court excluded Casey's General Stores, 7-Eleven and Kroger because Cook – the remaining named plaintiff in American Fiber & Cabling, LLC v. BP Products North America, Inc., 07-2053-KHV (D. Kan.) – could not satisfy the typicality requirements of Rule 23(a)(3) as to these defendants.  Memorandum And Order (Doc. 1675) at 15-16.

proprietors and family partnerships that, at any time between January 1, 2001 and the present, purchased motor fuel at retail at a temperature greater than 60 degrees Fahrenheit, in the State of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants." Id. The Court excluded from all classes (1) federal judges who have presided over this case, (2) persons employed by defendants and (3) affiliates of defendants. Id.

The Court now addresses (1) whether to reconsider its prior certification of the (b)(2) classes in light of Dukes; (2) whether to redefine the classes; and (3) whether to certify classes as to the liability and injunctive relief aspects of plaintiffs' three claims under Rules 23(b)(3) and (c)(4).[10]

### Analysis

In light of Dukes, defendants ask the Court to reconsider its class certification decision and decertify the classes. Specifically, they argue that plaintiffs' claims do not satisfy the commonality requirement of Rule 23(a)(2) and do not qualify for class certification under Rule 23(b)(2). Although Dukes certainly clarified certain aspects of the commonality requirement and narrowed the permissible scope of classes certified under Rule 23(b)(2), it is not fatal to plaintiffs' class action. In responding to defendants' motion, plaintiffs ask the Court to redefine the already-certified Rule 23(b)(2) classes and to certify classes under Rules 23(b)(3) and (c)(4) as to the liability aspects of plaintiffs' claims. Although plaintiffs have asked the Court to recalibrate the class definitions, the changes do not affect the Court's original class certification decision.

---

[10] In its previous certification order, the Court expressed concern whether plaintiffs can establish common methods to prove individual class member damages. Memorandum And Order (Doc. #1675) at 31. Relying on its ability to certify a class as to particular issues under Rule 23(c)(4), the Court bifurcated the damage portion of plaintiffs' claims and certified a class under Rule 23(b)(2) with regard to the liability and injunctive aspects of plaintiffs' claims. Id. at 32. The Court found that if plaintiffs succeed on those portions of their claims, it would consider whether to certify a class for damages under Rule 23(b)(3). Id.

## I.        Plaintiffs' Motion To Redefine Classes

As noted above, the Court has certified several classes in the two Kansas cases.  <u>Plaintiffs'</u> <u>Response In Opposition To Defendants' Motion To Decertify Class</u> (Doc. #3133) filed December 21, 2011, asks the Court to redefine the already-certified (b)(2) classes and to certify classes as to the liability aspects of plaintiffs' claims under Rules 23(b)(3) and (c)(4).

The Court has broad authority to redefine a class before final judgment.  <u>See</u> Fed. R. Civ. P. 23(c)(1)(C); <u>Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.</u>, 275 F.R.D. 325, 328 (D. Kan. 2011); <u>Sibley v. Sprint Nextel Corp.</u>, 254 F.R.D. 662, 670 (D. Kan. 2008); <u>see also</u> <u>Davoll v. Webb</u>, 194 F.3d 1116, 1146 (10th Cir. 1999); <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 379 (2d Cir. 1997). Over defendants' objections, the Court finds that redefining the classes is warranted.

Plaintiffs propose the following class definition:

> All current Kansas residents and entities that at any time since December 31, 2003, purchased motor fuel at retail in the state of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants without the temperature of the motor fuel having been disclosed by the Defendants.

<u>Plaintiffs' Response In Opposition To Defendants' Motion To Decertify Class</u> (Doc. #3133) at 9. This class definition differs from the current class definitions in three ways: (1) the relevant time period is December 31, 2003 to present instead of January 1, 2001 to present; (2) it is limited to "current Kansas residents" instead of "[a]ll individuals and entities" or "[a]ll individuals, sole proprietors and family partnerships"; and (3) it includes the purchase of any motor fuel at retail in Kansas, not just the purchase of motor fuel at a temperature greater than 60 degrees Fahrenheit. Plaintiffs suggest these changes in response to defendants' arguments regarding the relevant statute of limitations on plaintiffs' claims, the need for nationwide notice for the classes and unclear language regarding temperature.  Defendants oppose plaintiffs' request to amend the class

definitions because the proposed definition is inconsistent with the claims and issues raised in the pretrial order, the proposed class arbitrarily excludes hundreds of thousands of current class members and it includes ill-defined terms that cause confusion. Defendants, however, do not oppose changing the relevant time period to December 31, 2003 to present.

The class definition is critically important because it identifies the persons (1) entitled to relief, (2) bound by a final judgment and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action. Manual for Complex Litigation § 21.222 (4th ed. 2005); see Fed. R. Civ. P. 23(c)(1)(B) (court certification order must define class and class claims, issues or defenses). The definition must be precise, objective and presently ascertainable. In re Urethane Antitrust Litig., 237 F.R.D. 440, 444-45 (D. Kan. 2006); McHan v. Grandbouche, 99 F.R.D. 260, 265 (D. Kan. 1983); Manual for Complex Litigation § 21.222. It should "describe the operative claims, issues, or defenses, such as injury resulting from securities fraud or denial of employment on account of race." Manual for Complex Litigation § 21.222.

### A.    Consistency Of Class Definition With Plaintiffs' Claims

Defendants argue that the proposed class definition is inconsistent with plaintiffs' claims "because it removes the basic predicate of one of Plaintiffs' claims of injury – that defendants are unjustly enriched and consumers are injured by purchases of fuel above 60º F without adjustment for temperature." Defendants' Reply In Support Of Motion To Decertify Kansas Classes (Doc. #3184) filed January 9, 2012 at 16. Plaintiffs contend that consumers purchase motor fuel for the energy it can provide and that by selling motor fuel without disclosing or adjusting for temperature, defendants omit a material fact regarding the quality and value of the motor fuel consumers purchase. Pretrial Order (Doc. #2558) filed November 1, 2011 at 10-11. As a result,

9

plaintiffs claim, consumers purchase motor fuel at retail with the understanding that they are receiving a fungible product of standard, uniform and consistent quality in terms of the amount of energy the fuel provides. Id. In reality, plaintiffs contend, the quality of motor fuel fluctuates by the day, by the hour and from station to station, and that "[t]his inconsistency in quality is inherent in every retail motor fuel transaction." Id. at 11.

Plaintiffs do contend that "[m]otor fuel sold at retail in Kansas can exceed 100 degrees Fahrenheit, and is warmer than 60 degrees Fahrenheit on average," and that in states like Kansas "where motor fuel sold at retail is warmer than 60 degrees Fahrenheit on average, defendants benefit financially at the expense of plaintiffs and consumers by purchasing fuel on a net basis at wholesale and selling fuel at retail on a gross basis." Id. at 12. But plaintiffs' claims do not require the class definition to include the 60-degree-Fahrenheit reference temperature.

The proposed change in class definition only affects plaintiffs' KCPA and unjust enrichment claims.[11] To prevail on their KCPA claims, plaintiffs must prove that (1) plaintiffs were consumers under the KCPA, (2) defendants were suppliers under the KCPA, (3) defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. § 50-626(b)(1)(A) or (D), K.S.A. § 50-626(b)(3) or K.S.A. § 50-627, and (4) plaintiffs were "aggrieved" by such act. See id. at 21-26. To prevail on their unjust enrichment claim, plaintiffs must prove that (1) plaintiffs conferred a benefit on defendants, (2) defendants appreciated or had knowledge of the benefit and (3) defendants accepted or retained the benefit under such circumstances as to make it inequitable for them to retain

---

[11]     As the Court understands plaintiffs' civil conspiracy claim, it is essentially derivative of the KCPA and unjust enrichment claims, i.e. if plaintiffs do not prevail on their KCPA and/or unjust enrichment claims they cannot prevail on their claim that defendants conspired to violate the KCPA or unjustly enrich themselves at plaintiffs' expense.

it without payment of its value.[12]  See id. at 26.

The crux of plaintiffs' claims is that defendants sell motor fuel at retail without disclosing or accounting for temperature.  The proposed class definition captures this premise.  Although plaintiffs may rely on the 60-degree-Fahrenheit reference temperature in proving their claims, the class definition is precise, objective and presently ascertainable without it.[13]

### B.    Breadth Of Proposed Class Definition

Defendants argue that by including "all current Kansas residents," the proposed class definition is overbroad.  Citing Oshana v. Coca-Cola Co., 472 F.3d 506, 514 (7th Cir. 2006), defendants argue that "there will be a significant number of uninjured persons in the class who do not feel cheated or injured."  Defendants' Reply In Support Of Motion To Decertify Kansas Classes (Doc. #3184) at 18.  In Oshana, though, the district court found that many of the putative class members may not have been deceived by defendant's marketing because at least some of its ads contained a disclaimer.  472 F.3d at 510.  On that record, the Seventh Circuit held that "[s]uch a class could include millions who were not deceived and thus ha[d] no grievance" under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").  Id. at 514 (citing Oliveira v. Amoco Oil Co., 201 Ill.2d 134, 776 N.E.2d 151, 164 (2002) (those who knew truth did not have valid ICFA

---

[12]    In the Pretrial Order (Doc. #2558), plaintiffs state the elements of their unjust enrichment claims as follows: (1) in the sale of motor fuel, plaintiffs conferred a benefit on defendants, (2) defendants retained the benefit and (3) defendants' retention of the benefit was unjust.  Defendants dispute plaintiffs' characterization of the elements of the unjust enrichment claim.  They argue that the elements of the claim are as stated above.  For purposes of this discussion, the distinction appears to be immaterial.

[13]    Defendants argue that by proposing a class definition that does not contain the 60-degree-Fahrenheit reference temperature, plaintiffs have abandoned their theory of injury based on purchases of motor fuel above 60 degrees.  This argument is overreaching and the Court declines to further address it.

claims)).  Here, defendants cite no evidence that any proposed class member could ascertain the temperature of the fuel which he or she purchased.  Moreover, a deceptive act or practice under the KCPA, specifically K.S.A. § 50-626, arises "whether or not any consumer has in fact been misled."  Thus the proposed class will not contain countless members who knew the truth and therefore have no claim.

### C.    Arbitrary Exclusion Of Hundreds Of Thousands Of Class Members

Defendants argue that the proposed class definition improperly excludes hundreds of thousands of class members on the arbitrary basis of residency.  Specifically, the proposed definition excludes people who purchased motor fuel in Kansas during the relevant period but do not currently reside in the state.  Defendants oppose limiting the class to "current Kansas residents" for three reasons: (1) the geographic limitation is arbitrary, i.e. without a rational basis; (2) limiting the class at this time without providing notice may violate named plaintiffs' fiduciary duty to the class as a whole and prejudice current class members who are removed from the class; and (3) the proposed class prejudices defendants because the outcome in the Kansas cases will not be binding on those excluded from the new classes and therefore could result in "complete duplication of proceeding."  Defendants' Reply In Support Of Motion To Decertify Kansas Classes (Doc. #3184) at 19.

Limiting the class to "current Kansas residents" is not irrational; it is borne of a legitimate concern about providing sufficient notice to people who purchased motor fuel in Kansas but do not currently reside here.  Defendants argue that the proposed class definition would cut out of the class "hundreds of thousands" of current class members.  Id. at 18-19; see Declaration Of Daniel Rosenthal On Class Certification Plan, Ex. 15, Doc. #3041 filed November 21, 2011 ("Rosenthal Declaration") at 4-5.  These class members presumably consist of former Kansas residents and

12

tourists who purchased fuel in the state during the relevant time period. They are currently scattered throughout the 50 states and the world, and defendants' expert admits that these people would be difficult to reach with meaningful notice. See id. at 4; Notice Hearing Transcript at 67-75.

Because plaintiffs ask the Court to certify a class under Rule 23(b)(3), the practical issue of providing notice to the "hundreds of thousands" of people who have bought motor fuel in Kansas since December 31, 2003, but are now scattered throughout the country (population roughly 312 million) and the world (population nearly seven billion) implicates the due process rights of those class members, i.e. the right "to decide for themselves whether to tie their fates to the class representatives' or go it alone." Dukes, 131 S. Ct. at 2559. The best way to protect this right is to carve them out of the class. Doing so will not prejudice them because they have not yet received notice of a class action and they retain the right to assert their individual claims. Nor will it undermine the efficiencies gained by proceeding as a class because current Kansas residents represent the vast majority of motor fuel purchasers in the state during the relevant time.

Defendants' argument that they will suffer prejudice from the change is not well taken. This argument is premised on defendants' assumption that even if they prevail at trial, they will face the prospect of further suit from non-residents who purchased gasoline in Kansas during the relevant period. Defendants argument is flawed: whether or not they prevail, unless they change the way they sell gas, defendants face the prospect of future litigation by anyone who purchase motor fuel in Kansas. Defendants' concerns about the need to defend future claims by people who are being defined out of the initial (b)(2) classes is unconvincing if not frivolous.

## D.    Ill-Defined Terms That Cause Confusion

The Court agrees that plaintiffs' proposed class definition contains ill-defined terms that

could cause confusion. Defendants specifically suggest that the definition specify a cut-off date for identification of "current" Kansas residents and that with respect to plaintiffs' KCPA claims, the definition should be limited to individuals, sole proprietors and family partnerships rather than "all residents and entities." The Court agrees. Based on these suggestions the Court adopts the following class definitions. As to plaintiffs' claims for unjust enrichment and civil conspiracy, the classes are defined as

> All current Kansas residents and entities that at any time since December 31, 2003, purchased motor fuel at retail in the state of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants without the temperature of the motor fuel having been disclosed by the Defendants. "Current Kansas residents and entities" are those who reside in Kansas on the date that class notice is sent. Federal judges who have presided over this case, persons employed by defendants, affiliates of defendants, and any juror or alternate assigned to the trial of this case are excluded from the class.

As to plaintiffs' KCPA claims, the Court defines the classes as

> All individuals, sole proprietors and family partnerships that currently reside in Kansas and at any time since December 31, 2003, purchased motor fuel at retail in the state of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants without the temperature of the motor fuel having been disclosed by the Defendants. "All individuals, sole proprietors and family partnerships that currently reside in Kansas" are those who reside in Kansas on the date that class notice is sent. Federal judges who have presided over this case, persons employed by defendants, affiliates of defendants, and any juror or alternate assigned to the trial of this case are excluded from the class.

These class definitions apply to both the already-certified (b)(2) classes and the proposed (b)(3) classes.

## II.    The **Dukes** Case

Defendants' motion to decertify relies exclusively on Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), which the Supreme Court decided after the Court certified plaintiffs' classes under Rule 23(b)(2). Dukes is relevant because it arguably heightened the commonality requirement

under Rule 23(a) and narrowed the permissible scope of a Rule 23(b)(2) class.

In <u>Dukes</u>, under Rule 23(b)(2), the district court certified a class of 1.5 million current and former female employees of Wal-Mart who alleged that the discretion which their local supervisors exercised over pay and promotion matters violated Title VII. 131 S. Ct. at 2547. The Ninth Circuit Court of Appeals affirmed. Plaintiffs sought injunctive and declaratory relief, backpay and punitive damages. The question before the Supreme Court was whether the certification of the plaintiff class was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2). <u>Id.</u> The Supreme Court answered both questions in the negative.

In <u>Dukes</u>, plaintiffs claimed that the discrimination to which they were subjected was common to all female employees of Wal-Mart. <u>Id.</u> at 2548. The basic theory of their case was that "a strong and uniform 'corporate culture' permit[ted] bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each one of Wal-Mart's thousands of managers – thereby making every woman at the company the victim of one common discriminatory practice." <u>Id.</u> The Supreme Court held that the plaintiffs' proposed class did not meet the commonality requirement of Rule 23(a) because the members of the class

> held a multitude of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed . . . . Some thrived while others did poorly. They have little in common but their sex and this lawsuit.

<u>Id.</u> at 2557 (quoting <u>Dukes</u>, 603 F.3d at 652 (Kozinski, J., dissenting)).

The Supreme Court also held that the district court had improperly certified plaintiffs' claims for backpay under Rule 23(b)(2) because the Rule "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages" and because "the

combination of individualized and classwide relief in a (b)(2) class is inconsistent with the structure

of Rule 23(b)." Id. at 2558. Adjudicating claims for individualized monetary relief under

Rule 23(b)(2), the Supreme Court held, would improperly circumvent the procedural protections

built in to Rule 23(b)(3) – predominance, superiority, mandatory notice and the right to opt out –

which are not required for a (b)(2) class. Id. at 2558-59. With Dukes in mind, the Court proceeds

to determine whether it can certify issue classes as to the liability aspects of plaintiffs' claims under

Rules 23(b)(3) and (c)(4), and to re-examine its certification of the (b)(2) classes.

### III.     Rule 23 Requirements

Rule 23, Fed. R. Civ. P., governs class certification. Under Rule 23(a), the party seeking

class certification must first demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims
> or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a). Second, the proposed class must satisfy at least one of the three requirements

listed in Rule 23(b). Plaintiffs initially sought class certification under both 23(b)(2) and (b)(3), but

the Court relied only on Rule 23(b)(2) in certifying the classes as to the liability and injunctive relief

aspects of plaintiffs' claims.

Rule 23(b)(2) applies only when "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

relief is appropriate respecting the class as a whole." Rule 23(b)(3) applies when "the court finds

that the questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  To determine predominance and superiority, the Court

considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## A.  Rule 23(c)(4) Issue Classes

The Court has already certified classes under Rule 23(b)(2) as to the liability and injunctive

relief aspects of plaintiffs' claims.  Defendants ask the Court to reconsider that ruling and to clarify

what constitutes the "liability aspects" of plaintiffs' claims.  In response, plaintiffs ask the Court to

certify limited (b)(3) issue classes under Rule 23(c)(4) as to the liability aspects of their three claims.

The circuits are split on whether courts can use issue certification under Rule 23(c)(4) to certify a

(b)(3) class as to parts of a claim without first finding that the whole claim satisfies the

predominance requirement (and presumably all the requirements) of Rule 23(b)(3).  Hohider v.

United Parcel Serv., Inc., 574 F.3d 169, 202 n.25 (3d Cir. 2009).  The Tenth Circuit has not

addressed the question.

The Fifth Circuit has held that a "district court cannot manufacture predominance through

the nimble use of subdivision (c)(4)."  Castano v. Am. Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir.

1996); see Allison v. Citgo Petroleum Corp, 151 F.3d 402, 421-22 (5th Cir. 1998).  In the Fifth

Circuit, the "the proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that

a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4)

is a housekeeping rule that allows courts to sever the common issues for a class trial." Id.  The Fifth Circuit was motivated by a concern that "allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3)" and would lead to "automatic certification in every case where there is a common issue, a result that could not have been intended."  Id.

The Second, Seventh and Ninth Circuits have taken a different view, holding that in appropriate cases Rule 23(c)(4) authorizes district courts "to isolate the common issues . . . and proceed with class treatment" of those issues "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted."  In re Nassau Cnty. Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006) (quoting Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)) (quotation marks omitted); In re Allstate Ins. Co., 400 F.3d 505, 508 (7th Cir. 2005); Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004).  The First and Fourth Circuits have indicated that they agree.  Tardiff v. Knox Cnty., 365 F.3d 1, 7 (1st Cir. 2004); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 427-28 (4th Cir. 2003); see also Gates v. Rohm & Haas Co., 655 F.3d 255, 272 (3d Cir. 2011); Hohider, 574 F.3d at 202 n.25.

Although the Tenth Circuit has not addressed the question, this Court has generally followed the approach of the Second, Seventh and Ninth Circuits, and has used Rule 23(c)(4) to certify only parts of claims where doing so "would materially advance the disposition of the litigation of the whole."  Fulghum v. Embarq Corp., No. 07-2602-EFM, 2011 WL 13615, at *2 (D. Kan. Jan. 4, 2011) (Melgren. J.); Emig v. Am. Tobacco Co., Inc., 184 F.R.D. 379, 395 (D. Kan. 1998) (Belot, J.); see also Law v. Nat'l Collegiate Athletic Ass'n, 167 F.R.D. 178, 184-85 (D. Kan. 1996) (Vratil, J.).

Defendants note that the District of Kansas decided these cases before <u>Dukes</u>, but they do not argue that <u>Dukes</u> undermines their rationale or persuasive value.  The Court therefore declines to adopt the strict Fifth Circuit interpretation of Rule 23(c)(4).

Rule 23(c)(4), however, is not a panacea. As defendants argue, it should be used only "where resolution of the particular common issues would materially advance the disposition of the litigation as a whole," and should not be used "if noncommon issues are inextricably entangled with common issues or . . . the noncommon issues are too unwieldy or predominant to be handled adequately on a class action basis." <u>Fulghum</u>, 2011 WL 13615, at *2.  For particular issues to be certified using Rule 23(c)(4), the requirements of Rules 23(a) and (b) must be satisfied only with respect to those issues. <u>Id.</u>  As with any class certification, certification of a issue classes under Rule 23(c)(4) must be supported by rigorous analysis. <u>Gates</u>, 655 F.3d at 272; <u>see</u> <u>Dukes</u>, 131 S. Ct. at 2551-52.

Defendants argue that plaintiffs' proposed issue classes, which consist of the liability portions of their claims, are too vague and do "not present a narrow issue within the chain of proof that arguably could be handled under (c)(4)." <u>Defendants' Reply In Support Of Motion To Decertify Kansas Classes</u> (Doc. #3184) at 6.  They also argue that such a class would not materially advance the litigation because it could leave a large number of individual issues that require individual decisions. <u>Id.</u> at 6-7 (citing Manual for Complex Litigation § 21.24); <u>McLaughlin v. Am. Tobacco Co.</u>, 522 F.3d 215, 234 (2d Cir. 2008), <u>partially abrogated on other grounds by</u> <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639 (2008)); <u>Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.</u>, 254 F.R.D. 68, 77 (E.D.N.C. 2008); <u>In re St. Jude Med., Inc.</u>,522 F.3d 836 (8th Cir. 2006)).

For purposes of the already-certified (b)(2) classes and the proposed (b)(3) classes, the Court

19

defines the "liability" aspects of plaintiffs' claims as including all substantive elements of the claims, which can be proven on a classwide basis, including causation and injury. Specifically, to establish the liability elements of their KCPA claims, plaintiffs must show (1) that plaintiffs were consumers under the KCPA, (2) that defendants were suppliers under the KCPA, (3) that defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. § 50-626(b)(1)(A) or (D), K.S.A. § 50-626(b)(3) or K.S.A. § 50-627, and (4) by proof applicable to the class as a whole, that plaintiffs were "aggrieved" by defendants' act or practice. See Pretrial Order (Doc. #2558) at 21-26.[14] The liability elements of plaintiffs' unjust enrichment claim are that (1) plaintiffs conferred a benefit on defendants; (2) defendants appreciated or knew of the benefit; and (3) defendants accepted or retained the benefit under such circumstances as to make it inequitable for them to retain it without payment of its value. See id. at 26. The liability elements of plaintiffs' civil conspiracy claim are that (1) two or more defendants, directly or through the trade associations of which they are members, (2) shared an object or purpose to be accomplished, (3) had a meeting of the minds

---

[14]    Defendants object to plaintiffs' formulation of the fourth element of each of the KCPA claims. They argue that plaintiffs must prove causation and injury as elements of their KCPA claims. Plaintiffs assert that they need to show only that they were aggrieved by defendants' deceptive or unconscionable acts. This seems to be a distinction without a difference.

K.S.A. § 50-626(b)(1)(A) provides that "[d]eceptive acts and practices include . . . [r]epresentations made knowingly or with reason to know that . . . [p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have." K.S.A. § 50-626(b)(1)(D) provides that "[d]eceptive acts and practices include . . . [r]epresentations made knowingly or with reason to know that . . . property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation." K.S.A. § 50-626(b)(3) provides that "[d]eceptive acts and practices include . . . the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." All three sections define violations of the KCPA "whether or not any consumer has in fact been misled." K.S.A. § 50-626 (b).

K.S.A. § 50-627 provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction."

in the object, purpose or course of action and (4) took one or more unlawful overt act that (5) caused injury to plaintiffs.  See id. at 26-27.  Again, the "liability" aspects of plaintiffs' claims consist of all substantive elements of plaintiffs' claims, which can be proven on a classwide basis, including causation and injury, but do not include damages for the KCPA and civil conspiracy claims or restitution with respect to the unjust enrichment claims.  Having identified the relevant elements of plaintiffs' claims, the Court must determine whether the common and individual issues are inextricably intertwined and whether certifying issue classes will materially advance the resolution of the litigation and comply with Rule 23(b)(3).

### 1.    Inextricable Entanglement Of Common And Individual Issues

Defendants argue that the causation and injury aspects of plaintiffs' claims raise individual issues that are inextricably intertwined with the liability aspects of those claims, and that certification of (c)(4) issue classes as to liability would therefore be inappropriate.  The Court disagrees.

The liability aspects of plaintiffs' KCPA claims do not require individual determinations. They allege a common injury based on common conduct, i.e. that defendants sold them motor fuel at retail without disclosing or adjusting for temperature.  Moreover, these claims are not inextricably intertwined with questions of what damages particular class members suffered.  Defendants are correct that at trial, the plaintiff classes will have to show by common proof they were "aggrieved." They may or may not be able to do so, but the Court will not prematurely foreclose that possibility. See Shook I, 386 F.3d at 971 (in determining propriety of class action, question not whether plaintiffs will prevail on merits, but whether Rule 23 requirements met); cf. Dukes, 131 S. Ct. at 2551 (rigorous class certification analysis may entail overlap with merits).

21

The Court takes a similar approach to plaintiffs' unjust enrichment claims, which appear to be susceptible of proof on a classwide basis. Again, plaintiffs must prove the elements of their claim on a classwide basis at trial.[15]

The liability elements of plaintiffs' civil conspiracy claim likewise are not intertwined with any request for damages which is likely to require individualized proof.

At the joint, the Court may cleanly sever the liability elements of plaintiffs' claims from plaintiffs' requests for damages and restitution. See Gates, 655 F.3d at 273. Although plaintiffs' request for damages and restitution may require individualized determinations, these claims are not included in the proposed classes under (b)(3) and (c)(4) and are not inextricably intertwined with the elements of the claims that are subject to common proof.

### 2.    Material Advancement Of Litigation

Defendants argue that certifying (c)(4) issue classes under Rule 23(b)(3) as to the liability aspects of plaintiffs claims would not materially advance the litigation because it would leave unresolved a lot of issues requiring individualized determination. Although this approach would not resolve the damages or restitution aspects of plaintiffs' claims, certifying classes as to the liability and injunctive relief aspects of plaintiffs' claims under (b)(3) and (c)(4) will resolve the core of plaintiffs' claims for the classes as a whole.[16] The Court has previously noted that plaintiffs' claims

---

[15]    In light of the evidence at trial, if the class definition needs to be tailored, plaintiffs can ask the Court to do so.  See Fed. R. Civ. P. 23(c)(1) (district court can modify or amend class-certification determination at any time before final judgment in response to changing circumstances in case); Carpenter v. Boeing Co., 456 F.3d 1183, 1187 (10th Cir. 2006); see also Charles v. Dalton, 1996 WL 53633, at *5 (N.D. Cal. Jan. 31, 1996) (based on evidence at trial court may redefine class, create subclasses or tailor relief accordingly).

[16]    To the extent defendants argue that no (b)(2) class is appropriate where plaintiffs seek monetary relief, even when combined with a (b)(3) class, see Defendants' Memorandum In Support
(continued...)

for injunctive relief are the centerpiece of this case; it is only by obtaining declaratory or injunctive relief that plaintiffs can effect a change in the way defendants sell motor fuel.  See Memorandum And Order (Doc. # 1675) at 29-30.  Resolving these important aspects of plaintiffs' claims would materially advance the litigation.

Defendants cite three cases – McLaughlin v. American Tobacco Co., 522 F.3d 215 (2d Cir. 2008), In re St. Jude Medical, Inc., 522 F.3d 836 (8th Cir. 2008), and Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68 (E.D.N.C. 2008) – to support their argument that certification of the liability aspects of plaintiffs' claims is inappropriate.  But those cases are materially different than this one.  In McLaughlin, plaintiffs had to rely on individualized proof to obtain the relief which they sought – treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.  See McLaughlin, 522 F.3d at 222-25. Similarly, in Farrar & Farrar Dairy, to obtain damages and restitution – the only relief which they sought – plaintiffs had to rely on individual proof.  In In re St. Jude Medical, the plaintiffs' common law fraud claims required individual determinations because defendants' representations varied from plaintiff to plaintiff.  See 522 F.3d at 838-42.

Here, plaintiffs seek injunctive relief and damages under claims of unjust enrichment, civil conspiracy and violation of the KCPA.  Plaintiffs' request for injunctive relief does not require individualized proof or individualized determinations.  Moreover, the record does not indicate that defendants' representations or omissions regarding the temperature of motor fuel sold to putative

---

[16](...continued)
Of Motion To Decertify The Kansas Classes (Doc. #3040) filed November 21, 2011, the Court disagrees.  Regardless, upon a finding of liability as to the (b)(3) class, the Court could enter appropriate relief.  For this reason, and to avoid confusion, the Court has included the injunctive relief aspects of plaintiffs' claims in the (b)(3) class as well.

class members varied in any material way.  The cases that defendants cite are also distinguishable for another reason: the courts in those cases found that they would achieve little or no judicial efficiency by certifying the classes in question.  Here, allowing plaintiffs to proceed as a class on the issues of liability and injunctive relief under Rule 23(b)(3), and liability and injunctive relief under Rule 23(b)(2) will materially advance the litigation by resolving common issues at the core of plaintiffs' claims.  Because the liability and injunctive relief aspects of plaintiffs' claims are appropriate for issue certification under Rule 23(c)(4), the Court must determine whether the issue classes satisfy the requirements of Rule 23(a) and (b)(3).  The Court must also decide whether, under Dukes, it must decertify the (b)(2) classes.

### B.      Rule 23(a) Requirements

Relying solely on Dukes, defendants' motion to decertify argues that the Kansas classes do not meet the commonality requirement of Rule 23(a).  The motion does not address the other three requirements of Rule 23(a) – numerosity, typicality and adequate representation.  As noted above, the Court has approved two new class definitions.  Because the Court has changed the class definitions it will briefly address these requirements as they relate to all the classes before the Court – both (b)(2) and (b)(3).

### 1.      Numerosity, Typicality, Adequate Representation

By changing the class definitions to include only current residents of Kansas who purchased motor fuel from a gas station owned, operated or controlled by one of the defendants, plaintiffs have reduced the number of potential class members.  The classes are nevertheless still "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).

The new class definitions potentially change the composition of the classes by removing the

24

reference to temperature.  The new classes include current Kansas residents who purchased <u>any</u> motor fuel at retail in Kansas from a station owned, operated or controlled by one of defendants – not just purchasers of motor fuel at a temperature greater than 60 degrees Fahrenheit. Notwithstanding this change, the claims of the class representatives are typical of class claims because they are based on the same legal and remedial theories and arise from the same pattern of conduct by defendants.  <u>DG</u>, 594 F.3d at 1198-99.

Although some class members may have different opinions about the most appropriate form of injunctive relief, such minor disagreements do not destroy typicality.  <u>See</u> <u>Memorandum And Order</u> (Doc. #1675) at 17-22.  For these reasons and substantially the reasons stated in the Court's initial class certification order, the Court finds that plaintiffs have met the numerosity, typicality and adequate representation requirements of Rule 23(a).  <u>See</u> <u>id.</u> at 10-22.

## 2. Commonality

Rule 23(a)(2) requires plaintiffs to show "questions of law or fact common to the class."  In its original class certification order, the Court noted that plaintiffs identified several common factual and legal issues including (1) whether defendants sell motor fuel at retail at temperatures above 60 degrees Fahrenheit without adjusting for temperature; (2) whether this practice is unfair, deceptive or unlawful; (3) whether defendants have unjustly benefitted from selling motor fuel without adjusting for temperature and/or by seeking reimbursement to recoup fuel taxes; and (4) whether defendants have conspired to oppose the implementation of automatic temperature correcting pumps or other temperature-based adjustment of the price of motor fuel at retail.

<u>Dukes</u> expressly cautions against relying on broad-brush "common questions," because "[a]ny competently crafted class complaint literally raises common questions."  131 S. Ct. at 2550-

51 (quoting Richard A. Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U. L. Rev. 97, 131-32 (2009)) (quotation marks omitted).  Rather the Court must scrutinize plaintiffs' claims to determine whether plaintiffs have demonstrated that the class members have suffered the same injury.  <u>Dukes</u>, 131 S. Ct. at 2550-51; <u>Falcon</u>, 457 U.S. at 157-58.  The "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Dukes</u>, 131 S. Ct. at 2551.

As noted above, <u>Dukes</u> involved sex discrimination claims by female Wal-Mart employees who alleged that the company discriminated against them on the basis of their sex by denying them equal pay or promotions, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>  Based on the nature of the plaintiffs' claims, the Supreme Court held that the class of women in that case shared no common questions of law or fact because they did not identify a specific employment practice that "tie[d] all their 1.5 million claims," <u>i.e.</u> plaintiffs did not provide convincing proof of a companywide discriminatory pay and promotion policy.

Here, significant proof that defendants operated under a general policy of selling motor fuel by the gallon without disclosing or adjusting for temperature is sufficient to satisfy the commonality requirement with respect to both the liability and injunctive relief aspects of plaintiffs' claims.  <u>See id.</u> at 2553 (quoting <u>Falcon</u>, 457 U.S. at 157-58).  For the reasons stated above, and because the classes certified under (b)(3) and (c)(4) are limited to the liability and injunctive relief aspects of plaintiffs' claims, the classes are subject to classwide proof, <u>i.e.</u> that by not disclosing the temperature of motor fuel at retail some harm to the consumer is "inherent in every retail motor fuel transaction."  <u>Pretrial Order</u> (Doc. #2558) at 11.  The issue of injunctive relief, which the Court has

already certified under Rule 23(b)(2), is likewise subject to common proof and can be addressed in a single classwide order.  See Dukes, 131 S. Ct. at 2557-58.

This case, moreover, is very different than Dukes.  Here, plaintiffs allege a common practice by all defendants that applied to the entire class uniformly.  They thus allege the same injury.  Like Dukes, this case involves a large class.  Unlike Dukes, class member claims do not turn on a kaleidoscope of variables – different jobs at different levels with different supervisors in 50 different states governed by different regional polices.  This case involves a single practice that defendants allegedly implemented uniformly with respect to all class members.  The common questions include whether defendants' efforts to maintain their practice of selling motor fuel at retail without disclosing or adjusting for temperature constitutes a civil conspiracy, whether defendants unjustly retained a benefit under the status quo and whether this practice constitutes a deceptive or unconscionable act or practice under the KCPA.

Because plaintiffs allege a common practice that caused class members a common injury, classwide proceedings in this case would "generate common answers apt to drive the resolution of the litigation," and any dissimilarities within the proposed class do not "impede the generation of common answers."  The Court therefore finds "questions of law or fact common to the class." Dukes, 131 S. Ct. at 2551 (quoting Nagareda, supra) (quotation marks omitted).

## C.    Rule 23(b)(3) Requirements

To certify a class under Rule 23(b)(3), plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  For particular issues to be certified using Rule 23(c)(4), the

requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues.  <u>Fulghum</u>, 2011 WL 13615, at *2.  In determining whether to certify a class under Rule 23(b)(3), the Court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, plaintiffs have met the requirements of predominance and superiority: (A) class members likely have little interest in individually controlling the prosecution of separate actions because the amount at stake for individual class members is small relative to the cost of maintaining a separate action; (B) no class members have initiated related lawsuits; (C) because the claims at issue involve only current Kansas residents, consolidating them in this Court is desirable; and (D) by severing the question of individual damages, the Court has narrowed the class action to discrete questions of law and fact that can be resolved on a classwide basis.  The Court foresees no case management issue that would dissuade it from certifying under Rule 23(b)(3) a class as to the liability and injunctive relief aspects of plaintiffs' claims.  As noted above, the proposed (b)(3) classes involve common questions of law or fact.  These questions predominate over any individualized questions that may arise, and handling the claims in a class action is better than making class members bring their own claims separately.

Determining each class members' damages, if any, may require individualized determinations, but "[t]he possibility that individual issues may predominate the issue of damages

. . . does not defeat class certification by making [the liability] aspect of the case unmanageable."

In re Urethane Antitrust Litigation, 251 F.R.D. 629, 633, 639 (D. Kan. 2008). The reasoning in In re Urethane Antitrust Litigation applies with equal force here:

> Even if individualized issues (rather than common issues) were to predominate the damage inquiry, the more appropriate course of action would be to bifurcate a damages phase and/or decertify the class as to individualized damages determinations. In other words, even if individualized issues predominate the issue of damages, the court believes that common questions nonetheless predominate in this case because common questions will govern the more difficult, threshold liability issues . . . .

237 F.R.D. 440, 452 (D. Kan. 2006); see also Fulghum, 2011 WL 13615, at *2; Emig, 184 F.R.D. at 394-95; Schreiber v. Nat'l Collegiate Athletic Ass'n, 167 F.R.D. 169, 176-77 (D. Kan. 1996). This approach is consistent with Rule 23(c)(4), which permits, "[w]hen appropriate, an action [to] be brought or maintained as a class action with respect to particular issues." It is also consistent with the Advisory Committee's Note on Rule 23(b)(3), which states that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." See also Fed. R. Civ. P. 23(c)(4) advisory committee's note ("[I]n a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."). Other federal courts have adopted a similar approach.[17] The Court therefore finds ample support for structuring the

---

[17]  See Pella Corp. v. Saltzman, 606 F.3d 391 (7th Cir. 2010) (per curiam); In re Nassau Cnty. Strip Search Cases, 461 F.3d at 227; In re Allstate, 400 F.3d at 508; Tardiff, 365 F.3d at 7; Gunnells, 348 F.3d at 427-28; Valentino, 97 F.3d at 1234; In re McKesson Governmental Entities Avg. Wholesale Price Litigation, 767 F. Supp.2d 263, 269 (D. Mass. 2011); Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc., 269 F.R.D. 252, 256 (S.D.N.Y. 2010). But see Hohider, 574

(continued...)

present class action as it has.

Structuring the actions in this way will reduce the range of issues in dispute, promote judicial economy and avoid the due process issues which defendants raise in light of <u>Dukes</u>.  By certifying the liability and injunctive relief aspects of plaintiffs' claims in a (b)(3) class, the Court avoids any actual or perceived conflict with <u>Dukes</u>.  It also avoids the Seventh Amendment and preclusion issues which defendants raised in their proposed trial plan.  <u>Defendants' Submission In Response To Court's November 11, 2010 Order Requiring A Proposed Trial Plan</u> (Doc. #1734) filed December 3, 2010.  The Court therefore certifies classes under Rule 23(b)(3) as to the liability and injunctive relief aspects of plaintiffs' claims.

> ### D.      Rule 23(b)(2) Classes

Defendants move to completely decertify the (b)(2) classes in light of <u>Dukes</u>.  As discussed below, because the Court now certifies (b)(3) classes as to the liability and injunctive relief aspects of plaintiffs' claims, most of defendants' arguments are moot.  Defendants also move to decertify plaintiffs' unjust enrichment claims because, they argue, plaintiffs are not entitled to injunctive relief under that claim.

> #### 1.      Plaintiffs' Unjust Enrichment Claims

Defendants argue that the Court cannot properly certify plaintiffs' unjust enrichment claims in a (b)(2) class for injunctive and declaratory relief because restitution, <u>i.e.</u> disgorgement of ill-gotten gains, is the only available remedy for such claims.  Because restitution is not injunctive or declaratory relief, they argue, unjust enrichment claims cannot be certified under Rule 23(b)(2).

---

[17](...continued)
F.3d at 202 n.25 (interaction between Rules 23(a) and (b) and authorization of issues classes under Rule 23(c)(4) is difficult matter that has caused circuit split); <u>Castano</u>, 84 F.3d at 745-46 n.21.

Whether plaintiffs may obtain injunctive relief on their unjust enrichment claim is addressed in the parties' briefing on Defendants' Motion For Summary Judgment On Plaintiffs' KCPA And Unjust Enrichment Claims (Doc. #2705) filed November 1, 2011. Memorandum In Support Of Defendants' Motion For Summary Judgment On Plaintiffs' KCPA And Unjust Enrichment Claims (Doc. #2710) filed November 1, 2011 at 22-23; Plaintiffs' Response In Opposition To Defendants' Motion For Summary Judgment On Plaintiffs' KCPA And Unjust Enrichment Claims (Doc. #3147) filed December 22, 2011 at 58-59.  At this time, the Court need not resolve this dispute.  It is sufficient to note that the pretrial order requests injunctive relief on "plaintiffs' non-KCPA claims." Pretrial Order (Doc. #2558) at 28.  The Court emphasizes, however, that the cases cited in defendants' summary judgment brief and defendants' reply to the motion to decertify do not hold that restitution is the exclusive remedy for unjust enrichment claims; nor do they foreclose the possibility of the Court exercising its broad equitable powers to impose such relief.  See Peterson v. Midland Nat'l Bank, 242 Kan. 266, 275-76, 747 P.2d 159, 166 (1987) (at common law, "restitution" used to describe return or restoration of specific thing or circumstance; now expanded to mean "general duty to do justice" (quoting Continental Oil Co. v. Ideal Truck Lines, Inc., 7 Kan. App.2d 153, 157, 638 P.2d 954, 958 (1981), rev. denied, 231 Kan. 799 (1982)).  The Court therefore declines to decertify plaintiffs' unjust enrichment claims on this basis.

## 2.   Propriety Of (b)(2) Class Under Dukes

Defendants argue that as initially certified, the (b)(2) classes run afoul of Dukes. Defendants' motion for decertification is essentially a motion to reconsider based on an intervening change in controlling law. See D. Kan. Rule 7.3(b)(1).

Defendants argue that because each plaintiff seeks both injunctive and monetary relief , they

31

cannot properly be joined in a (b)(2) class. Such classes are limited to situations in which "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Ninth Circuit had read this Rule to permit certification of a (b)(2) class that combines claims for monetary and injunctive relief so long as the injunctive relief predominates. The Supreme Court in <u>Dukes</u>, however, stated as follows:

> The mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of class adjudication over individual adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request – even a "predominating request" – for an injunction.

131 S. Ct. at 2559. By certifying (b)(3) classes as to the liability and injunctive relief aspects of plaintiffs' claims, the Court has avoided this issue and any due process or collateral estoppel issues. Although the (b)(2) classes remain intact, under Rule 23(b)(3) and the mandatory notice and opt-out requirements of Rule 23(c)(2)(B), class members will be able to decide for themselves whether to tie their fates to the class representatives' or go it alone. <u>Id.</u>; <u>see also</u> <u>Kartman v. State Farm Mut. Auto. Ins. Co.</u>, 634 F.3d 883, 895 (7th Cir. 2011) (in appropriate case, Rule 23(b)(2) class and Rule 23(b)(3) class may be certified where real basis for both damages and equitable remedy exists). The Court therefore declines to reconsider its prior order which certified classes under Rule 23(b)(2).

## IV.     Summary Of Class Certification

### A.     Class Definitions

The Court hereby adopts two class definitions that apply to the (b)(2) and (b)(3) classes in the Kansas cases – <u>Wilson v. Ampride, Inc.</u>, 06-2582-KHV (D. Kan.) and <u>American Fiber & Cabling, LLC v. BP Products North America Inc.</u>, 07-2053-KHV (D. Kan.). The Court certifies the

following class as to plaintiffs' KCPA claims:

> All current Kansas residents and entities that at any time since December 31, 2003, purchased motor fuel at retail in the state of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants without the temperature of the motor fuel having been disclosed by the Defendants. "Current Kansas residents and entities" are those who reside in Kansas on the date that class notice is sent. Federal judges who have presided over this case, persons employed by defendants, affiliates of defendants, and any juror or alternate assigned to the trial of this case are excluded from the class.

The Court certifies the following class as to plaintiffs' unjust enrichment and civil conspiracy claims:

> All individuals, sole proprietors and family partnerships that currently reside in Kansas and at any time since December 31, 2003, purchased motor fuel at retail in the state of Kansas, from a gas station owned, operated or controlled by one or more of the Defendants without the temperature of the motor fuel having been disclosed by the Defendants. "All individuals, sole proprietors and family partnerships that currently reside in Kansas" are those who reside in Kansas on the date that class notice is sent. Federal judges who have presided over this case, persons employed by defendants, affiliates of defendants, and any juror or alternate assigned to the trial of this case are excluded from the class.

### B.    "Liability" Aspects Of Plaintiffs' Claims

The Court has carefully circumscribed the aspects of plaintiffs' claims that it certifies in the (b)(2) and (b)(3) classes. The (b)(2) classes include the "liability" aspects of plaintiffs' claims and plaintiffs' request for injunctive and declaratory relief. The (b)(3) classes include the same.

The liability aspects of plaintiffs' KCPA claims are (1) whether plaintiffs were consumers under the KCPA, (2) whether defendants were suppliers under the KCPA, (3) whether defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. § 50-626(b)(1)(A) or (D), K.S.A. § 50-626(b)(3) or K.S.A. § 50-627, and (4) on a classwide basis,[18] whether plaintiffs

---

[18]    The term "classwide basis" requires a "common contention" that "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that (continued...)

were "aggrieved" by defendants' act or practice.  See Pretrial Order (Doc. #2558) at 21-26.  See Pretrial Order (Doc. #2558) at 21-26.

The liability aspects of plaintiffs' unjust enrichment claims are (1) whether plaintiffs, on a classwide basis, conferred a benefit on defendants; (2) whether defendants appreciated or knew of the benefit; and (3) whether defendants accepted or retained the benefit under such circumstances as to make it inequitable for them to retain it without payment of its value.  See id. at 26.

The liability elements of plaintiffs' civil conspiracy claim are whether (1) two or more defendants, directly or through trade associations of which they are members, (2) shared an object or purpose to be accomplished, (3) had a meeting of the minds in the object, purpose or course of action and (4) took one or more unlawful overt acts that (5) caused injury to plaintiffs on a classwide basis.  See id. at 26-27.

The liability aspects of plaintiffs' claims necessarily include proof of causation and injury on a classwide basis, but do not include questions of damages for the KCPA and civil conspiracy claims, or restitution with respect to the unjust enrichment claims.

### C.    Classes Certified Under Rule 23(b)(2)

As noted above, in each of the two Kansas cases – Wilson v. Ampride, Inc., 06-2582-KHV (D. Kan.) and American Fiber & Cabling, LLC v. BP Products North America Inc., 07-2053-KHV (D. Kan.) – the Court hereby redefines the classes it has already certified under Rule 23(b)(2).  The classes still include the liability and injunctive relief aspects of plaintiffs' claims.

### D.    Classes Certified Under Rules 23(b)(3) And (c)(4)

In each of the two Kansas cases – Wilson v. Ampride, Inc., 06-2582-KHV (D. Kan.) and

---

[18](...continued)
is central to the validity of each one of the claims in one stroke."  Dukes, 131 S. Ct. at 2551.

<u>American Fiber & Cabling, LLC v. BP Products North America Inc.</u>, 07-2053-KHV (D. Kan.) – the Court hereby certifies classes under Rules 23(b)(3) and (c)(4) as to the liability and injunctive relief aspects of plaintiffs' claims.

In the <u>Wilson</u> case, the (b)(3) classes include the liability and injunctive relief aspects of plaintiffs' unjust enrichment and KCPA claims against BP Products North America, Inc. a/k/a BP Corporation North America, Inc.; Casey's General Stores, Inc.; Chevron USA, Inc.; Circle K Stores, Inc.; ConocoPhillips Company; 7–Eleven, Inc.; Equilon Enterprises, LLC d/b/a Shell Oil Products US; Valero Marketing and Supply Company; and Wal–Mart Stores, Inc. d/b/a Sam's Club. They also include the liability aspects of plaintiffs' civil conspiracy claims against BP Products North America, Inc. a/k/a BP Corporation North America, Inc.; Chevron USA, Inc.; Circle K Stores, Inc.; ConocoPhillips Company; and Equilon Enterprises, LLC d/b/a Shell Oil Products US. As in its initial class certification order, the Court excludes from this class plaintiffs' claims against Costco Wholesale Corporation and Petro Stopping Centers, LP.

In the <u>American Fiber & Cabling</u> case, the (b)(3) classes include the liability and injunctive relief aspects of plaintiffs' unjust enrichment and KCPA claims against ConocoPhillips Company; Kum & Go, LC; Quiktrip Corporation; Equilon Enterprises, LLC d/b/a Shell Oil Products US; and Valero Marketing and Supply Company. They also include the liability aspects of plaintiffs' civil conspiracy claims against ConocoPhillips Company; Kum & Go, LC; Quiktrip Corporation; and Equilon Enterprises, LLC d/b/a Shell Oil Products US. As in its initial class certification order, the Court excludes from this class plaintiffs' claims against BP West Coast Products, LLC; Casey's General Stores, Inc.; Chevron USA, Inc.; Kroger Company; and 7-Eleven, Inc.

## V.        Appointment Of Counsel

Because the Court hereby certifies new classes under Rules 23(b)(3) and (c)(4), it must appoint class counsel pursuant to Rule 23(g).  Rule 23(g) requires that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g).  In appointing counsel the Court must consider counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, (3) knowledge of the applicable law and (4) resources. Fed. R. Civ. P. 23(g)(1)(A).  The same counsel that represent the Kansas classes previously certified under Rule 23(b)(2) should represent the (b)(3) classes too.  The Court therefore appoints as counsel for the (b)(3) Kansas classes, Robert A. Horn of Horn Aylward & Bandy, LLC in Kansas City, Missouri; Thomas V. Bender of Walters Bender Strohbehn & Vaughan, P.C. in Kansas City, Missouri; and George A. Barton of the Law Offices of George A. Barton, P.C. in Kansas City, Missouri.

## VI.       Notice And Opportunity To Opt Out

Because the Court certifies classes under Rule 23(b)(3) with respect to the liability and injunctive relief aspects of plaintiffs' unjust enrichment, civil conspiracy and KCPA claims, it must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The parties have filed proposed notice plans.  On December 15, 2011, the Court held a class notice hearing at which the parties' class notice experts testified.  On January 11, 2012, the parties filed a <u>Joint Submission On Notice Plan For Classes Of Current Kansas Residents</u> (Doc. #3192) to inform the Court that they have reached an agreement on a notice plan.

Rule 23(c)(2)(B) requires the "best notice that is practicable" to members of a (b)(3) class,

but also requires "individual notice to all members who can be identified through reasonable effort." Individual notice to identifiable class members "is not a discretionary consideration to be waived in a particular case," rather it is "an unambiguous requirement of Rule 23." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974). Notice under Rule 23(c)(2) "is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed. R. Civ. P. 23(c) advisory committee's note (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950)). Plaintiffs' pocketbooks are not a factor – the mandatory notice requirement may not be relaxed based on the high cost of providing notice. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997); Eisen, 417 U.S. at 176; Burns v. Copley Pharm., Inc., 132 F.3d 42 (Table), 1997 WL 767763, at *2 (10th Cir. 1997).

Thus "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Mullane, 339 U.S. at 315. The "constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." Id. For example, publication notice does not satisfy due process where the names and addresses of the putative class members are known or very easily ascertainable. Eisen, 417 U.S. at 174-75 (citing Mullane, 339 U.S. at 318). Rule 23(c)(2) prefers individual notice because "notice by publication ha[s] long been recognized as a poor substitute for actual notice and that its justification was 'difficult at best.'" Id. at 175 (quoting Schroeder v. City of New York, 371 U.S. 208, 213 (1962). Its plain language leaves no doubt that individual notice must be provided to class members who are identifiable through reasonable effort. Id.

The parties have agreed that identifying individual class members would require unreasonable effort because mailing lists, if available, would include only a small percentage of the

class and are likely over and/or under inclusive.  <u>See</u> <u>Supplemental Declaration Of Cameron R.</u> <u>Azari On Notice Plan And Notices</u> (Doc. #3110) ¶¶ 7-8; <u>Declaration Of Daniel Rosenthal On Class</u> <u>Certification Notice Plan</u>, Ex. 15, Doc. #3041 ¶ 11.  Plaintiffs' class notice expert, Cameron R. Azari, therefore proposed a notice plan that would reach 75 per cent of class members by print and radio notices.  The parties agree that the Azari plan, not including the various supplemental notices he suggested, provides the best notice that is practicable under the circumstances.  <u>Joint Submission</u> <u>On Notice Plan For Classes Of Current Kansas Residents</u> (Doc. #3192).

That plan consists of statewide print and radio notices that will reach roughly 75 per cent of current Kansas residents over the age of 18.  <u>See</u> <u>Supplemental Declaration Of Cameron R. Azari</u> <u>On Notice Plan And Notices</u> (Doc. #3110) ¶¶ 14-16.  Specifically, a notice will be published in a weekday and a Sunday edition of 12 newspapers, and will be published twice in 16 daily or weekly newspapers in more rural areas of Kansas.  <u>Id.</u> ¶ 14.  In the weekly papers, the notice will appear over two consecutive weeks.  <u>Id.</u>  The total circulation of the newspapers is 688,631.  <u>Id.</u>  Given the relatively high level of newspaper readership in Kansas, the newspaper portion of the plan will reach nearly 70 per cent of current Kansas residents age 18 and older.  <u>Id.</u> ¶ 15.  The statewide radio notice consists of a two-week set of radio notices broadcast over the Kansas Information Network ("KIN").  <u>Id.</u> ¶ 16.  KIN plays on 39 radio states that include a variety of formats.  <u>Id.</u>  The plan includes roughly 23 spots per week on each station and is estimated to reach one million Kansas consumers.  <u>Id.</u>

Upon carefully reviewing the plan, and considering both parties' extensive efforts to develop an appropriate notice plan, the Court agrees that the parties' agreed plan is the best notice that is practicable under the circumstances.  In addition to the print and radio notices, the Court will post

38

the notice on its "Motor Fuel Temperature Sales Practices Litigation" website.[19]  The parties have indicated that once the Court rules on the motion to decertify, they should be able to submit joint proposed notice forms.  **The parties shall submit such forms on or before January 24, 2012.**

**VII.    Trial Plan**

This trial plan is subject to change based on the outcome of the dispositive motions on file in the Kansas cases.

**A.      Phase I**

Because the Court has certified classes as to some but not all aspects of plaintiffs' claims, the trial of plaintiffs' claims will be similarly bifurcated.  The Phase I trial is specially set for May 7, 2012.  In Phase I, plaintiffs will try the following elements of their KCPA claims: (1) whether plaintiffs are consumers under the KCPA, (2) whether defendants are sellers under the KCPA, (3) whether defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. § 50-626(b)(1)(A) or (D), K.S.A. § 50-626(b)(3) or K.S.A. § 50-627, and (4) on a classwide basis, whether  plaintiffs were aggrieved by defendants' acts or practices.  See Pretrial Order (Doc. #2558) at 21-26.

Plaintiffs will try the following elements of their unjust enrichment claims: (1) whether plaintiffs conferred a benefit on defendants; (2) whether defendants appreciated or knew of the benefit; and (3) whether defendants accepted or retained the benefit under such circumstances as to make it inequitable for them to retain it without payment of its value.  See id. at 26.

Plaintiffs will try the following elements of their civil conspiracy claims: (1) whether two

---

[19]        The website address is:

http://ksd.uscourts.gov/motor-fuel-temperature-sales-practices-litigation/.

or more of defendants, directly or through trade associations of which they are members, (2) shared an object or purpose to be accomplished, (3) had a meeting of the minds in the object, purpose or course of action and (4) took one or more unlawful overt acts that (5) caused injury to plaintiffs on a classwide basis.  See id. at 26-27.

Plaintiffs will try their KCPA and civil conspiracy claims to a jury, except that the third element of plaintiffs' KCPA claims under K.S.A. § 50-627, regarding unconscionable acts or practices, shall be tried to the Court under Section 50-627(b).  If the jury does not find that defendants violated the KCPA and/or conspired to do so, plaintiffs' claims in those respects are concluded.  If the jury finds that plaintiffs have satisfied the elements of their KCPA and/or civil conspiracy claims, plaintiffs may proceed to Phase II on those claims.

Plaintiffs will try their unjust enrichment claims to the Court.  See Plaintiffs' Response To Defendants' Submission In Response To Court's November 11, 2010 Order Requiring A Proposed Trial Plan (Doc. #1750) filed December 28, 2010 at 5.  If the Court does not find that defendants were unjustly enriched and/or conspired to unjustly enrich themselves, plaintiffs' claims in those respects could be over.  If, however, the Court finds that plaintiffs have satisfied the elements of their unjust enrichment and/or civil conspiracy claims, plaintiffs may proceed to Phase II on those claims.

To the extent that the claims tried to the jury and the claims tried to the Court depend on common determinations of fact, such questions of fact will be submitted to the jury.  In resolving the equitable issues, the Court will be bound by the jury findings on them.  Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955 (10th Cir. 2002).  Moreover, the Court does not foreclose the use of advisory jury verdicts if appropriate.

### B.     Phase II

If plaintiffs prevail on any of their claims in Phase I, the Court will determine in Phase II whether injunctive and/or declaratory relief is appropriate as to the remaining claims, and any individual damage claims.[20]

### C.     Expert Witnesses

In light of this ruling, the Court instructs the parties to review their expert witness reports and determine which experts will testify.  The parties shall also generally state the element(s) of plaintiffs' claims to which the expert testimony relates, and in which phase of trial the party plans to offer the testimony.  **Plaintiffs shall file their designations of expert testimony on or before January 27, 2012.  Defendants shall file their designations of expert testimony on or before February 2, 2012.  Any <u>Daubert</u> hearing (if necessary) is now rescheduled for March 1, 2012 at 9:00 a.m.**

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Decertify The Kansas Classes</u> (Doc. #3039) filed November 12, 2011, which the Court construes as a motion to reconsider its class certification order (Doc. #1675) filed May 28, 2010, be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that <u>Plaintiffs' Response In Opposition To Defendants' Motion To Decertify Class</u> (Doc. #3133) filed December 21, 2011, which the Court construes as a motion to redefine the classes and a motion for class certification under Rules 23(b)(3) and (c)(4), be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED that on or before January 24, 2012, the parties shall**

---

[20]     The Court previously rejected plaintiffs' request to certify a class for damages under Rule 23(b)(3), and there is no reason to revisit that decision at this time.

submit joint proposed notice forms that comply with Rule 23(c)(2)(B).

IT IS FURTHER ORDERED that on or before January 27, 2012, plaintiffs shall file their designations of expert testimony and that on or before February 2, 2012, defendants shall file their designations of expert testimony.  Any **Daubert** hearing (if necessary) is now rescheduled for March 1, 2012 at 9:00 a.m.

Dated this 19th day of January, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

42