## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

_____
                                                    )
**IN RE: MOTOR FUEL TEMPERATURE**          )          **MDL No. 1840**
**SALES PRACTICES LITIGATION**             )
                                                    )          **Case No. 07-MD-1840-KHV**
**(This Document Relates to All Cases)**    )
                                                    )
_____    )

### DEFENDANT COSTCO WHOLESALE CORPORATION'S RESPONSE TO
### CERTAIN OBJECTIONS TO THE AMENDED CLASS ACTION SETTLEMENT

Pursuant to the Court's November 10, 2011 Order [Doc. No. 3019], Defendant Costco Wholesale Corporation submits this response in opposition to certain objections submitted by proposed Settlement Class Members to the Amended Stipulation of Class Action Settlement Agreement and Release ("Amended Settlement") [Doc. No. 1769-1], and requests that the Court reject the objections and grant final approval of the proposed settlement.

## I.       INTRODUCTION

When this Court declined to grant final approval of the original Stipulation of Class Action Settlement Agreement and Release ("Original Settlement"), it noted that if Plaintiffs and Costco restructured the settlement, "it appears that the proposed settlement would be fair, reasonable and adequate for class members in conversion and non-conversion states." [Doc. No. 1707 at 39.]  In the Amended Settlement, Plaintiffs and Costco have addressed the concerns expressed by the Court, eliminating any doubt about whether the proposed settlement should be approved.

Much like the Original Settlement, the Amended Settlement has been met with the overwhelming approval of the more than 11 million Settlement Class Members to whom Costco distributed notice.  Only 3,248 Class Members have timely opted out and only 395 submitted timely objections after Costco distributed notice of the Amended Settlement.  The issues the objectors raise are nearly identical to those raised in connection with the Original Settlement,

and, as with the Original Settlement, do not undermine the fundamental fairness of the compromise reached.  Accordingly, these objections should not impede final approval of the Amended Settlement.

## II.   OVERVIEW OF COSTCO'S RESPONSE

Costco files this memorandum to address Settlement Class Members' objections regarding Plaintiffs' attorneys' fees, class representative incentive awards, and adequacy of the benefit to the Settlement Class.  For the reasons summarized below and set forth in further detail in this memorandum, Costco submits that none of these objections provide a sufficient basis to deny final approval of the proposed settlement.

*First*, despite being informed of the status of Plaintiffs' $10 million attorneys' fees request, it appears some Settlement Class Members have (wrongly) assumed that Plaintiffs' attorneys are guaranteed to receive the full amount requested.  As the Court is aware, no decision has yet been made as to the reasonable amount of attorneys' fees.  Costco vigorously opposed Plaintiffs' fees motion, and there is no agreed upon amount for attorneys' fees.  There is no "clear sailing" for Plaintiffs' attorneys here.  To the contrary, judicial scrutiny of any fee award is built into the Amended Settlement itself.  Therefore, objections based on the false premise that Plaintiffs' attorneys will automatically receive $10 million in attorneys' fees are without merit, and not a reason to reject the Amended Settlement.

*Second*, as with Plaintiffs' attorneys' fees, the Amended Settlement merely permits Class Representatives to apply for incentive awards of $2,000 each, which would be deducted from any amount the Court awards Plaintiffs' attorneys for fees and costs.  Some Settlement Class Members appear to have objected based on the inaccurate view that the Amended Settlement guarantees $2,000 to each Class Representative.  Consistent with Tenth Circuit case law, this Court has already notified Plaintiffs that Class Representatives will need to demonstrate what they have done in pursuit of the lawsuits before the Court will authorize an incentive award.  In any event, class representative incentive awards are discretionary, and the fact that the Amended

2

Settlement permits Class Representatives to petition the Court for an award does not render the Amended Settlement ineligible for final approval.

*Third*, certain objectors assert that injunctive relief, as opposed to damages, constitutes insufficient consideration to the Settlement Class and that the Amended Settlement fails to include a benefit to Settlement Class Members who are no longer Costco members.  The Court has already overruled these objections, finding that "[o]btaining injunctive relief for temperature adjusted motor fuel sales is a primary goal of plaintiffs' cases."  [Doc. No. 1707 at 41.]  Overall, the proposed settlement represents a fair, adequate, and reasonable alternative to protracted litigation, in which Plaintiffs' recovery is far from certain.

For these reasons, and those stated below, Costco submits that the objections should be overruled, and the Amended Settlement should be approved.

## III.    RELEVANT BACKGROUND

Plaintiffs Annie Smith, Christopher Payne, Phyllis Lerner, Herb Glazer, Mara Redstone, Brent Crawford, Victor Ruybalid, Zach Wilson, Lisa McBride, Raphael Sagalyn, Brent Donaldson, Gary Kohut, Richard Gaulauski, Charles Byram, Jean Neese, Shonna Butler, Gerald Panto, Joann Korleski, Tamara Miller, Priscilla Craft, Jeff Jenkins, and James Graham ("Plaintiffs" or "Class Representatives") allege on behalf of themselves and others similarly situated that Costco sold motor fuel in various states without disclosing or adjusting for the fuel's temperature, allegedly in violation of these states' consumer protection statutes and common law.

Costco denies all liability with respect to any and all facts and claims alleged against it. In particular, Costco denies that any Plaintiffs were damaged as a result of Costco's failure to sell motor fuel on a temperature-adjusted basis.[1]  Nonetheless, in December 2007, Costco voluntarily began explicitly informing its fuel-purchasing customers that Costco does not adjust

---

[1] Costco maintains that it has not misrepresented or omitted any material information about what Costco is selling — uniform units of 231 cubic inches of gasoline in accordance with the plain meaning and applicable statutory definition of a gallon.

for temperature or other factors that may affect the energy content of each gallon of gasoline dispensed at its fuel pumps.  [Doc. No. 1598-6 at 2.]  Thus, each Costco customer who purchased gasoline after December 2007 was given notice on each fuel pump of Costco's practices.  (*Id.*)

Notwithstanding the strength of Costco's defenses in this action, Costco engaged in settlement negotiations with Plaintiffs and agreed to a settlement to resolve Plaintiffs' claims against Costco.

### A.     Amended Settlement

On April 17, 2009, Costco and Plaintiffs entered into a settlement agreement resolving all of the claims against Costco, subject to the Court's final approval.  [Doc. No. 1015.]  A few months later, in August 2009, the Court conditionally certified a settlement class and preliminarily approved the settlement.  [Doc. No. 1273.]  On August 13, 2010, the Court overruled Plaintiffs' motion for final approval of the settlement and provided suggestions for restructuring the settlement, including the option of creating subclasses to address differences in state law and the fact that Costco currently does not purchase fuel on a temperature-adjusted basis in certain states.  [Doc. No. 1707 at 39.]  On January 3, 2011, the parties entered into an Amended Settlement that addresses the comments provided in the Court's August 13, 2010 ruling.  [Doc. No. 1769-1.]

The Amended Settlement creates 21 subclasses and identifies Class Representatives for each state covered by the settlement:  Alabama, Arizona, California, Florida, Georgia, Indiana, Kansas, Kentucky, Maryland, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, and Virginia ("States at Issue"). (Amended Settlement §§ 1.4, 1.17, 2.1.)  For each State at Issue, the subclass is defined as follows:

> All persons who, between January 1, 2001 and the date of this Agreement,[2] purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit,

---

[2] As Costco noted in the Parties' joint motion in support of notice plan [Doc. No. 1867], due to a scrivener's error, the Parties inadvertently defined each subclass in the Amended Settlement to include purchasers of Costco gasoline from January 1, 2001 through the date of

excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court, and members of the Court's immediate family.  Class representative: [varies by subclass].

(Amended Settlement § 2.1)

In exchange for a release of Settlement Class claims, Costco agreed to convert its fuel dispensers to automatic temperature compensation ("ATC") dispensers at existing retail stations and to install ATC equipment at any new retail station in 14 "Conversion States" (where Costco purchases motor fuel on a temperature-adjusted basis), pursuant to the schedule and terms set forth in the Amended Settlement.  (*Id*. §§ 4.2-4.4.)  Costco also agreed that, if it begins consistently to purchase motor fuel on a temperature-adjusted basis in 7 "Non-Conversion States," it will convert its fuel dispensers in those states to ATC at existing retail stations and install ATC at new retail stations.  (*Id*.)

As with the Original Settlement, the Amended Settlement provides that, if in Costco's good faith judgment there is any regulatory approval required before Costco can proceed with ATC, Class Counsel shall "take all reasonable steps to seek such regulatory approval required by law . . . so that Costco can fully comply with [its] obligations . . . ."  (*Id*. § 4.6.)  In the event regulatory approval is denied, Costco will not be required to convert to ATC in that State, and the State will cease to be a "Conversion State."  (*See id*. §§ 4.5, 4.6, 9.)

### B.    Notice Plan for the Amended Settlement

On October 11, 2011, Plaintiffs and Costco submitted a proposed notice plan comprising: (1) individual notice to Settlement Class members by U.S. Mail or e-mail (to the extent available) who purchased gasoline in the States at Issue; (2) publication notice to inform all Settlement Class members of the Amended Settlement and developments regarding the settlement since the April 1, 2010 final approval hearing; and (3) website notice via Costco's

---

"*this* Agreement."  (Amended Settlement § 2.1 (emphasis added).)  The subclasses should have been defined to include purchasers of Costco gasoline from January 1, 2001 through April 22, 2009, the date of the *Original* Settlement.  [Doc. No. 1867 at 2, n.3.]  Costco included this intended definition in the notices it provided to the Settlement Class.  [Doc. Nos. 2157-1 at 2 and 2157-2 at 4.]

la-1159281

Fuel Settlement Website, located at http://www.Costco.com/fuelsettlement.pdf, containing a more detailed notice regarding the Amended Settlement and including further information and instructions on how to opt out or participate in the settlement proceedings.  [Doc. No. 2157 at 3–4.]

On November 10, 2011, the Court approved the proposed notice plan subject to certain changes to the plan to address, among other things, how Costco will protect against spam filters and how Costco will collect objections and requests for exclusion by proposed Settlement Class Members electronically.  [Doc. No. 3019 at 3.]  The Court's order set the following deadlines: (1) January 17, 2012 – last day to provide notice to the class; (2) February 17, 2012 – last day for class members to opt out or object; and (3) March 22, 2012 – date of the final approval hearing. (*Id*. at 3-4.)

On November 17, 2011, the Parties submitted revised notices incorporating the modifications suggested by the Court.  [Doc No. 3034.]  In addition, Costco filed declarations explaining the steps Costco would take to protect against spam filters for notices sent by e-mail, and stating that Costco will collect objections and requests for exclusion by Settlement Class Members electronically.  [Doc. Nos. 3035 and 3036.]  On November 18, 2011, the Court approved the proposed notice plan as modified and found that it satisfied the requirements of Rule 23(c)(2)(b) and (e).  [Doc. No. 3037 at 2.]

### C. Overview of Objections

Pursuant to the Amended Settlement and the Court's November 10, 2011 and November 18, 2011 Orders, Costco distributed notice to 11,126,761 proposed Settlement Class Members between January 10, 2012 and January 17, 2012, via e-mail and U.S. Mail.  (Declaration of Michelle Acpal ("Acpal Dec.") ¶ 3, attached hereto as Exhibit 1.)  The notices informed Settlement Class Members of the terms of the Amended Settlement and explained the procedures Settlement Class Members should follow to exercise their right to opt out of the settlement (no later than February 17, 2012) or to object to the settlement (no later than February 17, 2012). (Acpal Dec. ¶ 6.)  A total of 3,248 persons (about 0.0003 percent) timely opted out of the

Settlement Class (*See* Declaration of David F. McDowell ("McDowell Dec.") ¶ 3, attached hereto as Exhibit 2), and 395 persons[3] (about 0.00004 percent) submitted timely objections after Costco provided notice of the Amended Settlement.[4]  [Doc. No. 3769-1 and 3769-3.]

Only objectors Amy Alkon and Nicolas Martin ("Alkon Objectors") are represented by counsel (attorney Theodore H. Frank) in connection with their objections to the Amended Settlement.  [Doc. No. 3737, see also Doc. No. 3769-1 (No. 80015).]  Although the Alkon Objectors raise a number of objections (many of which this Court has already overruled in connection with the Original Settlement), one of their primary objections to the Amended Settlement is based on the Ninth Circuit's decision in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011).  As discussed in more detail below, however, *Bluetooth* does not apply to this settlement.

Of the 394 remaining objections, 26 were made by individuals who appear to have intended to opt out of the proposed class, and thus lack standing to object.[5]  (*See* McDowell Dec. ¶¶ 3, 5.)  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 55 F. App'x 498, 500 (10th Cir. 2003) (stating we have "held that parties who had opted out of a settlement lacked standing to challenge the settlement because they lacked any legally protected interest that could support the 'injury in fact' element necessary to demonstrate standing") (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1102 (10th Cir. 2001)) (internal quotations omitted).  In addition, at least 7 objections were submitted by individuals who were not Settlement Class Members and who also

---

[3] Five individuals filed their objections twice.  (Objection Nos. 35/36, 79/80, 176/80009, 296/297, and 363/80010.)  Each of these objectors' duplicative objections has not been included in this total.  [Doc. No. 3769-1 and 3769-3.]

[4] Costco lodged the objections under seal with the Court as Doc. No. 3768.  Costco filed public redacted versions of the objections as exhibits to Doc. No. 3769.  For the purposes of this response, Costco will reference the publicly filed documents.

[5] *See, e.g.*, Objection Nos. 43 ("None Required.  I request to be excluded."), 97 ("I just want to be excluded"), 106 ("We do not wish to be any part of this.  This is what is wrong with the US – too sue happy!  We love Costco and do not believe that they did anything wrong and do not want to be any part of this.").  [Doc. No. 3769-3.]

la-1159281

have no standing to object.[6]  *See In re Integra Realty*, 262 F.3d at 1102 (citing *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) ("[t]hose who are not class members . . . because they are outside the definition of the class" lack standing to object to class settlement)).

Of the remaining 361 objections, approximately 100 "objections" did not articulate a reasoned basis for their objection or seemed to think that the "objection" required them to state that they purchased fuel at Costco.  Representative examples of objectors who did not articulate a reason for their objection include "because" (No. 92), "N/A" (Nos. 222, 267, 275), "none" (No. 361), and "was not satifisfied [sic]" (No. 321).  [Doc. No. 3769-3.]  Examples of objectors who seemed to think that they needed to demonstrate they purchased fuel from Costco include "Purchased gasoline between given dates" (No. 129), "I bought a lot of gas" (No. 247), and "I purchased gasoline from Costco during this period of time" (No. 355).  (*Id.*)

When the dust settles, only three types of objections warrant a response from Costco:[7] (1) objections arguing that Plaintiffs' attorneys' fees are unwarranted or excessive; (2) objections asserting that Class Representative incentive awards are improper; and (3) objections complaining that the injunctive relief contemplated by the settlement constitutes an inadequate benefit to the Settlement Class and to Settlement Class members who are no longer Costco members.

---

[6] Objection Nos. 175 ("I do not buy fuel from Costco") and 212 ("never bought gas at Costco").  [Doc. No. 3769-3.]  In addition, for 5 objections, based on information provided by the objectors, Costco has determined the objectors were Costco members, but purchased gasoline outside of the relevant time period.  (Acpal Dec. ¶ 14.)  For 26 other objections, based on information provided by the objectors, Costco has been unable to confirm whether the objectors are Settlement Class Members.  (*Id.*)

[7] Costco leaves to Plaintiffs to address the remaining objections, and the objections filed by the McKerley Objectors [Doc. No. 1799] and the Sandoval Objectors [Doc. No. 1800], which include assertions that the amended settlement does not differentiate amongst varying state laws, former Costco members and members in Non-Conversion States do not benefit from the amended settlement, any alleged harm from Costco's failure to use ATC is inconsequential, and the lawsuit is frivolous.

IV.     ARGUMENT

The response of the Settlement Class to the proposed settlement has been overwhelmingly positive.[8]  As discussed above, despite the fact that Costco distributed notice to over 11 million Settlement Class Members, only 395 filed timely objections, and only 3,248 timely opted out.  (*See* Acpal Dec. ¶ 3; McDowell Dec. ¶ 3.)  The objections, in particular, are insignificant in number — only a miniscule 0.00004% of the Settlement Class objected to the Amended Settlement — and support a finding that the settlement is adequate:

> [A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (internal quotations and citation omitted).

In this case, Costco enabled Settlement Class members to object or opt out of the Amended Settlement electronically at no cost.  (*See* Acpal Dec. ¶ 6; Doc. Nos. 3034-1 and 3034-2.)  This no-cost mechanism bolsters the significance of the extremely low number of members who exercised these rights.  The Alkon Objectors' argument that "[o]bjecting entails costs" and therefore "silence is a rational response to any proposed settlement even if that settlement is inadequate" does not apply here.  [Doc. No. 3737 at 22.]  It is especially telling that the vast majority of Settlement Class members who objected or opted out of the Amended Settlement exercised their right to do so electronically.  (*See* McDowell Dec. ¶ 3.)  The Court can properly infer class approval from the number of objections to the Amended Settlement.

The fact that the objectors and opt-outs represent a tiny fraction of the Settlement Class also supports a finding that the settlement is fair and reasonable.  *See West v. First Franklin Fin. Corp.*, No. 06-2064-KHV/JPO, 2007 U.S. Dist. LEXIS 79286, at *4 (D. Kan. Oct. 24, 2007)

---

[8] Some of the objectors object not to the settlement, but to the bringing of claims against Costco in the first instance.  For example, "objector" No. 49 states "Costco always has been good to its customers" and objects to the settlement because he believes Plaintiffs are "blackmailing" Costco, not because he found the settlement unfair or inadequate.  [Doc. No. 3769-3.]

("The Court gives weight to the parties' judgment that the settlement is fair and reasonable, and as well as to the class's reaction to the settlement."); *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2007 U.S. Dist. LEXIS 67368, at *29-30 (D. Kan. Sept. 11, 2007) ("While the number of objectors is not controlling, a relatively small number of objectors can be taken as some indication that the class members as a group did not think the settlement was unfair.") (internal quotations and citations omitted).

### A.    The Appropriate Amount of Attorneys' Fees Is Within the Discretion of the Court and the Court Has Yet to Determine What Amount It Will Award.

The Alkon Objectors (and others) assert that Plaintiffs' attorneys' fees in this case are "unreasonably high."  But, these objectors appear to assume, despite being informed otherwise, that Plaintiffs' attorneys are guaranteed to receive the full $10 million they have requested. Because the Parties have not reached an agreement on an amount for attorneys' fees and the Court has not yet ruled on Plaintiffs' motion for attorneys' fees, there currently is no set amount for fees.  Moreover, the attorneys' fees provision in the Amended Settlement is a far cry from the settlement at issue in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011), the case on which the Alkon Objectors heavily rely.

The settlement in *Bluetooth* provided the class $100,000 in *cy pres* awards while setting aside up to $800,000 for class counsel and $12,000 for class representatives.  *Id*. at 938.  It also contained a "clear sailing" provision in which defendants agreed not to object to an award of attorneys' fees and a "kicker" clause in which all fees not awarded would revert to defendants. *Id*. at 947.  The Ninth Circuit remanded the case to the district court for more explicit findings on the reasonableness of the fee request stating that "a defendant's advance agreement not to object cannot relieve the district court of its duty to assess fully the reasonableness of the fee request." *Id*. at 943.

*Bluetooth* does not apply to the facts of this case.  In particular, the Amended Settlement does not contain either of the two *Bluetooth* warning signs identified by the Alkon Objectors. First, there is no "clear sailing" provision.  In fact, the opposite is true because Plaintiffs' motion

for attorneys' fees is heavily contested.  Second, there is no "kicker" provision reverting unused portions of a "common fund" back to Costco.  Costco has only agreed to pay fees and costs in an amount awarded by the Court, and, by contesting the fees motion, Costco has, in effect, put the fees request under a high intensity microscope.  As a result, *Bluetooth* has no application here.

## 1. As Evidenced By Costco's Vigorous Opposition to Plaintiffs' Motion for Attorneys' Fees, There Is No Clear Sailing In This Case

In stark contrast to the fee request in *Bluetooth*, Plaintiffs' motion for attorneys' fees cannot avoid judicial scrutiny because Court review of any fee request is built into the terms of the Amended Settlement.  (*See* Amended Settlement § 7.1.)  Inexplicably, the Alkon Objectors object to the Amended Settlement based on a non-existent "clear sailing" provision, claiming it somehow has "the self-serving effect of protecting class counsel by deterring scrutiny of the fee award." [Doc. No. 3737 at 21.]  The Alkon Objectors miss the mark.  Costco did not give Plaintiffs' attorneys clear sailing on their fee request.  In fact, Costco discharged its duties to this Court and thoroughly scrutinized Plaintiffs' attorneys' time entries and billing records to determine whether the fee request is reasonable (it is not).  *See Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-21640-KHV, 08-2133-KHV, 08-2149-KHV, 2009 U.S. Dist. LEXIS 60125, at *35-37 (D. Kan. Jul. 14, 2009) (noting fee requests made in non-adversarial setting can lead to unreasonable fees requests).

Rather than being a bystander to the fee request, Costco opposed the motion, arguing that Plaintiffs' attorneys' actual work attributable to Costco-specific matters[9] and their woefully inadequate billing records did not justify even a small fraction of their $10 million request. [Doc. No. 2006.]  Over 20% of objectors expressed similar concerns regarding Plaintiffs' excessive fee request, which provide additional support for Costco's fee opposition.[10]  In its

---

[9] Plaintiffs' counsel did not separately identify "Costco-specific" time.  [Doc. No. 2006 at 10–11.]

[10] *See, e.g.,* No. 105 ("Legal fees of $10 million are excessive"), No. 119 ("Plaintiffs' attorneys should not get $10 million or anything close to that"), and No. 149 ("What did the attorney's [sic] do to warrant $10 million in attorney's fees?  What was their hourly rate, what did they do, what expenses did they incur?  Were the expenses and work done reasonable or where [sic] they just incurring billables?  I can see reasonable attorney's fees and expenses being

opposition, Costco provided specific examples of Plaintiffs' billing records that demonstrate a lack of reasonableness, including duplicative task entries by multiple timekeepers, vague or no task descriptions, billing for background research, entries for clerical or routine de minimis tasks, and in one instance, a timekeeper billing for 32 hours in a single day.  [Doc. No. 2006 at 8.]  As such, Costco argued the amount of fees requested is patently unreasonable.

Costco's challenge to Plaintiffs' fees motion exemplifies the very scrutiny of the fee award that the Alkon Objectors purport to seek.  In light of the foregoing, the Alkon Objection should be rejected.

> 2.     **The Amended Settlement Does Not Create a Common Fund, Leaving Nothing to "Kick" Back to Costco**

The Amended Settlement does not — and, in fact, cannot — contain a "kicker" clause because there is no "separate pot of money" from which Costco will pay attorneys' fees.  [Doc. No. 3737 at 16.]  Contrary to the Alkon Objectors' assertion, there is no "constructive common fund." (*Id*. at 20.)  As Costco explained in its fee opposition, Plaintiffs have obtained no "common benefit" as that term is used in controlling case law.  [Doc. No. 2006 at 30.]  An award of attorneys' fees under the common benefit exception is limited to circumstances where (1) the litigation confers a substantial benefit, (2) that is common between the plaintiffs and a larger group benefiting from the result, with which attorneys' fees must be shared, and (3) the burden of the fee award is spread among the entire group benefiting in proportion to the benefits received.  *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1480, 1482-85 (10th Cir. 1993).

Here, any fee award will not be borne directly by the Settlement Class.  *See Jordan v. Heckler*, 744 F.2d 1397, 1400 (10th Cir. 1984) (concluding no common benefit exception where any fee award paid from the general Social Security Trust Fund will not correspondingly reduce the payments to Social Security recipients with representative status).  Indeed, the Amended

---

owed but how can $10 million be reasonable?"), No. 3 ("Please send these class-action thugs a message: they may submit their hours and be paid minimum wage, at most . . . .").  [Doc. No. 3769-3.]

Settlement forbids Costco from offsetting the cost of any fee award against its obligations to the Settlement Class. (Amended Settlement § 7.1) ("[S]uch payment shall not reduce any of Costco's obligations to the Settlement Class pursuant to this Amended Settlement Agreement."). Thus, any cost-sharing of attorneys' fees will neither be shouldered by the Settlement Class nor spread among the potential beneficiaries in proportion to the benefits received. Because this is not a common fund case, the Alkon Objectors' arguments regarding the non-existent "kicker" clause are inapposite and do not provide a basis to reject the Amended Settlement.

### B.   The Amount of Any Class Representative Incentive Award Is Within the Court's Discretion.

The Alkon Objectors, and a handful of other objectors,[11] claim the Amended Settlement permits "exaggerated recovery for class representatives, including class representatives who have incurred no burden or threatened burden, and have added nothing to the settlement . . . ." [Doc. No. 3737 at 25.] The Amended Settlement, however, merely allows Class Representatives to request an incentive award of $2,000; it does not mandate an incentive payment. (*See* Amended Settlement § 7.4.) Nor can it.

Whether a Class Representative should be given an incentive award is within the discretion of the Court. *See UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 234-35 (10th Cir. 2009) (reviewing district court's exercise of discretion in denying incentive award). The Tenth Circuit has recognized that courts may authorize class representative incentive awards to compensate individuals for "personal risk incurred or additional effort and expertise provided for the benefit of the class." *Id*. at 235-36. This Court has already put Plaintiffs on notice that "they should submit detailed information regarding what the representatives have done in pursuit of the lawsuits" to support any requests for Class Representative awards. [Doc. No. 1707 at 56 n.45.]

---

[11] Excerpts from various objections addressing class representative incentive awards include No. 67 ("Why do the representatives get compensation?") and No. 118 ("I object to the settlement because only those listed are able to collect any damages. While they deserve a 'bonus' for having done the leg work to bring the suit, it is clear that they did not prevail."). [Doc. No. 3769-3.]

Any class incentive award by the Court, will be deducted from the amount awarded to Plaintiffs' for attorneys' fees.  (Amended Settlement § 7.4.)  Given that the Amended Settlement does not guarantee each Class Representative a $2,000 award, the possibility that the Court *may* authorize an award is not a reason to reject the Amended Settlement.

> **C.      The Injunctive Relief Contemplated By the Amended Settlement Constitutes Adequate Consideration.**

As with the Original Settlement, certain objectors contend that the injunctive relief provided by the Amended Settlement is insufficient consideration, and claim that without monetary damages, the settlement is inadequate.[12]  Other objectors contend that injunctive relief cannot compensate Settlement Class Members for past wrongs.[13]  This Court has already rejected these objections once [Doc. No. 1707], and there is no reason for the Court to reach a different conclusion now.

This case is focused on alleged consumer deception.  As such, the Court should examine the Amended Settlement as a compromise of those claims, taking into account the strength of Plaintiffs' position.  "The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."  *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977) (internal quotations and citations omitted); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (There is a "strong judicial policy in favor of settlements" in the class action context).

In criticizing the injunctive relief contemplated by the settlement, the objectors fail to recognize that the very nature of a settlement is compromise in the interest of expeditious and cost-effective conclusion of the litigation.  *See County of Santa Fe v. Public Serv. Co. of N.M.*,

---

[12] *See*, *e.g.*, No. 244 ("proposed settlement does not provide for payment to class members such as myself") and No. 362 ("The settlement does not provide any meaningful benefit or relief to me and other consumers.").  [Doc. No. 3769-3.]

[13] *See*, *e.g.,* No. 360 ("For the individuals who lost money by purchasing the fuel there is no restitution. . . . The individuals who spent the money are not receiving anything to rectify the situation where they were shorted."); No. 103 ("The settlement appears to leave the consumer with no reimbursement for past nor future damages . . . .").  [Doc. No. 3769-3.]

la-1159281

311 F.3d 1031, 1053 (10th Cir. 2002) ("The premise of a settlement and compromise is that each party has an arguable position that it agrees to give up in exchange for an expeditious, inexpensive, and amicable resolution of the matter.").  Consistent with this premise, each party to a settlement necessarily receives less (sometimes much less) than what he or she *may* have obtained *if* he or she ultimately prevailed on the merits.  This alone is insufficient to support a finding that the settlement is unfair, unreasonable, or inadequate.  *See Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 627 (D. Kan. 1976) ("[T]he fact that a proposed settlement of a class action may only amount to a fraction of potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should therefore be disapproved.").

The injunctive relief contemplated by the Amended Settlement is fair, reasonable, and adequate in light of the difficulties Plaintiffs face in prevailing on claims in non-conversion states and the uncertainty regarding whether Plaintiffs could establish individual damages on claims in conversion states.  [*See* Doc. No. 1707 at 46.]  Indeed, at least one "objector" recognizes that injunctive relief of the type contemplated in the settlement is appropriate, stating: "There shouldn't be an amended settlement.  There should not have been a lawsuit to begin with.  Costco should have only had to pay for the new devices they are going to put on their gasoline pumps."  (No. 138 [Doc. No. 3769-3].)

The Court has already concluded that the proposed settlement achieves a "primary goal of plaintiffs' cases" — in the Conversion States (where Costco purchases motor fuel on a temperature-adjusted basis), to the extent permitted to do so, Costco will begin selling motor fuel on a temperature-adjusted basis.  [*See* Doc. No. 1707 at 41.]  The suggestion that Costco may pass along the costs of ATC to consumers does not render the Amended Settlement unfair because, as the Court previously recognized, "if Costco continued to litigate these cases, class members . . . would presumably subsidize those costs as well."[14]  [Doc. No. 1707 at 48.]

---

[14] By representing that Costco "declined to predict what would happen to its unit prices if it were to implement ATC," [Doc. No. 3737 at 9], the Alkon Objectors mischaracterize Costco's testimony at the April 1, 2010 fairness hearing.  (Hr'g Tr. at 92:20-93:8 [Doc. No. 1696].)  At

Likewise, the absence of monetary relief does not render a settlement unfair.  *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (nonpecuniary benefits may support a class action settlement); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 507, 522 (E.D. Pa. 2007) (finding settlement that consists entirely of prospective injunctive relief, with no monetary payment to the class, as fair, reasonable, and adequate).[15]

Moreover, Costco's promises in the Amended Settlement are bargained for, and therefore constitute adequate consideration.  Restatement (Second) Contracts § 71(2) (1981) ("A . . . return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.").  Substantial uncertainty exists as to Plaintiffs' likelihood of success on their claims.  At this time, no determination has been made by the Court with respect to the merits of Plaintiffs' claims, and even some of the objectors have opined that, on the merits, Plaintiffs' claims are dubious.[16]  Thus, Costco's promise to convert to ATC in the

---

that hearing, Costco's counsel emphasized that the competitive advantage for Costco is to be the low price provider in its markets, explaining:

> It's a complicated world and it's a very complicated market.
> Costco will be competing in that market.  There simply is no way
> to predict exactly how that's going to play out.  Can Costco simply
> raise the prices to cover all the ATCs?  It doesn't make any sense.
> It's got to still compete in the market.  The competitive advantage
> is it's the low price provider in its markets.  Is it not going to
> recoup some of this money?  Again, it's all going to depend on the
> competitive market in which they're in and people's understanding
> of ATC.  And they're just simply at this point, being able to predict
> that either way is speculative.

(*Id.*)

[15] A few objectors claim there is no value for Settlement Class Members who are no longer Costco members.  *See, e.g.,* No. 80013 and Nos. 260 and 379.  [Doc. Nos. 3769-1, 3769-3.]  As the Court previously noted, these Settlement Class members may choose to renew their Costco memberships to obtain ATC fuel if they wish.  [Doc. No. 1707 at 47 n.36.]

[16] *See, e.g.,* Nos. 94 ("This is utter nonsense.  For each gallon of gasoline I paid [sic] I, I received precisely one gallon, no more no less.  I was never defrauded or taken advantage of because it got hot outside."), and 104 ("Every vendor has sold fuel without temperature compensation since the beginning of time.  The weights and measures departments of states and counties certify the accuracy of dispensing devices according to their individual laws, rules, and regulations.  Unless Costco was artificially warming the gas prior to dispensing (which is not even alleged) there is simply no damage to consumers and therefore no basis for a suit.").  [Doc. No. 3769-3.]

la-1159281

Conversion States (if lawfully able) comes at a time when Plaintiffs' recovery is far from certain, and constitutes consideration sufficient to support the Amended Settlement.  When the class claims suffer from a fatal flaw, the "settlement cannot be attacked as too low."  *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 749 (7th Cir. 2001).  Furthermore, Costco's promise is not an illusory promise, because contrary to certain objectors' arguments,[17] performance is not optional.  *See* Restatement (Second) of Contracts § 77 cmt. a (1981) (defining illusory promise as "words of promise which by their terms make performance entirely optional with the 'promisor'").  Pursuant to the settlement, Costco must convert to ATC or install ATC in the Conversion States where Costco is lawfully able to sell temperature-adjusted fuel.

Objectors further argue that the injunctive relief is distant, speculative, and unfair to the Settlement Class because the Amended Settlement provides that Costco will be excused from converting to ATC in States where there is no regulatory approval to do so.  As this Court has previously held [Doc. No. 1707], this possibility alone does not detract from a determination that Costco's promise constitutes adequate consideration.  Restatement (Second) of Contracts § 78 (1981) ("The fact that a rule of law renders a promise voidable or unenforceable does not prevent it from being consideration."); *see In re Mex. Money Transfer Litig.*, 267 F.3d at 749 (affirming adequacy of settlement where no federal or state law required defendant to make disclosures in the manner advocated by plaintiffs).

Finally, that some Settlement Class Members may receive more gas from volumetric gallons than they would with ATC[18] is not a reason to reject the Amended Settlement.  As the

---

[17] Certain objectors (Nos. 117, 381 [Doc. No. 3769-3]) attack the "Supply Disruption" provision of the Amended Settlement, which permits Costco to rescind the agreement if Costco "loses a commercially material amount of its current motor fuel supply and/or experiences commercially material increases in the price of motor fuel in a Conversion State[.]"  (Amended Settlement § 4.8.)  The Court found the Supply Disruption clause reasonable in connection with the Original Settlement on the grounds that the rescission remedy would put both parties back to their original positions such that Plaintiffs would re-acquire the right to bring suit on their original claims.  [Doc. No. 1707 at 52-53.]

[18] Doc. No. 3737 at 13.

Court noted in connection with its ruling on objections to the Original Settlement, if Settlement Class members "believe they will be worse off purchasing ATC fuel from Costco, they will be free to purchase fuel from vendors who do not adjust for temperature." [Doc. No. 1707 at 50.] Furthermore, as a result of this litigation, Costco customers have received additional transparency at the pump.  In December 2007, Costco posted a notice on its fuel dispensers stating: "This device dispenses gasoline solely by volume measured in standard gallons (231 cubit inches).  It does not adjust for temperature or other factors which may affect the energy content of each gallon dispensed." [Doc. No. 1598-6 at 2.]  This disclosure provides added transparency regarding the manner in which Costco sells motor fuel and enables customers to make informed decisions in purchasing motor fuel.

Accordingly, Costco respectfully submits that the consideration bargained for in the settlement agreement is adequate, and any objections to the contrary should be rejected.

## V.   CONCLUSION

For the foregoing reasons, Costco respectfully requests that the Court reject the objections, and grant final approval of the proposed settlement.

Dated: March 5, 2012                              Respectfully submitted,


                                        By: /s/ David F. McDowell
                                            David F. McDowell
                                            MORRISON & FOERSTER LLP
                                            555 West 5th Street, Suite 3500
                                            Los Angeles, CA 90013-1024
                                            Telephone:  (213) 892-5383
                                            Facsimile:  (213) 892-5454
                                            E-mail: dmcdowell@mofo.com

Gregory L. Musil (KS #13398)
Amy E. Morgan (KS #18796)
POLSINELLI SHUGHART PC
6201 College Boulevard, Suite 500
Overland Park, KS 66211
Telephone:  (913) 451-8788
Facsimile:  (913) 451-6205
E-mail: gmusil@polsinelli.com
       amorgan@polsinelli.com

***Attorneys for Defendant***
***Costco Wholesale Corporation***

la-1159281

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 5th day of March, 2012, **Defendant Costco Wholesale Corporation's Response to Certain Objections to the Amended Class Action Settlement** was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

The undersigned further certifies that on the 5th day of March, 2012, the foregoing document was sent via electronic mail to counsel for the following objectors who filed a Notice of Intent to Appear at the Fairness Hearing:

Theodore H. Frank
Attorney for Objectors Amy Alkon and Nicolas Martin
tedfrank@gmail.com

/s/ David F. McDowell
David F. McDowell
***Attorney for Defendant***
***Costco Wholesale Corporation***

20

la-1159281