## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) | |
| SALES PRACTICES LITIGATION        ) | |
| ) | **MDL No. 1840** |
| **(This Document Relates to All Cases)**        ) | **Case No. 07-MD-1840-KHV** |
| ) | |
| _____) | |

### MEMORANDUM AND ORDER

On September 22, 2011, the Court granted conditional certification and preliminary approval to an amended settlement between plaintiffs and Costco Wholesale Corporation ("Costco"), a defendant in 19 of the MDL cases.  See Memorandum And Order (Doc. #2118) filed September 22, 2011.  On March 22, 2012, the Court held a hearing regarding final approval of the settlement.  This matter comes before the Court on Plaintiffs' Motion And Memorandum In Support Of Final Approval Of Class Action Settlement ("Plaintiff's Motion For Final Settlement Approval") (Doc. #3806) filed March 19, 2012 (public) and (Doc. #3810) filed March 20, 2012 (sealed).  For reasons stated below, the Court sustains plaintiffs' motion.

I.      **Legal Standards**

A.      **Class Certification**

The determination of class certification is committed to the broad discretion of the trial court.  See Shook v. El Paso Cnty., 386 F.3d 963, 967 (10th Cir. 2004).  In determining the propriety of a class action, the question is not whether plaintiffs have stated a cause of action or will prevail on the merits, but whether they meet the requirements of Rule 23, Fed. R. Civ. P.  See id. at 971 (quoting Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982)).  In deciding whether the proposed class meets the requirements of Rule 23, the Court accepts plaintiffs' substantive allegations as true, though it need not blindly rely on conclusory allegations.  Id. at 968 (quoting J.B.

ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)); see also Vallario v. Vandehey, 554 F.3d 1259, 1265 (10th Cir. 2009).  The Court must conduct a "rigorous analysis" to ensure that the requirements of Rule 23 are met, but should not pass judgment on the merits of the case.  DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010).

As the parties seeking class certification, plaintiffs have the burden to prove that the requirements of Rule 23 are satisfied.  Shook, 386 F.3d at 968; D. Kan. Rule 23.1(d).[1]  Plaintiffs must first satisfy the prerequisites of Rule 23(a).  To do so, they must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).[2]  After meeting these requirements, plaintiffs must demonstrate that the

---

[1]        D. Kan. Rule 23.1(d) states in part as follows:

(d) Burden of Proof; Notice.  Any party seeking to maintain a case as a class action bears the burden of presenting an evidentiary basis to the court showing that the action is properly maintainable as such.

D. Kan. Rule 23.1(d).

[2]        Rule 23(a) states as follows:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
        (1) the class is so numerous that joinder of all members is impracticable;
        (2) there are questions of law or fact common to the class;
        (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
        (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

proposed class action fits within one of the categories described in Rule 23(b), Fed. R. Civ. P.[3]

Here, plaintiffs seek to proceed under Rule 23(b)(3).  Under that provision, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

---

[3]     Rule 23(b) states as follows:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

(A)     the class members' interests in individually controlling the prosecution or
        defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already
        begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims
        in the particular forum; and

(D)     the likely difficulties in managing a class action.

Id.  In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).  All of the other requirements apply, however, and demand even heightened attention in the settlement context.  Id.  Such scrutiny is vital because in the settlement context, the Court generally lacks an opportunity to adjust the class as it becomes informed by the proceedings as they unfold.  Id.

## B.      Settlement Fairness

Under Rule 23(e), claims of a certified class may be settled, compromised or dismissed only with court approval.  Fed. R. Civ. P. 23(e).[4]  The Court may approve a settlement upon finding that

---

[4]        Rule 23(e) states as follows:

(e) Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(continued...)

-4-

it is fair, reasonable and adequate.  <u>See</u> Fed. R. Civ. P. 23(e)(2).  In evaluating a proposed settlement, the Court's main concern is to ensure that the rights of passive class members are not jeopardized.  <u>See</u> 7B Charles Alan Wright, et al., <u>Federal Practice & Procedure</u> § 1797. 1, at 79 (3d ed. 2005); <u>see also</u> <u>Amchem Prods.</u>, 521 U.S. at 623 (Rule 23(e) inquiry protects unnamed class members from unjust or unfair settlements affecting their rights when representatives become fainthearted before action is adjudicated or are able to secure satisfaction of individual claims by compromise).  It is generally accepted that where settlement precedes class certification, district courts must be "even more scrupulous than usual" when examining the fairness of the proposed settlement.  <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 534 (3d Cir. 2004); <u>accord</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998); <u>see also</u> Manual for Complex Litigation, Fourth § 21.612, at 313 (2004) ("Class actions certified solely for settlement, particularly early in the case, sometimes make meaningful judicial review more difficult and more important.  Courts have held that approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process.").

In determining whether the settlement is fair, reasonable and adequate, the Court should consider the following factors:

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

---

[4](...continued)
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002); Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984).   The proponents of the settlement are responsible for providing sufficient evidence to support a conclusion that the settlement is fair.  See Gottlieb v. Wiles, 11 F.3d 1004, 1015 (10th Cir. 1993), overruled in part on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002); In re Sprint Corp. ERISA Litig., 443 F. Supp.2d 1249, 1256 (D. Kan. 2006).

## II.      Factual Background

Plaintiffs bring putative class action claims for damages and injunctive relief against motor fuel retailers in 26 states (Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah and Virginia), the District of Columbia, Puerto Rico and Guam. Second Consolidated Amended Complaint (Doc. # 652) filed December 1, 2008 ¶ 11.  Plaintiffs claim that because defendants sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion, they are liable under state law theories which include breach of contract, breach of warranty, fraud and consumer protection.  Following a transfer order of the Judicial Panel on Multidistrict Litigation ("JPML"), the Court has jurisdiction over consolidated pretrial proceedings in these actions.  See 28 U.S.C. § 1407; Transfer Order (Doc. # 1) filed June 22, 2007.

### A.      Original Settlement Agreement

On April 22, 2009, certain putative class representatives and Costco agreed to settle class

claims against Costco (the "original settlement agreement"). In re Motor Fuel Temp. Sales Prac. Litig. ("In re Motor Fuel – Original Costco Settlement"), 271 F.R.D. 263, 270-71 (D. Kan. 2010). The agreement proposed the following settlement class representatives: Zachary Wilson of Kansas, Joanne Korleski of South Carolina, Phyllis Lerner of California, Herb Glaser of California and James Graham of Virginia. Id. at 270.   Under the proposed settlement, Costco agreed (1) in jurisdictions in which it does not sell fuel, i.e. Arkansas, Delaware, Louisiana, Mississippi, Oklahoma, the District of Columbia and Guam, to do nothing; (2) in states in which it purchases fuel on a temperature-adjusted basis, i.e. Alabama, Arizona, California, Florida, Georgia, Kentucky, Nevada, New Mexico, North Carolina, South Carolina, Tennessee, Texas, Utah and Virginia ("conversion states"), over the next five years to convert its existing motor fuel dispensers to automatic temperature compensation ("ATC") dispensers and install ATC dispensers at any new retail stations; and (3) in states in which it purchases fuel on a non-temperature-adjusted basis, i.e. Indiana, Kansas, Maryland, Missouri, New Jersey, Oregon and Pennsylvania ("non-conversion states"), to convert its motor fuel dispensers to ATC dispensers if it begins to purchase motor fuel on a temperature-adjusted basis.[5]   The original settlement agreement proposed the following settlement class:

> All residents of [Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon,

---

[5]   Although the second consolidated amended complaint asserts class claims on behalf of motor fuel purchasers in Puerto Rico, see Second Consolidated Amended Complaint (Doc. # 652) ¶ 11, the original settlement agreement did not include claims in Puerto Rico. See Stipulation Of Class Action Settlement Agreement And Release ¶ 1.17, Exhibit 1 to Unopposed Motion Of Plaintiffs For Order Conditionally Certifying Settlement Class, Preliminarily Approving Class Action Settlement, Directing Distribution Of Class Notice, Setting Hearing For Final Approval Of Class Action Settlement And Appointing Class Counsel (Doc. #1015) filed April 22, 2009. The record does not disclose why.

Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, the District of Columbia and Guam] who, between January 1, 2001 and [April 22, 2009], purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit, excluding (a) officers and employees of Costco or its affiliates; and (b) the Court, and members of the Court's immediate family.

Id. at 271.  On August 13, 2009, the Court conditionally certified this proposed settlement class and granted preliminary approval of the settlement.  Id. at 272.

Following a hearing on April 1, 2010, the Court declined final class certification and final approval of the settlement.  It found that the structure of the proposed settlement did not assure that the named representatives operated under a proper understanding of their representational responsibilities to three distinct subgroups,[6] and that plaintiffs had not shown that a representative from one state could adequately represent the interests of class members who resided in different states.  Id. at 281-84.  The Court concluded that plaintiffs had not shown that the named representatives were adequate representatives under Rule 23(a)(4), Fed. R. Civ. P.  Id.  It found that the parties could restructure the agreement to try to remedy the problem.[7]  Id. at 284.  The Court directed that if the parties chose to restructure the settlement, Costco should maintain its web site and provide updated information regarding the restructured settlement and any fee request by class counsel.  See id. at 295.

_____

[6]      The three distinct subgroups were (1) states in which Costco does not sell fuel; (2) states in which Costco purchases fuel on a temperature-adjusted basis and sells it on a non-temperature-adjusted basis; and (3) states in which Costco purchases fuel on a non-temperature-adjusted basis and sells it on a non-temperature-adjusted basis.

[7]      Specifically, the Court noted that the parties could restructure the proposed settlement to (1) assure that representatives from conversion states represented class members from conversion states and representatives from non-conversion states represented class members from non-conversion states; and (2) create subclasses to account for material differences in state laws.  Id. at 284.

**B.     Amended Settlement Agreement**

On January 3, 2011, plaintiffs and Costco entered into an amended settlement agreement with class representatives from each conversion and non-conversion state.  See Exhibit A to Doc. #1769 ("Amended Settlement Agreement").[8]  Under the proposed amended settlement, Costco agrees (1) in states in which it purchases fuel on a temperature-adjusted basis, i.e. in conversion states, over the next five years to convert its existing motor fuel dispensers to ATC dispensers and install ATC dispensers at any new retail stations; and (2) in states in which it purchases fuel on a non-temperature-adjusted basis, i.e. in non-conversion states, to convert its motor fuel dispensers to ATC dispensers if it begins to purchase motor fuel on a temperature-adjusted basis.  Amended Settlement Agreement ¶¶ 1.17, 4.2, 4.3.  The amended settlement agreement creates subclasses of persons who purchased fuel in each state and appoints a representative from each state to represent each subclass.[9]  Id. ¶¶ 2.1(a)-(u)

_____

[8]     The amended settlement agreement omits the seven jurisdictions in which Costco does not sell motor fuel, i.e. Arkansas, Delaware, Louisiana, Mississippi, Oklahoma, the District of Columbia and Guam.  Because Costco does not sell fuel in those jurisdictions, it appears that no claims exist regarding motor fuel purchases in those locations.

[9]     The amended settlement agreement proposes the following subclasses:

*Alabama Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Alabama, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Annie Smith.

*Arizona Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Arizona, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Christopher Payne.

(continued...)

[9](...continued)

*California Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of California, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representatives  Phyllis Lerner and Herb Glazer.

*Florida Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Florida, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Mara Redstone.

*Georgia Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Georgia, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Brent Crawford.

*Indiana Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Indiana, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Victor Ruybald.

*Kansas Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Kansas, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Zachary Wilson.

*Kentucky Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Kentucky, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Lisa McBride.

*Maryland Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Maryland, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Raphael Sagalyn.

(continued...)

[9](...continued)

*Missouri Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Missouri, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Brent Donaldson.

*Nevada Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Nevada, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Gary Kohut.

*New Jersey Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of New Jersey, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Richard Gaulauski.

*New Mexico Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of New Mexico, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Charles Bryan.

*North Carolina Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of North Carolina, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Jean Neese.

*Oregon Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Oregon, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Shonna Butler.

*Pennsylvania Purchasers Subclass:*  All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Pennsylvania, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family.  Class representative:  Gerald Panto.

(continued...)

-11-

The remaining terms of the amended settlement are substantially similar to those of the original proposed settlement. See In re Motor Fuel – Original Costco Settlement, 271 F.R.D. at 270-72. If the Court does not grant final approval of the settlement, preliminary certification of the settlement class will be vacated and the parties will return to their respective positions as if they had never entered into the settlement agreement. Amended Settlement Agreement ¶ 2.2. If any conversion states require regulatory approval to convert motor fuel dispensers to ATC dispensers,

---

[9](...continued)

*South Carolina Purchasers Subclass:* All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of South Carolina, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family. Class representative: Joann Korleski.

*Tennessee Purchasers Subclass:* All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Tennessee, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family. Class representative: Tamara Miller.

*Texas Purchasers Subclass:* All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Texas, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family. Class representative: Priscilla Craft.

*Utah Purchasers Subclass:* All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Utah, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family. Class representative: Jeff Jenkins.

*Virginia Purchasers Subclass:* All persons who, between January 1, 2001 and the date of this Agreement, purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in the State of Virginia, excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family. Class representative: James Graham.

Amended Settlement Agreement ¶¶ 2.1(a)-(u).

class counsel shall take all reasonable steps to seek such approval. Id. ¶ 4.6. If any conversion state denies regulatory approval, retail stations in that state will be excluded from the conversion and implementation provisions of the settlement. See id. Costco is not liable for any breach of the agreement which results from acts or omissions of a third party or other cause beyond Costco's control. Id. ¶ 4.5.

If class representatives and class counsel enter into any agreement to resolve any claim concerning ATC which is materially more favorable to Costco than the settlement agreement with Costco, at any time before Costco completes installation of ATC dispensers, Costco may adopt the materially more favorable terms in place of its obligations under the settlement agreement. Id. ¶ 4.7. Also, if Costco loses a commercially material amount of its motor fuel supply and/or experiences commercially material increases in price of motor fuel in a conversion state as a result of the settlement agreement, Costco may elect to rescind the settlement agreement as to that state. Id. ¶ 4.8.

Class counsel may apply to the Court for an award of fees and costs in this action.[10] Costco agrees to pay any fees and costs which the Court awards. Id. ¶ 7.1. Such payment will not reduce any of Costco's obligations to the settlement class. Id.

Class counsel will ask the Court to provide an incentive fee of $2,000 to each subclass representative. Id. ¶ 7.4. Any such awards will be deducted from amounts awarded for class counsel fees and costs. Id.

_____

[10]      The amended settlement agreement does not provide a cap for attorneys' fees. See Amended Settlement Agreement ¶ 7.1. The detailed notice on Costco's website, however, states that class counsel's fee request will not exceed $10 million. See Exhibit B to Doc. #3034 at 8; Order (Doc. #3037) filed November 18, 2011; Legal Notice by Order Of The Court ¶ 10, http://www.costco.com/Service/FeaturePage.aspx?ProductNo=11494300 (last visited March 28, 2012).

The Court will have continuing jurisdiction to enforce the settlement terms and final judgment. Id. ¶ 8.1. The parties submit to the Court's jurisdiction for purposes of implementing and enforcing terms of the settlement agreement. Id. To this end, every six months after the amended agreement is effective, Costco will serve on class counsel and file with the Court a declaration describing Costco's compliance under the agreement.[11] Id. ¶ 8.2.

### C.   Conditional Class Certification And Preliminary Approval Of Amended Settlement

On September 22, 2011, the Court conditionally certified the proposed amended settlement subclasses and granted preliminary approval of the amended settlement. See Memorandum And Order (Doc. #2118). The court ordered plaintiffs and Costco to submit a revised notice plan which complies with the requirements of Rule 23(c)(2)(B) and (e). Id. at 23-24.

### D.   Class Notice

On November 18, 2011, the Court approved the parties' proposed notice plan, as modified. Order (Doc. #3037). The plan required Costco to provide individual notice by United States mail or email (to the extent available) and to publish notice in USA Today twice during a 30-day period. Id.; Plaintiffs And Defendant Costco Wholesale Corporation's Supplemental Memorandum

---

[11]     The original settlement stated that Costco would provide compliance reports only to class counsel. Settlement Agreement ¶ 8.2. Some objectors complained that the original settlement did not contain a provision to enforce, monitor or publicize compliance with the settlement. See In re Motor Fuel - Original Costco Settlement, 271 F.R.D. at 292. The Court found that if the parties restructured the agreement, it should require Costco to file regular compliance reports with the Court. Id.
     The effective date of the amended is the last date on which all of the following have occurred: the Court enters final judgment approving the settlement in a manner which is substantially consistent with the terms and intent of the agreement and either (1) 35 days have passed after service on the parties and objectors, if any; or (2) if an appeal is taken or the time to appeal is extended, the date on which all appellate rights with respect to final judgment have expired. Amended Settlement Agreement ¶ 1.8.

-14-

Regarding Proposed Notice To Class Members Of Amended Settlement (Doc. #3034) filed November 17, 2011 and Exhibit A thereto.  The individual and published notices directed putative class members to a website which contains the detailed information set forth in Exhibit B to Doc. #3034.  Order (Doc. #3037) at 1. n.1.  The parties also provided state weights and measures officials, state attorneys general and the United State Attorney General supplemental notice under 28 U.S.C. § 1715, as provided in Exhibit C to Doc. #2157.  Order (Doc. #3037) at 1. n.1.

The Court ordered Costco to provide notice on or before January 17, 2012.  Order (Doc. #3019) at 3.  Pursuant to the Court's order, Costco provided individual notice to 11,126,761 potential class members and twice published notice in USA Today.[12]  See Acpal Declaration (Doc. #3775) ¶¶ 3, 11.  Costco also published the detailed notice (Exhibit B to Doc. #3034) on its website.  Id. ¶ 12.  The notices provided that settlement class members could object or opt out of the proposed amended settlement on or before February 17, 2012.  Id.; Exhibits A and B to Doc. #3034.

###    E.    Opt Outs

In the end, 3,248 class members timely requested to opt out of the amended settlement class.[13] Declaration Of David F. McDowell Regarding Persons Who Requested To Opt Out Of The Amended Class Action Settlement (Doc. #3774) filed March 5, 2012 ¶¶ 3(a) and (b).

----

[12]    Costco identified 11,828,641 potential class members and had useable email or physical mail addresses for 11,126,761 potential class members.  See Declaration Of Michelle Acpal Certifying Completion Of Distribution Of Notice Of Amended Class Action Settlement ("Acpal Declaration") (Doc. #3775) filed March 5, 2012 ¶¶ 3-4.  Specifically, Costco sent 4,135,042 notices by email and 6,991,719 notices by United States mail.  Id. ¶ 4.  Costco did not send individual notice to 701,880 potential class members because it did not have valid email or physical mail addresses on file.  Id. ¶ 10.

[13]    Of the 3,248 timely opt outs, 2,342 submitted their requests electronically and 906 sent them via United States mail.  Declaration Of David F. McDowell Regarding Persons Who Requested To Opt Out Of The Amended Class Action Settlement (Doc. #3774) filed March 5, 2012 ¶¶ 3(a) and (b).

Also, 21 class members submitted untimely requests to opt out.[14] Id. ¶¶ 3(c) and (d).  Costco proposes that the Court treat the untimely requests as validly made.  Id. ¶ 4.

Finally, 26 class members submitted "objections" which appear to be asking to opt out of the settlement class.  See id. ¶ 3(e) and Exhibit E thereto.  Costco proposes that the Court treat these 26 objections as opt outs.  Id. ¶ 5.  Plaintiffs concur except for one individual, Shelly Madison, who confirmed to plaintiffs that she intended her website response to be an objection.  Declaration Of Joseph A. Kronawitter Regarding Settlement Objections (Doc. #3804) filed March 19, 2012 ¶ 2.

Plaintiffs suggest that the Court treat correspondence from three additional class members – Alcedo Ramon, Lillian Holladay and Robert Severson – as requests to opt out of the amended settlement.  Id. ¶¶ 3-5.

**F.    Objections**

Approximately 410 class members objected to the proposed amended settlement.  See Plaintiffs' Response To Objections To Proposed Class Action Settlement (Doc. #3789) filed March 9, 2012 and Exhibit 3 thereto.  The vast majority submitted objections electronically through the Costco settlement website.  Thirteen class members lodged objections with the Court.[15]

---

[14]    Of the 21 untimely opt out requests, 12 submitted the request electronically and 9 submitted it via United States mail.  Id. ¶¶ 3(c) and (d).

[15]    See Correspondence from Robert Severson (Doc. #3791) filed March 9, 2012; Objection by John Ajioka (Doc. #3731) filed February 13, 2012; Objection by Enrique Munoz Terres (Doc. #3720) filed February 2, 2012; Correspondence from Perfecta Arteaga (Doc. #3719) filed February 9, 2012; Correspondence from Gary Smith (Doc. #3212) filed January 17, 2012; Correspondence from Cale Batt (Doc. #3211) filed January 14, 2012;  Correspondence from John Curry (Doc. #3210) filed January 14, 2012; Correspondence from Floyd Russell (Doc. #3209) filed January 14, 2012; Correspondence from Charles A. Ditsch (Doc. #3170) filed December 30, 2011; Correspondence from Tony Knight (Doc. #3169) filed December 27, 2011; Correspondence from Fred Bailard (Doc. #3167) filed December 25, 2011; Correspondence from Erik Gilbertson (Doc. #3168) filed November 25, 2011; Objection by Daryl Chilimido (Doc. #1877) filed
(continued...)

-16-

In general, the individual objectors complain that the proposed amended settlement (1) provides no money to class members; (2) benefits only present and future Costco members in conversion states; (3) provides no benefit to class members; (4) hurts class members who purchase cool gas; (5) should not pay money to class representatives; (6) pays excessive attorney's fees; (7) should provide differing benefits based on differences in state laws; (8) takes too long to install ATC; (9) results from a breach of fiduciary duties by class counsel and/or class representatives; (10) should merely require notice of benefits of purchasing cool gas, as opposed to the more costly option of implementing ATC; (11) should make Costco executives pay; (12) involves a matter for state regulators; (13) resolves a frivolous lawsuit; (14) improperly rewards class actions which hurt consumers in the long run; and (15) did not allow other class members to be class representatives.

Three groups of objectors filed briefs with the Court.  See McKerley Objectors' Reply To Plaintiffs' Response To McKerley and Sandoval Objectors' Opposition To Approval Of Amended Settlement ("McKerley Objectors' Reply") (Doc. #3813) filed March 21, 2012; Alkon Objectors' Objection To Amended Settlement (Doc. #3737) filed February 17, 2012; Preliminary Objections To Amended Stipulation Of Class Action Settlement And Notice Of Intent To Appear (Doc. #1800) filed March 7, 2011; McKerley Objectors' Opposition To Plaintiffs' Renewed Motion For Approval Of Settlement, And Objections To Settlement ("McKerley Objectors' Opposition") (Doc. #1799) filed March 7, 2011; Alkon Objectors' Opposition To Approval Of Amended Settlement (Doc. #1783) filed February 18, 2011.  The Court refers to these groups as the Alkon Objectors, the McKerley Objectors and the Sandoval Objectors.

---

[15](...continued)
April 29, 2011.

-17-

### 1.    Alkon Objectors

The Alkon objectors are Amy Alkon, a member of the California subclass, and Nicholas Martin, a member of the Indiana subclass.[16]  Alkon Objectors' Objection To Amended Settlement (Doc. #3737) at 3 n.1.

The Alkon Objectors assert that (1) prospective injunctive relief does not compensate the class for past harm; (2) prospective injunctive relief does not benefit the class; (3) prospective injunctive relief will make some class members worse off; (4) the proposed incentive awards to class representatives are disproportionate and violate Rule 23; and (5) the settlement has impermissible indicia of self-dealing that demonstrates unfairness. Id. at 3-25.

### 2.    McKerley Objectors

The McKerley objectors are Mike McKerley, David V. Kenner, Bonnie Anderson, Charles B. Zuravin, Caroll Putnam, Karen Waldvogal and Suzanne Carpenter.  The McKerley Objectors state that Carpenter is a member of the Nevada subclass, see McKerley Objectors' Opposition (Doc. #1799) at 3-4, but do not identify to which subclasses the other objectors belong. See McKerley Objectors' Reply (Doc. #3813).   It appears that McKerley is a member of the Alabama subclass, that Kenner is a member of the Missouri subclass, that Anderson, Putnam and Zuravin are members of the Florida subclass and that Waldvogel is a member of the California subclass. See Correspondence from McKerley Objectors (Doc. #1589) filed March 8, 2010; Report To U.S. Magistrate For Status Conference (Doc. #1717) filed October 11, 2010 ¶ 6.

The McKerley Objectors assert that the realignment of class representatives and creation of

---

[16]    The Alkon Objectors objected to the original settlement with Costco and incorporate those objections in their objection to the amended settlement.  See Alkon Objectors' Objection To Amended Settlement (Doc. #3737) filed February 17, 2012 at 3; Objection To Proposed Settlement (Doc. #1578) filed March 1, 2010.

subclasses under the amended settlement does not correct the problem posed by variations among different state laws.  McKerley Objectors' Opposition (Doc. #1799) at 2-3.  The McKerley Objectors assert that the class representatives should have – but did not – advocate for their subclasses according to differing consumer protection laws in the various states.  Id. at 3.

### 3.    Sandoval Objectors

The Sandoval Objectors are James Phillips and Michael Sandoval, both members of the New Mexico subclass.  See Preliminary Objections To Amended Stipulation Of Class Action Settlement And Notice Of Intent To Appear (Doc. #1800) at 1.  The Sandoval Objectors assert that the amended settlement is unfair because it does not account for New Mexico law which provides a minimum statutory penalty of $100 for each unfair trade practice violation.  Id. at 2 (citing N.M. Stat. Ann § 57-12-10(B)).

### G.    Fairness Hearing

On March 22, 2012, the Court heard oral argument from counsel for plaintiffs, Costco, the Alkon Objectors and the McKerley Objectors.  See Doc. #3999.

### H.    Class Certification In Kansas Cases

On May 28, 2010, in the two Kansas cases – Wilson v. Ampride, Inc., Case No. 06-2582, and American Fiber & Cabling, LLC v. BP West Coast Products, LLC, Case No. 07-2053 – the Court certified classes as to defendants other than Costco.[17]  In re Motor Fuel Temp. Sales Practices Litig., 271 F.R.D. 221 (D. Kan. 2010).  The Court found that plaintiffs had satisfied the prerequisites of Rule 23(a).  Id. at 228-33.  As to plaintiffs' claims for injunctive relief, the Court found that the

---

[17]    Costco is a defendant in Wilson but not in American Fiber.  In light of the proposed settlement with Costco, plaintiffs' motion did not seek class certification on their claims against Costco.  See Kansas Plaintiffs' Reply In Support Of Motion For Class Certification (Doc. #1526) filed December 15, 2009 at 6 n.30.

proposed classes were cohesive and manageable and that plaintiffs had satisfied the requirements of Rule 23(b)(2).  Id. at 234-35.[18]  As to plaintiffs' claims for damages, the Court expressed concern whether plaintiffs could establish common methods to prove individual damages, including the temperature of dispensed fuel with respect to individual class member transactions.  Id. at 237-38.  The Court declined to certify a class for damages under Rule 23(b)(3).  Id.  It bifurcated the damage portion of plaintiffs' claims and certified a class with regard to the liability and injunctive aspects of plaintiffs' claims.  Id.

On January 19, 2012, in the Kansas cases, the Court overruled defendants' motion to decertify and granted plaintiffs' request to certify issue classes under Rule 23(b)(3) and (c)(4) as to the liability and injunctive relief aspects of plaintiffs' claims.  In re Motor Fuel Temp. Sales Practices Litig. ("In re Motor Fuel – Kansas Class Certification"), — F.R.D. —, 2012 WL 205904 (D. Kan. Jan. 19, 2012).  In particular, the Court found that the proposed issue classes satisfied the requirements of Rule 23(a).  Id. at *12-13.  In addition, as to the liability and injunctive relief aspects of plaintiffs' claims, the Court found that the requirements of Rule 23(b)(3) were satisfied, i.e. that questions of law or fact common to class members predominate and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy.  Id. at *14-16.

---

[18]     Rule 23(b)(2) states that a class action may be maintained if Rule 23(a) is satisfied and if

the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Rule 23(b)(2), Fed. R. Civ. P.

-20-

### III.    Analysis

Plaintiffs seek final approval of the proposed amended settlement with Costco.  Plaintiffs assert that the amended settlement corrects the representational problems which the Court identified with respect to the original settlement but is otherwise essentially the same.  To approve the amended settlement, the Court must find that class certification is appropriate under Rule 23(a) and (b)(3) and that the proposed settlement is fair, reasonable and adequate under Rule 23(e)(2).

### A.    Class Certification Under Rule 23(a) and (b)(3)

To obtain class certification, plaintiffs must show that the prerequisites of Rule 23(a) are satisfied and demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).  Here, plaintiffs seek to certify a class under Rule 23(b)(3).

### 1.    Subclass Definitions

As noted, for each state covered by the amended settlement, plaintiffs propose a subclass comprised of "[a]ll persons who, between January 1, 2001 and [April 22, 2009], purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit in [the state], excluding: (a) officers and employees of Costco or its affiliates; and (b) the Court and members of the Court's immediate family." Amended Settlement Agreement ¶¶ 2.1(a)-(u).  No class members have objected to the proposed subclass definitions.  For this reason, and substantially the reasons stated in the Court's order regarding the original settlement agreement, the Court finds that the proposed subclass definitions under the amended settlement are adequate to identify the persons (1) entitled to relief, (2) bound by a final judgment and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action.  See In re Motor Fuel – Original Costco Settlement, 271 F.R.D. at 279-81; see also Sibley v. Sprint Nextel Corp., 254 F.R.D. 662, 670 (D. Kan. 2008).  Accordingly, the Court

-21-

focuses its analysis on the prerequisites of Rule 23(a).

### 2. Rule 23(a) Prerequisites

To satisfy the prerequisites of Rule 23(a), plaintiffs must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the subclass, (3) the claims of the representative parties are typical of the claims of the subclass and (4) the representative parties will fairly and adequately protect the interests of the subclass.  See Fed. R. Civ. P. 23(a).  For substantially the reasons stated in the order regarding the parties' original settlement agreement, the Court finds that with regard to the subclasses proposed under the amended settlement agreement, plaintiffs have satisfied the numerosity, commonality and typicality requirements of Rule 23(a)(1), (2) and (3).  See In re Motor Fuel - Original Costco Settlement, 271 F.R.D. at 281.

In its previous order, the Court found that plaintiffs had not met the requirements of Rule 23(a)(4), i.e. they had not shown that the named representatives could adequately represent all members of the proposed settlement class.  Id. at 282-84.  To meet this requirement, representative plaintiffs must be members of the class which they seek to represent and must show that (1) their interests do not conflict with those of other class members and (2) they will be able to prosecute the action vigorously through qualified counsel.  See E. Tex. Motor Freight Sys. Inc., v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks, 314 F.3d at 1187-88; Olenhouse v. Commodity Credit Corp., 136 F.R.D 672, 680 (D. Kan. 1991).  In its previous order, the Court found that plaintiffs satisfied the second requirement – they have and apparently will continue to prosecute the action vigorously through qualified counsel.  In re Motor Fuel – Original Costco Settlement, 271 F.R.D. at 282 n.25.  The Court reaffirms that ruling here.

With regard to the original settlement agreement, the Court found that under Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997), the structure of the proposed settlement did not assure adequate representation.  In re Motor Fuel – Original Costco Settlement, 271 F.R.D at 282 n.25.  In Anchem, the United States Supreme Court found that where members of a settlement class have divergent interests and receive diverse benefits under a settlement, the structure of the settlement must assure fair and adequate representation for the diverse groups and individuals affected.  521 U.S. at 627.

The original settlement agreement with Costco provided three types of relief to three distinct groups within the settlement class: To residents of seven states in which Costco did not sell motor fuel, it provided no relief.  To residents of 14 states in which Costco sold motor fuel which it purchased on a temperature-adjusted basis, it provided conversion of Costco's motor fuel dispensers to ATC dispensers.  To residents of seven states in which Costco sold motor fuel which it did not purchase on a temperature-adjusted basis, it provided a possibility that Costco would convert its fuel dispensers if it begins purchasing fuel on a temperature-adjusted basis.  See In re Motor Fuel - Original Costco Settlement, 271 F.R.D. at 283.  Because the original settlement provided different relief to different groups within the settlement class, the Court found that the interests of the named representatives were not aligned with every member of the settlement class, i.e. the interests of named representatives from conversion states were not aligned with the interests of class members from non-conversion states and vice versa.  Id.  Under those circumstances, the Court found that the structure of the original settlement did not assure that the named representatives operated under a proper understanding of their representational responsibilities to the three distinct subgroups.  Id. In addition, the Court found that plaintiffs had not shown that state laws were not materially

-23-

different, so that a representative from one state could adequately represent the interests of class members in different states.  Id. at 284.  The Court found that to address the inadequate representation problem, the parties could restructure the original settlement to (1) assure that representatives from conversion states represented class members from conversion states and representatives from non-conversion states represented class members from non-conversion states; and (2) create subclasses which accounted for any material differences in state laws.  Id.  The Court stated that one way to do so would be to create subclasses with a named representative for each state. Id.

In the amended settlement agreement, the parties followed the Court's suggestion and created subclasses with a named representative for each state.  Under this structure, the interests of each named representative are apparently aligned with the interests of the members of the subclass, i.e. their claims involve the same state law and they receive the same relief under the settlement.  Each named representative has filed an affidavit which states that he or she understands his or her duties and representational responsibilities to the subclass and that he or she believes that the amended settlement is in the best interests of the subclass which he or she represents.  Exhibit 17 to Plaintiffs' Motion And Memorandum In Support Of Final Approval Of Class Action Settlement (Doc. #3808). The affidavits also state that the named representatives have been involved in this litigation since 2007 and have each spent between 20 to 70 hours on the litigation.  Id.  Under these circumstances, it appears that the named representative have operated under a proper understanding of their representational responsibilities to their subclass.  On this record, the Court finds that the named representatives are adequate representatives for the proposed subclasses under the amended

-24-

settlement.[19]

### 3.      Rule 23(b) Requirements

In addition to meeting the requirements of Rule 23(a), plaintiffs must also show that the classes comply with one of three qualifying tests under Rule 23(b).  Here, plaintiffs seek to certify settlement subclasses under subsection (b)(3).  Under that provision, plaintiffs must show that questions of law or fact common to the members of the subclass predominate over any questions affecting individual members and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This predominance inquiry tests whether the proposed subclass is sufficiently cohesive to warrant adjudication by representation.  See Amchem Prods., 521 U.S. at 623.[20]

In its previous order, the Court found that the same issues regarding the structure of the original settlement, i.e. it did not assure that named plaintiffs represented class members with similar interests, precluded the Court from finding that common issues predominated under Rule 23(b)(3). In re Motor Fuel – Original Costco Settlement, 271 F.R.D. at 284-85.  The Court stated that if the parties restructured the settlement to include a named representative to represent a subclass for each

---

[19]      To the extent the McKerley and Sandavol Objectors assert that the terms of the amended settlement demonstrate inadequate representation, see McKerley Objectors' Reply (Doc. #3813) at 5; Preliminary Objections To Amended Stipulation Of Class Action Settlement And Notice Of Intent To Appear (Doc. #1800) filed March 7, 2011 ¶ 6, the Court addresses those concerns below with regard to settlement fairness.

[20]      Rule 23(b)(3) is designed to bind all class members – except those who affirmatively choose to opt out – in situations where class action treatment is not as clearly called for as in situations under Rule 23(b)(1) and (2), but where class suit "may nevertheless be convenient and desirable."  Amchem Prods., 521 U.S. at 614-15 (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 697).  Specifically, Rule 23(b)(3) is designed to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Id.

state, it appeared likely that the settlement subclasses would satisfy the predominance and superiority requirements of Rule 23(b)(3).  Id. at 285 n.33.

Here, the parties have done just that.  They have restructured the amended settlement to include a named representative to represent a subclass for each state.  For reasons stated in the Court's previous order, see id., and its order certifying issue classes under Rules 23(b)(3) and (c)(4) in the Kansas cases, see In re Motor Fuel - Kansas Class Certification, 2012 WL 205904, at *15, the Court finds that common issues predominate under Rule 23(b)(3).[21]  Specifically, the Court finds that common questions predominate over individual questions as to whether Costco is liable to class members for selling motor fuel for a specified price per gallon without disclosing or adjusting for temperature expansion.  Moreover, in light of the limited size of any potential financial recovery for any particular class member and the possibility of inconsistent results, a class action is a far superior method of resolving the claims than individual suits.  See Amchem Prods., 521 U.S. at 625 (predominance test readily met in certain cases alleging consumer fraud).

On this record, the Court finds that plaintiffs have met the predominance and superiority

_____

[21]    In determining predominance and superiority under Rule 23(b)(3), the Court considers the following non-exhaustive factors:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members; [and]

> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum[.]

Fed. R. Civ. P. 23(b)(3); Amchem Prods., 521 U.S. at 623.  Rule 23(b)(3) lists a fourth factor: the likely difficulty of managing a class action. Fed. R. Civ. P. 23(b)(3)(D).  That factor, however, does not apply in the context of a settlement class.  Amchem Prods., 521 U.S. at 620.  All of the other requirements apply, however, and demand heightened attention in the settlement context.  Id.

requirements of Rule 23(b)(3).  In particular, the Court finds that (A) the amounts at stake for individual class members are so small that class members do not have a strong interest in individually controlling the prosecution of separate actions; (B) the Court is not aware of any other litigation by class members concerning the controversy; and (C) in light of the limited size of potential financial recovery from individual suits, it is desirable to concentrate the claims in a single forum.  See, e.g., Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 880 (7th Cir. 2000) (for small-stakes cases, class suit is best, perhaps only, way to proceed).  Accordingly, the Court finds that class certification is appropriate under Rule 23(b)(3).

### B.   Fairness Of Proposed Settlement

Under Rule 23(e), the Court may approve a class action settlement upon finding that it is fair, reasonable and adequate.  See Fed. R. Civ. P. 23(e)(2).  In its previous order, the Court found that if the parties restructured the settlement to ensure adequate representation of settlement class members, it appeared that the proposed settlement would be fair, reasonable and adequate for class members in conversion and non-conversion states.   See In re Motor Fuel – Original Costco Settlement, 271 F.R.D. at 285-88.  As to conversion states, i.e. states in which Costco purchases fuel on a temperature-adjusted basis and agrees to install ATC motor fuel dispensers, the Court found it uncertain whether plaintiffs could prove liability, and even more unlikely that plaintiffs could establish common methods to prove individual class member damages.  Id. at 286.  The Court found that the proposed injunctive relief, i.e. installing ATC fuel dispensers, fairly responded to plaintiffs' claims and provided the same relief which plaintiffs in conversion states might obtain if they proceeded to trial.  Id.

As to non-conversion states, i.e. states in which Costco purchases fuel on a non-temperature-

adjusted basis and agrees to install ATC dispensers if it begins to purchase motor fuel on a temperature-adjusted basis, the Court found it unlikely that plaintiffs could prove liability because in those states Costco does not benefit from buying fuel one way and selling it another.  Id. at 287. The Court found that although the value of injunctive relief in non-conversion states seemed low – i.e. the possibility that Costco will convert its pumps to ATC if it begins purchasing fuel on a temperature-adjusted basis – it was reasonable under the circumstances.  Id.

Here, the proposed amended settlement agreement provides substantially the same relief as the original settlement, but it appoints a separate representative for each subclass of members who purchased fuel from Costco in each state.  To determine whether the proposed amended settlement is fair, reasonable and adequate, the Court considers the following factors:

(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks, 314 F.3d at 1188.  For reasons stated in the Court's previous order with respect the original settlement, the Court finds that these factors weigh in favor of approving the proposed amended settlement.  See In re Motor Fuel – Original Costco Settlement, 271 F.R.D. at 285-87 (obtaining injunctive relief is primary goal of plaintiffs' cases).

## C.    Objections

In general, class member objections to the proposed amended settlement mirror those lodged against the original settlement.  The Court adopts its previous analysis in that regard.  See In re Motor Fuel – Original Costco Settlement, 271 F.R.D. at 289-94.

-28-

### 1.    No Money To Class Members

Regarding objections that the proposed amended settlement is unfair because it pays no money to class members, the Court notes the real uncertainty whether plaintiffs can prove liability on their claims. Id. at 289. In conversion states, plaintiffs have the best shot at proving liability. In those states, Costco purchases fuel on a temperature-adjusted basis and sells it on a non-ATC basis, which arguably results in an unfair advantage to Costco. But even in those states, plaintiffs' ability to prove liability is uncertain and it is doubtful that they can prove damages on a class-wide basis. Id.; see In re Motor Fuel – Kansas Class Certification, 271 F.R.D. at 237-38. Under these circumstances, it is fair, reasonable and adequate for class members who purchased fuel in conversion states to trade uncertain claims for money damages for certain relief proposed under the amended settlement agreement, i.e. the opportunity to purchase ATC fuel from Costco.

Regarding claims for fuel purchases in non-conversion states, plaintiffs are even less likely to prevail. As noted, in those states Costco does not purchase fuel on a temperature-adjusted basis. As such, Costco is arguably less culpable and does not benefit from selling non-temperature-adjusted fuel in non-conversion states. Therefore, class claims in non-conversion states are weaker than those in conversion states, i.e. class members are even less likely to succeed in proving liability against Costco. Under the amended settlement, class members who purchase fuel in non-conversion states gain the assurance that if Costco begins to regularly purchase fuel on a temperature-adjusted basis, it will convert to ATC in those states. Under these circumstances, it is fair, reasonable and adequate for class members who purchased fuel in non-conversion states to trade weak claims for money damages for the injunctive relief proposed under the amended settlement agreement.

As to states in which Costco does not sell fuel, plaintiffs apparently have no claims regarding

fuel purchases in those states.  It is therefore fair, reasonable and adequate to omit those states from the amended settlement agreement.

### 2.    Benefits Only Present And Future Costco Members In Conversion States

Some class members object that the proposed injunctive relief will benefit only present and future Costco members who purchase fuel in conversion states.  As to class members who are no longer Costco members, they can choose to renew their memberships to obtain ATC fuel if they wish.  As to class members who purchase fuel in non-conversion states, as noted, their claims are much weaker because Costco does not purchase fuel on a temperature-adjusted basis in those states.  Class members in non-conversion states receive the assurance that Costco will convert its pumps to ATC if it begins to regularly purchase fuel on a temperature-adjusted basis in those states. Also, class members in non-conversion states will gain an opportunity to purchase ATC fuel if they travel to a conversion state.  Under these circumstances, the proposed injunctive relief is fair, reasonable and adequate.

### 3.    No Benefit To Class Members

Some class members assert that the proposed injunctive relief will not benefit class members because Costco will raise the price which it charges for fuel.  This concern does not preclude the Court from finding that under the circumstances, the amended settlement is fair, reasonable and adequate.  While it is true that the amended settlement agreement does not limit Costco's ability to raise fuel prices, the retail motor fuel market is a competitive one, and competition will determine whether Costco can raise prices and if so how much.  These competitive market pressures are particularly strong since not all retailers propose to change to ATC.  Id. at 290; see also Murphy Depo., Vol. I at 141:12-23; 144:15-19; 148:9-20, Exhibit 14 to Plaintiff's Motion

For Final Settlement Approval (Doc. #3806) (if one retailer implements ATC, marketplace competition would prevent it from raising price to recover implementation cost). Moreover, even if Costco passed along the cost of conversion, it appears that any price increase would be negligible. Id. at 289-90. Plaintiffs submit that the cost of conversion ($7,776,000) amounts to roughly two-tenths of one percent (0.2 %) of Costco's total revenue from motor fuels sales in conversion states last year.[22] If Costco spread the total cost of conversion over the five-year implementation period, it would result in an estimated price increase of only 1.3 cents per motor fuel transaction.[23] See Plaintiff's Motion For Final Settlement Approval (Doc. #3810) at 17.

Some objectors assert that Costco will merely adjust the price of fuel so that class members will end up paying the same price for ATC fuel that they paid for non-temperature-adjusted fuel. See, e.g., Alkon Objectors' Objection To Amended Settlement (Doc. #3737) at 7-8, 10-11. In essence, they assert that the proposed injunctive relief is inadequate unless plaintiffs can show that it will result in lower fuel prices for class members. It is impossible, however, for this Court or anyone else to determine with certainty the price which Costco or any other gas retailer will charge for future motor fuel sales.[24] The bottom line is that without ATC, class members have no idea

---

[22]     Plaintiffs report that in 2010, Costco's total revenue from motor fuel sales in conversion states was approximately $4,044,299,650 from 118,736,536 separate motor fuel transactions. See Plaintiffs' Renewed Motion And Memorandum In Support Of Final Approval Of Class Action Settlement (Doc. #1773) filed February 4, 2011 at 6.

[23]     If the number of motor fuel transactions remain the same as last year, Costco will conduct 593,682,680 motor fuel transactions in conversion states over the next five years (118,736,536 times 5 equals 593,682,680). Per transaction, the total cost of implementing ATC would amount to 1.3 cents ($7,776,000 divided by 593,682,680 equals $0.0131).

[24]     Based on Costco's historical "swellage" estimates, i.e. the amount of surplus gallons which Costco sold on a non-temperature-adjusted basis, plaintiffs' economic expert estimates that over the next ten years, class members will benefit $105,481,329 as a result of the amended

(continued...)

whether they come out ahead (by purchasing cool fuel) or behind (by purchasing warm fuel). Costco ends up with "swellage" in conversion states, i.e. it sells more gallons on a non-temperature basis at retail than it purchases on a temperature-adjusted basis at wholesale. It is therefore clear that more often than not, class members in those states receive fuel which is warmer than 60 degrees Fahrenheit. In exchange for giving up past damages claims that appear difficult or impossible to prove, the proposed amended settlement gives class members an option to purchase temperature-adjusted fuel from Costco in conversion states.[25]

By acquiring an option to purchase ATC fuel in conversion states, class members can

---

[24](...continued)

settlement. See Affidavit Of Dr. Andrew Safir at 3-5, Exhibit 1 to Plaintiffs' Motion For Final Settlement Approval (Doc. #3806). Defendants' economic expert states that consumers did not overpay for surplus gallons because the price already reflects any variation in the retailer's cost of gross gallons sold due to temperature changes. See Expert Report Of Professor Kevin M. Murphy at 23-28, Exhibit B to Defendants' Memorandum In Opposition To Plaintiffs' Motion In Limine To Strike All Or A Portion Of The Report And Testimony Of Kevin Murphy (Doc. #3082) filed December 6, 2011; see also Declaration Of David R. Henderson ¶¶ 11, 14 (if Costco sells "larger" gallons it will raise its price). Both sides assert that the other's expert testimony is inadmissible under Rule 702, Fed. R. Evid., and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny. See Plaintiffs' Motion In Limine To Strike All Or A Portion Of The Report And Testimony Of Kevin Murphy (Doc. #2754) filed November 1, 2011; Defendants' Motion To Exclude Testimony Of Andrew Safir (Doc. #1308) fled September 30, 2009; see also Alkon Objectors' Motion To Strike Plaintiffs' April 1 Briefing, Or, In The Alternative, Strike Declaration Of Dr. Andrew Safir Under Daubert, And Memorandum In Support (Doc. # 1665) filed May 5, 2010. Because the Court finds that the proposed injunctive relief provides a substantial informational benefit to class members, it need not further address this issue.

[25]     As noted, in non-conversion states, because Costco purchases its fuel on a non-temperature-adjusted basis it presumably does not end up with "sewellage" by selling on a non-temperature-adjusted basis. Unlike conversion states, in non-conversion states Costco apparently does not benefit from buying fuel one way and selling it another way. Accordingly, class members are less likely to prevail on claims based on fuel purchases in non-conversion states, i.e. the facts are less likely to support claims that Costco engaged in unconscionable conduct and/or received unjust enrichment as a result of its conduct. Under the proposed amended settlement, class members who purchase fuel from Costco in non-conversion states gain the assurance that Costco will convert its pumps to ATC if it begins to regularly purchase its fuel on a temperature-adjusted basis in those states.

achieve accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping.  See Exhibit 6 to Plaintiff's Motion For Final Settlement Approval (Doc. #3810) ¶ 15 (filed under seal); California Energy Commission ("CEC") Report of March 2009 (Doc. #1343-19) filed September 30, 2009.[26]  Without an ATC option, class members do not know whether they receive warm or cool fuel, i.e. whether they are receiving less or more energy per gallon.  On the same day at the same retail gas station, the temperature of dispensed fuel can vary throughout the day while the price per gallon remains the same.  See Report Of Kurt V. Krueger, Ph.D. – July 11, 2011 ¶¶ 5(a), (c)-(f), Exhibit B to Defendants' Memorandum Of Law In Support Of Their Motion To Exclude Any Testimony Of Kurt V. Krueger Concerning Purported Economic Injury (Doc. #2701) filed November 1, 2011 (overruled in relevant part by Memorandum And Order (Doc. #3204) filed January 19, 2012).  Thus, fuel purchasers at the same station on the same day can pay the same price per gallon and receive different amounts of energy content per gallon.  Report Of Kurt V. Krueger, Ph.D. – July 11, 2011 ¶ 5(f).  Because fuel purchasers have no way to determine the temperature of the fuel which they purchase, they do not know whether they are receiving more or less energy content for their fuel dollar.  By gaining an option to purchase ATC fuel from Costco in conversion states, class members receive a material benefit – price transparency and fairness at the pump in knowing that they can get accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping.  Thus, even if the average price per gallon of fuel remains unchanged and/or if Costco passes along an extra

---

[26]    After conducting a cost-benefit analysis, the CEC concluded that implementing ATC at retail in California would result in a negative net cost to society which, when quantified by cents per gallon, is small.  See CEC Report of March 2009 (Doc. #1343-19).  The CEC recommended that the state legislature consider whether the possibility of increased fairness, accuracy and consistency of fuel measurement would justify mandating ATC at California retail stations.  See id.

penny per motor fuel transaction to recoup the cost of converting to ATC pumps, the Court finds that class members will benefit from having an option to buy ATC fuel from Costco.  See In re Motor Fuel - Original Costco Settlement, 271 F.R.D. at 290.[27]  Under these circumstances, the proposed injunctive relief is fair, reasonable and adequate.

### 4. Hurts Class Members Who Purchase Cool Gas

Regarding objections that the proposed injunctive relief will hurt class members who purchase cool gas, the Court notes that the proposed subclass definitions include persons who purchased motor fuel from Costco at a temperature above 60 degrees Fahrenheit.  See Amended Settlement Agreement ¶¶ 2.1(a)-(u).  Thus, it appears that persons who purchased only cool gas are not included in the settlement.  Moreover, if any such class members exist and know who they are, they remain free to purchase fuel from vendors who do not adjust for temperature.[28]  See id.  Under these circumstances, the proposed injunctive relief is fair, reasonable and adequate.

### 5. Should Not Pay Money To Class Representatives

Regarding objections that the proposed amended agreement is unfair because it allows an incentive fee to class representatives, the Court disagrees.  See In re Motor Fuel - Original

---

[27]     In concluding that class members will benefit from the proposed injunctive relief, the Court does not rely on the affidavit of plaintiffs' economic expert, Dr. Andrew Safir.  See Affidavit Of Dr. Andrew Safir Exhibit 1 to Plaintiff's Motion For Final Settlement Approval (Doc. #3806). Accordingly, the Court does not address the reliability of Dr. Safir's testimony under Rule 702, Fed. R. Evid., and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and its progeny.   See Alkon Objectors' Motion To Strike Plaintiffs' April 1 Briefing, Or, In The Alternative, Strike Declaration Of Dr. Andrew Safir Under Daubert, And Memorandum In Support (Doc. # 1665) filed May 5, 2010; In re Motor Fuel - Original Costco Settlement, 271 F.R.D. at 278 (overruling Daubert objection as moot).

[28]     As noted, because Costco ends up with "swellage" in conversion states, it is clear that more often than not, class members in those states receive fuel which is warmer than 60 degrees Fahrenheit.

-34-

Costco Settlement, 271 F.R.D. at 293.   The proposed amended settlement allows class representatives to request an award of $2,000, but it does not *require* an incentive payment.  Instead, it leaves the Court discretion to award incentive fees if warranted.  The Court is confident that any incentive payments to class representatives can be fair, reasonable and adequate.

### 6.      Excessive Attorney's Fees

Regarding objections that the amended settlement is unfair because it provides excessive attorney's fees, the Court disagrees.  See id. at 293-94.  Similar to incentive fees, the proposed amended settlement allows class counsel an opportunity to request up to $10 million in attorneys' fees, but it does not *require* such payment.  Instead, it leaves the Court discretion to award attorneys' fees, if warranted.  Under the circumstances, the Court is confident that any fee award can be fair and reasonable.  See, e.g., Gottlieb v. Barry, 43 F.3d 474, 482 n.4 (10th Cir. 1994) (citing factors for reasonable attorneys' fees set forth in Johnson v. Ga. Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

### 7.      Class Representatives Should Have Bargained Separately For Differing Benefits Based On Differences In State Laws

Some objectors contend that the amended settlement should provide different relief based on differences in state law.  See, e.g., McKerley Objectors' Opposition (Doc. #1799) at 2-3.  According to these objectors, the new subclass representatives should have gone back to the negotiating table and come back with an agreement which provides different relief to different subclasses based on differences among various state laws.  According to the McKerley Objectors, any settlement which provides the same relief to class members in states with differing statutory penalties *on its face* demonstrates inadequate representation.  See McKerley Objectors' Reply (Doc. #3813) at 4.  The Court disagrees.  Here, regardless which state statute is at issue, plaintiffs

face very real uncertainties and difficulties in proving liability at trial.  In light of the costs and uncertainties involved in continued litigation – even if state laws provide differing statutory penalties – it is not unreasonable for each subclass representative to agree to exchange uncertain claims for monetary relief for the certain injunctive relief provided in the amended settlement.[29]  The proposed amended settlement provides the maximum injunctive relief available, i.e. installation of ATC pumps in conversion states and the assurance that Costco will install ATC pumps in non-conversion states if it begins to regularly purchase fuel on a temperature-adjusted basis in those states.[30]  Under the circumstances, the proposed amended settlement is fair, reasonable and adequate.

### 8.    Takes Too Long To Install ATC

Some class members object that the amended settlement allows Costco too much time to install ATC.  As noted, the amended agreement provides a five-year schedule for Costco to convert its pumps to ATC in conversion states.  As noted, by converting pumps over five years, any costs which Costco would pass to class members presumably would be spread over five years as

---

[29]    As noted, the amended settlement is structured so that a named representative represents a subclass comprised of fuel purchasers in each state.  Under this structure, the interests of each named representative are aligned with the interests of the members of the subclass, i.e. their claims involve the same state law and they receive the same relief under the settlement.  Each named representative has filed an affidavit which states that he or she understands his or her duties and representational responsibilities to the subclass and that he or she believes that the amended settlement is in the best interests of the subclass which he or she represents.  Exhibit 17 to Plaintiffs' Motion And Memorandum In Support Of Final Approval Of Class Action Settlement (Doc. #3808).  The affidavits also state that the named representatives have been involved in this litigation since 2007 and have each spent between 20 to 70 hours on the litigation.  Id.  Under these circumstances, the Court finds that the named representatives have operated under a proper understanding of their representational responsibilities to their subclass.

[30]    The Court further notes that class members received notice and the opportunity to opt out of the amended settlement on or before February 17, 2012.  Thus, to the extent class members believed that they could recover more benefit in the form of money damages under their state's laws, they were free to opt out of the amended settlement and pursue individual litigation in that regard.

-36-

well.  Moreover, Costco has represented that it needs time to navigate possible hurdles with state

regulatory agencies regarding implementation of ATC fuel in each conversion state.  In re Motor

Fuel – Original Costco Settlement, 271 F.R.D. at 291.  Under the circumstances, the Court is

satisfied that the five-year phase in period is fair, reasonable and adequate.

      **9.**       **Class Counsel And/Or Class Representatives Have Breached Fiduciary Duties To The Class**

      Some class members assert that if the Court does not approve $10 million in

attorneys' fees, class members should receive the difference, and that class counsel have breached

fiduciary duties to the class by not negotiating for reversion to the class of any denied fee request.

See, e.g., Alkon Objectors' Objection To Amended Settlement (Doc. #3737) at 16-22.  These

objections misapprehend the settling parties' agreement.  Costco has agreed to pay attorneys' fees

which the Court deems reasonable, not to exceed $10 million.  It has not agreed to pay $10 million

regardless of the Court's reasonableness determination.  In fact, Costco has vigorously opposed

plaintiffs' fee application.  See Defendant Costco Wholesale Corporation's Opposition To Plaintiffs'

Motion For Award Of Attorneys' Fees, Expenses, And Class Representation Incentive Awards

(Doc. #2006) filed July 21, 2011 (public) and (Doc. #2022) filed August 5, 2011 (sealed).  Under

the circumstances, the Court has no reason to believe that Costco would have agreed to pay

$10 million, regardless of the Court's determination of reasonable attorneys' fees.[31]  The fact that

---

[31]     The Court rejects the Alkon Objectors' contention that class counsel have engaged in self-dealing because they have received a disproportionate distribution of the settlement and arranged to have fees not awarded revert to Costco instead of being added to the class fund.  See Alkon Objectors' Objection To Amended Settlement (Doc. #3737) at 20-21.  As noted, the proposed amended settlement requires Costco to pay *reasonable* attorney's fees not to exceed $10 million. The parties have not negotiated a fee award.  The fact that the parties agreed to a cap on reasonable attorney's fees – *to be determined by the Court* – does not mean that Costco is willing to pay $10 million regardless what the Court determines to be a reasonable attorney's fee.

class counsel did not negotiate such a provision does not suggest that they have breached fiduciary duties to the class.  Under these circumstances, the Court finds that the proposed amended settlement is fair, reasonable and adequate.[32]

### D.   Conclusion

For reasons stated above, the Court finds that class certification is appropriate under Rule 23(a) and (b)(3) and that the proposed settlement is fair, reasonable and adequate under Rule 23(e)(2).  Accordingly, the Court approves the proposed amended settlement with Costco.

---

[32]   As noted, class members also object that the proposed amended settlement (1) should merely require notice of benefits of purchasing cool gas, as opposed to the more costly option of implementing ATC; (2) should make Costco executives pay; (3) involves a matter for state regulators; (4) resolves a frivolous lawsuit; (5) improperly rewards class actions which hurt consumers in long run; and (6) did not allow other class members to be class representatives.  The Court has reviewed these objections and finds them to be without merit.

At the settlement hearing, counsel for the Alkon Objectors argued that the subclass representatives have no standing to seek prospective injunctive relief because they already know about the alleged fraud.  The case which counsel cited, McNair v. Synapse Group Inc., 672 F.3d 213 (3d Cir. 2012), is distinguishable.  That case involved consumer fraud claims under New Jersey and District of Columbia law regarding an automatic magazine renewal subscription program under which defendant sent an allegedly deceptive postcard which appeared like an offer for a new subscription instead of an automatic renewal notice for an existing subscription.  See id. at 218-19.  The named plaintiffs, who were past customers but did not currently subscribe under the plan, sought individual monetary relief and injunctive relief for class members.  Id. at 215, 221-27.  The district court denied class certification under Rule 23(b)(2) for injunctive relief, finding that the putative class lacked cohesion because defendant's conduct did not affect all class members in a similar way, i.e. some class members were deceived by the postcard and others were not.  Id. at 220.  The Third Circuit granted permission for an interlocutory appeal under Rule 23(f).  Id. at 222.

The Third Circuit found that the named class members lacked Article III standing to sue for injunctive relief because they were not current customers and did not allege that they intended to subscribe again.  Id. at 224-26.  The Third Circuit concluded that as former customers/subscribers, the named plaintiffs had not established any likelihood of future injury so they did not have a basis to seek injunctive relief.  Id. at 225-26.

Here, no one questions whether the named representatives intend to buy motor fuel from Costco again.  Moreover, in McNair, it was less reasonable to believe that the plaintiffs could be fooled twice by the same deceptive postcard.  Here, even though plaintiffs know that Costco does not disclose or adjust for temperature, they have no way to protect against injury in future motor fuel transactions because they have no way of knowing the temperature of the motor fuel that they buy.

The Court finds that the following class members have opted out of the settlement: (1) the 3,248 class members who submitted timely requests to opt out of the amended settlement class, see Exhibits A and B to Declaration Of David F. McDowell Regarding Persons Who Requested To Opt Out Of The Amended Class Action Settlement (Doc. #3774) ¶¶ 3(a) and (b); (2) the 21 class members who submitted untimely requests to opt out, see Exhibits C and D to Declaration Of David F. McDowell Regarding Persons Who Requested To Opt Out Of The Amended Class Action Settlement (Doc. #3774) ¶¶ 3(c) and (d); (3) the 25 class members who submitted "objections" which appear to be asking to opt out of the settlement class, see Exhibit E to Declaration Of David F. McDowell Regarding Persons Who Requested To Opt Out Of The Amended Class Action Settlement (Doc. #3774) ¶ 3(e);[33] and (4) Alcedo Ramon, Lillian Holladay and Robert Severson.[34]

This order does not address plaintiffs' Motion for Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards And Memorandum In Support Thereof (Doc. #1820) filed March 23, 2011. Since plaintiffs and Costco negotiated the settlement which is the subject of this order, a number of additional parties have reached enforceable settlement agreements: BP Products North America Inc., ConocoPhillips Company, Equilon Enterprises LLC d/b/a Shell Oil Products US, Casey's General Stores, Inc., Valero Marketing and Supply Company, Sam's East, Inc., Wal-

---

[33]     McDowell states that 26 persons submitted "objections" which appear to be making requests to opt out of the settlement class.  See Declaration Of David F. McDowell Regarding Persons Who Requested To Opt Out Of The Amended Class Action Settlement (Doc. #3774) ¶ 3(e). Plaintiffs state that one of those class members, Shelly Madison, has confirmed that she intended her website response to be an objection.  Declaration Of Joseph A. Kronawitter Regarding Settlement Objections (Doc. #3804) ¶ 2.  Accordingly, the Court finds that Madison did not opt out of the settlement class.

[34]     As noted, plaintiffs suggest that the Court treat correspondence from Ramon, Holladay and Severson as requests to opt out of the amended settlement.  Declaration Of Joseph A. Kronawitter Regarding Settlement Objections (Doc. #3804) ¶¶ 3-5.  The Court finds that it is appropriate to do so.

Mart Stores East, L.P., Sam's West, Inc. and Wal-Mart Stores, Inc.  Settlement discussions with other defendants are ongoing and appear promising.  The Court intends to defer any consideration of fees until all settlements have been finalized, so as to fashion a total fee award which comprehensively and equitably addresses all of the factors articulated in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).  In the meantime, to bring finality and certainty to the settlement process, the parties may wish to consider settlement discussions and/or alternative dispute resolution of the fee issue.

**IT IS THEREFORE ORDERED** that <u>Plaintiffs' Motion And Memorandum In Support Of Final Approval Of Class Action Settlement</u> (Doc. #3806) filed March 19, 2012 (public) and (Doc. #3810) filed March 20, 2012 (sealed)) be and hereby is **SUSTAINED.**

Dated this 24th day of April, 2012 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge