## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

_____ )
)
**IN RE: MOTOR FUEL TEMPERATURE**          )          **MDL No. 1840**
**SALES PRACTICES LITIGATION**             )          **Case No. 07-MD-1840-KHV**
)
)
**This Document Relates To:**              )
)
**Wilson, et al. v. Ampride, et al.**      )
**Case No. 06-cv-02582-KHV-JPO**           )
)
**American Fiber, et al. v. BP Corp., et al.** )
**Case No. 07-cv-02053-KHV-JPO**           )
)
_____ )

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER
## TO PREVENT RULE 30(b)(6) DEPOSITIONS

Defendants 7-Eleven, Inc., Circle K Stores, Inc., and QuikTrip Corp. (collectively

"Defendants") hereby submit this memorandum in support of their motion for a protective order

quashing three Rule 30(b)(6) deposition notices served on them by Plaintiffs on April 23, 2012.

In support of their motion, Defendants state:

**I.      INTRODUCTION**

On Monday, April 23, 2012, 14 days before trial, Plaintiffs served Rule 30(b)(6)

deposition notices on Defendants 7-Eleven, Circle K, and QuikTrip, to produce respective

records custodians to testify on Monday, April 30, 2012, regarding two QuikTrip documents, one

Circle K document, four documents of defendant 7-Eleven, Inc., and 66 documents of a non-

party separate entity and subsidiary of defendant 7-Eleven, Inc. – Southland Canada, Inc., which

turned into 7-Eleven Canada, Inc.  *See* Rule 30(b)(6) Corporate Representative Deposition

1

Notices, attached as Exhibits A-C.  For each document, Plaintiffs seek testimony regarding: (1) when the document was created, (2) the reason(s) why the document was created, (3) who created it, (4) "any input or collaboration or work" that any employee(s) had in creating it, (5) how it was used by Defendant, (6) the internal and external distribution of the document, and (7) whether it satisfies each of the elements of a "business record" within the meaning of FED. R. EVID. 803(6).

The Amended Protective Order ("APTO") recognized that "all discovery was to have been completed by October 11, 2011" but allowed "unopposed discovery" to continue after the deadline provided that it does not delay pretrial preparations.   Amended Pretrial Order, Doc No. 3809, Para 13.  One category of discovery that the APTO allowed to remain open was "limited discovery related to the authentication of documents." *Id.*  Plaintiffs' eleventh hour depositions violate both the letter and spirit of these orders, they are untimely and will interfere with trial preparations.  Furthermore, they are pointless as they involve documents that are clearly not business records and no records custodian deposition could provide the foundation that Plaintiffs seek to obtain.  For these reasons, Defendants seek a protective order.  This relief is necessary to spare Defendants from the undue burden and expense of producing several corporate representatives less than a week before trial to address foundational issues that cannot be solved by a records custodian. *See* FED. R. CIV. P. 26(c)(1).

## II.   ARGUMENT

After years of discovery and hundreds of depositions, fact discovery closed in June 2011 and all discovery concluded on October 11, 2011.  Nonetheless, the parties agreed to conduct limited discovery related to the authentication of documents after that date.  This agreement was memorialized in the APTO which explained "Under the scheduling order and any amendments,

all discovery was to have been completed by October 11, 2011. Discovery is complete, except the parties have agreed to engage in limited discovery **related to the authentication of documents** when the parties are further along in their trial preparation and have a more reasonable and accurate analysis of potential trial exhibits ….” Amended Pretrial Order, Doc No. 3809, Para 13 (Emphasis added).  However, the APTO did not envision that this discovery would be limitless or run to the eve of trial, rather it explicitly stated, “Unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions, or other pretrial preparations.  Under these circumstances, the parties may conduct discovery beyond the deadline for completion of discovery if all parties are in agreement to do so, but the court will not be available to resolve any disputes that arise during the course of this extended discovery.”  *Id.*

To this effect, the Court, in a separate order, set specific parameters on the authenticity discovery that the parties were contemplating including a deadline of March 30, 2012, for the parties to address remaining disputes regarding the foundation, authentication and admissibility of documents, with “any disputes regarding the documents [to] be resolved at the status conference on April 2, 2012.”  January 20, 2012 Order (Doc. 3214), at 1-2.  Consistent with this agreement, and the Court’s orders, Plaintiffs previously submitted, and all three Defendants responded, to Plaintiffs’ request to stipulate to whether hundreds of documents were authentic. In addition, Plaintiffs requested, and Defendants responded, to Plaintiffs’ request to stipulate to whether those same documents were business records under FRE 803(6).  Defendants met their obligation to respond to Plaintiffs’ authentication requests in March, stipulating to the vast majority of documents.  Plaintiffs’ requested stipulations contained a few large groupings of

3

unrelated documents to which Defendants were unable to stipulate. Plaintiffs raised no "disputes" with respect to Defendants stipulations at the April 2 conference.

Subsequently, on April 12, Plaintiffs served their exhibit list which contained multiple documents that had not been subject to earlier stipulations. Shortly thereafter, Plaintiffs' counsel reached out to Defendants' counsel about whether Defendants' counsel would agree to authenticity and business record stipulations for the previously unaddressed documents. While the time for authentication discovery had passed, Defendants agreed to stipulate to the authenticity of the vast majority of the documents; except documents that could not be identified under FRE 901.[1] Defendants also stipulated that all documents that met the requirements of FRE 803(6) in fact did so – but e-mails, which are not "business records" do not meet the requirements of 803(6). *See United States v. Ferber*, 966 F. Supp. 90, 98-99 (D. Mass. 1997) (holding e-mail was not admissible as a business record and noting "[w]ere it otherwise, virtually every document found in the files of a business which pertained in any way to the functioning of that business would be admitted willy-nilly as a business record. That is not the law"). Consistent with the Amended Pretrial Order, Defendants cannot produce a corporate representative to testify that these documents are business records – because they are not.

Unsatisfied with this, Plaintiffs now, on the eve of trial, improperly and prejudicially seek to take additional corporate representative depositions regarding the admissibility of certain documents. Beyond merely seeking foundation issues, Plaintiffs also seek corporate

---

[1]     Indeed, three of the four 7-Eleven documents listed on Plaintiffs' deposition notice are documents that 7-Eleven has already stipulated to or will not object to as hearsay. Defendants have already advised Plaintiffs that they would stipulate that SEVL000028398-28422 is authentic, a business record and not hearsay and that SEVL000028448-28464 is authentic and not hearsay. Needless to say, 7-Eleven was surprised to see these two documents on Plaintiffs' deposition notice. While Plaintiffs never asked 7-Eleven whether it would stipulate with respect to SEVL000035868-35877, 7-Eleven will stipulate that it is authentic, a business record and not hearsay.

4

representative testimony regarding the merits of these documents.  For example, Plaintiffs' request for the identities of employees who had "input or collaboration or work" in creating a document has nothing to do with whether that document is admissible – it is a fishing expedition to obtain information that could have been sought before the close of discovery.  Indeed, many of the documents identified on Plaintiffs' deposition notices have been the subject of testimony at depositions (Defendants have already produced 19 employees for depositions).[2]  If Plaintiffs failed to ask all of the questions they wish they had regarding Defendants' documents, they are not entitled to an untimely "do over" regarding such discovery less than a week before trial.

Further, Defendants cannot produce a witness to address Plaintiffs' questions regarding the remaining documents because either no company witness has the requested information, or the documents are e-mails that are not business records under FRE 803(6), and cannot become such based upon a company representative's testimony. First, the majority, if not all, of the documents pertain to states or countries other than the state of Kansas, and therefore, are not relevant to the subject matter of the trial.  For example, the single Circle K document does not pertain to Kansas.  Similarly, one of the two QuikTrip documents pertains to Atlanta, Georgia. *See* Exhibit A at 8 ("Atlanta Division").  All of the Southland Canada, Inc. and 7-Eleven Canada, Inc. documents relate to Canada.  Second, the subject documents all suffer from fundamental deficiencies that make it impossible for Defendants to stipulate.  Some of these documents originated outside Defendants, others consist of e-mails or internal memorandums that are not business records, and still others are documents of subsidiary companies.  Plaintiffs should not now be permitted – on the eve of trial and through untimely deposition notices – to take additional depositions to solve deficiencies in foundation that no witness can cure.

---

[2]   For example, 7-Eleven witness William Runciman was questioned about nearly 20 of the Southland Canada, Inc. and 7-Eleven Canada, Inc. documents at issue.

Plaintiffs' last-minute 30(b)(6) notices should be quashed to avoid the undue burden, annoyance and expense that would be caused by conducting depositions, in the short time remaining before trial, on the detailed topics identified by Plaintiffs.

## III.   CONCLUSION

For the reasons set forth above, Defendants request the Court issue a protective order quashing Plaintiffs' April 23, 2012 Notices of Corporate Representative Depositions Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to QuikTrip, Circle K, and 7-Eleven, and for such further relief as the Court deems just and proper.

## RULE 26(C)(1) CERTIFICATION

The undersigned certifies, pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 37.2, that Defendants' counsel have met and conferred in good faith with Plaintiffs' counsel in an effort to resolve the disputes that are the subject of this Motion, but have been unsuccessful in reaching a resolution.   These efforts are set forth with particularity in the Declaration of A. Bradley Bodamer, attached hereto as Exhibit D.

Dated:  April 26, 2012

By:   /s/ Tristan L. Duncan
Tristan L. Duncan, #70481

SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
(816) 474-6550
(816) 421-5547 (fax)
tlduncan@shb.com

COUNSEL FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

_/s/ Tristan L. Duncan_
Attorney

5033420 v1