## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| This Document Relates To: | ) | **Case No. 07-1840-KHV** |
| | ) | |
| <u>Wilson, et al. v. Ampride, Inc., et al.,</u> | ) | |
| Case No. 06-2582-KHV. | ) | |
| —————————————————————— | ) | |

### <u>MEMORANDUM AND ORDER</u>

Plaintiff Zachary Wilson brings suit against Circle K and others whom he alleges own, operate or control retail motor fuel stations in Kansas. He seeks money damages and injunctive relief under the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. §§ 50-623 through 50-643, for willfully concealing, suppressing, omitting or failing to state a material fact, <u>id.</u> § 50-626(b)(3), and for unconscionable acts and/or practices, <u>id.</u> § 50-627, in connection with a consumer transaction. With respect to his claims for injunctive relief, Wilson represents a class of Kansas consumers who purchased motor fuel from defendants. This matter is before the Court on <u>Circle K Stores Inc.'s Motion For Summary Judgment Due To No Retail Sales In Kansas</u> (Doc. #2418) filed October 31, 2011 and <u>Plaintiffs' Motion To Strike, Or, In The Alternative, For Leave To File A Sur-Reply In Response To Defendant Circle K Stores Inc.'s Reply In Support Of Its Motion For Summary Judgment Due To No Retail Sales In Kansas</u> (Doc. #3200) filed January 17, 2012. For the following reasons, the Court sustains in part Wilson's motion and sustains Circle K's motion.

### I.       Plaintiff's Motion To Strike

Plaintiff moves to strike a Circle K franchise agreement that Circle K disclosed for the first time as an attachment to its reply brief. <u>See</u> Ex. B, Doc. #3188 filed January 10, 2012. Other than stating that this is "unfair and highly prejudicial," he does not cite any authority or make specific

arguments to support striking the document.  See Plaintiffs' Motion To Strike (Doc. #3200) at 3.

The Court will not come up with those arguments for him.  See Triple-I Corp. v. Hudson Assocs.

Consulting, Inc., 713 F. Supp.2d 1267, 1274 n.5 (D. Kan. 2010).  Alternatively, plaintiff moves for

leave to file a surreply to respond to the new evidence.  Circle K thought that it produced the

franchise agreement during discovery, but concedes that it evidently did not.  Circle K Stores Inc.'s

Reply In Support Of Its Motion For Summary Judgment Due To No Retail Sales In Kansas

(Doc. #3811) at 9.

Surreplies are typically not allowed.  C.T. v. Liberal Sch. Dist., 562 F. Supp.2d 1324, 1329

n.1 (D. Kan. 2008) (citing D. Kan. Rule 7.1(b); Metzger v. City of Leawood, 144 F. Supp.2d 1225,

1266 (D. Kan. 2001)).  But they are allowed where a movant improperly raises new arguments or

evidence in a reply and the nonmoving party needs an opportunity to respond.  See id.; Stevens v.

Deluxe Fin. Servs., Inc., 199 F. Supp.2d 1128, 1130 (D. Kan. 2002).  Because Circle K disclosed

the franchise agreement for the first time in its reply, and because it directly bears on plaintiff's

argument that Circle K had actual authority over its franchisees, plaintiff should have an opportunity

to respond.  The Court therefore sustains plaintiff's motion to file a surreply.  Plaintiffs' Sur-Reply

Memorandum In Further Opposition To Circle K Stores, Inc.'s Motion For Summary Judgment Due

To No Retail Sales In Kansas, Ex. 1, Doc. #3201 filed January 17, 2012.[1]  In accordance with D.

Kan. Rule 15.1(a)(2), plaintiff filed a proposed surreply, Ex. 1 to Doc. #3200 (unsealed) and

---

[1]      In response to defendant's motion for summary judgment, plaintiff states that he is
unable to controvert a number of facts because Circle K had not disclosed an exemplar franchise
agreement.  Because the Court sustains plaintiff's motion to file a surreply, and considers his
proposed surreply as though filed, the Court disregards plaintiff's then-existing inability to respond.

Doc. #3203 (sealed), which the Court considers as though filed.[2]

## II.      Circle K's Motion For Summary Judgment

Circle K seeks summary judgment on plaintiff's claims because it does not own or operate any retail motor fuel stations in Kansas – it only franchises Circle K-branded convenience stores in the state.  Plaintiff argues that Circle K is vicariously liable based on actual or apparent authority over motor fuel sales practices at Circle K-branded stations.  Generally, whether an entity may be held vicariously liable for the acts of another is a question of fact for the jury.  Lowe v. Surpas Res. Corp., 253 F. Supp.2d 1209, 1231-32 (D. Kan. 2003); Barbara Oil Co. v. Kan. Gas Supply Corp., 250 Kan. 438, 446-47, 827 P.2d 24, 31-32 (1992); Falls v. Scott, 249 Kan. 54, 64, 815 P.2d 1104, 1112 (1991).  When the facts are undisputed or the evidence is susceptible of only a single conclusion, however, the Court may resolve the question as a matter of law.  Lowe, 253 F. Supp.2d at 1232; Falls, 249 Kan. at 64, 815 P.2d at 1112; see also Wayman v. Accor N. Am., Inc., 45 Kan. App.2d 526, 533, 251 P.3d 640, 646 (2011).

### A.      Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

---

[2]      The Court hereby directs plaintiff to file his proposed surreply.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

**B.      Factual Background**

The following facts are either uncontroverted, deemed admitted or where controverted,

4

viewed in the light most favorable to plaintiff, the non-movant.[3]

At certain times since January 1, 2001, Circle K franchisees have operated Circle K convenience stores in Kansas. Franchisees with Circle K-branded stores also sold motor fuel in Kansas during this time. The franchisee convenience stores are owned and operated by independent third parties. Since October 24, 2011, all Kansas franchise sites were owned and operated by PCF Sale Co., LLC, which aside from its contractual relationship with Circle K, is unrelated to Circle K. The Circle K franchises in Kansas do not indicate that the franchise is owned, operated or controlled by a franchisee.

A franchise agreement is the only agreement that governs the relationship between Circle K and its franchisees. Circle K franchise agreements are standard and non-negotiable. Potential franchisees must seek location approval from Circle K to open a Circle K-branded franchise location. Before a franchisee may use Circle K marks and logos, the retailer must pay a franchise fee. Circle K oversees construction, development, operation, marketing and advertising of its franchisees.

Circle K sets appearance standards for franchisees and their hours of operation. It also provides its franchisees a training manual.

Circle K contends that it has no involvement in the sale of motor fuel at any franchisee locations, as opposed to the operations and marketing of the Circle K-branded store itself. Franchisees who sell motor fuel in addition to operating a convenience store determine their own

---

[3]    Plaintiff argues that the declaration of Cheryl Hughes, the Director of U.S. Finance for Circle K, contains sweeping conclusory statements with few supporting details. The Court disregards any conclusory statements, as opposed to specific facts, offered by either party. Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1382 (10th Cir. 1994). Plaintiff also comments in a footnote that Circle K has not identified Hughes as a potential witness in this case, so he has not had a chance to depose her. Plaintiff has not, however, moved to strike Hughes' declaration.

prices, disclosures and dispensing practices.[4]  Circle K may have an indirect pecuniary interest in fuel sales by franchisees because customers who purchase fuel from a franchisee may also purchase items from the Circle K store.  It does not, however, have a direct pecuniary interest in the sale of fuel by franchisees.  The point-of-sale software at all Kansas franchisee convenience store locations distinguishes between fuel sales and other sales, even in the same transaction (i.e. on the same receipt), and Circle K receives no benefit from the franchisee's sale of fuel.  Circle K's franchise fee is based on the franchisee's convenience-store-related sales – not the franchisee's fuel sales.  Circle K receives no fee based on the franchisee's fuel sales.

Most (if not all) of the Kansas franchisees that sell motor fuel, employ the "Phillips 66" brand.  The Kansas franchisee sites are under no obligation to purchase, and to the best of Circle K's knowledge have not purchased, fuel from Circle K for resale to customers.  Since January 1, 2001, Circle K has not set prices or otherwise influenced prices or volumes of motor fuel sold at Circle K-branded stores in Kansas or any other retail locations in Kansas.[5]  Since January 1, 2001, Circle K has not influenced in any way the motor fuel dispensing practices, including disclosures to consumers, at Circle K-branded stores in Kansas or any other retail locations in Kansas.  For instance, Circle K has not required or prohibited the use of any type of motor fuel dispensing equipment used in Kansas.

Customers who pre-pay for fuel with cash must enter the Circle K store to do so.  The

---

[4]     Plaintiff attempts to controvert this fact, but does not meet the substance of it.  See D. Kan. Rule 56.1(e).  His citations to the record indicate that Circle K may have control over advertising and the use of its brand at franchisee stores that also sell motor fuel, but do not controvert that Circle K does not control the price or method of sale of the motor fuel.

[5]     Plaintiff attempts to controvert this fact by pointing to photographs and labels on receipts, but as noted above, this does not meet the substance of defendant's contention.  See D. Kan. Rule 56.1(e).

employee who takes the customer's money offers no indication, by clothing or otherwise, that the employee works for any company other than Circle K.  The receipt fuel customers receive states: "WELCOME TO CIRCLE K 66," CIRCLEK6321" and "COMPLETE A SURVEY WWW.GASVISIT.COM REGISTER TO WIN!!!"  The website – www.gasvisit.com – takes the customer to a ConocoPhillips website.

Circle K franchises display signs bearing the Circle K logo.  Of the Circle K franchisees that operated a Circle K-branded store and sold motor fuel, at least some of them displayed signs bearing the Circle K logo directly above the advertised price of motor fuel.  On the same sign, directly next to the Circle K logo and price of fuel, was an even larger Phillips 66 logo that included the name "ConocoPhillips."  The fuel pump which plaintiff photographed and attached to his affidavit displayed the Phillips 66 logo and bore the name "ConocoPhillips" directly next to the words "Quality PROclean Gasolines." The pump also displayed an advertisement for pumpkin spice coffee which contained the Circle K logo.[6]  In at least one of the images attached to plaintiff's affidavit, a Phillips 66 logo appears on the awning over the fuel pumps.  Affidavit Of Zachary T. Wilson, Ex. D, Doc. #3118 at 24 (Ex. 8).

Circle K's website, http://www.circlek.com, shows a map of Circle K store locations and lists the Circle K stores in Kansas that sell motor fuel.  The "Store Detail" page for each of the Kansas locations states that the "Facility Type" is "Convenience Store" and "Gas" is "PHILLIPS 66."  The header of Circle K's website, which is displayed on each of the web pages which plaintiff has provided, has several links including one for "Franchises."  The "Store Detail" pages which plaintiff attached to his response contain an advertisement for Circle K gift cards and to "TOUR CircleK

---

[6]     The pump displayed another advertisement for Coca-Cola stating "top it off for a buck," but it does not bear a Circle K logo.

Franchise."

The Circle K website does not state or otherwise indicate that a particular Circle K store is owned and operated by a franchisee.  The web page for each Kansas location does not state or otherwise indicate that the Circle K store is owned and operated by PCF Sale Co.  Circle K does not state or otherwise indicate on its website that PCF Sales Co. controls motor fuel sales.  Circle K does not state or otherwise indicate on its website that any Circle K franchisee controls motor fuel sales.

Circle K offers gift cards that can be used to purchase fuel and fleet cards that offer rebates on fuel purchases.  The Circle K home page shows an image of a gift card bearing a Circle K emblem, under which it states, "Gift Cards Purchase yours today."  After clicking on the Circle K gift card emblem on the Circle K homepage, the website directs the user to a page explaining Circle K gift cards.  That web page states, "The Circle K Gift Card can be used for nearly anything, including fuel, at over 2,700 locations!"

The Circle K homepage shows an image of the Circle K fleet card.  After clicking on the Circle K fleet card emblem, the website directs the user to a page explaining the Circle K fleet cards.  That web page states, among other things: "Volume fuel rebates up to 2.5¢/gal" and that "drivers must provide their unique Driver ID number and the vehicle's odometer reading when they use the card."  It advertises "[c]onvenient nationwide fuel acceptance" and states that "[f]riendly, knowledgeable representatives are available 24/7 to answer questions."

In response to plaintiff's first set of interrogatories, Circle K answered that "it entered into franchise agreements in various states, but those franchise agreements pertained only to the operation of a convenience store, not the retail sale of motor fuel."  In plaintiff's consolidated first set of requests for production of documents to defendants, he asked Circle K to produce "[a]ll

DOCUMENTS IDENTIFIED in YOUR responses to Plaintiffs' First and Second Set of Interrogatories" and "all documents upon which YOU relied or referred to when answering in YOUR responses to Plaintiffs' First Set of Consolidated Interrogatories or Second Set of Consolidated Interrogatories propounded on YOU." Circle K did not produce any franchise agreements in response to plaintiff's requests.

### C.    Actual Authority

Plaintiff argues that Circle K controlled or had the right to control its franchisees and is therefore vicariously liable for its alleged violation of the KCPA. Circle K counters that it does not control or have any right to control the manner in which franchisees sell fuel in Kansas.

To hold Circle K vicariously liable for the acts of its franchisees on a theory of actual authority, plaintiff must show that Circle K controlled or had the right to control franchisees in the particular instrumentality that harmed plaintiff, i.e. in the details of selling motor fuel. Thompson v. Jiffy Lube Int'l, Inc., No. 05-1203-WEB, 2006 U.S. Dist. LEXIS 39113, *38-39 (D. Kan. June 13, 2006); Fisher v. Triplett, Inc., No. 83-4040, 1986 U.S. Dist. LEXIS 21423, at *8 (D. Kan. Aug. 18, 1986).

> As a general rule, when a person (a contractee) lets out work to another and reserves no control over the work or workmen, the relation of contractee and independent contractor exists, and not that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the independent contractor.

Falls, 249 Kan. at 59, 815 P.2d at 1109 (citing Balagna v. Shawnee Cnty., 233 Kan. 1068, 668 P.2d 157 (1983)); see also Lowe, 253 F. Supp.2d at 1231-32; see also Thompson, 2006 U.S. Dist. LEXIS 39113, at *42 (Kansas courts would apply general agency principles to determine whether franchisor liable for franchisee).

The existence of a franchisor-franchisee relationship does not by itself render the franchisor

vicariously liable for the acts of its franchisee. <u>Thompson</u>, 2006 U.S. Dist. LEXIS 39113, *38-39; <u>see also</u> <u>Greiving v. La Plante</u>, 156 Kan. 196, 131 P.2d 898, 900 (1942).  Courts are "mindful that a franchisor . . . ha[s] a legitimate interest in retaining some degree of control in order to protect the integrity of its marks." <u>Thompson</u>, 2006 U.S. Dist. LEXIS 39113, at *41-42.  Thus retaining "rights such as the right to enforce standards, the right to terminate the agreement for failure to meet standards, the right to inspect the premises, the right to require that franchisees undergo certain training, or the mere making of suggestions and recommendations does not amount to sufficient control." <u>Id.</u> at 42.

Plaintiff argues that Circle K had actual authority over the sale of motor fuel by its franchisees because (1) Circle K franchisees must pay a franchise fee before using Circle K marks and logos; (2) Circle K controls the location of its franchise locations and oversees the operations of its franchises, including those that sell motor fuel; (3) once Circle K establishes a franchise relationship, it oversees construction, development, marketing and advertising for the store and provides franchisees a training manual; (4) Circle K sets the business hours of its franchised stores; (5) Circle K's control over in-store merchandise sales is inextricably intertwined with fuel sales because some consumers pay for fuel inside Circle K's franchised store; (6) Circle K controls the marks on fuel receipts which state "WELCOME TO CIRCLE K 66," "CIRCLEK6321 ASM KC," and "COMPLETE A SURVEY WWW.GASVISIT.COM REGISTER TO WIN!!!"; (7) Circle K sells gift cars that can be used to purchase fuel; (8) Circle K has a fleet card program that offers volume rebates on fuel purchases and requires the customer to show their unique Driver ID and vehicle odometer reading when purchasing fuel; (9) Circle K maintains significant control over the day-to-day operations of its franchised stores and the premises; (10) Circle K's uniformity

10

requirements and inspection rights apply to the store and to the entire premises; and (11) Circle K has access to each franchisee's electronic point of sale system and may view all data stored on it.

As noted above, these are precisely the types of controls that a franchisor may legitimately exercise over its franchisee without incurring vicarious liability. Plaintiff has not produced evidence – direct or circumstantial – that would permit a reasonable jury to find that Circle K had actual control over the decisions of its franchisees with respect to the price of fuel or the method of selling it. He has shown that Circle K exercises control over its franchised convenience stores, its marks and the premises on which the stores are located. But this does not raise a genuine issue of material fact with respect to whether Circle K controls the particular instrumentality that allegedly harmed plaintiff, i.e. the manner of selling motor fuel. See Thompson, 2006 U.S. Dist. LEXIS 39113, *38-39; Fisher, 1986 U.S. Dist. LEXIS 21423, at *8. Indeed the uncontroverted facts show that Circle K has no actual control over the motor fuel sales of its franchisees.

### D.    Apparent Authority

Plaintiff argues that Circle K holds out its franchisees as its agents for selling fuel and is therefore vicariously liable for their acts under a theory of apparent authority. Circle K counters that plaintiff relies solely on Circle K signage and other general indicia of a franchise relationship, which are insufficient to show apparent authority.

A principal is vicariously liable for the acts of its apparent agents. Cole v. Am. Fam. Mut. Ins. Co., 333 F. Supp.2d 1038,1043 (D. Kan. 2004) (citing Kan. City Heartland Constr. Co. v. Maggie Jones Southport Café, Inc., 250 Kan. 32, 41, 824 P.2d 926, 932-33 (1992)). An "apparent agent is one who, with or without authority, reasonably appears to third persons to be authorized to act as the agent of another." Ford v. Guarantee Abstract & Title Co., 220 Kan. 244, 268, 533 P.2d

254, 272 (1976).  Apparent agency is "based on intentional actions or words of the principal toward third parties which reasonably induce or permit third parties to believe that an agency relationship exists." Mohr v. State Bank of Stanley, 241 Kan. 42, 46, 734 P.2d 1071, 1076 (1987).

A franchisee's use of a franchisor's marks alone is insufficient to establish apparent agency. See Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034, 1036 (8th Cir. 1998) (that franchisor's sign appears on building and employees wear uniforms bearing franchisor's logo does not clothe franchisee with apparent power to act on franchisor's behalf); Fisher, 1986 U.S. Dist. LEXIS 21423, at *10-11 (even if plaintiffs attracted to station because of Amoco signs, insufficient to establish apparent agency); Greiving, 156 Kan. 196, 131 P.2d at 900 (fact that seller of goods marketed under trade name of owner insufficient to show that retailer is agent of owner).  At least in part, this is based on the fact that "[a]lmost everyone knows that chain outlets, whether restaurants, motels, hotels, resorts, or gas stations, are very often franchised rather than owned by the owner of the trademark that gives the chain its common identity in the marketplace." Carris v. Marriott Int'l, Inc., 466 F.3d 558, 562 (7th Cir. 2006).

Plaintiffs argue that Circle K's conduct would lead a reasonable consumer to believe that it had authority over the sale of motor fuel by its franchisees because (1) the display signs at the entrance of its Kansas locations bear the Circle K logo; (2) at locations that sell motor fuel, the display signs advertise the price of fuel directly below the Circle K logo; (3) the signs at these locations do not indicate that the Circle K store is owned, operated or controlled by a franchisee; (4) the signs suggest that the price of fuel is set by Circle K – not Phillips 66 or a franchisee; (5) at some locations where a Circle K franchisee also sells fuel, Circle K places advertisements for Circle K-branded merchandise directly on the fuel pumps; (6) customers who purchase fuel with cash must

12

do so inside the Circle K store; (7) the employees in the store give no indication, by clothing or otherwise, that they work for any company other than Circle K; (8) the receipts given to customers who purchase fuel state: "WELCOME TO CIRCLE K 66," "CIRCLEK6321 ASM KC," and "COMPLETE A SURVEY WWW.GASVISIT.COM REGISTER TO WIN!!!"; and (9) Circle K's website shows a map of Circle K locations, lists the Circle K stores in Kansas that sell fuel and advertises gift cards that can be used to purchase fuel and fleet cards that offer rebates on fuel purchases.

To show apparent authority, plaintiff essentially relies on the fact that Circle K's name and logo appear adjacent to the advertised price of fuel, and appear on receipts for fuel purchases, gift cards and fleet cards that can be used to purchase fuel. As noted above, this is not enough to permit a reasonable jury to infer that the franchisee is Circle K's agent for selling fuel. And plaintiff cites no case where the use of a franchisor's name and logo in this manner create apparent authority. See Gonzalez v. Walgreens Co., 878 F.2d 560, 562 (1st Cir. 1989). Moreover plaintiff greatly exaggerates the purported evidences of Circle K's apparent authority by taking them out of context.

For example, the undisputed facts reveal as follows. On the display signs where the Circle K logo appears directly above the advertised price of fuel, a much larger Phillips 66 logo appears directly adjacent to both the Circle K logo and the fuel price. The fuel pump which plaintiff photographed displayed the Phillips 66 logo and bore the name "ConocoPhillips" directly next to the words "Quality PROclean Gasolines." In at least one of the images attached to plaintiff's affidavit, a Phillips 66 logo appears on the awning over the fuel pumps. Affidavit Of Zachary T. Wilson, Ex. D, Doc. #3118 at 24 (Ex. 8). The only place the Circle K logo appeared on any pumps which plaintiff photographed was on an advertisement for coffee.

13

In addition to showing a map of Circle K locations, listing the Circle K stores in Kansas that sell fuel and advertising gift cards and fleet cards, the Circle K website contains a prominent link for "Franchises," refers to Circle K locations as "Circle K Stores," and in describing store details states "Facility Type: Convenience Store" and "Gas: Phillips 66." The "Store Detail" pages also contain an advertisement that says "TOUR Circle K Franchise." The receipts similarly indicate that the Circle K influence is limited to the convenience store. They state "WELCOME TO CIRCLE K 66" and the website on the receipt – www.gasvisit.com – leads to a ConocoPhillips website. That customers can purchase fuel with Circle K gift cards and can get fuel discounts with Circle K fleet cards does not permit an inference that Circle K controls the price and method of selling Phillips 66 fuel.

For these reasons, no genuine issue of material fact exists with respect to whether Circle K's franchisees were its apparent agents with respect to selling motor fuel. Plaintiff therefore cannot hold Circle K vicariously liable for the acts of its franchisees in selling fuel.[7]

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion To Strike, Or, In The Alternative, For Leave To File A Sur-Reply In Response To Defendant Circle K Stores Inc.'s Reply In Support Of Its Motion For Summary Judgment Due To No Retail Sales In Kansas (Doc. #3200) filed January 17, 2012 be and hereby is **SUSTAINED in part**. The Court sustains the motion for leave to file a surreply, considers plaintiff's proposed surreply as though filed and directs plaintiff to file the surreply.

**IT IS FURTHER ORDERED** that Circle K Stores Inc.'s Motion For Summary Judgment

---

[7]    In addition, although the parties' briefs have not raised this issue, apparent authority under Kansas law seems to require an element of reliance. See Mulholland v. Metro. Life Ins. Co., 546 F. Supp.2d 1231, 1237 (D. Kan. 2008). No genuine issue of material fact exists with respect to whether plaintiff relied on Circle K controlling the price and method of selling fuel.

<u>Due To No Retail Sales In Kansas</u> (Doc. #2418) filed October 31, 2011 be and hereby is

**SUSTAINED**.

      Dated this 30th day of April, 2012 at Kansas City, Kansas.

                                    <u>s/  Kathryn H. Vratil</u>
                                      KATHRYN H. VRATIL
                                      United States District Judge