# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

_____

|  |  |
|---|---|
| ) |  |
| IN RE: MOTOR FUEL TEMPERATURE ) | **MDL No. 1840** |
| SALES PRACTICES LITIGATION ) | **Case No. 07-MD-1840-KHV** |
| ) |  |
| ) |  |
| This Document Relates To: ) |  |
| ) |  |
| Wilson, et al. v. Ampride, et al. ) |  |
| Case No. 06-cv-02582-KHV-JPO ) |  |
| ) |  |
| American Fiber, et al. v. BP Corp., et al. ) |  |
| Case No. 07-cv-02053-KHV-JPO ) |  |
| ) |  |
| ) |  |

_____ )

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER
## TO PREVENT RULE 30(b)(6) DEPOSITIONS

Defendants 7-Eleven, Inc., Circle K Stores, Inc., and QuikTrip Corp. (collectively "Defendants") hereby submit this reply in support of their motion for a protective order quashing three Rule 30(b)(6) deposition notices served on them by Plaintiffs on April 23, 2012.[1]  In support of their motion, Defendants state:

## I.    INTRODUCTION

Plaintiffs' opposition to Defendants' motion for a protective order is based primarily on three flawed premises.  First, Plaintiffs appear to assume that their unilateral decision to ignore the Court's deadline for raising disputes about the authenticity and admissibility of documents at

_____

[1] On May 1, 2012, the Court issued an order granting summary judgment in favor of Circle K in the Kansas cases.  (*See* Dkt. No. 4269.)  Plaintiffs' request to depose a Circle K corporate representative for purposes of the Kansas trial should accordingly be moot.  And all authenticity discovery related to non-Kansas cases has been deferred until remand (*see* Dkt. No. 1931).  Even if that were not the case, Plaintiffs' request to depose a Circle K witness should be denied for the same reasons (discussed herein) that its request with respect to QuikTrip and 7-Eleven should be denied.

the April 2, 2012 status conference allows them to continue discovery on such matters indefinitely.  Second, Plaintiffs appear to believe that they are entitled to a last minute "do over" to conduct discovery that could have been conducted months ago.  And third, Plaintiffs appear to operate under the flawed assumption that every document in the possession of a business is a business record.  Each of these assumptions is false. The Court's orders establish that discovery is closed and that any limited discovery must be unopposed and conducted by agreement.  Plaintiffs are not entitled, at the eleventh hour, to conduct discovery that could have been completed last year.  Many of the documents now at issue were discussed extensively with Defendants' corporate representatives.  Plaintiffs should not be permitted further depositions in order to ask questions that could have, and should have, been asked previously.  Finally, the business records exception to the hearsay rule does not apply to every document created by or received by a business but rather only those documents that record or memorialize regularly conducted activities and that satisfy the three requirements of Rule 803(6).  Plaintiffs' requests for depositions should be denied.

## II.     ARGUMENT

### A.     Plaintiffs' Notices Are Untimely

Plaintiffs' argument that their deposition notices are timely consists of little more than three pages of excuses for why Plaintiffs did not conduct this discovery earlier.  Plaintiffs first point to the agreements, made in June of 2011, to defer this discovery until after the original close of discovery.  While technically true, the agreement was not unlimited.  Indeed, in January 2012, the Court set specific limits on the timing of this discovery.  In its January 20, 2012 Order, the Court explained that it had "instructed the parties to work toward reaching agreement as to the authentication, foundation and admissibility of documents that will be used at trial."  (Dkt.

2

No. 3214 at 1).  The Court then set specific deadlines for this discovery, directing that: "On or before February 17, 2012, plaintiffs shall provide defendants a list of documents which they intend to offer at trial. On or before March 16, 2012, defendants shall get back to plaintiffs regarding issues of authentication, foundation and admissibility of such documents …."  *Id.* The Court then clearly directed that "[a]ny disputes regarding the documents will be resolved at the status conference on April 2, 2012."  Plaintiffs simply failed to meet this deadline.

Plaintiffs try to excuse their failure first by claiming "the parties were continuing to work through admissibility issues beyond [April 2] in an attempt to resolve those disputes without Court involvement."  This is simply incorrect.  Defendants responded to Plaintiffs' voluminous list of documents on March 23, pursuant to the Court's Order.  However, Plaintiffs did not raise the issues of authenticity or admissibility with Defendants until April 13, 2012.  Defendants' good-faith willingness to continue to discuss the matter did not somehow alter the Court's deadline of April 2, nor did Defendants ever indicate that they were waiving their arguments that discovery is closed.

Plaintiffs then suggest that "[a]s a practical matter, the timing of identification of documents did not match the April 2, 2012 deadline for bringing disputes to the Court."  While, Plaintiffs may have decided that the April 2, 2012 deadline was unmanageable, they never sought agreement from Defendants to extend this deadline, never moved for an extension of time to complete this discovery, and never raised any authentication or admissibility issues at the April 2, 2012 conference.  Nor are Plaintiffs' requests for depositions "unopposed discovery" that may continue pursuant to the Amended Pretrial Order.

Furthermore, as made clear by Plaintiffs' arguments, the kind of discovery Plaintiffs now seek is not the kind of discovery that the parties contemplated would remain open. Given that

every document currently in dispute was produced long before the depositions of Defendants'
witnesses and many were the subject of testimony at those depositions, the business records
foundation for these particular documents should have been established at the time the
employees with knowledge were deposed.   The fact that Plaintiffs failed to ask the right
questions does not entitle them to re-depose witnesses and re-ask their questions.  That was never
the agreement.   Indeed the agreement was expressly limited to the discovery that Magistrate
Judge O'Hara addressed in his March 26, 2011 order in which he explained that "Plaintiffs have
had ample opportunity to conduct discovery on these issues for documents produced by
defendants much earlier in discovery."  Dkt. No. 1931 at 5-6.  Plaintiffs' requested depositions
violate both the letter and the spirit of the agreement.  It amounts to putting Defendants to the
burden and expense of duplicative, unnecessary discovery expense because Plaintiffs' are
unhappy with their earlier depositions.

Second, the categories of testimony set forth in Plaintiffs' notices go far beyond the
information necessary to make a business records foundation.  The business records exception to
the hearsay rule is a limited exception that allows a document to be admitted into evidence if the
document is a record of a regularly conducted activity and five conditions are met. Fed. R. Evid.
803(6).  To qualify, the document must be made "at or near the time by—or from information
transmitted—by someone with knowledge.  Fed. R. Evid. 803(6)(A).  It must be "kept in the
course of a regularly conducted activity of a business …"  Fed. R. Evid. 803(6)(B).  "Making the
record [must be] a regular practice of that activity."  Fed. R. Evid. 803(6)(C). And "neither the
source of information nor the method or circumstances of preparation [may] indicate a lack of
trustworthiness." Fed. R. Evid. 803(6)(E).

4

Rather than seeking narrow foundational depositions, Plaintiffs have asked for sweepingly broad depositions and have sought a custodian to testify about: (1) when the document was created, (2) the reason(s) why the document was created, (3) who created it, (4) "any input or collaboration or work" that any employee(s) had in creating it, (5) how it was used by Defendant, (6) the internal and external distribution of the document, and (7) whether it satisfies each of the elements of a "business record" within the meaning of FED. R. EVID. 803(6). Even if the time for the limited authenticity and admissibility discovery had not passed and even were such discovery not futile (as set forth in more detail below), the deposition notices at issue should still be quashed as they reach far beyond the limited areas of admissibility discovery that the parties agreed to postpone.

### B.      Plaintiffs' Requested 30(b)(6) Notices are Futile

Even had discovery not closed, a protective order is still appropriate as Plaintiffs' requested deposition notices are futile.  No deposition can establish that e-mails and memoranda are business records.  Indeed, the Court's initial Pretrial Order listed 14 categories of documents that all parties stipulated were business records.  Needless to say, e-mails and memoranda were not contemplated as being business records or subject to business record stipulations.  *See* Dkt. No. 2558 at 8-9.

### 1.      The Relevancy of The Documents At Issue Is Material to Depositions At This Late Stage

Plaintiffs do not dispute that a number of the documents for which they now seek depositions have nothing to do with Kansas.  They involve discussions with respect to how Defendants, or their corporate affiliates, do business in Canada, and issues with respect to Defendants' operations in other states.  Indeed, only one of the nearly 70 documents at issue has anything to do with Kansas.  In response, Plaintiffs assert the general rule that discovery is

broader than admissibility and state that "Defendants can raise the issue of relevancy at trial." *See* Pltfs' Opp at 5. But Plaintiffs ignore that they are requesting last minute depositions *about admissibility*. To the extent these documents are irrelevant and inadmissible, the Court should not force the parties to waste time and resources on ultimately futile discovery. As discussed more fully below, the vast majority of documents at issue are irrelevant and records custodian depositions about them are pointless.

> ### 2. A QuikTrip Records Custodian Deposition Is Futile As Neither Document At Issue Was Generated By QuikTrip And Neither Is A Business Record

Plaintiffs vehemently argue that two QuikTrip documents are in fact business records. With respect to QUIK000010578-10595, the Atlanta Division Motor Fuel Inventory Special Review ("Fuel Inventory Special Review"), Plaintiffs: (1) identify the person who created the document (Mike Ward), (2) explain that person's relationship to QuikTrip, (3) identify who at QuikTrip requested that the document be created, (4) describe a business purpose for the document, (5) state that the document summarized an accounting review and made recommendations, and (6) state that the recommendations were relied on. *See* Pltfs' Opp at 7-8. Plaintiffs' statements are supported with citations to deposition transcripts of several QuikTrip witnesses, each of whom was questioned about this document. While Defendants dispute that the Fuel Inventory Special Review is a business record and dispute that it is relevant, there can be little question that Plaintiffs do not need yet another deposition to formulate their business record argument. Plaintiffs claim on page 9 of their Opposition that they "should be given the opportunity to establish Mr. Ward's role when he prepared the document, as well as the circumstances under which the document was prepared and how it was kept and relied upon by QuikTrip." This argument ignores both that Plaintiffs already questioned several witnesses

5041587 v1

about these issues and that they had every opportunity to depose Mr. Ward.[2]   As Plaintiffs'
Opposition makes clear, any further records custodian deposition regarding this document would
be cumulative, at best.

Additionally, a records deposition regarding this document would be unnecessary as the
document plainly is not a business record.  As apparent from its face, the Atlanta Division Motor
Fuel Inventory Special Review was a "special review" and therefore it falls outside Rule
803(6)(C)'s requirement that "making the record"  is "a regular practice of the activity."  There
is no need for Plaintiffs to engage in additional, burdensome discovery with respect to this
document, as they cannot demonstrate it is a business record.

With respect to QUIK000010667-10669, Plaintiffs are well aware that this document was
not created by QuikTrip, but was rather a document provided to the company by a non-party
terminal operator.  *See* April 17, 2012 e-mail from William Northrip to Nina Fields (Attached as
Exhibit A).   Furthermore, the face of the document demonstrates that it summarizes fuel
temperatures over a period of years at a non-party terminal, not at QuikTrip retail stores.  No
amount of discovery from QuikTrip could demonstrate that this document was made "at or near
the time" or that making the record was a regular practice *of QuikTrip* as required by Rule 803.
Because no records custodian deposition by a QuikTrip employee could provide a business
records foundation for this document, any such deposition would be burdensome and futile.

### 3.       A Records Custodian Deposition From 7-Eleven, Inc. With Respect to Southland Canada Documents Is Futile

Plaintiffs' argument that 7-Eleven has taken inconsistent positions with respect to
stipulations is simply incorrect.  7-Eleven has stipulated that all its data, charts and other similar

---

[2] Defendants advised Plaintiffs over a year ago that Mike Ward has retired from and is not
employed by QuikTrip.   *See* February 17, 2011 e-mail from William Northrip to Linda
Alexander (attached as Exhibit B).  Plaintiffs had every opportunity during the discovery period
to arrange a third party deposition of Mr. Ward but failed to do so.

7

regularly kept business records are authentic and meet the business records exception to the hearsay rule.   In order to avoid wasting the Court's time with meaningless disputes, notwithstanding 7-Eleven's position that all Canada information is irrelevant and inadmissible, 7-Eleven was willing to broadly stipulate to *authenticity* with respect to memoranda and e-mails of Southland Canada and 7-Eleven Canada.   However, it has *not* stipulated to these Canadian documents, maintained by a separate entity, as business records because they are not.   There is not a records custodian at 7-Eleven Inc who can provide the detail about the creation, purpose and use of these ancient documents from a foreign subsidiary.[3]

        The remainder of Plaintiffs' arguments seem to indicate that they seek to explore the corporate relationship between 7-Eleven and its Canadian affiliate.   Of course, had Plaintiffs wanted to analyze this relationship, they had ample opportunity during their depositions of Jose Rios and William Runciman.   Plaintiffs are not now entitled to a "do over" in the guise of a records custodian deposition.   Plaintiffs do not dispute, nor can they, that 7-Eleven Inc. and its Canadian affiliate 7-Eleven Canada, Inc. (formerly Southland Canada, Inc.) are separate companies.   Nor can Plaintiffs dispute that nearly all of the documents on their list are 7-Eleven Canada documents (or in many cases old Southland Canada documents), generated by Canadian employees in Canada, addressed to other Canadian employees in Canada, about the Canadian business.   In other cases, the documents were authored by other Canadian entities and addressed to employees of either Southland Canada or 7-Eleven Canada.   And the documents to which 7-

---

[3] Contrary to Plaintiffs' assertions, 7-Eleven Inc. did not stipulate that any 7-Eleven Canada e-mails or internal memos were business records when it stipulated to SEVL000035868-35877. That stipulation was to 7-Eleven Inc.'s Organizational Charts.  *See* Notice, Doc No. 4259-3 at 8 ("SEVL000035868–SEVL000035877: 7-Eleven Organizational Charts").   Plaintiffs' arguments regarding 7-Eleven's Organizational Charts are curious at best.   7-Eleven's willingness to stipulate that its organization charts were business records simply does not contradict any of its arguments with respect to why it could not stipulate to Southland Canada and 7-Eleven Canada Inc.'s e-mails and memoranda.

8

Eleven has not stipulated as business records involve e-mails, memoranda or correspondence that do not meet Rule 803(6)'s requirements that the document be a record of regularly conducted activities made at or near the time of the activity by someone with knowledge.

In any event, the corporate relationship between 7-Eleven Inc. and 7-Eleven Canada (and its predecessor Southland Canada) is a side issue.  7-Eleven Inc. has already stipulated to 7-Eleven Canada documents being business records when those documents consist of readily identifiable data, purchase orders, store lists and the like, which can easily be established on their face as business records.  They have only declined to stipulate where documents consist of memoranda, e-mails and incoming and outgoing correspondence that fall outside the limitations of Rule 803(6).  No business records custodian deposition could provide business records foundation for these documents.[4]

## III.    CONCLUSION

For the reasons set forth above, Defendants request the Court issue a protective order quashing Plaintiffs' April 23, 2012 Notices of Corporate Representative Depositions Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to QuikTrip, Circle K, and 7-Eleven, and for such further relief as the Court deems just and proper.

---

[4] Furthermore, as discussed in Defendants' Motion in Limine on Canada (Dkt. No. 4254), evidence pertaining to 7-Eleven Inc.'s Canadian affiliate should be excluded from evidence as irrelevant.  Plaintiffs' Opposition demonstrates that Plaintiffs intend to make this trial about Canadian business practices when the focus of this trial should be whether plaintiffs and the class of Kansas consumers can establish that Defendants' lawful business practices in Kansas violate the KCPA (a business practice that the Court already concluded is "authorized by law").  Lawful Canadian business practices are simply not relevant to this inquiry.  Accordingly, even were this requested discovery timely, which it is not, and even could this discovery establish that these documents were business records of 7-Eleven Inc.'s Canadian subsidiary, which it cannot, the proposed deposition notices should be quashed because the documents at issue are not admissible.

9

Dated:  May 1, 2012

By:   /s/ Tristan L. Duncan
Tristan L. Duncan, #70481

SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
(816) 474-6550
(816) 421-5547 (fax)
tlduncan@shb.com

COUNSEL FOR DEFENDANTS

5041587 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

<u>/s/ Tristan L. Duncan</u>
Attorney

11

5041587 v1