**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) <br> SALES PRACTICES LITIGATION ) <br>   ) <br> **This Document Relates To:** ) <br>   ) <br> **Wilson, et al. v. Ampride, Inc., et al.,** ) <br>   Case No. 06-2582-KHV. ) <br>   ) <br>_____) | **MDL No. 1840** <br> **Case No. 07-1840-KHV** |

## MEMORANDUM AND ORDER

Zachary Wilson brings suit against defendants whom he alleges own, operate or control retail gas stations in Kansas. Wilson seeks money damages and injunctive relief under the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. §§ 50-623 through 50-643, for willfully concealing, suppressing, omitting or failing to state a material fact, id. § 50-626(b)(3), and for unconscionable acts and/or practices, id. § 50-627, in connection with a consumer transaction. With respect to Wilson's claims for injunctive relief, he represents a class of Kansas consumers who purchased motor fuel from defendants.[1] This matter is before the Court on Defendants' Motion For Summary Judgment On The Grounds That Plaintiffs Lack Standing (Doc. #2732) filed November 1, 2011.[2] Defendants argue that they are entitled to summary judgment on all of Wilson's claims because he offers no evidence that he has or will purchase motor fuel from defendants for personal use, and therefore lacks standing. Wilson counters that he has standing because he purchased motor

---

[1] Though Wilson represents a class seeking injunctive relief for KCPA violations, he must show that he personally has standing to sue. Warth v. Seldin, 422 U.S. 490, 502 (1975).

[2] On March 1, 2012, the Court sustained Plaintiffs' Renewed Unopposed Motion To Dismiss Without Prejudice Certain Claims And Parties (Doc. #3761) filed February 28, 2012, which included dismissal of all claims of Wonderland Miracle Carnival Company, Inc. The portions of defendants' motion that seek summary judgment on Wonderland claims are therefore moot.

fuel from defendants for personal use before and after filing suit, and that he intends to continue to do so in the future. For the following reasons, the Court sustains defendants' motion with respect to Wilson's claims for damages and overrules the motion with respect to Wilson's claims for injunctive relief.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court views the record in the light most favorable to the nonmoving party. Deepwater

Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

## Factual Background

Wilson is the sole owner of Wonderland Miracle Carnival Company, Inc. He filed this action on December 29, 2006. Wilson seeks damages for "fuel [he] purchased for . . . personal use with cash and with Wonderland credit cards for which [he] reimbursed Wonderland, and for any damages available for Wonderland fuel purchased due to [his] status as a personal guarantor of Wonderland's credit cards." Wilson Aff. ¶ 25. Wilson's claims are not based on personal motor fuel purchases made with personal debit cards. Wilson Depo. at 81-82. All of the receipts which Wilson has disclosed during discovery are for purchases of motor fuel on corporate credit cards. See id. at 84:4-9. Wilson testified that "[i]t's possible" he used company credit cards to buy fuel for personal use, but that as a matter of practice he does not do so. Id. at 84:4-13.

Wilson personally owns a 2004 Ford and a 1994 Honda, and does most of his personal driving in Kansas. For personal use, Wilson mainly purchases gasoline (as opposed to diesel fuel). He does not frequent any particular defendant when purchasing fuel for himself, but ordinarily fills up with the cheapest fuel within a reasonable distance. See id. at 141.

3

Many times both before and after filing suit, Wilson has purchased fuel for personal use from defendants. Wilson Aff. ¶ 26. Wilson and Wonderland have purchased fuel from all defendants. Id. ¶ 19.[3]

Wilson has used credit cards from Wright Express, American Express, Discovery and Advanta MasterCard to purchase motor fuel for Wonderland. He personally guaranteed those cards. "It's possible" that Wilson used one of the Wonderland credit cards for personal use and then reimbursed the company. Wilson also "sometimes" or "occasionally" purchases fuel for himself and his family with cash. Id. ¶ 24; Wilson Depo. at 142:9-12.

When Wilson purchased fuel from defendants for personal use, defendants did not adjust for temperature. Nor did they disclose the temperature of the fuel or the affect of temperature on the fuel. Wilson has purchased motor fuel from various defendants, measured the temperature of the motor fuel and recorded the temperature of the motor fuel on the receipt. He has purchased motor fuel in Kansas at above 60 degrees Fahrenheit from various defendants including, but not limited to, 7-Eleven, Shell, Sam's Club, Casey's, QuickTrip, Circle K and Valero.[4] On December 15, 2011,

---

[3]   At his deposition, Wilson could not remember who he sued, but he now recalls that he "originally sued AmPride, Inc, BP Products North America Inc., Casey's General Stores, Inc, Chevron USA, Inc., Circle K Stores, Inc., CITGO Petroleum Corporation, Coastal Mart, Inc., ConocoPhillips Company, Costco Wholesale Corporation, Exxon Mobil Corporation, Flying J, Inc, MFA Oil Company, Petro Stopping Centers, LP, Pilot Travel Centers, LLC, Presto Convenience Stores, LLC, 7-Eleven, Inc., Equilon Enterprises, LLC, Sinclair Oil Corporation, Valero Marketing and Supply Company, Sam's West, Inc., BP West Coast Products, LLC, Kroger Co., Kum & Go, LC, and QuikTrip Corporation." Wilson Depo. at 51:21-52:16; Wilson Aff. ¶ 18. Several of these defendants are no longer in the case.

[4]   Wilson attached to his affidavit receipts from Circle K/Phillips 66, 7-Eleven, Shell, Sam's Club, Casey's General Store, QuikTrip and Valero, all from either August 26, 2010 or July 19, 2011. Each receipt indicates the temperature of the motor fuel purchased, which exceeded 60 degrees Fahrenheit. Wilson does not state whether he purchased this fuel on behalf of Wonderland
(continued...)

4

Wilson signed an affidavit which states that he "intend[s] to purchase fuel for personal use from all named Defendants many times this year."[5]

## Analysis

Defendants argue that Wilson lacks standing because he has no evidence that he purchased motor fuel from defendants for personal use, and therefore cannot show injury or causation – two essential elements of standing.  Wilson argues that he can show injury because a reasonable jury could find that (1) he purchased motor fuel from defendants for personal use and (2) he faces a real and immediate threat of future harm.

To maintain suit in federal court, a party asserting a claim for relief must have standing to sue.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Standing is derived from the case or controversy requirement of Article III of the U.S. Constitution.  It is meant to ensure that the plaintiff is "the proper party to bring this suit," Raines v. Byrd, 521 U.S. 811, 819 (1997), i.e. "is entitled to have the court decide the merits of the dispute," Allen v. Wright, 468 U.S. 737, 750-51 (1984). To have standing, Wilson must show that at the time he filed this action (1) he had suffered or was under threat of suffering an injury in fact, (2) the injury in fact was fairly traceable to

---

[4](...continued)
or for personal use.  Moreover, he made these purchases after filing this suit.

[5]    In response to defendants' motion for summary judgment, Wilson states that he "intends to purchase fuel for personal use from all named Defendants many times this year and in the coming years."  Plaintiffs' Statement Of Facts ¶ 29, Plaintiffs' Response In Opposition To Defendants' Motion For Summary Judgment On The Grounds That Plaintiffs Lack Standing (Doc. #3117) filed December 16, 2011 (citing Wilson Aff. ¶ 31) (emphasis added).  Wilson cites paragraph 31 of his affidavit as support for this statement.  His affidavit, however, states only that "I intend to purchase fuel for my personal use from all named Defendants many times this year."  Wilson Aff. ¶ 31 (emphasis added).  At the summary judgment stage, the elements of standing must be set forth by affidavit or other evidence.  Tandy v. City of Wichita, 380 F.3d 1277, 1288 (10th Cir. 2004).  Unsupported statements in summary judgment briefs do not suffice.  See Fed. R. Civ. P. 56(c)(1).

5

defendants' unlawful conduct and (3) the injury in fact will likely be redressed by a favorable decision. Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2753 (2010); Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1210-11 (10th Cir. 2006); Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005).

Depending on whether a plaintiff seeks prospective or retrospective relief, the injury in fact requirement is different. See Tandy v. City of Wichita, 380 F.3d 1277, 1283-84 (10th Cir. 2004) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983)). For retrospective relief, e.g. damages, Wilson must show that he suffered a concrete and particularized injury. Id. (citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-11 (1995)). For prospective relief, e.g. injunctive relief, Wilson must show that at the time he filed suit he was suffering a continuing injury or was under a real and immediate threat of being injured in the future. Id. The "threat must be actual and imminent, not conjectural or hypothetical." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of federal jurisdiction. Tandy, 380 F.3d at 1283-84 (citing Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)). Past wrongs are evidence that bears on whether a threat of repeated injury exists. Id. at 1283-84 (citing Lyons, 461 U.S. at 102). Of course any injury must be traceable to each defendant's conduct. Commonwealth Property Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., Nos. 10-4182, 10-413, 10-4215, 2011 WL 6739431, at *4 (10th Cir. Dec. 23, 2011).

The elements of constitutional standing are not mere pleading requirements, but are an indispensable part of Wilson's case. Utah v. Babbitt, 137 F.3d 1193, 1204 (10th Cir. 1998) (citing Defenders of Wildlife, 504 U.S. at 561).[6] So he must support each element of standing in the same

---

[6] In this "era of frequent litigation, class actions, sweeping injunctions with prospective
(continued...)

6

way as any other matter on which he bears the burden of proof.  See Defenders of Wildlife, 504 U.S. at 561.  At this stage, he must set forth by affidavit or other evidence specific facts that, if taken as true, establish each element of standing.  Nova Health Sys., 416 F.3d at 1154.

**I.     Claims For Retrospective Relief – Actual Injury Based On Past Motor Fuel Purchases**

Defendants argue that for Wilson to have standing under his theory of the case – that due to the lack of certain disclosures (including the temperature of fuel) he did not "receive fair value for [his] dollar" because he might have been able to get a better deal elsewhere – Wilson must show who he purchased fuel from, when he purchased it and how much he paid.  Defendants' Reply To Plaintiffs' Response In Opposition To Defendants' Motion For Summary Judgment On The Grounds That Plaintiffs Lack Standing (Doc. #3183) filed January 9, 2012 at 16 ("Defendants' Reply") (quoting Pretrial Order (Doc. #2558) filed November 1, 2011 at 12).  Otherwise, they argue, it is impossible to determine whether Wilson was injured, i.e. whether he received fair value for his dollar, and impossible to trace the injury back to a particular defendant.

Defendants do not take issue with Wilson's theory of injury and they describe it roughly accurately, though it is more clearly described in the Amended Pretrial Order (Doc. #3809) filed March 20, 2012 – after briefing on defendants' motion had closed.  At least in part, plaintiffs (including Wilson) contend that the temperature of motor fuel affects the amount of energy in a gallon of motor fuel, that defendants sell motor fuel without disclosing the temperature of, or the affect of temperature on, the fuel and therefore consumers have no way of making informed decisions about where to buy their fuel.  Contrary to defendants' contention, under this theory every

---

[6](...continued)
effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so."  Ariz. Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1449 (2011).

retail motor fuel transaction causes an injury – no matter when it takes place and regardless of the temperature of the fuel or the price per gallon. Because defendants admit that they sell fuel without disclosing or adjusting for temperature, and without disclosing the affect of temperature, the only question is whether Wilson purchased motor fuel from each defendant for personal use before filing suit.[7]

Wilson's affidavit states that: "I have purchased fuel for my personal use many times from the Defendants both before and since the filing of this lawsuit," Wilson Aff. ¶ 26, and "Wonderland and I had purchased fuel from all the Defendants Wonderland and I had sued," Wilson Aff. ¶ 19. At his deposition, Wilson could not remember who he sued, but he now recalls that he originally sued the 24 defendants listed above. Wilson Depo. at 51:21-52:16; Wilson Aff. ¶ 18.

If Wilson were suing defendants for all of his personal motor fuel purchases, these statements would likely create a genuine issue of material fact whether he purchased fuel for personal use from each defendant. But he is not. Wilson seeks damages for only (1) personal fuel purchases which he made with (a) cash or (b) Wonderland credit cards for which he reimbursed Wonderland, and (2) Wonderland fuel purchases with company credit cards which he personally guaranteed. Wilson Aff. ¶ 25. He does not seek damages for purchases made with personal debit cards. Wilson Depo. at 81-82. Thus he must show not only that he purchased fuel from each defendant for personal use, but that he purchased fuel from each defendant for personal use in one of the three ways listed above – excluding his debit card purchases.

Wilson's affidavit states that he purchased fuel for personal use from all defendants. He has

---

[7] Defendants argue that Wilson must also show that he purchased fuel from particular defendants within the statute of limitations period. The statute of limitations is an affirmative defense, however, and not a limitation on a plaintiff's standing to sue under Article III.

not, however, produced evidence that he purchased fuel for personal use from each (or any) defendant with cash or Wonderland credit cards.

Wilson "sometimes" or "occasionally" purchased fuel for himself and his family with cash, but he does not identify any defendant from which he bought fuel with cash. See id. at 84:4-13, 142:9-12; Wilson Aff. ¶ 24. "It's possible" that Wilson used a corporate credit card to purchase motor fuel for personal use and then reimbursed the company, but as a "matter of practice" he does not purchase motor fuel for personal use with any of the credit cards listed on the receipts which he produced during discovery. Wilson Depo. at 84:4-13. Wilson provides no evidence regarding defendants from which he possibly purchased fuel from in this manner. And although Wilson personally guaranteed the credit cards on which Wonderland purchased fuel from defendants, the record does not indicate that Wilson suffered any concrete and particularized injury because of his status as guarantor. That is, the record does not show that Wilson ever had to personally pay for Wonderland's fuel purchases on these credit cards.[8]

---

[8] The parties address Wilson's standing as guarantor of Wonderland credit cards in terms of KCPA standing, i.e. whether Wilson as guarantor of corporate obligations meets the definition of "consumer" under the KCPA, as opposed to Article III standing, i.e. whether Wilson as guarantor has suffered or is threatened with suffering a concrete and particularized injury. Even if Wilson had Article III standing to sue as a guarantor of Wonderland credit cards, however, he would not have standing under the KCPA.

To have standing to sue under the KCPA, Wilson must be a consumer, that is "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes." Kan. Stat. Ann. § 50-623. A corporation is not a consumer under the KCPA. Kastrel Holdings I, L.L.C. v. Learjet Inc., 316 F. Supp.2d 1071, 1076-77 (D. Kan. 2004). Motor fuel purchases on Wonderland credit cards reflect transactions between Wonderland and defendants. Wilson in his individual capacity was not a party to any transaction between Wonderland and defendants. Any KCPA claim for Wonderland purchases therefore belongs to Wonderland, which cannot sue under the KCPA because it is not a consumer. See id.; First Nat'l Bank of Anthony v. Dunning, 18 Kan. App.2d 518, 524, 855 P.2d 493, 498 (1993) (KCPA applies only to parties to contract; allowing surety to sue under KCPA would improperly extend Act to third parties that did not benefit from contract). Thus, under both

(continued...)

Wilson seems to recognize the paucity of his evidence because he argues that he should get a chance to present additional evidence regarding his personal purchases at trial. If Wilson had such evidence, however, he should have produced it in response to defendants' motion. At the summary judgment stage, Wilson must "set forth by affidavit or other evidence <u>specific facts</u> that, if taken as true, establish" a real and immediate, concrete and particularized injury in fact that is traceable to a particular defendant and redressable by court order. <u>Nova Health Sys.</u>, 416 F.3d at 1154 (emphasis added). Even construing the facts in the light most favorable to Wilson, and drawing every reasonable inference in his favor, a reasonable jury could not determine that he purchased fuel from any or all defendants with cash or by reimbursing Wonderland for personal purchases on corporate credit cards, or that he suffered injury in fact by acting as personal guarantor on Wonderland credit cards. For the reasons stated above, Wilson has not met his burden to show a genuine issue of material fact that he has standing to sue for past motor fuel purchases. The Court therefore sustains defendants' motion with respect to those claims.

## II.     Claims For Prospective Relief – Real And Immediate Threat Of Being Injured In The Future

Defendants seek summary judgment on Wilson's claims for prospective relief because his vague assertion that he intends to purchase fuel from defendants in the future is insufficient to show "actual and imminent," as opposed to "conjectural and hypothetical," future injury. <u>Defendants' Reply</u> (Doc. #3183) at 15; <u>see</u> <u>Summers</u>, 555 U.S. at 493. They argue that because Wilson "does not identify which Defendants or locations he plans to visit, when he intends to do so, or any other details regarding his intended purchases," he lacks standing to sue for injunctive relief. <u>Defendants'</u>

---

[8](...continued)
Article III and the KCPA, Wilson lacks standing to sue as guarantor of the corporate credit cards.

Reply (Doc. #3183) at 15. To raise a genuine issue of material fact whether he will suffer actual and imminent harm under his theory, however, Wilson need only show that he has a concrete, present plan to purchase motor fuel from each defendant during a specified future time. See Tandy, 380 F.3d at 1284-85.

Wilson relies exclusively on Tandy to argue that he has standing to sue for injunctive relief. In Tandy, plaintiffs with disabilities alleged that Wichita Transit's fixed-route bus system was intentionally inaccessible to and unusable by people with disabilities in violation of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act., 42 U.S.C. § 12141 et seq. 380 F.3d at 1280. Each plaintiff sought injunctive and declaratory relief, compensatory and punitive damages, costs and attorneys' fees. Id. Allen, one of the plaintiffs, "used the fixed-route bus service in Wichita for many years and . . . averred an intent to use Wichita Transit's bus system for personal transportation several times per year in the future." Id. at 1284. The Tenth Circuit noted that "[i]n the past, her travels were delayed because of a lift malfunction," and that "a frequent Wichita Transit fixed-route bus rider experienced lift malfunctions twenty to thirty percent of the time." Id. The Tenth Circuit held that Allen had established "a realistic threat of experiencing a lift malfunction during at least twenty percent of her several yearly attempts to use Wichita Transit's buses," which sufficed to establish an injury in fact. Id.

The Tenth Circuit emphasized that Allen's averred intent to use Wichita Transit buses several times per year was not a mere "someday intention" because it suggested "a concrete, present plan" to use the bus system "several times each year, including the year in which she made [the] statement." Id. (emphasis in original). The Tenth Circuit contrasted these facts against the facts of Defenders of Wildlife in which the U.S. Supreme Court held that "a desire to someday visit places

11

halfway around the world" did not show injury in fact. Id. (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 184 (2000); Defenders of Wildlife, 504 U.S. at 564) (emphasis in original).

Tandy does not hold that a stated intent to undertake a particular action within a general time frame is always enough to show a concrete and imminent injury. See Tandy, 380 F.3d at 1284-85; S. Utah Wilderness Alliance v. Sierra, No. 07-cv-00199, 2010 WL 4782976, at *5 (D. Utah Nov. 16, 2010); see also Defenders of Wildlife, 504 U.S. at 564. Because Allen specifically intended to ride Wichita buses with particular frequency and had established a pattern of riding the buses, Tandy is distinct from earlier Supreme Court cases which held that plaintiffs lacked standing because they "want[ed] to," Summers, 555 U.S. at 496, or "some day" intended to, Defenders of Wildlife, 504 U.S. at 564, visit a particular site. See Tandy, 380 F.3d at 1285; S. Utah Wilderness Alliance v. Sierra, 2010 WL 4782976, at *5.

Wilson's affidavit is similar to Allen's in Tandy in two respects. First, Allen's affidavit in Tandy stated that she had used the Wichita bus system for many years. 380 F.3d at 1284. Wilson's affidavit states that he purchased fuel for his personal use many times from defendants both before and after filing suit, and that he purchased fuel from all defendants. Wilson Depo. at 84:4-13, 142:9-12; Wilson Aff. ¶ 24.[9] Second, Allen's affidavit stated that she intended to use Wichita Transit buses "several times per year." Tandy, 380 F.3d at 1284. Wilson's affidavit states: "I intend to purchase fuel for my personal use from all named Defendants many times this year." Wilson Aff.

---

[9] Although these statements are not enough to show that Wilson has standing to bring claims for damages – because he limited his claims for damages to an unidentifiable subset of his purchases of fuel for personal use – his claims for injunctive relief are not so limited. His statements regarding past purchases may therefore provide a basis for showing an immediate threat of concrete injury. See Tandy, 380 F.3d at 1289 (past exposure to wrongful conduct bears on whether real and immediate threat of repeated injury exists) (citing Lyons, 461 U.S. at 102).

¶ 31.[10]  Thus, as in Tandy, Wilson's evidence is enough to raise his claim to relief above the speculative level.  See Tandy, 380 F.3d at 1284; see also Chamber of Commerce of U.S. v. Edmondson, 594 F.3d 742, 756 (10th Cir. 2010) (where noncompliance with Oklahoma law would bar plaintiffs from entering contracts with Oklahoma public employers, plaintiffs' "hope to enter into such contracts in the future" sufficient for standing to enjoin Oklahoma Taxpayer and Citizen Protection Act); Betancourt v. Hooters of Tulsa, Inc., No. 09-CV-357-FHM, 2009 WL 3260597, at *2 (N.D. Okla. Oct. 8, 2009) (plaintiff's assertion, supported by affidavit, that she planned on returning to Tulsa and wanted to eat at defendant's restaurant sufficient for standing to address prospective harm).

Defendants argue that Wilson must describe in detail "which of Defendants' stations he plans to visit, under what circumstances he might visit a particular Defendant's branded-station, or how the price or other factors might influence his actions."  Defendants' Reply (Doc. #3183) at 21-22.  Wilson's theory of the case and Article III, however, do not require such details.  See supra pp. 7-8 (discussing plaintiffs' theory of case); Defenders of Wildlife, 504 U.S. at 564 n.2 (Article III standing does not "'demand . . . detailed descriptions' of damages, such as a 'nightly schedule of attempted activities' from plaintiffs alleging loss of consortium" (quoting dissent)).  Wilson's affidavit states that he purchased fuel from defendants after filing suit and intends to purchase fuel from all defendants.  When he does, under his theory, Wilson will be injured.  Moreover, buying fuel, like riding the bus, is an everyday activity.  It is therefore "not a difficult leap to believe the mere expression of intent" to purchase fuel from each defendant many times this year was concrete

---

[10]  Defendants do not question Wilson's intent or address the fact that Wilson's affidavit was dated nearly four years after he filed suit.  Rather they simply state that his statement of intent is insufficient to show imminent concrete injury.

13

and any injury, likewise, imminent. See <u>S. Utah Wilderness Alliance</u>, 2010 WL 4782976, at *5.

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion For Summary Judgment On The Grounds That Plaintiffs Lack Standing</u> (Doc. #2732) filed November 1, 2011 be and hereby is **SUSTAINED in part**. The motion is sustained with respect to Wilson's claims for damages. It is overruled with respect to Wilson's claims for injunctive relief.

Dated this 14th day of May, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil<br>
KATHRYN H. VRATIL<br>
United States District Judge