# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| **This Document Relates To:** | ) | **Case No. 07-1840-KHV** |
| | ) | |
| **Wilson, et al. v. Ampride, Inc., et al.,** | ) | |
| **Case No. 06-2582-KHV,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **American Fiber & Cabling, LLC, et al. v. BP Products** | ) | |
| **North America Inc., et al.,** | ) | |
| **Case No. 07-2053-KHV.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Omnibus Motion In Limine (Doc. #4255)
filed April 25, 2012.[1]  The motion includes 17 separate requests to exclude different types of
evidence.  For the most part, defendants' requests for exclusion are insufficiently specific to merit
a ruling in limine.  For this reason, and because a court is almost always better situated during trial
to assess the value and utility of evidence, the Court defers to trial many of the issues which
defendants raise.  See Koch v. Koch Indus., Inc., 2 F. Supp.2d 1385, 1388 (D. Kan. 1998).  The
Court rules as follows.

**I.     Sale Of Motor Fuel Outside Kansas (Omnibus § II.A.)**

Defendants move to exclude evidence and argument related to the sale of fuel at retail

---

[1]     On May 29, 2012, defendants filed a  motion for leave to file replies to their motions
in limine.  Motion For Leave To File Reply Briefs In Support Of Motions In Limine (Doc. #4317).
The pretrial order states that "[r]eply briefs in support of motions in limine shall not be allowed
without leave of court."  Amended Pretrial Order (Doc. #3809) filed March 20, 2012 at 50.
Defendants' reply in support of their omnibus motion, which they attached to their motion for leave
to file, essentially rehashes the arguments made in their motion.  The Court therefore denies leave
to file the reply.

outside Kansas.  Under Federal Rules of Evidence 401 and 402 they argue that such evidence is irrelevant.  Under Rule 403, they argue that the danger of prejudice substantially outweighs any probative value.

Plaintiffs do not intend to offer into evidence data showing or establishing the volume, temperature or price of motor fuel sold at retail outside Kansas.  But they do intend to offer evidence relating to the manner in which defendants sell fuel in other states.  This evidence, they argue, is relevant to defendants' knowledge of the effect of temperature on motor fuel, which in turn is relevant to two elements of plaintiffs' claims under the Kansas Consumer Protection Act ("KCPA"): (1) whether temperature is material to motor fuel transactions and (2) whether defendants acted willfully.  See K.S.A. § 50-626; Amended Pretrial Order (Doc. #3809) filed January 19, 2012 at 16.

To the extent that the manner in which a defendant sold fuel in another state is relevant to that defendant's knowledge or intent, it is relevant to plaintiffs' KCPA claims.  Because the Court does not have before it all of the evidence which plaintiffs may attempt to offer on these issues, it reserves judgment with respect to whether any particular piece of evidence is admissible.  The Court will make evidence-specific rulings as needed at trial.  The Court therefore sustains Omnibus § II.A. with respect to data regarding out-of-state sales, but overrules the motion with respect to the manner in which defendants sell fuel in other states.

## II.     Evidence Related To Non-Defendants (Omnibus § II.B.)

Defendants move to exclude testimony and evidence relating to the conduct, actions, activities, records or data of non-defendants, including defendants who have settled and therefore will not participate in trial.  They argue that this evidence is irrelevant under Federal Rules of Evidence 401 and 402, and otherwise inadmissible under Rule 403.

Plaintiffs do not intend to offer evidence related to non-defendants or settling defendants who will not participate in trial. The opinions of their experts, however, rely on data related to non-defendants. Plaintiffs argue that such evidence can be the basis for expert testimony even if it would not be independently admissible. Federal Rule of Evidence 703 states as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Neither party, however, has identified specific evidence which is otherwise inadmissible but which an expert will present to the jury. Without knowing which experts and what evidence are at issue, it would be premature to make a blanket determination regarding admissibility. The Court therefore overrules Omnibus § II.B.

## III.     Manner Fuel Is Sold At Wholesale (Omnibus § II.C.)

Defendants seek to exclude evidence and argument regarding the manner in which fuel is sold at wholesale. They argue that wholesale practices are (1) irrelevant, see Fed. R. Civ. P. 401, 402, (2) inadmissible "other acts" evidence, see Fed. R. Civ. P. 404(b), and (3) unduly prejudicial and confusing, see Fed. R. Civ. P. 403. Plaintiffs contend that this evidence is admissible to show that defendants knew the effect of temperature on motor fuel and that they intended to conceal this information at retail.

The fact that defendants buy fuel one way – on a temperature-adjusted basis – and sell it another – without adjusting for temperature or disclosing the effect of temperature – tends to show that temperature is a material factor in motor fuel sales, that defendants knew that temperature is

3

material and what they intended in not disclosing the temperature or adjusting the price.

Under Rule 404(b), evidence of a prior act is not admissible "to show that on a particular occasion the person acted in accordance with the character." But prior acts are admissible for other purposes, including to prove motive, intent and knowledge. Fed. R. Evid. 404(b). Rule 404(b) therefore does not exclude evidence of the sale of fuel at wholesale to prove that defendants knew the effect of temperature on motor fuel and their intent in not disclosing that information. Defendants argue that this evidence is nevertheless inadmissible because the sale of fuel at wholesale is not substantially similar to the sale of fuel at retail. For example, different regulations apply to wholesale motor fuel sales, wholesale transactions involve larger volumes of fuel across different markets and Kansas has a lot more retail stations than wholesale terminals. Notwithstanding these differences, the sale of fuel at wholesale is substantially similar to the sale of fuel at retail in that both transactions involve the same commodity – fuel – and similar interests by the buying and selling parties. The differences defendants point out therefore go to the weight of the evidence, not its admissibility.

Defendants describe evidence regarding the sale of motor fuel at wholesale as "complex and collateral," and claim that it will "create jury confusion and distract the jurors from their charge." Defendants' Omnibus Motion In Limine (Doc. #4255) at 8. To exclude evidence under Rule 403, among other things, defendants must show that the danger of unfair prejudice, confusing the issues or misleading the jury substantially outweighs any probative value of the evidence in question. The Court overrules Omnibus § II.C.

**IV.    Handbook 130 Provisions Unrelated To Retail Sale Of Motor Fuel (Omnibus § II.D.)**

Defendants move to exclude certain provisions of Handbook 130. Handbook 130 contains

uniform laws and regulations in the areas of legal metrology and engine fuel quality.  The National Conference of Weights and Measures adopts the contents of the handbook, and the National Institute of Standards and Technology publishes it.  Kansas has not adopted all of Handbook 130 and the parties agree that the provisions of Handbook 130 that are not the law in Kansas are not relevant to this case.  See Plaintiffs' Response To Defendants' Omnibus Motion In Limine (Doc. #4304) filed May 15, 2012 at 21, 22 at 10 ("Plaintiffs' Response") (if Court does not exclude handbooks altogether, it should limit admissibility to only those portions adopted by Kansas law); Defendants' Response To Plaintiffs' Motion In Limine (Doc. #4294) filed May 14, 2012 at 25 (defendants only intend to offer evidence of handbook provisions that apply in Kansas).  Defendants move to exclude all Handbook 130 provisions that Kansas has adopted, but which are unrelated to the sale of motor fuel.  They argue that the provisions are irrelevant under Federal Rules of Evidence 401 and 402, and unfairly prejudicial under Rule 403.

Defendants specifically argue that plaintiffs' experts' testimony regarding temperature-related sales of other retail commodities under Handbook 130, such as packaged goods or vehicle tank meters, should be excluded.  These provisions, defendants argue, are not substantially similar to fuel transactions made through liquid measuring devices and plaintiffs have laid no foundation as to why such a comparison would be relevant.  In response, plaintiffs ask the Court to either exclude Handbook 130 entirely or to admit all portions of Handbook 130 that Kansas has adopted – including the Uniform Packaging and Labeling Regulation ("UPLR").  In support of the latter, plaintiffs contend that their experts should be allowed to testify regarding provisions of the UPLR that relate to temperature regulation of all sorts of packaged liquids sold by liquid measure, including milk, frozen orange juice, soda, beer, liquor, motor fuel, etc.  Plaintiffs argue that these

5

provisions of Handbook 130 show the materiality and importance of temperature in making a price and quantity comparison of a liquid.

Neither party directs the Court to particular expert opinions or provisions of Handbook 130. Defendants reference two of plaintiffs' experts, Richard Suiter and Constantine Cotsoradis, but have not attached their reports or pinpointed the portions of the opinions which they would like to exclude.  And it is unclear whether defendants want to prevent plaintiffs' experts from opining regarding the legal effect of Handbook 130, or whether they object to the experts referencing the fact that motor fuel is just one of many liquids that Kansas law regulates in terms of temperature. Without specifics regarding what exactly the parties want to exclude, and why, the Court overrules Omnibus § II.D.

**V.      Payment Or Collection Of Federal Or State Motor Fuel Taxes (Omnibus § II.E.)**

According to plaintiffs, defendants pay federal and state motor fuel excise taxes based on the number of temperature-adjusted gallons they buy at wholesale.  But they pass the taxes on to consumers based on the number of non-temperature-adjusted gallons consumers purchase at retail. Defendants seek to exclude evidence and argument regarding this practice because it is irrelevant, see Fed. R. Civ. P. 401, 402, and its probative value would be substantially outweighed by the danger of unfair prejudice to defendants and jury confusion, see Fed. R. Civ. P. 403.  They also argue that the Court has already excluded this issue from the case and should preempt any attempt to sneak it back in.  See Order (Doc. #2202) filed October 28, 2011 (denying plaintiffs leave to amend Kansas complaints to include tax claims).

Plaintiffs do not intend to offer evidence of the amount of fuel taxes which each defendant paid and collected.  To this extent, the Court sustains Omnibus § II.E.

Plaintiffs argue that such evidence may become relevant if defendants open the door. Specifically, plaintiffs anticipate that defendants may attempt to discredit the opinions of plaintiffs' expert Robert Reynolds because he thought that temperature adjustment and disclosure were not important while he worked in the motor fuel retail industry. If defendants do so, plaintiffs argue that they should be allowed to offer evidence that industry practices have changed, i.e. that motor fuel taxes used to be collected and paid at retail, but now they are based on temperature-adjusted gallons at wholesale. Because plaintiffs intend to use this evidence only if defendants open the door at trial, it would be premature for the Court to rule at this time. The Court sustains Omnibus § II.E. in part.

**VI.     Fuel Dispenser Decals Related To Temperature (Omnibus § II.F.)**

Defendants seek to exclude evidence and argument that some former and settling defendants have placed decals on fuel dispensers which state that the pumps dispense fuel by volume, measured in gallons, and that the pumps do not adjust for variations in fuel temperature. They argue that such decals are subsequent remedial measures under Federal Rule of Evidence 407 and that their probative value is substantially outweighed by the danger of prejudice and jury confusion, see Fed. R. Evid. 403.

Rule 407 provides as follows:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

Plaintiffs argue that Rule 407 does not exclude the decals because it does not apply to

subsequent remedial measures taken by non-parties and because they anticipate that defendants will dispute whether it is legal or feasible to post decals. Rule 407 does not apply to subsequent remedial measures taken by non-parties. Gray v. Hoffman-La Roche, Inc., 82 Fed. Appx. 639, 646 (10th Cir. 2003). Under Rule 403, however, such evidence may be excluded if it unduly prejudices the opposing party and would undermine the purpose of Rule 407 – avoiding the impermissible inferences listed in the Rule (e.g., the need for a warning or instruction). See id.

Plaintiffs do not intend to offer evidence of the decals unless defendants dispute the legality or feasibility of remedial measures. Defendants do not contest that decals are feasible. It is therefore unclear whether, or under what circumstances, plaintiffs may offer the decal evidence at trial. On this record, the Court overrules Omnibus § II.F. as moot.

## VII.    Plaintiffs' Rebuttal Expert James Melvin (Omnibus § II.G.)

Defendants seek to exclude testimony by plaintiffs' rebuttal expert James Melvin, an expert in retail point-of-sale software systems, because his opinions do not rebut any of defendants' experts' opinions. Plaintiffs contend that Melvin will rebut the testimony of defendants' expert Steven Malone regarding the feasibility of implementing pumps with automatic temperature compensation ("ATC") at retail through a point-of-sale system.

According to plaintiffs, Malone has opined that no existing equipment adjusts the volume or price of motor fuel at retail, and that the cost of developing such technology would outweigh any benefits associated with it. Melvin opines that ATC equipment exists and that it is easy and inexpensive to design a point-of-sale system that adjusts the price of fuel based on changes in temperature. Thus Melvin's testimony is proper rebuttal, in that it contradicts Malone's testimony regarding the feasibility and cost of implementing ATC through a point-of-sale system. See Fed.

8

R. Civ. P. 26(a)(2)(D)(ii).

It is unclear, however, how or when plaintiffs plan to use Melvin. They argue that "obvious case law" allows them to call a rebuttal witness in their case-in-chief. But the only case they cite on this point affirmed that a district court did not abuse its discretion in excluding rebuttal evidence that was available to plaintiff during her case in chief. See Pandit v. Am. Honda Motor Co., 82 F.3d 376, 382-83 (10th Cir. 1996). That case reiterated that a "district court possesses considerable discretion in governing the presentation of evidence, and its decisions will not be disturbed absent manifest injustice to the parties." Id. (quoting Comcoa v. NEC Tel., 931 F.2d 655, 663 (10th Cir. 1991)) (internal quotation marks omitted).

Although plaintiffs argue that they should be able to use Melvin's testimony in their case in chief, they also state that they should be allowed to use Melvin's testimony only to the extent defendants introduce evidence regarding the costs, benefits, legality or illegality of potential remedies. Plaintiffs' Response (Doc. #4304) at 21, 22. Because it is unclear when plaintiffs will offer Melvin's testimony, and because the Court can easily sort out this issue at trial, the Court overrules Omnibus § II.G.

## VIII.   Plaintiffs' Fuel Purchase Receipts (Omnibus § II.H.)

Under Federal Rules of Evidence 401, 402 and 403, defendants move to exclude receipts that plaintiffs produced after the deadline for supplemental disclosures. They argue that plaintiffs disclosed the receipts too late, that the receipts are irrelevant and that they would unduly prejudice defendants.[2]

---

[2]        Although defendants bring this motion under Federal Rules of Evidence 401, 402 and 403, they seem to conflate the standards set forth in these rules with the standards for striking evidence for failure to disclose under Federal Rule of Civil Procedure 37. Defendants do not

(continued...)

Defendants specifically target three sets of receipts: (1) a receipt which Matthew Cook produced on September 20, 2011 for a fuel purchase at QuickTrip on October 21, 2010; (2) receipts which Zachary Wilson produced on September 20, 2011 for fuel purchases from various defendants in 2010 and 2011; and (3) receipts which Cook produced on April 11, 2012 for fuel purchases from various defendants in 2010 and 2011. Most of these receipts contain handwritten temperatures. They reflect instances where plaintiffs took the temperature of the fuel which they purchased. On October 25, 2011, plaintiffs supplemented their response to defendants' interrogatory which asked plaintiffs to admit that they did not know the temperatures of the fuel which they had purchased. The supplemental response stated that some plaintiffs had taken the temperatures of the motor fuel which they purchased.

The parties dispute whether the receipts are relevant to show that defendants have engaged in deceptive or unconscionable practices in violation of the KCPA. Defendants stress that, if plaintiffs took the temperature of the fuel when they bought it, they cannot claim that they were deceived as to the temperature of fuel which they purchased. They also argue that the receipts are irrelevant because plaintiffs produced them too late. Plaintiffs broadly argue that defendants' alleged deceptive and unconscionable practices are a continuing harm and that every fuel purchase creates a separate actionable KCPA violation. With respect to the specific receipts, plaintiffs argue more narrowly that the receipts show that the fuel which defendants sell varies in temperature.

Defendants argue that the Court should exclude the receipts under Rule 403 to prevent undue

---

[2](...continued)

mention Rule 37 in their argument. They cite a case in which a court excluded evidence under Rule 37 – Water Pik, Inc. v Med-Sys., Inc., No. 10-cv-01221-PAB-CBS, 2012 WL 27596, at *4-5 (D. Colo. Jan. 5, 2012) – but they cite it to support their argument that the Court should exclude the receipts under Rule 403, Fed. R. Evid. If defendants wanted to make an argument under Rule 37, Fed. R. Civ. P., they should have expressly done so.

prejudice.  They contend that any probative value the receipts might have would be far outweighed by the prejudice to defendants because defendants have not had a chance to conduct discovery on even the most basic aspects of the receipts, including who took the temperature, how they took it and when they took it.  While this may be the basis for a motion under Federal Rule of Civil Procedure 37(c), defendants have not sufficiently explained why the late disclosure would unduly prejudice them under Federal Rule of Evidence 403.  The Court therefore overrules Omnibus § II.H. based on the narrow issue that the receipts are relevant to show the temperature of motor fuel defendants sell at retail.

**IX.     NIST Survey And House Staff Report (Omnibus § II.I.)**

      **A.     NIST Survey**

Defendants seek to exclude a survey by the National Institute of Standards and Technology ("NIST"), which summarizes responses to questions which NIST sent to all 50 states regarding state law.  Among other things, the survey asked state regulators whether temperature compensation was permitted on retail motor fuel dispensers.

Defendants argue that to the extent the survey references conduct allowed by laws of states other than Kansas, it is inadmissible.  Plaintiffs have agreed to redact the survey to exclude all information not related to Kansas.

Defendants also argue that the survey is inadmissible because it is double hearsay and consists entirely of legal conclusions.  Hearsay is an out-of-court statement offered for the truth of the matter asserted.  See Fed. R. Evid. 801.  It is generally inadmissible unless a specific exception provides otherwise.  Fed. R. Evid. 802.  Plaintiffs agree that the survey is hearsay, but they do not argue that they intend to use it to prove the truth of the matter asserted.  Rather, they intend to use

the survey to impeach the testimony of defendants' expert, Tim Tyson, Director of Weights and Measures in Kansas. See Foster v. Ward, 182 F.3d 1177, 1188 (10th Cir. 1999) (evidence presented to impeach witness rather than establish truth of matter asserted not hearsay). Whether the survey is admissible to impeach Tyson's testimony will depend on his testimony at trial. The Court therefore overrules this portion of Omnibus § II.I.

### B.   House Staff Report

Defendants move to exclude a staff report by the majority staff of the Domestic Policy Subcommittee of the Oversight and Government Reform Committee chaired by Representative Dennis Kucinich. The report is titled "American Consumers will pay a Hot Fuel Premium of 1.5 Billion Dollars on Regular Gasoline Purchased during the Summer 2007." Defendants contend that the report is inadmissible double hearsay and inherently untrustworthy given the obviously political nature of Congress. Plaintiffs agree. They concede that defendants' "points are well-taken; reports from political bodies are inherently susceptible to improper influence and can lack indicia of reliability." Plaintiffs' Response (Doc. #4304) at 28. The Court therefore sustains Omnibus § II.I. with respect to the House staff report.

Plaintiffs contend that if the Court excludes the staff report it should also exclude the California Energy Commission ("CEC") report titled "Fuel Delivery Temperature Study." They argue that the CEC report is also the work of a political body and that evidence suggests improper influence and questionable dealings related to the report. The Court agrees that if the CEC report is similar to the House staff report, then they should be treated similarly. Because plaintiffs' request to exclude the CEC report is not properly before the Court in this motion, the Court declines to rule on the CEC report at this time.

12

**X.    Reference To "Standard Gallon" (Omnibus § II.J.)**

Under Federal Rule of Evidence 403, defendants seek to prohibit plaintiffs from using the term "standard gallon."  Plaintiffs define the term as 231 cubic inches of motor fuel at 60 degrees Fahrenheit.  They derive it from a technical definition of "standard" in Appendix B of Handbook 44, which provides the origin and development of units and systems of measurement.

Appendix B defines a "standard" as "a physical realization or representation of a unit." Handbook 44 (2010), App. B at B-1.  A standard, "[i]n general, is not entirely independent of physical conditions, and it is a representation of the unit only under specified conditions. For example, a meter has a standard length of one meter when at some definite temperature and supported in a certain manner."  Id.  Thus plaintiffs argue that a "standard gallon" is "commonly defined as 231 cubic inches at 60 degrees Fahrenheit, and was not created as some 'self-serving' term of art" for this litigation.  Plaintiffs' Response (Doc. #4304) at 29.  Defendants argue that allowing plaintiffs to use the term "standard" in this technical sense could mislead the jury to think that selling temperature-adjusted fuel is a "standard" practice.

Defendants cite several cases which have excluded the use of certain terms at trial under Rule 403 because they would prejudice one of the parties or mislead the jury.[3]  These cases

---

[3]    Littleton v. McNeely, 562 F.3d 880, 889 (8th Cir. 2009) (excluding term "Party Cove" because only purpose of using phrase was to suggest that plaintiffs and third-party defendants engaged in immoral conduct unrelated to boat collision at issue); Highland Capital Management, L.P. v. Schneider, 551 F. Supp.2d 173, 192 (S.D.N.Y. 2008) (excluding terms such as "securities fraud" in breach of contract case because only purpose was to show defendants were bad people); United States v. Dimora, No. 1:10CR387, 2012 WL 13566, at *31 (N.D. Ohio Jan. 4, 2012) (in public corruption case, allowing terms such as "kickback," "corruption investigation" and "godfather," but excluding term "corrupt comissioner" as "gratuitously inflammatory" given alternative, less inflamatory language). But see United States v. Felton, 417 F.3d 97, 103 (1st Cir. 2005) (allowing use of "terrorist" because it summarized defendants' conduct in lay sense even though defendants not charged with terrorism).

13

considered a variety of factors in determining whether the probative value of a particular epithet outweighed the danger of undue prejudice or potential for misleading the jury. The factors include the "accuracy of the description, threat of unfair prejudice, frequency of use, and alternative means of description." Felton, 417 F.3d at 103.

Each of the cases, however, dealt with pejorative terms which the court found had little relation to the claims or charges, or were offered to improperly inflame the jury or disparage a party's character. That is not the case here. Defendants basically object to the use of the term "standard" as shorthand for "temperature-adjusted." Defendants do not seem to dispute the technical accuracy of the term. Rather they argue that a jury may confuse the technical use of the term "standard," i.e. a unit under specified conditions such as temperature, with the lay use of the term "standard," i.e. ordinary industry practice. This potential confusion could easily be avoided by a clear explanation or limiting instruction. See Therrien v. Target Corp., 617 F.3d 1242, 1256 (10th Cir. 2010).

Thus defendants have not shown that the use of the term "standard gallon" would lead the jury to make a decision on an improper basis. On this record, the probative value of the term "standard gallon" is not substantially outweighed by a danger of unfair prejudice, confusing the issues or misleading the jury. Omnibus § II.J. is overruled.

## XI.   Reference To Jurors As Victims Or Beneficiaries (Omnibus § II.K.)

Defendants seek to exclude references to the jurors as victims of defendants' conduct or as beneficiaries of the litigation. They argue that referring to jurors as victims would constitute an impermissible "Golden Rule" appeal by asking the jurors to put themselves in plaintiffs' position. See Blevins v. Cessna Aircraft Co., 728 F.2d 1576, 1581 (10th Cir. 1984). Such argument is

"universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." Id.

Golden Rule appeals are most closely scrutinized in the context of awarding damages. See Kelley v. Sears, Roebuck & Co., 882 F.2d 453, 457 (10th Cir. 1989) ("golden rule" references had no effect since court reversed and remanded damages awards on other grounds); Schultz v. Rice, 809 F.2d 643, 652 (10th Cir. 1986) (rationale for prohibiting such argument is that jury sympathy will be unfairly aroused, resulting in disproportionate award of damages). Here, however, the trial is limited to defendants' liability, and does not include damages. Moreover, objections to statements that improperly play on the jury's personal interest or bias typically arise at trial in the context of a particular statement. The Court declines to exclude an entire category of statements in advance. Rather it will rule on such objections as they arise at trial in the context of specific statements. The Court exhorts the parties not to undermine the neutrality of the jury by appealing to bias, sympathy or personal interest.

Defendants ask the Court to exclude evidence and argument regarding alleged economic benefits to Kansas motor fuel consumers based on the damages or injunctive relief which plaintiffs seek. Their argument focuses on excluding appeals to the economic interest of jurors. See Defendants' Omnibus Motion In Limine (Doc. #4255) at 23. Defendants argue that statements regarding potential economic benefits to Kansas motor fuel consumers could create an implied bias. That is, a situation where a "juror, although she believes that she can be impartial, is so closely connected to the circumstances at issue in the trial that bias is presumed." United States v. Powell, 226 F.3d 1181, 1188 (10th Cir. 2000); Skaggs v. Otis Elevator Co., 164 F.3d 511, 517 (10th Cir. 1998).

15

The "implied bias doctrine is not to be lightly invoked, but must be reserved for those extreme and exceptional circumstances that leave serious question whether the trial court subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice." Id.; see also Seyler v. Burlington N. Santa Fe Corp., 121 F. Supp.2d 1352, 1362 (D. Kan. 2000). Examples of such extraordinary situations include prospective jurors who own stock in, or are employees of, a corporation that is a party to the suit, Seyler, 121 F. Supp.2d at 1362, or a juror who is a close relative of one of the participants in the trial or a witness to the transaction at issue, Skaggs, 164 F.3d at 517.

The Court agrees that neither party should attempt to undermine the neutrality of the jury by appealing to a potential interest in the outcome of the trial. Without a concrete question regarding particular evidence or argument, or a particular juror, the Court declines to rule on defendants' abstract concern regarding potential jury bias. The Court therefore overrules Omnibus § II.K.

**XII.    References To "Oil Industry," "Big Oil" Or "High Gasoline Prices" (Omnibus § II.L.)**

Under Federal Rule of Evidence 401, defendants seek to exclude evidence and argument referring to the "oil industry," the "petroleum industry," "Big Oil," or "the like" because these terms are irrelevant to plaintiffs' claims. Defendants argue that such terms have no probative value and that plaintiffs would only use the terms to prejudice the jury. Plaintiffs agree to use the term "Big Oil" only to the extent that defendants use it. But they argue that "oil industry" and "high gasoline prices" are directly relevant to their case. For example, the oil industry's practice of using ATC at wholesale shows that temperature is material in motor fuel sales. And "high gasoline prices" are relevant because as the price of gas increases so does the cost of consumers buying warmer fuel. On this record, these terms seem relevant to plaintiffs' case and the Court finds no reason to find

16

these terms would be unduly prejudicial.[4]  Noting that plaintiffs have agreed to use the term "Big Oil" only to the extent defendants do, the Court overrules Omnibus § II.L.

## XIII.   References to Defendants' Financial Condition Or Wealth (Omnibus § II.M.)

Under Federal Rule of Evidence 401, defendants move to exclude references to defendants' financial condition or wealth because it is irrelevant.  Plaintiffs counter that defendants may make their wealth an issue by arguing that the cost of injunctive relief would be too high for motor fuel retailers to bear.  Thus it seems that plaintiffs intend to offer evidence of defendants' wealth only if defendants open the door.

As a general rule, evidence of a party's financial condition is inadmissible, unless it is necessary to determine damages.  Whiteley v. OKC Corp., 719 F.2d 1051, 1055 (10th Cir. 1983) (citing Blankenship v. Rowntree, 219 F.2d 597, 598 (10th Cir. 1955)).  And even then, the damages in question must be punitive in nature.  Id. (citing Blankenship, 219 F.2d at 598; Smith v. United States Gypsum Co., 612 P.2d 251, 255 (Okla. 1980); 22 Am. Jur. 2d Damages § 322 (1965)).  A party may open the door to such evidence, however, and in that case the Court in its discretion may admit it.  See, e.g., id. at 1055.  The recognized rule in the Tenth Circuit is as follows:

> If a party interjects into a case incompetent evidence tending to establish immaterial or unrelated facts, he cannot complain on appeal that his adversary subsequently offered and was permitted to introduce the same kind of evidence even though under other circumstances the testimony elicited by the adversary party would be inadmissible.  A party, having himself opened the door to evidence which is inadmissible cannot complain that thereafter the court in the exercise of its sound judicial discretion permitted the opposite party to introduce other testimony bearing upon the field of inquiry, even though under different circumstances the testimony

---

[4]     Although defendants argue that these terms would prejudice them, they do not rely on Federal Rule of Evidence 403 – they only rely on Rule 401.  Moreover, for substantially the reasons stated in plaintiffs' response, the case law which defendants cite in support of their arguments for excluding these terms do not require exclusion.  See Plaintiffs' Response (Doc. #4304) at 36-37.

would be subject to valid objection of inadmissibility.

Id. (quoting United States v. Regents of N.M. Sch. of Mines, 185 F.2d 389, 391 (10th Cir. 1950)) (alterations omitted).

Here, the parties basically dispute whether defendants will open the door to evidence of their financial condition. That is yet to be seen. The Court overrules Omnibus § II.M.

### XIV.    Evidence Regarding Joint Defense Agreement And Representation Of Defendants By Same Counsel (Omnibus § II.N.)

Defendants seek to exclude any representations, communications or documents between defendants represented by the same counsel or parties to a joint defense agreement. They argue that such evidence is protected by the joint-defense privilege and/or the common interest privilege, and is inadmissible under Federal Rule of Evidence 403. Defendants, however, have not identified any documents from plaintiffs' exhibit lists that are representations, communications or documents between defendants that should be excluded under the joint-defense privilege.

Plaintiffs do not anticipate the need to introduce any joint defense agreement between defendants. They do expect defendants, which are jointly represented, to make inconsistent objections to plaintiffs' evidence. For example, 7-Eleven has stipulated that certain of its business records are authentic, and only objects to the exhibits based on relevance and confidentiality. Kum & Go has raised additional objections to these same documents, including that they lack foundation and have not been authenticated. Plaintiffs argue that they should be able to reference the fact that the defendants are jointly represented, and that 7-Eleven's stipulation supersedes Kum & Go's objection. Although plaintiffs cite no authority to support their argument, it appears that defendants'

joint representation could become relevant.[5]

Defendants also argue that the Court should prohibit plaintiffs from introducing evidence of defendants being represented by the same law firm.  They suggest that the only reason for doing so would be to suggest that defendants and/or their counsel conspired or otherwise engaged in improper conduct.    Defendants  do  not  cite  a  single  case  for  the  proposition  that  evidence  of  joint representation is inadmissible because it would permit an inference of impropriety.  Moreover, the fact  of  joint  representation  will  be  patently  obvious  at  trial.    Defendants' suggestion  that acknowledging  this  fact  in  court  will  interfere  with  their  right  to  choose  their  own  counsel  is unsupported and frivolous.[6]  The Court overrules Omnibus § II.N.

## XV.    Settlement Negotiations And Settlement Agreements (Omnibus § II.O.)

Under Federal Rules of Evidence 403 and 408(a), defendants seek to exclude evidence of settlement negotiations or settlement agreements between plaintiffs and other defendants.  Plaintiffs

---

[5]    The cases which defendants cite do not support their position that the mere fact that defendants have the same legal counsel is irrelevant.  See Ford Motor Co. v. Edgewood Props., Inc., 257 F.R.D. 418, 428 (D.N.J. 2009) (in discovery dispute, contents of joint defense agreement not relevant, but identity of parties to agreement relevant); Fort v. Leonard, No. 7:05-1028-HFF-WMC, 2006 WL 2708321, at *3 (denying motion to compel disclosure of joint defense agreement); Broessel v. Triad Guar. Ins. Corp., 238 F.R.D. 215, 218 (W.D. Ky. 2006) (denying motion to compel disclosure of joint defense agreements as not relevant to parties' claims or defenses).  These cases address whether joint defense agreements are discoverable, not whether plaintiffs can mention at trial that a joint defense agreement exists.

[6]    Defendants try to support this argument by citing cases which dealt with disparaging comments regarding opposing counsel.  Bufford v. Rowan Cos., 994 F.2d 155, 157-58 (5th Cir. 1993) (reversing denial of new trial based on unsupported, irresponsible attacks on opposing counsel's integrity that prejudiced case in eyes of jury); Arnold v. E. Air Lines, Inc., 681 F.2d 186, 196-201 (4th Cir. 1982) ("tasteless and irrelevant comments and allusions to and about opposing counsel" improper but not sufficient to undermine jury verdict); Draper v. Airco, Inc., 580 F.2d 91, (3d Cir. 1978) (counsel's appeal to jury sympathy by repeated reference to wealth of defendants and poverty of plaintiff improper).  That is not the case here.  Nothing suggests that plaintiffs intend to attack opposing counsel's integrity or suggest that joint representation is evidence of a conspiracy between defendants.

do not anticipate offering such settlement agreements into evidence.  Recognizing that defendants could open the door to such evidence in a number of ways, the Court overrules Omnibus § II.O.

## XVI.    Collateral Disputes, Debates Or Discovery Disagreements (Omnibus § II.P.)

Under Federal Rules of Evidence 401 and 403, defendants seek to exclude collateral disputes and debates between counsel during discovery.  They do not specify which discovery dispute or disputes they have in mind.  Plaintiffs contend that it may be necessary for them to reference a discovery dispute to explain why they did not present certain evidence, but were unable to respond any more specifically given the lack of specificity in defendants' motion.  Without more, the Court declines to exclude a whole category of evidence.  Omnibus § II.P. is overruled.

## XVII.   Plaintiff Awards And Donations (Omnibus § II.Q.)

Under Federal Rules of Evidence 403 and 404(a)(1), defendants seek to exclude evidence of awards which plaintiffs have received or contributions they have made.  Plaintiffs counter that such evidence could be relevant if plaintiffs engaged in charitable work that required them to drive their vehicles and purchase motor fuel.  They also argue that it could be relevant if defendants attack plaintiffs' motivation for bringing the lawsuit.

With respect to plaintiffs' charitable work, it is unclear how such evidence could be relevant.  Whether plaintiffs engaged in charitable work that required them to drive their vehicles and purchase motor fuel does not make it more or less likely that defendants engaged in deceptive or unconscionable practices in violation of the KCPA.  Evidence that plaintiffs used motor fuel while engaging in charitable work is therefore inadmissible.  If defendants attack plaintiffs' motivation for bringing the lawsuit, the Court will determine at that time whether evidence of plaintiffs' awards and contributions is admissible.  The Court sustains Omnibus § II.Q. in part.

**XVIII.      Summary**

In summary, the Court excludes the following evidence: data regarding motor fuel sales outside Kansas; information regarding the amount of motor fuel taxes each defendant paid and collected; the staff report by the majority staff of the Domestic Policy Subcommittee of the Oversight and Government Reform Committee titled "American Consumers will pay a Hot Fuel Premium of 1.5 Billion Dollars on Regular Gasoline Purchased during the Summer 2007"; and plaintiffs' participation in charitable work.  The Court otherwise overrules defendants' motion.

**IT IS THEREFORE ORDERED** that <u>Defendants' Omnibus Motion In Limine</u> (Doc. #4255) filed April 25, 2012, be and hereby is **SUSTAINED in part**.  The Court sustains Omnibus § II.A. in part; overrules Omnibus § II.B. through II.D.; sustains Omnibus § II.E. in part; overrules Omnibus § II.F. through II.H.; sustains Omnibus § II.I. with respect to the House staff report; overrules Omnibus § II.J. through II.P.; and sustains Omnibus § II.Q. in part.

**IT IS FURTHER ORDERED** that defendants' <u>Motion For Leave To File Reply Briefs In Support Of Motions *In Limine*</u> (Doc. #4317) filed May 29, 2012, be and hereby is **OVERRULED** with respect to defendants' omnibus motion in limine.

Dated this 28th day of June, 2012 at Kansas City, Kansas.

<u>s/  Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge