**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE: MOTOR FUEL TEMPERATURE** | ) |
| **SALES PRACTICES LITIGATION** | ) |
| | ) **MDL No: 1840** |
| **(This Document Relates to All Cases)** | ) |
| | ) **No: 07-md-1840-KHV-JPO** |

**UNOPPOSED MOTION OF PLAINTIFFS FOR ORDER CONDITIONALLY
CERTIFYING SETTLEMENT CLASSES, PRELIMINARILY APPROVING CLASS
ACTION SETTLEMENT, DIRECTING AND APPROVING DISTRIBUTION OF CLASS
NOTICE, SETTING HEARING FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTS AND APPOINTING CLASS COUNSEL**

# Exhibit 11

# STIPULATION OF CLASS ACTION
## SETTLEMENT AGREEMENT AND RELEASE

This Stipulation of Class Action Settlement, Agreement and Release ("Settlement Agreement") is entered into, by and between Valero Marketing and Supply Company ("Valero Marketing"), and the Class Representatives, on behalf of themselves and the purported Settlement Class Members, as further defined in Paragraphs 1.7 and 1.27 of this Agreement, in the proceedings entitled: *In re Motor Fuel Temperature Sales Practices Litigation,* Case No. 07-MD 1840-KHV-JPO, MDL No. 1840 (the "Action"), as further defined in Paragraph 1.1. Class Representatives and Valero Marketing are collectively referred to as the "Parties."

## RECITALS

WHEREAS, Class Representatives are plaintiffs in various federal court actions filed against Valero Marketing and Valero Energy Corporation (collectively "Valero Defendants") and other defendants alleging common law claims and violations of various state consumer protection statutes, based on the marketing and sale of motor fuel without adjustment of the price or the quantity for the fuel's temperature or disclosure of the temperature of the motor fuel and the effects of temperature on the energy content of motor fuel (the "Valero Actions," which are listed in Exhibit A, attached hereto);

WHEREAS, on June 18, 2007, the Judicial Panel on Multidistrict Litigation ("MDL Panel") granted a motion for consolidation for coordinated pretrial proceedings under 28 U.S.C. § 1407 and subsequently transferred the cases identified in the motion, as well as all tag-along cases, to the United States District Court for the District of Kansas;

WHEREAS, among those consolidated cases were cases filed in Alabama, Arizona, California, Guam, Indiana, Kansas, Louisiana, Missouri, Mississippi, Oklahoma, Pennsylvania, Tennessee, and Texas in which one or both Valero Defendants were named as a defendant with respect to alleged conduct in these and other states; and

WHEREAS, also among those consolidated cases were cases filed in Arkansas, Delaware, Florida, Georgia, Maryland, Nevada, New Jersey, New Mexico, North Carolina,

South Carolina, Virginia, and the Virgin Islands in which neither Valero Defendant was named as a defendant, and

WHEREAS, Class Representatives filed their Second Consolidated Amended Complaint on December 1, 2008, and defendants, including Valero Defendants, filed a Second Consolidated Answer on January 12, 2009;

WHEREAS, Valero Defendants deny the allegations and all liability with respect to any and all facts and claims alleged in the Valero Actions;

WHEREAS, Class Representatives and Class Counsel represent that they have analyzed and evaluated the merits of the claims against Valero Defendants, have investigated the facts and law, have engaged in discovery and settlement negotiations relating to the Valero Actions and that the Agreement is a product of sustained, arms' length negotiations;

WHEREAS, the Parties and their counsel have agreed to resolve any claims against Valero Defendants, and only Valero Defendants, as a class action settlement according to the terms of this Settlement Agreement;

WHEREAS, based upon their analysis and evaluation of a number of factors, including the relative positions of the Parties, the applicable law, the delay, costs, risks, and uncertainties of litigation, Plaintiffs and Class Counsel are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, and adequate because: (1) it provides for certification of a conditional Settlement Class, even though the Court has not yet determined whether any or all of the Actions against Valero Defendants could properly be brought or maintained as a class action, and (2) it provides injunctive and other relief of value to the Settlement Class in exchange for Settlement Class Members' release of their claims against only the Valero Releasees, as further defined in Paragraph 1.31;

WHEREAS, Valero Marketing has analyzed and evaluated the merits of the claims made against Valero Defendants, and while the Valero Defendants continue to deny that they are liable to Plaintiffs and Class Representatives with respect to the alleged facts or causes of action and does not admit or concede any liability or damages whatsoever, Valero Marketing has agreed to settle the Action, on the terms and conditions set forth in this Agreement, to avoid the burden,

expense and uncertainty of continuing the Action, to avoid the diversion of resources and personnel required by continuing to litigate the Action, and to put to rest all claims that are, or could have been, brought or asserted in the Valero Actions. Valero Marketing has determined that it is desirable and beneficial that the Action be settled in this manner and upon the terms and conditions set forth in this Agreement. Valero Marketing and its counsel agree that this Agreement is a fair, reasonable, and adequate resolution of the Action.

WHEREAS, as a product of the Parties' arms' length negotiations, this Agreement has been reached, including its exhibits, which embodies all of the terms and conditions of the settlement between Valero Marketing and the Class Representatives, both individually and on behalf of the Settlement Class, subject to approval of the Court;

NOW THEREFORE, it is hereby stipulated and agreed by the undersigned, on behalf of the Class Representatives, the Settlement Class, Class Counsel, and Valero Marketing that this matter be settled, compromised, and dismissed on the merits and with prejudice as to Valero Defendants, subject to the approval of the Court on the following terms and conditions:

1.     **Definitions**

As used in this Settlement Agreement and annexed Exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference herein), the following terms have the following meanings:

1.1.     **Action.** "Action" means the above-captioned matter consolidated into multi-district litigation in the District of Kansas, renumbered as *In re Motor Fuel Temperature Sales Practices Litigation,* Case No. 07-MD 1840-KHV-JPO, MDL No. 1840.

1.2.     **Agreement.** "Agreement" means this Settlement Agreement and Release, including all Exhibits hereto, including any amendments thereto and any exhibits to such amendments.

1.3.     **Approval.** "Approval" means the entry of an order by the Court approving this Settlement Agreement.

1.4.    **Automatic Temperature Compensation or ATC.** "Automatic Temperature Compensation" or "ATC" refers to equipment that is capable of producing "Automatic Temperature or Density Compensation" as defined in Appendix D to Handbook 44 in the context of the retail sale of motor fuel.

1.5.    **Branded Dealer.** "Branded Dealer" means any person and/or entity that sells a Valero Releasee's branded fuel through an agreement with a Distributor.

1.6.    **Class Counsel.** "Class Counsel" means the Lead and Liaison Counsel appointed by the Court:  Robert A. Horn, Thomas V. Girardi, George A. Zelcs, and Thomas V. Bender.

1.7.    **Class Representatives.** "Class Representatives" means Dennis Mann (Alabama), Jim Anliker (Arizona), Charles Jones (Arkansas), John Telles (California), [to be added] (Delaware), Mara Redstone (Florida), Brent Crawford (Georgia), Victor Ruybalid (Indiana), Matthew Cook (Kansas), Lisa McBride (Kentucky), Dawn Lalor (Louisiana), Raphael Sagalyn (Maryland), Team Trucking (Mississippi), Sam Baylard (Missouri), Tia Gomez (Nevada), Richard Galauski (New Jersey), Charles W. Byram (New Mexico), Jean Neese (North Carolina), Hadley Bower (Oklahoma), Gerald Panto (Pennsylvania), JoAnn Korleski (South Carolina), Tamara Miller (Tennessee), Melissa Murray (Texas), and James Graham (Virginia).

1.8.    **Confidential Information.** "Confidential Information" means all documents and things provided to Class Counsel by Valero Defendants during the course of the Valero Actions, whether by formal discovery or otherwise, that constitute confidential commercial information and/or trade secrets of Valero Defendants under applicable law.   Confidential Information does not include documents and things that were public at the time that Valero Defendants provided them during the course of the Valero Actions, or that became public after such production through no fault of Class Counsel or Class Representatives.

1.9.    **Court.** "Court" means the Honorable Kathryn H. Vratil, United States District Court Judge, District of Kansas, or such other judge to whom the Actions may hereafter be assigned.

1.10.   **Date of this Agreement.** "Date of this Agreement" means the last date of any signature to this Agreement as indicated at the end of this Agreement.

**1.11.   Distributor.** "Distributor(s)" means any person and/or entity that has or had an agreement with a Valero Releasee to sell Retail Motor Fuel.

**1.12.   Effective Date.** "Effective Date" means the last date on which all of the following have occurred:  The Court enters the Final Judgment finally approving this Settlement in a manner substantially consistent with the terms and intent of the Agreement; and either:

> **1.12.1.** Thirty-one (31) days have passed after completed service on the parties to the Valero Actions and all objectors to the settlement of the Valero Actions, if any, of notice of entry of the Court's Final Judgment finally approving this Agreement, and every order awarding attorneys' fees, and within such time no appeal is taken or extension for such appeal is granted, or

> **1.12.2.** If an appeal is taken or an extension for such appeal is granted with respect to the Court's Final Judgment finally approving this Agreement, the date when all appellate rights with respect to the Final Judgment have expired or have been exhausted in such a manner as to affirm the Final Judgment, and when no further appeals are possible, including review by the United States Supreme Court, and the appellate court has by final order affirmed the Court's Final Judgment finally approving this settlement, or has denied review, or the appellant otherwise has exhausted all appellate remedies.

**1.13.   Final Approval Hearing.** "Final Approval Hearing" means the hearing at which the Court considers whether this Agreement and the accompanying Settlement between the Parties is in good faith in accordance with Fed. R. Civ. P. 23(e), such that Valero Releasees are discharged from all liability and whether to enter Final Judgment approving this Agreement and dismissing this Action with prejudice.

**1.14.   Final Judgment.** "Final Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be entered by the Court, which is substantially consistent with this Settlement Agreement.

**1.15.   Notice.** "Notice" means the document or electronic communication, substantially in the form of Exhibit C hereto, that will be given, published or distributed as provided in Section 3 of this Agreement.

**1.16.   Notice Date.** "Notice Date" means such date as may be set by the Court for Notice to be given.

**1.17.   Parties.** "Parties" means the Class Representatives, on behalf of themselves and the Settlement Class Members, and Valero Marketing.

**1.18.   Person and Persons.** "Person" and "Persons" means all persons and entities, individuals, corporations, agencies, bodies, associations, partnerships, trusts, including but not limited to present, former, and future subsidiaries, affiliates, divisions, associates, agents, successors, predecessors, administrators, heirs, executors, beneficiaries, conservators, assignors, assignees, and/or assigns and each of their respective present, former or future, officers, directors, shareholders, agents and employees.

**1.19.   Plaintiffs.** "Plaintiffs" mean the Class Representatives, individually and on behalf of the conditional class members.

**1.20.   Preliminary Approval.** "Preliminary Approval" means that the Court has entered the Preliminary Approval Order.

**1.21.   Preliminary Approval Hearing.** "Preliminary Approval Hearing" means any hearing set by the Court to consider the entry of a Preliminary Approval Order.

**1.22.   Preliminary Approval Order.** "Preliminary Approval Order" means the Order of Preliminary Approval of Settlement entered by the Court preliminarily approving the terms and conditions of this Agreement, substantially in the form of Exhibit B attached hereto.

**1.23.   Release.** "Release" means any release and waiver set forth in Section xx of this Agreement.

**1.24.   Released Rights.** "Released Rights" means any and all manner of claims, demands, actions, suits, defenses, and causes of action released pursuant to Section 6.

**1.25.   Retail Motor Fuel.** "Retail Motor Fuel" means all grades of unleaded and diesel fuel sold at retail stations.

**1.26.   Settlement Agreement and Settlement.** "Settlement Agreement" and Settlement" mean the resolution of the Action reflected in this Agreement, together with all of its exhibits.

**1.27.   Settlement Class Members and Settlement Class.** "Settlement Class Members" and "Settlement Class" mean all persons who fall within the Settlement Class contemplated by this Settlement Agreement to be certified by the Court and who do not opt out as set forth in Paragraph 3.2.

**1.28.   States at Issue.** "State at Issue" or "States at Issue" mean those states where Class Representatives allege Valero owns, operates or brands Stations and where motor fuel was sold without adjustment for the fuel's temperature:

> Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia.

**1.29.   Stations.** "Stations" means any retail store that sells Retail Motor Fuel in the States at Issue.

**1.30.   Valero.** "Valero" means Valero Marketing and Supply Company and Valero Retail Holdings, Inc.

**1.31.   Valero Releasees.** "Valero Releasees" means Valero Energy Corporation, Valero Refining and Marketing Company, Valero Marketing and Supply Company, Valero Retail Holdings, Inc., Autotronic Systems, Inc., Beacon Oil Company, Big Diamond, Inc., Diamond Shamrock Arizona, Inc., Diamond Shamrock Refining and Marketing Company, Diamond Shamrock Stations, Inc., DSRM National Bank, Emerald Marketing, Inc., Integrated Product Systems, Inc., Michigan Reutilization, LLC (a dissolved entity), National Convenience Stores Incorporated, Schepps Food Stores, Inc., Sigmor Beverage, Inc., Sigmor Corporation, Sigmor Number 5, Inc., Sigmor Number 43, Inc., Sigmor Number 79, Inc., Sigmor Number 80, Inc.,

Sigmor Number 103, Inc., Sigmor Number 104, Inc., Sigmor Number 119, Inc., Sigmor Number
125, Inc., Sigmor Number 140, Inc., Sigmor Number 156, Inc., Sigmor Number 170, Inc.,
Sigmor Number 178, Inc., Sigmor Number 181, Inc., Sigmor Number 196, Inc., Sigmor Number
206, Inc., Sigmor Number 232, Inc., Sigmor Number 238, Inc., Sigmor Number 239, Inc.,
Sigmor Number 259, Inc., Sigmor Number 363, Inc., Sigmor Number 422, Inc., Sigmor Number
605, Inc., Sigmor Number 606, Inc., Sigmor Number 611, Inc., Sigmor Number 613, Inc., Stop
'N Go Markets of Texas, Inc., Sunshine Beverage Co., TOC-DS Company, Texas Super Duper
Markets, Inc., UDS Services, Inc., Ultramar D.S., Inc., Ultramar Inc., Valero Arkansas Retail
LLC, Valero California Retail Company, Valero Corporate Services Company, Valero Diamond
Metro, Inc., Valero Payment Services Company, Valero Refining and Marketing Company,
Valero Refining Company -- California, Valley Shamrock, Inc., Valero Services Inc., VRG
Properties Company, and all of their current and former and direct and indirect parent
corporations, subsidiaries, divisions, affiliates and related entities (not including independent
sellers of Valero branded motor fuel pursuant to trademark license agreement or other
agreement), predecessors, successors, predecessors-in-name, successors-in-name, successors-in-
interest, predecessors-in-interest and assigns and each of their current and former fiduciaries,
administrators, executors, directors, officers, members, insurers, employees, agents,
representatives, attorneys, trustees, conservators, and consultants.

However, any subsidiary, division, or affiliate of one of the Valero Releasees is only a
Valero Releasee for conduct that occurred while that subsidiary, division, or affiliate is or was a
subsidiary, division, or affiliate of a Valero Releasee. Notwithstanding the prior sentence,
"Valero Releasees" includes the parties identified in Paragraph 1.31 to the extent that claims or
theories of successor liability are asserted against them which relate to a person or an entity
which is or was a subsidiary, division, or affiliate of a Valero Releasee with respect to time
periods during which such person or entity is not or was not a subsidiary, division, or affiliate of
a Valero Releasee.

1.32.  **Valero Retail.**  "Valero Retail" means Valero Retail Holdings, Inc.

1.33.  **Valero Actions.**  "Valero Actions" mean the actions filed by Plaintiffs against
Valero Defendants and other defendants alleging common law claims and violations of various

state consumer protection statutes, which are listed in Exhibit A hereto, and actions that may be amended or re-filed as provided in Paragraph 2.3.

1.34.   **Valero Marketing's Counsel.** "Valero Marketing's Counsel" means James F. Bennett and the law firm of Dowd Bennett, LLP, 7733 Forsyth Blvd., Suite 1410, St. Louis, MO 63105.

2.   **The Settlement Class**

2.1   **Settlement Class.** For settlement purposes only, the Parties agree that the Court may certify a Settlement Class consisting of the following twenty-four (24) subclasses (i.e. one for each State at Issue) pursuant to all provisions of Federal Rule of Civil Procedure 23, defined as follows: All persons and entities who, at any time during the period from January 1, 2001 to the date of Approval of the Agreement, purchased Retail Motor Fuel in a State at Issue from a retail motor fuel Station that is or was owned, operated or branded by Valero Releasees, excluding:

2.1.1   officers and employees of Valero or its affiliates; and

2.1.2   the Court, and members of the Court's immediate family.

2.2   **Motion for Certification.** Class Representatives shall move for conditional certification of the Settlement Class contemporaneously with their motion for Preliminary Approval of this settlement, and Valero Marketing shall not object to such motion, solely for the purposes of this Settlement. Class Representatives will provide a copy of the motion to Valero Marketing's Counsel prior to filing.

2.3   **Amendment or Re-filing of Complaints.** Class Representatives shall seek Court approval and Valero Marketing will consent to amended complaints, and, if necessary, re-filing of complaints previously dismissed without prejudice, in Arkansas, Delaware, Florida, Georgia, Kentucky, Maryland, Nevada, New Jersey, New Mexico, North Carolina, South Carolina, and Virginia, so as to add Valero Marketing as a defendant to those cases for the sole purpose of obtaining certification of a settlement class and approval of this Settlement Agreement. All paperwork necessary to accomplish such amendments will be completed by Class Counsel.

2.4     **Decertification of the Settlement Class if Settlement Not Approved.** If the Court does not grant final approval of the settlement reflected in this Settlement Agreement or if the Settlement Agreement is terminated for any reason pursuant to Section 12, any certification of any Settlement Class will be vacated and the Parties will be returned to their positions with respect to the Valero Actions as if the Settlement Agreement had not been entered. In the event that final approval is not achieved or the Settlement Agreement is terminated:

> 2.4.1   Any Court orders preliminarily or finally approving the certification of any class contemplated by this Settlement Agreement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in any manner whatsoever, including without limitation any proceeding relating to the certification of any class;

> 2.4.2   The fact of the settlement reflected in this Settlement Agreement, that Valero Defendants and/or Valero Releasees did not oppose the certification of any class under this Settlement Agreement, or that the Court preliminarily approved the certification of any Settlement Class, shall not be used or cited thereafter by any Person, including in any manner whatsoever, including without limitation any contested proceeding relating to the certification of any class; and

> 2.4.3   Any action that was amended or filed or re-filed against Valero Marketing solely for purposes of creating a subclass for settlement purposes in states listed in Paragraph 2.3 shall be dismissed with prejudice against any Valero Defendant and the Parties shall be returned to their initial positions in the Valero Actions that existed prior to and as if this Settlement Agreement had never been entered.

2.5     **No Admission of Liability.** Valero Defendants deny liability or wrongdoing of any kind associated with the claims alleged in the Valero Actions and further contends that none of the Valero Actions are appropriate for class action treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure or any other federal or state rule, statute, law or provision. Valero Defendants continue to assert that the Valero Actions fail to meet the prerequisites necessary for class action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because the need to determine individualized issues make

each of the Valero Actions unmanageable consistent with due process. Valero Defendants further assert that they have complied with all applicable provisions of federal and state statutory and common law. Valero Defendants further state that despite their good faith belief that they are not liable for any of the claims asserted, and despite their good faith believe that class certification is not appropriate, they will not oppose the Court's certification of the Settlement Class contemplated by this Settlement Agreement solely for purposes of effectuating this settlement. Other than for purposes of this Agreement, Valero Defendants do not waive their objections to certification of the Settlement Class, or any other class, and further, do not waive any defenses in the Valero Actions.

3.      **Notice and Opt Out Procedure**

   3.1      **Sources of Information About Settlement.** Notice of this Settlement Agreement shall be given in accordance with such notice ordered by the Court. Such Notice shall be designed and issued by Class Counsel, with prior disclosure to Valero Defendants, and shall be reasonably calculated, subject to Court approval, to provide the reach and content necessary to give appropriate notice to a reasonable portion of the Settlement Class in accordance with constitutional requirements of due process and Rule 23 of the Federal Rules of Civil Procedure. The Parties acknowledge that it is the present intention of Class Counsel that such Notice shall be in the form of a combined notice of settlement with other defendants as may have settled by the time such Notice is given.

   3.2      **Opt Outs**

      3.2.1      **Procedures for Opt Outs.** Any request to opt out of the Settlement must be submitted electronically via the website established by Class Counsel in connection with the Notice, or in writing and must include name, address, telephone number, and proof of motor fuel purchase from a Station owned, operated or branded by a Valero Releasee of the Person seeking to opt out and a statement that the Person wishes to opt out of such release. The opt out request must be personally signed, or submitted electronically, by the Settlement Class Member who seeks to opt out; no Settlement Class Member may opt out by having a request to opt out submitted by an actual or purported agent or attorney

acting on behalf of the Settlement Class Member. No opt out request may be made on behalf of a group of Settlement Class Members. Each Settlement Class Member who does not submit an opt out request substantially in compliance with this section within 30 days of the conclusion of the notice period pursuant to Section 3.1 shall be deemed to participate in the Settlement and all Releases provided in this Agreement. For purposes of determining timeliness, an opt out request shall be deemed to have been submitted upon electronic transmission or when postmarked by the postal service or other expedited mail service. The Administrator shall provide copies of all requests to opt out to Class Counsel and Valero Marketing's Counsel.

**3.2.2   Effect of Opt Outs by Settlement Class Members.** If 2,500 or more of the potential members of the Settlement Class opt out, then Valero Marketing shall have the option to rescind this Agreement, in which case all of Valero's obligations under this Agreement shall cease to be of any force and effect, and this Agreement shall be rescinded, cancelled, and annulled. If Valero Marketing exercises this option, it shall provide Class Counsel with written notice of its election within 30 days of the opt-out deadline set forth in Paragraph 3.2.1, at which point the Parties shall return to their respective positions in the manner and effect as set forth in Paragraph 2.4.

4.   **Consideration**

Valero agrees to the following as applicable to each entity identified:

**4.1   Temperature Posting.** Subject to the other provisions in this Agreement, Valero Retail will post the temperature reading of diesel and regular unleaded gasoline, as reflected on the automatic tank gauge system, at all Stations owned, directly or indirectly, by Valero Retail in the States at Issue. The posted temperature will be a display of the currently reported results of temperature or a reasonable average of such temperatures in order to avoid transient technological/transmission errors associated with an actual real-time display.

4.1.1   This posting will include language, chosen solely by Valero Retail, that is similar to Valero Retail existing labels that educate customers regarding the effect of temperature on fuel content (the "Label").

4.1.2   The posting will be in a reasonably accessible and reasonably conspicuous location at each Station and shall, at a minimum, be visible such that the consumer need not leave their vehicle in order to observe the temperature.

4.2   Notwithstanding the requirements of Paragraph 4.1,

4.2.1   Valero Retail is not required to post fuel temperature information at any Station where the underground storage tanks do not have automatic tank gauge equipment, provided that such Stations post a Label on each dispenser.  Any Station initially exempt from the requirements of posting temperature pursuant to this paragraph but that subsequently has automatic tank gauge equipment installed within three years after the Effective Date, will comply with the temperature posting requirement set forth in Paragraph 4.1.

4.2.2   Valero Retail is not required to post or can discontinue posting fuel temperature information at any Station where ATC equipment is installed.

4.3   **Compliance with the Law.**  Valero agrees to comply with any future laws pertaining to retail ATC in the States at Issue.

4.4   **Implementation Period.**  Subject to the other provisions in this Section, Valero Retail will complete the temperature posting as set forth in Paragraph 4.1 within eighteen (18) months of the Effective Date.  For Stations that become subject to this Agreement, Valero will complete the temperature posting as set forth in Paragraph 4.1 within eighteen (18) months of Valero Retail owning or operating the location.  Once a Station has complied with Paragraph 4.1, the Station shall have a full and complete release for the entire class period as contemplated by Paragraph 1.31 and Section 6.

4.5   **Brand Development.**  Valero Marketing will permit its Distributors to use incentive funds to obtain temperature displays or ATC equipment and will permit use and

include the availability of such funds in guides provided to Distributors describing such incentive funds. For three (3) years following the Effective Date, any Distributor or Branded Dealer who complies with these terms will be included in the release of claims set forth below after sufficient proof of compliance is provided to Plaintiffs.

     **4.6**    **Industry Standard.** If a State where a station owned by Valero is located permits retail ATC, Valero Retail agrees to install ATC at its owned Stations if a sufficient majority of Valero Retail's peer companies install ATC at their dispensers such that it becomes industry standard. Valero Retail will install ATC at such owned Stations over the successive three (3) years.

     **4.7**    **No Lobbying.** Valero agrees to abstain from any regulatory, legislative, lobbying or trade association activity involving ATC and agrees not to oppose ATC.

     **4.8**    **Payment.** Following Preliminary Approval and the entry of Final Judgment consistent with this Agreement, Valero will pay, in accordance with the provisions of this agreement, up to $4,500,000 in attorneys' fees and litigation expenses and/or costs.

     **4.9**    **Cost of Notice.** Valero will contribute $200,000 toward the cost of providing notice of this Settlement Agreement to the Class for administering this Agreement after the bills become due and owing. All costs of such Notice shall otherwise be borne solely by Class Counsel and not by Valero. The payment of the sum identified in this section shall be separate from and in addition to the payment of the sum identified in Paragraph 4.8, and it is understood that the sum mentioned in this section shall be the sole and exclusive cost incurred by Valero with respect to the issuance and publication of Notice and administration of the Settlement.

     **4.10**    **Full Satisfaction.** The amounts stated in Paragraphs 4.8 and 4.9 are the full satisfaction of the Final Judgment provided for by this Agreement.

     **4.11**    **Termination Prior to Payment.** If this Agreement is terminated pursuant to Section 12 subsequent to Preliminary Approval but prior to payment, all amounts paid pursuant to Paragraphs 4.8 and 4.9 plus interest minus expenses (including expenses incurred before termination relating to the cost of providing notice) shall be returned to Valero no later than ten (10) days after such termination.

**4.12    Force Majeure.** Valero shall not be liable for failure to perform any obligation set forth in this Agreement, and any such failure shall not be considered a breach of or noncompliance with the terms of this Agreement, if such failure results from the actions or omissions of a third party or other cause beyond Valero's control.

**5.    Settlement Procedures**

**5.1    Preliminary Approval.** Within ten (10) days after the execution of this Settlement Agreement by all Parties, Class Representatives shall move the Court for an order substantially in the form of Exhibit B specifically including provisions providing for objections to this Settlement via an objection procedure. It is contemplated and understood that such motion may be filed in conjunction with motions seeking preliminary approval of other settlements with other defendants in the litigation.

**5.2    Final Approval Hearing.** If the Court enters the Order granting Preliminary Approval, the Parties shall direct the giving of Notice in the manner described in Section 3 of this Agreement. The Final Approval Hearing shall be set within 210 days after the Court enters the Preliminary Approval Order to allow time for the notice and objections procedures set out in the Agreement. The Court shall set a date for the Final Approval Hearing (and will be specified in the Notice), which comports with applicable law and due process requirements. The date for the Final Approval Hearing may be extended, but not advanced, without sending notice to the Class Members. It is contemplated and understood that such motion may be filed in conjunction with motions seeking final approval of other settlements with other defendants in the litigation. The Parties agree to work together to identify and submit any evidence as may be required to satisfy the burden of proof for obtaining approval of this Agreement at the Final Approval Hearing.

**5.3    Objections.** Any objections to the proposed settlement shall be heard, and any papers submitted in support of said objections shall be received and considered by the Court at the Final Approval Hearing (or at such other time as may be directed by the Court), only if persons making objections file with the Court and serve on the parties notice of their intentions and copies of such papers they propose to submit at the hearing at least thirty (30) days before the Final Approval Hearing.

5.4    **Final Approval and Dismissal.** Following issuance of the Preliminary Approval Order, Class Representatives shall request from the Court a Final Judgment and Order of Dismissal, agreed to in advance by the Parties, specifically including provisions:

> 5.4.1   Finding that the Parties have submitted to the jurisdiction of the Court for purposes of settlement, that the Court has personal jurisdiction over the Parties and all Settlement Class Members, and that the Court has subject matter jurisdiction to approve the settlement;

> 5.4.2   Finding that the Notice was the best notice practicable under the circumstances and was due and sufficient notice to the Settlement Class, and that such notice fully satisfies the requirements of due process and applicable law;

> 5.4.3   Approving this settlement and finding it is fair, reasonable and adequate, and in the best interests of the Settlement Class;

> 5.4.4   Confirming that the Class Representatives and the Settlement Class shall be deemed to have released all claims against the Valero Releasees, and permanently barring and enjoining Class Representatives and any member of the Settlement Class from asserting, commencing, prosecuting, or continuing any of the Released Claims against any Valero Releasee;

> 5.4.5   Dismissing Valero Defendants from the Valero Actions with prejudice, subject to the Court's retaining jurisdiction over the enforcement of the terms of this Agreement; and

> 5.4.6   Determining that the Final Judgment and Order of Dismissal shall be final and appealable.

5.5    **Potential Class Certification.** If the Court certifies any class or enters any orders relating to Class Representatives and Class Counsel, such actions shall not be an adjudication of any fact or issue for any purpose other than the effectuation of this Agreement and shall not be considered as law of the case or *res judicata* and shall not have collateral estoppel effect in this or any other proceeding.

**5.6      Effect of Failure to Enter Final Judgment.**  In the event that final approval in accordance with this Agreement is not achieved, this Agreement will terminate, with the effect described in Section 2.4 and any orders of the Court contemplated by this section shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity for any purpose in the any actions or otherwise.  In the event of the failure of the Court or the appellate court to grant or uphold Preliminary or Final Approval, termination pursuant to Section 12, or termination of the Agreement for any reason, neither the settlement documents nor the amount of settlement shall be admissible in any subsequent proceedings for any purpose.

**5.7      Dismissal.**  This Agreement is expressly conditioned upon the Court entering a final judgment dismissing with prejudice the Action, dismissing Valero Defendants with prejudice from the Valero Actions, and severing Valero Marketing from the trial of the <u>In re Motor Fuel Temperature Sales Practice Litigation</u> actions, currently set for August 27, 2012, such that this trial will have no res judicata or preclusive effect on any Valero Releasee.

**6.      Release of Claims**

**6.1      Release and Covenant Not to Sue by Class Representatives and Class Members.**  Upon the Effective Date, Class Representatives and each Settlement Class Member, and each of their respective, executors, representatives, heirs, successors, bankruptcy trustees, guardians, and all those who claim through them or who assert claims on their behalf, shall be deemed and adjudged to have completely released and forever discharged, remised, acquitted, and satisfied the Valero Releasees, and each of them, from any claim, right, demand, charge, complaint, action, cause of action, obligation or liability, including but not limited to any claims for declaratory relief, or for any type of restitution or damages or any other relief whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which the Class Representatives or any Settlement Class Member now has or ever had resulting from, arising out of or in any way directly or indirectly connected to

> 6.1.1    all the allegations and claims that are, were or could have been asserted in this litigation related to or arising out of the temperature of Retail Motor Fuel;

6.1.2   any omission, representation, or act relating to the temperature or energy content of Retail Motor Fuel;

6.1.3   any claim based on the omissions, acts, representations of anyone selling motor fuel under the Valero Releasee's brands that was also made or could have been made in this litigation related to or arising out of the temperature or energy content of Retail Motor Fuel;

6.1.4   the purported over-collection of motor fuel taxes from consumers based on the number of gallons dispensed without adjustment for the effect of temperature; and

6.1.5   the alleged participation in a conspiracy to preclude the use of ATC equipment.

**6.2     Avoidance of Doubt.** For the avoidance of doubt, the types of claims released in the preceding paragraph are released regardless of the type of cause of action, common law principle or statute under which they are asserted; for example, and without limitation, such claims are released whether asserted under any federal, state, or local unfair competition, unfair practices, deceptive practices, antitrust, common law breach of contract, breach of warranty, breach of the duty of good faith and fair dealing, unjust enrichment or civil conspiracy law, or similar law or regulation of any jurisdiction within the United States.

**6.3     Waiver of California Civil Code Section 1542.** Class Representatives and each Settlement Class Member also waive expressly each and all of the provisions of California Civil Code Section 1542 or similar laws of any other state or jurisdiction. California Civil Code Section 1542 provides:

> GENERAL RELEASE – CLAIMS EXTINGUISHED. A GENERAL
> RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR
> HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,
> WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**6.4    Release Not Applicable.** The release set forth in Paragraph 6.1 does not apply to, or release, claims or allegations against any individual or entity who is operating a retail motor fuel station under one of the Valero Releasee's brands pursuant to a trademark license agreement or any agreement subject to the PMPA, except as provided in Paragraph 4.1 and 4.6 above, which relates to the implementation of ATC and/or temperature posting.

**6.5    Bar in Additional States.** Should Valero Retail enter any State at Issue where it does not currently have operations, the release in Paragraph 6.1 shall be effective and apply so long as Valero Retail agrees to comply with Paragraph 4.1 where it is reasonably feasible within eighteen (18) months of entering the State at Issue.

**6.6    Bar to Future Suits.** Except for the enforcement of the final judgment entered pursuant to this Settlement, Class Representatives and Settlement Class Members who do not opt out of the Valero Actions shall be enjoined from prosecuting any proceeding against any Valero Releasee with respect to the conduct, services, fees, charges, acts, or omissions of any Valero Releasee relating to all matters within the scope of the release in this Section or actions taken by a Valero Releasee that are authorized or required by this Settlement Agreement or by the Final Judgment. The Court shall retain jurisdiction to enforce the judgment, releases, and bar to suits contemplated by this Settlement Agreement. It is further agreed that the Settlement Agreement and the Final Judgment may be pleaded as a complete defense to any proceeding subject to this section as to any Valero Releasee. This bar, and all provisions of this Section 6, and all of its subparts, and all other paragraphs and sections of this document, is made because of the valuable benefits conferred on members of the class by this Settlement, the extended period of time that would be required, at least several years, to come to some other resolution, and the uncertain nature of any resolution absent this Settlement.

**6.7    Attorneys' Fees, Costs and Expenses.** Except as provided herein, it is agreed that each Party shall bear its own attorneys' fees, costs, and expenses incurred in the Action and the Valero Actions and that any claim with respect to attorneys' fees, costs and/or expenses not herein expressly provided for is released.

**7.     Continuing Jurisdiction**

The Court shall have continuing jurisdiction over the interpretation and implementation of this Agreement, any and all matters arising out of, or related to, the interpretation or implementation of the Settlement or this Agreement, and to enforce the Final Judgment. The Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Settlement Agreement. Class Representatives and Class Members are barred and enjoined from commencing or continuing any suit, action, proceeding, case, controversy, or dispute relating to this Agreement and its negotiation, performance, or breach in any state or federal court or other body other than this Court.

8.    **Exception for Compliance with Legislative/Regulatory Requirements**

To the extent that any local, state, or federal legislative or regulatory body or agency has adopted or adopts legislation, regulations, or rules that conflict with or impose requirements substantially similar to the terms of the Settlement Agreement, then compliance by Valero with any such legislation, regulations, or rules shall be deemed to constitute satisfaction of the terms of the Settlement Agreement. In the event Valero concludes that it is legally required to depart from the requirements of this Settlement Agreement, it shall, to the extent practicable, provide notice of such intended departure to Class Counsel.

9.    **Return of Confidential Information**

Class Counsel, on behalf of themselves and any expert witnesses and consultants retained by them, acknowledge that during the course of the Actions, they have received Confidential Information. No later than thirty (30) days after the Effective Date, Class Counsel will return to Valero Defendants all Confidential Information and will certify under oath that they do not retain any copies or summaries or compilations or indices of such information. No later than thirty (30) days after the Effective Date, any expert witnesses and consultants retained by Class Counsel will send to Class Counsel, for return to Valero Defendants, all Confidential Information and will certify under oath that they do not retain any copies or summaries or compilations or indices of such information. This provision is not intended to cover work product of Class Counsel but is intended to cover Confidential Information that might simply be attached to any work product. Class Counsel also will not use any of the Confidential

Information learned or obtained in the actions against Valero for any purpose after the Effective Date.

10.   **Notices**

Any communication sent by any Party in connection with this Settlement Agreement other than the Notice to Class Members set forth in Section 3 above shall be sent to:

**To Class Representatives:**

Robert A. Horn
Horn Aylward Bandy, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, MO  64108

**To Valero:**

James F. Bennett
Dowd Bennett, LLP
7733 Forsyth Boulevard, Suite 1410
St. Louis, MO  63105

11.   **Representations and Warranties**

11.1   **No Additional Persons with Financial Interest.** Class Representatives and Class Counsel represent and warrant that all persons (natural or legal) having any interest in any award of attorneys' fees or costs in connection with this Agreement must seek any award of attorneys' fees or costs with this Court pursuant to the Court's Preliminary Approval Order.

11.2   **Parties Authorized to Enter into Settlement Agreement.** Class Representatives, Class Counsel, and Valero represent and warrant that he, she, or it is fully authorized to enter into this Settlement Agreement and to carry out the obligations provided for herein. Each person executing this Settlement Agreement on behalf of a Party covenants, warrants, and represents that s/he is and has been fully authorized to do so by such Party. Each Party hereto further represents and warrants that he, she, or it intends to be bound fully by the terms of this Settlement Agreement.

**11.3   No Attempt by Parties to Object.** The Parties shall cooperate fully with each other, and shall use their best efforts to obtain approval of this Agreement and all of its terms. Class Representatives and Class Counsel and Valero each represent and warrant that they have not made, nor will they (a) attempt to void this Settlement Agreement in any way, or (b) solicit, encourage, or assist in any fashion any effort by any person (natural or legal) to object to the Settlement Agreement. Class Counsel shall make every reasonable effort to encourage Class Members to participate in and not object to this Settlement.

**12.   Termination**

**12.1   Termination Option by Valero Marketing.** If, at any time prior to the Court's entry of the Final Judgment, Class Counsel and Class Representatives enter into any agreement with any person to resolve any of the Actions or any other pending or threatened claim concerning the temperature of fuel, Class Counsel agree to notify Valero Marketing promptly of the terms of such agreement. At Valero Marketing's sole discretion, if Valero Marketing believes that any such agreement that includes terms similar to those contained in this Agreement, including Section 4, is materially more advantageous than this Agreement and for any reason Valero is not able to exercise its rights under Section 12 , Valero Marketing shall have the option to rescind this Agreement, in which case all of Valero's obligations under this Agreement shall cease to be of any force and effect, and this Agreement shall be rescinded, cancelled, and annulled, subject to Section 4.11. If Valero Marketing exercises this option, it shall provide Class Counsel with written notice of its election, at which point the Parties shall return to their respective positions in the manner and effect as set forth in Section 2.4.

**12.2   Termination by Parties.** This Agreement will terminate at the option and discretion of Plaintiffs or Valero Marketing if (1) the Court, or any appellate court, rejects, modifies or denies approval of any portion of this Agreement or the proposed settlement, that is material to the terminating Party, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class and/or the terms of the Release; or (2) the Court, or any appellate court, does not enter or completely affirm, or alters or expands, any portion of the Judgment of Dismissal, or any of the Court's findings of fact or conclusions of law as proposed by the parties, that is material to the terminating party. The

terminating party must exercise the option to withdraw from and terminate this Agreement, as provided herein, no later than twenty (20) days after receiving notice of the event prompting the termination unless there is an appeal regarding that event, in which case no later than twenty (20) days after the appeal has been finally resolved.

**12.3    Effect of Termination.**  In the event of termination, any litigation between the Parties in the Valero Actions will resume unless the Parties jointly agree to renegotiate the settlement and seek Court approval of the renegotiated settlement.  If the Parties do not arrive at a renegotiated settlement, the Parties shall have no further rights or obligations under this Agreement.  It is the express intention of the Parties that their relative positions in the Valero Actions remain unchanged in the event of termination, and nothing in this Agreement may be used as evidence for any reason in any proceeding.  Valero Marketing shall be dismissed as a defendant from any actions amended to add Valero Marketing as a defendant solely for purposes of this settlement pursuant to Paragraph 2.3.  In addition, Valero will be entitled to a refund of any monies already paid, plus any interest accrued thereon, less any applicable penalties for early termination of any instruments or securities in which the Settlement Fund was invested, and less any costs of notice or administration which are incurred before Valero Marketing provides notice of termination.

**13.    Miscellaneous**

**13.1    Entire Agreement.**  This Agreement, along with its Exhibits, constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**13.2    No Liability.**  This Settlement Agreement does not constitute, is not intended to constitute, and will not under any circumstances be deemed to constitute, an admission by either of the Parties as to the merits, validity, or accuracy, or lack thereof, of any of the allegations or claims in these Actions, nor the waiver of any defense.

**13.3    Agreement in Good Faith.**  Valero Marketing, Valero Marketing's Counsel, Class Representatives and Class Counsel agree, aver, and confirm that this Agreement has been

entered into in good faith and is reasonable and otherwise proper in accordance with the provisions of the Federal Rules of Civil Procedures, including Fed. R. Civ. P. 23.

**13.4    Arms' Length Transaction.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions in their exact form are material to this Agreement and have been relied upon by the Parties in entering into this Agreement. If any Class Member petitions the Court for a modification, addition, or alteration of any term or condition of this Agreement and if the Court on such request or *sua sponte* does modify, add to or alter any of the terms of or conditions of this Agreement, this Agreement shall become voidable and of no further effect upon the filing with the Court of a notice of withdrawal from settlement by Class Counsel or Valero Marketing's Counsel within five (5) business days of receipt of any order or final statement of the court modifying, adding to or altering any terms or conditions of this Agreement material to the withdrawing Party.

**13.5    Singular/Plural.** The plural of any defined term includes the singular, and the singular of any defined term includes the plural.

**13.6    No Third Party Beneficiaries.** This Agreement shall not be construed to create rights in, or grant remedies to or delegate any duty, obligation or undertaking established herein, any third party as a beneficiary to this Agreement except as otherwise provided herein.

**13.7    Further Acts.** Each of the Parties, upon the request of the other party hereto, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**13.8    Captions.** The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**13.9    Currency, Dates, and Times.** All values, checks, monies, fees, expenses, costs, awards and other amounts stated herein are to be determined, are stated, and are to be paid in United States legal currency. All dates and times stated in this Agreement mean the date and time in the State of Kansas.

**13.10   Notices.** All notices to Class Counsel, Class Members, Class Representatives, Valero and Valero Marketing's Counsel required under this Agreement shall be sent by first class United States mail or by hand delivery. Timeliness of all submissions and notices, except as indicated, shall be measured by the date of receipt.

**13.11   No Construction Against Drafter.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties and each Party participated jointly in the drafting of this Agreement. The terms of this Agreement are not intended to be construed or interpreted against any Party by virtue of draftsmanship.

**13.12   Signatures.** Signature by facsimile or in PDF format will constitute sufficient execution of this Settlement Agreement and shall be binding upon the Party transmitting the signature; original signatures must be available upon request.

**13.13   Execution in Counterparts.** This Settlement Agreement shall become effective upon its execution by all Parties. The Parties may execute this Settlement Agreement in counterparts. Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**13.14   Invalidity on Modification or Disapproval.** In the event any court disapproves or sets aside this Settlement Agreement or any material part of this Settlement Agreement for any reason, or holds that it will not enter or give effect to the Final Judgment without material modification, or holds that the entry of the Final Judgment or any material part thereof should be overturned or modified in any material way, then:

> **13.14.1**      If all Parties do not agree jointly to appeal such ruling, this Settlement Agreement will become null and void, and the Valero Actions will continue, and the Parties stipulate to joint motions (i) that any and all orders entered pursuant to this Settlement Agreement be vacated, and (ii) that any and all dismissals pursuant to this Agreement will be vacated; or

> **13.14.2**      If the Parties do agree to jointly appeal such ruling and if the Final Judgment or its equivalent in all material respects is not in effect after the termination of all proceedings arising out of such appeal, this Agreement will

become null and void, and the Action will continue, and the Parties stipulate to joint motions (i) that any and all orders entered pursuant to this Agreement be vacated, including, without limitation, any order modifying the class certification order or permitting amendment of the complaint to conform the complaint to the class definition set out in Section 2.1, and (ii) that any and all dismissals pursuant to this Agreement will be vacated.

13.15   **Amendment.** No waiver, modifications, or amendment to the terms of this Agreement made before or after the Court's approval of this Agreement shall be valid or binding unless contained in a written instrument signed by all Parties or their successors in interest or their duly authorized representatives and then only to the extent set forth in such written waiver, modification or amendment, and subject to any required Court approval or by court order modifying the Settlement Agreement based on changed circumstances.

13.16   **Modification.** Prior to entry of the Final Judgment, this Agreement may, with approval of the Court, be modified by written agreement of Class Counsel and Valero Marketing's Counsel in their discretion without giving any additional notice to the Settlement Class, provided that such modifications are not materially adverse to the Settlement Class. Subsequent to the Final Approval Order and Judgment becoming a Final Judgment, this Agreement may, with approval of the Court, be modified by written agreement of Class Counsel and Valero Marketing's Counsel in their discretion without giving any additional notice to the Settlement Class Members, provided that such modifications do not limit the rights of the Settlement Class Members under the Agreement.

13.17   **Best Efforts.** The Class Representatives, Class Counsel, Valero Marketing and Valero Marketing's Counsel believe this Agreement is fair, adequate and reasonable. Class Counsel and Class Representatives and Valero Marketing will use their best efforts to seek approval of the Settlement Agreement by the Court, including amendment of the complaint to incorporate the definition of the Settlement Class, if necessary, and in responding to any objectors, intervenors, or other persons or entities seeking to preclude the final approval of this Settlement Agreement and will not take or instigate any activity contrary to or inconsistent with their commitment to seek prompt approval and implementation of this Agreement. They also

agree to use their best efforts, including all steps and efforts contemplated by this Agreement, and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out in good faith the terms of this Agreement. The Parties and their Counsel shall cooperate, assist and undertake all actions to accomplish the above on a timely basis in accordance with the schedule established by the Court.

   13.18   **Time Periods.** The time periods and dates described in this Settlement Agreement with respect to the giving of notices and hearings are subject to Court approval and modification by the Court or by written stipulation of Class Counsel and Valero's Counsel.

   13.19   **Governing Law.** Except where otherwise provided for herein, the law of the State of Kansas controls the performance, validity, construction, interpretation and enforceability of all terms, conditions, and other aspects of this Agreement.

   13.20   **Agreement Binding on Successors in Interest.** This Settlement Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.**

ON BEHALF OF THE SETTLEMENT CLASSES

[TO BE ADDED]

ON BEHALF OF CLASS COUNSEL

Dated: _____, 2012

_____
ROBERT A. HORN

Dated: _____, 2012

_____
THOMAS V. GIRARDI

Dated: _____, 2012

_____
GEORGE A. ZELCS

Dated: JUNE 25 , 2012

_____
THOMAS V. BENDER

**VALERO MARKETING AND SUPPLY COMPANY**

**BY:**  Kimberly S. Bowers
**ITS:**  Executive Vice President and General Counsel

**APPROVED AS TO CONTENT BY:**

**VALERO RETAIL HOLDINGS, INC.**

**BY:**  Gary L. Arthur, Jr.
**ITS:**  Chief Executive Officer and President

# EXHIBIT A

## VALERO ACTIONS

*COOK V. HESS CORPORATION, ET AL.*
No. 2:07-cv-02492-KHV-JPO
M.D. Ala. No. 2:07-cv-00750-WKW-CSC

*WILLIAMS V. BP CORPORATION NORTH AMERICA INC., ET AL.*
No. 2:07-cv-02355-KHV-JPO
M.D. Ala. No. 2:07-cv-00179-ID-TFM

*PAYNE V. CHENRON USA, INC., ET AL.*
No. 2:07-cv-02366-KVH-JPO
D. Ariz. No. 2:07-cv-00478-SMM

*AGUIRRE V. BP WEST COAST PRODUCTS LLC, ET AL.*
No. 2:07-cv-02391-KHV-JPO
N.D. Cal. No. 3:07-cv-01534-MJJ

*ELLER V. CHEVRON USA, INC., ET AL.*
No. 2:07-cv-02402-KHV-JPO
C.D. Cal. No. 5:07-cv-00280-SGL-JCR

*RUSHING V. AMBEST, INC., ET AL.*
No. 2:07-cv-02300-KHV-JPO
N.D. Cal. No. 3:06-cv-07621-PJH

*WYATT V. B.P. AMERICA CORP. DBA ATLANTIC RICHFIELD COMPANY, ET AL.*
No. 2:07-cv-02507-KHV-JPO
S.D. Cal. No. 3:07-cv-01754-BTM-JMA

*YOUNG V. AMBEST, INC., ET AL.*
No. 2:07-cv-02510-KHV-JPO
D. Guam No. 1:07-cv-00026

*RUYBALID V. BP CORPORATION NORTH AMERICA, INC., ET AL.*
No. 2:07-cv-02398-KHV-JPO
S.D. Ind. No. 1:07-cv-00826-JDT-TAB

*AMERICAN FIBER & CABLING, LLC V. BP CORPORATION NORTH AMERICA INC., ET AL.*
No. 2:07-cv-02052-KVH-JPO
D. Kan. No. 2:07-cv-02053-JWL-JPO

*WILSON V. AMPRIDE, ET AL.*
No. 2:06-cv-02582-KVH-JPO
D. Kan. No. 2:06-cv-02582-KVH-JPO

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE MOTOR FUEL TEMPERATURE SALES
PRACTICES LITIGATION

(This Document Relates to All Cases)

MDL Docket No. 1840

Case No.:07-md-1840-KHV-JPO

## [PROPOSED] PRELIMINARY APPROVAL AND NOTICE ORDER

WHEREAS, this matter has come before the Court pursuant to the Plaintiffs' Unopposed
Motion for Order Conditionally Certifying Settlement Classes, Preliminarily Approving Class
Action Settlements, Directing and Approving Distribution of Class Notice, Setting Hearing for
Final Approval of Class Action Settlements and Appointing Class Counsel (the "Motion");

WHEREAS, the Court finds that it has jurisdiction over this action and each of the parties
for purposes of settlement and that venue is proper in this district;

WHEREAS, the Court has considered the Motion, the Proposed Settlements and exhibits
thereto, and all other documentary evidence submitted concerning the Motion; and

WHEREAS, the Court is otherwise fully advised in the premises and on considering the
record of these proceedings, the representations, argument, and recommendation of counsel for
the parties, and the requirements of law.

**IT IS HEREBY ORDERED THAT:**

**I.     PRELIMINARY APPROVAL OF THE SETTLEMENTS**

A.      The terms of the settlement agreement and release between (1) the Class
Representatives on behalf of themselves and the Settlement Classes (the "Plaintiffs") and (2) BP
Products North America Inc. and BP West Coast Products LLC (collectively, "BP"), dated June
____, 2012, including all exhibits thereto (the "Proposed BP Settlement" annexed hereto as Exhibit
A) are preliminarily approved, subject to further consideration thereof at the Fairness Hearing

provided for below.  Unless otherwise provided herein, the terms defined in the Proposed BP

Settlement shall have the same meaning in this Order.  The Proposed BP Settlement was entered

into at arms-length by experienced counsel and only after extensive arms-length negotiations.

The Proposed BP Settlement is not the result of collusion.  The Proposed BP Settlement bears a

probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of

Plaintiffs as well as BP.  The Proposed BP Settlement is sufficiently within the range of

reasonableness so that notice of the Proposed BP Settlement should be given as provided by this

Order.

        B.      The terms of the settlement agreement and release between (1) the Class

Representatives on behalf of themselves and the Settlement Classes (the "Plaintiffs") and (2)

Casey's General Stores, Inc., ("Casey's"), dated June ___, 2012, including all exhibits thereto

(the "Proposed Casey's Settlement" annexed hereto as Exhibit B) are preliminarily approved,

subject to further consideration thereof at the Fairness Hearing provided for below.  Unless

otherwise provided herein, the terms defined in the Proposed Casey's Settlement shall have the

same meaning in this Order.  The Proposed Casey's Settlement was entered into at arms-length

by experienced counsel and only after extensive arms-length negotiations.  The Proposed Casey's

Settlement is not the result of collusion.  The Proposed Casey's Settlement bears a probable,

reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as

well as Casey's.  The Proposed Casey's Settlement is sufficiently within the range of

reasonableness so that notice of the Proposed Casey's Settlement should be given as provided by

this Order.

        C.      The terms of the settlement agreement and release between (1) the Class

Representatives on behalf of themselves and the Settlement Classes (the "Plaintiffs") and (2)

3652953.4

CITGO Petroleum Corporation ("CITGO"), dated June ___, 2012, including all exhibits thereto (the "Proposed CITGO Settlement" annexed hereto as Exhibit C) are preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below.  Unless otherwise provided herein, the terms defined in the Proposed CITGO Settlement shall have the same meaning in this Order.  The Proposed CITGO Settlement was entered into at arms-length by experienced counsel and only after extensive arms-length negotiations.  The Proposed CITGO Settlement is not the result of collusion.  The Proposed CITGO Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as CITGO.  The Proposed CITGO Settlement is sufficiently within the range of reasonableness so that notice of the Proposed CITGO Settlement should be given as provided by this Order.

D.     The terms of the settlement agreement and release between (1) the Class Representatives on behalf of themselves and the Settlement Classes (the "Plaintiffs") and (2) ConocoPhillips Company ("ConocoPhillips"), dated June ___, 2012, including all exhibits thereto (the "Proposed Conoco Settlement" annexed hereto as Exhibit D) are preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below.  Unless otherwise provided herein, the terms defined in the Proposed Conoco Settlement shall have the same meaning in this Order.  The Proposed Conoco Settlement was entered into at arms-length by experienced counsel and only after extensive arms-length negotiations.  The Proposed Conoco Settlement is not the result of collusion.  The Proposed Conoco Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as Conoco.  The Proposed Conoco Settlement is sufficiently within the range of reasonableness so that notice of the Proposed Conoco Settlement should be given as provided by this Order.

3652953.4

E.      The terms of the settlement agreement and release between (1) the Class

Representatives on behalf of themselves and the Settlement Class (the "Plaintiffs") and (2) Dansk

Investment Group, Inc. ("Dansk"), f/k/a USA Petroleum Corporation, dated March 15, 2012,

including all exhibits thereto (the "Proposed Dansk Settlement" annexed hereto as Exhibit E) are

preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided

for below.  Unless otherwise provided herein, the terms defined in the Proposed Dansk Settlement

shall have the same meaning in this Order.  The Proposed Dansk Settlement was entered into at

arms-length by experienced counsel and only after extensive arms-length negotiations.  The

Proposed Dansk Settlement is not the result of collusion.  The Proposed Dansk Settlement bears a

probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of

Plaintiffs as well as Dansk.  The Proposed Dansk Settlement is sufficiently within the range of

reasonableness so that notice of the Proposed Dansk Settlement should be given as provided by

this Order.

F.      The terms of the settlement agreement and release between (1) the Class

Representatives on behalf of themselves and the Settlement Classes (the "Plaintiffs") and (2)

ExxonMobil Corporation, Esso Virgin Islands, Inc. and Mobil Oil Guam, Inc. (collectively,

"ExxonMobil"), dated June ___, 2012, including all exhibits thereto (the "Proposed ExxonMobil

Settlement" annexed hereto as Exhibit F) are preliminarily approved, subject to further

consideration thereof at the Fairness Hearing provided for below.  Unless otherwise provided

herein, the terms defined in the Proposed ExxonMobil Settlement shall have the same meaning in

this Order.  The Proposed ExxonMobil Settlement was entered into at arms-length by experienced

counsel and only after extensive arms-length negotiations.  The Proposed ExxonMobil Settlement

is not the result of collusion.  The Proposed ExxonMobil Settlement bears a probable, reasonable

relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as

3652953.4

ExxonMobil. The Proposed ExxonMobil Settlement is sufficiently within the range of reasonableness so that notice of the Proposed ExxonMobil Settlement should be given as provided by this Order.

G.       The terms of the settlement agreement and release between (1) the Class Representatives on behalf of themselves and the Settlement Classes (the "Plaintiffs") and (2) Sam's Club, Sam's East, Inc., Sam's West, Inc., Wal-Mart Stores, Inc., and Wal-Mart Stores East, LLP ("Sam's"), dated June ___, 2012, including all exhibits thereto (the "Proposed Sam's Settlement" annexed hereto as Exhibit G) are preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. Unless otherwise provided herein, the terms defined in the Proposed Sam's Settlement shall have the same meaning in this Order. The Proposed Sam's Settlement was entered into at arms-length by experienced counsel and only after extensive arms-length negotiations. The Proposed Sam's Settlement is not the result of collusion. The Proposed Sam's Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as Sam's. The Proposed Sam's Settlement is sufficiently within the range of reasonableness so that notice of the Proposed Sam's Settlement should be given as provided by this Order.

H.       The terms of the settlement agreement and release between (1) the Class Representatives on behalf of themselves and the Settlement Class (the "Plaintiffs") and (2) Motiva Enterprises LLC and Equilon Enterprises LLC (collectively, "Shell"), dated June ___, 2012, including all exhibits thereto (the "Proposed Shell Settlement" annexed hereto as Exhibit H) are preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. Unless otherwise provided herein, the terms defined in the Proposed Shell Settlement shall have the same meaning in this Order. The Proposed Shell Settlement was

3652953.4

entered into at arms-length by experienced counsel and only after extensive arms-length negotiations. The Proposed Shell Settlement is not the result of collusion. The Proposed Shell Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as Shell. The Proposed Shell Settlement is sufficiently within the range of reasonableness so that notice of the Proposed Shell Settlement should be given as provided by this Order.

I.      The terms of the settlement agreement and release between (1) the Class Representatives on behalf of themselves and the Settlement Class (the "Plaintiffs") and (2) Sinclair Oil Corporation ("Sinclair"), dated June ___, 2012, including all exhibits thereto (the "Proposed Sinclair Settlement" annexed hereto as Exhibit I) are preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. Unless otherwise provided herein, the terms defined in the Proposed Sinclair Settlement shall have the same meaning in this Order. The Proposed Sinclair Settlement was entered into at arms-length by experienced counsel and only after extensive arms-length negotiations. The Proposed Sinclair Settlement is not the result of collusion. The Proposed Sinclair Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as Sinclair. The Proposed Sinclair Settlement is sufficiently within the range of reasonableness so that notice of the Proposed Sinclair Settlement should be given as provided by this Order.

J.      The terms of the settlement agreement and release between (1) the Class Representatives on behalf of themselves and the Settlement Class (the "Plaintiffs") and (2) Valero Energy Corporation and affiliates ("Valero"), dated June ___, 2012, including all exhibits thereto (the "Proposed Valero Settlement" annexed hereto as Exhibit J) are preliminarily approved,

3652953.4

subject to further consideration thereof at the Fairness Hearing provided for below. Unless otherwise provided herein, the terms defined in the Proposed Valero Settlement shall have the same meaning in this Order. The Proposed Valero Settlement was entered into at arms-length by experienced counsel and only after extensive arms-length negotiations. The Proposed Valero Settlement is not the result of collusion. The Proposed Valero Settlement bears a probable, reasonable relationship to the claims alleged by Plaintiffs and the litigation risks of Plaintiffs as well as Valero. The Proposed Valero Settlement is sufficiently within the range of reasonableness so that notice of the Proposed Valero Settlement should be given as provided by this Order.

K.     This Order will refer to the ten proposed settlements as the "Proposed Settlements."

## II.     PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASSES

Each Proposed Settlement contains subclasses (the "Settlement Classes") for each of the states (the "States at Issue") covered by that Proposed Settlement.

A.     The following Settlement Classes are preliminarily certified for settlement purposes only, in accordance with Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, for the Proposed Settlements for BP, CITGO, Conoco, ExxonMobil, Shell, and Sinclair (together, the "Refiner Settling Defendants"):

> All persons and entities who, at any time during the period from
> January 1, 2001 to the date of preliminary approval of the
> settlement agreement in this action, purchased motor fuel in the
> [State at Issue] from a retail motor fuel station. Excluded from
> the class is any judicial officer presiding over this action and the
> members of his/her immediate family.

B.     The following Settlement Classes are preliminarily certified for settlement

3652953.4

purposes only, in accordance with Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil

Procedure, for the Proposed Settlements for Casey's, Dansk, and Sam's:

> All persons who, between January 1, 2001 and the date of
> preliminary approval of this Settlement Agreement, purchased
> motor fuel from [Casey's/Dansk/Sam's] in [State at Issue],
> excluding: (a) officers and employees of [Casey's/Dansk/Sam's]
> or its affiliates; and (b) the Court, and members of the Court's
> immediate family.

C. The following Settlement Classes are is preliminarily certified for settlement

purposes only, in accordance with Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil

Procedure, for the Proposed Valero Settlement:

> All persons and entities who, at any time during the period from
> January 1, 2001 to the date of Preliminary Approval of the
> Agreement, purchased Retail Motor Fuel in a State at Issue from
> a retail motor fuel Station that is or was owned, operated
> or branded by Valero [], excluding officers and employees of
> Valero or its affiliates; and the Court, and members of the Court's
> immediate family.

D. The States at Issue for each of the Proposed Settlements are as follows:

| Settling Defendant | States at Issue |
| --- | --- |
| BP (25 states) | Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, North Carolina, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, and Washington, D.C. |
| Casey's (5 states) | Arkansas, Indiana, Kansas, Missouri, and Oklahoma |
| CITGO (25 states) | Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C. |
| ConocoPhillips (28 states) | Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, D.C., and Guam |
| Dansk (1 state) | California |

3652953.4

| ExxonMobil (28 states) | Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, D.C., Guam, and the U.S. Virgin Islands |
|---|---|
| Sam's (25 states) | Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah, and Virginia |
| Shell (27 states) | Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, and Washington, D.C. |
| Sinclair (11 states) | Arizona, Arkansas, Kansas, Mississippi, Missouri, Nevada, New Mexico, Oklahoma, Oregon, Texas and Utah |
| Valero (24 states) | Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia |

E.     The Court is exercising its discretion and preliminarily certifying each of the

Settlement Classes for settlement purposes only and in granting this motion has not determined

whether the actions subject to the Settlements could properly be maintained as class actions on

behalf of the Settlement Classes for purposes of trial.  The Court recognizes that if the Settlement

Classes for a Proposed Settlement covered by this Order are not certified at the Certification

Hearing, one of the Proposed Settlements is not finally approved by the Court following the

Fairness Hearing, and/or if a Proposed Settlement is terminated for any reason, the preliminary

certification of the Settlement Classes in such Proposed Settlement(s) shall be null, void, and

vacated, and shall not be used or cited thereafter by any person or entity; and the fact of the

settlement reflected in the Proposed Settlements, that the Settling Defendants did not oppose the

certification of any class under their respective Proposed Settlements, or that the Court

preliminarily approved the certification of any Settlement Classes, shall not be used or cited

3652953.4

thereafter by any person or entity, including in any manner whatsoever, including without

limitation any contested proceeding relating to the certification of any class.

## III.   APPROVAL OF SETTLEMENT CLASS REPRESENTATIVES, SETTLEMENT CLASS COUNSEL, NOTICE ADMINISTRATOR AND SETTLEMENT ADMINISTRATOR

The nomination by Settlement Class Counsel of the persons listed on Exhibit K hereto to

serve as provisional Class Representatives for the Proposed Settlements is hereby approved.

The following are hereby approved as Settlement Class Counsel ("Class Counsel"):

Robert Horn, Thomas Girardi, George Zelcs and Thomas Bender.

The Court appoints Dahl Administration, LLC, to serve as Notice Administrator to assist

Class Counsel in effectuating the Notice Plan and exclusion procedures defined below and

perform such related duties as may be necessary.

The Court appoints _____ to serve as Settlement Administrator for the

Proposed Settlements for the Refiner Settling Defendants, to process any requests for payment

from the Net Settlement Fund for each such Proposed Settlement and to perform such related

duties as may be necessary.

## IV.   NOTICE TO SETTLEMENT CLASSES

The Court directs the parties to provide notice to the Settlement Classes in the form of the

Notice of Class Action Settlement (the "Long-Form Notice") attached hereto as Exhibit L.

Notice to members of the Settlement Classes ("Class Members") will be given according to the

notice plan (the "Notice Plan"), which is approved.

The parties shall provide notice to Class Members by (i) publication of a short-form notice

(the "Short-Form Notice") in *Parade* Magazine, in the form attached hereto as Exhibit M, once

over a thirty-day period; (ii) banner notices placed on Internet websites most heavily trafficked by

Class Members, which notices alert Class Members about, and provide a link to a website

3652953.4

described herein; (iii) an Internet website that contains the Long-Form Notice, the Short-Form

Notice, instructions about how to participate in the Proposed Settlements, including opt-out and

objection procedures, and provides a mechanism for Class Members to submit opt-out requests

electronically; (iv) a press release with the Short-Form notice distributed electronically via PR

Newswire; and (v) a toll-free telephone helpline that assists English- and Spanish-language

callers in obtaining basic information about the Proposed Settlements and where to get additional

information.

The Notice Plan shall be completed within 60 days following entry of this Order.

The Court finds that the Notice Plan constitutes the best notice practicable under the

circumstances for these Settlement Classes.  If implemented as set forth in the Notice Plan

documents filed with the Court, the Court finds that the Notice Plan is due and sufficient notice to

the Settlement Classes, and the Notice Plan fully satisfies the requirements of due process and

Rule 23(c)(2)(B) and (e).

## V.     OPT OUT PROVISION

A Class Member is permitted to opt out of any of the Proposed Settlements in which he or

she is a Class Member via an opt-out procedure.  To opt out of a Proposed Settlement, a Class

Member must either (i) submit a letter requesting exclusion to the Notice Administrator by U.S.

Mail postmarked no later than 90 days after entry of this Order, or (ii) submit a request for

exclusion electronically through the website, no later than 90 days after entry of this Order, by

completing a form available on the website.  The request must be signed – electronic submissions

must include an "/s/" followed by the Class Member's name – and must include the Class

Member's name and address.  The request must also state: "I request that I be excluded from the

[_____] Settlement in *In re Motor Fuel Temperature Sales Practices Litigation*, MDL Docket

3652953.4

No. 1840." Each Settling Defendant has the right to terminate its respective Proposed Settlement in accordance with the procedure set forth in its Proposed Settlement.

The Long-Form and Short-Form Notices and website shall include information about such opt-out procedures.

## VI.   OBJECTION PROVISION

A member of one or more of the Settlement Classes may object to any of the Proposed Settlements in which he or she is a Class Member via an objection procedure. To object to a Proposed Settlement, no later than 90 days after entry of this Order, such person must file a written objection with the Court and serve a copy of the written objection on Class Counsel and Counsel for the Settling Defendants as designated in the Long-Form Notice. The objection must be signed and must include the Class Member's name and address. No such person shall be heard and no papers, briefs, pleadings, or other documents submitted by any objecting person shall be received and considered by the Court unless such person complies with the objection procedures set out here. Any person who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in this action.

The Long-Form and Short-Form Notices and website shall include information about such objection procedures.

## VII.   FINAL APPROVAL HEARING

The Court hereby schedules a Final Approval Hearing to determine whether the Proposed Settlements should be approved as being fair, reasonable, and adequate, and in the best interests of the Settlement Classes and why judgment should not be entered thereon. The hearing will take place on _____, 2012, at _____ a.m. The Final Approval Hearing may, without further notice to the Settlement Classes, be continued or adjourned by Order of the Court.

3652953.4

However, the Final Approval Hearing will not take place less than four months after the date of this Order to allow time for the notice and objections procedures set forth herein.

Any person who objects to one or more of the Proposed Settlements may appear in person or through counsel, at his or her own expense, at the Final Approval Hearing (or at such other time as may be directed by the Court) to present any evidence or argument that may be proper and relevant.

## VIII.   ATTORNEYS' FEES AND COSTS

Attorneys' Fees and Costs.  Class Counsel may apply for approval by the Court of their request for attorneys' fees and costs.  The Court will permit only a single request for each Proposed Settlement from all counsel for Plaintiffs for attorneys' fees and costs.  Class Counsel shall make this application on behalf of all persons seeking attorneys' fees and litigation costs pursuant to these Proposed Settlements.  Any attorneys' fees and litigation costs awarded by the Court in connection with the Proposed Settlements for the Refiner Settling Defendants will be paid out of the respective Settlement Funds, subject to the cap on such fees and costs awards in each of those Proposed Settlements.  Any attorneys' fees and litigation costs awarded by the Court in connection with the Proposed Settlements for Casey's, Dansk, Sam's, or Valero will be paid by such Settling Defendant subject to the cap on such fees and costs awards in each such Proposed Settlement.

Notice and Settlement Costs.  To the extent that a Refiner Settling Defendant has agreed that a fixed portion of its Settlement Amount may be applied to pay the costs of administering and implementing the Notice Plan (a "Notice Amount"), such Notice Amount may be utilized upon payment to pay or reimburse for the costs of notice.  Class Counsel may otherwise apply to the Court for reimbursement of expenses incurred in administering this Settlement Agreement,

3652953.4

including the cost of class notice; plus any accrued interest on such attorneys' fees, litigation costs and settlement administration expenses at the time of payment.

## IX.   INCENTIVE FEE

Class Counsel may apply for approval by the Court for an award of an incentive fee for the Class Representatives named on Exhibit K, in an amount not to exceed Two Thousand Dollars ($2,000) in connection with any one Proposed Settlement and not to exceed Four Thousand Dollars ($4,000) collectively from all of the Proposed Settlements, except that as to the Proposed Dansk Settlement, Class Counsel will seek an incentive fee not to exceed One Thousand Dollars ($1,000) for each of the two Class Representatives.  Any such incentive fee awarded by the Court will be deducted from the amount awarded Class Counsel for fees and costs, except that Dansk will pay any such incentive fee awarded in connection with the Proposed Dansk Settlement.

## X.   TERMINATION

If any of the Proposed Settlements are terminated, (a) the terminated Proposed Settlements shall have no effect on the rights of the Parties or the Class Members to take any action in support of or in opposition to class certification and (b) subject expressly to the reservation and preservation of rights and defenses and all Parties and Class Members shall be restored to their respective positions immediately prior to the date the Parties signed such Proposed Settlement.  In such event, the Proposed Settlement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the Parties, and shall not be deemed or construed to be an admission or confession by or against any Party of any fact, matter, or proposition of law.

The Proposed Settlements, the evidence introduced at the preliminary hearing on the Motion, or that may be introduced into evidence at the Final Approval Hearing, or in connection

3652953.4

with any related motion (including any motion to enjoin or stay any of the Filed Actions), and all

negotiations, proceedings, documents prepared and statements made in connection herewith, shall

be without prejudice to Plaintiffs and the Settling Defendants, and shall not (i) be deemed or

construed to be an admission or confession by or against any Party of any fact, matter, or

proposition of law; (ii) constitute, be construed as, or be admissible as evidence of an admission

by or against any Person, including any Party or Class Member, that this Action or any other

proposed or certified class action, can be or is properly certified for trial or litigation purposes

under Rule 23 of the Federal Rules of Civil Procedure or any similar statute or rule; (iii)

constitute, be construed, be offered, or received into evidence as an admission of the validity of

any claim or defense, or the truth of any fact alleged or other allegation in the Action, or in any

other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or

liability of any kind on the part of any Settling Defendant, or (iv) be used to establish a waiver of

any defense or right, or to establish or contest jurisdiction or venue.

## XI.   MODIFICATIONS

Prior to the entry of the Final Approval Order and Judgment, a Proposed Settlement may,

with approval of the Court, be modified by written agreement of Class Counsel and counsel for

the applicable Settling Defendant in their discretion without giving any additional notice to the

relevant Settlement Classes (other than the notice given with respect to the settlement and the

Final Approval Hearing), provided that such modifications in the aggregate are not materially

adverse to the Settlement Classes for that Proposed Settlement.

## XII.   STAY

All proceedings in any of the Actions are stayed as between Plaintiffs and any Settling

Defendant, except those related to effectuating and complying with the Proposed Settlements,

3652953.4

pending the Court's determination of whether the Proposed Settlements should be finally

approved.

## XIII.   CONTINUING JURISDICTION

The Court retains continuing jurisdiction over the Settlement Classes and the Settling

Defendants to implement, administer, consummate, and enforce the Proposed Settlements and

this Order.

DATED:
This ___ day of _____, 2012


_____
Honorable Kathryn H. Vratil
United States District Court

16

3652953.4

# EXHIBIT C
## (Long-Form Class Notice)

LEGAL NOTICE BY ORDER OF
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

# IF YOU PURCHASED GASOLINE OR DIESEL FUEL IN CERTAIN STATES (LISTED BELOW) ON OR AFTER JANUARY 1, 2001, SETTLEMENTS IN A CLASS ACTION LAWSUIT AFFECT YOUR RIGHTS.

## READ THIS NOTICE CAREFULLY

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- **There are proposed settlements ("Settlements") with ten defendants (the "Companies") in a class action lawsuit, *In re Motor Fuel Temperature Sales Practices Litigation*.**

- Persons or entities that purchased gasoline or diesel fuel ("Plaintiffs") on or after January 1, 2001, in the following States and jurisdictions — **Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, D.C., Guam and the U.S. Virgin Islands** (the "States at Issue") — brought lawsuits claiming that selling motor fuel without disclosing or adjusting for the effects of temperature violates consumer protection and other laws. All of the cases relating to the States at Issue and all of the Companies are consolidated in a multidistrict proceeding titled *In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840, and are before the United States District Court for the District of Kansas (the "Court").

- The Plaintiffs have entered into the Settlements with certain defendants in the lawsuits: **BP PRODUCTS NORTH AMERICA INC. and BP WEST COAST PRODUCTS LLC ("BP"); CASEY'S GENERAL STORES, INC.; CITGO PETROLEUM CORP.; CONOCOPHILLIPS CO.; DANSK INVESTMENT GROUP, INC. (F/K/A USA PETROLEUM CORP.); ESSO VIRGIN ISLANDS, INC., MOBIL OIL GUAM, INC. AND EXXONMOBIL CORP. ("ExxonMobil"); SAM'S CLUB; MOTIVA ENTERPRISES LLC and EQUILON ENTERPRISES, LLC d/b/a SHELL OIL PRODUCTS US ("SHELL"); SINCLAIR OIL CO.; and VALERO MARKETING AND SUPPLY CO.** (the "Companies"). These Companies deny all of Plaintiffs' claims, but have agreed to the separate Settlements to end their role in the class action. **There is a separate Settlement for each Company, and not every one of the Settlements covers all of the States at Issue.**

- Your rights and options — and the deadlines to exercise them — are explained in this notice. Read this notice carefully.

- If you have questions, go to www.HotFuelLitigation.com, call 1-800-XXX-XXXX, or email _____. You can also write to Hot Fuel Notice Administrator, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614.

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE

-1-

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS FOR THE SETTLEMENTS: | |
|---|---|
| **REMAIN A MEMBER OF THE SETTLEMENT CLASSES** | To remain a class member for all of the Settlements, you do not need to do anything. You automatically will be included in the class. If you choose to remain in the Settlement Classes, you will give up your right to sue the Companies on the claims relating to the subject matter of the lawsuits. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASSES** | You may request exclusion from one or more of the Settlement Classes by filling out the "Opt-Out" form online or submitting an email or letter to the Notice Administrator at the address below. **The request(s) for exclusion must be submitted electronically or postmarked no later than _____.** If you exclude yourself, you will not lose your claims against the Company involved in that Settlement, and you will not be bound by any judgments or orders of the Court as to that Settlement. |
| **OBJECT TO ONE OR MORE OF THE SETTLEMENTS** | Write to the Court about why you don't like one or more of the Settlements. To object to or comment on the Settlements, you must send a copy of the appropriate papers via mail to Class Counsel and to counsel for the Defendants. Their addresses are listed below. **Your written objection must be postmarked no later than _____, 2012.** |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlements. The Court will hold a Fairness Hearing on _____, to consider whether the Settlements are fair, reasonable, and adequate, and may also consider the motion for Plaintiffs' attorneys' fees, costs and expenses. |

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE

-2-

## WHAT THIS NOTICE CONTAINS

**Basic Information** ........................................................................................................... 4

   1.   WHAT ARE THESE LAWSUITS ABOUT? .......................................................... 4

   2.   WHAT IS A CLASS ACTION AND WHO IS INVOLVED? ................................. 4

**Who Is in the Settlement** ............................................................................................... 4

   3.   WHO IS A CLASS MEMBER? ............................................................................ 4

   4.   DID THE COURT DECIDE WHO IS RIGHT? ................................................... 5

   5.   WHAT DO THE SETTLEMENTS DO? ............................................................... 5

**If You Do Nothing** ........................................................................................................... 5

   6.   WHAT HAPPENS IF I DO NOTHING? ............................................................. 5

**Excluding Yourself from the Settlement** .................................................................... 6

   7.   WHY WOULD I ASK TO BE EXCLUDED? ...................................................... 6

   8.   HOW DO I EXCLUDE MYSELF FROM THE CLASS? ................................... 6

   9.   IF I DON'T EXCLUDE MYSELF, CAN I SUE FOR THE SAME THING LATER? .................................. 6

**Objecting to the Settlement** ......................................................................................... 6

   10.   HOW DO I OBJECT TO THE SETTLEMENT? ................................................ 6

**The Lawyers Representing You** .................................................................................... 7

   11.   DO I HAVE A LAWYER IN THE CASE? .......................................................... 7

   12.   HOW WILL THE LAWYERS AND CLASS REPRESENTATIVES BE PAID? .............. 7

   13.   SHOULD I GET MY OWN LAWYER? ............................................................. 7

**The Fairness Hearing** .................................................................................................... 8

   14.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? .. 8

   15.   DO I HAVE TO COME TO THE HEARING? ..................................................... 8

   16.   MAY I SPEAK AT THE HEARING? .................................................................. 8

**Getting More Information** ............................................................................................. 8

   17.   ARE THERE MORE DETAILS ABOUT THIS LAWSUIT? ............................ 8

   18.   HOW CAN I LEARN MORE? ............................................................................ 8

QUESTIONS?  CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE

## BASIC INFORMATION

### 1. WHAT ARE THESE LAWSUITS ABOUT?

This lawsuit is about whether the Companies misled consumers by failing to disclose the temperature of motor fuel or account for the temperature of the motor fuel when it was sold to consumers. Plaintiffs claim that adjusting for temperature in the sale of motor fuel and providing buyers of motor fuel with information about temperature is important because the volume of motor fuel changes as it heats up or cools down. Plaintiffs claim that the amount of energy per gallon of motor fuel varies depending upon its temperature when it is dispensed from the pump. Plaintiffs claim that because the Companies sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature, do not adjust the amount of fuel excise tax recoupment passed on to consumers and engaged in a conspiracy to preclude the use of temperature compensation in retail motor fuel sales, they are liable under consumer protection laws and other laws in the States at Issue.

The Companies deny the Plaintiffs' claims, deny all allegations of wrongdoing and contend that they have fully complied with the law.

### 2. WHAT IS A CLASS ACTION AND WHO IS INVOLVED?

In a class action lawsuit, one or more people called "class representatives" sue on behalf of themselves and other people who have similar claims. Together, they are called a "class" or "class members." The class representatives for the Settlements are individuals and businesses that purchased motor fuel in the States at Issue on or after January 1, 2001.

## WHO IS IN THE SETTLEMENT

### 3. WHO IS A CLASS MEMBER?

The class members for the Settlements are persons or entities who bought gasoline or diesel fuel at a gas station in any of the States at Issue from January 1, 2001 to _____, 2012. For the BP, CITGO, Conoco, ExxonMobil, Shell, and Sinclair Settlements, you do not have to have purchased gas from one of those Companies to be a class member.

For the Casey's, Dansk, Sam's Club, and Valero Settlements, you must have purchased motor fuel from a station owned, operated, or branded by those Companies from January 1, 2001 to _____, 2012 to be a class member.

If you meet any of the above descriptions you are a class member.

Excluded from the class are federal judges who have presided over the case, for some of the Settlements persons employed by the Companies and affiliates of the Companies, and individuals and entities who timely and validly request exclusion from the class.

If you are still not sure whether you are a class member, you can email or write to the lawyers in this case at the addresses listed in question 18.

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICATIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE

## 4.  DID THE COURT DECIDE WHO IS RIGHT?

No.  The Parties entered the Settlements before the lawsuits reached a trial, so if the Court approves the Settlements there will not be a trial or decision about which side was right.

## WHAT THE SETTLEMENT PROVIDES

## 5.  WHAT DO THE SETTLEMENTS DO?

The Settlements are of different types:

(1) Under the Settlements with BP, CITGO, ConocoPhillips, ExxonMobil, Shell, and Sinclair, each of those Companies will pay money to set up a fund (i) to lower the cost for retail stations to install special pumps that automatically correct for the effects of temperature ("ATC pumps"), and to disclose information about the effects of temperature on motor fuel, and/or (ii) to reduce the cost for state officials to ensure that the pump changes and disclosures are made lawfully.

The amount that each of these Companies will pay to set up a settlement fund is:

| Company | Amount |
|---|---|
| BP | $5 million |
| CITGO | $800,000 |
| ConocoPhillips | $5 million |
| ExxonMobil | $5 million |
| Shell | $5 million |
| Sinclair | $800,000 |

(2) The Settlements with Casey's, Dansk, and Sam's Club require those Companies to install ATC pumps over time at stations in the States at Issue where ATC pumps are allowed, and to disclose information about the effects of temperature on motor fuel.

(3) The Settlement with Valero requires Valero to post the actual temperature of the diesel fuel and regular unleaded gasoline at its stations along with information about the effects of temperature on motor fuel.

None of the Settlements provides money directly to consumers who have purchased retail motor fuel.

## IF YOU DO NOTHING

## 6.  WHAT HAPPENS IF I DO NOTHING?

If you do nothing, you will be included in the class.  You will be bound by the Settlements if they are finally approved by the Court.  If you do nothing, you will not be able to sue the Companies on your own for the same legal claims that are resolved by the Settlements.

If you want to pursue any claim related to the issues in this case, on your own, against any of the Companies, you may need to opt out of the Settlements.

QUESTIONS?  CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICATIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 7. WHY WOULD I ASK TO BE EXCLUDED?

You would ask to be excluded if you want to keep your right to pursue your own individual lawsuit against one or more of the Companies relating to the issues in the lawsuits. If you choose to exclude yourself – sometimes called "opting out" – you will be able to sue the Companies on your own and you will not be bound by any of the Settlements.

### 8. HOW DO I EXCLUDE MYSELF FROM THE CLASS?

To exclude yourself from the class, you must either: (1) go to www.HotFuelLitigation.com and follow the directions for how to fill out and submit the opt-out form electronically; (2) download and print out the opt-out form from the website, fill it out and sign it, and send it by first class mail to: Hot Fuel Settlement Opt Out, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614; (3) email the completed and signed opt-out form to _____; or (4) mail or email a request for exclusion that includes your full name (and business name, if applicable), mailing address, email address, signature (or an electronic signature consisting of "/s/" plus your typed name), and the following statement: "I request that I be excluded from the Settlement Class in In re Motor Fuel Temperature Sales Practices Litigation, MDL Docket No. 1840, for the following Settlement(s): _____." You must fill in the blank with the Companies for which you request exclusion.

REQUESTS FOR EXCLUSION THAT ARE NOT POSTMARKED ON OR BEFORE _____, 2012, OR ARE NOT SUBMITTED ELECTRONICALLY ON OR BEFORE THAT DATE WILL NOT BE HONORED.

### 9. IF I DON'T EXCLUDE MYSELF, CAN I SUE FOR THE SAME THING LATER?

No. Unless you exclude yourself, if the Court approves the Settlements you will lose your right to sue the Companies for relief arising from the claims that are resolved by the Settlements.

## OBJECTING TO THE SETTLEMENT

### 10. HOW DO I OBJECT TO THE SETTLEMENT?

You can object to a Settlement for which you are a class member. Submitting an objection gives you the chance to tell the Court why you think the Court should not approve the Settlement(s). To object, you must send a letter stating which Settlement(s) you object to and why. Be sure to include your name, address, telephone number, and signature. You must mail the objection to these three different places no later than _____, 2012:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court | Robert A. Horn | Martin M. Loring |
| U.S. District Court for the District of Kansas | Horn Aylward & Bandy, LLC | Husch Blackwell LLP |
| 500 State Ave. | 2600 Grand Blvd., Suite 1100 | 4801 Main Street, Suite 1000 |
| Kansas City, KS 66101 | Kansas City, MO 64108 | Kansas City, MO 64112 |

OBJECTIONS THAT ARE NOT POSTMARKED ON OR BEFORE _____, 2012 WILL NOT BE HONORED.

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE

## THE LAWYERS REPRESENTING YOU

### 11. DO I HAVE A LAWYER IN THE CASE?

Yes, unless you exclude yourself from the class. The Court decided that Bob Horn (Horn, Aylward & Bandy, LLC), Tom Girardi (Girardi Keese), George Zelcs (Korein Tillery LLC), and Tom Bender (Walters, Bender, Strohbehn & Vaughan) are qualified to represent the class members. Together, these lawyers are called "Class Counsel." You will not be charged by these lawyers for their work on the case. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 12. HOW WILL THE LAWYERS AND CLASS REPRESENTATIVES BE PAID?

Class Counsel will ask the Court to approve payment of attorneys' fees and litigation costs. For the Settlements with BP, CITCO, ConocoPhillips, ExxonMobil, Shell, and Sinclair, Class Counsel may apply for payment of attorneys' fees and litigation costs up to 30% of the value of the funds. Thus, the maximum amount in attorney's fees and litigation costs from each of these Settlements is:

| Company | Amount |
|---|---|
| BP | $1.5 million |
| CITGO | $240,000 |
| ConocoPhillips | $1.5 million |
| ExxonMobil | $1.5 million |
| Shell | $1.5 million |
| Sinclair | $240,000 |

The other Companies have agreed to pay attorneys' fees and litigation costs approved by the Court up to the following limits:

| Company | Amount |
|---|---|
| Casey's | $700,000 |
| Dansk | $58,000 |
| Sam's Club | $3 million |
| Valero | $4.5 million |

In addition, Class Counsel may apply to the Court for "incentive fee" awards of up to $2,000 for the Class Representatives who brought the lawsuits against a Company. If a person or entity has served as a Class Representative for more than Settlement, the total amount of incentive fee awards that one person or entity can receive in connection with these Settlements is $4,000. Any incentive fee payments must be approved by the Court and will be deducted from the amount that can go to attorneys' fees and costs.

### 13. SHOULD I GET MY OWN LAWYER?

If you don't exclude yourself, you do not need to hire your own lawyer because Class Counsel is working on your behalf. If you want your own lawyer, you will have to pay that lawyer. You can ask that lawyer to appear in Court for you and speak on your behalf instead of Class Counsel.

QUESTIONS? CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE

-7-

## THE FAIRNESS HEARING

### 14. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold a Fairness Hearing at _____, 2012, at the United States District Court for the District of Kansas, 500 State Ave., Kansas City, KS 66101.  At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The judge in the case, Judge Vratil, will listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay to Class Counsel.  After the hearing, the Court will decide whether to approve each of the Settlements.  We do not know how long these decisions will take.

### 15. DO I HAVE TO COME TO THE HEARING?

No.  Class Counsel will answer questions the Court may have.  But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

### 16. MAY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in In re Motor Fuel Temperature Sales Practices Litigation, MDL Docket No. 1840."  Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than _____, 2012 and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses in question 10. You cannot speak at the hearing if you excluded yourself.

## GETTING MORE INFORMATION

### 17. ARE THERE MORE DETAILS ABOUT THIS LAWSUIT?

Information regarding the Settlements is also available at the Court's website, http://www.ksd.uscourts.gov/motor-fuel-temperature-sales-practices-litigation/.

### 18. HOW CAN I LEARN MORE?

If you have additional questions about the case, you can go to www.HotFuelLitigation.com, call 1-800-XXX-XXXX, or email _____.   You can also write to the Hot Fuel Notice Administrator, c/o Dahl Administration, P.O. Box 3614, Minneapolis, MN 55403-0614.

QUESTIONS?  CALL 1-800-XXX-XXXX TOLL FREE, OR VISIT WWW.HOTFUELLITIGATION.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, LLAMAR O VISITOR NUESTRO WEBSITE