**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) <br> SALES PRACTICES LITIGATION ) <br> ) <br> This Document Relates To: ) <br> ) <br> <u>Wilson, et al. v. Ampride, Inc., et al.</u>, ) <br>     Case No. 06-2582-KHV, ) <br> ) <br> and ) <br> ) <br> <u>American Fiber & Cabling, LLC, et al. v. BP Products</u> ) <br> <u>North America Inc., et al.</u>, ) <br>     Case No. 07-2053-KHV. ) <br> _____) | MDL No. 1840 <br> Case No. 07-1840-KHV |

**MEMORANDUM AND ORDER**

Plaintiffs in these consolidated cases bring class action claims against defendants for willfully omitting material facts and engaging in unconscionable acts or practices, in connection with a consumer transaction, in violation of the Kansas Consumer Protection Act, K.S.A. §§ 50-626(b)(3) and 50-627 ("KCPA"). See <u>Amended Pretrial Order</u> (Doc. #3809) filed March 20, 2012 at 16-20. They contend that defendants' practice of advertising and selling motor fuel for a specified price per gallon without disclosing or accounting for temperature violates the KCPA. This matter is before the Court on defendants' <u>Motion For Reconsideration Of Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Or, Alternatively, For Judgment On The Pleadings</u> (Doc. #4243) filed April 23, 2012 ("<u>Defendants' Motion</u>"), including <u>Defendants' Notice Of Supplemental Authority</u> (Doc. #4357) filed July 10, 2012.

Defendants' motion is three-fold: (1) they ask the Court to reconsider an order overruling their motion to dismiss for lack of subject matter jurisdiction under the political question doctrine, <u>Memorandum And Order</u> (Doc. #1444) filed December 3, 2009; (2) they argue that plaintiffs' claims

are preempted; and (3) they contend that any verdict for plaintiffs will impose retroactive liability in violation of defendants' rights under the Due Process and Takings Clauses of the Fifth Amendment. Defendants' arguments flow from the premise that "federal law, working with Kansas law, permits the sale of retail motor fuel without reference to temperature."  Defendants' Motion (Doc. #4244) at 2.  For the following reasons, the Court overrules defendants' motion.

## I. Procedural Objections

Under Federal Rules of Civil Procedure 12(b), 12(c) and 54(b), defendants ask the Court to reconsider its order on their motion to dismiss based on the political question doctrine. Alternatively, they seek judgment on the pleadings on that issue.  Defendants also seek judgment on the pleadings based on the other two arguments in their motion – preemption and unconstitutional retroactive liability – which they now raise for the first time in the Kansas cases.

Plaintiffs contend that defendants' motion to reconsider is governed by D. Kan. Rule 7.3(b) regarding non-dispositive orders.  See Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp., 748 F. Supp.2d 1261, 1264 & n.3 (D. Kan. 2010).  Defendants do not disagree.  Under Rule 7.3(b), a party "seeking reconsideration of non-dispositive orders must file a motion within 14 days after the order is filed unless the Court extends the time."  Defendants missed the 14-day deadline by more than two years.

Defendants try to get around the 14-day deadline by arguing that they filed the entire motion as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Here, however, both the Pretrial Order (Doc. #2558) filed November 1, 2011, and the Amended Pretrial Order (Doc. #3802) filed March 20, 2012, required

that dispositive motions be filed by November 1, 2011. Defendants missed this deadline by more than five months. Thus their arguments that the motion is timely under Rule 12(c) and the pretrial order are without merit.

Finally, defendants argue that the Court has broad power to reconsider an interlocutory order at any time before entering judgment on the claims at issue. See Fed. R. Civ. P. 54(b); Warren v. Am. Bankers Ins. of Fla., 507 F.3d 1239, 1243 (10th Cir. 2007) (encouraging district courts to exercise inherent power to reconsider interlocutory rulings when error is apparent). Defendants also note that under Rule 12, issues of subject matter jurisdiction can be raised at any time before final judgment. See Fed. R. Civ. P. 12(h)(3); see also Kontrick v. Ryan, 540 U.S. 443, 444 (2004) (litigant generally may raise court's lack of subject-matter jurisdiction at any time in same civil action). Because the Court has a duty to ensure that it has jurisdiction, it will consider defendants' motion to the extent it asks the Court to reconsider subject matter jurisdiction. See Koerpel v. Heckler, 797 F.2d 858, 861 (10th Cir. 1986). Of defendants' three arguments, the political question argument is the only one that does so.

**II.     Reconsideration Of Ruling On Political Question Doctrine**

Defendants ask the Court to reconsider an order which rejected similar political question arguments some two-and-a-half years ago. Memorandum And Order (Doc. #1444) at 4. In that order the Court observed as follows:

> [D]efendants assert that implementation of ATC devices would alter the definition of a "gallon" and thereby interfere with a "weights and measures" determination which the Constitution has explicitly committed to Congress. Defendants argue that through its partnership with state regulators and the National Conference on Weights and Measures ("NCWM"), Congress has defined a "gallon" solely in terms of volume. Defendants also note that for years, many fora have debated whether to mandate ATC and assert that the Court should abstain from that policy debate.

> Plaintiffs ably point out the many substantial flaws in defendants' argument; the Court briefly touches only a few. Defendants declare that the Constitution gives Congress exclusive power over weights and measures, but then assert that this case creates a clash between the Court and state regulators. Such a clash does not implicate the political question doctrine. See Gordon v. State of Texas, 153 F.3d 190, 194 (5th Cir. 1998). Further, only by the most strained reasoning – that anything having to do with "weights and measures" is off limits to federal courts – could this Court find that the issues in these suits are exclusively committed to the political branches.

Id. at 3-4. Defendants' arguments are no less flawed today than they were two years ago.

### A. Standard For Motion To Reconsider

A motion to reconsider must be based on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. See Coffeyville Res. Ref. & Mktg., 748 F. Supp.2d at 1264 & n.2; see also D. Kan. R. 7.3(b); Comeau v. Rupp, 810 F.Supp. 1172, 1174-75 (D. Kan. 1992). A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed. Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1332 (10th Cir. 1996); Resolution Trust Corp. v. Greif, 906 F. Supp. 1446, 1456 (D. Kan.1995); Voelkel v. Gen. Motors Corp., 846 F. Supp. 1482, 1483 (D. Kan. 1994). A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider. Cline v. S. Star Cent. Gas Pipeline, Inc., 370 F. Supp.2d 1130, 1132 (D. Kan. 2005).[1] Whether to grant a motion to reconsider is left to the Court's discretion.

Defendants contend that the order is now clearly erroneous and manifestly unjust. They primarily argue, however, that five developments have so changed the law and the nature of the case

---

[1] Although these rules are typically applied in the context of a motion to reconsider under D. Kan. Rule 7.3 or Federal Rules of Civil Procedure 59 and 60, the Court in its discretion uses them as guidance here.

4

that the Court should reconsider its ruling.

### B.   Political Question Doctrine

In general, the judiciary has a responsibility to decide cases properly before it, even those which it would gladly avoid. Zivotofsky v. Clinton, 132 S. Ct. 1421, 1427 (2012) (citing Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821)). The political question doctrine is a narrow exception to this rule. Id. (citing Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986)). The United States Supreme Court has summarized the exception as including controversies that the Constitution has textually and demonstrably committed to a coordinate political department, or where the law lacks judicially discoverable and manageable standards for resolving the issue. Id. (quoting Nixon v. United States, 506 U.S. 224, 228 (1993); Baker v. Carr, 369 U.S. 186, 217 (1962)).

In Baker v. Carr, the Supreme Court identified six circumstances in which an issue might present a political question: (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department"; (2) "a lack of judicially discoverable and manageable standards for resolving it"; (3) "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion"; (4) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government"; (5) "an unusual need for unquestioning adherence to a political decision already made"; and (6) "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." 369 U.S. at 217.

At the heart of the political question doctrine is the "relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to

the States." Id. at 210; see also Gordon, 153 F.3d at 194.  It reflects the principle that under our Constitution, the judicial branch cannot answer certain questions.  Out of respect for coordinate branches of government, political questions are nonjusticiable.  Baker, 369 U.S. at 198.  The political question doctrine thus implicates subject matter jurisdiction.  See Massachusetts v. EPA, 549 U.S. 497, 516 (2007).

### C. Intervening Developments

#### 1. Development #1

Defendants contend that under the Amended Pretrial Order (Doc. #3809), plaintiffs' claims now turn on proof that "the unit of measurement governing fuel sales – the gallon – is inherently misleading." Defendants' Motion (Doc. #4244) at 7.  They argue that "under Plaintiffs' theories, the supposed 'deception' is worked not by any affirmative misrepresentation, but by the metric politically chosen to measure the product sold absent additional disclosure." Id.  Defendants conclude that "[a]ny judicial remedy for that phenomenon inherently entails a judgment about the wisdom of the metric itself." Id.  This conclusion, however, requires a severely skewed reading of the amended pretrial order.

Plaintiffs claim that defendants willfully omitted material facts or engaged in unconscionable acts or practices, in connection with a consumer transaction, in violation of the KCPA, K.S.A. §§ 50-626(b)(3) and 50-627.  Their primary theory of recovery is that temperature is a material term to retail motor fuel transactions and that defendants willfully fail to disclose or account for temperature in retail motor fuel transactions.  These claims, and this general theory, have been in the case from the beginning.  They are not new developments that would justify reconsideration.

Moreover, defendants' position is not entirely clear.  On the one hand they appear to contend

6

that plaintiffs' claims attack the definition of a gallon, i.e. that a gallon equals 231 cubic inches. On the other hand, they seem to argue that plaintiffs' claims attack the practice of measuring fuel dispensed at retail in gallons, as opposed to using liters, pints or some other measure. Neither argument has merit. The Court has repeatedly rejected defendants' arguments that plaintiffs' claims necessarily challenge the definition of a "gallon." See, e.g., In re Motor Fuel Temp. Sales Practices Litig., 534 F. Supp.2d 1214, 1224-25 (D. Kan. 2008); Memorandum And Order (Doc. #1444) at 4 & n.7. The Court has also held that any clash between plaintiffs' claims and laws regulating the sale of motor fuel is a clash with Kansas law, which does not implicate the political question doctrine. Memorandum And Order (Doc. #1444) at 4 (citing Gordon, 153 F.3d at 194).

### 2. Development #2

Defendants argue that Zivotofsky v. Clinton, 132 S. Ct. 1421 (2012), which the Supreme Court decided on March 26, 2012, so changed the scope of the political question doctrine that it warrants reconsideration. Zivotofsky, however, did not substantially change the political question doctrine. It therefore does not constitute an intervening change in controlling law.

In Zivotofsky, the Supreme Court held that a suit to force the State Department to list "Jerusalem, Israel" as the place of birth on plaintiff's passport did not present a political question. It stated that "[t]he federal courts are not being asked to supplant a . . . policy decision of the political branches with the courts' own unmoored determination of what . . . policy . . . should be." 132 S. Ct. at 1427 (emphasis added). Defendants heavily rely on this statement. They argue that in contrast, this case (1) challenges the very metric by which defendants sell fuel, i.e. a "gallon" equal to 231 cubic inches, a metric which the Constitution expressly delegates to Congress, see U.S. Const. art. I, § 8, cl. 5; and (2) requires the Court or a jury to "second-guess a statutorily authorized

business practice – i.e., the sale of retail motor fuel by the gallon 'independent of temperature,'" Defendants' Motion (Doc. #4244) at 8-9.

As noted above and throughout this litigation, plaintiffs' claims do not appear to challenge the metric by which defendants sell gas. That is, they do not take issue with the fact that defendants dispense fuel in one gallon units or that one gallon equals 231 cubic inches. Rather plaintiffs claim that defendants' failure to disclose certain material facts in addition to volume violates the KCPA. Thus defendants have not explained how deciding this issue will interfere with Congress's "power to . . . fix the standard of weights and measures" under Article I, § 8, cl. 5 of the Constitution. See Memorandum And Order (Doc. #1444) at 4.

If plaintiffs' claims conflict with law regulating the retail sale of motor fuel in Kansas, they conflict with state law – not federal law. As the Court previously held, "[d]efendants declare that the Constitution gives Congress exclusive power over weights and measures, but then assert that this case creates a clash between the Court and state regulators. Such a clash does not implicate the political question doctrine." Memorandum And Order (Doc. #1444) at 4 (citing Gordon, 153 F.3d at 194); see also Baker, 369 U.S. at 210.

### 3. Development #3

Defendants note that American Electric Power Co. v. Connecticut, 131 S. Ct. 2527 (2011) ("AEP"), overruled a Second Circuit decision – Connecticut v. American Electric Power Co., 582 F.3d 309 (2d Cir. 2009) – on which the Court relied in overruling defendants' motion to dismiss on political question grounds. This development does not undermine the Court's previous order. See Memorandum And Order (Doc. #1444).

Defendants also contend that AEP conflicts with the Court's previous decision. Under AEP,

8

defendants argue that a federal court should not entertain common law claims that relate to weights and measures. AEP dealt with "whether the plaintiffs (several States, the city of New York, and three private land trusts) can maintain federal common law public nuisance claims against carbon-dioxide emitters (four private power companies and the federal Tennessee Valley Authority)." 131 S. Ct. at 2532. As relief plaintiffs sought "a decree setting carbon-dioxide emissions for each defendant." Id. The Supreme Court held that the Clean Air Act and Environmental Protection Agency ("EPA") actions displaced plaintiffs' federal nuisance claims; but it left open whether plaintiffs could bring a claim under state nuisance law. Id. at 2539-40.

Here, defendants argue that under AEP federal courts must show great deference to decisions of administrative agencies. They contend that "[j]udges may not commission scientific studies or convene groups of experts for advice, or issue rules under notice-and-comment procedures inviting input by any interested person, or seek the counsel of regulators in the States"; therefore, they argue, an "expert agency is surely better equipped to do the job than individual district judges issuing ad hoc, case-by-case injunctions." Id. at 2539-40. In AEP, plaintiffs asked the Court to decide "what amount of carbon-dioxide emissions is 'unreasonable,'" and "what level of reduction is 'practical, feasible and economically viable.'" Id. at 2540. AEP held that the EPA was not only better equipped to answer complex scientific questions relating to climate change, but also that Congress had designated the EPA to do so. Id.

Defendants contend that "just as in AEP, Plaintiffs likewise call on courts to second-guess how the political branches have addressed a policy question. By conferring authority on the National Institute of Standards and Technology ('NIST') to devise national uniform weights and measures standards, Congress chose regulatory expertise, not case-by-case adjudication, as the

appropriate policymaking vehicle." Defendants' Motion (Doc. #4244) at 10. In 15 U.S.C. § 272, Congress delegated to the Secretary of Commerce (acting through the Director of the NIST), authority to "take all actions necessary and appropriate" to "develop, maintain, and retain custody of the national standards of measurement, and provide the means and methods for making measurements consistent with those standards." 15 U.S.C. § 272(b)(2). In carrying out this function, Congress empowered the Secretary to "cooperate with the States in securing uniformity in weights and measures laws and methods of inspection." Id. § 272(c)(4).

Although AEP dealt with whether federal statutes and regulations displaced federal common law – not the political question doctrine – defendants argue that it applies here. Aside from two law review articles, however, they provide no support for applying AEP to the political question doctrine.[2] Regardless, this case is different than AEP because it does not necessarily require the Court to confront questions that an "expert agency" would be better equipped to handle. The question here is whether defendants willfully omitted material facts, or engaged in unconscionable acts or practices, in connection with a consumer transaction in violation of the KCPA, K.S.A. §§ 50-626(b)(3) and 50-627. This will require determining whether temperature is a material term to a retail motor fuel transaction. But it will not require answering the type of technical questions which the AEP plaintiffs asked the courts to answer; namely "what amount of carbon-dioxide emissions

---

[2] See Defendants' Motion (Doc. #4244) at 9-10 (citing James R. May, AEP v. Connecticut and the Future of the Political Question Doctrine, 121 Yale L.J. Online 127, 132 (2011) ("[T]he Court's reasoning . . . might apply with congruent force to the political question doctrine.") (emphasis added); Monty Cooper, AEP v. Connecticut – Global Warming Litigation and Beyond, 41 Envtl. L. Rep. News & Analysis 10996 (2011) (noting "regardless of doctrine, the Court's strong language in support of the CAA's process of relying on the judgment of expert agencies over federal judges when creating public policy is precedent that the defense bar can rely upon when defending companies against public nuisance claims in other industries, and reasoning that academics and policymakers can use to promote better public policy in the future.").

is 'unreasonable'" and "what level of reduction is 'practical, feasible and economically viable.'" 131 S. Ct. at 2540. Moreover, such KCPA issues are ones which juries routinely decide.

Moreover, in AEP the Supreme Court held that Congress designated the EPA "as best suited to serve as primary regulator of greenhouse gas emissions." Id. at 2539. Here, however, Congress tasked the Secretary of Commerce with developing and maintaining national weights and measures standards, providing means and methods for making measurements consistent with the standards and cooperating with states to ensure uniformity in weights and measures laws. Defendants have not shown that Congress designated the Secretary of Commerce to determine what disclosures motor fuel retailers must make about the fuel they sell.

For these reasons, AEP does not change the Court's determination that plaintiffs' claims do not present a political question.

**4. Development #4**

Defendants argue that the Court's rulings on defendants' motions for summary judgment on plaintiffs' KCPA claims, Memorandum And Order (Doc. #4228) filed April 2, 2012, and on plaintiffs' request for injunctive relief, Memorandum And Order (Doc. 4231) filed April 4, 2012, confirm that federal law allows the sale of motor fuel irrespective of temperature. But defendants have misconstrued those orders. Specifically, the orders held that Handbook 44, as adopted by Kansas law, "authorizes the sale of motor fuel through devices that dispense gallons irrespective of temperature." Memorandum And Order (Doc. #4228) at 17; see Memorandum And Order (Doc. #4231) (Kansas law authorizes sale of fuel at retail in gross gallons, i.e. without accounting for temperature); see also Memorandum And Order (Doc. #4228) at 6, 8 (citing Kansas law as basis for applying Handbook 44).

11

Defendants contend that Handbook 44 embodies a "federal scheme." Defendants' Motion (Doc. #4244). In other words, that Handbook 44 is federal law. In fact, however, Handbook 44 is not law at all. It simply contains model rules for states to adopt if they choose. Thus when the Kansas legislature adopted Handbook 44, it became Kansas law.

Defendants argue that "the only way for Plaintiffs' claims to be viable is if this Court recognized a duty to either compensate for temperature or to disclose temperature – despite the actions of the regulators rejecting those precise duties." Defendants' Motion (Doc. #4244) at 11. This purported clash, however, is with Kansas regulators and Kansas law, which does not implicate the political question doctrine. Baker, 369 U.S. at 210; Gordon, 153 F.3d at 194. Moreover, as the Court has previously held, defendants have not shown that Kansas law prohibits the use of ATC at retail. See Memorandum And Order (Doc. #4228) at 20-21. Even if it does, defendants have not shown that the other remedies which plaintiffs request would conflict with Kansas law. Id.

Defendants also argue that the Court's two orders call into question its earlier conclusion that plaintiffs' claims do not require the Court to "formulate national policies." Memorandum And Order (Doc. #1444) at 5. They contend that the relief which plaintiffs seek would impose a local burden on a national policy because under 15 U.S.C. § 272, the Secretary of Commerce "may . . . cooperate with the States in securing uniformity in weights and measures laws and methods of inspection." 15 U.S.C. § 272(c)(4) (emphasis added). As already noted, defendants have not shown that the relief which plaintiffs seek infringes on the Secretary's authority or interferes with "a textually demonstrable constitutional commitment of the issue to a coordinate political department." Zivotofsky, 132 S. Ct. at 1427 (quoting Nixon, 506 U.S. at 228; Baker, 369 U.S. at 217) (internal quotation marks omitted). The orders which defendants cite do not indicate that plaintiffs' claims

implicate the political question doctrine.

### 5. Development #5

Defendants argue that plaintiffs' proposed jury instructions confirm that plaintiffs are trying to usurp the legislative function of determining how motor fuel is sold at retail. They contend that the proposed instructions fail to provide a manageable standard for purposes of the political question doctrine. They also seem to contend that the proposed instructions create a clash with federal policy over an issue delegated to Congress. They specifically take issue with plaintiffs' proposed jury instruction regarding what constitutes a material fact under the KCPA. Plaintiffs' proposed instruction states that "[a] matter is 'material' when a reasonable person would attach importance to it in determining how to act regarding a particular transaction." Plaintiffs' Proposed Instruction No. __, Ex. A, Doc. #4244. Defendants contend that the "instruction is so broad that it gives the jury free rein to substitute its value choices for those that [the National Conference of Weights and Measures ('NCWM')] selected in adopting Handbook 44." Defendants' Motion (Doc. #4244) at 14. As the Court has repeatedly noted, however, Handbook 44 is binding in Kansas only because the Kansas legislature has adopted it as Kansas law. Thus any conflict between plaintiffs' proposed jury instruction and Handbook 44 does not implicate the political question doctrine. Baker, 369 U.S. at 210; Gordon, 153 F.3d at 194.

To the extent defendants argue that a jury should not be allowed to decide what the law is, the Court agrees. That is the Court's job. The Court will instruct the jury what the relevant law is, and will address any issues regarding jury instructions at a jury instruction conference at the end of trial. Defendants' arguments with respect to plaintiffs' proposed jury instructions do not change the Court's conclusion that plaintiffs' claims do not implicate the political question doctrine.

**III.    Preemption And Retroactive Liability**

Defendants argue that plaintiffs' claims are preempted because (1) a Fourth Circuit case, North Carolina ex rel. Cooper v. Tennessee Valley Authority, 615 F.3d 291 (4th Cir. 2010) ("TVA"), held that the comprehensive nature of environmental regulation under the Clean Air Act, 42 U.S.C. § 7401 et seq., preempted state-law nuisance claims;[3] and (2) under authority both old and new, e.g. Hines v. Davidowitz, 312 U.S. 52 (1941) and United States v. Arizona, 132 S. Ct. 2492 (2012), plaintiffs' state-law claims interfere with Congress's decision about how to exercise the weights and measures power under Article I, § 8, cl. 5 of the U.S. Constitution.  Defendants attempt to couch the preemption section of their brief as seeking reconsideration of the Court's prior order. See Defendants' Motion (Doc. #4244) at 17 (citing Memorandum And Order (Doc. #1444) at 4). But defendants have not previously raised the issue in the Kansas cases.

Defendants also belatedly seek to bar plaintiffs' claims on grounds that they would impose unconstitutional "retroactive liability."  See Defendants' Motion (Doc. #4244) at 22-25; Defendants' Notice Of Supplemental Authority (Doc. #4357) at 1-4 (citing FCC v. Fox Television Stations, Inc., 132 S. Ct. 2307 (2012)).  To this end, defendants contend that the Due Process and Takings Clauses of the Fifth Amendment prohibit plaintiffs' claims.  Defendants raised similar due process arguments in their reply in support of their motion for summary judgment on plaintiffs' requests for injunctive relief.  See Defendants' Reply In Support Of Motion For Summary Judgment Dismissing Plaintiffs' Requests For Injunctive Relief (Doc. #3185) filed January 9, 2012 at 3, 15-16 n.11, 25-27; see also Memorandum And Order (Doc. #4231) at 7 n.4.  At that time, the Court declined to consider the

---

[3]    Notably, the Fourth Circuit decided this case long before the dispositive motion deadline of November 1, 2011.

14

arguments because defendants had raised them for the first time in their reply.[4] Memorandum And Order (Doc. #4231) at 7 n.4 (citing Cook v. Olathe Med. Ctr., Inc., 773 F. Supp.2d 990, 994 n.4 (D. Kan. 2011)). Other than that reply, it appears that defendants have not previously raised retroactive liability arguments in the Kansas cases.

Defendants attempt to buttress their motion by submitting two recently-decided U.S. Supreme Court cases as supplemental support. United States v. Arizona, 132 S. Ct. 2492 (decided June 25, 2012); FCC v. Fox Television Stations, Inc., 132 S. Ct. 2307 (decided June 21, 2012). These cases provide "supplemental authority" for arguments that defendants could have made earlier. They have not wrought an intervening change in controlling law and provide no justification for the late filing. As noted above, the deadline for filing dispositive motions was November 1, 2011. Amended Pretrial Order (Doc. #3809) at 49, 57; Pretrial Order (Doc. #2558) at 65, 74. Defendants have not moved to amend the pretrial order and have provided no explanation for not raising these arguments in a timely manner. Because defendants' arguments regarding preemption (Section II) and retroactive liability (Section III) do not implicate subject matter jurisdiction, the Court overrules the motion for judgment on the pleadings as untimely.

**IT IS THEREFORE ORDERED** that defendants' Motion For Reconsideration Of Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Or, Alternatively, For Judgment On The Pleadings (Doc. #4243) filed April 23, 2012 be and hereby is **OVERRULED**.

---

[4] The Court did not "postpone[] . . . its Due Process review until the remedy phase." Defendants' Notice Of Supplemental Authority (Doc. #4357) at 3. It declined to address the issue because defendants did not properly present the issue. See Memorandum And Order (Doc. #4231) filed April 4, 2012 at 7 n.4 (declining to consider arguments raised for first time in reply brief).

Dated this 15th day of August, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge