**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| This Document Relates To: | ) | **Case No. 07-1840-KHV** |
| | ) | |
| Wilson, et al. v. Ampride, Inc., et al., | ) | |
| Case No. 06-2582-KHV, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| American Fiber & Cabling, LLC, et al. | ) | |
| v. BP Products North America Inc., et al., | ) | |
| Case No. 07-2053-KHV. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiffs in these consolidated cases bring class action claims against defendants for violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. §§ 50–623 to 50–679a. Amended Pretrial Order (Doc. #3809) filed March 20, 2012 at 3. Specifically, plaintiffs claim that because defendants advertise and sell motor fuel for a specified price per gallon without disclosing or accounting for temperature expansion, they willfully omit material facts related to the energy content and value of motor fuel and engage in unfair and unconscionable sales practices. See id. at 6-8. The Court plans to try the cases in two phases. See In re Motor Fuel Temp. Sales Pract. Litig., 279 F.R.D. 598, 618-19 (D. Kan. 2012). In Phase I, plaintiffs will try the liability aspects of their claims.[1] Id. If plaintiffs prevail on any of their claims in Phase I, the Court will determine in Phase II whether injunctive and/or declaratory relief is appropriate as to the remaining claims, and any

---

[1]     The liability aspects of plaintiffs' claims involve (1) whether plaintiffs are consumers under the KCPA; (2) whether defendants are sellers under the KCPA; (3) whether defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. § 50-626(b)(3) or K.S.A. § 50-627; and (4) whether on a classwide basis plaintiffs were aggrieved by defendants' acts or practices. In re Motor Fuel Temp., 279 F.R.D. at 618-19.

individual damages.  Id. at 619.  Trial for Phase I is set for August 27, 2012.  This matter comes

before the Court on Plaintiffs' Motions In Limine (Doc. #4256) filed April 25, 2012.  For reasons

stated below, the Court sustains the motion in part.

## Legal Standards

The purpose of a motion in limine is to aid the trial process by enabling the Court "to rule

in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set

for trial, without lengthy argument at, or interruption of, the trial." United States v. Cline, 188

F. Supp.2d 1287, 1291 (D. Kan. 2002) (quoting Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir.

1996)) (further citations omitted).  Pretrial rulings often may save time at trial, as well as save the

parties time, effort and cost in preparing their cases.  See id.  The Court recognizes that in many

cases, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy

and potential prejudice may be resolved in the proper context.  See Sperberg v. Goodyear Tire &

Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975) (though in limine rulings can save time, cost, effort

and preparation, court usually better situated during trial to assess evidence); Rettiger v. IBP, Inc.,

No. 96-4015-SAC, 1999 WL 318153, at *2 (D. Kan. Jan. 6, 1999) (court almost always better

situated during actual trial to assess value and utility of evidence).

## Analysis

Plaintiffs seek to exclude the following: (1) expert testimony whether certain acts are "legal,"

"misleading," "unfair," "deceptive," "unconscionable" or "authorized;" (2) evidence regarding the

legality of any remedy to be determined in Phase II; (3) evidence regarding costs or benefits of any

remedy to be determined in Phase II; (4) testimony of Gordon Schremp or any other witness

regarding a report by the California Energy Commission ("CEC") regarding automatic temperature

compensation ("ATC") at retail in California; (5) evidence regarding the National Conference on Weights and Measures ("NCWM"); (6) evidence regarding NCWM model rules and regulations related to motor fuels; (7) testimony of Steve Malone; (8) testimony of Judy Cardin, Ross Andersen, Don Onwiler and Jonelle Brent; (9) testimony of Tim Tyson; and (10) testimony of Gordon Johnson.

## I. Expert Testimony Whether Certain Acts Are "Legal," "Authorized," "Deceptive," "Unconscionable," "Misleading" Or "Unfair"

Plaintiffs seek to preclude expert testimony whether certain acts and/or omissions are "legal," "authorized," "deceptive," "unconscionable," "misleading" or "unfair."   Specifically, plaintiffs assert that testimony regarding the legality of ATC would contravene the Court's duty to instruct the jury on the law and unfairly prejudice and mislead the jury.   Plaintiffs' Motions In Limine (Doc. #4256) at 5-6.  In addition, plaintiffs assert that to allow witnesses to opine whether selling retail motor fuel without disclosing or adjusting for temperature is "deceptive," "unconscionable," "misleading" or "unfair" would invade the province of the jury to determine whether defendants' conduct is deceptive or unconscionable under the KCPA.[2]  Id. at 4-5.

An expert witness may testify in the form of an opinion or inference as to ultimate issues to be decided by the jury if the testimony is not otherwise objectionable.  Fed. R. Evid. 702 and 704;[3]

---

[2]       K.S.A. § 50-627(b) provides that the unconscionabilty of an act or practice is a question for the Court.  Id.  Here, the parties have stipulated to try the claim to a jury.  Plaintiffs' Stipulation To Jury Trial On K.S.A. § 50-627 Claims (Doc. #3812) filed March 20, 2012.

[3]       Rule 702 states as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

(continued...)

Okland Oil Co. v. Conoco Inc., 144 F.3d 1308, 1328 (10th Cir. 1998).  The touchstone inquiry is whether the testimony will assist the factfinder in understanding the evidence or determining a factual issue.  Okland Oil, 144 F.3d at 1328; Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647-48 (10th Cir. 1991).  Generally, an expert may not opine as to legal standards or state legal conclusions drawn by applying the law to the facts.  Okland Oil, 144 F.3d at 1328; A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991).  Thus, expert testimony as to ultimate questions of law, i.e. legal opinions or conclusions, is not favored.  See Anderson v. Suiters, 499 F.3d 1228, 1237 (10th Cir. 2007) (citing Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988)).

Pursuant to this authority, no witness may opine whether certain conduct is "legal" or "authorized" under the law.  See Okland Oil, 144 F.3d at 1328; Specht, 853 F.2d at 808-10.  Under Rule 702, expert testimony is proper so long as he or she does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.  Specht, 853 F.2d at 809. If the purpose of the testimony is to direct the jury's understanding of the legal standard upon which its verdict must be based, the testimony is improper.  Id. at 810.  In no instance can a witness be permitted to define the law of the case.  Id.  The Court is the sole arbiter of the law and its applicability.  Id. at 807.  Therefore, experts may not testify as to what conduct is "legal" or

---

[3](...continued)
        (c) the testimony is the product of reliable principles and methods; and
        (d) the expert has reliably applied the principles and methods to the facts of
        the case.

Fed. R. Evid. 702.
        Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704.

"authorized" under the law.[4]

Plaintiffs assert that to allow witnesses to opine whether certain conduct is "deceptive," "unconscionable," "misleading" or "unfair"  will invade the province of the jury to determine whether defendants' conduct is deceptive or unconscionable under the KCPA.  Plaintiffs' Motions In Limine (Doc. #4256) at 4-5.  Under Rule 704, witnesses may state opinions on ultimate issues. Fed. R. Civ. P. 704.  But a witness may not state an opinion which merely tells the jury what result to reach.  Specht, 853 F.2d at 807 (citing Fed. R. Civ. P. 704 advisory committee's note).  The starting point in determining admissibility is to distinguish between testimony on issues of law and testimony on ultimate facts.  Id. at 808.  Testimony on ultimate facts is authorized under Rule 704, but testimony on ultimate questions of law is disfavored.[5]  Id.  Nevertheless, all testimony regarding

---

[4]    Defense witnesses *may* be able to testify as to what they believed the law authorized and/or forbade.  Such evidence appears to be relevant to defendants' state of mind, i.e. whether they willfully failed to state a material fact, or willfully concealed, suppressed or omitted a material fact under K.S.A. § 50–626(b)(3).  To act "willfully" under the statute requires proof that defendants acted with intent to harm consumers.  Unruh v. Purina Mills, LLC, 289 Kan. 1185, 1194, 221 P.3d 1130, 1139 (2009) (per curiam); Maberry v. Said, 911 F. Supp. 1393, 1401 (D. Kan. 1995) (citing Folks v. Kan. Power & Light Co., 243 Kan. 57, 74, 755 P.2d 1319, 1333 (1988)).  If defendants truly believed that the law required them to sell fuel in the manner that they did, it would be less likely that they acted willfully, i.e. with an intent to harm consumers, even if their belief about the law was incorrect.

The definition of "unconscionable" is not precise.  Generally, it requires deceptive bargaining conduct combined with unequal bargaining power.  Willman v. Ewen, 230 Kan. 262, 266, 634 P.2d 1061, 1064 (1981).  The statute states that in determining whether an act or practice is unconscionable, courts must consider various circumstances of which defendants knew or had reason to know.  K.S.A. § 50–627(b).  In light of the statutory instruction that courts consider circumstances which defendants "knew or had reason to know," it appears that the reasonableness of defendants' belief with respect to legality would be relevant in determining whether their conduct was unconscionable.

[5]    For instance, the following question would be excluded: "Did T have capacity to make a will?"  Fed. R. Civ. P. 704 advisory committee's note.  But the following question would be allowed: "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?"  Id.

legal issues is not off bounds. A witness may properly be called upon to aid the jury in understanding facts in evidence even though reference to those facts is couched in legal terms. See Specht, 853 F.2d at 809.

Within these parameters, the Court finds that expert witnesses may not express legal conclusions, i.e. they may not opine whether certain conduct is "deceptive" or "unconscionable" under the KCPA. See Specht, 853 F.2d at 807 (opinions phrased in terms of legal criteria improper). As to testimony that certain acts are "misleading" or "unfair," the Court has previously found that fairness is primarily in the eye of the beholder and that the factfinder alone should assess whether temperature correction at retail would be more fair than the status quo. See In re Motor Fuel Temp. Sales Pract. Litig., No. 07-1840, 2012 WL 380159, at *9 (D. Kan. Feb. 6, 2012) (Richard Suiter); In re Motor Fuel Temp. Sales Pract. Litig., No. 07-1840, 2012 WL 205893, at *3 (D. Kan. Jan. 19, 2012) (Robert Reynolds). The Court sees no reason to revisit those decisions.

Accordingly, the Court finds that witnesses may not testify whether certain acts and/or omissions are "legal," "authorized," "deceptive," "unconscionable," "misleading" or "unfair."

## II.    Legality Of Any Remedy To Be Determined In Phase II

In Phase I, plaintiffs seek to preclude evidence regarding the legality of any remedy to be determined in Phase II.[6] In particular, plaintiffs are concerned with evidence whether Kansas law

---

[6]    As noted, if plaintiffs prevail on the liability aspects of their claims in Phase I, the Court will determine in Phase II whether injunctive and/or declaratory relief and individual damages are appropriate. See In re Motor Fuel, 279 F.R.D. 598, 618-19. Plaintiffs seek the following injunctive relief:

An order prohibiting and enjoining defendants from engaging in the following practices and acts:

Selling motor fuel in the State of Kansas at temperatures in excess of 60
(continued...)

permits retail ATC motor fuel dispensers and/or the posting of retail motor fuel temperature. Plaintiffs' Motions In Limine (Doc. #4256) at 7.  Plaintiffs assert that such testimony would invade the Court's duty to determine the law.  Id.

As discussed, the Court is the sole arbiter of the law.  Specht, 853 F.2d at 807.  Accordingly, no witness may opine whether Kansas law permits certain remedies, including ATC at retail.  To

---

[6](...continued)
degrees Fahrenheit at prices not adjusted to account for temperature expansion;

Selling motor fuel in the State of Kansas at temperatures in excess of 60 degrees Fahrenheit without adjusting the volume to account for temperature expansion;

Failing to disclose what the price of a gallon of motor fuel sold at retail in the State of Kansas would be if it were adjusted to be the equivalent of a standard U.S. petroleum gallon (i.e., a gallon at 60 degrees Fahrenheit);

Failing to disclose the temperature of motor fuel sold at retail in the State of Kansas; and

Failing to disclose that the energy, quality and value of motor fuel sold at retail in the State of Kansas decreases when the temperature of the motor fuel increases.

An order directing defendants to:

Install and maintain ATC-equipped motor fuel dispensers at all retail locations it owns, franchises, or that sell its branded motor fuel in the State of Kansas in a manner the court deems just and proper;

Disclose the temperature of motor fuel sold at all retail locations it owns, franchises, or that sell its branded motor fuel in the State of Kansas in a manner the court deems just and proper; and/or

Disclose, in a manner the court deems just and proper, at all retail locations it owns, franchises, or that sell its branded motor fuel in the State of Kansas that the energy, quality, and value of motor fuel sold at retail decreases when the temperature of the motor fuel increases.

Amended Pretrial Order (Doc. # 3809) at 43-44.

the extent that issues arise in the liability phase regarding alternative methods of sale, <u>e.g.</u> if plaintiffs assert that certain measures to disclose or account for temperature are available but defendants have refused to implement them, it appears that the legality of such measures would be relevant.  In other words, plaintiffs could not prevail on that line of reasoning if Kansas law does not permit the alternative methods of sale.[7]  At trial, if the Court determines that the legality of certain conduct is relevant to the liability determination in Phase I, it will instruct the jury as to what the law permits.[8]

---

[7]   As noted, it appears that defendants' beliefs about the legality of alternative methods of sale would also be relevant in determining whether they acted willfully or unconscionably under K.S.A. § 50-626(b)(3) and K.S.A. § 50-627.

Defendants assert that evidence regarding state regulators' beliefs that ATC is unnecessary or illegal is relevant to show that temperature is not material to the retail sale of motor fuel. <u>Defendants' Response To Plaintiffs' Motion In Limine</u> ("Defendants' Response") (Doc. #4294) filed May 14, 2012 at 7.  Specifically, defendants state as follows:

> Here, the best "objective" evidence is how the regulators evaluated various proposals to inject temperature into the transaction. If the regulators considered ATC equipment to be unnecessary or even illegal – as Defendants contend – then their testimony is probative as to whether temperature or "energy content" is material to the retail sale of motor fuel.

<u>Id.</u> To the extent that defendants relied on state regulators' beliefs that ATC is illegal, such evidence may be admissible – not to show that ATC is illegal but to explain why defendants acted as they did.

[8]   Defendants assert that the Court has already determined that testimony regarding the legality of ATC is permissible. <u>Defendants' Response</u> (Doc. #4294) at 6.  Defendants are mistaken. In its previous order, the Court found that pursuant to state regulation, "[n]o person shall use a weighing or measuring device for commercial purposes within the state of Kansas unless a certificate of conformance has been obtained for the weighing or measuring device before its use for commercial purposes within the state of Kansas." <u>In re Motor Fuel Temp. Sales Pract. Litig.</u>, No. 07-1840, 2012 WL 1108510, at *6 (D. Kan. April 2, 2012) (quoting Kan. Admin. Regs. § 99-25-3(a)).  The Court ruled that to the extent defendants argued that the use of ATC-equipped retail motor fuel dispensers is not allowed in Kansas because no such device has received a certificate of conformance, they could make those arguments to a jury. <u>Id.</u> at *10.  Under that ruling, the jury question would be whether such a device has received a certificate of conformance – not

(continued...)

8

### III.    Costs Or Benefits Of Any Remedy To Be Determined In Phase II

In Phase I, plaintiffs seek to preclude evidence regarding costs or benefits of any remedy to be determined in Phase II.  In particular, plaintiffs seek to exclude evidence relating to costs and benefits of retail ATC.  <u>See</u> <u>Plaintiffs' Motions In Limine</u> (Doc. #4256) at 9.  Plaintiffs assert that such evidence is not relevant to any issue at stake in Phase I.

As discussed, the availability of alternative methods of sale – including ATC and its costs and benefits – could be relevant to the jury determination whether defendants violated the KCPA by selling retail motor fuel without disclosing or accounting for temperature.  If other methods of sale were not available, or if defendants in good faith and reasonably believed that to be the case, it would be less likely that they acted "willfully" or "unconscionably" under K.S.A. § 50-626(b)(1)(A) and K.S.A. § 50-627. For example, if defendants in good faith and reasonably believed that the costs of implementing ATC substantially outweighed its benefits, that information would be relevant to the jury determination whether they acted willfully or unconscionably by selling retail motor fuel without disclosing or accounting for temperature.  On this record, the Court will not exclude all evidence regarding costs or benefits of alternate marketing strategies which would account for the effect of temperature on fuel.

### IV.    CEC Report And Relating Evidence

Plaintiffs seek to exclude the CEC report and all related evidence, including testimony by Gordon Schremp.  <u>Plaintiffs' Motions In Limine</u> (Doc. #4256) at 9-11.  Plaintiffs do not identify the date of the CEC report.  Based on context, it appears to be the report issued in March of 2009.  <u>See</u> <u>In re Motor Fuel Temp. Sales Pract. Litig.</u>, No. 07-1840, 2012 WL 1415508, at *14 (D. Kan. April

---

[8](...continued)
the broader question whether ATC is legal under Kansas law.

24, 2012); <u>Defendants' Response</u> (Doc. #4294) at 22.  In that report, after conducting a cost-benefit study, the CEC concluded that implementing ATC at retail in California would result in a negative net cost to society which is small when quantified by cents per gallon.  <u>See</u> <u>In re Motor Fuel</u>, 2012 WL 1415508, at *14 (citing CEC Report of March 2009 (Doc. #1343–19)).  The CEC recommended that the California legislature consider whether the possibility of increased fairness, accuracy and consistency of fuel measurement would justify mandating ATC at retail in California.  <u>Id.</u>  Schremp is an author of the CEC report.  For trial, defendants have designated his deposition testimony regarding the report.  <u>See</u> <u>Plaintiffs' Motions In Limine</u> (Doc. #4256) at 9 n.11; <u>Defendants' Response</u> (Doc. #4294) at 23 n.18.

Plaintiffs argue that because the CEC report deals with retail ATC in California, the report and any testimony related to it are irrelevant to any issue in the Kansas trial.  <u>Plaintiffs' Motion In Limine</u> (Doc. #4256) at 9-10.  Plaintiffs, however, have not shown that the costs of ATC in California are different from those in Kansas in any meaningful way.  As discussed, to the extent that defendants in good faith and reasonably believed that the costs of implementing ATC substantially outweighed its benefits, that information would be relevant to the jury determination whether defendants acted willfully or unconscionably by selling retail motor fuel without disclosing or accounting for temperature.  If defendants knew about the CEC report and considered it as part of their method-of-sale strategy, the report could be relevant to the jury's liability determination in Phase I.  On this record, plaintiffs have not shown that the CEC report is irrelevant.[9]

---

[9]     Defendants assert that evidence regarding the CEC report is relevant to show that temperature is not material to retail motor fuel transactions.  <u>Defendants' Response</u> (Doc. #4294) at 3, 23.  Specifically, defendants state as follows:

[In addition to showing the higher cost of selling retail fuel based on temperature,
(continued...)

Plaintiffs assert that the CEC report and related evidence will confuse and mislead the jury because the CEC report dealt with mandatory implementation of retail ATC and did not address other relief which plaintiffs seek, such as permissive ATC and/or required disclosure of retail motor fuel temperature.  Plaintiffs' Motions In Limine (Doc. #4256) at 10.  The jury, however, could ably distinguish these facts.  Moreover, plaintiffs' argument overlooks the fact that the CEC report may be relevant as to defendants' state of mind, e.g. whether defendants in good faith and reasonably considered the report in deciding to sell retail motor fuel without disclosing or accounting for temperature.

In response to defendants' motion in limine, plaintiffs argued that if the Court excluded a House staff report, it should exclude the CEC report for the same reasons, i.e. because it is inadmissible hearsay and inherently unreliable.  Plaintiffs' Response To Defendants' Omnibus Motion In Limine ("Plaintiffs' Response") (Doc. #4304) filed May 15, 2012 at 28.  Defendants

---

[9](...continued)
the] CEC report provides other critical information.  It provided the basis, in part, for NCWM to determine that temperature is irrelevant to retail motor fuel sales and thus is directly relevant to the materiality element of Plaintiffs' disclosure claim.  It also refutes Plaintiffs' allegations that Defendants' sales were "deceptive," "unfair," "unconscionable," and "inequit[able]."  Doc. 3809 (Amended Pretrial Order) at 5-9.  Instead, the decision to reject temperature keeps costs down for all participants in the market.  That is relevant.

Id. at 23 (footnote omitted).

To prove that defendants engaged in a deceptive act under K.S.A. § 50-626(b)(3), plaintiffs must show that in connection with a consumer transaction, defendants willfully failed to state a material fact or willfully concealed, suppressed omitted a material fact.  Id.  The KCPA does not define "material fact."  Kansas courts have defined it as "one to which a reasonable person would attach importance in determining his or her choice of action in the transaction involved."  York v. InTrust Bank, N.A., 265 Kan. 271, 290, 962 P.2d 405, 420 (1998).  Even if the costs of implementing ATC outweigh its benefits, a factfinder could determine that a reasonable person would consider temperature important in determining his or her course of action in retail motor fuel transactions.

11

asserted that the House staff report was inadmissible because it was double hearsay and inherently untrustworthy given the obviously political nature of Congress.  Defendants' Omnibus Motion In Limine (Doc. #4255) filed April 25, 2012 at 18-19.  Plaintiffs conceded defendants' arguments. Plaintiffs' Response (Doc. #4304) at 28 (stating that "reports from political bodies are inherently susceptible to improper influence and can lack indicia of reliability").  Based on plaintiffs' agreement, the Court sustained defendants' motion with respect to the House staff report. Memorandum And Order (Doc. #4343) filed June 28, 2012 at 12.

The Court agrees that if the CEC report is similar to the House staff report, it should be treated similarly.  See id.  The record, however, is not developed in this regard.   Plaintiffs' motion does not assert that the CEC report is inadmissible hearsay and inherently unreliable and defendants have not responded on these points.[10]  Moreover, it appears that the report may be relevant not on substantive grounds, but to show defendants' state of mind, e.g. whether they in good faith and reasonably considered the report in deciding to sell retail motor fuel without disclosing or accounting for temperature.  The record on plaintiffs' motion in limine does not reveal particular provisions of the report or the purpose for which defendants would seek to admit them.  Similarly, the record is silent whether the nature of the CEC is "obviously political," i.e. similar to that of Congress, such that the report would be inherently unreliable.[11]  On this record, the Court overrules

_____

[10]     Unlike the House staff report, defendants have not agreed that the CEC report is inadmissible hearsay.

[11]     In a one-sentence footnote in their motion in limine, plaintiffs assert that "there remain the grave concerns regarding the integrity of the CEC process recently raised in other pleadings."  Plaintiffs' Motions In Limine (Doc. #4256) at 11 n.13.  The footnote cites Plaintiffs' Response To Alkon Objectors Opposition To Approval Of Amended Settlement (Doc. #3777) filed March 5, 2012 at 14.  In that document, plaintiffs respond to objections that their settlement with Costco Wholesale Corporation – which requires Costco to install ATC at retail – would not provide

(continued...)

plaintiffs' motion to exclude all evidence relating to the CEC report.

## V.    NCWM

Plaintiffs seek to exclude evidence regarding NCWM.[12]  Specifically, plaintiffs seek to exclude testimony relating to NCWM debates regarding ATC at retail.  See Plaintiffs' Motions In Limine (Doc. #4256) at 12.  Plaintiffs assert that "[w]hether a non-profit, standard-setting body has debated the merits of a *remedy* that Plaintiffs *may* seek in Phase II has no bearing on" whether defendants' conduct constitutes a deceptive or unconscionable act under the KCPA.  Id. (emphasis in original).  The Court disagrees.  The fact that NCWM debated and did not adopt provisions for permissive or mandatory ATC at retail may be relevant to the jury determination whether defendants acted willfully or unconscionably by selling retail motor fuel without disclosing or accounting for temperature, especially if defendants can show that they knew of and relied on the fact.[13]  Plaintiffs

---

[11](...continued)
economic benefit to consumers.  Specifically, plaintiffs assert that the cost-benefit conclusions in the CEC report are not objective because the presiding commissioner for the report had a conflict of interest, i.e. he was married to the president of an oil trade association.  Id. at 15.  Plaintiffs also assert that the CEC report is based on biased information from economists hired by the oil industry.  Id. at 16-17.

The allegations raised in plaintiffs' response to objections to the Costco settlement are not presented in plaintiffs' motion in limine.  It would be unfair to expect defendants to respond to a one-sentence footnote expressing vague concerns regarding "the integrity of the CEC process."

[12]    NCWM is a not-for-profit corporation dedicated to developing U.S. standards for weights and measures.  NCWM, http://ncwm.net/content/organization (last visited August 22, 2012). The organization is comprised of state and local weights and measures officials and representatives of business, industry, consumer groups and federal agencies.  Weights and Measures, http://www.nist.gov/pml/wmd/index.cfm (last visited August 22, 2012).  NCWM partners with the National Institute of Standard and Technology ("NIST"), an agency of the U.S. Department of Commerce, to develop U.S. standards in the form of uniform laws, regulations, and methods of practice.  Id.

[13]    Defendants assert that evidence regarding NCWM is relevant to show that temperature is not material to retail motor fuel transactions.  Defendants' Response (Doc. #4294) (continued...)

assert that such evidence would confuse and prejudice the jury because NCWM members are drawn from all states, including northern states which specifically prohibit ATC at retail.  Plaintiffs' Motions In Limine (Doc. #4256) at 12.  The Court believes that the jury can ably distinguish the facts.  On this record, the Court will not exclude evidence regarding NCWM.

## VI.   NCWM Model Rules And Regulations Related To Motor Fuel Sales

Plaintiffs seek to exclude testimony regarding NCWM model rules and regulations regarding

---

[13](...continued)

at 3, 24-25, 28-29.  Specifically, defendants assert that based on NCWM's decisive vote to reject moving from a volume-based system of measurement to a temperature-based system of measurement, no reasonable person could infer that temperature is material to the purchase of retail fuel.  Id. at 28-29.  Defendants state as follows:

[T]he NCWM's governmental votes and reasons for the votes about temperature compensation provide essential background to determining Defendants' duty to disclose temperature under *Williamson*, the alleged willfulness of Defendants' conduct, and the alleged materiality of temperature to the terms of the retail transaction:

(1) it demonstrates that Defendants reasonably relied on decisions emanating from a process that is national in scope and instigated by the federal government;

(2) it reinforces the fact that temperature is irrelevant in the current regulatory environment and given the regulatory and statutory requirements;

(3) it shows that it was the regulators, the guardians of the public interest, who made the policy decision to keep temperature irrelevant to the fuel sale;

(4) it refutes Plaintiffs' allegations that Defendants' sales were "deceptive," "unfair," "unconscionable," and "inequit[able]" when NCWM rejected temperature compensation by an overwhelming vote, in part, to keep costs down for all participants in the market and to avoid confusion in the marketplace; and

(5) it refutes Plaintiffs' allegations of scienter by demonstrating that a democratic vote of state government officials reached the decision not to inject temperature into the practice of selling motor fuel by the gallon.

Id. at 24-25.  This argument is not persuasive.  Even if NCWM decided (for whatever reason) to reject permissive or mandatory ATC at retail, a reasonable jury could determine that temperature is "material."  Indeed, the very fact that NCWM debated ATC at retail suggests that temperature is material.

motor fuel sales, i.e. Handbook 44 and Handbook 130.[14]  Plaintiffs assert that the model rules and

regulations are irrelevant because they are not Kansas law unless Kansas adopts them.  Plaintiffs'

Motions In Limine (Doc. #4256) at 14.  Kansas has adopted only portions of the handbooks, and

plaintiffs assert that testimony related to the handbooks is overly broad because it includes model

rules and regulations which do not apply in Kansas.  Id.

     As discussed, the Court will determine the law and instruct the jury accordingly.  Therefore,

testimony regarding legal interpretation of the handbooks is off limits.  That said, on this record,

plaintiffs have not shown that all testimony regarding the handbooks should be excluded.[15]  In the

---

[14]    As noted, NCWM partners with NIST to develop U.S. standards in the form of uniform laws, regulations, and methods of practice.  See In re Motor Fuel Temp. Sales Pract. Litig., No. 07-1840, 2012 WL 976039, at *2 (D. Kan. March 22, 2012).  Each year, NIST publishes Handbook 44 and Handbook 130.  Id. at *2-3.  Handbook 44 contains specifications, tolerances and other technical requirements which NCWM adopts and recommends for official promulgation in and use by the states in exercising their control of commercial weighing and measuring apparatus.  Id. Handbook 130 compiles the latest uniform law and regulations and related interpretations and guidelines which NCWM adopts and recommends for adoption by states when reviewing or amending their official laws and regulations in the areas covered.  Id. at *3.

[15]    Defendants assert that certain provisions of Handbook 44 are relevant to show that temperature is not material to retail motor fuel transactions.  Defendants' Response (Doc. #4294) at 3, 13-14.  Specifically, defendants state as follows:

> Handbook 44 . . . regulates the manner in which fuel is measured and sold, and it defines the material terms of the bargain.  The formula that Handbook 44 adopts – to insure consumers "get what they pay for" when buying retail motor fuel – excludes the temperature or "energy content" of fuel.  Instead, the required terms of the retail fuel transaction are: (1) the quantity term that must be expressed as a "gallon" unit, i.e., a word statutorily defined as a volumetric measurement equal to 231 cubic inches (exactly) regardless of temperature or "energy content" [citations omitted]; (2) the unit price term, i.e., the price per gallon [citations omitted]; and (3) the total sales price term, i.e., the total price for the quantity (i.e. units) purchased (quantity x unit price = total sales price) [citations omitted].  Handbook 44 does not mention let alone define "energy content."  Thus, "energy content" is not what is paid for.

(continued...)

context of trial, the Court will determine the admissibility of evidence regarding NCWM model rules and regulations.

Plaintiffs assert that it would be confusing and prejudicial for the jury to hear evidence related to model laws and regulations that are not the law in Kansas. Plaintiffs' Motions In Limine (Doc. #4256) at 14-15. Defendants respond that they intend to offer evidence regarding only those provisions which apply in Kansas. Defendants' Response (Doc. #4294) at 25. The Court will therefore exclude evidence relating to model rules and regulations which Kansas has not adopted.

## VII.   Steve Malone

Plaintiffs seek to exclude testimony by defendants' expert Steve Malone. Plaintiffs' Motions

---

[15](...continued)
In contrast, the product that is paid for is "gasoline" or "diesel." And the NIST Handbooks also explicitly define the product itself, in an effort to regulate fuel quality. For instance, Kansas has adopted Handbook 130, Uniform Engine Fuels & Automotive Lubricants § 2.1.1, which states "Gasoline … shall meet the most recent version of ASTM D4814." [citations omitted]. Similarly, Kansas has adopted the ASTM standards relating to the quality of diesel. [citations omitted]. The meaning of the product paid for – "gasoline" or "diesel" – is defined, therefore, with reference to these statutory specifications. Any "quality" term that Plaintiffs may suggest is material to a fuel transaction is statutorily fixed according to ASTM standards. None of these ASTM standards specify that motor fuel contain a certain amount of "energy." Indeed, neither the applicable statutes nor regulations governing fuel composition, quality and specifications refer to or define "energy content."

Although Defendants contend these regulations should be dispositive as to the materiality of temperature or "energy content," even if the Court disagrees, Defendants have the right to inform the jury of the mandatory terms of the deal. Under Rule 401, evidence is relevant if it (1) "has any tendency to make a fact more or less probable" and (2) "the fact is of consequence." FED. R. EVID. 401. If temperature and "energy content" are not even part of the deal, it is "less probable" that the jury will find them to be material.

Defendants' Response (Doc. #4294) at 13-14. Again, defendants' arguments concerning the regulatory environment do not cabin the jury's considerations with respect to materiality. The fact that the handbooks do not regulate energy content does not mean that temperature is immaterial.

16

In Limine (Doc. #4256) at 16-18.  Malone worked at the Nebraska Department of Agriculture, Division of Weights and Measures, and served as NCWM chairman, board member and executive committee member.  See In re Motor Fuel Temp. Sales Litig., No. 07-1840, 2012 WL 380159, at *8 (D. Kan. Feb. 6, 2012); Defendants' Response (Doc. #4294) at 27.[16]

Plaintiffs assert that Malone's testimony is irrelevant because he is not an expert on Kansas weights and measures laws and regulations.  Plaintiffs' Motions In Limine (Doc. #4256) at 16-18.  This argument misses the mark.  As discussed, the Court will instruct the jury on Kansas law.  Expert testimony on the law is not admissible.  Specht, 853 F.2d at 810.

Defendants assert that Malone has expertise regarding the history of NCWM, the relationship between NCWM and NIST, the regulatory process for assuring uniformity in weights and measures

---

[16]     Malone plans to testify regarding the following:

(1) the terms of the fuel transaction as based upon volume, not "energy content"; (2) the NCWM-NIST approved standards for retail fuel sales as published in the NIST Handbooks; (3) the measurement standards governing the sale of retail fuel in units "independent of temperature"; (4) the regulation of retail fuel through liquid measuring devices, including NCWM/NIST Handbooks to promote equity and uniformity in the marketplace; (5) the role of weights and measures requirements with respect to regulation and inspection of retail fuel practices to insure fuel is sold in a non-deceptive manner and facilitates price and value comparisons; (6) the sale of motor fuel to consumers at retail without automatic temperature determination or adjustment and without temperature disclosure as not deceptive, misleading, or unfair; (7) temperature studies; (8) the risks of causing consumer confusion and facilitating a misleading practice with temperature disclosures; (9) the history, purpose, objectives, authority, cooperative/consensus-based decision-making, activity, operation, and voting of the National Conference of Weights and Measures and the relevant reports and analyses related to same; and (10) other matters discussed in his deposition or reports or in response to issues raised by Plaintiffs and/or their experts.

Rule 26(a)(3) Pretrial Disclosure For Defendants 7-Eleven, Inc., Circle K Stores, Inc., Kum & Go, L.C. and QuikTrip Corp. ("Defendants' Rule 26(a)(3) Disclosures") at 6-7, Exhibit 1 to Plaintiffs' Motions In Limine (Doc. #4256) at 16.

standards and how disclosure of tank temperature could be misleading because dispensed temperatures differ from tank temperatures. <u>Defendants Response</u> (Doc. #4294) at 27. If defendants can show that they knew of and considered these facts in deciding to sell retail motor fuel without disclosing or accounting for temperature, such evidence appears relevant to the jury determination whether defendants acted willfully or unconscionably. On this record, the Court will not exclude Malone's testimony.

**VIII.   Judy Cardin, Ross Andersen, Don Onwiler And Jonelle Brent**

Plaintiffs seek to exclude the testimony of Judy Cardin, Ross Andersen, Don Onwiler and Jonelle Brent because they are not experts on Kansas law. <u>Plaintiffs' Motions In Limine</u> (Doc. #4256) at 18-20. Plaintiffs also assert that their testimony will confuse and prejudice the jury and is cumulative. <u>Id.</u> at 20-22. In addition, plaintiffs seek to exclude Brent from testifying as an expert because defendants did not disclose her as an expert. <u>Id.</u> at 19-20.[17]

---

[17]   Plaintiffs' motion does not discuss witness titles or the subject matters on which they plan to testify. The Court extracts the following information from the <u>Defendants' Rule 26(a)(3) Disclosures</u>.

Cardin is former chairperson of NCWM and the National Type Evaluation Program ("NTEP"). <u>Defendants' Rule 26(a)(3) Disclosures</u> at 9. Defendants intend to present deposition testimony by Cardin that (1) standards published in NIST Handbooks are developed and approved by NCWM; (2) NCWM is an organization of state and local weights and measures officials and representatives of business, industry, consumer groups, and federal agencies; (3) NIST handbooks authorize retailers to sell motor fuel without regard to temperature as non-deceptive sales; (4) NCWM's rejection of a temperature-based method of sale at retail; and (5) if plaintiffs are allowed to put on evidence regarding the unfairness of the political process, defendants will counter-designate Cardin's testimony to rebut same. <u>Id.</u> at 9-10.

Andersen formerly worked as director of Weights and Measures, New York State Department of Agriculture & Markets. <u>Id.</u> at 9. Defendants intend to present deposition testimony by Andersen regarding (1) development and approval of weights and measures standards in the United States through NCWM; (2) the fact that government weights and measures officials regulate the retail sale of motor fuel; (3) the fact that NIST handbooks authorize retailers to sell motor fuel without regard to temperature and do not permit the use of temperature-related dispensers at retail; and (4) the fact that weights and measures officials have evaluated the pros and cons of

(continued...)

## A.   Relevance

Plaintiffs assert that the testimony of Cardin, Andersen, Onwiler and Brent is irrelevant because they are not experts on Kansas law.  Id. at 18-20.  As discussed, the Court will instruct the jury on the law.  The fact that these witnesses are not experts on Kansas law does not show that their testimony is irrelevant.  Plaintiffs' motion does not discuss the precise subject matters upon which the witnesses propose to testify or why those matters would be irrelevant to the issues at hand.  On this record, plaintiffs have not shown that the testimony of Cardin, Andersen, Onwiler and Brent is irrelevant.

## B.   Confusion

Plaintiffs assert that the testimony of Cardin, Andersen, Onwiler and Brent will confuse the

---

[17](...continued)
temperature-related method of sale and rejected it as not in the best interests of consumers.  Id.

Onwiler is Executive Director of NCWM.  Id.  Defendants intend to present deposition testimony by Onwiler regarding (1) the history, make up and purpose of NCWM; (2) the process of developing weights and measures standards for publication in NIST handbooks; (3) NIST handbooks provide for the sale of motor fuel at retail on a gallon-basis without reference to or adjustment for temperature; and (4) the fact that the NTEP evaluates and certifies motor fuel dispensers for use at retail stations.  Id.

Brent is former chief of the Bureau of Weights and Measures, Illinois Department of Agriculture and a member of the 2009 NCWM Laws and Regulations Committee.  Id. at 8.  Defendants plan to call Brent to testify (1) that NCWM develops and approves the standards published in NIST handbooks; (2) that NCWM is an organization of state and local weights and measures officials and representatives of business, industry, consumer groups, and federal agencies; (3) that NCWM has considered but decided against proposals that would have implemented a temperature-based sale at the retail level; and (4) other matters discussed in her affidavit dated May 27, 2011, or in response to issues raised by plaintiffs.  Id.

Some of the proposed subject areas appear to be off limits. For instance, what NIST handbooks authorize appears irrelevant unless they have been adopted in Kansas.  Moreover, as discussed, the Court will instruct the jury as to what the law allows.  The admissibility of other points, such as the fact that weights and measures officials have rejected temperature-related methods of sale as not in the best interests of consumers, will depend on how the evidence unfolds at trial.  Plaintiffs' motion does not address the proposed testimony on a point-by-point basis and the Court makes no rulings in this regard.

jury because "all" of their opinions surround NCWM and NIST handbooks, which are not the law in Kansas. Id. at 20. As noted, the Court will instruct the jury on Kansas law. The admissibility of evidence regarding the handbooks and NCWM depends on how the case unfolds at trial. On this record, plaintiffs have not shown that the testimony of Cardin, Andersen, Onwiler and Brent will unduly confuse the jury.

### C.    Prejudice

Plaintiffs assert that the jury may put undue emphasis on the testimony of Cardin, Andersen, Onwiler and Brent due to their titles and positions. Id. at 21. The Court is confident that it can ably instruct the jury to discern and decide the issues at hand without placing undue emphasis on witness titles and positions. On this record, plaintiffs have not shown that the testimony of Cardin, Andersen, Onwiler and Brent will necessarily prejudice the jury.

### D.    Cumulative

Plaintiffs assert that the testimony of Cardin, Andersen, Onwiler and Brent is cumulative. Id. at 21-22. At this point, it remains to be seen which witnesses defendants will call and for what purpose. Accordingly, the Court defers ruling whether certain evidence is cumulative.

### E.    Failure To Disclose Brent As Expert

Plaintiffs seek to exclude Brent from testifying as an expert because defendants did not disclose her as an expert. Plaintiffs' Motions In Limine (Doc. #4256) at 19-20. Defendants do not respond to this assertion. See Defendants' Response (Doc. #4294). Defendants' expert joint disclosure does not list Brent as an expert witness. See Defendants' Joint Expert Disclosures. Accordingly, the Court will not allow Brent to testify as an expert.

20

## IX.    Tim Tyson

Tyson is Director of the Division of Weights and Measures, Kansas Department of Agriculture.  Defendants' Rule 26(a)(3) Disclosures at 3.  Tyson plans to testify as to the following:

> the roles and responsibilities of the Kansas Department of Agriculture and the Division of Weights and Measures; his job description and responsibilities; the Kansas statutes and regulations for weights and measures; the Kansas regulations regarding motor fuel measuring devices (i.e., gas pumps); the inspections and approvals of motor fuel measuring devices in Kansas; the Kansas certificate of conformance for motor fuel pumps; the enforcement of the Kansas regulations and statutes relating to weights and measures; the role of the Kansas weights and measures department with respect to their regulation and inspection of retail fuel practices to insure fuel is sold in a nondeceptive manner and facilitates price and value comparisons; the National Institute of Standards and Technology Handbook 44; the disallowance of the use of ATC; that motor fuel is to be sold in Kansas by the gallon and the definition of the term "gallon" in Kansas as a unit of measurement "independent of temperature"; the maintenance tolerance for the delivery of gallons of motor fuel sold in Kansas; the effect of implementing temperature-related equipment in Kansas; that the sale of motor fuel to consumers at retail in the State of Kansas without temperature compensation or disclosure is not deceptive, misleading, unfair, or unjust; the relevant information, reports, and analyses regarding same; the average temperature of fuel in Kansas; and other matters discussed in his deposition or in response to issues raised by Plaintiffs and/or their experts.

Id. at 7-8.

Plaintiffs assert that much of Tyson's proposed testimony consists of legal conclusions which will invade the province of the Court.  Plaintiffs' Motions In Limine (Doc. #4256) at 23-24. Consistent with the rulings herein, Tyson may not testify as to (1) legal conclusions, including whether the sale of motor fuel to consumers at retail in Kansas without temperature compensation or disclosure is "deceptive" or "misleading;"[18] (2) whether such conduct is "unfair" or "unjust;" and

---

[18]    Defendants urge the Court to allow Tyson to testify regarding the ultimate issue of "deception" because his job is to make precisely the same determination that the jury will be asked to make, i.e. whether defendants' conduct is deceptive without temperature disclosure.  Defendants' Response (Doc. #4294) at 20-22.  Specifically, defendants assert that it would be relevant and
(continued...)

(3) what Kansas law allows or does not allow.  Plaintiffs' motion does not discuss on a point-by-point basis the subject matters on which Tyson proposes to testify.  Likewise, the Court does not do so here.  In the context of trial, the Court will determine the admissibility of any remaining areas of Tyson's proposed testimony.[19]

## X.      Gordon Johnson

Johnson is a representative of Gilbarco Veeder-Root, a manufacturer of retail motor fuel dispensing devices.  See Defendants' Response (Doc. #4294) at 29; In re Motor Fuel Sales Pract. Litig., No. 07-1840-KHV, 2012 WL 976039, at *4 (D. Kan. March 22, 2012).  Defendants intend to present deposition testimony by Johnson regarding the following:

> (1) [the] procurement process for Weights and Measures approval; (2) his attendance at NCWM meetings and efforts to procure approval for ATC equipment; (3) lack of regulatory approval to implement ATC equipment; (4) technical and regulatory obstacles to commercial availability of temperature adjustment and disclosure equipment; and (5) fuel reconciliation and fuel dispensing equipment characteristics generally.

Defendants' Rule 26(a)(3) Disclosures at 10.

Plaintiffs seek to exclude testimony by Johnson in Phase I because it involves (1) NCWM actions; (2) NCWM handbooks; and (3) the status and legality of ATC.  Plaintiffs' Motions In Limine (Doc. #4256) at 26.  Defendants respond that Johnson's testimony is relevant to their

---

[18](...continued)
helpful for the jury to know that Kansas regulators have never sanctioned defendants for not disclosing temperature.  Id. at 21-22.  The Court agrees that such evidence may be relevant. Consistent with the Court's rulings herein, Tyson may be able to testify regarding underlying facts, e.g. whether Kansas regulators have sanctioned defendants, i.e. ultimate facts – but he may not testify regarding ultimate questions of law, i.e. whether defendants' conduct is deceptive or unconscionable under the KCPA.  See infra at 3-6; Specht, 853 F.2d at 807-09; Advisory Committee Notes to Fed. R. Civ. P. 704.

[19]      For reasons stated regarding the testimony of Cardin, Andersen, Onwiler and Brent, the Court rejects plaintiffs arguments that Tyson's testimony is prejudicial and cumulative.

affirmative defense that alternative methods of sale are impractical or impossible due to the absence of commercially available ATC equipment in the United States.  Defendants' Response (Doc. #4294) at 29.  As discussed, the availability of ATC equipment could be relevant to the jury determination whether defendants acted willfully or unconscionably by selling retail motor fuel without disclosing or accounting for temperature.  On this record, the Court will not exclude Johnson's testimony.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motions In Limine (Doc. #4256) filed April 25, 2012 be and hereby is **SUSTAINED in part.**  The Court excludes evidence regarding (1) whether certain conduct is "legal," "authorized," "deceptive," "unconscionable," "misleading" or "unfair;" and (2) model rules and regulations which Kansas has not adopted.  In addition, Brent may not testify as an expert witness.

Dated this 22nd day of August, 2012 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge