**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) <br> SALES PRACTICES LITIGATION ) <br> ) <br> This Document Relates To: ) <br> ) <br> <u>Wilson, et al. v. Ampride, Inc., et al.</u>, ) <br>     Case No. 06-2582-KHV, ) <br> ) <br> **and** ) <br> ) <br> <u>American Fiber & Cabling, LLC, et al.</u> ) <br> <u>v. BP Products North America Inc., et al.</u>, ) <br>     Case No. 07-2053-KHV. ) <br>                                           ) | **MDL No. 1840** <br> **Case No. 07-1840-KHV** |

**MEMORANDUM AND ORDER**

Plaintiffs in these consolidated cases bring class action claims against defendants for violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. §§ 50–623 to 50–679a. <u>Amended Pretrial Order</u> (Doc. #3809) filed March 20, 2012 at 3. Specifically, plaintiffs claim that because defendants advertise and sell motor fuel for a specified price per gallon without disclosing or accounting for temperature expansion, they willfully omit material facts related to the energy content and value of motor fuel and engage in unfair and unconscionable sales practices. <u>See</u> <u>id.</u> at 6-8. Trial for Phase I is set for August 27, 2012.[1] <u>See</u> <u>Order</u> (Doc. #4365) filed August 9, 2012. This matter comes before the Court on <u>Defendants' Motion *In Limine* And Memorandum In Support To Preclude Evidence And Argument Related To Information And Activities Protected By The First Amendment Right To Petition And Right Of Association</u> ("Defendants' Motion") (Doc. #4253) filed

---

[1] The Court plans to try the cases in two phases. <u>See</u> <u>In re Motor Fuel Temp. Sales Pract. Litig.</u>, 279 F.R.D. 598, 618-19 (D. Kan. 2012). In Phase I, plaintiffs will try the liability aspects of their claims. <u>Id.</u> If plaintiffs prevail on any of their claims in Phase I, the Court will determine in Phase II whether injunctive and/or declaratory relief is appropriate as to the remaining claims, and any individual damages. <u>Id.</u> at 619.

April 25, 2012.[2]  For reasons stated below, the Court overrules the motion.

## Legal Standards

The purpose of a motion in limine is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." United States v. Cline, 188 F. Supp.2d 1287, 1291 (D. Kan. 2002) (quoting Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir.1996)) (further citations omitted).  Pretrial rulings often may save time at trial, as well as save the parties time, effort and cost in preparing their cases.  See id.  The Court recognizes that in many cases, evidentiary rulings should be deferred until trial so that questions of foundation, relevance and potential prejudice may be resolved in the proper context.  See Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975) (though in limine rulings can save time, cost, effort and preparation, court usually better situated during trial to assess evidence); Rettiger v. IBP, Inc., No. 96-4015-SAC, 1999 WL 318153, at *2 (D. Kan. Jan. 6, 1999) (court almost always better situated during actual trial to assess value and utility of evidence).

## Analysis

Defendants seek to exclude all evidence, testimony and argument related to "information and activities protected by the First Amendment Right to Petition and Right of Association." Defendants' Motion (Doc. #4253) at 1.  Specifically, defendants seek to exclude evidence regarding

---

[2] On May 29, 2012, defendants filed a motion for leave to file replies in support of their motions in limine.  Motion For Leave To File Reply Briefs In Support Of Motions In Limine (Doc. #4317).  The pretrial order states that "[r]eply briefs in support of motions in limine shall not be allowed without leave of court."  Amended Pretrial Order (Doc. #3809) at 50.  Defendants' reply in support of this motion in limine, which they attached to their motion for leave to file, essentially rehashes the arguments made in their motion. The Court therefore denies leave to file the reply.

(1) defendants' membership in various trade associations; (2) non-party lobbying and petitioning of public and private entities as part of an overall public policy campaign related to automatic temperature compensation ("ATC") at retail; and (3) some defendants' association with like-minded individuals and organizations regarding joint-lobbying efforts. Id. at 1-2.

### I.     Defendants' Membership In Trade Associations

Based on the First Amendment, defendants seek to exclude evidence, testimony or argument related to their membership in various trade associations. Defendants' Motion (Doc. #4253) at 1-2. Defendants' motion, however, contains no argument or legal analysis to explain why the Court should exclude such evidence. The motion makes brief references to the First Amendment right to associate, id. at 1-3, 8, but it does not discuss why the First Amendment would preclude evidence regarding defendants' membership in trade associations. On this record, defendants have not shown that the Court should exclude evidence related to their membership in various trade associations.[3]

### II.    Non-Party Lobbying And Petitioning

Based on the First Amendment, defendants seek to exclude evidence, testimony or argument

---

[3] In ruling on issues regarding plaintiffs' ability to discover information from non-party trade associations, Magistrate Judge James P. O'Hara found that confidential trade association membership lists go to the core of the right to associate under the First Amendment. In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. 407, 416 (D. Kan. 2009), reversed in part on other grounds, 707 F. Supp.2d 1145 (D. Kan. 2010), appeal dismissed, mandate denied, 641 F.3d 470 (10th Cir. 2011), cert. denied, NATSO, Inc. v. 3 Girls Enter., Inc. 132 S. Ct. 1004 (2012). Specifically, Judge O'Hara ruled that plaintiffs' need for actual membership lists was minimal and did not outweigh trade associations' First Amendment privilege against disclosing the information. In re Motor Fuel, 258 F.R.D. at 416. Judge O'Hara noted, however, that to the extent membership information had been publicly disclosed, the First Amendment privilege did not apply. Id. at 413. Plaintiffs did not challenge those rulings. 707 F. Supp.2d at 1151.

Jude O'Hara's rulings do not go to whether evidence regarding defendants' membership in trade associations is admissible at trial. Defendants do not challenge whether such evidence is relevant to plaintiffs' claims. The Court makes no rulings in this regard.

3

related to non-party lobbying and petitioning of public and private entities as part of an overall public policy campaign related to automatic temperature compensation ("ATC") at retail. Id. at 1-2. Defendants also assert that such evidence is irrelevant and would unfairly prejudice the jury. Specifically, defendants seek to exclude documents including but not limited to the following:

- Testimony of Tom Palace regarding PMCA's[4] lobbying of state and national governmental officials and incidental speech toward equipment manufacturers.

- E-mails between non-party trade associations and government officials regarding temperature compensation legislation.

- E-mails between non-party trade associations discussing efforts to influence legislative efforts on temperature compensation proposals.

- E-mails between non-party trade associations and non-party trade association members related to strategic efforts for campaigns to further legislative efforts on temperature compensation.

- E-mails from non-party pump equipment manufacturers discussing publicity campaigns and legislative efforts by trade associations.

Defendants' Motion (Doc. #4253) at 2-3.[5]

### A.    First Amendment

Defendants assert that these documents reflect activity which the First Amendment protects, i.e. the right to petition and the right to associate. Id. at 3-4. The doctrine set forth in E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961), and United Mine Workers

---

[4]    PMCA is the Petroleum Marketers & Convenience Store Association of Kansas. Tom Palace is Executive Director of PMCA. See PMCA Staff, http://pmcaofkansas.org/assoc/?page_id=150 (last visited on August 22, 2012).

[5]    To the extent defendants assert that such evidence is inadmissible because it constitutes inadmissible hearsay or because plaintiffs cannot lay a proper foundation, see Defendants' Motion (Doc. #4253) at 3, the Court reserves ruling until specific matters arise in the context of trial.

4

of Am. v. Pennington, 381 U.S. 657, 670 (1965), (the "Noerr-Pennington doctrine"), protects from antitrust liability concerted efforts to restrain or monopolize trade by petitioning the government or influencing public officials. Where anti-competitive injury stems directly from governmental action, those urging the government action are immune from antitrust liability. See, e.g., Sessions Tank Liners, Inc. v. Joor Mfg., Inc., 17 F.3d 295, 299 (9th Cir. 1994). In addition, where a private party's genuine efforts to influence government action causes incidental injury to competitors, the private party's acts cannot form the basis for antitrust liability. See Noerr, 365 U.S. at 142-44. Courts have extended the Noerr-Pennington doctrine beyond antitrust cases to place limits on liability for a range of common law torts. See Scott v. Hern, 216 F.3d 897, 914 (10th Cir. 2000). Outside the antitrust context, any immunity is based solely on the right to petition the government which is guaranteed by the Petition Clause of the First Amendment. See Cardtoons, L.C. v. Major League Baseball Players Ass'n, 208 F.3d 885, 889-90 (10th Cir. 2000) (en banc).

Defendants' motion does not clearly distinguish between lobbying and petitioning activities by defendants, and lobbying and petitioning activities by non-parties. Defendants' legal analysis suggests that plaintiffs cannot use *defendants'* lobbying and petitioning to prove liability.[6] Id. at 4. Defendants cite no authority, however, to show that the First Amendment would preclude evidence of lobbying and petitioning by non-parties.

Even if defendants could invoke the First Amendment to preclude liability based on non-party lobbying and petitioning, they have not shown that the First Amendment would protect against evidence in this case. Plaintiffs make compelling arguments that defendants have mischaracterized

---

[6] Defendants cite no authority to show that Noerr-Pennington principles apply to liability under the KCPA. Plaintiffs, however, do not plan to assert that defendants' lobbying can form the basis for liability under the KCPA. Plaintiffs' Response (Doc. #4305) at 7. The Court makes no rulings in this regard.

certain documents, i.e. that certain communications are not "publicity campaigns" or "legislative efforts" and that the First Amendment does not protect communications to the National Conference on Weights and Measures ("NCWM") because it is a private entity.  Plaintiffs' Response (Doc. #4305) at 2-4, 6-7.  Whether the First Amendment would protect against liability depends on the context and nature of each communication including (1) the nature and purpose of the communication; (2) who made it; (3) to whom it was made; and (4) the purpose for which it is offered in evidence.  See, e.g., Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 502-11 (1988).  Resolution of these issues would require a document-by-document review which on this record the Court cannot do in advance of trial.

**B.     Relevance**

Defendants assert that evidence of non-party trade association lobbying and petitioning is irrelevant because defendants are not members of many of the trade associations.  Defendants' Motion (Doc. #4253) at 6.  The record does not disclose to which trade associations defendants refer or the trade associations to which defendants belong.  On this record, defendants have not shown that evidence is irrelevant on this ground.

Defendants assert that evidence of non-party trade association lobbying and petitioning is irrelevant because those acts are not attributable to defendants.  Id. at 6-7.  Specifically, defendants assert that trade association members are not liable for trade association acts based on membership alone.  The Court agrees with this principle.  See Memorandum And Order (Doc. #3816) filed March 22, 2012 at 16.  The fact that defendants may not be liable for trade association acts, however, does not necessarily mean that all evidence of non-party trade association lobbying and petitioning is irrelevant to this case.

Defendants assert that evidence of non-party trade association lobbying and petitioning is irrelevant because the Court granted summary judgment in favor of defendants on plaintiffs' claims for conspiracy. Defendants' Motion (Doc. #4253) at 6-7. In the summary judgment ruling, the Court found that plaintiffs cited no evidence to show that defendants controlled or directed trade association activity. Memorandum And Order (Doc. #3816) at 15. Without such evidence, the Court found that plaintiffs could not show that defendants conspired through acts by the trade associations. Id. at 16. The fact that the summary judgment record did not show a material fact issue whether defendants conspired through acts by trade associations, however, does not necessarily mean that all evidence of trade association lobbying and petitioning is irrelevant to this case.

Plaintiffs assert that evidence of non-party trade association lobbying and petitioning is relevant to defenses which defendants plan to raise at trial. Plaintiffs' Response (Doc. #4305) at 7-12. Specifically, plaintiffs assert that evidence of non-party lobbying of NCWM and the California Energy Commission ("CEC") is relevant to defendants' defense that certain political bodies or private standard-setting organizations have evaluated ATC and rejected it. Plaintiffs assert that evidence of non-party lobbying of these organizations is relevant to show the "type and caliber of the information that went into those discussions," id. at 8, and that such evidence will provide context and rebut defendants' arguments that NCWM and similar standard-setting bodies have objectively vetted retail ATC, id. at 9, 11.

Plaintiffs filed a motion in limine to exclude evidence relating to NCWM debates regarding ATC at retail. Plaintiffs' Motions In Limine (Doc. #4256) filed April 25, 2012 at 12. On August 22, 2012, the Court overruled the motion finding that if defendants can show that they knew of and relied on the fact that NCWM debated and did not adopt provisions for permissive or mandatory

7

ATC at retail, such information may be relevant to the jury determination whether defendants acted willfully or unconscionably by selling retail motor fuel without disclosing or accounting for temperature. Memorandum And Order (Doc. #4378) at 13. Until this evidence unfolds in the context of trial, the Court cannot determine the relevancy of non-party lobbying of NCWM or other organizations regarding ATC.

Plaintiffs also assert that evidence of non-party pressure on Gilbarco Veeder-Root ("Gilbarco"), a manufacturer of retail motor fuel dispensing devices, is relevant to defendants' defense that they could not implement ATC because no certified pumps were available. Plaintiffs assert that if defendants present this defense, evidence of non-party communications is relevant to show why certified ATC pumps were not available, e.g. because the oil industry pressured Gilbarco to stop its efforts to produce such pumps. Plaintiffs' Response (Doc. #4305) at 10-11.

Plaintiffs filed a motion in limine to exclude testimony by Gordon Johnson, a representative of Gilbarco. Plaintiffs' Motions In Limine (Doc. #4256) filed April 25, 2012 at 26. Defendants responded that Johnson's testimony is relevant to their affirmative defense that alternative methods of sale are impractical or impossible due to the absence of commercially available ATC equipment in the United States. Defendants' Response To Plaintiffs' Motions In Limine (Doc. #4294) filed May 14, 2012 at 29. The Court overruled the plaintiffs' motion, finding that the availability of ATC equipment appears relevant to the jury determination whether defendants acted willfully or unconscionably by selling retail motor fuel without disclosing or accounting for temperature. Memorandum And Order (Doc. #4378) at 22-23.

At this juncture, it remains to be seen what evidence defendants will present in the case. In the context of trial, the Court can better determine whether particular evidence of non-party

communications is sufficiently related to and probative of the issues at hand.

### C. Prejudice

Defendants assert that evidence of non-party trade association lobbying and petitioning would unduly prejudice the jury because "[p]laintiffs would seek to argue that such petitioning is improper and the mere act of political advocacy is something from which the jurors could draw negative inferences." Defendants' Motion (Doc. #4253) at 7. Defendants assert that "the negative inferences would inescapably be drawn against the Defendants themselves, *who did not even engage in the petitioning activities being presented to the jury.*" Id. at 7-8 (emphasis in original). Plaintiffs respond that they do not plan to argue that lobbying the government is improper or that jurors should draw negative inferences from such conduct. Plaintiffs' Response (Doc. #4305) at 12. In light of plaintiffs' response, defendants' concerns in this regard appear to be misplaced.

### III. Some Defendants' Association With Like-Minded Individuals And Organizations

Based on the First Amendment, defendants seek to exclude evidence, testimony or argument related to some defendants' association with like-minded individuals and organizations regarding joint-lobbying efforts. Specifically, defendants assert that the First Amendment shields them from liability based their association with like-minded individuals on issues related to temperature compensation. Defendants' Motion (Doc. #4253) at 4. As an initial matter, defendants provide no specific examples of evidence which falls in this category. Moreover, it appears that case law does not support the blanket ruling which defendants seek. Whether the First Amendment protects against liability for these types of communications depends on the context and nature of each communication, including (1) who made it; (2) the nature and purpose of the communication; and (3) to whom it was made. See, e.g., Allied Tube & Conduit, 486 U.S. at 502-11. Resolution of these

issues would require a document-by-document review which on this record the Court cannot do in advance of trial.

On this record, the Court overrules defendants' motion to preclude evidence based on First Amendment protection.

**IT IS THEREFORE ORDERED** that Defendants' Motion *In Limine* And Memorandum In Support To Preclude Evidence And Argument Related To Information And Activities Protected By The First Amendment Right To Petition And Right Of Association (Doc. #4253) filed April 25, 2012 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that defendants' Motion For Leave To File Reply Briefs In Support Of Motions In Limine (Doc. #4317) filed May 29, 2012 be and hereby is **OVERRULED.**

Dated this 23rd day of August, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge