## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION | ) ) |
| | ) **MDL No. 1840** |
| **This Document Relates To:** | ) **Case No. 07-1840-KHV** |
| | ) |
| **Wilson, et al. v. Ampride, Inc., et al.,**         Case No. 06-2582-KHV, | ) ) |
| | ) |
| **and** | ) |
| | ) |
| **American Fiber & Cabling, LLC, et al. v. BP Products North America Inc., et al.,**         Case No. 07-2053-KHV. | ) ) ) |
| _____ | ) |

### MEMORANDUM AND ORDER

Plaintiffs in these consolidated cases – Zachary Wilson and Mathew Cook – bring class action claims against defendants – 7-Eleven, Inc., Kum & Go, L.C., and QuikTrip Corp. – for willfully omitting material facts and engaging in unconscionable acts or practices, in connection with selling motor fuel to consumers at retail, in violation of the Kansas Consumer Protection Act, K.S.A. §§ 50- 626(b)(3) and 50-627 ("KCPA"). See Amended Pretrial Order (Doc. #3809) filed March 20, 2012 at 16-20. Wilson sued 7-Eleven, Inc., and Cook sued Kum & Go, L.C., and QuikTrip Corp.

Plaintiffs contend that defendants' practice of advertising and selling motor fuel for a specified price per gallon without disclosing or accounting for temperature violates the KCPA. On September 5-7, 10-14, 17 and 24, the Court tried plaintiffs' claims as they relate to 7-Eleven, Inc., Kum & Go, L.C. and QuikTrip Corp. The willful omission claims were tried to a jury; the unconscionable acts or practices claims were tried to the Court in accord with K.S.A. § 50-627(b). The jury found that defendants did not willfully fail to state, conceal, suppress or omit the fact that

temperature affects the energy content (and therefore the value) of motor fuel and/or the temperature of motor fuel.  Plaintiffs' unconscionable acts or practices claims are now before the Court.  After careful consideration, the Court makes the following findings of fact and conclusions of law, as required by Rule 52(a)(1) of the Federal Rules of Civil Procedure.

### Findings Of Fact

7-Eleven is a corporation organized under the laws of the State of Texas and maintains its principal place of business in Dallas, Texas.  Kum & Go is a limited liability company organized under the laws of the State of Iowa and maintains its principal place of business in West Des Moines, Iowa.  QuikTrip is a corporation organized under the laws of the State of Oklahoma and maintains its principal place of business in Tulsa, Oklahoma.  Both Wilson and Cook are Kansas residents.

QuikTrip and 7-Eleven sell motor fuel in Kansas by the gallon without reference to temperature.  Before January of 2008, Kum & Go sold motor fuel in Kansas by the gallon without reference to temperature.

In the United States, the industry standard benchmark temperature for motor fuel is 60 degrees Fahrenheit.  A "gross gallon" is 231 cubic inches with no reference to temperature.  A "net gallon" is 231 cubic inches at 60 degrees Fahrenheit.  Temperature affects the volume of motor fuel. Fuel expands as it warms and contracts as it cools.  The expansion and contraction of motor fuel affects the energy content of a given gallon.  A warmer gallon of motor fuel has less chemical energy than a cooler gallon of the same motor fuel.  Albeit indirectly, temperature affects the value of fuel sold at retail.

In addition to temperature, a number of factors affect the energy content of motor fuel.  In

general, with respect to motor fuel which defendants sold in Kansas, buyers and sellers throughout the supply chain – from crude oil production to wholesale transactions – account for temperature and its effects by transacting in net gallons.

For QuikTrip and 7-Eleven, the primary factor in setting the price of motor fuel at retail is competition on the street. They do not consider temperature in setting the price of motor fuel at retail, and they have no way of knowing the temperature of dispensed fuel. For 7-Eleven, the cost of motor fuel is one factor that it considers when pricing motor fuel at retail. 7-Eleven price analysts do not have access to 7-Eleven tank temperatures.

QuikTrip and 7-Eleven retail motor fuel tanks have automatic tank gauges ("ATGs") which are designed to track environmental data. Among other things, they measure the temperature of motor fuel in the tank at the retail station. Regulators do not inspect them. Third parties certify the gauges annually, and provide the results to the regulators. The thermistor on the ATG is not tested for accuracy or recalibrated to ensure accuracy.

No gas pump that measures or determines the temperature of motor fuel at retail has received a certificate of conformance for use in Kansas. The Kansas Department of Weights and Measures has never sanctioned or cited defendants for selling motor fuel in Kansas without disclosing or adjusting for temperature, or for failing to disclose that temperature can affect the energy content of motor fuel sold at retail.

### Conclusions Of Law

The KCPA provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." K.S.A. § 50-627(a). To prevail on their unconscionable acts and/or practices claim, plaintiffs must show that (1) they were consumers under

3

the KCPA, (2) defendants were suppliers under the KCPA, (3) defendants committed unconscionable acts or practices and (4) plaintiffs and class members were aggrieved by defendants' unconscionable acts and/or practices.  Amended Pretrial Order (Doc. 3809) at 17-19.

The KCPA requires courts to liberally construe the KCPA to promote the policy of protecting consumers from suppliers who commit deceptive and unconscionable practices.  Kan. Stat. Ann. § 50-623(b).  It does not specifically define unconscionable acts or practices, however, and it does not provide substantial guidance on that issue.  See K.S.A. § 50-627(b).  In determining whether an act or practice is unconscionable, the statute requires that courts consider circumstances of which defendants knew or had reason to know, including but not limited to the following:

    (1)   The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;

    (2)   when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers;

    (3)   the consumer was unable to receive a material benefit from the subject of the transaction;

    (4)   when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer;

    (5)   the transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier;

    (6)   the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; and

    (7)   except as provided by K.S.A. 50-639, and amendments thereto, the supplier excluded, modified or otherwise attempted to limit either the implied warranties of merchantability and fitness for a particular purpose or any remedy provided by law for a breach of those warranties.

Id. § 50-627(b); see also State ex rel. Stovall v. DVM Enters., Inc., 275 Kan. 243, 249-50, 62 P.3d 653, 657 (2003) (listing additional factors to consider).  In general, to be unconscionable the act or practice must contain "some element of deceptive bargaining conduct . . . as well as unequal

bargaining power." <u>Stovall</u>, 275 Kan. at 251, 62 P.3d at 658. Typically, unconscionable acts or practices involve conduct by which a supplier seeks to induce or require a consumer to assume risks which materially exceed the benefits of a related consumer transaction. K.S.A. § 50-627, 1973 cmt. 1; <u>see also</u> <u>State ex rel. Stovall v. ConfiMed.com, L.L.C.</u>, 272 Kan. 1313, 1318, 1321, 38 P.3d 707, 711-13 (2002).

What constitutes an unconscionable act or practice under the KCPA is also informed by the definition of "unconscionable" in the context of contract interpretation. <u>See</u> K.S.A. § 50-627, 1973 cmt. 1 (citing K.S.A. § 84-2-302 – the Uniform Commercial Code provision defining unconscionable contract or clause – in defining unconscionable acts and practices under K.S.A. § 50-627). A contractual provision is unconscionable only if it is, "under the circumstances, so outrageous and unfair in its wording or its application that it shocks the conscience or offends the sensibilities of the court, or is against public policy." <u>Wayman v. Amoco Oil Co.</u>, 923 F. Supp. 1322, 1341-2 (D. Kan. 1996) (quoting <u>Adams v. John Deere Co.</u>, 13 Kan. App.2d 489, 492, 774 P.2d 355, 357 (1989)).

After considering all the evidence at trial, and the factors listed above, the Court finds that plaintiffs did not show by a preponderance of evidence that defendants' act or practice of selling motor fuel by the gallon without disclosing temperature, disclosing the effect of temperature or adjusting for temperature was unconscionable. The evidence showed that all motor fuel retailers in Kansas sold motor fuel the same way as defendants, that defendants relied primarily on competitors' prices when setting their price, that defendants did not know and had no accurate way of measuring the temperature of dispensed motor fuel and that defendants had never been cited or sanctioned by Weights and Measures inspectors for selling gas the way they do. Arguably,

defendants took advantage of consumer ignorance, but the other statutory factors weigh against plaintiffs.  Plaintiffs failed to establish by a preponderance of the evidence that the retail motor fuel transactions between plaintiffs and defendants deprived plaintiffs of a material benefit of the transaction or that the transactions were excessively one-sided.  Moreover, the manner in which defendants sold, and continue to sell, motor fuel at retail does not shock the conscience or contravene current public policy.

   **IT IS THEREFORE ORDERED** that defendants act or practice of  selling motor fuel by the gallon without disclosing temperature, disclosing the effect of temperature or adjusting for temperature was not unconscionable as defined by K.S.A. § 50-627.

   Dated this 3rd day of October, 2012 at Kansas City, Kansas.

             s/  Kathryn H. Vratil   
             KATHRYN H. VRATIL
             United States District Judge