**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| **IN RE MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION** | D.C. No. 2:07-md-01840-KHV-JPO<br><br>**OPINION** |

**KOZINSKI**, Chief Judge:

The administrative matter pending before me concerns three cases that had originally been filed in three separate districts in California:

> Lerner v. Costco Wholesale Corp., No. 2:07-cv-01216-GHK-FMO (C. D. Cal.)
> Rushing v. Alon USA, Inc., No. 4:06-cv-07621-PJH (N.D. Cal.)
> Wyatt v. B.P. America Corp., No. 3:07-cv-01754-BTM-JMA (S. D. Cal.)

These cases were referred (along with others) to the District of Kansas by the Judicial Panel on Multidistrict Litigation for consolidated pre-trial proceedings pursuant to 28 U.S.C § 1407. These proceedings were conducted before the Honorable Kathryn H. Vratil, Chief Judge of that district. Pretrial proceedings apparently having concluded, Chief Judge Vratil has decided to ask the Multidistrict Panel to remand these cases back to California for trial. So far as I'm aware, that transfer hasn't yet occurred, but I have no doubt that it will.

On remand, the cases would normally be returned for trial to the judges before whom they were previously pending.  In this case, however, Chief Judge Vratil has graciously indicated her willingness to travel to California to conduct the trial(s).  Because Chief Judge Vratil's duty station is in the Tenth Circuit, she may only preside over a trial in the Ninth Circuit with the approval of the Chief Justice of the United States.  28 U.S.C. § 292(d).

The Chief Justice has adopted Guidelines for the Intercircuit Assignment of Article III Judges (approved by the Chief Justice Feb. 16, 2012).  See Appendix A. These procedures operate roughly as follows:  A federal court in our circuit identifies a need for a visiting judge for a case or cases pending in that court.  The need may be occasioned by a shortage of judges, or by the recusal or disqualification of all of the court's judges; it may concern a single case or a multitude of cases; it may be for a single trial or hearing, or it may apply to scores of them.  If the need can't be satisfied by judges within the circuit, our Circuit Executive and her trusty staff identifies a judge or judges outside the circuit who are available and willing to serve.  In this effort, they're immensely aided by the Judicial Conference Committee on Intercircuit Assignments, whose invaluable and frequent help I gratefully acknowledge.

Once a willing out-of-circuit judge has been identified, the chief judge of the

page 3

borrowing circuit signs a Certificate of Necessity, which, not surprisingly, represents that an out-of-circuit judge is needed for a particular case, location or time period.  See Appendix B.  If the judge being requested is an active judge, the chief judge of the lending circuit must sign a Consent to Assignment, expressing approval of the transfer based on an assessment that the sound administration of justice in the lending circuit won't be impaired by the temporary departure of the judge in question. See Appendix C.

In practice, the Committee on Intercircuit Assignments and its fine staff at the Administrative Office of the United States Courts, operates more informally—and usefully—as a clearinghouse for judges willing to take out-of-circuit assignments and circuits needing judicial help from visiting judges.  The committee regularly sends inquiries to senior judges in the various circuits as to their willingness to serve outside their circuits, should the need for their services arise.  Committee members and staff will also contact judges directly and encourage or implore them to accept inter-circuit assignment when there's an unmet need.  As a circuit that's perpetually short of judicial officers, particularly in the district courts, the Ninth Circuit is a frequent beneficiary of the committee's ceaseless and effective efforts.

The request for a Certificate of Necessity now pending before me is unusual

in that it didn't originate as a request from one of the courts in our circuit. Neither I nor our Circuit Executive has been contacted by the Chief Judges of the Northern, Central or Southern Districts of California representing that there's a need for an out-of-circuit judge to handle these cases upon remand to their respective districts. Doubtless, each of the districts could use judicial help; our hard-working district judges are severely overburdened and could benefit from a substantial reduction in workload. Such routine over-burdening does not, however, generally give rise to the necessity for a visiting judge, much less a visiting judge from another circuit. Only severe or unexpected over-burdening, as happens when a judge dies or retires, when the district is experiencing a judicial emergency or when all the judges are recused because of a conflict, will warrant bringing in a visiting judge.

Even then, our first recourse is to try to fill the need by bringing in a visiting judge from another court within the circuit. Only if this isn't possible do we seek the assistance of out-of-circuit judges. This is consistent with first of the Chief Justice's Guidelines, which states as follows: "A federal judge has responsibility: first, to the particular court of which he or she is a member; second, to the other courts within his or her own circuit; and third, to courts outside his or her circuit." Appendix A. I interpret this as reflecting the converse responsibility of seeking out-of-circuit help only if the need can't be filled by judges from other courts

within the circuit.

The proposed inter-circuit assignment that's now pending before me doesn't meet the profile for such an assignment.  In order to fulfill my role in effecting this assignment, therefore, I'd have to sign a form certifying that there's a necessity for it, even though I'm aware of no such necessity.

Nevertheless, a good case can be made that the assignment of Chief Judge Vratil will serve the interests of judicial efficiency.  Indeed, in referring the matter to me, Judge J. Frederick Motz of the District of Maryland, speaking as chairman of the Committee on Intercircuit Assignments, strongly endorsed such inter-circuit assignments following the conclusion of pre-trial proceedings in multi-district litigation:

> I have encouraged MDL judges to take intercircuit assignments to try cases in transferor courts if the MDL cases cannot be resolved pretrial.  We think that promotes judicial efficiency (1) by helping to prevent MDL cases from starting over and going to the back of the docket of transferor courts when the MDL Panel remands the cases for trial to the transferor courts, (2) by drawing on the knowledge that the MDL judge has obtained by her/his work on pretrial issues, (3) giving MDL judges control over their proceedings, and (4) maximizing the federal judiciary's use of excellent and willing judges . . . in the MDL process.

I note, however, that Judge Motz's position is not unanimously endorsed by all members of the committee.  Judge Nathaniel M. Gorton of the District of Massachusetts has expressed a contrary view:

> I believe that I come at the question from a slightly different angle . . . .  28 U.S.C. § 1407 seems pretty clear to me to require that each action transferred pursuant to its provisions "shall be remanded . . . to the district from which it was transferred."  That, together with my reading of . . . Supreme Court [precedent] leaves the impression that [no] transferee judge can "self-assign" MDL cases to herself/himself.  It seems to follow therefrom that transferee judges also should not seek (or accept), without unanimous consent, intercircuit assignments to try cases the pretrials of which they have just supervised.

Defendants in these cases have objected to Chief Judge Vratil's intercircuit assignment on a number of grounds.  Their most forceful argument is based on Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).  They argue that allowing the MDL judge to follow the cases after the conclusion of pre-trial proceedings resuscitates the self-referral practice that the Supreme Court unanimously repudiated in Lexecon.  See 523 U.S. at 40.

While this argument has some force, I don't ultimately find it convincing.  Lexecon dealt with venue, not judicial case assignment.  The Lexecon Court held that a plaintiff is entitled to select the venue where the case will be tried, and this right can't be undermined by having the case transferred for pre-trial proceedings under the MDL process.  Lexecon, 523 U.S. at 40–41.  Venue is important for a number of practical reasons, such as ease of access to the forum by plaintiffs and their lawyers and, perhaps most important, selection of the jury pool.  Venue does bear on which judge will be assigned to the case, as one of the judges of that

district will normally preside, but there's no guarantee of that. As explained, judges from other districts, even other circuits, may be assigned for a variety of administrative reasons.

I therefore don't see <u>Lexecon</u> as an impediment to assigning a case to the out-of-circuit judge who presided over pre-trial proceedings, if the transfer is otherwise justified. But, I am unable to find such a justification. As noted, the circumstances here don't disclose a judicial necessity for an out-of-circuit assignment, so I don't believe that I can sign such a certificate under the authority delegated to me by the Chief Justice.

Also troubling is the fact that, by signing the certificate, I'd be divesting Ninth Circuit district judges of cases that would, in the normal course, be assigned to them. Each of the cases was assigned to a local district judge prior to the MDL transfer. It's my understanding that, when cases are transferred back to the originating districts, they're automatically restored to the dockets of the judges to whom they had been assigned prior to the transfer. Or, if the judge isn't available, the case is assigned to another district judge in that district, in accordance with local procedures—generally calling for random assignment.

By signing a Certificate of Necessity for the cases in question, I would, in effect, be removing the judges to whom the cases were originally assigned and

transferring them to an out-of-circuit judge.  I'm aware of no authority

empowering the chief judge of the circuit to re-assign cases pending before other

judges, or to remove cases from the district's assignment wheel.  Only if the

presiding judge is recused or unable to serve, and the local district is unable to

reassign the case according to its local procedures, will the chief judge of the

circuit be called upon to bring in a judge from outside the district.  For me to sign a

Certificate of Necessity in the absence of such circumstances would constitute a

serious encroachment on the autonomy of the district courts and also interfere with

the random assignment of cases.

More generally, it seems to me that the process of transferring judges

between circuits, as delimited by the Chief Justice's Guidelines, is directed strictly

toward meeting judicial necessities, whereas the transfer in this case would serve a

different purpose.  As Judge Motz explains in the passage quoted above, having the

district judge who conducted MDL pre-trial proceedings also preside over the trial

of the case can improve judicial efficiency, preserve scarce judicial resources and

enhance MDL judges' control over their proceedings.  These are worthy goals, to

be sure, but not ones in any way reflected in the Guidelines for the Intercircuit

Assignment of Article III Judges, as currently in force.  Perhaps the Guidelines

could be amended to define the concept of "necessity" broadly and thereby give

chief circuit judges latitude to seek intercircuit assignment in these circumstances, but I don't see any way of construing the current Guidelines to give me such authority.

In so concluding, I don't mean to suggest that Chief Judge Vratil would be incapable or ill-suited to handling the cases in our circuit. Chief Judge Mary Beck Briscoe of the Tenth Circuit has assured me that Chief Judge Vratil is a well-respected, experienced and effective district judge. I very much appreciate Chief Judge Vratil's willingness to help with our workload, and I hope that she'll consider doing so in the many other cases where we have a well-documented necessity for judicial help from outside the circuit. I acknowledge the contrary views of Judge Motz and a majority of the Committee on Intercircuit Assignments, which I have carefully considered; it pains me to disagree with the well-considered views of my distinguished colleagues.

In disagreeing, however, I think it useful to set forth and publish my reasons. Too often, such administrative matters, which have enormous consequences for litigants, are decided without a clear expression of reasons, and often without the knowledge of the parties and lawyers affected. If my reasons are persuasive, I hope others will follow them. If they aren't persuasive, I hope other judges in my position will state their own reasons and persuade me. Or, perhaps, the applicable

page 10

statutes, rules and regulations may need to be amended.  I hope that this opinion will be the beginning of a productive discussion as to the proper way to handle situations such as that described above.

For the reasons expressed, I deny the request for a Certificate of Necessity in these cases.

# COUNSEL

Thomas V. Bender, Walters Bender Strohbehn & Vaughan, P.C., Kansas City, MO, for plaintiffs.

Tristan L. Duncan, Shook, Hardy & Bacon, LLP, Kansas City, MO; Laurence H. Tribe, Cambridge, MA; Jonathan S. Massey, Massey & Gail, LLP, Chicago, IL; and Stephen R. McAllister, Thompson Ramsdell & Qualseth, P.A., Lawrence, KS, for defendants Circle K. Stores, Inc., 7-Eleven, Inc., Flying J., Inc. and Pilot Travel Centers LLC.

Thomas J. Heiden, Latham & Watkins LLP, Chicago, IL, for defendant Chevron U.S.A., Inc.

Jane E. Willis, Ropes & Gray LLP, Boston, MA, for defendants Petro Stopping Centers, L.P. and TravelCenters of America LLC.

Earsa R. Jackson, Strasburger & Price LLP, Dallas, TX, for defendant The Kroger Co.

Michael G. Romey, Latham & Watkins LLP, Los Angeles, CA, for defendant World Oil Corp.

Mark B. Gilmartin, Law Offices of Mark B. Gilmartin, Santa Monica, CA, for defendant United El Segundo, Inc.

Kenneth A. Ehrlich, Jeffer Mangels Butler & Mitchell LLP, Los Angeles, CA, for defendants G & M Oil Company, Inc. and G & M Oil Co., LLC.

page 12

## Appendix A

### Guidelines for the
### Intercircuit Assignment of Article III Judges

Approved by the Chief Justice
February 16, 2012

Authority for the assignment of United States judges to courts in other circuits or to special courts is vested in the Chief Justice, as provided in **Chapter 13 of Title 28, United States Code.** To assist the Chief Justice in discharging this responsibility, the Judicial Conference of the United States authorized the appointment of the Committee on Intercircuit Assignments, with staff support to be provided by the Director of the Administrative Office of the U.S. Courts. The Guidelines for such assignments are:

1.   A federal judge has responsibility: first, to the particular court of which he or she is a member; second, to the other courts within his or her own circuit; and third, to courts outside his or her circuit.

2.   The chief judge of the borrowing circuit must certify the necessity for a judge to be assigned from another circuit. Assignment of judges from their statutory bases will be on the basis of the need of the borrowing circuit. This standard governs the assignment of both active and senior judges.

3.   Circuits in need of assistance should forecast their needs as much as possible and advise the Committee of the type of help, courts (and dates) in which help is needed, and the number of judges that may be required.

4.   The primary source of intercircuit assignments should be senior judges although active judges may be used if the court would not be burdened by their absence or when necessary to comply with a court of appeals local rule requiring that at least one active circuit judge sit on a panel of the court.

5.   Intercircuit assignments of judges with fewer than five years on the bench should occur only in limited circumstances (e.g., a newly appointed judge who previously served as a U.S. attorney in the district may assist courts outside the circuit if his or her caseload is significantly reduced due to disqualification of himself or herself from proceedings because of his or her knowledge of cases prior to judicial appointment).

6.   A court that lends an active judge to another circuit may not borrow from another circuit within the same time period of the assignment; a court that borrows an active judge may not lend an active judge within the same time period of the assignment. (This rule does not apply to senior judges or judges assigned to a particular case(s).)

7.   The lender/borrower rule may be relaxed in appropriate situations provided the chief judge of the lending circuit (or other court) is consulted to assure the needs of that circuit (or other court) are met first.

8.   When an active judge is borrowed or lent for a particular case or cases due to the disqualification of all judges in the borrowing circuit or in other emergency situations, the lender/borrower rule does not apply.

Guidelines for the Intercircuit Assignment of Article III Judges                    Page 2

9.    In the event all judges of a given circuit disqualify themselves, the chief judge thereof shall notify the Chair of the Committee on Intercircuit Assignments who, in consultation with the Chief Justice, will select a judge or panel of judges as the case may be.  To avoid the appearance of impropriety or conflict of interest, judges of the borrowing circuit, once recused, will not participate in the selection of the visiting judge or judges.

10.   Courts of appeals should make an effort to have a visiting judge serve for a regular sitting, as defined by that court.  However, if necessary to meet an appellate court's needs, assignments for periods of two or three days (particularly with respect to an appellate judge sitting for a district judge) will be processed.  Only in an extraordinary situation will an intercircuit assignment to a court of appeals for one day be processed.  If circumstances result in a minor rescheduling of the dates of an approved intercircuit appellate sitting, no modification of the authorization is necessary.

11.   A judge assigned to work on the general calendar of a district court should serve for at least two weeks.  However, an assignment to a district court for a particular case is made without regard to specific dates.

12.   Long-term assignments for no more than a six-month interval may be approved for judges in adjacent or nearby courts and senior judges who have moved residence to another circuit.  Requests for long-term assignments for other reasons will be considered on a case-by-case basis in emergency situations.

13.   All intercircuit assignments will be for the period or case[s] specified, and for such time as needed in advance to prepare, and thereafter as required to complete unfinished business.  It is stressed, however, that no judge should take any official action in a case in another circuit in the absence of a completed intercircuit assignment, *i.e.,* until the assignment has been approved by the Chief Justice and that approval has been filed in the borrowing court. (Participation in settlement efforts alone does not necessitate an intercircuit assignment).

14.   Intercircuit assignments are not permitted for non-case specific activities such as wedding and naturalization ceremonies.

15.   A visiting judge, if deemed necessary by the judge, may be accompanied by up to two members of his or her staff.  The borrowing court will be expected to furnish additional supporting personnel as required. (For the purposes of this guideline, "staff" includes the judge's secretary and law clerks and, if the borrowing court is unable to provide them, a courtroom deputy clerk and/or a court reporter).  Travel performed by chambers and court staff in connection with an intercircuit assignment is subject to the provisions of the Judiciary Staff Travel Regulations pertaining to the authorization of travel to a location outside the geographic boundaries of the home court. *Guide to Judiciary Policy,* Vol. 19, §§ 420.20.60(a) and 420.30.15(b).

# Operating Procedures

**A.    Forms**

- Certificate of Necessity

Pursuant to 10 U.S.C. § 942(f) or 28 U.S.C. § 291(a), 292(d), 292(e), 293(a), or 294(d), and the ICA Guidelines, the chief circuit judge (or chief judge of a special court) certifies that there is a need for a judge to be assigned from another circuit (or special court).

- Consent Form for Senior Judges

Pursuant to 28 U.S.C. § 294(d), senior judges may consent to their own assignments. However, as indicated on the form, senior judges are to consult with their chief circuit judges (and chief district judges, if applicable) before formally consenting to an intercircuit assignment, to ensure that the needs of their courts are sufficiently met such that there is no objection to the proposed intercircuit assignment.

- Consent Form for Active Judges

Pursuant to 28 U.S.C. § 295, intercircuit assignments for judges in active status require the consent of their chief circuit judge (judges of the Court of International Trade in active status need the consent of their chief judge). Where applicable, chief district judges should be consulted to ensure that the needs of the district are sufficiently met such that there is no objection to the proposed intercircuit assignment.

- Consent Form for Retired Justices

Pursuant to 28 U.S.C. § 294(a), a retired Chief Justice or Associate Justice of the Supreme Court certifies that he or she is willing to undertake an assignment to another court.

**B.    Processing Intercircuit Assignments**

It should be noted initially that a substantial majority of intercircuit assignments are undertaken by senior judges, and that the great majority of intercircuit assignments are arranged informally between the borrowing court and the affected judge. However, the Committee always stands ready to (and does) assist in identifying and obtaining judges who are willing and able to be of assistance to courts in need.

The appropriate way to initiate a formal request for an intercircuit assignment is for a circuit chief judge to send a Certificate of Necessity to the Chair as soon as arrangements for the assignment are confirmed. If time is pressing, because an intercircuit assignment requires processing through the Committee, the Administrative Office, and the Chief Justice, the Certificate should be submitted via e-mail or through the Intercircuit Assignments Database System (ICADS). It is ideal if the borrowing circuit can submit its Certificate of Necessity one month or more in advance of the assignment. Upon receipt of a Certificate of Necessity, Committee staff will send a Consent to Assignment form via e-mail to the applicable judge for signature. A copy of the e-mail will also be sent to the lending court's chief circuit judge, chief district judge (if applicable), and circuit executive. Senior judges can consent to their own assignments, after consulting with the chief judge of their courts to determine that the "needs at home" are met first. However, active district and circuit judges need the written consent of their

circuit chief judge or, for active judges of the Court of International Trade, the chief judge of that court.  All forms with an electronic signature must be submitted either via e-mail or through ICADS.

Once both the Certificate of Necessity and Consent to Assignment forms are received, the Chair or, in the instance of an intercircuit assignment of the Chair, the longest serving member of the Committee, will submit the Committee's recommendation to the Director of the Administrative Office.  The Director will prepare a proposed designation order and forward it with the Committee's recommendation and all supporting material to the Chief Justice for review and approval.

Upon approval by the Chief Justice, all documents will be returned to the Director for distribution of the designation and assignment order to the clerks of the lending and borrowing courts, as provided by 28 U.S.C. § 295, and to the circuit executives for the lending and borrowing circuits.  The relevant chief judges and the visiting judge with be provided copies of the order upon request.

The permanent records of intercircuit assignments are maintained by the Administrative Office of the United States Courts.

page 16

## Appendix B

AO 81
(Rev. 12/10)

# JUDICIAL CONFERENCE OF THE UNITED STATES
## COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

### CERTIFICATE OF NECESSITY

Pursuant to 10 U.S.C. § 942(f) or 28 U.S.C. § 291(a), 292(d) or (e), 293(a), or 294(d), and the Guidelines for the Intercircuit Assignment of Article III Judges, I certify that a need exists for the designation and assignment of a United States judge from another circuit (or special court) to perform judicial duties in the following court:

_____

Name and Title of Judge to be assigned:

_____

_____

Period of assignment:

from _____     through _____

**OR**

Specific case(s): _____

_____

This requested assignment is for the period or purpose stated, and for such time as needed in advance to prepare and to issue necessary orders, or thereafter as required to complete unfinished business.

_____
*Signature of Chief Judge*

_____
*Name of Circuit (or special court)*

Date:    _____

**Please fax the signed form to the Committee on Intercircuit Assignments at (202) 502-2278.**

page 17

## Appendix C

AO 82B
(Rev. 12/10)

# JUDICIAL CONFERENCE OF THE UNITED STATES
## COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

### CONSENT FOR AN ACTIVE JUDGE

As required by 28 U.S.C. § 295, I consent to the following intercircuit designation and assignment of a United States judge in active status.  (If this involves a district judge, the chief judge of the lending district court has been contacted and does not object to this assignment.)

Name of judge to be assigned: _____

Title of judge to be assigned: _____

Court from which judge will be assigned: _____

Court to which judge will be assigned: _____

Period of assignment:

from _____     through _____

**OR**

Specific case(s): _____

_____

I understand that this assignment is for the period or case(s) stated, and for such time as needed in advance to prepare and to issue necessary orders, or thereafter as required to complete unfinished business.

_____
*Signature of Chief Judge*

_____
*Name of Circuit (or special court)*

Date: _____

**Please fax the signed form to the Committee on Intercircuit Assignments at (202) 502-2278.**