## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE: MOTOR FUEL TEMPERATURE    )
SALES PRACTICES LITIGATION    )
    )    **MDL No. 1840**
**This Document Relates To:**    )    **Case No. 07-1840-KHV**
    )
<u>Rushing, et al. v. Alon USA, Inc.. et al.</u>,    )
    D. Kan. Case No. 07-2300-KHV,    )
    N.D. Cal. Case No. 06-7621-PJH,    )
    )
<u>Lerner, et al. v. Costco Wholesale Corp., et al.</u>,    )
    D. Kan. Case No. 07-2405-KHV,    )
    C.D. Cal. Case No. 07-1216-GHK-FMO,    )
    )
**and**    )
    )
<u>Wyatt, et al. v. B.P. Am. Corp., et al.</u>,    )
    D. Kan. Case No. 07-2507-KHV,    )
    S.D. Cal. Case No. 07-1754-BTM-JMA.    )
_____)

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs in <u>Rushing v. Ambest, Inc.</u>, No. 06-7621-PJH (N.D. Cal.), <u>Lerner v. Costco Wholesale Corp.</u>, No. 07-1216-GHK-FMO (C.D. Cal.), and <u>Wyatt v. B.P. America Corp.</u>, No. 07-1754-BTM-JMA (S.D. Cal.), bring class action claims for damages and injunctive relief against defendants which own, operate or control gas stations in California. Plaintiffs claim that because defendants sell motor fuel for a specified price per gallon without disclosing or adjusting for temperature and its effects on motor fuel, they are liable under California law for breach of the duty of good faith and fair dealing (<u>Lerner</u>), unjust enrichment (<u>Lerner</u> and <u>Wyatt</u>), violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 <u>et seq.</u> (<u>Lerner</u>, <u>Rushing</u> and <u>Wyatt</u>), and violation of the California Consumers Legal Remedy Act ("CLRA"), Cal. Civ. Code § 1750 <u>et seq.</u> (<u>Rushing</u>).

Under Rule 23, Fed. R. Civ. P., plaintiffs ask the Court to certify a class of "consumers" for

their CLRA claims and a class of "individuals and entities" for their other claims. Plaintiffs also ask the Court to model these classes after the dual class certification in similar Kansas cases. See In re Motor Fuel Temp. Sales Practices Litig., 279 F.R.D. 598 (D. Kan. 2012); In re Motor Fuel Temp. Sales Practices Litig., 271 F.R.D. 221 (D. Kan. 2010). That is, plaintiffs ask the Court to certify classes for injunctive relief under Rule 23(b)(2) and classes for liability issues under Rule 23(b)(3) and (c)(4). Plaintiffs propose that the Court bifurcate questions of liability (to be determined in Phase I) and relief (to be determined in Phase II if necessary).

Chevron is a defendant in each of the three California cases. It insists that it is unique among codefendants and would be prejudiced by a joint trial. The Court therefore ordered the parties to show cause why it should not "sever all claims against Chevron in these cases, remand the claims to their respective transferor courts with a view to transferring claims in two of the cases to one district under 28 U.S.C. § 1404(a), consolidate the three cases against Chevron for all future proceedings and temporarily stay all proceedings as to the other non-settling California defendants." Order To Show Cause (Doc. #4520) filed March 12, 2013. No party objected to severing plaintiffs' claims against Chevron for consolidation and trial. See Defendant Chevron U.S.A. Inc.'s Response To Order To Show Cause (Doc. #4524) filed March 15, 2013.[1] On March 27, 2013, the Court severed plaintiffs' claims against Chevron in these three California cases and stayed proceedings as to the other non-settling defendants. Order (Doc. #4535).[2] Accordingly, though its reasoning

---

[1]　　Chevron purported to reserve the right to raise various objections along the way, but it has not received leave of court to "reserve" any response to the order to show cause.

[2]　　Chief Judge Kozinski's denial of the request for a Certificate of Necessity for intercircuit assignment does not affect this trial plan. See Opinion (Doc. #4529) filed March 19, 2013. If anything, the benefits of the plan even more clearly outweigh the alternatives now that one
(continued...)

applies equally to other defendants in the California cases, this class certification order is limited

to plaintiffs' claims against Chevron.

This matter is before the Court on plaintiffs' motions for class certification in <u>Rushing</u>,

<u>Lerner</u> and <u>Wyatt</u>, including supplemental briefing which the Court recently ordered.[3]  For reasons

stated below, the Court sustains plaintiffs' motions for class certification as to Chevron.

**<u>Legal Standards</u>**

The class action is an exception to the usual rule that litigation is conducted by and on behalf

of individual named parties only.  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011)

(quoting <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700-01 (1979)).  The Court has considerable

discretion in making class certification decisions.  <u>See</u> <u>Tabor v. Hilti, Inc.</u>, 703 F.3d 1206, 1227-28

---

[2](...continued)
or more new judges will have to catch up on nearly six years of litigation history.

[3]      <u>Rushing</u> motion and briefs: <u>Plaintiff's Motion For Class Certification</u> (Doc. #1131) filed June 1, 2009; <u>Defendants' Opposition To Rushing Plaintiffs' Motion For Class Certification And Memorandum In Support</u> (Doc. #1314) filed September 30, 2009; and <u>Rushing Plaintiffs' Reply In Support Of Motion For Class Certification</u> (Doc. #1520) filed December 15, 2009.
        <u>Lerner</u> motion and briefs: <u>Lerner California Plaintiffs' Motion For Class Certification And Memorandum In Support</u> (Doc. #1088) filed June 1, 2009; <u>Defendants' Opposition To Lerner California Plaintiffs' Motion For Class Certification And Memorandum In Support</u> (Doc. #1311) filed September 30, 2009; and <u>Lerner California Plaintiffs' Reply In Support Of Motion For Class Certification</u> (Doc. #1491) filed December 14, 2009.
        <u>Wyatt</u> motion and briefs: <u>Wyatt California Plaintiffs' Motion For Class Certification And Memorandum In Support</u> (Doc. #1089) filed June 1, 2009; <u>Defendants' Opposition To Wyatt California Plaintiffs' Motion For Class Certification And Memorandum In Support</u> (Doc. #1319) filed September 30, 2009; <u>Wyatt California Plaintiffs' Reply In Support Of Motion For Class Certification</u> (Doc. #1496) filed December 14, 2009.
        Supplemental briefing: <u>Plaintiffs' Supplemental Brief In Support Of Class Certification In The California Cases</u> (Doc. #4502) filed February 2, 2013; <u>Defendants' Opposition To Plaintiffs' Supplemental Motion For Class Certification And Memorandum In Support</u> (Doc. #4507) filed February 8, 2013; <u>Plaintiff's Supplemental Reply Brief In Support Of Class Certification In The California Cases</u> (Doc. #4512) filed February 15, 2013.

(10th Cir. 2013) (because class certification involves "intensely practical considerations," decision lies within discretion of trial court); see also Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010) (district courts in best position to consider most fair and efficient procedure for litigation); Johns v. Bayer Corp., 280 F.R.D. 551, 555-56 (S.D. Cal. 2012) (quoting Ballard v. Equifax Check Serv., Inc., 186 F.R.D. 589, 600 (E.D. Cal. 1999)) (class actions that promote compliance with consumer protection laws "desirable and should be encouraged"). It must, however, conduct a "rigorous analysis" to determine whether the putative class satisfies the requirements of Rule 23. Comcast v. Behrend, No. 11-864, slip op. at 5-6, 2013 WL 1222646, at *4-5 (U.S. March 27, 2013); Dukes, 131 S. Ct. at 2551; Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982). The elements of class certification are (1) numerosity, (2) commonality, (3) typicality and (4) adequate representation, see Fed. R. Civ. P. 23(a), plus one of the requirements of Rule 23(b)(1) through (3).

This case involves Rule 23(b)(2) and (3). Rule 23(b)(2) requires plaintiffs to show that Chevron "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) requires plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23 does not set forth a mere pleading standard. Comcast, slip op. at 5, 2013 WL 1222646, at *4 (quoting Dukes, 131 S. Ct. at 2551). As the party requesting class certification, plaintiffs bear the burden of "affirmatively demonstrat[ing]" compliance with these requirements. Id. (quoting Dukes, 131 S. Ct. at 2551). Plaintiffs "must be prepared to prove that there are in fact

sufficiently numerous parties, common questions of law or fact, etc." Id. (quoting Dukes, 131 S. Ct. at 2551). In determining whether plaintiffs have met their burden, the Court "must accept the substantive allegations of the complaint as true," but it does not "blindly rely on conclusory allegations which parrot Rule 23." Shook v. El Paso Cnty., 386 F.3d 963, 968 (10th Cir. 2004) (quoting J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)); see also Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975) (court accepts allegations in complaint as true so long as they are sufficiently specific to permit informed assessment whether plaintiffs have met Rule 23 requirements). The Court is not limited to the pleadings but may "probe behind the pleadings" and examine the facts and evidence in the case. Tabor, 703 F.3d at 1227-28 (quoting Falcon, 457 U.S. at 160); see also Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011) (rigorous analysis requires judging persuasiveness of evidence as well as admissibility). Actual, not presumed, conformance with Rule 23(a) is indispensable. Dukes, 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at 160).

This "rigorous analysis" will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim." Dukes, 131 S. Ct. at 2551. But the Court should not conduct a mini-trial to determine if the class could actually prevail on the merits of their claims. See Amgen Inc. v. Conn. Retirement Plans & Trust Funds, 133 S. Ct. 1184, 1194-95, 1201 (2013); Dukes, 131 S. Ct. at 2552 n.6.

### Factual And Procedural Background

The three California cases captioned above – Rushing v. Ambest, Inc., No. 06-7621-PJH (N.D. Cal.), Lerner v. Costco Wholesale Corp., No. 07-1216-GHK-FMO (C.D. Cal.), and Wyatt v. B.P. America Corp., No. 07-1754-BTM-JMA (S.D. Cal.) – are part of multidistrict litigation in

the U.S. District Court for the District of Kansas, In re Motor Fuel Temp. Sales Practices Litig., No.

07-1840-KHV. Of the numerous claims which plaintiffs brought against Chevron in the California

cases, they ask the Court to certify only four: (1) breach of the duty of good faith and fair dealing

(Lerner), (2) unjust enrichment (Lerner and Wyatt), (3) violation of the UCL, Cal. Bus. & Prof.

Code § 17200 et seq. (Lerner, Rushing and Wyatt) and (4) violation of the CLRA, Cal. Civ. Code

§ 1750 et seq. (Rushing).

In each of the three California cases, plaintiffs ask the Court to certify two different classes –

a class of "consumers" for their CLRA claims and a class of "individuals and entities" for the others.

Plaintiffs propose the following class definition for the CLRA classes:

> All consumers that, at any time since January 1, 2004, purchased motor fuel at retail
> in the state of California, from a gas station owned, operated or controlled by
> [Chevron].

Plaintiffs' Supplemental Brief (Doc. #4502) at 2. They propose the following class definition for

the rest of their claims:

> All individuals and entities that, at any time since January 1, 2004, purchased motor
> fuel at retail in the state of California, from a gas station owned, operated or
> controlled by [Chevron].

Id.[4]

Plaintiffs' claims are based on their assertion that the temperature of motor fuel affects the

energy content of a gallon of fuel, such that a warmer gallon of fuel contains less energy than a

---

[4]     These classes exclude "Federal judges who have presided over this case, persons
employed by [Chevron], affiliates of [Chevron], and any juror or alternate assigned to the trial of
this case." Plaintiffs' Supplemental Brief (Doc. #4502) at 2 n.4.
     In Lerner, plaintiffs alleged a subclass of motor fuel purchasers in a six-county area in
southern California. Because the members of that subclass are also members of the classes defined
above, the subclass is not an issue in the liability phase. If the California trial makes it to a remedy
phase, and a determination of damages, plaintiffs may request permission to assert the subclass.

cooler gallon of the same fuel. They allege that Chevron misrepresented or omitted material facts regarding the temperature, energy content and value of motor fuel in every retail motor fuel transaction in California. Among other things, plaintiffs contend that Chevron's practice of selling motor fuel without disclosing or adjusting for temperature and its effects on motor fuel deprives consumers of the ability to make accurate price and value comparisons, and affects plaintiffs' pecuniary interest because the transactions are inaccurate, inconsistent, unfair and non-transparent.

### Analysis

Plaintiffs ask the Court to replicate the class structure in the Kansas motor fuel cases. Plaintiffs' Supplemental Brief (Doc. #4502) at 2. In those cases, under Rule 23(b)(2) and Rule 23(b)(3) and (c)(4), Fed. R. Civ. P., the Court certified overlapping classes as to the liability and injunctive relief aspects of plaintiffs' claims. See In re Motor Fuel Temp. Sales Practices Litig., 279 F.R.D. at 615-18.

Plaintiffs ask that the Court certify two different classes in this manner – a class of "consumers" for their CLRA claims and a class of "individuals and entities" for their other claims. Chevron opposes plaintiffs' request for class certification. It argues that the proposed classes do not meet various requirements in Rule 23(a), (b)(2), (b)(3) and (c)(4). It also argues that named plaintiffs lack Article III standing and statutory standing to bring UCL claims.

### I. Standing

#### A. Article III Standing

Chevron argues that Rushing plaintiffs lack Article III standing because they did not allege that a named plaintiff purchased motor fuel from Chevron in certain states. Chevron does not name which states are implicated in this argument. The second amended complaint in Rushing alleges that

plaintiff John Telles purchased fuel from Chevron in California for personal, family or household use. Chevron's argument regarding his Article III standing to sue is therefore without merit.

Chevron also argues that because each proposed class "contains numerous individuals who have not suffered monetary injury, it contains members who lack Article III standing and should not be certified." Defendants' Supplemental Opposition To Class Certification (Doc. #4507) at 4. Article III standing is a threshold matter central to the Court's subject matter jurisdiction. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612 (1997) (Rule 23 "must be interpreted in keeping with Article III constraints"); Vallario v. Vandehey, 554 F.3d 1259, 1269 n.7 (10th Cir. 2009) (class certification analysis must begin with Article III standing); see also Ellis, 657 F.3d at 978-79. Plaintiffs bear the burden of showing that Article III standing exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992); Rector v. City & Cnty. of Denver, 348 F.3d 935, 942 (10th Cir. 2003); see also Ellis, 657 F.3d at 978-79. To have standing, plaintiffs must show that (1) they suffered an injury in fact, i.e. an injury that is sufficiently concrete and particularized, actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to Chevron's conduct and (3) the injury is likely to be redressed by a favorable decision. Defenders of Wildlife, 504 U.S. at 560-61. Plaintiffs must show standing with respect to each form of relief sought. See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 185 (2000). Standing exists if at least one named plaintiff meets the requirements. DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1198 (10th Cir. 2010); Rector, 348 F.3d at 949-50; see also Ellis, 657 F.3d at 978-79; Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir. 2011).

In this regard, Chevron's argument is not that named plaintiffs lack Article III standing to sue under California law, but that the class "contains members who lack Article III standing."

Defendants' Supplemental Opposition To Class Certification (Doc. #4507) at 4. The Court has previously found that plaintiffs' theory, i.e. that "every retail motor fuel transaction causes an injury – no matter when it takes place and regardless of the temperature of the fuel or the price per gallon," is sufficient for Article III standing. In re Motor Fuel Temp. Sales Practices Litig., No. 07-1840-KHV, 2012 WL 1672994, at *4 (D. Kan. May 14, 2012) (injury sufficient for Article III standing).

### B. UCL Statutory Standing

Chevron argues that named plaintiffs do not meet the statutory standing requirements for bringing UCL claims. Under the UCL, "[a]ny person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204." Cal. Bus. & Prof. Code § 17203. Under Section 17204, the "person" must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. This standing requirement applies to only the class representatives, and not to absent class members. In re Tobacco II Cases, 46 Cal.4th 298, 324, 207 P.3d 20, 38 (2009); see also Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712, 728 (9th Cir. 2012). With respect to fraud claims under the UCL, plaintiffs must show "actual reliance," i.e. that "defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct."[5] In re Tobacco II Cases, 46 Cal.4th

---

[5] The "actual reliance" requirement applies only to UCL actions "based on a fraud theory involving false advertising and misrepresentations to consumers." See In re Tobacco II Cases, 46 Cal.4th at 326 n.17, 207 P.3d at 39 n.17; Medrazo v. Honda of N. Hollywood, 205 Cal. App.4th 1, 140 Cal. Rptr.3d 20 (2 Dist. 2012) ("actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory"). The "concept of reliance . . . has no application" in suits involving "many types of unfair business practices." In re Tobacco II Cases, 46 Cal.4th at 326 n.17, 207 P.3d at 39 n.17. But see Durell v. Sharp Healthcare, 183 Cal. App.4th 1350, 1355, 108 Cal. Rptr.3d 682, 687-88 (4 Dist. 2010) (reasoning of In re Tobacco II Cases applies to claim under "unlawful" prong of UCL where predicate unlawful conduct based on misrepresentations).
(continued...)

at 306, 326, 207 P.3d at 25-26, 39.  Named plaintiffs need not show that their reliance was the sole factor or even the "predominant or decisive factor" influencing their conduct.  Id. at 326, 207 P.3d at 39.  It is enough that the representation played a substantial part, and so had been a substantial factor, in influencing plaintiffs' fuel purchasing decisions.  Id.

A "presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation [or omission] was material."  Id.  A misrepresentation or omission is material if a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.  Id. at 327, 207 P.3d at 39.  Plaintiffs have sufficiently alleged that Chevron's representations and omissions regarding the motor fuel which it sold were material.  See In re Tobacco II Cases, 46 Cal.4th at 326-27, 207 P.3d at 39-40; Ries, 287 F.R.D. 523; In re Google AdWords Litig., 2012 WL 28068, at *9.  To the extent that plaintiffs' UCL claims rest on alleged material omissions, Chevron argues that plaintiffs must show that it had a duty to disclose the information.  Chevron had a duty to disclose if it actively concealed a material fact or made partial representations but also suppressed some material facts.  See Johnson v. Harley-Davidson Motor Co. Grp., LLC, 285 F.R.D. 573, 583 & n.3 (E.D. Cal. 2012); Falk v. Gen. Motors Corp., 496 F. Supp.2d 1088, 1096-97 (N.D. Cal. 2007).  At this stage, plaintiffs' allegations that Chevron knew that temperature affected the volume and energy content of motor fuel are sufficient to show that

_____

[5](...continued)
At this point the Court need not determine whether named plaintiffs must prove reliance with respect to each of their theories under the UCL.  It suffices to say that actual reliance is presumed given Chevron's material misrepresentations and/or omissions.  See In re Tobacco II Cases, 46 Cal.4th at 326-27, 207 P.3d at 39-40; Ries v. Ariz. Beverages USA LLC, 287 F.R.D. 523 (N.D. Cal. 2012) (UCL standing requirement satisfied where plaintiffs alleged that defendant's representation was "material"); In re Google AdWords Litig., No. 5:08-CV-3369-EJD, 2012 WL 28068, at *9 (N.D. Cal. Jan. 5, 2012) (named plaintiffs allegations that defendant's omissions were material sufficient to establish reliance); see also Amgen, 133 S. Ct. 1184; infra Part V.B.3., V.B.4.

-10-

Chevron had a duty to disclose. On this record, named plaintiffs who purchased motor fuel from Chevron have standing under the UCL.[6]

## II.    Rule 23 Requirements

Rule 23, Fed. R. Civ. P., governs class certification. As the party requesting class certification, plaintiffs must first demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Plaintiffs seek class certification under Rule 23(b)(2) and (b)(3).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." For Rule 23(b)(3) to apply, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To determine predominance and superiority, the Court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already

---

[6]     In support of its motions for summary judgment on plaintiffs' UCL and CLRA claims, Chevron argues that California plaintiffs lack standing to bring these claims because they "received the benefit of their bargain" under <u>Kwikset Corp. v. Super. Ct.</u>, 51 Cal.4th 310, 322, 246 P.3d 877, 884-85 (2011). Chevron does not raise this issue in response to plaintiffs' motion for class certification. The Court therefore does not address it here.

begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
    (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." The Fifth Circuit has held that a "district court cannot manufacture predominance through the nimble use of subdivision (c)(4)." <u>Castano v. Am. Tobacco Co.</u>, 84 F.3d 734, 745 n.21 (5th Cir. 1996); <u>see</u> <u>Allison v. Citgo Petroleum Corp</u>, 151 F.3d 402, 421-22 (5th Cir. 1998). In the Fifth Circuit, the "the proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." <u>Id.</u> The Fifth Circuit interpretation of Rule 23(c)(4) was motivated by a concern that "allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3)" and would lead to "automatic certification in every case where there is a common issue, a result that could not have been intended." <u>Id.</u>

The Second, Seventh and Ninth Circuits have taken a different view. They have held that "if common questions do not predominate over the individual questions so that class certification of the entire action is warranted," a court may use Rule 23(c)(4) to "isolate the common issues . . . and proceed with class treatment of these particular issues." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996); <u>see also</u> <u>In re Nassau Cnty. Strip Search Cases</u>, 461 F.3d 219, 227 (2d Cir. 2006); <u>In re Allstate Ins. Co.</u>, 400 F.3d 505, 508 (7th Cir. 2005); <u>Carnegie v. Household Int'l, Inc.</u>, 376 F.3d 656, 661 (7th Cir. 2004). The First and Fourth Circuits have indicated that they

-12-

agree. <u>Tardiff v. Knox Cnty.</u>, 365 F.3d 1, 7 (1st Cir. 2004); <u>Gunnells v. Healthplan Servs., Inc.</u>, 348 F.3d 417, 427-28 (4th Cir. 2003); <u>see also</u> <u>Gates v. Rohm & Haas Co.</u>, 655 F.3d 255, 272 (3d Cir. 2011); <u>Hohider v. United Parcel Serv., Inc.</u>, 574 F.3d 169, 202 n.25 (3d Cir. 2009).

Although the Tenth Circuit has not addressed the question, this Court has generally followed the approach of the Second, Seventh and Ninth Circuits, and has used Rule 23(c)(4) to certify parts of claims where doing so "would materially advance the disposition of the litigation of the whole." <u>Fulghum v. Embarq Corp.</u>, No. 07-2602-EFM, 2011 WL 13615, at *2 (D. Kan. Jan. 4, 2011) (Melgren. J.); <u>Emig v. Am. Tobacco Co., Inc.</u>, 184 F.R.D. 379, 395 (D. Kan. 1998) (Belot, J.); <u>see also</u> <u>Law v. Nat'l Collegiate Athletic Ass'n</u>, 167 F.R.D. 178, 184-85 (D. Kan. 1996) (Vratil, J.).

Courts should use Rule 23(c)(4), however, only "where resolution of the particular common issues would materially advance the disposition of the litigation as a whole." <u>Fulghum</u>, 2011 WL 13615, at *2; <u>see also</u> <u>In re Paxil Litig.</u>, 212 F.R.D. 539, 543 (C.D. Cal. 2003) (citing <u>Emig v. Am. Tobacco Co.</u>, 184 F.R.D. 379, 395 (D. Kan. 1998)). Courts should not use it "if noncommon issues are inextricably entangled with common issues or . . . the noncommon issues are too unwieldy or predominant to be handled adequately on a class action basis." <u>Fulghum</u>, 2011 WL 13615, at *2; <u>see also</u> <u>In re Paxil Litig.</u>, 212 F.R.D. at 543. Certifying a class to determine defendant's liability, while leaving the class members to pursue their individual damages claims, is a common example of partial certification. <u>See, e.g.</u>, <u>Williams v. Mohawk Indus., Inc.</u>, 568 F.3d 1350, 1359-60 (11th Cir. 2009); <u>In re Nassau Cnty. Strip Search Cases</u>, 461 F.3d at 223; <u>see also</u> <u>Ruiz v. Affinity Logistics Corp.</u>, No. 05CV2125 JLS (CAB), 2009 WL 648973, at *3 (S.D. Cal. Jan. 29, 2009). For particular issues to be certified using Rule 23(c)(4), the requirements of Rule 23(a) and (b) need to be satisfied only with respect to those issues. <u>See</u> Fed. R. Civ. P. 23(c)(4); <u>Fulghum</u>, 2011 WL

13615, at *2; Emig, 184 F.R.D. at 395; Law, 167 F.R.D. at 184-85; see also Valentino, 97 F.3d at 1234; In re Paxil Litig., 212 F.R.D. at 543. As with any class certification, certification of issue classes under Rule 23(c)(4) must be supported by rigorous analysis. See Dukes, 131 S. Ct. at 2551-52.

In addition to the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists. In re Urethane Antitrust Litig., 237 F.R.D. 440, 444-45 (D. Kan. 2006); McHan v. Grandbouche, 99 F.R.D. 260, 265 (D. Kan. 1983); see also Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009); Manual for Complex Litigation § 21.222.

## III.    Adequacy Of Class Definition

Plaintiffs ask the Court to certify a class of "consumers" for their CLRA claims and a class of "individuals and entities" for the others. Plaintiffs propose the following class definition for the CLRA classes:

> All consumers that, at any time since January 1, 2004, purchased motor fuel at retail in the state of California, from a gas station owned, operated or controlled by [Chevron].

Plaintiffs' Supplemental Brief (Doc. #4502) at 1. Plaintiffs propose the following class definition for the rest of their claims:

> All individuals and entities that, at any time since January 1, 2004, purchased motor fuel at retail in the state of California, from a gas station owned, operated or controlled by [Chevron].

Id.

Chevron argues that the class definitions do not fit plaintiffs' theories of recovery and are "imprecise, overbroad and unascertainable" because they contain members who have not been

harmed. The Court has previously rejected this argument, noting as follows: "The crux of plaintiffs' claims is that defendants sell motor fuel at retail without disclosing or accounting for temperature. The proposed class definition captures this premise. Although plaintiffs may rely on the 60-degree-Fahrenheit reference temperature in proving their claims, the class definition is precise, objective and presently ascertainable without it." In re Motor Fuel Temp. Sales Practices Litig., 279 F.R.D. 598, 605 (D. Kan. 2012).[7]

## IV. "Liability" Issue Classes Under Rule 23(c)(4)

Plaintiffs ask the Court to certify issue classes under Rule 23(c)(4) that are limited to the "liability" aspects of their claims. For purposes of certifying the proposed classes, the "liability" aspects of plaintiffs' claims include all substantive elements of the claims, including causation and injury. "Liability" does not include questions of remedy, e.g. damages, injunctive relief and restitution.

The basic "liability" elements of plaintiffs' breach of the duty of good faith and fair dealing claims are that (1) plaintiffs and Chevron entered into a contract; (2) plaintiffs did all, or substantially all of the significant things that the contract required; (3) all conditions required for Chevron's performance had occurred; (4) Chevron unfairly interfered with plaintiffs' right to receive the benefits of the contract; and (5) plaintiffs were harmed. Judicial Council of California Civil Jury Instructions (2013), CACI No. 325.

The basic "liability" elements of plaintiffs' unjust enrichment claims are that (1) plaintiffs conferred a benefit on Chevron, (2) which Chevron knowingly accepted, (3) under circumstances

---

[7]    60 degrees Fahrenheit is the national standard reference temperature for petroleum products. The standard was adopted to remedy inequities in wholesale motor fuel transactions by enabling the buyer and seller to calculate the exact number of net gallons involved in a motor fuel transaction regardless of the temperature of the fuel at the time of sale.

that make it inequitable for Chevron to retain the benefit without paying for its value.  See Hernandez v. Lopez, 180 Cal. App.4th 932, 938, 103 Cal. Rptr.3d 376, 380 (2009) (citing Dunkin v. Boskey, 82 Cal. App.4th 171, 195, 98 Cal. Rptr.2d 44, 60-61 (2000)).[8]

The basic "liability" elements of plaintiffs' UCL claims are that (1) plaintiffs and Chevron are "persons" under the UCL; (2) Chevron engaged in unfair competition (i.e. unlawful, unfair and/or fraudulent business acts or practices); (3) named plaintiffs suffered economic injury as a result of Chevron's acts or practices; and (4) members of the public were likely deceived.  See Cal. Bus. & Prof. Code §§ 17200, 17201; In re Tobacco II Cases, 46 Cal.4th 298, 312, 207 P.3d 20, 29 (2009).

The basic "liability" elements of plaintiffs' CLRA claims are that (1) plaintiffs were "consumers" under the CLRA; (2) Chevron was a "person" under the CLRA; (3) plaintiffs and Chevron engaged in a transaction intended to result or which resulted in the sale or lease of goods or services; (4) Chevron used unfair methods of competition, or unfair or deceptive acts or practices, in violation of the CLRA; (5) as a result, plaintiffs suffered damage.  See Cal. Civ. Code §§ 1750, 1761, 1770, 1780.[9]

### A.     "Liability" As Appropriate Issue Class

Without citing any authority, Chevron argues that "'liability' is a perplexing 'issue' to propose" because it is "not a narrow issue within the chain of proof that might be appropriately handled under (c)(4)."  Defendants' Supplemental Opposition To Class Certification (Doc. #4507)

---

[8]     To be entitled to recover under a theory of unjust enrichment, plaintiffs must also show that plaintiffs and Chevron did not have an enforceable contract covering the retail motor fuel transactions in question.  See Hernandez, 180 Cal. App.4th at 938, 103 Cal. Rptr.3d at 380 (citing Dunkin, 82 Cal. App.4th at 195, 98 Cal. Rptr.2d at 60-61).

[9]     The elements of plaintiffs' claims are subject to clarification as necessary.

at 8-9. Chevron ignores the fact that "[c]ertifying a class to determine the defendant's liability, while leaving the class members to pursue their individual damages claims, is a common example of partial certification." Ruiz, 2009 WL 648973, at *3. Chevron also argues (in a footnote citing Dukes) that the Supreme Court "would look with disfavor upon an expansive interpretation of Rule 23(c)(4)." Defendants' Supplemental Opposition To Class Certification (Doc. #4507) at 9 n.5. Chevron does not cite a specific page, section or holding of Dukes to support this position, but simply states that its "focus on the text, structure and framers' intent of Rule 23 suggests that it would [do so]." See id. Chevron does not explain what in the text of Rule 23(c)(4) specifically, or Rule 23 generally, indicates that the common practice of certifying class actions as to Chevron's liability violates Rule 23. These arguments are therefore unpersuasive.

### B. Material Advancement Of Litigation

Chevron argues that certifying Rule 23(c)(4) classes as to "liability" would not materially advance the litigation because common issues are inextricably tied to individual issues outside the (c)(4) classes, and the remaining individual issues make the case unmanageable. The Court disagrees. If the Court certifies Rule 23(c)(4) classes as to Chevron's liability and Chevron prevails, the class actions will end. If plaintiffs prevail, the Court can determine whether injunctive relief is appropriate. By quantum leaps, this approach will advance the resolution of plaintiffs' core claims on a class-wide basis. See Memorandum And Order (Doc. #1675) at 29-30 (injunctive relief is centerpiece of motor fuel cases because it is only way for plaintiffs to change how defendants sell fuel). The "liability" aspects of plaintiffs' claims are therefore appropriate for issue certification under Rule 23(c)(4).

## V.     Rule 23(a) Prerequisites

As noted above, to satisfy the prerequisites of Rule 23(a), plaintiffs must "affirmatively demonstrate" that (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); <u>Dukes</u>, 131 S. Ct. at 2551. Chevron argues that plaintiffs' proposed classes do not meet the commonality, typicality and adequate representation requirements of Rule 23(a).[10]

### A.     Numerosity

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations. <u>Gen. Tel. Co. of Nw., Inc. v. EEOC</u>, 446 U.S. 318, 330 (1980). Although plaintiffs do not know the precise number of class members, Chevron owns roughly 300 retail motor fuel stations in California. The CLRA classes include every consumer who purchased motor fuel at retail from Chevron during a period of more than nine years, and the other classes include everyone who purchased motor fuel at retail from Chevron during that period. It would be impracticable to join all members of plaintiffs' proposed classes. Moreover,

---

[10]     The commonality and typicality requirements "tend to merge"; "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." <u>Dukes</u>, 131 S. Ct. at 2551 (quoting <u>Falcon</u>, 457 U.S. at 157-58). Commonality and typicality also "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." <u>Id.</u> Chevron makes distinct arguments regarding commonality based on <u>Dukes</u>, but their arguments regarding typicality and adequacy of representation overlap. The Court therefore addresses typicality and adequacy of representation together.

Chevron does not deny that the proposed classes satisfy the numerosity requirement.

### B.    Commonality

Rule 23(a)(2) requires plaintiffs to show that "questions of law or fact are common to the class." Commonality requires plaintiffs to demonstrate that the class members have "suffered the same injury." <u>Dukes</u>, 131 S. Ct. at 2550-51; <u>Falcon</u>, 457 U.S. at 157-58. In other words, the "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 131 S. Ct. at 2551.

This case involves a uniform method of selling motor fuel at retail by the gallon without disclosing or adjusting for temperature and its effects on motor fuel. This practice has affected all class members in the same way. Plaintiffs have presented significant proof that Chevron operated under a general policy of selling motor fuel this way. The record is sufficient to satisfy the commonality requirement with respect to both the liability and injunctive relief aspects of plaintiffs' claims. <u>See id.</u> at 2553 (quoting <u>Falcon</u>, 457 U.S. at 157-58); <u>see also</u> <u>In re Motor Fuel Temp. Sales Practices Litig.</u>, 279 F.R.D. 598, 612-13 (D. Kan. 2012). Plaintiffs have therefore shown that the class "suffered the same injury." <u>Id.</u> at 2551. The elements of plaintiffs' claims bear this out.

### 1.    Breach Of The Duty Of Good Faith And Fair Dealing

To establish a claim for breach of the duty of good faith and fair dealing, plaintiffs must show that (1) a retail motor fuel transaction constitutes a contract, (2) plaintiffs fulfilled their contractual obligations, (3) all conditions required for Chevron's performance had occurred, (4) Chevron unfairly interfered with plaintiffs' right to receive the benefit of the contract and (5) plaintiffs were harmed. <u>See</u> Judicial Council of California Civil Jury Instructions (2013), CACI

No. 325.  Because California imposes an objective standard for determining whether a contract existed and whether Chevron unfairly interfered with plaintiffs' right to the benefit of the contract, and because class members' transactions with Chevron were materially similar, plaintiffs' claims for breach of the duty of good faith and fair dealing are susceptible to classwide proof based on the expectations of a reasonable consumer.  See Klein v. Chevron U.S.A., Inc., 202 Cal. App.4th 1342, 1385, 137 Cal. Rptr.3d 293, 328 (Dist. 2 2012); Wolf v. Walt Disney Pictures & Television, 162 Cal. App.4th 1107, 1126, 76 Cal.Rptr.3d 585, 601 (2008); see also Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1260-61 (11th Cir. 2003) (common questions predominated where agreements between motor fuel dealers and Exxon were "materially similar"; Exxon owed duty of good faith to all dealers and failed to reduce price of wholesale gas for all dealers); In re Chase Bank USA, N.A. Check Loan Contract Litig., 274 F.R.D. 286, 290-92 (N.D. Cal. 2011) (finding commonality, certifying class claims for breach of duty of good faith and fair dealing under substantially similar Delaware law).

Similarly, the "harm" element presents a common question based on plaintiffs' theory that under Chevron's method of selling motor fuel at retail, harm is inherent in every retail motor fuel transaction regardless the temperature of the fuel.

### 2.    Unjust Enrichment

To prevail on their unjust enrichment claim, plaintiffs must show that (1) they conferred a benefit on Chevron, (2) Chevron appreciated or knew of the benefit and (3) Chevron retained the benefit under such circumstances as to make the retention inequitable.  U.S. for Use & Benefit of Walton Tech., Inc. v. Westar Eng'g Inc., 290 F.3d 1199, 1204 (9th Cir. 2002).  Plaintiffs allege that Chevron sold motor fuel to all class members in the same way, without disclosing or adjusting for

temperature or its effect on motor fuel. Whether Chevron received a benefit from this practice, whether Chevron knew of the benefit and whether Chevron unjustly retained it, are issues which are common to the class. See, e.g., Westways World Travel, Inc. v. AMR Corp., 218 F.R.D. 223, 239 (C.D. Cal. 2003) (plaintiffs' unjust enrichment claim posed common questions where plaintiffs alleged that defendants acted in "virtually uniform manner towards all Class members").

### 3. UCL

The UCL prohibits unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each of these three prongs is defined broadly;[11] and they present common questions that plaintiffs can address with classwide proof that will "generate common answers apt to drive the resolution of the litigation." Dukes, 131 S. Ct. at

---

[11]    The parties disagree about the elements of plaintiffs' UCL and CLRA claims, particularly with respect to reliance and injury. The Court does not resolve these disputes at this time. Even under Chevron's version of the elements (which requires plaintiffs to prove a duty to disclose, reliance and injury), plaintiffs may satisfy their burden with common proof that Chevron misrepresented or omitted a "material" fact in retail motor fuel transactions with class members. See In re Tobacco II Cases, 46 Cal.4th at 326-27, 207 P.3d at 39; infra Part I.B.4.

This case is not like Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595-96 (9th Cir. 2012), in which the Ninth Circuit found the class to be "overbroad" because the case did not involve a "massive advertising campaign" like the one in In re Tobacco II Cases, and the class likely included people who were not exposed to defendant's misrepresentations and therefore could not have relied on them. This case is also not like In re Vioxx Class Cases, 180 Cal. App.4th 116, 103 Cal. Rptr.3d 83 (2010), in which the California Court of Appeals relied on the fact that the decision to prescribe Vioxx was "an individual decision made by a physician in reliance on many different factors, which vary from patient to patient," and where "evidence indicated that Vioxx did not present an 'increased risk of death' compared to traditional NSAIDs for all patients." 180 Cal. App.4th at 133, 103 Cal. Rptr.3d at 98.

Here, Chevron sold fuel at retail without disclosing or adjusting for temperature or its effects. It made the same representations and omissions in every retail transaction. Plaintiffs allege the same form of injury to every person who purchased motor fuel from Chevron based on uniform misrepresentations and omissions. This case is therefore more like In re Tobacco II Cases than Mazza and In re Vioxx Class Cases. See also Gutierrez, 704 F.3d at 729 (class certification under Rule 23(b)(3) appropriate where pervasive nature of misleading marketing materials amply demonstrates class members, like named plaintiffs were exposed to materials and likely relied on them).

2551. To state a UCL claim, based on false advertising or promotional practices, plaintiffs only need to show that members of the public are "likely to be deceived." In re Tobacco II Cases, 46 Cal.4th 298, 312, 207 P.3d 20, 29 (quoting Kasky v. Nike, Inc., 27 Cal.4th 939, 951, 45 P.3d 243 (2002)). A business practice is "unfair" if it is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." Ferrington v. McAfee, Inc., No. 10-CV-01455, 2010 WL 3910169, at *12 (N.D. Cal. Oct. 5, 2010); see also Lozano v. AT & T Wireless Serv., Inc., 504 F.3d 718, 736-37 (9th Cir. 2007) (recognizing balancing test as one of the "remaining options" for "unfair" prong of UCL in consumer cases).[12]

The "fraudulent" prong of the UCL prohibits a business act or practice if it is "likely to deceive the public," which is determined based on "the likely effect such practice would have on a reasonable consumer." Klein, 202 Cal. App.4th at 1380, 137 Cal. Rptr.3d at 324. This is consistent with "the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." In re Tobacco II Cases, 46 Cal.4th 298, 312, 207 P.3d 20, 30. "[R]elief under the UCL is available without individualized proof of deception, reliance and injury." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting In re Tobacco II Cases, 46 Cal.4th at 320, 207 P.3d at 35).

Plaintiffs allege that Chevron violated the UCL by selling motor fuel by the gallon without

---

[12]    California state courts have split over "how to define 'unfair' in the consumer action context." Lozano, 504 F.3d at 736. The Ninth Circuit has stated that the traditional balancing test, stated above, is still a viable option, and federal district courts in California have applied that test. Id.; Ferrington, 2010 WL 3910169, at *12; Davenport v. Litton Loan Servicing, LP, 725 F. Supp.2d 862, 878 (N.D. Cal. 2010). The Court need not definitively decide whether this is the right test to apply in this case. It is sufficient that this test is one possible test and that Chevron's hybrid formulation of the elements of a UCL claim under the "unfair" prong are equally susceptible of common proof.

disclosing or adjusting for temperature and its effect on motor fuel – a practice that Chevron applied uniformly to all consumers. The elements of plaintiffs' UCL claims present common questions that do not require individualized proof.

### 4. CLRA

Chevron may be liable for violating the CLRA if, among other things, it represented to plaintiffs that the fuel they purchased had characteristics which it did not have or was of a particular standard, quality or grade, if it was of another. See Cal. Civ. Code § 1770(a)(5), (7); see also Klein, 202 Cal. App.4th at 1382, 137 Cal. Rptr.3d at 326. Under the CLRA, "fraud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact." McAdams v. Monier, Inc., 182 Cal. App.4th 174, 175, 105 Cal. Rptr.3d 704, 711 (2010) (quoting Outboard Marine Corp. v. Superior Court, 52 Cal. App.3d 30, 37, 124 Cal. Rptr. 852, 856 (1975)). Unlike the UCL, the CLRA "requires each class member to have an actual injury caused by the [alleged] unlawful practice." Stearns, 655 F.3d at 1022 (citing Steroid Hormone Prod. Cases, 181 Cal. App.4th 145, 155-56, 104 Cal. Rptr.3d 329, 337 (2010)). Plaintiffs may establish causation on a classwide basis by showing that Chevron's representations and/or omissions were material. Id. That is, if defendant has made material misrepresentations or omissions, "an inference of reliance arises as to the class." Id. (quoting In re Vioxx Class Cases, 180 Cal. App.4th at 129, 103 Cal. Rptr.3d at 94); see also Amgen, 133 S. Ct. at 1195-96 (in securities litigation context, because materiality is objective standard which involves significance of omitted or misrepresented fact to reasonable investor, materiality can be proved by evidence common to class, which is sufficient satisfying Rule 23); McAdams, 182 Cal. App.4th at 185, 105 Cal. Rptr.3d at 711 (applying inference of reliance from

omission or "failure to disclose" material information; record permitted inference of common reliance under CLRA where plaintiff alleged that defendant made material misrepresentation to all class members).

To prevail on a failure to disclose claim under the CLRA, plaintiffs must show that Chevron had a duty to disclose the material fact(s) it withheld. A duty to disclose arises, among other circumstances, if Chevron actively concealed a material fact from plaintiffs or if Chevron made partial representations but also suppressed some material facts. See Johnson v. Harley-Davidson Motor Co. Grp., LLC, 285 F.R.D. 573, 583 (E.D. Cal. 2012); Falk v. Gen. Motors Corp., 496 F. Supp.2d 1088, 1096-97 (N.D. Cal. 2007). Because Chevron acted uniformly with respect to the class, whether it had a duty to disclose information is a question common to the class and susceptible to classwide proof. Because a violation of the CLRA satisfies the "unlawful" prong of the UCL, that prong also presents a common question.

Plaintiffs allege a common practice that caused class members a common injury. Classwide proceedings in this case would therefore "generate common answers apt to drive the resolution of the litigation," and any dissimilarities within the proposed class do not "impede the generation of common answers." Dukes, 131 S. Ct. at 2551 (quoting Richard A Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97 (2009)) (quotation marks omitted). Accordingly, the Court finds "questions of law or fact common to the class." Id. Chevron argues that on the merits the Court should "reject" plaintiffs' claims for unjust enrichment and breach of the covenant of good faith and fair dealing based on Klein v. Chevron U.S.A. Inc., 202 Cal. App.4th 1342 (2012), in which the California Court of Appeals affirmed dismissal of similar if not identical claims. But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.

Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen, 133 S. Ct. at 1194-95 (citing Dukes, 131 S. Ct. At 2552 n.6). The Court therefore declines Chevron's invitation to dismiss these claims on the merits.

### C.    Typicality And Adequacy Of Representation

Rule 23(a)(3) requires plaintiffs to show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The test of typicality is whether all class members were at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances. Stricklin, 594 F.3d at 1198-99; see also Ellis, 657 F.3d at 984. The interests and claims of named plaintiffs and class members need not be identical to satisfy typicality; so long as the claims of named plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. Stricklin, 594 F.3d at 1198-99; see also Ellis, 657 F.3d at 984; Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Minor conflicts among class members do not defeat class certification; to defeat class certification, a conflict must be "fundamental" and go to specific issues in controversy. Eatinger v. BP Am. Prod. Co., 271 F.R.D. 253, 260 (D. Kan. 2010) (citing Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003)); see also Ellis, 657 F.3d at 985 (citing Molski v. Gleich, 318 F.3d 937, 955 (9th Cir. 2003), overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 617 (9th Cir. 2010), rev'd 131 S. Ct. 795 (2010); Albertson's, Inc., v. Amalgamated Sugar Co., 503 F.2d 459, 464 (10th Cir. 1974) (fact that class

-25-

members benefit unevenly will not generally preclude class certification). A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in benefit to other class members. Eatinger, 271 F.R.D. at 260. In such situations, the named representatives cannot adequately represent the interests of the class because their interests are actually or potentially antagonistic to or in conflict with interests and objectives of other class members. See id.; see also Berrien v. New Raintree Resorts Int'l, LLC, 276 F.R.D. 355, 359-61 (N.D. Cal. 2011); (various potential conflicts did "not pose a fundamental conflict that precludes class certification"); see also Cummings v. Connell, 316 F.3d 886, 896 (9th Cir. 2003) (Ninth Circuit disfavors denial of class certification on basis of speculative conflicts); Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara, 609 F.2d 944, 948 (9th Cir. 1979) (mere speculation as to conflicts that may develop at remedy stage insufficient to support denial of initial class certification); Blackie, 524 F.2d at 909 (although class members might have differing interests at later stages of litigation, "potential conflicts" do not present valid reason for refusing to certify class); Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (right to withdraw from class protected interests of dissident class members).

Determining adequacy of representation turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. E. Tex. Motor Freight Sys., Inc., v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citing Hanlon, 150 F.3d at 1020).

Chevron challenges the typicality of the class representatives and the adequacy of representation because (1) not every member of the class wants ATC at retail, (2) some class

members typically purchase motor fuel that is cooler than 60 degrees Fahrenheit, (3) some class members purchased fuel at a negotiated price under a fleet contract and (4) certain named plaintiffs lack Article III standing because they did not purchase fuel from Chevron in California.

### 1. Desirability Of ATC At Retail

Chevron argues that the named representatives are atypical and inadequate because some class members oppose one form of injunctive relief which they seek – the implementation of ATC at retail. According to Chevron, some class members believe that ATC at retail will result in higher fuel prices with no corresponding benefit to class members. Although Chevron contends that class members hold differing opinions whether ATC would benefit the class as a whole, it does not argue these differences among class members would cause some class members to benefit at the expense of others. These types of potential conflicts that might arise at a later stage in the litigation do not defeat class certification. See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., 281 F.R.D. 477, 485 (D. Kan. 2012) (speculative or minor conflicts insufficient to defeat class certification on grounds of adequacy of representation); In re Motor Fuel Temp. Sales Practices Litig., 271 F.R.D. 221 (D. Kan. 2010) (finding adequate representation in Kansas cases); see also Soc. Servs. Union, Local 535, 609 F.2d at 948; Blackie, 524 F.2d at 909.

Moreover, before plaintiffs may obtain injunctive relief requiring Chevron to install ATC, they must prove that the requested relief will benefit the class as whole. If the evidence shows that mandating ATC would harm the class, plaintiffs will not prevail on their request for injunctive relief. Furthermore, Chevron emphatically contends that implementing ATC at retail will not benefit class members. Under these circumstances, the Court finds that Chevron will adequately represent the position of class members who oppose ATC at retail. See, e.g., Curley v. Brignoli, Curley &

Roberts Assoc., 915 F.2d 81, 86 (2d Cir. 1990); Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 487 (5th Cir. 1982); Dierks v. Thompson, 414 F.2d 453, 456-57 (1st Cir. 1969); Groover v. Michelin N. Am., Inc., 192 F.R.D. 305, 306-07 (M.D. Ala. 2000); Reese v. Miami-Dade Cnty., 209 F.R.D. 231, 233 (S.D. Fla. 2002); Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n, 192 F.R.D. 568, 574 (W.D. Mich. 1999); Messier v. Southbury Training Sch., 183 F.R.D. 350, 358 (D. Conn. 1998); Wyatt v. Poundstone, 169 F.R.D. 155, 162 (M.D. Ala. 1995).

### 2. Class Members May Typically Purchase Fuel Cooler Than 60 Degrees Fahrenheit

Chevron argues that named plaintiffs cannot adequately represent potential class members who typically purchase fuel that is cooler than 60 degrees. It has not attempted to demonstrate that any potential class members typically purchase fuel that is cooler than 60 degrees and the record indicates that the average temperature of motor fuel sold in California is warmer than 60 degrees. Regardless, plaintiffs' theory of recovery does not turn on whether the temperature of fuel is warmer or cooler than 60 degrees. Plaintiffs allege that by not disclosing the temperature of motor fuel at retail some harm to the consumer is inherent in every retail motor fuel transaction regardless the temperature of the fuel. Although the degree of injury may vary among class members based on the temperature of the fuel they purchase, under plaintiffs' theory every retail motor fuel transaction causes an injury.

### 3. Some Class Members Purchased Fuel At Negotiated Price Under Fleet Contract

Chevron contends that named representatives cannot adequately represent class members who purchased fuel at a negotiated price under fleet contracts. Based on the class definition, which confines class members to those who "purchased motor fuel at retail in the state of California," it

is not clear whether individuals or entities that purchased fuel at negotiated prices under fleet contracts would even qualify. Regardless, this difference does not defeat typicality because "the claims of the representative plaintiffs and class members are based on the same legal and remedial theories and arise from the same pattern of conduct by defendants: all of them allegedly suffered injury on account of defendants' sale of motor fuel for specified prices per gallon without disclosing or adjusting for temperature expansion." In re Motor Fuel Temp. Sales Practices Litig., 271 F.R.D. 221, 229 (D. Kan. 2010).

### 4. Article III Standing – No Purchases From Chevron In California

As discussed above, Chevron argues that Rushing plaintiffs lack Article III standing because they did not allege that a named plaintiff purchased motor fuel from Chevron in certain states. If true, named plaintiffs would not be typical of class members who did purchase from Chevron and would not adequately represent the class. See Rector, 348 F.3d at 950; Ellis, 657 F.3d at 978-79. As noted, however, the second amended complaint in Rushing alleges that plaintiff John Telles purchased fuel from Chevron in California for personal, family or household use. This argument is therefore without merit.

## VI. Rule 23(b) Requirements

In addition to the requirements of Rule 23(a), plaintiffs must affirmatively demonstrate that the class satisfies the requirements of one of the types of class actions listed in Rule 23(b). Here, plaintiffs seek class certification under Rule 23(b)(2) and (b)(3).

### A. Rule 23(b)(2) Classes

Class certification under Rule 23(b)(2) requires plaintiffs to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Claims for monetary relief may not be certified under this Rule, at least where the monetary relief is not incidental to the injunctive or declaratory relief. Dukes, 131 S. Ct. at 2557. In other words, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," or even "when each individual class member would be entitled to a different injunction or declaratory judgment." Id. Nevertheless, that "the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988); see also Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010); Walters v. Reno, 145 F.3d 1032, 1045 (9th Cir. 1998) (citing Adamson, 855 F.2d at 676).

### 1.      Cohesiveness And Manageability Of Class

Under Rule 23(b)(2), plaintiffs request class certification of only their claims for injunctive relief. The gravamen of plaintiffs' claims for injunctive relief is that Chevron sold motor fuel at retail to plaintiffs by the gallon without disclosing or adjusting for temperature and its effects on motor fuel. This practice applied uniformly to all class members and could therefore be remedied by a single injunction applicable to them all. Chevron contends, however, that plaintiffs' proposed (b)(2) class is not cohesive because some class members may oppose ATC at retail. Disagreements among class members about the effectiveness of ATC at retail – which is just one of several forms of injunctive relief that plaintiffs seek – do not implicate the cohesiveness of the class. That is, class members' disagreement about ATC does not undermine plaintiffs' allegation that Chevron acted uniformly with respect to the class or that injunctive relief would be appropriate respecting the class as a whole. Rather, the argument goes to the merits of plaintiffs' claim for injunctive relief and

whether ATC would actually benefit the class.

Chevron also argues that the class is not manageable because it would require the Court to examine individual purchasing behavior of each putative class member, the temperature of the fuel at the hundreds of retail stations and retailers' individualized pricing decisions, including how the per-unit retail price would change if ATC were required. This ignores the fact that plaintiffs allege that they suffered similar injuries caused by Chevron's uniform practice of selling motor fuel by the gallon without disclosing or adjusting for temperature and its effects. Plaintiffs will not need to prove individual circumstances regarding each class member, but can show injury by classwide proof.

On this record the Court can conceive of a uniform injunction that could address plaintiffs' alleged injury that will satisfy the requirements of Rule 23(b)(2) and Rule 65(d), Fed. R. Civ. P., which governs injunctions. The Court could craft an injunction requiring Chevron to implement ATC, disclose the temperature of fuel and/or disclose the effect of temperature on fuel in specific terms that describe in reasonable detail the act or acts restrained or required. See Fed. R. Civ. P. 65(d)(1).

## 2. Plaintiffs' Request For Damages

In Dukes, the U.S. Supreme Court made clear that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." 131 S. Ct. at 2557. Chevron argues that plaintiffs' request for money damages, in addition to injunctive relief, makes their claims inappropriate for certification under Rule 23(b)(2). Dukes found that a class of current and former female employees of Wal-Mart seeking injunctive and declaratory relief, backpay and punitive damages for violations of Title VII could not be

certified under Rule 23(b)(2). It held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages" and because "the combination of individualized and classwide relief in a (b)(2) class is inconsistent with the structure of Rule 23(b)." Id. at 2558.

Here, however, plaintiffs ask the Court to certify a (b)(2) class for injunctive relief only. They ask the Court to certify the liability aspects of plaintiffs' claims in a separate issues class under Rule 23(b)(3) and (c)(4), presumably to hold open the possibility of obtaining classwide monetary relief and to avoid any potential due process or collateral estoppel issues. See Memorandum And Order (Doc. #3208) at 30, 32; see also Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883, 895 (7th Cir. 2011) (in appropriate case, Rule 23(b)(2) class and Rule 23(b)(3) class may be certified where real basis for both damages and equitable remedy exists). Under plaintiffs' dual certification request, the (b)(2) class will not contain their request for damages.

For these reasons, under Rule 23(b)(2), the Court certifies plaintiffs' claims for injunctive relief based on unjust enrichment and breach of the duty of good faith and fair dealing, and for violation of the UCL and CLRA.

### B.    Rule 23(b)(3) Classes

To certify a class under Rule 23(b)(3), plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For particular issues to be certified using Rule 23(c)(4), the requirements of Rule 23(a) and (b) must be satisfied only with respect to those issues. See Fed. R. Civ. P. 23(c)(4); Fulghum, 2011 WL 13615, at *2; Emig, 184 F.R.D. at 395; Law, 167 F.R.D. at

184-85; see also Valentino, 97 F.3d at 1234; In re Paxil Litig., 212 F.R.D. at 543.  In determining whether to certify a class under Rule 23(b)(3), the Court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, plaintiffs have met the requirements of predominance and superiority: (A) class members likely have little interest in individually controlling the prosecution of separate actions because the amount at stake for individual class members is small relative to the cost of maintaining a separate action; (B) although a similar case is pending in California state court, see Klein v. Chevron USA Inc., No. BC367812 (L.A. Super. Ct.), it does not appear to be moving toward trial any time soon – plaintiffs have moved to stay that case and Chevron has moved for judgment of abatement; (C) the Court intends to sever all claims against Chevron in these cases, remand the claims to their respective transferor courts with a view to transferring claims in two of the cases to one district under 28 U.S.C. § 1404(a), consolidate the three cases against Chevron for all future proceedings, which is a desirable plan for adjudicating plaintiffs' claims in a just and speedy manner; and (D) by severing plaintiffs' claims against Chevron and bifurcating the question of individual damages, the Court has narrowed the class action to discrete questions of law and fact that can be resolved on a classwide basis.  The Court foresees no case management issue that would dissuade it from certifying under Rule 23(b)(3) a class as to the liability and injunctive relief aspects of plaintiffs' claims.  As noted above, the proposed (b)(3) classes involve common questions of law

or fact. See supra Part V.B. (discussing commonality). These questions predominate over any individualized questions that may arise, and handling the claims in a class action is better than making class members bring their own claims separately.

Chevron argues that plaintiffs' claims require individualized proof based on the circumstances of each fill-up, including the temperature of the fuel, whether the class member would have paid less or received more fuel for the same price with ATC and whether Chevron purchased fuel at wholesale on a temperature-adjusted basis at the time of each transaction. Because plaintiffs allege that Chevron treated all class members the same in all material respects, these individual inquiries are unnecessary.

Determining each class members' damages, if any, may require individualized determinations, but "[t]he possibility that individual issues may predominate the issue of damages . . . does not defeat class certification by making [the liability] aspect of the case unmanageable." In re Urethane Antitrust Litig., 251 F.R.D. 629, 633, 639 (D. Kan. 2008); see also Comcast, slip op. at 4 n.*, 2013 WL 1222646, at *9 n.* (Ginsburg, Breyer, JJ dissenting). The reasoning in In re Urethane Antitrust Litigation applies with equal force here:

> Even if individualized issues (rather than common issues) were to predominate the damage inquiry, the more appropriate course of action would be to bifurcate a damages phase and/or decertify the class as to individualized damages determinations. In other words, even if individualized issues predominate the issue of damages, the court believes that common questions nonetheless predominate in this case because common questions will govern the more difficult, threshold liability issues . . . .

237 F.R.D. 440, 452 (D. Kan. 2006); see also Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010) (citing Blackie, 524 F.2d at 905) (calculating amount of damages "invariably an individual question," but "does not defeat class action treatment"); Fulghum, 2011

WL 13615, at *2; <u>Emig</u>, 184 F.R.D. at 394-95; <u>Schreiber v. Nat'l Collegiate Athletic Ass'n</u>, 167 F.R.D. 169, 176-77 (D. Kan. 1996). Moreover, the Court has bifurcated plaintiffs' request for damages.

This approach is consistent with Rule 23(c)(4), which permits, "[w]hen appropriate, an action [to] be brought or maintained as a class action with respect to particular issues." It is also consistent with the Advisory Committee Note on Rule 23(b)(3), which states that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." <u>See also</u> Fed. R. Civ. P. 23(c)(4) advisory committee note ("[I]n a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."). Other federal courts have adopted a similar approach.[13] The Court therefore finds ample support for structuring the present class action as it has.

Structuring the actions in this way will reduce the range of issues in dispute, promote judicial economy and avoid the due process issues which Chevron raises in light of <u>Dukes</u>. By certifying the liability and injunctive relief aspects of plaintiffs' claims in a (b)(3) class, the Court avoids any actual or perceived conflict with <u>Dukes</u>. It also avoids possible Seventh Amendment and preclusion

---

[13]     <u>See</u> <u>Pella Corp. v. Saltzman</u>, 606 F.3d 391 (7th Cir. 2010) (per curiam); <u>In re Nassau Cnty. Strip Search Cases</u>, 461 F.3d at 227; <u>In re Allstate</u>, 400 F.3d at 508; <u>Tardiff</u>, 365 F.3d at 7; <u>Gunnells</u>, 348 F.3d at 427-28; <u>Valentino</u>, 97 F.3d at 1234; <u>In re McKesson Governmental Entities Avg. Wholesale Price Litig.</u>, 767 F. Supp.2d 263, 269 (D. Mass. 2011); <u>Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.</u>, 269 F.R.D. 252, 256 (S.D.N.Y. 2010); <u>see also</u> <u>Comcast</u>, slip op. at 4 n.*, 2013 WL 1222646, at *9 n.* (Ginsburg, Breyer, JJ dissenting). <u>But see</u> <u>Hohider</u>, 574 F.3d at 202 n.25 (interaction between Rules 23(a) and (b) and authorization of issues classes under Rule 23(c)(4) is difficult matter that has caused circuit split); <u>Castano</u>, 84 F.3d at 745-46 n.21.

issues which other defendants raised in their proposed trial plan in the Kansas cases. See [Kansas] Defendants' Submission In Response To Court's November 11, 2010 Order Requiring A Proposed Trial Plan (Doc. #1734) filed December 3, 2010. For these reasons, and in light of the common questions discussed above which predominate over individual issues, under Rule 23(b)(3) the Court certifies the "liability" aspects of plaintiffs' claims for unjust enrichment and breach of the duty of good faith and fair dealing, and for violation of the UCL and CLRA.

## VII. Summary Of Class Certification

This class certification order relates only to the following four claims against Chevron: (1) breach of the duty of good faith and fair dealing (Lerner), (2) unjust enrichment (Lerner and Wyatt), (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (Lerner, Rushing and Wyatt), and (4) violation of the California Consumers Legal Remedy Act ("CLRA"), Cal. Civ. Code § 1750 et seq. (Rushing). Regarding these claims, the Court certifies two classes in each of the three California cases – Rushing v. Ambest, Inc., No. 06-7621-PJH (N.D. Cal.), Lerner v. Costco Wholesale Corp., No. 07-1216-GHK-FMO (C.D. Cal.) and Wyatt v. B.P. America Corp., No. 07-1754-BTM-JMA (S.D. Cal.). One class relates to plaintiffs' CLRA claims and consists of:

> All consumers that, at any time since January 1, 2004, purchased motor fuel at retail in the state of California, from a gas station owned, operated or controlled by Chevron.

The other class relates to plaintiffs' remaining claims and consists of:

> All individuals and entities that, at any time since January 1, 2004, purchased motor fuel at retail in the state of California, from a gas station owned, operated or controlled by Chevron.

The Court certifies each of these classes under Rule 23(b)(2) and (b)(3). The (b)(2) class is

limited to plaintiffs' claims for injunctive relief and the (b)(3) class is limited to the "liability" aspects of plaintiffs' claims. As it did in the Kansas cases, the Court bifurcates plaintiffs' request for damages. Chevron's liability will be determined in Phase I. Any relief will be determined in Phase II if necessary.

The basic "liability" elements of plaintiffs' unjust enrichment claims are that (1) plaintiffs conferred a benefit on Chevron, (2) which Chevron knowingly accepted, (3) under circumstances that make it inequitable for Chevron to retain the benefit without paying for its value. See Hernandez, 180 Cal. App.4th at 938, 103 Cal. Rptr.3d at 380 (2009) (citing Dunkin, 82 Cal. App.4th at 195, 98 Cal. Rptr.2d at 60-61).

The basic "liability" elements of plaintiffs' breach of the duty of good faith and fair dealing claims are that (1) plaintiffs and Chevron entered into a contract; (2) plaintiffs did all, or substantially all of the significant things that the contract required; (3) all conditions required for Chevron's performance had occurred; (4) defendant unfairly interfered with plaintiffs' right to receive the benefits of the contract; and (5) plaintiffs were harmed. Judicial Council of California Civil Jury Instructions (2013), CACI No. 325.

The basic "liability" elements of plaintiffs' UCL claims are that (1) plaintiffs and Chevron are "persons" under the UCL; (2) Chevron engaged in unfair competition (i.e. unlawful, unfair and/or fraudulent business acts or practices); (3) named plaintiffs suffered economic injury as a result of Chevron's acts or practices; and (4) members of the public were likely deceived. See Cal. Bus. & Prof. Code §§ 17200, 17201; In re Tobacco II Cases, 46 Cal.4th at 312, 207 P.3d at 29.

The basic "liability" elements of plaintiffs' CLRA claims are that (1) plaintiffs were "consumers" under the CLRA; (2) Chevron was a "person" under the CLRA; (3) plaintiffs and

Chevron engaged in a transaction intended to result or which resulted in the sale or lease of goods or services; (4) Chevron used unfair methods of competition, or unfair or deceptive acts or practices, in violation of the CLRA; (5) as a result, plaintiffs suffered damage. See Cal. Civ. Code §§ 1750, 1761, 1770, 1780.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Class Certification (Doc. #1131) filed June 1, 2009, Lerner California Plaintiffs' Motion For Class Certification And Memorandum In Support (Doc. #1088) filed June 1, 2009 and Wyatt California Plaintiffs' Motion For Class Certification And Memorandum In Support (Doc. #1089) filed June 1, 2009 be and hereby are **SUSTAINED in part** as described above.

Dated this 5th day of April, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge