**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

IN RE: MOTOR FUEL TEMPERATURE )
SALES PRACTICES LITIGATION )
) MDL No. 1840
(This Document Relates to All Cases) ) Case No. 07-MD-1840-KHV
_____)

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiffs' <u>Proposed Notice Plans For Class Action Settlements And California Trial Cases</u> ("Combined Notice Plan") (Doc. #4549) filed April 15, 2013, which defendants do not oppose.[1] For reasons stated below, the Court orders plaintiffs to file revised notices and supplemental evidence regarding the proposed notice plan.

**I.    Factual Background**

   **A.    Settlements**

The Court has preliminarily approved ten settlement agreements and conditionally certified settlement classes under Rule 23(b)(3). More specifically, on September 28, 2012, the Court preliminarily approved a settlement agreement with Dansk Investment Group, Inc. (formerly known as USA Petroleum Corporation). <u>See</u> <u>In re Motor Fuel Temp. Sales. Pract. Litig.</u>, 286 F.R.D. 488 (D. Kan. 2012). On November 20, 2012, the Court granted preliminary approval to settlement agreements with (1) BP Products North America Inc. and BP West Coast Products LLC (collectively, "BP"); (2) CITGO Petroleum Company; (3) ConocoPhillips Company; (4) Motiva

---

[1] Plaintiffs' combined notice plan incorporates by reference the notice plan which they filed on February 15, 2013, with regard to the settlements. <u>See</u> Combined Notice Plan (Doc. #4549) at 2 n.2 (incorporating by reference <u>Revised Proposed Notice Plan For Class Action Settlements</u> ("Notice Plan For Settlements") (Doc. #4513) filed February 15, 2013).
Non-settling defendants in the California cases have suggested revised language to some notices. <u>See</u> <u>Non-Settling California Defendants' Response To Plaintiffs' Proposed Notice Plan</u> (Doc. #4574) filed April 28, 2013. Plaintiffs have informed the Court that they agree to the proposed changes.

Enterprises LLC and Equilon Enterprises LLC d/b/a Shell Oil Products U.S. (collectively, "Shell"); (5) Sinclair Oil Corporation and its corporate affiliates (collectively, "Sinclair"); (6) Casey's General Stores, Inc.; and (7) Sam's Club, Sam's East, Inc., Sam's West, Inc., Wal-Mart Stores, Inc. Wal-Mart Stores East, LLP (collectively, "Sam's"). See In re Motor Fuel Temp. Sales Pract. Litig., No. 07-MD-1840-KHV, 2012 WL 5876558 (D. Kan. Nov. 20, 2012). On December 10, 2012, the Court preliminarily approved settlement agreements with Exxon Mobil Corporation, Esso Virgin Islands, Inc. and Mobil Oil Guam, Inc. (collectively, "ExxonMobil"), and Valero Marketing and Supply Company and Valero Energy Corporation (collectively, "Valero"). See In re Motor Fuel Temp. Sales Pract. Litig., No. 07-MD-1840-KHV, 2012 WL 6115085 (D. Kan. Dec. 10, 2012).

**B.     California Cases**

In three California cases, Rushing v. Ambest, Inc., No. 06-7621-PJH (N.D. Cal.), Lerner v. Costco Wholesale Corp., No. 07-1216-GHK-FMO (C.D. Cal.), and Wyatt v. B.P. America Corp., No. 07-1754-BTM-JMA (S.D. Cal.), the Court certified classes under Rule 23(b)(2) and (3), Fed. R. Civ. P., against Chevron USA, Inc. See In re Motor Fuel Temp. Sales Pract. Litig., — F. Supp.2d —, 07-MD-1840-KHV, 2013 WL 1397125 (D. Kan. April 5, 2013).[2] Specifically, in each case, the Court certified a class of "consumers" for plaintiffs' claims under the California Consumers Legal Remedy Act ("CLRA"), Cal. Civ. Code § 1750 et seq. and a class of "individuals and entities" for plaintiffs' other claims. Id. at *19. The classes include all consumers (or individuals and entities) that at any time since January 1, 2004, purchased motor fuel at retail in the state of California from a gas station owned, operated or controlled by Chevron. Id.

---

[2]     The (b)(2) classes are limited to the plaintiffs' claims for injunctive relief and the (b)(3) classes are limited to the "liability" aspects of plaintiffs' claims. In re Motor Fuels, 2013 WL 1397125, at *19-20.

-2-

On April 5, 2013, the Court also certified identical classes against the remaining non-settling defendants in the California cases. See Order (Doc. #4544). Specifically, in Rushing, the Court certified classes against Circle K Stores, Inc., Flying J, Inc., Petro Stopping Centers, L.P., Pilot Travel Centers LLC, Inc. and Travel Centers of America, Inc. In Lerner, the Court certified classes against G&M Oil Company, Inc., G&M Oil Co., LLC, United El Segundo, Inc. and World Oil Corp. In Wyatt, the Court certified classes against Circle K Stores, Inc. and 7-Eleven, Inc. Id. at 2. Each case includes a class of "all consumers" and a class of all "individuals and entities" that at any time since January 1, 2004, purchased motor fuel at retail in the state of California from a gas station owned, operated or controlled by defendants. Id.

## II. Legal Standards

With respect to classes certified under subsection (b)(3), Rule 23(c)(2)(B) requires the following notice:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

With respect to class settlements, Rule 23(e) requires the Court to direct notice "in a reasonable manner to all class members who would be bound by the proposal."

Fed. R. Civ. P. 23(e). The content and form of notice are left to the Court's discretion. See Gottlieb v. Wiles, 11 F.3d 1004, 1013 (10th Cir. 1993), overruled in part on other grounds by Devlin v. Scardelletti, 536 U.S. 1 (2002). Under Rule 23(e), notice of a settlement must "fairly apprise" class members of the terms of the proposed settlement and their options with respect thereto. Id. (quoting 3B Moore's Federal Practice ¶ 23.80[3], at 23-484).[3]

In addition to the requirements of Rule 23, the Due Process Clause in the Fifth Amendment of the United States Constitution guarantees unnamed class members the right to notice of class certification or settlement. See U.S. Const., amend. V; DeJulius v. New England Healthcare Empls. Pension Fund, 429 F.3d 935, 943-44 (10th Cir. 2005). This due process right does not require actual notice to each party intended to be bound by adjudication of a class action. See DeJulius, 429 F.3d at 944. The Court must give "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Id. (quoting In re Integra Realty Res., Inc., 262 F.3d 1089, 1110-11 (10th Cir. 2001)). The legal standards for satisfying Rule 23(c)(2)(B) and due process are coextensive and substantially similar. See DeJulius, 429 F.3d at 944; Fed. R. Civ. P. 23(c) advisory committee's note (Rule 23(c)(2) notice designed to fulfill due process requirements).

Individual notice to identifiable class members "is not a discretionary consideration to be waived in a particular case"; rather, it is "an unambiguous requirement of Rule 23." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974). Plaintiffs' pocketbooks are not a factor – the

---

[3] Rule 23(c)(2) imposes a higher notice requirement – that class members receive "the best notice practicable under the circumstances" of the pendency of a class action. Fed. R. Civ. P. 23(c)(2). This higher standard is designed to ensure that class members who desire to pursue their own claims individually have the opportunity to exercise their right to opt out of the class. See Gottlieb, 11 F.3d at 1012.

mandatory notice requirement may not be relaxed based on the high cost of providing notice. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997); Eisen, 417 U.S. at 176; Burns v. Copley Pharm., Inc., 132 F.3d 42 (Table), 1997 WL 767763, at *2 (10th Cir. Dec. 11, 1997). Thus, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Mullane, 339 U.S. at 315. The "constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." Id. For example, publication notice does not satisfy due process where the names and addresses of the putative class members are known or very easily ascertainable. Eisen, 417 U.S. at 174-75 (citing Mullane, 339 U.S. at 318). Rule 23(c)(2) prefers individual notice because "notice by publication ha[s] long been recognized as a poor substitute for actual notice." Id. at 175 (quoting Schroeder v. City of New York, 371 U.S. 208, 213 (1962)). Its plain language leaves no doubt that individual notice must be provided to class members who are identifiable through reasonable effort. Id.

### III. Analysis

Plaintiffs propose a combined nationwide notice program for the settlement classes and California classes. The plan is comprised of the following elements: (1) digital publication, i.e. on-line banner notices; (2) targeted supplemental newspaper publication; (3) targeted supplemental radio ads; (4) internet web sites; (5) nationally distributed press releases; and (6) automated telephone help lines in English and Spanish. See Combined Notice Plan (Doc. #4549) at 5-9.

#### A. Notice By Publication

To satisfy Rule 23(c)(2)(B) and due process requirements, plaintiffs must provide the best notice that is practicable under the circumstances, including individual notice to all members who

can be identified through reasonable effort.[4]  Plaintiffs maintain that the California classes include over 29.5 million people – and that the settlement classes include over 160 million people – whose names and addresses cannot be ascertained by reasonable effort.  See Combined Notice Plan (Doc. #4549) at 10; Notice Plan For Settlements (Doc. #4513) at 5.  Plaintiffs assert that none of the California or settling defendants collect or maintain complete names and addresses (or other contact information) of consumers who purchase motor fuel at retail stations which they own, operate or brand.  See Combined Notice Plan (Doc. #4549) at 10 n.19; Notice Plan For Settlements (Doc. #4513) at 5 n.6.  Plaintiffs, however, present no evidence in this regard.  Also, plaintiffs do not state whether the California or settling defendants keep contact information for some class members, e.g. via credit card, membership or other reward programs, by which individual notice could be given to part of the class in addition to notice publication for remaining class members. See, e.g., Montelongo v. Meese, 803 F.2d 1341, 1352 (5th Cir. 1986) (individual notice to class members whom plaintiffs could reasonably locate plus radio and newspaper announcements where class members likely to be found fully satisfied dictates of Rule 23(c)).  On this record, plaintiffs have not shown that class members cannot be identified by reasonable effort.  Plaintiffs should supplement the record with stipulations by the California and settling defendants – or other evidence if necessary – as to whether individual class members are reasonably ascertainable.

---

[4]  What is "the best notice practicable under the circumstances" and what constitutes "reasonable effort" is a determination of fact to be made in the individual litigation.  In re "Agent Orange" Prod. Liab. Litig., 100 F.R.D. 718, 729 (E.D.N.Y. 1983) (quoting In re Franklin Nat'l Bank Sec. Litig., 599 F.2d 1109 (2d Cir.1978)); see also In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1098 n.11 (5th Cir. 1977); C. Wright & A. Miller, Federal Practice & Procedure, at § 1786; Manual for Complex Litigation, § 1.45 (1982).

**B.     Publication Plan**

In states and territories both inside and outside the Settlement Region,[5] i.e. across the nation, plaintiffs propose to give digital notice in the form of banner ads on web sites that class members most frequently visit.[6]  See Combined Notice Plan (Doc. #4549) at 5-6; Replacement Exhibit 5 (Doc. #4550) to Dahl Supplemental Affidavit.  In addition, in states and territories where less than 75 per cent of the target population has internet access (Alabama, Arkansas, Kentucky, Mississippi, South Carolina, Tennessee, U.S. Virgin Islands, Guam, Montana, South Dakota and West Virginia), plaintiffs propose to supplement digital notice with newspaper and radio notice.[7]

**1.     States And Territories Where At Least 75 Per Cent Of Target Population Has Internet Access**

In states and territories where at least 75 per cent of the target population has internet access, plaintiffs propose an exclusively digital notice plan.  Specifically, plaintiffs propose to place banner notices on websites which class members visit most frequently.  See id. at 5-6 and Replacement Exhibit 5 to Dahl Supplemental Affidavit.  The banner notices use simple language to alert class members about the settlements and California cases and provide the viewer (1) an

---

[5]     The Settlement Region includes 26 states (Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah and Virginia), the District of Columbia, Puerto Rico and Guam. See Affidavit Of Jeffrey D. Dahl With Respect To Settlement Notice Plan ¶ 12, Exhibit A to Proposed Notice Plan For Class Action Settlements (Doc. #4483) filed December 17, 2012; Affidavit Of Jeffrey D. Dahl With Respect To Revised Settlement Notice Plan, Exhibit A to Revised Proposed Notice Plan For Class Action Settlements (Doc. #4513) filed February 13, 2013.

[6]     It is unclear whether the notice plan includes Alaska and Hawaii.  Plaintiffs should clarify the record in this regard.

[7]     The target population includes individuals 16 years old or over.  See Dahl Supplemental Affidavit ¶ 10 (notice plan designed to reach at least 75 per cent of individual age 16 or older); Grudnowski Affidavit ¶ 8 n.1 (same).

option of clicking on the notice to go directly to web sites regarding the settlements or California cases; and (2) the website addresses to manually type into his or her computer. Combined Notice Plan (Doc. #4549) at 5. Plaintiffs will utilize digital tools to target, measure and verify exposure to the target population. Id.

In states and territories located within the Settlement Region, plaintiffs maintain that at least twice, their plan will expose the banner ad to 75 to 80 per cent of settlement and California class members, i.e. a 2.0 frequency. See Combined Notice Plan (Doc. #4549) at 6; Dahl Supplemental Affidavit ¶ 13; Affidavit Of John Grudnowski In Support Of Settlement Notice Plan ("Grudnowski Affidavit") ¶¶ 7, 22, 24, Exhibit to Combined Notice Plan (Doc. #4549). In states and territories located outside the Settlement Region, plaintiffs maintain that their plan will at least once expose the banner ad to 75 per cent of settlement and California class members, i.e. a 1.0 frequency. See Combined Notice Plan (Doc. #4549) at 7 Dahl Supplemental Affidavit ¶ 15; Grudnowski Affidavit ¶¶ 7, 22, 24.

It is unclear whether plaintiffs maintain that the banner ads will reach every member of the target population who has internet access in a given state or territory. To determine which states have internet access for at least 75 per cent of the target population, plaintiffs apparently rely on the 2010 U.S. census.[8]  See Dahl Supplemental Affidavit ¶ 14. Plaintiffs, however, provide no information regarding the specific percentage of internet access for a given state. Plaintiffs cite evidence which suggests that of all internet "users" over the age of 18, each month, 94.6 per cent will visit the broad selection of domains where plaintiffs plan to publish the banner notice. See Grudnowski Affidavit ¶ 36 (citing comScore Media Metrics Key Measures Report, May 2012). It

---

[8]  Plaintiffs assert that the U.S. Census data measures internet access of adults 18 years old and over. See Grudnowski Affidavit ¶ 17 n.6.

is unclear whether the number of people with internet "access" as defined in the U.S. Census, see Dahl Affidavit ¶¶ 19, 21, 23 and Dahl Supplemental Affidavit ¶¶ 14-15, is the same number of people who constitute internet "users" as discussed in Grudnowski's affidavit. In other words, it is unclear whether all people identified in the 2010 census as having internet "access" would constitute on-line "users" under the comScore study which Grudnowski cites. Also, it is unclear whether plaintiffs' estimated reach calculation takes into account the comScore estimate that 94.6 per cent of internet users above the age 18 will visit the domains each month, or whether it assumes that the notice will reach all people with internet "access" in the state. Moreover, it is unclear whether data measuring internet use by people over 18 applies to the entire "target" population, which includes individuals 16 and older.[9] Plaintiffs should clarify the record with regard to these issues. In addition, plaintiffs should provide supplemental information regarding the specific estimated reach of digital notice in each state, including a breakdown of the percentage of people in the target population with internet access and the percentage of people in the target population that the digital notice plan expects to reach.

### 2. States And Territories Where Less Than 75 Per Cent Of Target Population Has Internet Access

In states and territories where less than 75 per cent of the target population has internet access (Alabama, Arkansas, Kentucky, Mississippi, South Carolina, Tennessee, U.S. Virgin Islands, Guam, Montana, South Dakota and West Virginia), plaintiffs propose to supplement the

---

[9] It is also unclear whether computer users will see the banner notices if their "cookies" are disabled. See Grudnowski Affidavit ¶ 25 (if browser accepting cookies, user eligible to receive frequency capped ad). Also, it appears that a single computer user who uses different browsers on the same computer, or more than one computer, e.g. at work and at home, would be counted as more than one class member viewing the banner ads. See id. ¶ 26 (possible for one user to view ad multiple times on different computers). Plaintiffs should supplement the record with evidence which clarifies these issues and explains what impact, if any, they may have on reach estimates.

banner ad notices with targeted newspaper and radio notices. Specifically, in these states and territories, plaintiffs plan to give digital notice, i.e. banner ads with 2.0 frequency within the Settlement Region and 1.0 frequency outside the Settlement Region. In addition, plaintiffs propose to publish notice in the top two most circulated newspapers in the state or territory and run radio ads in rural communities. See Combined Notice Plan (Doc. #4549) at 7; Dahl Supplemental Affidavit ¶¶ 14-15. The newspaper and radio notices would direct class members to internet web sites and possibly to telephone help line numbers.[10]

Plaintiffs maintain that the newspaper and radio notices would increase the reach of notice to class members in these states and territories to at least 75 per cent, but they provide no specific information regarding the expected reach of newspaper notice or radio notice. See id. Also, they do not state when or how often the newspaper and radio notices would be published. See id. For each state or territory in this category, plaintiffs should provide supplemental information on these issues, in addition to a breakdown of the percentage of people in the target population with internet access and the percentage of people of people in the target population the digital notice plan expects to reach.

### C. Content Of Proposed Notices

Pursuant to Rule 23(c)(2)(B), notice to the settlement and California class members must clearly and concisely state in plain, easily understood language (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting

---

[10] As discussed below, it is unclear whether the newspaper or radio notices would include the help line phone numbers.

exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). In addition, with regard to the settlement classes, the Court must direct reasonable notice which fairly apprises class members of the terms of the proposed settlements and their options with respect thereto. Fed. R. Civ. P. 23(e); Gottlieb, 11 F.3d at 1013 (quoting 3B Moore's Federal Practice ¶ 23.80[3], at 23-484).

As set forth below, the notices which plaintiffs propose do not meet the requirements of Rule 23. The deficiencies noted herein are not exhaustive. Plaintiffs need to meticulously review and revise the content of each notice to make sure that all proposed notices uniformly convey complete and accurate information to class members.

### 1. Web Banner Notice

The proposed web banner notice displays the seal of the Court, uses simple language to alert class members about the settlements and California cases and provides the viewer an option to (1) click on the notice to go directly to websites regarding the settlements or California cases or (2) manually type in the website addresses.[11] Combined Notice Plan (Doc. #4549) at 5; Replacement Exhibit 5 to Dahl Supplemental Affidavit. More specifically, the proposed banner notice is divided in half vertically. The left side deals with the settlements and states as follows: "If you purchased gasoline or diesel fuel at gas stations in certain states on or after January 1, 2001, class actions settlements may affect your rights." Replacement Exhibit 5. Underneath the statement is a place for class members to "click for more information." The web site address www.HotFuelSettlements.com is also listed. The right side of the notice deals with the California

---

[11] The Court previously expressed concern that due to fear of computer viruses, class members may not click on banner advertisements. See Memorandum And Order (Doc. #4489) filed January 10, 2013 at 4-5. Plaintiffs' revised plan provides an internet address which class members may manually type in to visit the web sites. This revision alleviates the Court's previous concern.

cases and states as follows: "If you purchased gasoline or diesel fuel at gas stations in California on or after January 1, 2007, class action lawsuits may affect your rights." Id. Underneath the statement is a place for class members to "click for more information." The web site address www.CaliforniaHotFuelLitigation.com is also listed.

As presently written, the proposed banner notice does not inform readers what states and territories are involved in the settlements. Morever, it does not inform California fuel purchasers that both sides of the notice, i.e. that both the settlements and the California cases, apply to them. Plaintiffs should revise the proposed web banner notice to include such information.

**2. Short-Form Notices For Newspaper Publication**

**a. Settlements**

The short-form notice for newspaper publication regarding the settlements is missing key information, including but not limited to the following:

1. The Sam's Club settlement does not require it to install automatic temperature conversion ("ATC") in all states.

2. The notice should mention the court in which the cases are pending, i.e. the MDL litigation in the District of Kansas, and the case number.

**b. California Cases**

The short-form notice for newspaper publication regarding the California cases is missing key information, including but not limited to the following:

1. The notice should inform class members where the cases are pending. As currently written, the notice provides three case numbers (which belong to the California courts) but does not mention what court they are in. The notice should include information regarding the MDL litigation in the District of Kansas.

2. The notice should explain the specific claims and defendants that are involved in each case.

3. In some places, the notice refers to a singular case, instead of multiple cases. See, e.g. Plaintiffs' Exhibit 3 at 2.

4. The section titled "Are You Affected" does not accurately describe the classes. The Court has certified multiple classes within each California case, not one class as to Chevron and one class as to all other companies. As written, it appears that plaintiffs contemplate giving class members two opt-out choices: one as to Chevron and one as to all other defendants. Because the pretrial orders have been conformed as to Chevron, it may make sense to allow one opt-out choice as to Chevron. As to the other defendants, however, class members should have a choice to opt out of each of the California cases.

5. The section titled "What Are Your Options" is inaccurate. Class members do not have a choice to be excluded from the class "in either or both of the California cases." There are three California cases.

### 3. Long-Form Notices

It is unclear where plaintiffs plan to publish the long-form notices. Plaintiffs state that the settlement and California web sites will include the long-form notices. See Combined Notice Plan (Doc. #4549) at 8. The proposed notices for the web sites are similar to the proposed long form notices, but they do not contain the section regarding summary of legal rights and options. See Exhibits 3, 4, 11 and 12 to Dahl Supplemental Affidavit. It is unclear why that section is omitted from the proposed web site notices.

#### a. Settlements

The long-form notice regarding the settlements is missing key information, including but not limited to the following:

1. For each settlement, the notice should distinguish which states are involved and identify the class representatives for each subclass.

2. The notice sometimes refers to settlement "class" and sometimes "classes." More than one settlement class is involved.

3. Under Question 5, "What Do The Settlements Do," a much higher level of

detail is needed for each settlement. For comparison purposes, plaintiffs should refer to the long-form notice which the Court approved regarding the Costco settlement.

  a. For example, with regard to the refiner settlements, the notice should (1) provide more specific information with regard to how the money will be divided among states and between stations and state regulators; (2) state that settlements do not allow funds to pay to stations to disclose temperature information;[12] (3) describe the time frame for fund distribution and what will happen to leftover funds; (4) provide information regarding funds to be used for class notice; and (5) distinguish that the CITGO settlement provides funds only to state regulators.

  b. For example, with regard to the Casey's, Dansk, Sam's Club and Valero settlements, the notice should provide more information regarding the terms of the settlements, including but not limited to length of time for installation, exceptions, non-conversion states (for Sam's Club settlement) and compliance reports.[13] Plaintiffs should refer to the long-form notice which the Court approved regarding the Costco settlement.

  **b.** **California Cases**

The long-form notice regarding the California cases is missing key information, including but not limited to the following:

1. The opening paragraphs do not identify the court where the cases are pending and case numbers for that court.

2. The notice refers to "both" cases when three cases are involved.

---

[12] Section 5 entitled "What Do The Settlements Do" states that the refiner defendants will set up a fund "to disclose information about the effects of temperature on motor fuel." Exhibit 3 to Dahl Supplemental Affidavit. The amended settlements, however, omitted that provision from the agreements. See, e.g., Memorandum And Order (Doc. #4464) filed November 20, 2012 at 9, 14, 18-19.

[13] As currently written, the notice incorrectly states that Valero will post the "actual" temperature of diesel fuel and regular unleaded gasoline at its stations. Exhibit 3 to Dahl Supplemental Affidavit, Section 5. The amended settlement, however, omits the temperature posting requirement. See In re Motor Fuel, 2012 WL 6115085, at *2-3.

3. The notice does not identify which cases are against which defendants.

4. The notice states that different judges will oversee the trials. That issue has not yet been determined.

5. Similar to the short-form notice for the California cases, supra, it is unclear whether plaintiffs contemplate separate opt-out options for each of the three cases and within each case, separate opt-out options for Chevron vis-a-vis the other defendants.

### 4. Web Sites

Plaintiffs plan to set up two web sites, one dedicated to the settlements and another dedicated to the California cases. See Combined Notice Plan (Doc. #4549) at 7-8; Exhibits 11 and 12 to Dahl Supplemental Affidavit. The web sites will have separate web addresses and contain links to each other. Plaintiffs state that the web sites will include long-form notices,[14] see Exhibits 3 and 4 to Dahl Supplemental Affidavit, and links to key documents and information regarding the settlements and California cases, see Combined Notice Plan (Doc. #4549) at 8. In addition, plaintiffs will employ "search engine optimization" strategies so that class members can find the web sites by searching for key terms like "hot fuel," "hot fuel settlement" or "California hot fuel litigation" in a web browser. See Combined Notice Plan (Doc. #4549) at 8; Dahl Supplemental Affidavit ¶ 17.

Plaintiffs state that "since many motor fuel purchasers will be a member of both Settlement and California Classes, each of the websites will contain a prominent statement alerting a visitor to the existence of the other hot fuel Notice website." Proposed Notice Plans (Doc. #4549) at 11. Plaintiffs further state that "[i]t will be much easier for class members to understand how the

---

[14] As noted, the proposed web sites do not include the summary of legal rights and options included in the proposed long-form notices. Otherwise, the information contained on the proposed web sites appears similar to the proposed long-form notices.

Settlements and the California cases fit together if they receive a single notice that provides access to information for both." Id. at 12. Contrary to plaintiffs' assertions, nothing in the proposed notices or web sites explains how the settlements and California cases fit together, or that motor fuel purchasers in California could be class members of both the California and settlement classes. Plaintiffs should revise the proposed web site notices to better explain these issues.

### 5. Other Notices (Radio, Press Release And Telephone Lines)

Plaintiffs also submit proposed notices for radio, press releases and telephone help lines. See Exhibits 6, 7, 8, 9 and 10 to Dahl Supplemental Affidavit. The Court has not reviewed the proposed notices in detail but notes that plaintiffs should incorporate the changes discussed above in these notices.

## IV. Conclusion

On this record, the proposed combined notice plan does not satisfy the requirements of Rule 23. On or before **June 12, 2013**, plaintiffs may file revised proposed notices and supplemental evidence which address the concerns outlined above. Before that date, plaintiffs shall confer with opposing counsel as to the form and content of the proposed notices, with an eye to submitting agreed notices if possible. If all parties are in agreement, plaintiffs' submission shall state that opposing counsel approve the proposed notices as to both form and content. If opposing counsel do not concur, any objections shall be filed no later than **June 17, 2013.**

**IT IS SO ORDERED.**

Dated this 29th day of May, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge