## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| (This Document Relates to All Cases) | ) | **Case No. 07-MD-1840-KHV** |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiffs seek the Court's approval of a combined notice plan regarding certain settlements and California cases.[1]  See Revised Notice Plan For Class Action Settlements (Doc. #4513) filed February 15, 2013; Proposed Notice Plans For Class Action Settlements And California Trial Classes ("Combined Notice Plan") (Doc. #4549) filed April 15, 2013.  On May 29, 2013, the Court ordered plaintiffs to file notices and supplemental evidence regarding the proposed plan. Memorandum And Order (Doc. #4583).  This matter comes before the Court on plaintiffs' Notice Of Submission Of Revised Notice Plans For Class Action Settlements And California Trial Cases ("Revised Submissions") (Doc. #4591) filed June 21, 2013, which the Court construes as a motion for order approving plaintiffs' revised notice plan.[2]  For reasons stated below, the Court orders plaintiffs to file additional information regarding the proposed plan.

### A.     Individual Notice

As discussed in the Court's previous order, Rule 23(c)(2)(B), Fed. R. Civ. P., requires that plaintiffs provide the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  See Memorandum And Order (Doc. #4583) at 4-5; Fed. R. Civ. P. 23(c)(2)(B); DeJulius v. New England Healthcare Empls.

_____

[1]     For facts regarding the settlements and California cases, see the Court's Memorandum And Order (Doc. #4583) filed May 29, 2013 at 1-3.

[2]     Defendants do not object to the revised submissions.

Pension Fund, 429 F.3d 935, 944 (10th Cir. 2005). Individual notice to identifiable class members is not a discretionary consideration that can be waived in a particular case; rather, it is "an unambiguous requirement of Rule 23." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974).

In its previous order, the Court found that plaintiffs did not show that they cannot identify class members through reasonable effort.[3] Memorandum And Order (Doc. #4583) at 6. The Court ordered plaintiffs to supplement the record with stipulations by the California and settling defendants – or other evidence if necessary – as to whether individual class members are reasonably ascertainable. Id. In their revised submissions, plaintiffs assert that because only a few defendants could attempt to generate any contact list – and because any list generated would be incomplete, restricted and reach only a small fraction of the potential class – publication notice is the "most effective approach." Revised Notice Plan (Doc. #4591) at 2-3. Although plaintiffs do not articulate it as such, they appear to be asserting that because contact information is not available for most class members, they are not required to give individual notice to any class members. Rule 23 requires otherwise; plaintiffs must give individual notice to any class members who can be identified through reasonable effort. See Eisen, 417 U.S. at 177. Thus, in addition to publication notice for class members who are not reasonably ascertainable, plaintiffs must give individual notice to any class members whom they can identify through reasonable effort. The Court therefore must determine whether plaintiffs can identify any class members through reasonable effort.

---

[3] What constitutes "reasonable effort" is a determination of fact to be made in the individual litigation. In re "Agent Orange" Prod. Liab. Litig., 100 F.R.D. 718, 729 (E.D.N.Y. 1983) (quoting In re Franklin Nat'l Bank Sec. Litig., 599 F.2d 1109, 1110-1111 (2d Cir.1978)); see also In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1098 n.11 (5th Cir. 1977); 7AA Charles A. Wright et al., Federal Practice & Procedure § 1786 (3d ed. 2013); Manual for Complex Litigation § 1.45 (1982).

### 1. Settlement Classes

The settlement classes arise out of ten settlements with the following defendants (1) Dansk Investment Group, Inc. (formerly known as USA Petroleum Corporation); (2) BP Products North America Inc. and BP West Coast Products LLC (collectively, "BP"); (3) CITGO Petroleum Company; (4) ConocoPhillips Company; (5) Motiva Enterprises LLC and Equilon Enterprises LLC d/b/a Shell Oil Products U.S. (collectively, "Shell"); (6) Sinclair Oil Corporation and its corporate affiliates (collectively, "Sinclair"); (7) Casey's General Stores, Inc.; (8) Sam's Club, Sam's East, Inc., Sam's West, Inc., Wal-Mart Stores, Inc. and Wal-Mart Stores East, LLP (collectively, "Sam's"); (9) Exxon Mobil Corporation, Esso Virgin Islands, Inc. and Mobil Oil Guam, Inc. (collectively, "ExxonMobil"); and (10) Valero Marketing and Supply Company and Valero Energy Corporation (collectively, "Valero").  See <u>Memorandum And Order</u> (Doc. #4583) at 1-2.

#### a. Dansk Settlement Class

The Dansk settlement class includes all persons who purchased motor fuel from Dansk in the State of California during the settlement period.  See <u>Memorandum And Order</u> (Doc. #4424) at 18.  Plaintiffs provide a declaration by a Dansk employee which states that Dansk does not collect, maintain or possess contact information of consumers who purchased fuel at its stations.  See <u>Declaration Of Travis C. Lane</u>, Exhibit 1C to <u>Revised Notice Plan</u> (Doc. #4591).  Based on this evidence, the Court finds that as to the Dansk settlement, plaintiffs cannot identify class members through reasonable effort.

#### b. BP Settlement Class

The BP settlement class includes all persons who, during the settlement

period, purchased motor fuel from any retail motor fuel station in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, North Carolina, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia and the District of Columbia.  <u>See</u> <u>Memorandum And Order</u> (Doc. #4424) at 6.  Plaintiffs provide a statement by BP's attorney which submits that BP does not collect, maintain or possess the names, addresses or contact information of consumers who purchased fuel.[4]  <u>See</u> <u>Statement Of Defendants BP Products North America, Inc. And BP West Coast Products LLC</u>, Exhibit 1G to <u>Revised Notice Plan</u> (Doc. #4591).  Based on this representation, the Court finds that as to the BP settlement, plaintiffs cannot identify class members through reasonable effort.

### c.    CITGO Settlement Class

The CITGO settlement class includes all persons who, during the settlement period, purchased motor fuel from any retail motor fuel station in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia and the District of Columbia.  <u>See</u> <u>Memorandum And Order</u> (Doc. #4424) at 9-10.  Plaintiffs provide a statement by CITGO's attorney which submits that CITGO does not collect, maintain or possess the names, addresses or contact information of

---

[4]    For BP and many defendants, plaintiffs submit attorney statements and/or attorney letters to support factual assertions regarding access to customer identity information.  The Court normally would not consider such information to be evidence, because the attorneys do not have personal knowledge of the issues and the business records do not belong to the attorneys.  In this case, however, the matters are not disputed.  The Court will therefore accept the attorney statements in the interest of reducing the cost and delay of litigation.

consumers who purchased fuel. See Statement Of Defendant CITGO Petroleum Corporation Exhibit 1D to Revised Notice Plan (Doc. #4591). Based on this representation, the Court finds that as to the CITGO settlement, plaintiffs cannot identify class members through reasonable effort.

### d. ConocoPhillips Settlement Class

The ConocoPhillips settlement class includes all persons who, during the settlement period, purchased motor fuel from any retail motor fuel station in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Guam and the District of Columbia. See Memorandum And Order (Doc. #4424) at 11. Plaintiffs provide a statement by ConocoPhillips' attorney which submits that ConocoPhillips does not collect, maintain or possess the names, addresses or contact information of consumers who purchased fuel. See Statement Of Defendant ConocoPhillips, Exhibit 1A to Revised Notice Plan (Doc. #4591). Based on this representation, the Court finds that as to the ConocoPhillips settlement, plaintiffs cannot identify class members through reasonable effort.

### e. Shell Settlement Class

The Shell settlement class includes all persons who, during the settlement period, purchased motor fuel from any retail motor fuel station Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia and the District of Columbia. See Memorandum And Order (Doc. #4424) at 14. Plaintiffs submit a statement by Shell's attorney

which provides as follows: During the class period, Shell did not keep contact information for every consumer who purchased motor fuel at Shell-branded stations. <u>Statement Of Defendants Shell Oil Products LLC And Motiva Enterprises, LLC,</u> Exhibit 1J to <u>Revised Notice Plan</u> (Doc. #4591). Shell has maintained a repository of some contact information for customers or potential customers who have registered for a Shell-branded credit card, a Shell rewards program or other sweepstakes or similar programs. <u>Id.</u> The fact that a person's contact information is in the repository does not mean that he or she purchased Shell-branded fuel. <u>Id.</u> Shell's use of the information is contractually limited to specific purposes and requires the consent of its credit card and reward program partners. <u>Id.</u> Also, privacy policies govern the credit card and reward card programs. <u>Id.</u> On this record, as to the Shell settlement, the Court cannot determine whether through reasonable effort plaintiffs could ascertain the identity of some class members, based on Shell's repository of contact information for customers or potential customers.

### f. Sinclair Settlement Class

The Sinclair settlement class includes all persons who, during the settlement period, purchased motor fuel from any retail motor fuel station in Arizona, Arkansas, Kansas, Mississippi, Missouri, Nevada, New Mexico, Oklahoma, Oregon, Texas and Utah. <u>See Memorandum And Order</u> (Doc. #4424) at 15. Plaintiffs provide a statement from Sinclair's attorney which states as follows: Sinclair does not typically keep contact information of retail customers. <u>See Statement Of Defendant Sinclair Oil Corporation</u>, Exhibit 1F to <u>Revised Notice Plan</u> (Doc. #4591). Sinclair has "some information on the names of a very small portion of individuals who have applied for and/or received a Sinclair Oil Corporation payment card." <u>Id.</u> at 1. The information is over-inclusive because not everyone who possesses a Sinclair payment card has used it to purchase fuel

-6-

in the states at issue during the class time period.  Id.  Based on these representations, however, it appears that through reasonable effort plaintiffs could ascertain the identity of some Sinclair settlement class members, i.e. those who have applied for and/or received a Sinclair Oil Corporation payment card.

### g.    Casey's Settlement Class

The Casey's settlement class includes all persons who, during the settlement period, purchased motor fuel from Casey's in Arkansas, Indiana, Kansas, Missouri and Oklahoma. See Memorandum And Order (Doc. #4424) at 16.  Plaintiffs provide a statement by Casey's attorney which states as follows: Casey's does not have information available to identify individual motor fuel purchasers.  Statement Of Defendant Casey's General Stores, Inc., Exhibit 1I to Revised Notice Plan (Doc. #4591).  Casey's has a reward card program which is administered through proprietary credit cards issued by a specific bank (formerly MasterCard, now Visa).  The only information which is available to Casey's is the amount spent on a card once the reward level is reach.  Id. at 1. Casey's cannot tell whether the credit card holder has ever purchased fuel from Casey's.  Based on these representations, the Court finds that as to the Casey's settlement, plaintiffs cannot identify class members through reasonable effort.

### h.    Sam's Settlement Class

The Sam's settlement class includes all persons who, during the settlement period, purchased motor fuel from Sam's in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Utah and Virginia.  See Memorandum And Order (Doc. #4424) at 19-20.  Plaintiffs provide

a statement by Sam's attorney which states as follows: The Sam's settlement covers motor fuel sales

at Sam's Club and Wal-Mart stores. <u>Statement Of Defendant[s] Sam's East, Inc., Sam's West, Inc.,</u>

<u>Wal-Mart Stores, Inc., And Wal-Mart Stores East L.P.</u> at 1-2, Exhibit 1H to <u>Revised Notice Plan</u>

(Doc. #4591). Wal-Mart stores sell motor fuel to the public and do not have a list of purchasers.

<u>Id.</u> Sam's Club stores generally sell only to club members, but some Sam's Club stores also sell

motor fuel to the general public and do not have a list of those purchasers. <u>Id.</u> Sam's maintains a

list of its club members, but providing notice to the entire list would be over-inclusive to the extent

it includes members who did not buy motor fuel during the settlement period. <u>Id.</u> at 1. Sam's does

not state whether it can generate a list of club members who bought motor fuel during the settlement

period. On this record, the Court cannot determine whether through reasonable effort plaintiffs

could ascertain the identity of some Sam's settlement class members, <u>i.e.</u> Sam's Club members who

purchased fuel during the settlement period.

### i.    ExxonMobil Settlement Class

The ExxonMobil settlement class includes all persons who, during the

settlement period, purchased motor fuel from any retail motor fuel station in Alabama, Arizona,

Arkansas, California, Delaware, Florida, Georgia, Indiana, Kentucky, Louisiana, Maryland,

Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Oregon,

Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Guam, the Virgin Islands and the

District of Columbia. <u>See</u> <u>Memorandum And Order</u> (Doc. #4424) at 12. Plaintiffs provide a

statement by ExxonMobil' attorney which submits that ExxonMobil does not collect, maintain or

possess the names, addresses or contact information of consumers who purchased fuel. <u>See</u>

<u>Statement Of Defendants Exxon Mobil Corporation, Esso Virgin Islands, Inc. And Mobil Oil Guam,</u>

<u>Inc.</u>, Exhibit 1B to <u>Revised Notice Plan</u> (Doc. #4591). Based on this representation, the Court finds that as to the ExxonMobil settlement, plaintiffs cannot identify class members through reasonable effort.

### j.    Valero Settlement Class

The Valero settlement class includes all persons who, during the settlement period, purchased motor fuel from Valero in Alabama, Arizona, Arkansas, California, Delaware, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas and Virginia. <u>See</u> <u>Memorandum And Order</u> (Doc. #4424) at 22. Plaintiffs provide a statement by Valero's attorney which states as follows: Any personal information which Valero may have regarding class members is in the context of a consumer credit card. <u>See</u> <u>Statement Of Valero Marketing Supply Company</u>, Exhibit 1E to <u>Revised Notice Plan</u> (Doc. #4591). The information is "private and proprietary, and access to it is highly restricted, if not prohibited, in most circumstances." <u>Id.</u> at 1. The credit card information would be over-inclusive because not everyone who owns a Valero credit card uses it to purchase fuel. <u>Id.</u> Based on these representations, as to the Valero settlement, the Court cannot determine whether plaintiffs can identify some class members through reasonable effort, <u>i.e.</u> those class members who own a Valero credit card.

### 2.    California Classes

In three California cases, the Court has certified classes which include all consumers (or individuals and entities) that at any time during the class period, purchased motor fuel at retail in the State of California from a gas station owned, operated or controlled by defendants. <u>See</u> <u>Memorandum And Order</u> (Doc. #4583) at 2-3. The California defendants include (1) Chevron

U.S.A.; (2) Circle K Stores, Inc.; (3) Pilot Travel Centers LLC, Inc. and Flying J, Inc. (collectively, "Pilot Flying J"); (4) TravelCenters of America, LLC and Petro Stopping Centers, L.P. (collectively, "Travel Centers"); (5) G&M Oil Company, Inc. and G&M Oil Co. LLC (collectively, "G&M"); (6) United El Segundo, Inc.; (7) World Oil Corporation; and (8) 7-Eleven, Inc.

### a. Chevron

As to class claims against Chevron, the parties stipulate as follows: For the vast majority of motor fuel purchasers, Chevron does not possess or have access to customer identification information. See letter attached to Statement Of Defendant Chevron U.S.A., Inc., Exhibit 2C to Revised Notice Plan (Doc. #4591). A small number of customers have Chevron-branded credit cards which are issued by third parties. Id. These customers fall into two categories: (1) consumer accounts and (2) commercial accounts. Id. For consumer accounts, Chevron has access to a relatively small revolving window of the most recent account information and transactional data. Id. To the extent older data exists, it must be obtained from a third-party credit card vendor. Id. It is unclear how difficult it would be to obtain such information. Id. For commercial accounts, Chevron has certain account information and transactional data going back to 2008. The information is proprietary and may not be current. Id. To the extent updated information is available, it must be obtained from a third-party credit card vendor. Id. It is unclear how difficult it would be to obtain such information. Id. On this record, as to claims against Chevron, the Court cannot determine whether through reasonable effort plaintiffs could ascertain the identity of some class members, i.e. customers who purchased fuel with Chevron-branded credit cards.

### b. Circle K

As to class claims against Circle K, plaintiffs submit a letter from counsel which states that Circle K does not have contact information for California customers. <u>See</u> letter from Tammy B. Webb dated June 17, 2013, Exhibit 2E to <u>Revised Notice Plan</u> (Doc. #4591). Based on this representation, the Court finds that as to claims against Circle K, plaintiffs cannot identify class members through reasonable effort.

### c. Pilot Flying J

As to class claims against Pilot Flying J, plaintiffs submit a letter from counsel which states as follows: Pilot Flying J does not generally maintain customer contact information, but it maintains some customer contact information for its fleet card and loyalty card programs. <u>See</u> letter from Tammy B. Webb dated June 17, 2013, Exhibit 2E to <u>Revised Notice Plan</u> (Doc. #4591). A reasonable estimate of the number of accounts with California addresses is in the hundreds, not thousands, and account holders with California addresses are not necessarily class members. <u>Id.</u> At this time, Pilot Flying J does not know how feasible it would be to identify class members from fleet or loyalty program data. <u>Id.</u> Pilot Flying J considers the data to be highly guarded trade secrets which must not be disclosed to competitors or third parties. <u>Id.</u> On this record, as to claims against Pilot Flying J, the Court cannot determine whether through reasonable effort plaintiffs could ascertain the identity of some class members, <u>i.e.</u> those that maintain fleet card and loyalty card accounts.

### d. Travel Centers

As to class claims against TravelCenters, the parties stipulate as follows: TravelCenters does not have contact information for customers who purchased gasoline. <u>See</u> letter

attached to <u>Statement Of Defendants TravelCenters Of America LLC And Petro Stopping Centers,</u>

<u>L.P.</u>, Exhibit 2D to <u>Revised Notice Plan</u> (Doc. #4591).  For customers who purchased diesel fuel,

TravelCenters does not have a list of customers, but it maintains highly confidential and proprietary

customer information resulting from its exclusive rewards program and "relationship accounts," <u>i.e.</u>

customers who purchase diesel fuel pursuant to negotiated agreements.  <u>Id.</u>  Regarding the rewards

program, TravelCenters has member names and addresses and believes that it could attempt to

construct a list of members who swiped their rewards cards in connection with motor fuels sales in

California.  <u>Id.</u>  The information, however, is not available for all stations during the entire class

period.  <u>Id.</u>  Regarding relationship accounts, TravelCenters maintains contact information for most

trucking companies which fall into this category.[5]  <u>Id.</u>  TravelCenters does not have an existing list

of relationship account customers who purchased diesel fuel in California during the relevant time

frame; it believes that it would be possible – but burdensome – to generate an imperfect list of these

customers based on computer data.  <u>Id.</u>  Based on these representations, as to claims against

TravelCenters, the Court finds that through reasonable effort plaintiffs cannot ascertain the identity

class members who purchased gasoline.  It appears, however, that through reasonable effort

plaintiffs can ascertain the identity of class members who purchased diesel fuel through the rewards

program and class members who purchased diesel fuel under a relationship account.

    **e.**  **G&M**

    As to class claims against G&M, plaintiffs submit a statement by G&M's

attorney which states that G&M does not collect, maintain or possess the names or contact

---

   [5]  The parties dispute whether relationship customers are class members because they do not purchase fuel at the posted retail price.  The parties have not shown that the parties' disagreement obviates any need to provide relationship customers notice of the class action.

information of consumers who purchased fuel at their stations. <u>See</u> <u>Statement Of Defendants G&M</u>
<u>Oil Company, Inc. And G&M Oil Co., LLC</u>, Exhibit 2F to <u>Revised Notice Plan</u> (Doc. #4591).
Based on this representation, as to claims against G&M, the Court finds that plaintiffs cannot
identify class members through reasonable effort.

### f. United El Segundo

As to class claims against United El Segundo, plaintiffs submit a statement
by United El Segundo's attorney which states that United El Segundo does not collect, maintain or
possess the names or contact information of consumers who purchased fuel at their stations. <u>See</u>
<u>Statement Of Defendant United El Segundo, Inc.</u>, Exhibit 2A to <u>Revised Notice Plan</u> (Doc. #4591).
Based on this representation, as to claims against United El Segundo, the Court finds that plaintiffs
cannot identify class members through reasonable effort.

### g. World Oil

As to class claims against World Oil, plaintiffs submit a statement by United
World Oil's attorney which states that World Oil does not collect, maintain or possess the names
or contact information of consumers who purchased fuel at their stations. <u>See</u> <u>Statement Of</u>
<u>Defendant World Oil Corp.</u>, Exhibit 2B to <u>Revised Notice Plan</u> (Doc. #4591). Based on this
representation, as to claims against World Oil, the Court finds that plaintiffs cannot identify class
members through reasonable effort.

### h. 7-Eleven

As to class claims against 7-Eleven, plaintiffs submit a letter from 7-Eleven's
counsel which states as follows: 7-Eleven does not maintain customer contact information. <u>See</u>
letter from Tammy B. Webb dated June 17, 2013, Exhibit 2E to <u>Revised Notice Plan</u> (Doc. #4591).

It accepts payments through a fleet card maintained by a separate company, Wright Express. Id. Data obtained from Wright Express indicates that fewer than 200 of these fleet card customer accounts have a California address. Id. At this time, 7-Eleven does not know how feasible it would be to identify class members from fleet or loyalty program data. Id. 7-Eleven considers the data to be highly guarded trade secrets which must not be disclosed to competitors or third parties. Id. On this record, as to claims against 7-Eleven, the Court cannot determine whether through reasonable effort plaintiffs could ascertain the identity of some class members, i.e. those that maintain fleet card accounts.

**B.      Publication Plan**

In its previous order, the Court asked plaintiffs to clarify certain issues and provide supplemental information regarding their proposed publication plan.[6]  Summarized below are the Court's requests and plaintiffs' responses thereto.

**1.      Alaska And Hawaii**

The Court asked plaintiffs to clarify whether the notice plan includes Alaska and Hawaii. See id. at 7 n.6. Plaintiffs respond in the affirmative. See Revised Submissions (Doc. #4591) at 4.

**2.      Internet Access**

The Court noted that plaintiffs did not provide information regarding the specific percentage of internet access in a given state, and questioned whether plaintiffs maintain that the banner ads will reach every member of the target population who has internet access in the state. See Memorandum And Order (Doc. #4583) at 8-9. The Court asked plaintiffs to provide

---

[6]      For a detailed description of the proposed publication plan, see the Court's Memorandum And Order (Doc. #4583) at 7-11.

supplemental information regarding the specific estimated reach of digital notice in each state, including a breakdown of the percentage of people in the target population with internet access and the percentage of people in the target population that the digital notice plan expects to reach.

Plaintiffs respond with information regarding the specific percentage of people with internet access in each state or territory. See Exhibit 14 to <u>Supplemental Affidavit Of Jeffrey D. Dahl Regarding The Notice Plans For Class Action Settlements And California Trial Classes</u> ("<u>Supplemental Dahl Affidavit</u>"), Exhibit 3 to <u>Revised Submissions</u> (Doc. #4591). Plaintiffs contend that the digital notice will reach 94.6 per cent of all persons 16 years and older who have internet access in a particular state. <u>Revised Submissions</u> (Doc. #4591) at 4; <u>Supplemental Dahl Affidavit</u> ¶ 9. More specifically, Exhibit 14 to the <u>Supplemental Dahl Affidavit</u> shows the estimated reach of digital notice in each state, including a breakdown of the percentage of people in the target population with internet access and the percentage of people in the target population which the digital notice plan expects to reach.

### 3.    Disabled Cookies

The Court questioned whether computer users who have their "cookies" disabled would see the banner ad. See <u>Memorandum And Order</u> (Doc. #4583) at 9 n.9. Plaintiffs respond with expert evidence that with regard to plaintiffs' reach and frequency estimates, any effect of persons who disable third-party cookies would be minimal. <u>Revised Submissions</u> (Doc. #4591) at 4-5; <u>Supplemental Affidavit Of John Grudnowski Regarding The Notice Plans For Class Action Settlements And California Trial Classes</u> ("<u>Supplemental Grudnowski Affidavit</u>") ¶¶ 9-11, Exhibit 4 to <u>Revised Submissions</u> (Doc. #4591).

### 4.    Multiple Browsers

The Court questioned whether the notice plan would double count a single computer user who utilizes different browsers on the same computer, or more than one computer, <u>e.g.</u> at work and at home.  <u>See</u> <u>Memorandum And Order</u> (Doc. #4583) at 9 n.9.  Plaintiffs respond with expert evidence that any such instances would minimally affect plaintiffs' reach and frequency estimates. <u>Revised Submissions</u> (Doc. #4591) at 5; <u>Supplemental Grudnowski Affidavit</u> ¶¶ 12-13.

### 5.    Newspaper And Radio Reach

The Court noted that plaintiffs provided no information regarding the expected reach of newspaper notice or radio notice, or when or how often they would be published.  <u>See</u> <u>Memorandum And Order</u> (Doc. #4583) at 10.  The Court asked plaintiffs to provide supplemental information on these issues.  <u>Id.</u>  Plaintiffs respond with three exhibits, which their expert describes as follows:

> Exhibit 15 contains the estimated number of online, newspaper, and radio impressions for each State that are required to reach 75% of individuals age 16 and older with a frequency of 2.0 in each of the Settlement States and 1.0 in the Non-Settlement States.  Exhibit 16 lists the circulation and readership of each of the newspapers in which we will publish the Summary Notices, categorized by State. Exhibit 17 lists the number of radio listeners by State.

<u>Supplemental Dahl Affidavit</u> ¶ 10; <u>see also</u> <u>Revised Submissions</u> (Doc. #4591) at 5.  Plaintiffs provide no further explanation on these issues.

The information which plaintiffs submit does not fully respond to the Court's requests.  More specifically, it does not state when or how often newspaper and radio notices would be published. Also, it does not specify the expected effect of newspaper and radio notices on reach calculations in each state, and whether plaintiffs' plan accounts for overlap, <u>i.e.</u> the possibility that class members would be exposed to more than one type of notice.  Exhibit 15 purports to show "estimated

-16-

impressions by type and estimated reach percentage by state." Exhibit 15 to Supplemental Dahl Affidavit. For each state or territory, it lists columns for the estimated number of online, newspaper and radio impressions required to attain the estimated reach. Id. For every state or territory, it displays an estimated reach of "75% +." It is unclear why the exhibit does not give more precise estimates for each state or territory.[7]

Also, it appears that plaintiffs' current plan to supplement digital notice with newspaper and radio notice is not what they have previously represented to the Court. In their last motion, plaintiffs stated that with respect to states in which digital notice will reach less than 75 per cent of the population, they planned to supplement digital notice with newspaper and radio notice. See Combined Notice Plan (Doc. #4549) at 7; Supplemental Affidavit Of Jeffrey D. Dahl With Respect To The Proposed Notice Plans For Class Action Settlements And California Trial Classes ("Dahl Affidavit") ¶¶ 14-15. Specifically, plaintiffs stated that in those states or territories, they would publish summary notices in the top two circulation newspapers and run radio ads on stations that served populations that may have lower rates of internet access, such as rural communities. Id. Exhibit 15 to the Supplemental Dahl Affidavit suggests that this is not the exact plan. Exhibit 15 indicates that in some states, i.e. Delaware, Indiana, Louisiana, Missouri, New Mexico, North Carolina, Oklahoma, Pennsylvania, Colorado, Illinois, Iowa, Michigan, Ohio, Virginia and

---

[7]     Exhibit 14 shows precise estimates for the expected reach of digital notice in each state. Exhibit 14 to Supplemental Dahl Affidavit. For example, as to Oregon and Utah, Exhibit 14 shows an expected reach of 81.8 per cent and 85.4 per cent, respectively. Id. Exhibit 15, however, provides the same reach estimate – "75%+" – for notice in Oregon and Utah. Exhibit 15 to Supplemental Dahl Affidavit. It is unclear whether plaintiffs intend to reach the maximum number of class members in Oregon and Utah, i.e. 81.8 per cent and 85.4 per cent, respectively, or whether they intend to stop publishing digital notice as soon as they have reached 75 per cent of class members in those states. The Court was under the impression, perhaps mistakenly, that plaintiffs planned to reach as many class members as possible in each state or territory, with a minimum threshold of 75 per cent.

Wyoming, plaintiffs plan to supplement digital notice with newspaper notice only – not radio notice. Id. Moreover, it appears that plaintiffs do not intend to publish in the two top circulation newspapers in each state or territory. Exhibit 16 to the Supplemental Dahl Affidavit lists the newspapers in which plaintiffs plan to publish summary notices. For many states, i.e. Alabama, Arkansas, Delaware, Kentucky, Missouri, North Carolina, Oklahoma, Pennsylvania, Virgin Islands, Guam, Colorado, Illinois, Iowa, Michigan, Montana, Ohio, South Dakota, Virginia and Wyoming, the exhibit lists only one newspaper.[8] See Exhibit 16 to Supplemental Dahl Affidavit. For two territories – the Virgin Islands and Guam – it appears that plaintiffs do not intend to give any digital notice. See id. For the Virgin Islands, Exhibit 16 lists only newspaper and radio notice. See id. For Guam, it lists only radio notice. See id. On this record, plaintiffs have not provided sufficient details regarding the proposed publication plan or its estimated reach.

## C.    Content Of Proposed Notices

In its previous order, the Court noted certain deficiencies in the proposed notices and instructed plaintiffs to meticulously review and revise the content of each notice to make sure that all proposed notices uniformly convey complete and accurate information to class members. See Memorandum And Order (Doc. #4583) at 11-16. Plaintiffs have submitted revised proposed notices which they contend respond to the points raised in the Court's order. See Revised Submissions (Doc. #4591) at 5-8. Based on these representations, and the Court's review of the revised proposed notices, the Court finds that with one exception, the proposed notices meet the requirements of Rule 23.

The one exception is the proposed radio notice, which states as follows:

---

[8]    For two states, i.e. Indiana and Louisiana, the exhibit lists more than two newspapers. See Exhibit 16 to Supplemental Dahl Affidavit.

If you purchased gasoline or diesel fuel at gas stations in certain states between January 1st, 2001 and {End Date}, certain class action cases and settlements may affect your rights.

For detailed information, including the list of states, visit www dot Hot Fuel Settlements dot com or call 1-800-HOT-FUEL.

A Court has authorized this notice. This is not a solicitation from a lawyer.

Visit www dot Hot Fuel Settlements dot com or call 1-800-HOT-FUEL.

[Time: 30 seconds]

Exhibit 12 to Supplemental Dahl Affidavit.

Similar to the digital banner notice which plaintiffs previously proposed, see Memorandum And Order (Doc. #4583) at 11-12, the proposed radio notice does not inform listeners what states and territories are involved in the cases and settlements. Plaintiffs should revise the proposed radio notice to include such information.[9]

### D.     Conclusion

In addition to publication notice, plaintiffs must give individual notice to any class members whom they can identify through reasonable effort. See Eisen, 417 U.S. at 177. On this record, it appears that through reasonable effort plaintiffs can ascertain the identity of some class members based on the following sources of information: (1) those who have applied for and/or received a Sinclair Oil Corporation payment card; and (2) those who purchased diesel fuel from TravelCenters through its rewards program or under a relationship account. In addition, it appears that through reasonable effort plaintiffs may be able to ascertain the identity of some class members based on the following sources of information: (1) Shell's repository of contact information; (2) Sam's club

---

[9]     It may be appropriate to include specific states near the particular radio station which is broadcasting the ad and indicate that "other states" are also involved.

members who purchased fuel during the settlement period; (3) Valero credit card holders; (4) holders of Chevron-branded credit cards; (5) holders of Pilot Flying J fleet cards and loyalty accounts; and (6) holders of 7-Eleven fleet cards and loyalty accounts.[10]  With respect to each source, plaintiffs must either (1) amend their plan to provide individual notice to those who fall in the category; or (2) demonstrate that they cannot reasonably ascertain class members based on the source.

Regarding the proposed publication plan, plaintiffs have not provided sufficient details as to the proposed plan and its estimated reach.  For states and territories where plaintiffs propose exclusively digital notice, it is unclear whether plaintiffs intend for the plan to meet the reach estimates set forth in Exhibit 14 to the Supplemental Dahl Affidavit.  For states and territories where plaintiffs propose combined notice, the information which plaintiffs provide is not consistent with information which they previously submitted.  The new submissions do not show a plan to publish notice in the two most circulated newspapers in each state or territory and to broadcast radio notice in rural communities in each state or territory.  Also, plaintiffs have not stated when or how often the newspaper and radio notices would be published.  In addition, for each state or territory where plaintiffs propose combined notice, plaintiffs do not specify the estimated reach for each type of notice, i.e. digital, newspaper and radio.  Also, for each such state or territory, plaintiffs do not

---

[10]  The fact that some of these sources may contain names of non-class members does not in itself negate plaintiffs' obligation to provide individual notice.  The relevant inquiry is reasonableness, i.e. a function of anticipated results, costs and amount involved.  See Nissan Motor Corp., 552 F.2d at 1099.  Where the database is logically connected to class members and the vast majority of names contained in the database are likely class members, it appears that individual notice to all names contained in the database would be appropriate.  Cf. DeHoyos v. Allstate Corp., 240 F.R.D. 269, 296 (W.D. Tex. 2007) (rejecting individual notice where far fewer of persons on list were members of class); Carlough v. Amchem Prods., Inc., 158 F.R.D. 314, 328 (E.D. Pa. 1993) (same).

specify the estimated reach for combined notice, taking into account any overlap for any class members who may be exposed to multiple types of notice. Plaintiffs must supplement the record to clarify these issues.

Finally, the proposed radio notice does not inform listeners which states and territories are involved in the cases and settlements. Plaintiffs must revise the proposed radio notice to include such information.

On this record, the Court finds that the proposed notice plan does not meet the requirements of Rule 23. On or before **July 26, 2013,** plaintiffs may file supplemental information, as outlined above.

The time, energy and expense involved in addressing plaintiffs' proposed notice plan has perhaps become as frustrating to the parties as it is to the Court. This aspect of the litigation needs to end. The Court therefore intends to dramatically escalate any further deadlines for briefing.

**IT IS SO ORDERED.**

Dated this 19th day of July, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge