**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

IN RE: MOTOR FUEL TEMPERATURE )
SALES PRACTICES LITIGATION )
) MDL No. 1840
(This Document Relates to All Cases) ) Case No. 07-MD-1840-KHV
_____)

**MEMORANDUM AND ORDER**

On July 19, 2013, the Court ordered plaintiffs to file supplemental information as to their proposed notice plan regarding certain settlements.[1]  See Memorandum And Order (Doc. #4599). On July 26, 2013, plaintiffs filed supplemental information, see Plaintiffs' Notice Of Further Submissions Of Information In Support Of Motion For Approval Of Revised Settlement Notice Plan ("Plaintiffs' Further Submissions") (Doc. #4606), which they supplemented on August 21, 2013, see Supplement To Plaintiffs' Notice Of Further Submission Of Information In Support Of [Their] Motion For Approval Of Revised Settlement Notice Plan ("Supplement To Plaintiffs' Further Submissions") (Doc. #4623).  For reasons stated below, the Court approves plaintiffs' proposed notice plan, as modified.

**I.  Whether Plaintiffs Can Identify Some Settlement Class Members Through Reasonable Effort**

In its previous order, the Court found that under Rule 23, Fed. R. Civ. P., plaintiffs must give individual notice to any class members who can be identified through reasonable effort.

---

[1] Plaintiffs proposed a combined notice plan which included claims against non-settling defendants in three California cases along with the settlement claims.  See Memorandum And Order (Doc. #4599).  In the California cases, the Court entered summary judgment in favor of the non-settling defendants.  See Memorandum And Order (Doc. #4600) filed July 19, 2013; Memorandum And Order (Doc. #4616) filed August 14, 2013.  In light of that ruling, the Court found that plaintiffs need not provide notice regarding the non-settlement claims in the California cases.  Memorandum And Order (Doc. #4616) at 3-10.  Accordingly, the Court considers plaintiffs' supplemental information regarding notice of the settlement claims only.

Memorandum And Order (Doc. #4599) at 23. The Court found that as to some settlements, i.e. the settlements with Shell, Sinclair, Sam's Club and Valero, it needed more information to determine whether plaintiffs can identify some class members with reasonable effort.

### A.    Shell Settlement

As to the Shell settlement, the Court found that it needed additional information to determine whether plaintiffs could ascertain the identity of some class members based on Shell's repository of contact information for customers or potential customers who have registered for a Shell-branded credit card, a Shell rewards program or other sweepstakes or similar programs. See id. at 5-6. Plaintiffs respond with an affidavit from Shell counsel which states as follows: Excentus Corporation operates a fuel rewards network program in which Shell participates. In addition, Citibank N.A. is party to an agreement governing the issuance of Shell co-branded credit cards. Supplemental Declaration Of David M. Harris ¶¶ 2-3, Exhibit B to Supplement To Plaintiffs' Further Submissions (Doc. #4623). Based on multiple state and federal privacy laws, Excentus and Citibank will not consent to the use of program participants' name and contact information to provide individualized notice to class members. Id. Based on these submissions, the Court finds that as to the Shell settlement, plaintiffs cannot identify individual class members through reasonable effort.

### B.    Sinclair Settlement

As to the Sinclair settlement, the Court found that it appeared that through reasonable effort, plaintiffs could ascertain the identity of some Sinclair settlement class members, i.e. those who have applied for and/or received a Sinclair Oil Corporation payment card. See id. at 6-7. Plaintiffs respond with an affidavit from Sinclair counsel which states as follows: Sinclair-branded fuel is sold

-2-

at retail in 22 states, 11 of which are settlement states, i.e. Arizona, Arkansas, Kansas, Mississippi, Missouri, Nevada, New Mexico, Oklahoma, Oregon, Texas and Utah. Supplemental Affidavit Regarding Sinclair Payment Cards ¶ 2, Exhibit A to Supplement To Plaintiffs' Further Submissions (Doc. #4623). The following types of Sinclair-branded payment cards are accepted at retail stations which sell Sinclair-branded fuel: (1) Sinclair charge cards, i.e. "Sinclair Green" cards; (2) Sinclair Platinum Edition Visa cards; (3) Sinclair Advantage debit cards; (4) Sinclair gift cards; and (5) Fleet Fueling cards. Id. ¶ 4. Third parties administer the Visa, Advantage and Fleet cards. Sinclair does not believe that the third parties would voluntarily disclose customer lists for these cards. Id. ¶¶ 10-13. Sinclair administers the Sinclair Green cards and Sinclair gift cards. Id. ¶ 5. Purchases made with these cards account for less than 2.12 per cent of Sinclair-branded retail fuel sales. Id. ¶ 16. Of 149,402 Sinclair Green Card accounts, approximately half were issued to accounts with contact information in the settlement states. Id. ¶ 7. Notice to these cardholders would include a substantial number of persons who did not purchase Sinclair-branded fuel in the settlement states. Id. ¶¶ 9, 18-19. Federal and state laws and Sinclair policies may restrict Sinclair from voluntarily disclosing credit card customer lists. Id. ¶¶ 20-23. Also, Sinclair's internal policy, prohibits it from including unsolicited information in communications to Green Card account holders. Based on these submissions, the Court finds that as to the Sinclair settlement, plaintiffs cannot identify individual class members through reasonable effort.

 **C. Sam's Club Settlement**

As to the Sam's Club settlement, the Court found that it needed additional information to determine whether plaintiffs could ascertain the identity of some Sam's Club settlement class members, i.e. Sam's Club members who purchased fuel during the settlement period. Plaintiffs

respond with a statement by Sam's Club counsel which states as follows: Sam's Club estimates that more than ten million individuals may have used their Sam's Club card or membership card to purchase fuel during the settlement period. Sam's Club has never undertaken an effort to identify individual purchasers on this scale. Further Statement Of Defendants Sam's East, Inc., Sam's West, Inc., Wal-Mart Stores, Inc., And Wal-Mart Stores East, L.P. Regarding Plaintiffs' Proposed Notice Plan ¶ 7, Exhibit E to Plaintiffs' Further Submissions (Doc. #4606). In order to determine whether and to what extent it can ascertain purchaser contact information, Sam's Club would need to engage in a series of steps including the following: From two different data systems based on two different time periods, pull all transactional data for the settlement period and cull out fuel purchases from other types of purchases. Id. ¶ 1. For each data source, draft queries, run the searches across servers, isolate fuel transactions and de-duplicate the information for the time period. Id. ¶¶ 2-4. Sam's Club cannot estimate the entire time that it would take to complete all of the steps; it estimates, however, that it would take at least 63 individual work hours and three to four weeks of full system time to complete some of the steps. Id. ¶¶ 3-6. Sam's Club estimates that it could take as much as 60 to 90 days to complete the entire process. Based on these submissions, the Court finds that as to the Sam's Club settlement, plaintiffs cannot identify individual class members through reasonable effort.

### D. Valero Settlement

As to the Valero settlement, the Court found that it needed additional information to determine whether through reasonable effort, plaintiffs could identify some class members, i.e. those class members who own Valero credit cards. In response, plaintiffs provide a declaration by Valero counsel which states that a separate entity, DSRM National Bank, owns and issues Valero credit

cards and that based on a strict privacy policy governed by federal law, DSRM objects to sharing cardholders' personal information. See Declaration Of Erika M. Anderson ¶¶ 13-16, Exhibit G to Plaintiffs' Further Submissions (Doc. #4606). Based on this submission, the Court finds that as to the Valero settlement, plaintiffs cannot identify individual class members through reasonable effort.

## II. Newspaper And Radio Reach

In its previous order, the Court found that plaintiffs did not provide sufficient detail regarding the proposed plan and its estimated reach. More specifically, plaintiffs did not state (1) when or how often they would publish newspaper and radio notices; (2) the estimated reach in each state or territory for each type of notice, i.e. digital, newspaper and radio; and (3) the estimated reach in each state or territory for combined notice, taking into account any overlap for class members who may be exposed to multiple types of notice. See Memorandum And Order (Doc. #4599) at 16. In addition, for states and territories where plaintiffs propose exclusively digital notice, the Court found it unclear whether plaintiffs intend to meet the reach estimates set forth in Exhibit 14 to the Supplemental Dahl Affidavit. See id. at 17 n.7. Also, for states and territories where plaintiffs propose combined notice, plaintiffs provided information which was inconsistent with their previous submissions. Id. at 17-18. Specifically, the new submissions did not show a plan to publish notice in the two most circulated newspapers in each state or territory and to broadcast radio notice in rural communities in each state or territory. Id. The Court ordered plaintiffs to supplement the record to clarify these issues. Id. at 21.

Plaintiffs' respond as follows: Plaintiffs will use digital notice to reach 94.6 per cent of each state or territory's total population with internet access. See Plaintiffs' Further Submissions (Doc. #4606). In states or territories where expected digital reach falls below 75 per cent of the

settlement classes, plaintiffs will supplement digital notice with newspaper and radio notice to increase reach to a minimum of 75 per cent. Id. at 7. In those states and territories, plaintiffs initially will place one ad in the two largest circulation newspapers in each state or territory. Id. at 7. In states or territories where the combined reach of digital and newspaper notice does not meet or exceed 75 per cent, plaintiffs will add 30-second radio notice spots. Id. at 7. Specific estimates of the expected reach of each type of notice in each state or territory, including gross reach and net reach, i.e. accounting for overlap, are set forth on Exhibit 1 to the Second Supplemental Affidavit Of Jeffrey D. Dahl Regarding The Notice Plans For Class Action Settlements ("Dahl Second Supplemental Affidavit"), Exhibit A to Plaintiffs' Further Submissions (Doc. #4606). Plaintiffs will be able to measure the progress and success of the digital program and will increase the number of newspaper and radio notices to reach at least 75 per cent of the settlement classes in each state or territory. Plaintiffs' Further Submissions (Doc. #4606) at 8.

The Court has reviewed plaintiffs' additional information and finds that it satisfies the Court's previous concerns.

**III.    Content Of Proposed Radio Notice**

In its previous order, the Court found that the proposed radio notice did not inform listeners which states and territories are involved in the settlements. See Memorandum And Order (Doc. #4599) at 19. Plaintiffs respond with a revised radio notice which informs listeners that they may be a settlement class member based on fuel purchases in specific states at or near the state in which the radio spot will run, as well as in other unidentified states or territories. See Dahl Second Supplemental Affidavit ¶ 10 and Exhibit 4 thereto. This revision satisfies the Court's previous concerns.

## IV. Conclusion

Based on plaintiffs' revised submissions, the Court finds that the proposed notice plan satisfies the requirements of Rule 23(c)(2)(B) and (e).

**IT IS THEREFORE ORDERED** that Plaintiffs' Notice Of Further Submissions Of Information In Support Of Motion For Approval Of Revised Settlement Notice Plan (Doc. #4606) filed July 26, 2013, which the Court construes as a motion for approval of plaintiffs' revised settlement notice plan, be and hereby is **SUSTAINED**. The Court approves the proposed notice plan, as modified. On or before **September 25 2013**, plaintiffs shall file a proposed time line for completing the notice and objection period, as well as the earliest date on which the Court should schedule a final approval hearing.

**IT IS FURTHER ORDERED** that plaintiffs' Notice of Submissions Of Revised Notice Plans For Class Action Settlements And California Trial Classes (Doc. #4593) filed June 21, 2013, which the Court construes as a motion for approval of plaintiffs' revised combined notice plan, be and hereby is **OVERRULED as moot**.

Dated this 20th day of September, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge