**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) |
| SALES PRACTICES LITIGATION | ) |
| | ) MDL No: 1840 |
| (This Document Relates to All Cases) | ) |
| | ) No: 07-md-1840-KHV-JPO |

**MOTION OF PLAINTIFFS FOR ORDER CONDITIONALLY CERTIFYING
SETTLEMENT CLASSES, PRELIMINARILY APPROVING EIGHTEEN (18) CLASS
ACTION SETTLEMENTS, DIRECTING AND APPROVING DISTRIBUTION OF
CLASS NOTICE, SETTING HEARING FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENTS AND APPOINTING CLASS COUNSEL</u>**

Robert A. Horn   KS Bar #70254
HORN AYLWARD & BANDY, LC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone 816-421-0700
Facsimile 816-421-0899
rhorn@hab-law.com


Thomas V. Girardi CA Bar #36603
GIRARDI AND KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017-1904
Telephone: 213-977-0211
Facsimile: 213-481-1554
tgirardi@girardikeese.com

George A. Zelcs  IL Bar #3123738
KOREIN TILLERY LLC
205 North Michigan Plaza
Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com


Thomas V. Bender     KS Bar #22860
WALTERS BENDER STROHBEHN
& VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196
Telephone: 816-421-6620
Facsimile: 816-421-4747
tbender@wslvlaw.com


**PROPOSED CLASS COUNSEL**

I.  **INTRODUCTION**

Certain plaintiffs, set forth on Exhibit A hereto (collectively, the "Class Plaintiffs" or "Plaintiffs"), move the Court for an order granting preliminary approval, and other ancillary relief, to class action settlements (the "Settlements")[1] with the following eighteen (18) defendants: B-B Oil Company, Inc. ; Chevron U.S.A. Inc. ("Chevron" or "CUSA"); Coulson Oil Company, Inc.; Diamond State Oil, LLC; E-Z Mart Stores, Inc.; Flash Market, Inc.; G&M Oil Company, Inc., and G&M Oil Co. (together, "G&M"); J&P Flash, Inc.; Love's Travel Stops & Country Stores, Inc.; Magness Oil Company; M. M. Fowler, Inc.; Port Cities Oil, LLC; Sunoco, Inc. (R&M); Tesoro Refining & Marketing Co., LLC; Thorntons Inc.; United El Segundo, Inc. ("United"); W.R. Hess; and World Oil Corp. ("World") (collectively, the "Settling Defendants"). Each Settlement resolves all claims in this MDL proceeding against one of the Settling Defendants, subject to final Court approval.

The Settlements follow the structure of the settlements entered into by the refiner defendants, such as ExxonMobil, Shell, Conoco, and BP, which the Court preliminarily approved in late 2012.[2] Under all but one of the 18 new Settlements, the Settling Defendant will pay an amount to create a fund that will be available, upon application, to weights and measures regulators in the relevant states at issue to defray the costs of implementing and regulating automatic temperature compensation ("ATC") technologies for the retail sales of motor fuel in states that allow retail ATC. For one Settlement, the CUSA Settlement, the settlement fund will also provide financial assistance to certain CUSA-branded retailers and wholesalers to help defray the costs of installing ATC equipment at retail stations.

---

[1] Each agreement underlying the Settlements is attached hereto as part of Exhibit B, in alphabetical order, from B-B Oil (Exhibit B-1) through World Oil (Exhibit B-18). Although the attached Settlement agreements are final, the parties are still obtaining necessary signatures. Fully-executed versions of the Settlement agreements will be filed prior to any final approval hearing.
[2] Doc. #4464 and #4478.

Although the Settlements are similar in structure to prior settlements, the Settling Defendants are significantly dissimilar, in size and situation, to prior settling defendants. For example, most of the Settling Defendants were only sued in one state and are only being released in that single state. Many of the Settling Defendants, such as Magness Oil, MM Fowler, Inc., B-B Oil, and Diamond State Oil, own fewer than twenty (20) retail stations. Four of the Settling Defendants obtained summary judgment on the merits in the only state (California) where they currently own retail stations. Because a preliminary approval analysis does not turn on the ultimate fairness of the Settlements, that fairness analysis will be briefed by Plaintiffs in connection with their motion for final approval. The salient points for purposes of preliminary approval are: (1) the Settlements were entered into after substantial arms-length negotiations by experienced counsel, and (2) the Settlements bear a reasonable relationship to the claims alleged by Plaintiffs and the Class Members and their current procedural posture, and to the litigation risks faced by both sides. The Settlements are sufficiently within the range of possible final approval to warrant an order granting preliminary approval and directing the provision of notice to the Class Members.

Accordingly, Class Plaintiffs respectfully request an Order: (1) conditionally certifying the settlement class and subclasses for all 18 Settlements as set forth below; (2) preliminarily approving the Settlements; (3) directing distribution of notice to the Settlement classes by incorporating these Settlements into the notice plan approved by the Court for the ten settlements that have already received preliminarily approval (the "Notice Plan"); (4) setting a final hearing for approval of all 28 Settlements; and (5) appointing class counsel for the Settlements.

## II.   APPLICABLE LEGAL STANDARDS

The Court has set forth the legal standards related to preliminary approval of a class action settlement in several prior decisions in this case.[3]  Given the Court's familiarity with those standards, Plaintiffs respectfully incorporate the Court's prior articulation of the legal standards for preliminary approval.

## III.   STATEMENT OF THE CASE

### A.  Background Facts, Discovery and Procedural History

Relevant background facts and the discovery history of this MDL have been previously briefed by Plaintiffs[4] and noted by the Court, along with the procedural history of this MDL.[5]

Two additional decisions by the Court are relevant to this motion.  First, on July 19, 2013, the Court entered summary judgment in favor of CUSA on all claims asserted against it in the three pending California lawsuits: *Rushing, et al. v. Alon, et al.*; *Lerner, et al. v. Costco Wholesale Corp., et al.*; and *Wyatt, et al. v. B.P. America Corp., et al.* [Doc. #4600] (collectively, the "California Cases").  Second, on August 14, 2013, the Court extended that ruling, granting summary judgment on all claims to the remaining three defendants in the *Lerner* case – G&M, United, and World (the "*Lerner* Defendants").  [Doc. #4616].

### B.     Representation

This litigation has been competently and vigorously prosecuted and defended since 2007, and Class Plaintiffs and the Settling Defendants are represented by counsel with experience in complex and class-action litigation. Class Plaintiffs in this MDL proceeding are represented by Co-Lead Plaintiffs' Counsel Robert A. Horn of Horn Aylward & Bandy, LLC, 2600 Grand Blvd., Suite 1100, Kansas City, MO 64108, Thomas V. Girardi of Girardi & Keese, 1126

---

[3] *See* prior Orders granting preliminary approval: Doc. #1273, pp. 3-5; #2118, pp. 15-16; #4464, pp. 3-5.
[4] *See* prior motions seeking preliminary approval: Doc. #1015; Doc. #4328.
[5] *Id.*

Wilshire Boulevard, Los Angeles, California 90017, George A. Zelcs of Korein Tillery, LLC, 205 N. Michigan Plaza, Suite 1950, Chicago, IL 60601 and Plaintiffs' Liaison Counsel Thomas V. Bender of Walters Bender Strohbehn & Vaughan, PC, 2500 City Center Square, 1100 Main Street, Kansas City, MO 64105 (collectively, "Class Counsel").

The Settling Defendants are also represented by experienced counsel, listed on Exhibit C hereto, all of whom have been involved in this litigation for years.

### C.    Settlement Negotiations

The Settling Defendants expressly deny all allegations of wrongdoing made in the litigation. They contend, and have always contended, that their retail motor fuel method of sale is proper, appropriate and authorized under the applicable laws of the various states. By separate orders in July and August 2013, the Court granted summary judgment to CUSA and the *Lerner* Defendants on all claims asserted against them by Plaintiffs in California. Plaintiffs respectfully disagree with the Court's analysis, and continue to maintain that selling motor fuel at retail without adjusting or compensating for the effect of temperature is unfair, improper and deceptive; however, Plaintiffs believe that the certainty of settlement at this time provides a greater benefit to the classes than subjecting them to risky and time-consuming appeals from the Court's summary judgment orders.

In an effort to resolve the litigation, Class Plaintiffs and the Settling Defendants (collectively, the "Parties") have engaged in arms-length settlement negotiations since at least 2008, including exchanges of written demands/offers and direct negotiations. At times, these negotiations were intense and included mediation with other defendants in this MDL, including several in-person negotiations between counsel for Plaintiffs and certain Settling Defendants. Negotiations intensified in the wake of the Court's July and August 2013 summary judgment

decisions in the California Cases, which led first to settlements with CUSA and the *Lerner* Defendants, and then broadened to settlements with the other 14 Settling Defendants in and around the time of the Court-ordered mediation in December 2013.  Throughout this process, and throughout this period, the Parties were fully and adequately informed of all facts necessary to evaluate the case for settlement.

## IV.   SETTLEMENT TERMS AND ISSUES

Each of the Settlements is intended to resolve, *inter alia*, the Class Members' claims against a particular Settling Defendant arising out of the sale of gasoline and diesel fuel at stations allegedly owned, operated, branded or controlled by that Defendant within certain States at Issue from January 1, 2001 (for 14 Settlements) or January 1, 2004 (for Chevron, G&M, United, and World) through the date that this Court grants preliminary approval of the Settlements.

In structure and substance, the Settlements are very similar to the settlements with six defendants (BP, CITGO, ConocoPhillips, ExxonMobil, Sinclair, and Shell) that have already received preliminary approval.

### A.   CUSA Settlement

#### 1.   Summary of Settlement Terms

The CUSA Settlement provides that, ten days after the Court issues final approval of the Settlement, CUSA will pay a specified amount (the "CUSA Settlement Amount") into an interest-bearing settlement escrow fund (the "CUSA Settlement Fund") to be administered for two related purposes. First, two-thirds of the money from the CUSA Net Settlement Fund[6] allocated among all States at Issue[7] can be used to reimburse Chevron-branded retailers, or

---

[6] Defined, *infra*, section IV.A.2.
[7] The States at Issue are defined in the CUSA Settlement Agreement and in Section V.A, *infra*.

wholesalers of CUSA who sell motor fuel at retail, insofar as those branded entities implement retail ATC. Monies in this portion of the CUSA Net Settlement Fund are not available to defray implementation costs at stations owned or operated by CUSA. Second, one-third of the CUSA Net Settlement Fund may be used to make contributions to state weights and measures agencies to help defray those states' costs associated with rulemaking, regulation, inspection, or oversight related to implementing ATC.

The CUSA Settlement Amount is $2,125,000. Of that sum, $125,000 is earmarked to contribute to the costs associated with providing notice to the settlement class members.[8]

In exchange for the consideration provided by CUSA, including payment of the CUSA Settlement Amount, Class Plaintiffs will dismiss and release all claims against CUSA arising out of or relating to the subject matter of the MDL, as described below and in the attached CUSA Settlement Agreement.[9]  The CUSA Settlement also contemplates that—after Final Approval of the CUSA Settlement—final judgment will be entered for CUSA in the California Cases consistent with the Court's July 19, 2013 summary judgment order.[10]

---

[8] *See also infra* section V.C.1.

[9] In certain cases in the States at Issue, CUSA was previously dismissed without prejudice, or was not named in actions in states where it has sold fuel, directly or to marketers, during the Class Period. For the sole purpose of obtaining certification of a settlement class and approval of the Settlement, the CUSA Settlement provides that Class Plaintiffs will amend certain complaints, or re-file actions previously dismissed without prejudice, to ensure that CUSA is an active defendant in all of the States at Issue. On January 10, 2014, Plaintiffs filed a motion to amend complaints by interlineation to facilitate these changes (Doc. #4701), and on February 6, 2014 the Court granted Plaintiffs' motion (Doc. #4710).

[10] Two of the three cases – *Wyatt* and *Rushing* – have been transferred back to the district courts of origin.  CUSA and plaintiffs' counsel have requested that those courts find that good cause exists for entry of judgment for CUSA and defer entry of judgment for CUSA until the settlement is finally approved and the time for appeal from any final order approving the settlement has been exhausted.  Both courts have consented to this procedure.  *See* Order re Defs.' Motions for Entry of Judgment, *Wyatt, et al. v. B.P. America Corp., et al.*, No. 3:07-cv-01754-BTM-JMA, Jan. 17, 2014 (Doc. #38); Joint Case Management Statement, *Rushing, et al. v. Alon, et al.*, No. 4:06-cv-07621-PJH, Feb. 20, 2014 (Doc. #140); Case Management Conference Minute Entry, *Rushing, et al. v. Alon, et al.*, No. 4:06-cv-07621-PJH, Feb. 27, 2014 (Doc. #141).  Because the third case, *Lerner*, has been transferred to this Court for purposes of finalizing the settlement, the Parties anticipate that this Court will enter final judgment for CUSA and the *Lerner* Defendants at the conclusion of these proceedings.

### 2.      Allocation of the CUSA Net Settlement Fund to the States at Issue

The net proceeds of the CUSA Settlement Fund, after deducting attorneys' fees, litigation costs, and costs of notice and settlement administration (i.e., the "CUSA Net Settlement Fund"), will be allocated across the States at Issue in which CUSA was sued in this MDL. The percentage of the CUSA Net Settlement Fund allocated to each State at Issue will be based principally on the following factors: the volume of motor fuel sold in each State at Issue, the average temperature of motor fuel in each State, and the maximum number of retail stations in the States at Issue selling CUSA branded fuel between January 1, 2004, and the present.[11] The Parties modified the percentages to ensure no State at Issue receives less than 1% of the CUSA Net Settlement Fund.

### 3.      Process for Disbursement of CUSA Net Settlement Fund

The amounts allocated to each State at Issue will be available for the reimbursement of CUSA-branded retailers or wholesalers, or for contributions to state weights and measures agencies, for the purposes set forth above. To receive payments out of the CUSA Net Settlement Fund, a retailer or wholesaler must submit a written statement to the Settlement Administrator that: (i) lists the State(s) at Issue where the retailer or wholesaler will install ATC equipment; (ii) describes the costs involved in implementing ATC and states the amount of reimbursement requested; and (iii) explains the authorization from each applicable State's department of weights and measures, or other agency responsible for regulating retail motor fuel dispensers in the State, for the use of the ATC system that the retailer or wholesaler has installed. Similarly, a weights and measures department seeking payment from the CUSA Net Settlement Fund must submit to the Settlement Administrator a written statement that: (i) explains that the State at Issue has adopted, authorized, or allowed the use of ATC for retail sales of motor fuel (or is considering

---

[11] The first factor was presumptively weighted twice as heavily as the second and third factors.

permitting retail ATC use); and (ii) describes how the State would use a portion of the CUSA Settlement Fund to assist in that implementation, inspection or regulation.

Upon receiving such written documentation, including proof of incurred expenditures by retailers or wholesalers, the Settlement Administrator will disburse to the eligible applicant the requested funds or a portion thereof.

The CUSA Settlement provides that any amounts allocated to a State that have not been disbursed from the CUSA Net Settlement Fund at the end of the sixth year will escheat to that State's general fund.[12]

Twice a year, Class Counsel will file with the Court (and serve on CUSA) a report summarizing activity in the CUSA Settlement Fund, accounting for payments made from such Fund and deposits into the Fund.

### B.      The Other 17 Settlements

The Settlements with the 17 other Settling Defendants are modeled on, and very similar to, the CUSA Settlement. These other Settlements involve Settling Defendants that are much smaller than CUSA and operate in a much smaller number of States at Issue. These Settlements are nearly identical to one another, and thus can be described together.

### 1.      Summary of Settlement Terms

Like the CUSA Settlement, the Settlements for the other 17 Settling Defendants  provide that the particular Settling Defendant will pay an agreed amount (in total, the "Settlement Amount") into an interest-bearing settlement escrow fund (the "Settlement Fund").  Seven of the Settling Defendants – G&M, MM Fowler, Sunoco, Inc. (R&M) Tesoro, Thorntons, United and World – must pay the Settlement Amount within 10 days after preliminary approval of the

---

[12] This term is consistent with previously-approved settlements—such as the Conoco, Shell and BP settlements—involving the escheat of unused funds that were available to state weights and measures departments.

respective Settlement.  The other 10 must pay their respective Settlement Amounts within 10 days of final approval of the respective Settlement. The Settlement Fund will be allocated among the States at Issue for that Settling Defendant according to the same basic formula used for allocating the CUSA Settlement Fund.[13]  The money in the Net Settlement Fund (defined below) for each Settling Defendant may be used to make contributions to the weights and measures regulator in each of the States at Issue to help defray the State's costs associated with rulemaking, regulation, inspection, or oversight related to implementing ATC.

The Settlement Amount for each of the 17 Settlements is as follows:

| Company | Amount ($) |
|---|---|
| B-B Oil | 20,000 |
| Coulson | 20,000 |
| Diamond State | 20,000 |
| EZ Mart Stores | 90,000 |
| Flash Market | 20,000 |
| G&M | 40,000 |
| J&P Flash | 20,000 |
| Loves | 100,000 |
| Magness | 20,000 |
| MM Fowler | 22,500 |
| Port Cities | 20,000 |
| Sunoco, Inc. (R&M) | 60,000 |
| Thorntons | 60,000 |
| Tesoro | 50,000 |
| United | 40,000 |
| World | 40,000 |
| W.R. Hess | 20,000 |

In exchange for the consideration provided by the Settling Defendants, including payment of the Settlement Amount, Class Plaintiffs will dismiss and release all claims against the Settling

---

[13] Many of the Settling Defendants operate in only one of the States at Issue.  Where that is the case, all of the money in that Settlement Fund will be available to the weight and measures agency in that State.

Defendants arising out of or relating to the subject matter of the MDL, as described below and in the various Settlement Agreements.[14]

### 2.        Process for Disbursement of Net Settlement Funds

The Net Settlement Fund for each of the other 17 Settling Defendants, as allocated to each State at Issue for that Settling Defendant, will be available for contributions to state weights and measures agencies, for the purposes set forth above.  For example, the entire Net Settlement Fund for each of the *Lerner* Defendants, who operate only in California, will be available for the California Department of Food and Agriculture's Division of Management Standards ("Cal DMS").  Cal DMS must submit to the Settlement Administrator a written statement that: (i) explains that California has adopted rules regarding implementation of ATC for retail sales of motor fuel and (ii) describes how the State would use a portion of the Net Settlement Fund to assist in such implementation, inspection or regulation of ATC.

Upon receiving such written documentation, the Settlement Administrator will disburse to the Cal DMS applicant the requested funds or a portion thereof.

Any amounts remaining in a Net Settlement Fund at the end of the third year after final approval of the Settlement will escheat to the general fund of the States at Issue that received an allocation under the Settlement with that particular Settling Defendant.

Twice a year, Class Counsel will file with the Court (and serve on the Settling Defendant) a report summarizing activity in that Defendant's Settlement Fund, accounting for payments made from such Fund and deposits into the Fund.

---

[14] The Settlements for the *Lerner* Defendants in particular also contemplate that the Court will enter judgment for the *Lerner* Defendants consistent with the Court's August 14 summary judgment order.

C.      **Description of Provisions Common to All 18 Settlements**

1.      **Attorneys' Fees, Litigation Expenses, and Costs of Notice and Settlement Administration**

Under the Settlements, Plaintiffs may apply to the Court to recover attorneys' fees, litigation costs, notice expenses, the costs of administering the settlement, and modest incentive awards to the class representatives. The recovery for attorneys' fees, litigation costs, and incentive awards are capped at 30% of the Settlement Funds. Thus, for the CUSA Settlement, the fee cap is $600,000.[15]

Certain of the Settling Defendants have agreed to contribute additional specific amounts to defray the costs associated with implementing the Notice Plan.[16]  Those amounts are as follows:

| Company | Notice Amount ($) |
|---|---|
| CUSA | 125,000 |
| Loves | 5,000 |
| B-B Oil, Coulson, Diamond State, Flash Market, J&P Flash, Magness, M&M Fowler, Port Cities, Sunoco, Inc. (R&M), W.R. Hess | 1,000 per Company |

2.      **Releases**

In return for the settlement consideration described above, each of the Settling Defendants will receive a release of all claims arising out of or relating in any way to the claims alleged in the MDL, any representation or failure to disclose the temperature or energy content of motor fuel,

---

[15] Plaintiffs do not anticipate requesting reimbursement of attorneys' fees or costs and expenses for most of the Settlements for these Settling Defendants, in order to maximize the sizes of the Net Settlement Funds available under these Settlements for distribution to weight-and-measures agencies.

[16] The Settlements that do not include a portion earmarked for notice costs are the *Lerner*, E-Z Mart Stores, MM Fowler, Tesoro, and Thorntons Settlements.

any alleged over-collection of state and federal motor fuel excise taxes from consumers based on the number of gallons dispensed without adjustment for the effect of temperature, and the alleged participation in any conspiracy to preclude the use of ATC equipment in the States at Issue.  The releases are described more fully in the respective Settlement Agreements attached hereto in Exhibit B.

### 3.    The Settlement Administrator

The Parties ask that the Court approve a settlement administrator ("Settlement Administrator") to review and process requests of retailers, wholesalers, and weights and measures departments for payments from the Settlement Funds. The expenses associated with administration of these Settlements will be reimbursed from the Settlement Funds. General administration expenses will be allocated among these Settlement Funds and the settlement funds for the other settlements pending in this MDL, according to each Settling Defendant's share of the combined amount of money in all of the settlement funds.

Class Plaintiffs request that the Court approve and appoint Horn Aylward & Bandy, LLC ("HAB"), to be the Settlement Administrator for the Settlements. The Settlement Administrator's evaluation of applications from retailers, wholesalers, or weights and measures departments, and the decision about the size of the payment to make, will benefit from substantive knowledge and understanding of the subject matter. In this respect, administration of the Settlements differs from "typical" claims-processing activities and responsibilities. As one of the Class Counsel and lead counsel for Class Plaintiffs throughout this litigation, HAB has significant understanding of temperature correction and of the technical, legal, and regulatory issues in this case, and is well positioned to administer the Settlement Funds efficiently for the purposes set out in the Settlements. HAB is committed to

the Settlement Funds being used in a way that most benefits retail consumers. If selected as Settlement Administrator, HAB intends to seek reimbursement from the Settlement Funds only for its costs and expenses in performing its responsibilities, and will not seek reimbursement of fees for time spent. Thus, HAB's proposed service as Settlement Administrator at cost is not intended to be, and will not be, a way for HAB to obtain additional attorneys' fees and, in fact, will only increase the amount in the Net Settlement Funds that is available for use in the manner set forth above.

In the alternative, Class Plaintiffs request that the Court appoint Dahl Administration, LLC ("Dahl"), to serve as the Settlement Administrator. Dahl has almost twenty years of experience in settlement administration and has administered more than three hundred class-action settlements. Dahl's background and experience have been previously briefed, and Dahl is the administrator of the Notice Plan.

Regardless of whom the Court appoints as the Settlement Administrator, the Court will retain continuing jurisdiction to enforce the Settlements and any final judgment entered on the Settlements.

D.     **The Notice Plan**

Class Plaintiffs seek the Court's approval to include the 18 Settling Defendants in the Notice Plan that the Court approved on September 20, 2013 (Doc. #4648), as inclusion of the Settling Defendants in that Notice Plan is a condition of each of the Settlements.  Inclusion of notice for the 18 Settlements to the Notice Plan will be straightforward, will not impede the clear presentation of information about the settlements to class members, and will minimize any potential confusion among class members.[17]  By consolidating the notice information in a single

---

[17] *See* Affidavit of Notice Plan administrator Jeffrey D. Dahl of Dahl Administration, LLC, Exhibit D hereto, ¶ 7.

presentation and format, class members will be able to obtain ample information about the different Settlements from a single source.[18]

The notice documents have been revised to reflect the additional 18 Settlements, and will inform class members about the features of the different Settlements.[19]

Consistent with the prior settlements that were approved for inclusion in the Notice Plan, Plaintiffs are submitting separate statements from each of the eighteen Settling Defendants related to their respective abilities to locate or retrieve individual contact information for class members.[20] The attached statements from the *Lerner* Defendants—World, G&M and United— have already been reviewed by the Court and held sufficient to establish that Plaintiffs cannot individually identify class members for those defendants.[21]  The remaining Settling Defendants, many of whom are similar in size and scope to the *Lerner* Defendants, likewise appear to be unable to locate or retrieve information that would allow Plaintiffs to reasonably identify individual class members for purposes of providing direct, individualized notice.[22]

Plaintiffs' Notice Plan relies upon both print and Internet publication, and is appropriate for these Settlements to the same extent it has already been found appropriate for the settlements with BP, Conoco, ExxonMobil, Shell and the other settling defendants.

## V.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASSES

Class Plaintiffs request certification of settlement classes (the "Settlement Classes") for purposes of obtaining final approval of the Settlements. Certification of the Settlement Classes is

---

[18] Dahl Aff., Exhibit D, ¶ 7.

[19] For example, the notice documents will appropriately inform class members that the Court entered summary judgment for CUSA and the *Lerner* Defendants after a full and fair opportunity to litigate the legal and factual issues, that such judgments will be entered and will bind members of the rule 23(b)(2) classes previously certified by the Court, and that the Settlements will bind members of the Rule 23(b)(3) and (c)(4) liability classes certified by the Court.

[20] *See* Exhibit E (Exhibits E-1 to E-18). In this respect, these Settling Defendants are similar to the 10 defendants that have already had their settlements preliminarily approved and that will be part of the Notice Plan.

[21] *See* Order dated July 19, 2013 (Doc. #4599), pp. 12-13.

[22] Exhibits E-1 through E-18.

appropriate under Rule 23 for the reasons set forth below. The Settling Defendants do not oppose certification of Settlement Classes under the agreed terms, and for settlement purposes only.

### A.       The Settlement Classes

For the purposes of preliminary approval of the Settlements, Plaintiffs request that the Court certify Settlement Classes for each of the Settlements. For CUSA, the Settlement Class consists of twenty-four state classes (the "CUSA Settlement Classes") that correspond to the States at Issue for the CUSA Settlement. Each CUSA Settlement Class has a class representative.[23] Many of the other Settlements contemplate a single Settlement Class, as those Settling Defendants operate within only one of the States at Issue.

The CUSA Settlement Classes are defined as: "All Persons who, at any time during the Relevant Time Period [defined as January 1, 2004 through the date on which the Court grants preliminary approval], purchased motor fuel at retail in the [State at Issue] from a gas station that CUSA operates or has operated, or that CUSA's branded retailers or wholesalers operate or supply, or have operated or supplied." Class definitions for the other Settling Defendants are similarly phrased, and have a class start date of January 1, 2001.

Excluded from the CUSA Settlement Classes are "Class Counsel, CUSA, CUSA's officers, directors, and employees, the officers, directors, and employees of CUSA's affiliated companies, and any judicial officer who has presided over this Action and the members of his/her immediate family." The class definitions for the other Settlements have similar class definition exemptions.

The States at Issue for the CUSA Settlement are Alabama, Arizona, California, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Mexico, New Jersey, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina,

---

[23] The class representative for each state Settlement Class for each Settling Defendant is listed on Exhibit A.

Tennessee, Texas, Utah, Virginia, and the U.S. Virgin Islands. The States at Issue for the other Settlements are as follows:

- B-B Oil: Arkansas;

- Coulson Oil Company, Inc.: Arkansas;

- Diamond State Oil, LLC: Arkansas;

- E-Z Mart Stores, Inc.: Oklahoma and Arkansas;

- Flash Market, Inc.: Arkansas;

- J&P Flash, Inc.: Arkansas;

- Love's Travel Stops & Country Stores, Inc.: Georgia and Oklahoma;

- M.M. Fowler, Inc.: North Carolina;

- Magness Oil Company: Arkansas;

- Port Cities Oil, LLC: Arkansas;

- Sunoco, Inc. (R&M): Indiana, Maryland, New Jersey, Pennsylvania, South Carolina, and Virginia;

- Tesoro Refining and Marketing Company, LLC: Utah and Nevada;

- Thorntons Inc.: Kentucky; and

- WR Hess Company: Arkansas.

### B.      The Settlements Satisfy Rule 23(a)

Under Rule 23(a), a settlement class must meet four requirements:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[24] The proposed Settlement Classes satisfy all four requirements.

---

[24] *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633 (D. Kan. 2008).

### 1.      Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no exact numerical formula for determining whether a class is sufficiently numerous, but it is a determination that must be made by the district court "in light of the particular circumstances of the case . . . ."[25]

Here, the proposed Settlement Classes for each Settlement consist of individuals and entities that purchased motor fuel from stations operated or controlled by the Settling Defendant. Given the period of time at issue, each of the Settlement Classes likely has millions of members. Thus, joinder is impracticable and the numerosity requirement is satisfied.[26]

### 2.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."[27]

In this case, numerous questions of law and fact are common to the Settlement Classes and, therefore, satisfy the requirement of "commonality." The Settling Defendants' method of sale with respect to all Class Members was essentially uniform because the Settling Defendants have not accounted for temperature in the sale of motor fuel at retail during the class period. This uniformity gives rise to the Class Members' claims for unjust enrichment, breach of contract and other theories. Similarly, the Settling Defendants did not inform the Class Members that such sales were not compensated for temperature, or advise the Class Members of the effect that thermal expansion has on the quality and quantity of motor fuel. This uniform conduct gives rise

---

[25] *Ark. Ed. Ass'n v. Bd. of Educ. of the Portland, Ark. School Dist.,* 446 F.2d 763, 765 (8th Cir.1971); *see also Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978).

[26] Class actions have been routinely certified even where the class amounts to less than one hundred members. *See, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.,* 446 F.2d 763, 756-66 (8th Cir.1971) (20 class members sufficient); *Swanson v. American Consumer Industries,* 415 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); *Riordan v. Smith Barney,* 113 F.R.D. 60 (N.D. Ill. 1986) (10–29 class members sufficient); *Sala v. Nat'l RR Passenger Corp.,* 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40–50 class members sufficient).

[27] *See Am. Fin. Sys., Inc. v. Harlow,* 65 F.R.D. 94, 107 (D. Md.1974), *cert. denied,* 460 U.S. 1083 (1983) (commonality is not required on every question raised in a class action; rather, Rule 23 is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation.").

to the Class Members' claims based on misrepresentation, consumer protection, and other theories.

Simply put, Class Plaintiffs and the Class Members stand in virtually identical shoes with respect to non-temperature corrected motor-fuel purchases from the Settling Defendants and the claims arising therefrom. The virtually identical nature of the claims for the Settlement Classes of the respective Settlements is sufficient to satisfy the "commonality" requirement of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties (be) typical of the claims or defenses of the class."[28] Courts in this District have held:

> This requirement does not mandate . . . that the claims of the representative plaintiffs be identical to those of the other class members. Rather, the Court should look to whether the claims of the representative plaintiff are antagonistic to the claims of the proposed class. "Typicality insures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected."[29]

Under this standard, the claims of the Class Plaintiffs are not antagonistic to the claims of the Class Members.

The "typicality" of the Class Plaintiffs' claims in this case exists also because each Class Member, including each Class Plaintiff, was treated the same by the Settling Defendants—that is, each Class Member received, and was only offered, motor fuel that was not adjusted in volume or price for the effects of temperature.[30] Although the Settling Defendants dispute that

---

[28] The "typicality" requirement, as customarily applied, tends to merge with "commonality." *Gen. Tel. Co. of Southwest. v. Falcon*, 457 U.S. 147, n.13 (1982).

[29] *Swisher v. U.S.*, 189 F.R.D. 638, 640-641 (D. Kan. 1999) (citations omitted), quoting *Edgington v. R.G. Dickinson and Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991).

[30] *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001) ("If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.").

their method of sale was improper, they do not dispute that their sale of non-temperature-adjusted fuel and the alleged failure to inform the Class Members of material facts is the conduct that give rise to the Class Members' claims. Thus, each Class Member, including each Class Plaintiff, holds the same claims. The "typicality" requirement of Rule 23(a)(3) is satisfied for each Settlement.

### 4.   Adequate Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."[31] To establish that they will fairly and adequately protect the interests of the class, the representative plaintiffs must show that: (1) they are able to prosecute the action vigorously through qualified counsel and (2) there is no conflict between their interests and those of the class members.[32] The potential for disagreement or opposition from certain members of a class is not enough to establish that the representation of the class by the class representative is inadequate.[33] Only where the conflict is "fundamental" and goes to "specific issues in controversy" does a concern about adequacy of representation arise.[34]

With respect to the proposed Settlement Classes for the 18 Settlements, both components of Rule 23(a)(4) are satisfied. First, Class Counsel have substantial experience in complex and class-action litigation, and are qualified, experienced and have vigorously pursued this Litigation.[35] Second, there is no evidence or indication of a conflict between the interests of the Class Plaintiffs and the Class Members. On the common issues and relief obtained, Class

---

[31] Fed. R. Civ. P. 23(a)(4).

[32] *Schreiber v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 169, 175 (D. Kan. 1996); s*ee also* 1 Newberg, *Class Actions*, § 3.22 at 198.

[33] *In re Motor Fuel Temperature Sales Practices Litig.* 271 F.R.D. 221 (D. Kan. 2010).

[34] *Id.* (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

[35] *See* Declarations of Co-Lead Counsel and Liaison Counsel previously submitted to the Court, resulting in this Court's orders of appointment (Doc. #138, #145, and #179) which are incorporated herein by reference. If additional declarations or support for this Motion are required by the Court, the undersigned will promptly submit the same upon request.

Members stand to gain as much as the Class Plaintiffs, and the Class Plaintiffs have advocated as vigorously for the Class Members as they have for themselves.[36] Since the Class Plaintiffs and Class Members are alleged to have suffered the same injury, and the relief obtained through the Settlements will apply equally to all Class Members, including the Class Plaintiffs, the requirements of Rule 23(a) are met with respect to the proposed Settlement Classes.[37]

### C.    Rule 23(b)(3) Standards Are Satisfied

The proposed Settlements also meet the requirements of Rule 23(b)(3), which allows class certification where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation.[38] When assessing predominance and superiority, the Court may consider that a class will be certified for settlement purposes only, and that a showing of manageability at trial is not required.[39] The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[40]

Here, the proposed Settlement Classes for the 18 Settlements are sufficiently cohesive. As described above, the Class Plaintiffs and all Class Members seek redress for claims arising out of the same allegedly unlawful conduct. Thus, common questions predominate over individual questions for each of the Class Members. Moreover, as Plaintiff seeks conditional certification of the Settlement Classes only to effectuate the Settlements, the Court need not

---

[36] *See, e.g., McGee v. Continental Tire N. Am., Inc.*, 2009 WL 539893 (D.N.J. Mar. 4, 2009) (finding Rule 23(a)(4) satisfied where the named plaintiffs advocated as vigorously for absent class members as for themselves).

[37] The uniformity of the proposed Settlement Classes here stands in contrast to cases where courts have refused to certify classes under Rule 23(a)(4) because of significant differences among the interests of class members. *See, e.g., Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (affirming Third Circuit determination that currently injured and exposure-only members of a proposed asbestos class had divergent interests in structure of settlement fund and thus could not be adequately represented in a single class).

[38] *See* Fed. R. Civ. P. 23(b)(3).

[39] *See Amchem*, 521 U.S. at 619-20.

[40] *Id.* at 623.

consider issues related to manageability and superiority.[41] Therefore, the proposed Settlement Classes are particularly appropriate for certification for settlement purposes.

Class resolution is superior to other available methods for the fair and efficient adjudication of this controversy. The Class Members' claims could prove uneconomical for individual action because litigation costs could dwarf potential recovery.[42]

In summary, certification of the proposed Settlement Classes is appropriate under Rule 23. Accordingly, the Class Plaintiffs respectfully request that the Court conditionally certify the proposed Settlement Classes for the Settlements.

## VI.   PRELIMINARY APPROVAL OF THE SETTLEMENTS IS APPROPRIATE

Class Plaintiffs respectfully submit that the Settlements are "within the range of possible approval" and therefore, preliminary approval of the Settlements is warranted. The terms of the Settlements are fair and provide a complete plan for notice to the Settlement Classes, for Class Members to "opt out" of the Settlements, for Class Member objections, for implementation of the consideration provided in each Settlement, for oversight of the settlement process, and for final certification of compliance with the terms of the Settlements. The terms of each Settlement also provide that, if for any reason the Settlement does not become final, the Parties will revert to their positions prior to the execution of the Settlement Agreement and the Litigation will continue as if this motion and accompanying documents were never filed.

---

[41] *See Anchem*, 521 U.S. at 620.

[42] While that pursuit of claims by an individual may be economically inefficient and cost-prohibitive, the opt-out procedures provide a mechanism for Class Members who are dissatisfied with a Settlement to preserve and pursue individual claims that they may have.

### A.     The Terms of the Proposed Settlements Are Fair

A preliminary review of the terms of the proposed Settlements confirms that they are fair. Indeed, the Settlements come to this Court with a presumption of fairness because the Plaintiffs can show

> (1) That the settlement has been arrived at by arm's-length bargaining; (2) That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; [and] (3) That the proponents of the settlement are counsel experienced in similar litigation….[43]

Furthermore, courts are to give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."[44]

Here, it is the judgment of the proposed Class Counsel that, in consideration of all factors, including factors related to this Court's orders granting summary judgment to CUSA on all claims asserted in the California Cases, the Settlements are beneficial to the Class Members and in their best interests at this stage of the Litigation. Extensive investigation and discovery has allowed Class Counsel, CUSA Counsel, and counsel for the other Settling Defendants – who are experienced class action attorneys – to assess the strengths and weaknesses of the respective

---

[43] 4 Newberg, § 11.41. A fourth factor supporting a presumption of fairness – "That the number of objectors or interests they represent is not large when compared to the class as a whole" – cannot yet be assessed because notice has not yet gone out to the Class Members.

[44] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988); *see also, Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp. 2d 1179 (D. Kan. 2002) ("When settlement is reached by experienced counsel after negotiations in adversarial setting, there is initial presumption that settlement is fair and reasonable.").

claims against the Settling Defendants and the benefits of the Settlements under the circumstances of this case.

**B.      Plaintiffs' Counsel Have a Sufficient Factual Basis for the Settlements**

Class Counsel have already conducted substantial investigation and discovery, and engaged in arm's-length discussions in this Litigation. Plaintiffs' counsel served numerous discovery requests; received millions of documents that required extensive review and statistical analyses by Class Counsel and their experts; conducted several hundred depositions of the defendants; defended scores of plaintiff depositions; responded to scores of discovery requests; examined and produced thousands of documents; investigated, briefed and opposed hundreds of dispositive motions filed in this MDL; investigated and prepared numerous, detailed discovery motions and met and conferred with counsel for different Settling Defendants over various discovery disputes for years. Thus, Class Counsel negotiated the Settlements with ample knowledge of the strengths and weaknesses of Plaintiffs' case. The efforts of the Parties' counsel to resolve this case have resulted in fair and comprehensive settlements that provide meaningful, substantial benefits for the Class Members.

**C.      The Notice Plan Is Appropriate**

The second step in the class-action settlement process is providing the class with notice of the Settlements. The Court has already approved the joint Notice Plan related to ten (10) other pending settlements, and Plaintiffs propose to add these 18 Settlements to that same Notice Plan. Information about the Settlements can be added to the Notice Plan documents and information in a way that clearly communicates to Class Members facts about the Settlements and their options about whether and how to participate (including excluding themselves from one or more of the

Settlements or objecting to one or more of the Settlements).[45] Thus, the Notice Plan, modified to include these Settlements, satisfies Rule 23 for the same reasons that the Court cited in approving the Notice Plan for the other settling defendants.

### D.     CAFA Notice

One element of the Class Action Fairness Act of 2005 ("CAFA") is a requirement that within ten days after a proposed class-action settlement is filed with the Court, the settling defendant provide appropriate state and federal officials with notice of the proposed settlement, along with particular documents and information.[46] Here, each of the Settling Defendants will provide CAFA notices for the Settlements to the United States Attorney General and the attorneys general in each State as appropriate for the Settlements, as well as the head or director of the weights and measures department in such jurisdiction. If the Court grants preliminary approval to the Settlements, Plaintiffs will provide proof of CAFA compliance with their motion for final approval of the Settlements prior to any final fairness hearing.

### VII.    ESTABLISHMENT OF A FINAL APPROVAL AND FAIRNESS HEARING

The Court previously set a schedule for the ten (10) pending settlements [Doc. # 4652]. Following that same template, Plaintiffs propose the following revised schedule:

| DATE | EVENT |
|---|---|
| Day 1 | Order entered granting preliminary settlement approval |
| Day 60 | Last day to provide settlement class notice |
| Day 90 | Last day for class members to opt out or object to settlements |
| Day 97 | Last day for settling parties to respond to objections |
| Day 100 or after | Final settlement approval hearing. |

Importantly, this schedule allows a *minimum* of thirty days for class members to object or opt out after Day 60. But given the nature of the approved notice plan, notice will start being

---

[45] Dahl Aff., Exhibit D.
[46] 28 U.S.C. §1715 *et seq.*

provided to class members within just a few weeks after the Court grants preliminary approval.[47] In fact, the majority of notice will be provided well before Day 60,[48] which will allow class members even more time to consider their options with respect to the Settlements. Similar to the time line the Court previously adopted, Plaintiffs respectfully suggest that the proposed schedule is fair and adequate.

## VIII.   APPOINTMENT OF SETTLEMENT CLASS COUNSEL

Pursuant to the requirements of Rule 23(g), a Court certifying a case as a class action "must appoint class counsel." Class Plaintiffs respectfully request that the Court appoint the undersigned Co-Lead Counsel and Liaison Counsel as counsel for the Class Members for the Settlements. Undersigned Co-Lead and Liaison Counsel have previously been appointed by the Court as Settlement Class Counsel, and have also been appointed as Class Counsel in these MDL actions. The experience and qualifications of the proposed class counsel have been established, and the proposed class counsel will zealously prosecute the claims of the Class Members.

## IX.   CONCLUSION

Class Plaintiffs submit that the instant Settlements are fair, reasonable and fall within the range of possible approval. Accordingly, Class Plaintiffs request the Court enter an order conditionally certifying the Settlement Class(es) for each Settlement, preliminarily approving the Settlements, approving and ordering completion of the Parties' Notice Plan, and appointing the undersigned as Settlement Class Counsel.

WHEREFORE, Class Plaintiffs respectfully move the Court for an Order consistent with the foregoing, and for such other relief the Court deems proper.

---

[47] Dahl Aff., Exhibit D, ¶ 9.
[48] *Id.*

Respectfully submitted this 15th day of March, 2014.

Respectfully submitted,

_____*s/ Robert A. Horn*_____

Robert A. Horn    KS Bar #70254
HORN AYLWARD & BANDY, LC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone 816-421-0700
Facsimile 816-421-0899
rhorn@hab-law.com

_____*s/ Thomas V. Girardi*_____

Thomas V. Girardi CA Bar #36603
GIRARDI AND KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017-1904
Telephone: 213-977-0211
Facsimile: 213-481-1554
tgirardi@girardikeese.com

_____*s/ George A. Zelcs*_____

George A. Zelcs  IL Bar #3123738
KOREIN TILLERY LLC
205 North Michigan Plaza
Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com

_____*s/ Thomas V. Bender*_____

Thomas V. Bender     Ks. Bar #22860
WALTERS BENDER STROHBEHN
         & VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196
Telephone:  816-421-6620
Facsimile:  816-421-4747
tbender@wbsvlaw.com

**PROPOSED CLASS COUNSEL**

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

_  /s/ Joseph A. Kronawitter_____