**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE: MOTOR FUEL TEMPERATURE   )
SALES PRACTICES LITIGATION       )
                                     )       **MDL No. 1840**
(This Document Relates to All Cases)    )       **Case No. 07-MD-1840-KHV**
_____)

**MEMORANDUM AND ORDER**

This matter comes before the Court on the <u>Motion Of Plaintiffs For Order Conditionally</u>
<u>Certifying Settlement Classes, Preliminarily Approving Eighteen (18) Class Action Settlements,</u>
<u>Directing And Approving Distribution Of Class Notice, Setting Hearing For Final Approval Of</u>
<u>Class Action Settlements And Appointing Class Counsel</u> (Doc. #4724) filed March, 15, 2014.
Plaintiffs seek conditional class certification and preliminary approval of 18 settlement agreements.
For reasons stated below, with one exception, the Court sustains plaintiffs' motion.

**I.**     **Procedural And Factual Background**

On June 18, 2007, the Judicial Panel on Multidistrict Litigation ("MDL Panel") designated
this Court as the transferee court for federal cases challenging sales practices of motor fuel retailers
and refiners with regard to motor fuel temperature. The cases challenge defendants' practice of
selling motor fuel by the gallon without disclosing or adjusting for temperature and without
disclosing the effect of temperature on motor fuel. With respect to all pending cases, the Court has
completed consolidated discovery.

**A.**     **Prior Settlements**

In April of 2012, the Court granted final approval to a class action settlement with Costco
Warehouse Corporation. <u>See</u> <u>Memorandum And Order</u> (Doc. #4248) filed April 24, 2012. With
regard to that settlement, issues regarding attorney's fees, expenses and class representative

incentive awards remain pending before the Court.  See Docs. #1820, #2084.

In the summer of 2012, plaintiffs entered into 11 additional proposed class action settlements.  In late 2012, the Court preliminarily approved the proposed settlements.  See Memorandum And Order (Doc. #4424) filed September 28, 2012; Memorandum And Order (Doc. #4464) filed November 20, 2012; Memorandum And Order (Doc. #4478) filed December 10, 2012.  After several modifications to the proposed notice plan, on September 20, 2013, the Court approved a proposed notice plan with respect to the 11 proposed settlements.  See Memorandum And Order (Doc. #4648).

### B.    Kansas Cases

In September of 2012, the Court held a jury trial in two cases in which plaintiffs asserted class action claims under Kansas law.[1]  Specifically, plaintiffs asserted that defendants' sales practices constituted willful omissions and/or unconscionable acts or practices under the Kansas Consumer Protection Act ("KCPA"), K.S.A. §§ 50-626(b)(3) and 50-627.  Plaintiffs tried the willful omission claims to a jury and the unconscionability claims to the Court.  The jury found that defendants did not willfully fail to state, conceal, suppress or omit the fact that temperature affects the energy content and therefore value of motor fuel and/or the temperature of motor fuel.  See Verdict (Doc. #4422) filed September 24, 2012.  The Court found that on the evidence presented at trial, defendants' practice of selling motor fuel by the gallon without disclosing temperature, disclosing the effect of temperature or adjusting for temperature was not unconscionable.  See Memorandum And Order (Doc. #4428) filed October 3, 2012 at 5-6.

---

[1]    The two Kansas cases are Wilson v. Ampride, Inc., D. Kan. No. 06-2582-KHV; and Am. Fiber & Cabling, LLC v. BP Prods. N. Am., D. Kan. No. 07-2053-KHV.

**C.     California Cases**

In April of 2013, the Court certified classes under Rule 23(b)(2) and (3), Fed. R. Civ. P., against non-settling defendants in three California cases.[2]   See Memorandum And Order (Doc. #4539) filed April 5, 2013; Memorandum And Order (Doc. #4544) filed April 9, 2013. Plaintiffs thereafter proposed to revise the notice plan to include the California classes with the 11 previously proposed settlements.  The Court agreed and ordered plaintiffs to file revised notices and supplemental evidence regarding the proposed combined notice plan.  See Memorandum And Order (Doc. #4583) filed May 29, 2013.   On June 21, 2013, plaintiffs filed revised notice submissions.  See Doc. #4591.

On July 19, 2013, the Court found that plaintiffs' revised notice plan did not meet the requirements of Rule 23.  See Memorandum And Order (Doc. #4599).  Specifically, the Court found that plaintiffs needed to either (1) amend their plan to provide individual notice to certain categories of class members or (2) demonstrate that they cannot reasonably ascertain the class members based on available sources.  Id. at 19-20.  In addition, the Court found that plaintiffs had not provided sufficient details as to the proposed plan and its estimated reach, and that the proposed radio notice did not inform listeners which states and territories are involved in the cases and settlements.  Id. at 20-21.

On the same date, the Court entered summary judgment in favor of non-settling defendants in the California cases.   See Memorandum And Order (Doc. #4600) filed July 19, 2013;

---

[2]        The three California cases are Rushing v. Alon USA, Inc., D. Kan. No. 07-2300-KHV, N.D. Cal. No. 06-7621-PJH; Lerner v. Costco Wholesale Corp., D. Kan. No. 07-2405-KHV, C.D. Cal. No. 07-1216-GHK-FMO; Wyatt v. B.P. Am. Corp., D. Kan. No. 07-2507, S.D. Cal. No. 07-1754-BTM-JMA.

<u>Memorandum And Order</u> (Doc. #4616) filed August 14, 2013.  In those cases, plaintiffs asserted that defendants' sales practices violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>, and the California Consumers Legal Remedy Act ("CLRA"), Cal. Civ. Code § 1750 <u>et seq.</u>, and constituted breach of the implied covenant of good faith and fair dealing and unjust enrichment.  Applying safe harbor principles under California law, the Court found that because California law authorizes defendants to sell motor fuel by the gross gallon without disclosing or adjusting for temperature and also allows defendants to pay taxes on net gallons and requires them to post applicable taxes, defendants are not liable under the UCL or CLRA for such practices.  <u>See</u> <u>Memorandum And Order</u> (Doc. #4600) at 23-30; <u>Memorandum And Order</u> (Doc. #4616) at 10.  The Court further found that as a matter of California law, plaintiffs cannot prevail on their claims of breach of the implied covenant of good faith and fair dealing and unjust enrichment.  <u>See</u> <u>Memorandum And Order</u> (Doc. #4600) at 30-36; <u>Memorandum And Order</u> (Doc. #4616) at 10.

In light of the summary judgment rulings, the Court ordered the parties to show cause in writing what effect (if any) the summary judgment rulings had on the proposed notices and notice plan.  <u>Order To Show Cause</u> (Doc. #4601) filed July 19, 2013.  In response to the show cause order, plaintiffs asserted that the Court should not order notice to the California classes, while defendants urged the Court to order plaintiffs to give class notice before entering judgment in favor of defendants in the cases.  <u>Id.</u> at 3-4.  After considering the responses, the Court found that to issue notice after it had ruled against plaintiffs on the merits of their claims would circumvent the purposes behind Rule 23(c)(3), <u>i.e.</u> to give class members notice and an opportunity to opt out before the Court rules on the merits of the case.  <u>Id.</u> at 9.  The Court therefore ruled that it would not require

-4-

plaintiffs to give class notice regarding their claims against non-settling defendants in the California cases. Id. at 9-10.

### D.      Suggestion Of Remand And New Settlements

On November 15, 2013, the Court suggested that the MDL Panel remand to transferor courts all claims against non-settling defendants.[3] See Suggestions Of Remand And Final MDL Pretrial Order For Remanded Cases (Doc. #4671).

Following the suggestion of remand, plaintiffs entered into 18 new settlement agreements with the following defendants: (1) B-B Oil Company, Inc., (2) Chevron U.S.A. Inc., (3) Coulson Oil Company, Inc., (4) Diamond State Oil, LLC, (5) E-Z Mart Stores, Inc., (6) Flash Market, Inc., (7) G&M Oil Company, Inc. and G&M Oil Co., LLC (collectively, "G&M Oil"), (8) J&P Flash, Inc., (9) Love's Travel Stops & Country Stores, Inc., (10) M.M. Fowler, Inc., (11) Magness Oil Company, (12) Port Cities Oil, LLC, (13) Sunoco, Inc., (14) Tesoro Refining and Marketing Company LLC, (15) Thorntons Inc., (16) United El Segundo, Inc., (17) W. R. Hess and (18) World Oil Corp.

In light of the new settlements, to give plaintiffs an opportunity to obtain preliminary approval of the 18 new settlements and include them in the combined notice plan, the Court agreed to vacate deadlines for completing the notice and objection period regarding the previous 11 settlements. See Order (Doc. #4679) filed November 21, 2013; Motion To Vacate Settlement-Related Deadlines (Doc. #4673) filed November 18, 2013. Also in light of the new settlements, the Court supplemented its suggestion of remand and recommended that it retain jurisdiction over

---

[3]      In one case, Rushing v. Ambest, Inc. (N.D. Cal. No. 06-7621-PJH; D. Kan. No. 07-2300-KHV), the Court did not suggest remand for the remaining claims of one plaintiff, Lesley Duke.  See Suggestions Of Remand And Final MDL Pretrial Order For Remanded Cases (Doc. #4671) at 3 n.5.

claims against the newly-settled defendants to complete settlement approval and class notice and to resolve issues regarding attorney's fees. See Supplement To Suggestion Of Remand (Doc. #4732) filed March 23, 2014.

On April 8, 2014, the MDL Panel remanded unsettled claims in one case, Craft v. The Kroger Co., (E.D. Tex. No. 07-00271; D. Kan. No. 07-2360). See Order Lifting Stay Of Separation Of Claims And Conditional Remand Order (Doc. #4751).

This Court retains jurisdiction over plaintiffs' claims against all settling defendants.[4]

## II.     Legal Standards

### A.        Class Certification

The determination of class certification is committed to the broad discretion of the trial court. See In re Urethane Antitrust Litig., — F.3d —, 2014 WL 4801253, at *4 (10th Cir. Sept. 29, 2014); Shook v. El Paso Cnty., 386 F.3d 963, 967 (10th Cir. 2004).  In deciding whether to certify, the Court performs a "rigorous analysis" to determine whether the proposed class satisfies the requirements of Rule 23, Fed. R. Civ. P.  Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S. Ct. 2541, 2551 (2011); see also Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc., 158 F.R.D. 681, 685 (D. Kan. 1994).  As the parties seeking class certification, plaintiffs have the burden to demonstrate "under a strict burden of proof" that the requirements of Rule 23, Fed. R. Civ. P., are clearly satisfied.  Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).  In so doing, plaintiffs first must satisfy the prerequisites of Rule 23(a), that is, they must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the

---

[4]        The Court also retains jurisdiction over Duke's claims in Rushing.

representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).

Plaintiffs seek to proceed under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members," and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).  All of the other requirements apply, however, and demand even heightened attention in the settlement context.  Id.  Such attention is vital because in the settlement context, the Court generally lacks an opportunity to adjust the class as it becomes informed by the proceedings as they unfold.  Id.

**B.     Preliminary Approval Of Settlement**

Under Rule 23(e), once a class is certified, the action may not be settled, dismissed or compromised without Court approval.[5]  Preliminary approval of a proposed settlement is the first

---

[5]        Rule 23(e) provides as follows:

(continued...)

-7-

of two steps required before a class action may be settled.  See Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800(LMM), 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009).  If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement.  See id.; In re Wireless Facilities, Inc. Sec. Litig., 253 F.R.D. 630, 634 (S.D. Cal. 2008).

At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether it has any reason not to notify class members of the proposed settlement or not to hold a fairness hearing.  See Am. Med. Ass'n, 2009 WL 1437819 at *3; Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982).  The Court will ordinarily grant preliminary approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible

---

[5](...continued)
(e) SETTLEMENT, VOLUNTARY DISMISSAL, OR COMPROMISE.  The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

approval." <u>Am. Med. Ass'n</u>, 2009 WL1437819 at *3.  The standards for preliminary approval of

a class settlement are not as stringent as those applied for final approval.  <u>See</u> <u>Karvaly v. eBay Inc.</u>,

245 F.R.D. 71, 86 (E.D.N.Y. 2007).  The Court is mindful, however, that a higher degree of scrutiny

applies when determining the fairness of a settlement which is negotiated before class certification.

<u>See</u> <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 85 (2d Cir. 2001).

In deciding whether to approve a proposed settlement, the Court assesses the reasonableness

of the compromise, taking into account the context in which the parties reached settlement.  <u>See</u>

<u>Nat'l Treasury Emp. Union v. United States</u>, 54 Fed. Cl. 791, 797 (2002).  Although the Court must

assess the strength of plaintiffs' claims, it should "not decide the merits of the case or resolve

unsettled legal questions."  <u>Id.</u> (quoting <u>Carson v. Am. Brands, Inc.</u>, 450 U.S. 79, 88 n.14 (1981)).

**C.    Class Notice**

With respect to classes certified under subsection (b)(3), Rule 23(c)(2)(B) requires the

following notice:

> For any class certified under Rule 23(b)(3), the court must direct to class members
> the best notice that is practicable under the circumstances, including individual
> notice to all members who can be identified through reasonable effort. The notice
> must clearly and concisely state in plain, easily understood language:
>> (i) the nature of the action;
>> (ii) the definition of the class certified;
>> (iii) the class claims, issues, or defenses;
>> (iv) that a class member may enter an appearance through an attorney if the
>> member so desires;
>> (v) that the court will exclude from the class any member who requests
>> exclusion;
>> (vi) the time and manner for requesting exclusion; and
>> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

With respect to class settlements, Rule 23(e) requires the Court to direct notice "in a

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). The content and form of notice are left to the Court's discretion. See Gottlieb v. Wiles, 11 F.3d 1004, 1013 (10th Cir. 1993), overruled in part on other grounds by Devlin v. Scardelletti, 536 U.S. 1 (2002). Under Rule 23(e), notice of a settlement must "fairly apprise" class members of the terms of the proposed settlement and their options with respect thereto. Id. (quoting 3B Moore's Federal Practice ¶ 23.80[3], at 23-484).[6]

In addition to the requirements of Rule 23, the Due Process Clause of the Fifth Amendment of the United States Constitution guarantees unnamed class members the right to notice of class certification or settlement. See U.S. Const., amend. V; DeJulius v. New Eng. Healthcare Emp. Pension Fund, 429 F.3d 935, 943-44 (10th Cir. 2005). This due process right does not require actual notice to each party intended to be bound by adjudication of a class action. See DeJulius, 429 F.3d at 944. The Court must give "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Id. (quoting In re Integra Realty Res., Inc., 262 F.3d 1089, 1110-11 (10th Cir. 2001)). The legal standards for satisfying Rule 23(c)(2)(B) and due process are coextensive and substantially similar. See DeJulius, 429 F.3d at 944; Fed. R. Civ. P. 23(c) advisory committee's note (Rule 23(c)(2) notice designed to fulfill due process requirements).

Individual notice to identifiable class members "is not a discretionary consideration to be waived in a particular case"; rather, it is "an unambiguous requirement of Rule 23." Eisen v.

---

[6]     Rule 23(c)(2) imposes a higher notice requirement – that class members receive "the best notice practicable under the circumstances" of the pendency of a class action. Fed. R. Civ. P. 23(c)(2). This higher standard is designed to ensure that class members who desire to pursue their own claims individually have the opportunity to exercise their right to opt out of the class. See Gottlieb, 11 F.3d at 1012.

Carlisle & Jacquelin, 417 U.S. 156, 176 (1974).  Plaintiffs' pocketbooks are not a factor – the mandatory notice requirement may not be relaxed based on the high cost of providing notice. Amchem Prods., 521 U.S. at 617; Eisen, 417 U.S. at 176; Burns v. Copley Pharm., Inc., 132 F.3d 42 (Table), 1997 WL 767763, at *2 (10th Cir. Dec. 11, 1997).  Thus, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,  315 (1950).  The "constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected."  Id.  For example, publication notice does not satisfy due process where the names and addresses of the putative class members are known or very easily ascertainable. Eisen, 417 U.S. at 174-75 (citing Mullane, 339 U.S. at 318).  Rule 23(c)(2) prefers individual notice because "notice by publication ha[s] long been recognized as a poor substitute for actual notice." Id. at 175 (quoting Schroeder v. City of New York, 371 U.S. 208, 213 (1962)).  Its plain language leaves no doubt that individual notice must be provided to class members who are identifiable through reasonable effort.  Id.

### III.    Overview Of Settlements

As noted, plaintiffs seek preliminary approval of 18 settlement agreements.  The settlements require defendants to pay various amounts into settlement funds which state departments of weights and measures, or other agencies responsible for regulating retail motor fuel dispensers, can use to defray state costs of implementing automatic temperature compensation ("ATC") at retail.  In addition, the settlement funds will pay plaintiffs' attorney's fees, litigation costs, class notice expenses and costs of settlement and/or claims administration.  The Chevron settlement also provides a settlement fund to reimburse expenses incurred by retailers or wholesalers of retail motor

fuel in installing ATC at retail.

### A.   Chevron Settlement

Under the Chevron Settlement, plaintiffs seek conditional certification of subclasses for 23 states (Alabama, Arizona, California, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah and Virginia) and the U.S. Virgin Islands. Chevron Settlement Agreement at 15-18, Exhibit B2 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724).  The subclasses are defined as follows:

> All Persons who, at anytime during the Relevant Time Period, purchased motor fuel at retail in [the state or district] from a gas station that [Chevron] operates or has operated, or that [Chevron's] branded retailers or wholesalers operate or supply, or have operated or supplied.

Id.  Each subclass has its own class representative.  Id.

In exchange for a full release of class member claims relating to the underlying lawsuits, Chevron will pay $2,000,000 into a settlement fund.  Id. ¶¶ 1(ll), 7-9, 30.  In addition, Chevron will pay $125,000 into an account for class notice expenses, to be administered by class counsel. Id. ¶¶ 1(s), 7-9.  After deducting attorney's fees, litigation costs, notice expenses and costs of settlement or claims administration, the remaining proceeds, i.e. the net settlement fund, shall be allocated pro rata among the settlement states based principally on the following factors: (1) the highest number of Chevron-branded stations in each state at any point during the relevant time period; (2) the volume of motor fuel sold at retail in each state during the relevant time period, as reported by the Energy Information Administration, U.S. Department of Energy; and (3) the average temperature of motor fuel in each state, as reported by the National Institute of Standards and Technology ("NIST") in its study entitled "State Charts for Temperature of Gasoline in Filling

Station Holding Tanks." Id. ¶¶ 1(q), 13.

Of the net settlement funds allocated to each state, two thirds may be used to reimburse retailers or wholesalers selling Chevron-branded retail motor fuel for expenses incurred in installing ATC equipment. Id. ¶ 14(a). The remaining one third may be used to defray state costs of rule making, regulation, inspection or oversight related to implementing ATC at retail. Id. ¶ 14(b).

After six years, any sums remaining in the net settlement fund shall be contributed to the state. Id. ¶ 14(c)(i).

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report which accounts for each deposit into the escrow account, interest accrued and payments made. Id. ¶ 14(c)(ii).

Chevron will not oppose attorney's fees and litigation costs up to $600,000, i.e. 30 per cent of the settlement fund.[7] Id. ¶ 26.

### B.    Remaining Settlements

Under the remaining settlements, defendants agree to pay certain amounts into settlement funds which states can use to defray their costs of implementing ATC at retail. In addition, the settlement funds will pay plaintiffs' attorney's fees, litigation costs, class notice expenses and costs of settlement and/or claims admiration. Specifically, each defendant will pay the following amounts:

---

[7]      Thirty percent of the settlement amount ($2,000,000) equals $600,000.

|                 | Settlement Fund | Class Notice Fund |
|-----------------|-----------------|-------------------|
| BB Oil          | $ 20,000        | $ 1,000           |
| Coulson         | $ 20,000        | $ 1,000           |
| Diamond         | $ 20,000        | $ 1,000           |
| E-Z Mart        | $ 90,000        | n/a               |
| Flash Market    | $ 20,000        | $ 1,000           |
| G&M Oil         | $ 40,000        | n/a               |
| J&P Flash       | $ 20,000        | $ 1,000           |
| Love's          | $100,000        | $ 5,000           |
| MM Fowler       | $ 22,500        | $ 1,000           |
| Magness Oil     | $ 20,000        | $ 1,000           |
| Port Cities Oil | $ 20,000        | $ 1,000           |
| Sunoco          | $ 60,000        | $ 1,000           |
| Tesoro          | $ 50,000        | n/a               |
| Thorntons       | $ 60,000        | n/a               |
| United          | $ 40,000        | n/a               |
| W.H. Hess       | $ 20,000        | $ 1,000           |
| World Oil       | $ 40,000        | n/a               |
| TOTAL           | $662,500        | $15,000           |

The following settlements involve class claims under Arkansas law:  BB Oil, Coulson Oil, Diamond State, Flash Market, J&P Flash, Magness Oil, Port Cities and W.H. Hess (collectively, "Arkansas Settlements").  The following settlements involve class claims under California law: G&M Oil, United and World Oil (collectively, "California Settlements").  The remaining settlements involve class claims under the laws of other states or combinations of states.

    **1.**       **Arkansas Settlements: BB Oil, Coulson Oil, Diamond State, Flash Market, J&P Flash, Magness Oil, Port Cities, and W.H. Hess**

Under each Arkansas Settlement, plaintiffs seek conditional certification of an Arkansas purchasers class defined as follows:

> All persons and entities who, at any time during the period from January 1, 2001 to the date of preliminary approval of the settlement agreement in this action, purchased motor fuel in the State of Arkansas from a retail motor fuel station owned, leased, operated, or controlled by Settling Defendant.  Excluded from the class is any judicial officer presiding over this action and the members of his/her immediate family.

-14-

BB Oil Settlement at 5-6, Coulson Oil Settlement at 5-6; Diamond State Settlement at 5-6; Flash Market Settlement at 5-6; J&P Flash Settlement at 5-6; Magness Oil Settlement at 5-6; Port Cities Settlement at 5-6; W.H. Hess Settlement at 5, Exhibits B1, B3, B4, B6, B8, B11, B12 and B17 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724). For each class, the class representatives are Charles Jones and Michael Gauthreaux. Id.

The Arkansas Settlements contain similar terms: In exchange for a full release of claims relating to the underlying lawsuits, defendant will pay a settlement of $21,000, of which $1,000 will go into an account for class notice. See BB Oil Settlement at 6, Coulson Oil Settlement at 6; Diamond State Settlement at 6; Flash Market Settlement at 6; J&P Flash Settlement at 6; Magness Oil Settlement at 6; Port Cities Settlement at 6; W.H. Hess Settlement at 6. After deducting attorney's fees, litigation costs, notice expenses and costs of settlement or claims administration, the remaining proceeds, i.e. the net settlement fund, shall be allocated to the State of Arkansas to defray state costs of implementing ATC equipment at retail. See BB Oil Settlement at 8; Coulson Oil Settlement at 8; Diamond State Settlement at 8; Flash Market Settlement at 8; J&P Flash Settlement at 8; Magness Oil Settlement at 8; Port Cities Settlement at 8; W.H. Hess Settlement at 8.

Defendants will not oppose plaintiffs' request for attorney's fees up to 30 per cent of the settlement amount, i.e. $6,300.[8] Id. The 30 per cent cap does not include expenses or costs. Id.

After three years, any sums remaining in the net settlement fund shall escheat to the general fund of the State of Arkansas. See BB Oil Settlement at 9; Coulson Oil Settlement at 9; Diamond State Settlement at 9; Flash Market Settlement at 9; J&P Flash Settlement at 9; Magness Oil Settlement at 9; Port Cities Settlement at 9; W.H. Hess Settlement at 9.

---

[8]      Thirty percent of the settlement amount ($21,000) equals $6,300.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made.  Id.

### 2. California Settlements: G&M Oil; United; World Oil

Under each California Settlement, plaintiffs seek conditional certification of a settlement class defined as follows:

> All Persons who, at any time during the Relevant Time Period, purchased motor fuel at retail in the State of California from a gas station that [defendant] owns or operates or has owned or operated.

See G&M Oil Settlement at 13; United Settlement at 13; World Oil Settlement at 13, Exhibits B7, B16 and B18 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724).  For each class, the class representative is Steven Ruben.

The California settlements contain similar terms: In exchange for a full release of claims relating to the underlying lawsuits, defendant will pay $40,000 into a settlement fund to be used for contributions to the State of California to defray state costs of rule making, regulation, inspection or oversight related to implementing ATC.  See G&M Oil Settlement at 11, 13, 15; United Settlement at 11, 14, 16; World Oil Settlement at 11, 14, 16, Exhibits B7, B16 and B18 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724).

After six years, any sums remaining in the settlement fund shall be contributed to the state's general fund.  See G&M Oil Settlement at 16; United Settlement at 16-17; World Oil Settlement at 16-17.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made.  Id.

Defendants will not oppose plaintiffs' request for attorney's fees and litigation costs up to

-16-

30 per cent of the settlement amount, <u>i.e.</u> $12,000.[9]  <u>See</u> G&M Oil Settlement at 17; United Settlement at 17-18; World Oil Settlement at 17-18.  In addition, plaintiffs may seek reimbursement for expenses incurred in development and implementation of the notice plan and administering the settlement agreements.  <u>Id.</u>

### 3.    E-Z Mart Settlement (Oklahoma and Arkansas)

Under the E-Z Mart Settlement, plaintiffs seek conditional certification of subclasses for Oklahoma and Arkansas.  E-Z Mart Settlement Agreement at 5-6, Exhibit B5 to <u>Plaintiffs' Motion For Preliminary Approval</u> (Doc. #4724).  The subclasses are defined as follows:

> All persons and entities  who, at anytime during the period from January 1, 2001 to the date of preliminary approval of the settlement agreement in this action, purchased motor fuel at retail in [the state] from a retail motor fuel station owned, operated, or controlled by Settling Defendant.  Excluded from the class is any judicial officer presiding over this action and the members of his/her immediate family.

<u>Id.</u> at 6.  Each subclass has its own class representative.  <u>Id.</u>

In exchange for a full release of claims relating to the underlying lawsuits, E-Mart will pay $90,000 into a settlement fund.  <u>Id.</u> at 6-7.  After deducting attorney's fees, litigation costs, notice expenses and costs of settlement or claims administration, the remaining proceeds, <u>i.e.</u> the net settlement fund, shall be equally divided between the states to defray their costs of implementing ATC.  <u>Id.</u> at 8.

After two years, any remaining funds shall become available to the weights and measures

---

[9]    Thirty percent of the settlement amount ($40,000) equals $12,000.

departments of any of the states at issue under the settlement.  Id. at 9.[10]

After three years, any remaining funds shall be contributed to the state at issue.  Id. at 9.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made.  Id. at 10.

E-Z Mart will not oppose plaintiffs' attorney's fees and litigation costs up to 30 per cent of the settlement amount, i.e. $27,000.[11]  Id. at 7.

### 4.      Love's Settlement (Oklahoma and Georgia)

Under the Love's Settlement, plaintiffs seek conditional certification of subclasses for Oklahoma and Georgia.  Love's Settlement Agreement at 5-6, Exhibit B9 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724).  The subclasses are defined as follows:

> All persons and entities  who, at anytime during the period from January 1, 2001 to the date of preliminary approval of the settlement agreement in this action, purchased motor fuel at retail in [the state] from a retail motor fuel station owned, operated, or controlled by Settling Defendant.  Excluded from the class is any judicial officer presiding over this action and the members of his/her immediate family.

Id. at 6.  Each subclass has its own class representative.  Id.

In exchange for a full release of claims relating to the underlying lawsuits, Love's will pay a settlement $105,000, of which $5,000 will go into an account for class notice.  See id. at 6-7.  After deducting attorney's fees, litigation costs, notice expenses and costs of settlement or claims administration, the remaining proceeds, i.e. the net settlement fund, shall be equally divided between the states to defray their costs of implementing ATC.  Id. at 8.

After two years, any remaining funds shall become available to the weights and measures

---

[10]      In other words, funds originally allocated to Oklahoma would become available to Arkansas to implement ATC in Arkansas and vice versa.

[11]      Thirty percent of the settlement amount ($90,000) equals $27,000.

departments of any of the states at issue under the settlement.[12] Id. at 9.

After three years, any remaining portion of funds which were originally allocated to a particular state shall be contributed to that state. Id. at 10.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made. Id.

Defendant will not oppose plaintiffs' attorney's fees and litigation costs up to 30 per cent of the settlement amount, i.e. $31,500,[13] exclusive of expenses or costs. Id. at 7.

### 5. MM Fowler Settlement (North Carolina)

Under the MM Fowler Settlement, plaintiffs seek conditional certification of a North Carolina purchasers class defined as follows:

> All persons and entities who, at any time during the period from January 1, 2001 to the date of preliminary approval of the settlement agreement in this action, purchased motor fuel in the State of North Carolina from a retail motor fuel station owned, leased, operated, or controlled by MM Fowler, Inc. Excluded from the class is any judicial officer presiding over this action and the members of his/her immediate family.

MM Fowler Settlement at 5, Exhibit B10 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724). The class representative is Jean Neese. Id.

In exchange for a full release of claims relating to the underlying lawsuits, MM Fowler will pay a settlement of $23,500, of which $1,000 will go into an account for class notice. See id. at 6. After deducting attorney's fees, litigation costs, notice expenses and costs of settlement or claims administration, the remaining proceeds, i.e. the net settlement fund, shall be allocated to North

---

[12]    In other words, funds originally allocated to Oklahoma would become available to Georgia to implement ATC in Georgia and vice versa.

[13]    Thirty percent of the settlement amount ($105,000) equals $31,500.

Carolina to defray state costs of implementing ATC (should such implementation be approved).  See id. at 8.

Defendant will not oppose a plaintiffs' request for attorney's fees up to 30 per cent of the settlement amount, i.e. $7,050,[14] exclusive of expenses or costs.  Id. at 7.

After three years, any remaining funds shall escheat to the general fund of the State of North Carolina.  Id. at 9.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made.  Id.

### 6.    Sunoco Settlement (Indiana, Maryland, New Jersey, Pennsylvania, South Carolina and Virginia)

Under the Sunoco Settlement, plaintiffs seek conditional certification of subclasses for Indiana, Maryland, New Jersey, Pennsylvania, South Carolina and Virginia.  Sunoco Settlement Agreement at 6-7, Exhibit B13 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724).  The subclasses are defined as follows:

> All persons and entities who, at anytime during the period from January 1, 2001 to the date of preliminary approval of the settlement agreement in this action, purchased motor fuel at retail in [the state] from a retail motor fuel station owned, operated, or controlled by Sunoco, Inc. (R&M).  Excluded from the class is any judicial officer presiding over this action and the members of his/her immediate family.

Id.  Each subclass has its own class representative.  Id. at 7.

In exchange for a full release of claims relating to the underlying lawsuits, Sunoco will pay a settlement of $61,000, of which $1,000 will go into an account for class notice.  Id. at 8-9.  After deducting attorney's fees, litigation costs, notice expenses and costs of settlement or claims administration, the remaining proceeds of the settlement fund, i.e. the net settlement fund, shall be

---

[14]    Thirty percent of the settlement amount ($23,500) equals $7,050.

equally divided among the states to defray costs of implementing ATC. Id.

After two years, any remaining funds shall become available to the weights and measures departments of any of the states at issue under the settlement.[15]  Id. at 9.

After three years, any remaining portion of funds which were originally allocated to a particular state shall be contributed to that state.  Id. at 12.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made.  Id.

Sunoco will not oppose attorney's fees and litigation costs up to 30 per cent of the settlement amount, i.e. $18,300.[16]  Id. at 7.

### 7.        Tesoro Settlement (Nevada and Utah)

Under the Tesoro Settlement, plaintiffs seek conditional certification of subclasses for Nevada and Utah.  Tesoro Settlement Agreement at 5, Exhibit B14 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724).  The subclasses are defined as follows:

> All persons and entities  who, at anytime during the period from January 1, 2001 to the date of preliminary approval of the settlement agreement in this action, purchased motor fuel at retail in [the state] from a retail motor fuel station owned, operated, or controlled by Settling Defendant.  Excluded from the class is any judicial officer presiding over this action and the members of his/her immediate family.

Id. at 6.  Each subclass has its own class representative.  Id.

In exchange for a full release of claims relating to the underlying lawsuits, Tesoro will pay $50,000 into a settlement fund.  Id. at 7.  After deducting attorney's fees, litigation costs, notice

---

[15]        For example, funds originally allocated to Indiana would become available to implement ATC in Maryland, New Jersey, Pennsylvania, South Carolina and Virginia.

[16]        Thirty percent of the settlement amount ($61,000) equals $18,300.

expenses and costs of settlement or claims administration, the remaining proceeds of the settlement fund, i.e. the net settlement fund, shall be equally divided between the states to help defray costs of implementing ATC. Id. at 9.

After two years, any remaining funds shall become available to the weights and measures department of any of the states at issue under the settlement.[17] Id. at 10

After three years, any remaining portion of settlement funds which were originally allocated to a particular state shall be contributed to that state. Id. at 10.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made. Id. at 10.

Tesoro will not oppose attorney's fees and litigation costs up to 30 per cent of settlement amount, i.e. $15,000.[18] Id. at 7.

### 8.   Thorntons Settlement (Kentucky)

Under the Thorntons Settlement, plaintiffs seek conditional certification of a Kentucky purchasers class defined as follows:

> All persons and entities who, at any time during the period from January 1, 2001 to the date of preliminary approval of the settlement agreement in this action, purchased motor fuel in the State of Kentucky from a retail motor fuel station owned, leased, operated, or controlled by Thorntons Inc. Excluded from the class is any judicial officer presiding over this action and the members of his/her immediate family.

Thorntons Settlement at 5, Exhibit B15 to Plaintiffs' Motion For Preliminary Approval (Doc. #4724). The class representative is Lisa McBride. Id.

---

[17]     In other words, funds originally allocated to Nevada would become available to Utah to implement ATC in Utah and vice versa.

[18]     Thirty percent of the settlement amount ($50,000) equals $15,000.

In exchange for a full release of claims relating to the underlying lawsuits, defendant will pay $60,000 into a settlement fund.  See id. at 6. After deducting attorney's fees, litigation costs, notice expenses and costs of settlement or claims administration, the remaining proceeds, i.e. the net settlement fund, shall be allocated to the State of Kentucky to defray its costs of implementing ATC (should such implementation be approved).  See id. at 8.

Defendant will not oppose plaintiffs' request for attorney's fees up to 30 per cent of settlement amount, i.e. $18,000.[19]  Id. at 7.

After three years, any remaining funds shall escheat to the general fund of the State of Kentucky.  Id. at 8.

Semi-annually, until the settlement fund is exhausted, class counsel shall file a report accounting for each deposit into the escrow account, interest accrued and payments made.  Id. at 9.

## IV.     Analysis

Plaintiffs seek an order which (1) conditionally certifies the proposed settlement classes; (2) preliminarily approves the proposed settlements; (3) directs and approves distribution of class notice; (4) sets a final hearing for approval of the proposed class settlements; and (5) appoints counsel for the proposed settlement classes.  To preliminarily approve the proposed settlements, the Court determines whether class certification appears appropriate under Rule 23(a) and (b)(3) and whether the proposed settlements appear fair, reasonable and adequate under Rule 23(e)(2).

### A.     Conditional Class Certification

As noted, plaintiffs seek conditional certification of various settlement classes and subclasses of motor fuel purchasers in the settlement states.  The proposed settlement classes and subclasses

---

[19]     Thirty percent of the settlement amount ($60,000) equals $18,000.

are similar to those which the Court approved with regard to other settlements.  See, e.g., Memorandum And Order (Doc. #4464) filed November 20, 2012 at 6-7 (conditional approval of refiner settlements); see also In re Motor Fuel Temp. Sales Pract. Litig., No. 07-1840, 2012 WL 1415508, at *4 n.9, 9-11 (D. Kan. April 24, 2012) (final approval of Costco settlement).  For the same reasons, the Court finds that conditional certification of the proposed settlement classes is appropriate.  Specifically, the Court finds that the proposed settlement class and subclass definitions are adequate to identify the persons (1) entitled to relief, (2) bound by a final judgment and (3) under Rule 23(c)(2) entitled to the best notice practicable in a Rule23(b)(3) action.  In addition, it appears that plaintiffs can satisfy the numerosity, commonality, typicality and adequate representation requirements of Rule 23(a)(1), (2), (3) and (4).  Further, it appears that plaintiffs can meet the requirements of Rule 23(b)(3), i.e. that questions of law or fact common to members of the classes predominate over any questions affecting individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Accordingly, the Court will conditionally certify the proposed settlement classes subject to plaintiffs demonstrating at the final approval hearing – "under a strict burden of proof" – that the requirements of Rule 23(a) and (b)(3) are clearly satisfied.

**B.      Preliminary Approval Of Proposed Settlements**

Plaintiffs ask the Court to preliminarily approve the proposed settlements.  In determining whether a proposed settlement is fair, reasonable and adequate, the Court considers the following factors :

(1)     whether the proposed settlement was fairly and honestly negotiated;
(2)     whether serious questions of law and fact exist, placing the ultimate outcome
        of the litigation in doubt;
(3)     whether the value of an immediate recovery outweighs the mere possibility
        of future relief after protracted and expensive litigation; and
(4)     the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002).  While the Court

will consider these factors in depth at the final approval hearing, they are a useful guide at the

preliminary approval stage as well.  See Lucas v. Kmart Corp., 234 F.R.D. 688, 693 (D. Colo. 2006);

Am. Med. Ass'n, 2009 WL 1437819 at *3.

        As to the first factor, i.e. whether the proposed settlement was fairly and honestly negotiated,

the Court has no reason to believe that the parties did not fairly and honestly negotiate the proposed

settlements.  This factor weighs in favor of preliminary approval.

        As to the second factor, i.e. whether serious questions of law and fact place the ultimate

outcome of the litigation in doubt, the proposed settlements were negotiated in the midst of this

Court's suggestion of remand to the transferor courts, after plaintiffs had lost the Kansas trial and

summary judgment motions in the California cases.  In other words, plaintiffs reached the proposed

settlements at a time when serious questions of law and fact placed the ultimate outcome of the

litigation in doubt.  This factor weighs in favor of preliminary approval.

        As to the third factor, i.e. whether the value of an immediate recovery outweighs the mere

possibility of future relief after protracted and expensive litigation, the Court examines how class

members would benefit under each proposed settlement.  Previously, the Court found that class

members would benefit from an opportunity to purchase fuel at ATC because it would allow them

an opportunity to achieve accuracy and consistency of fuel measurement for their fuel dollar,

regardless of fuel temperature at the time of pumping.  See In re Motor Fuel, 2012 WL 141558,

at *14 (approving Costco settlement). Here, the proposed settlements are designed to give class members such an opportunity. The Chevron Settlement provides funds to facilitate the implementation of ATC at Chevron-branded stations. The remaining settlements provide funds to help state agencies facilitate ATC statewide. In light of plaintiffs' losses in the Kansas trial and on summary judgment in the California cases, the proposed settlements appear to be a fair and reasonable compromise of plaintiffs' claims.

The settlements with E-Z Mart, Love's, Sunoco and Tesoro, however, contain a provision which does not appear to be in the best interest of class members. In particular, these settlements provide that if a state weights and measures department does not use its allocated portion of the settlement fund within the specified time period, the money will become available to any other state at issue under the settlement to use to facilitate ATC in the other state. Then, only after other states have had a shot at the money, would it revert to the general fund of the state to which the settlement funds were originally allocated. <u>See</u> E-Z Mart Settlement at 9; Love's Settlement at 9; Sunoco Settlement at 9; Tesoro Settlement at 10.

Under the settlements which the Court previously approved, if the state weights and measures department does not use all of the settlement fund which is allocated to a particular state within the specified time period, the remaining funds shall be contributed to the general fund of the state to which they were originally allocated. In approving the previous settlements, the Court examined *cy pres* principles and stated as follows:

> [W]hen feasible, the Court should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. Here, the parties have not been able to identify a beneficiary whose interests reasonably approximate those being pursued by the class. It thus appears that allowing undistributed funds to escheat to the state is a viable alternative. *In particular, it appears that the vast majority of settlement class members are residents of, and tax payers in, the state in*

-26-

> *which they bought gas. As such, they would benefit directly from the proposed*
> *distribution.* The Court notes that the first course of distribution, <u>i.e.</u> to reimburse
> retailers and state weights and measures agencies to help facilitate the
> implementation of ATC, is specifically directed at promoting interests pursued by
> class members in these lawsuits.  The cy pres provision kicks in only if retailers and
> state agencies do not fully utilize the funds for that intended purpose.  Moreover,
> allowing unused funds to escheat to the states will help serve the deterrence and
> enforcement goals of the underlying state statutes.

<u>Memorandum And Order</u> (Doc. #4464) filed November 20, 2012 at 12 (footnote omitted, emphasis added).

With regard to the previous settlements, the Court reasoned that the vast majority of settlement class members are residents of, and tax payers in, the state in which they bought gas and would therefore benefit directly from a *cy pres* distribution to that state's general fund.  Applying the same logic to the new settlements, it appears that class members who purchased motor fuel in one state would <u>not benefit</u> by giving settlement funds which are allocated to their state to another state to implement ATC in that state.  Subject to the parties amending this provision, the third factor weighs in favor or preliminary approval.

As to the fourth factor, <u>i.e.</u> the judgment of the parties that the settlement is fair and reasonable, the settling parties obviously believe that the proposed settlements are fair and reasonable.  This factor weighs in favor of preliminary approval.

Based on the foregoing analysis, the Court preliminarily finds that the proposed settlements are fair, reasonable and adequate.  Accordingly, the Court will preliminarily approve the proposed settlements with one exception:  Regarding the settlements with E-Z Mart, Love's, Sunoco and Tesoro, on or before **November 3, 2014,** the parties may file stipulations or amended settlements which omit the provision which allows states to use settlement funds which are allocated to another state.

### C.     Class Notice

As noted, under Rule 23, Fed. R. Civ. P., plaintiffs must give individual notice to any class members who can be identified through reasonable effort.  Based on statements provided by the newly-settling defendants, the Court finds that plaintiffs cannot identify individual class members with reasonable effort.  See Exhibits E1 thru E18 to Plaintiffs' Motion For Preliminary Settlement Approval (Doc. #4724); see also Memorandum And Order (Doc. #4648) filed September 20, 2013.

Plaintiffs seek to include the 18 new settlements in the class notice plan which the Court previously approved.  See Plaintiffs' Motion For Preliminary Settlement Approval (Doc. #4724) at 24-25; Notice Of Revised Class Settlement Notice Forms (Doc. #4749) filed March 26, 2014 and exhibits thereto.  The Court has carefully reviewed the revised notice forms and finds that they meet the requirements of Rule 23.  Accordingly, the Court will approve the proposed notice plan, as revised.

### D.     Settlement Class Counsel

Plaintiffs ask the Court to appoint Robert A. Horn, Thomas V. Girardi and George A. Zelcs as lead counsel and Thomas V. Bender as liaison counsel for the proposed settlement classes.  The Court has already appointed these counsel to serve in such positions with respect to the MDL proceedings and the other settlements.[20]  Accordingly, the Court will grant plaintiffs' request.

**IT IS THEREFORE ORDERED** that the Motion Of Plaintiffs For Order Conditionally Certifying Settlement Classes, Preliminarily Approving Eighteen (18) Class Action Settlements, Directing And Approving Distribution Of Class Notice, Setting Hearing For Final Approval Of

---

[20]     See Doc. #4424 filed September 28, 2012 at 40; Doc. #2118 filed September 22, 2011 at 24; Doc. #179 filed September 19, 2007; Doc. #150 filed September 12, 2007;  Doc. #148 filed September 11, 2007; Doc. #145 filed September 7, 2007.

Class Action Settlements And Appointing Class Counsel (Doc. #4724) filed March, 15, 2014 be and hereby is **SUSTAINED in part**.

Regarding the proposed settlements with (1) B-B Oil Company, Inc.; (2) Chevron U.S.A. Inc.; (3) Coulson Oil Company, Inc.; (4) Diamond State Oil, LLC; (5) Flash Market, Inc.; (6) G&M Oil Company, Inc. and G&M Oil Co., LLC; (7) J&P Flash, Inc.; (8) M.M. Fowler, Inc.; (9) Magness Oil Company; (10) Port Cities Oil, LLC; (11) Thorntons Inc.; (12) United El Segundo, Inc.; (13) W. R. Hess; and (14) World Oil Corp, the Court preliminarily approves the settlements and conditionally certifies the proposed settlement classes, subject to plaintiffs demonstrating at the final approval hearing "under a strict burden of proof" that the requirements of Rule 23(a) and (b)(3) are clearly satisfied.

Regarding the settlements with E-Z Mart Stores, Inc., Love's Travel Stops & Country Stores, Inc., Sunoco, Inc. and Tesoro Refining and Marketing Company LLC, on or before **November 3, 2014,** the parties may file stipulations or amended settlements which omit the provision which allows states to use settlement funds which are allocated to another state.

After the parties have had an opportunity to amend the E-Z Mart, Love's, Sunoco and Tesoro settlements, the Court will set a time line for completing the notice and objection period and schedule a final approval hearing.

**IT IS FURTHER ORDERED** that the Court appoints Robert A. Horn, Thomas V. Girardi and George A. Zelcs as lead counsel and Thomas V. Bender as liaison counsel for the proposed settlement classes.

Dated this 27th day of October, 2014 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge