**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: MOTOR FUEL TEMPERATURE ) | |
| SALES PRACTICES LITIGATION ) | |
| ) | |
| ) | **MDL No. 1840** |
| ) | |
| **(This Document Relates to All Cases)** ) | **Case No. 07-md-1840-KHV** |
| ) | |
| _____ ) | |

## REPORT AND RECOMMENDATIONS

### NOTICE

Any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), may file

written objections to this Report and Recommendation within fourteen (14) days after being

served with a copy.  A party must file any objections within the fourteen-day period if that party

wants to have appellate review of the proposed findings of fact, conclusions of law, or

recommended disposition.  If no objections are timely filed, no appellate review will be allowed

by any court.

## I.    NATURE OF THE MATTER BEFORE THE COURT

This matter is before the Court on Plaintiffs' Motion for Award of Attorneys' Fees,

Expenses, and Class Representative Incentive Awards (ECF No. 1820), and Plaintiffs' Second

Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive Awards

(ECF No. 4827).  For the following reasons, the undersigned Magistrate Judge recommends that

Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive

Awards (ECF No. 1820) be GRANTED IN PART, and that Plaintiffs' Second Motion for Award

of Attorneys' Fees, Expenses, and Class Representative Incentive Awards (ECF No. 4827) be

GRANTED.

## II.     BACKGROUND

This multi district litigation ("MDL") proceeding arises from the Defendants' alleged practice of selling fuel in twenty-nine states and jurisdictions at retail without correcting for the effects of temperature on the quality, quantity and value of motor fuel, or disclosing those effects to consumers.  Specifically, the class Plaintiffs and class members have alleged that Defendants do not adjust the volume or price of such motor fuel (or the amount of fuel excise tax recoupment passed on to consumers) to compensate for the effect of temperature expansion, which affects both the quality and quantity of motor fuel sold on a volumetric basis.  In addition, class Plaintiffs allege that Defendants have sold motor fuel to retail consumers without disclosing the temperature of fuel or meaningful information about the effects of temperature on motor fuel.  As a result, class Plaintiffs brought suit on behalf of themselves and all other similarly situated individuals and entities that purchased motor fuel at retail, alleging multiple common law and statutory causes of action, including unjust enrichment and consumer protection violations.

Defendants have denied all factual allegations and legal claims of class Plaintiffs, and contend that the retail motor fuel practices and methods of sale are proper, legal and do not violate any law or regulation.  The refiner Defendants also contend that they are not responsible for the retail motor fuel sales by retail locations that carry their brand names but which they do not own or control.

On June 18, 2007, the Judicial Panel on Multi District Litigation consolidated fifty-one lawsuits filed in various United States District Courts pursuant to 28 U.S.C. § 1407, transferring all such cases and subsequent tag-along actions to presiding District Judge Kathryn H. Vratil for coordinated and consolidated pretrial discovery and preparation.

Judge Vratil, along with the assigned Magistrate Judge, James P. O'Hara, worked diligently on this MDL case for many years. Judge Vratil is familiar with the matter to a degree that could be matched only by the parties. Although the undersigned has made every effort to familiarize herself with the procedural background, facts and relevant legal principles to the extent necessary to prepare this Report and Recommendation, she recognizes that she is limited to what she could learn from a brief opportunity to review the written record and from the hearing she conducted on November 19, 2015.

Because Judge Vratil is intimately familiar with all aspects of this case, it is unnecessary to include in this Report and Recommendation a lengthy recitation of the case history or the parties' claims and defenses. The motions referred to the undersigned became ripe when Judge Vratil granted final approval to the settlement between Plaintiffs and Defendant Costco Wholesale Corporation ("Costco"),[1] and to twenty-eight settlements between Plaintiffs and various Defendants.[2] As Judge Vratil wrote in her Memorandum and Order approving the Costco settlement:

> The Court intends to defer any consideration of fees until all settlements have been finalized, so as to fashion a total fee award which comprehensively and equitably addresses all of the factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). In the meantime, to bring finality and certainty to the settlement process, the parties may wish to consider settlement discussions and/or alternative dispute resolution of the fee issue.[3]

---

[1] *See* Memorandum and Order (ECF No. 4248).

[2] *See* Memorandum and Order (ECF No. 4851).

[3] ECF No. 4248 at 40. The parties did not otherwise resolve the fee issue, leaving Plaintiffs' motions ripe for the Court to rule.

Judge Vratil scheduled a November 19, 2015 hearing on Plaintiffs' motions.[4]  That

morning, Judge Vratil referred the motions to the undersigned Magistrate Judge for a Report and

Recommendation,[5] and Magistrate Judge James conducted the hearing as scheduled.  After

considering the motions, responses and objections, the Court recommends that Judge Vratil grant

in part Plaintiffs' motions as detailed below.

## III.    LEGAL STANDARDS

In a certified class action, Rule 23 of the Federal Rules of Civil Procedure allows a court

to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the

parties' agreement."[6]  A request for fees must be made by motion, notice of the motion must be

directed to class members in a reasonable manner, and class members may object to the motion.[7]

In class actions, the district court has broad authority over awards of attorneys' fees.[8]  The Court

is mindful of the Supreme Court's admonition that "[a] request for attorney's fees should not

result in a second major litigation."[9]

---

[4] ECF No. 4851 at 63.

[5] ECF No. 4884.  *See* Fed. R. Civ. P. 23(h)(4) (court may refer issues related to amount of attorneys' fee award to a magistrate judge).

[6] Fed. R. Civ. P. 23(h).

[7] Fed. R. Civ. P. 23(h)(1)-(2).  Judge Vratil found that class members received sufficient information regarding attorneys' fees to allow class members a fair opportunity to lodge general objections to the settlements and fee requests.  However, because class members had not been given a chance to specifically respond or object to the actual fee motion regarding the twenty-eight settlements, Judge Vratil allowed additional time before the November 15, 2015 hearing for responses and objections thereto.  ECF No. 4851 at 61-62.

[8] *Law v. Nat'l Collegiate Athletic Ass'n*, 4 Fed. App'x 749, 751 (10th Cir. 2001).

[9] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The Court has no difficulty in finding that class counsel are entitled to recover attorneys' fees and costs. The fees and costs are authorized by law and the parties' settlement agreements all address the issue in one way or another. As to the twenty-four settlements where each Defendant is paying a lump sum to create a fund to facilitate retailers' and regulators' transition to automatic temperature compensation ("ATC") (the "Fund Settlements"),[10] Plaintiffs are seeking attorneys' fees, costs, and incentive payments only from the twelve Fund Settlements that equal or exceed $50,000.[11] Defendants in this group of Fund Settlements agree not to oppose attorneys' fees and litigation costs up to 30 percent of the settlement amounts.[12] In the settlements involving installation of retail ATC (the "ATC Settlements") but excluding Costco, each Defendant agrees to pay a sum certain for attorneys' fees.[13] Costco agrees to pay any fees and costs which the Court awards; the parties' final settlement agreement does not provide a cap for attorneys' fees, but the class notice that Costco placed on its website stated that Plaintiffs' fee

---

[10] For an allocation of the settlement proceeds, *see* Memorandum and Order (ECF No. 4851) at 16-17.

[11] These Fund Settlements include Defendants BP, CUSA, CITGO, ConocoPhillips, ExxonMobil, E-Z Mart Stores, Love's, Shell, Sinclair, Sunoco (R&M), Thorntons, and Tesoro. *See* ECF No. 4827 at 13-14.

[12] *See* ECF No. 4851 at 16 n.26, 19-21 nn.33-41 (BP, CITGO, ConocoPhillips, ExxonMobil, Shell, Sinclair, Chevron, BB Oil, Coulson, Diamond State, Flash Market, J&P Flash, Magness, Port Cities, W.H. Hess, G&M, United, World, E-Z Mart, Love's, MM Fowler, Sunoco, Tesoro, and Thornton agree not to oppose up to 30%).

Plaintiffs are not seeking attorneys' fees for the twelve Fund Settlements that are less than $50,000. These Fund Settlements include Defendants BB Oil, Coulson, Diamond State, Flash Market, G&M, J&P Flash, Magness, MM Fowler, Port Cities, United, World, and W.H. Hess. *See id.*

[13] *Id.* at 18 n.31 (Casey's, Dansk, Sam's Club and Valero agree to sums certain).

request would not exceed $10 million.[14]  Thus, as to all settling Defendants except those

included in the twelve Fund Settlements of less than $50,000, the Court finds that class counsel

are entitled to recover attorneys' fees and costs.

Plaintiffs request that the Court set the amount of fees by using the common benefit

doctrine.  "The award of attorneys' fees to plaintiffs in class action . . . suits is based upon the

common benefit doctrine, an exception to the American Rule that prevailing litigants must pay

their own attorneys' fees."[15]  The doctrine applies where Plaintiffs' successful litigation confers a

substantial benefit on the members of an ascertainable class.[16]  "The common benefit doctrine

originates from the common fund exception, under which 'the successful plaintiff is awarded

attorney fees because his suit creates a common fund, the economic benefit of which is shared by

all members of the class.'"[17]

The Fund Settlement Defendants and the ATC Settlement Defendants other than Costco

have filed no response to Plaintiffs' Second Motion for Award of Attorneys' Fees, Expenses, and

Class Representative Incentive Awards,[18] nor did they appear at the November 19, 2015 hearing.

In light of their silence and consistent with the approved settlements between Plaintiffs and these

Defendants, the Court considers Plaintiffs' choice of methodology to be unopposed by sixteen of

the seventeen Defendants from whom Plaintiffs seek to recover fees.

---

[14] ECF No. 4248 at 13 n.10.

[15] *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995) (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)).

[16] *Rosenbaum*, 64 F.3d at 1444 (quoting *Hall*, 412 U.S. at 5).

[17] *Rosenbaum*, 64 F.3d at 1444 (citations omitted).

[18] ECF No. 4827.

Costco opposes Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive Awards[19] in many respects, including whether the Court should apply common benefit analysis. Costco argues that the common benefit approach does not apply but even if it does, the Court must apply a lodestar analysis of reasonable hours and hourly rates to calculate attorneys' fees.[20] Plaintiffs accept that regardless of the method the Court employs, the Court must also consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). As noted above, Judge Vratil made clear that Plaintiffs' fee requests would be subject to *Johnson.*[21]

The Court concludes that under the law of the Tenth Circuit, the common benefit method is appropriate. Plaintiffs and Costco recognize that the starting point of this analysis comes from the following passage in *Rosenbaum v. MacAllister*, 64 F.3d 1439 (10th Cir. 1995).

> When there is a common fund created by a settlement, courts have applied one of two methods of determining reasonable attorney's fee awards: by a percentage of the fund, or by the lodestar method developed in the statutory fee shifting cases. *See Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993). We have recently implied "a preference for the percentage of the fund method" in common fund cases. *Gottlieb v. Barry*, 43 F.3d [474,] . . . 483 [(10th Cir. 1994)]. "In all cases, whichever method is used, the court must consider the twelve *Johnson* factors.[22]

---

[19] ECF No. 1820.

[20] *See* Defendant Costco Wholesale Corporation's Opposition to Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive Awards (ECF No. 2022) at 14-15.

[21] *See* ECF No. 4248 at 40.

[22] 64 F.3d at 1445.

In *Rosenbaum*, a shareholder derivative suit, the Tenth Circuit concluded that it was "a common *benefit*, but not a common *fund*, case, and that a percentage of the fund approach [was] not appropriate."[23]  However, the Tenth Circuit noted that it was unclear whether the district court had applied a percentage of the fund or a lodestar analysis, and on remand stated that the district court was not required to follow a strict lodestar analysis.[24]  The Tenth Circuit's instructions on remand were informed by the particular circumstances of the case, *i.e.* shareholder class members would receive a benefit from the settlement only if they purchased additional company shares.[25]  The Court appeared troubled, noting that "any special benefit to the corporation resulting from the lawsuit action seems illusory."[26]

The Court concludes that the Tenth Circuit's disapproval of percentage of the fund approach in *Rosenbaum* resulted from the unique settlement terms in that case.[27]  Additionally, since *Rosenbaum*, the line between common benefit and common fund cases is less clear.  For instance, in *In re Sprint Corporation ERISA Litigation*, 443 F. Supp. 2d 1249 (D. Kan. 2006), Judge Lungstrum analyzed Plaintiffs' fee request in a settlement that included Defendants making payments of some items with identifiable dollar amounts, as well as enacting

---

[23] *Id.* at 1447 (emphasis added).

[24] *Id.* at 1445, 1447-48.

[25] "There was no fund of money obtained for the class to share.  Rather most class members had to pay the defendant corporation 97% of the market price for additional shares in order to realize any benefit."  *Id.* at 1447.

[26] *Id.*

[27] In contrast, class members here will benefit from obtaining more information and greater transparency when they make every-day fuel purchases.

amendments to the ERISA plan and implementing participant communications improvements.[28] The parties did not place a value on these latter items, but Judge Lungstrum found that "those aspects of the settlement are worth significant value to the class members which the court estimates to be in the range of millions of dollars."[29]  Judge Lungstrum made this finding in connection with his analysis of the eighth *Johnson* factor, which considers the amount involved and the results obtained.  It stands to reason that a court may need to place a monetary value on a benefit as it applies the *Johnson* factors, resulting in a blurring of the lines between common benefit and common fund cases.

The oft-quoted description of the common benefit exception to the American Rule begins with a statement that the exception applies where "the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class.'"[30]  In a recent class action case, the Tenth Circuit wrote that "[t]he fact that relief here is declaratory relief, rather than damages, does not prevent the finding of a substantial benefit."[31]  The Tenth Circuit cited *Mills v. Electric Auto-Lite Company*, 396 U.S. 375 (1970), a shareholder suit in which plaintiffs were seeking to recover attorneys' fees from the corporation.  After describing the common benefit exception,

---

[28] 443 F. Supp. 2d at 1270.

[29] *Id.*

[30] *Hall v. Cole*, 412 U.S. 1, 5 (1973) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)).

[31] *Schell v. OXY USA Inc.*, Nos. 13-3297, 13-3304, 2016 WL 522918, at *12 n.12 (10th Cir. Feb. 9, 2016).  *See also Tennille v. Western Union Co.*, No. 09-00938, 2013 WL 6920449, at *9-10 (D. Colo. Dec. 31, 2013) (court values injunctive relief for purposes of inclusion in common fund to determine attorneys' fee award; rejects applying lodestar to injunctive relief because doing so would require "reviewing thousands of time entries, covering years of litigation").

the Supreme Court noted that the lack of a monetary recovery does not preclude an award of

attorneys' fees.

> The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a "common fund" for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses.[32]

Previously in 1939, the Supreme Court awarded fees to a plaintiff who did not sue in a

representative capacity, but whose successful action to recover trust funds established as a matter

of law the right to recover for fourteen other similarly situated trusts.[33] The Court wrote the

following:

> In her main suit the petitioner neither avowed herself to be the representative of a class nor did she automatically establish a fund in which others could participate. But in view of the consequences of stare decisis, the petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds.
>
> That the party in a situation like the present neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements of the kind for which the petitioner in this case appealed to the chancellor's discretion. . . . [W]hen such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.[34]

---

[32] *Mills*, 396 U.S. at 392.

[33] *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).

[34] *Id.* at 166-67.

The lessons from *Schell, Mills, Sprague* and *In re Sprint* lead this Court to conclude that the nature of Costco's ATC settlement does not render inapplicable a percentage of fund award to Plaintiffs. Although it may not be possible to determine the monetary value that will flow from Costco's conversion to ATC, the Court finds that such injunctive relief will create a benefit that would not otherwise have occurred but for Plaintiffs' prosecution of this MDL proceeding. Indeed, Costco agrees. In its opposition to Plaintiffs' attorneys' fee motion, Costco acknowledges that "the injunctive relief contemplated in the settlement results in a very real benefit to settlement class members,"[35] and that "[t]he litigation has already resulted in a benefit to Costco customers in the form of additional information at the pump . . . [which] provides added transparency regarding the manner in which Costco sells motor fuel and enables customers to make informed decisions in purchasing motor fuel."[36]

Costco later reaffirmed its position that ATC results in a real benefit to class members. In its surreply to Plaintiff's attorneys' fee motion, Costco states the following:

> Costco has been consistent throughout this litigation. For example, Costco has consistently asserted that the injunctive relief contemplated in the settlement results in a real benefit to settlement class members. . . . Costco argues . . . that the lack of monetary relief is a factor in determining the proper amount for attorneys' fees in this case.[37]

---

[35] ECF No. 2022 at 31.

[36] *Id.* at 31 n.23.

[37] Defendant Costco Wholesale Corporation's Sur-Reply in Opposition to Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive Awards (ECF No. 2086) at 5. At the November 19, 2015 hearing, the undersigned Magistrate Judge orally granted Costco's motion for leave to file its surreply (ECF No. 2084). *See* ECF No. 4886.

Costco's position on this point is consistent with the Court's understanding of the law. Because the injunctive relief provides a substantial benefit to the class, it is appropriate to use the percentage of fee approach in deciding Plaintiffs' attorneys' fees. In making the decision as to the amount of those fees, however, a relevant consideration is the lack of monetary relief.

Finally, the Court notes that Judge Vratil approved the settlement under Rule 23 of the Federal Rules of Civil Procedure, which requires the court to find that a proposed class action settlement is fair, reasonable and adequate before granting approval.[38] In her analysis, she found as follows: "[T]he value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Obtaining injunctive relief for temperature adjusted motor fuel sales is a primary goal of plaintiffs' cases. For the conversion states, the proposed settlement achieves that goal."[39] The Court need not find that Plaintiffs achieved their every objective in the settlement; to apply the percentage of fee approach to the fee award, it is only necessary to find that the Costco settlement provides a substantial benefit. The Court so finds.

As discussed below, the Court is also attentive to lodestar as a cross-check on the amount of attorneys' fees the Court recommends. However, the Court does not consider it necessary to conduct a full-blown lodestar analysis. The Court is familiar with the Tenth Circuit's comment that "[o]ur approach has been called a 'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar."[40] *Gottlieb* cites the law

---

[38] *See* ECF No. 4248 at 27-28 (citing Fed. R. Civ. P. 23(e)(2) and adopting reasons stated in her previous order finding settlement fair, reasonable and adequate where obtaining injunctive relief is primary goal of Plaintiffs' cases).

[39] Memorandum and Order (ECF No. 1707) at 41.

[40] *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994).

review note that dubbed the approach "hybrid."[41]  The note suggests that a number of courts have hybrid approaches, and for support that the Tenth Circuit is among them, the author cites a single case, *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 (10th Cir. 1988).   The undersigned Magistrate Judge disagrees with the author that *Brown* created a hybrid approach that requires a combined percentage of fee and lodestar analysis.  As Judge Tacha's thoughtful opinion in *Brown* describes (and affirms) Judge Wesley Brown's attorneys' fee award to class action plaintiffs' counsel, Judge Brown awarded fees using a percentage of the fund method after he thoroughly analyzed the applicable *Johnson* factors.[42]  The Tenth Circuit also recognized "the subjective nature of the determination a trial judge must make when an award is *not* anchored in the seemingly more objective lodestar formula."[43]  The *Brown* court specifically held that in awarding attorneys' fees in a common fund case, the "time and labor involved" factor need not be evaluated using the lodestar formulation when, in the district court's judgment, giving greater weight to other factors produces a reasonable fee.[44]  Indeed, a district court is justified and perhaps compelled to assign relative weights to the *Johnson* factors in a common fund case. "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation."[45]  Nothing in the *Gottlieb* or *Brown* opinions supports the notion that the Tenth Circuit requires a lodestar analysis overlay to a percentage of fund analysis.  Moreover, in its

---

[41] Monique Lapoint, *Attorney's Fees in Common Fund Actions*, 59 Fordham L. Rev. 843 (1991).

[42] *Brown*, 838 F.2d at 455 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately.").

[43] *Id.* at 456 (emphasis added).

[44] *Id.*

[45] *Id.*

more recent opinion in *Rosenbaum*, the Tenth Circuit cited *Gottlieb* as having implied a preference for the percentage of fund method in common fund cases.[46]

Guided by the overarching requirement of reasonableness, the Court will apply the percentage of fee approach to Plaintiffs' motions.

## IV.    ANALYSIS

There are three categories of fee requests to analyze in light of the *Johnson* factors.  The first includes the Fund Settlements in which Defendants have contractually agreed to pay a sum certain of 30 percent of their settlement amounts; the second includes the four ATC Defendants who contractually agreed to a sum certain;[47] and the third relates to Costco.  The Court will analyze the first two categories together.

### A.    Attorneys' Fees Sought from Settlements with Contractual Agreement

Plaintiffs propose to deduct the litigation expenses that they seek to recoup, as well as the named-Plaintiff incentive payments they seek, from the attorneys' fees awarded under the Fund Settlements and the ATC Settlements.  Stated another way, Plaintiffs' request of awards of 30 percent of the settlement amount from each of the twelve Fund Settlements from which they seek awards and from the ATC Settlements (excluding Costco) are inclusive of attorneys' fees, litigation expenses, and class representative expenses.  Plaintiffs assert that they have incurred more than $4 million in expenses in this litigation.[48]  Eighty class plaintiffs are participating in

---

[46] *Rosenbaum*, 64 F.3d at 1445.

[47] As Mr. Horn described during the hearing, all of the Fund Settlements have the following provision: If the court orders less than 30 percent in fees, the difference between 30 percent and the amount ordered by the court will return to the Defendant(s) in question.  If the court orders more than 30 percent in fees, the settlement is no longer in force.

[48] Plaintiffs' Hearing Ex. 1 at p. 6.

the settlements as subclass representatives, and Plaintiffs seek class incentive payments for each.[49] Each such representative would receive payment in the range of $1,000 to $4,000, totaling $243,000 in incentive payments.[50] After deducting expenses and incentive payments from the requested amounts, the percentage Plaintiffs seek from the Fund Settlements in attorneys' fees alone becomes less than 30 percent.

The total amount of fees agreed to in the twelve Fund Settlements is $7,189,800. The total amount of fees that the four ATC Settlement Defendants (other than Costco) agree to pay is $7,758,000. Therefore, the total of agreed attorneys' fees from the twenty-eight settlements with contractual agreements is $14,947,800.

## B.    Attorneys' Fees Sought from Costco

Although the settlement agreement between Plaintiffs and Costco does not provide a cap for attorneys' fees, Judge Vratil noted in her order granting final approval that Costco agrees to pay any fees and costs which the Court awards.[51] The detailed notice that Costco placed on its

---

[49] The subclass representatives came into being because Judge Vratil found inadequate class representation without them. *See* Memorandum and Order approving Costco settlement (ECF No. 4248) at 23-24.

[50] *See* ECF No. 4827-1.

[51] ECF No. 4248 at 13. Judge Vratil disagreed with objections that the settlement is unfair because it provides excessive attorneys' fees.

> Similar to incentive fees, the proposed amended settlement allows class counsel an opportunity to request up to $10 million in attorneys' fees, but it does not require such payment. Instead, it leaves the Court discretion to award attorneys' fees, if warranted. Under the circumstances, the Court is confident that any fee award can be fair and reasonable.

*Id.* at 35.

website stated that counsel's fee request would not exceed $10 million.[52] Indeed, in their 2011

motion Plaintiffs requested that precise amount.[53] During the hearing, Costco's counsel, Mr.

McDowell, stated that Plaintiffs had later advised Judge Vratil that they would be seeking $3-$4

million in fees, but at the hearing Plaintiffs orally requested fees in the range of $4-$5 million.

In response to the Court's question as to why Plaintiffs had changed the amount of their request,

Mr. Horn stated that he still believed the original request of $10 million to be appropriate. After

reaching settlement agreements with other Defendants, however, class counsel thought it

appropriate to lower the request in consideration of the totality of the circumstances. Mr. Horn

acknowledged that Plaintiffs had increased the request from a range of $3-$4 million to a range

of $4-$5 million, and explained the reasons are that class counsel had continued work on the

matter and that Costco had elected to appeal Judge Vratil's order approving the settlement, thus

depriving Plaintiffs of the ability to resolve the matter.[54]

Costco's settlement falls in the ATC Settlements category, and accordingly contains no

settlement fund. As the undersigned Magistrate Judge has determined, the injunctive relief that

Costco has agreed to grant in the form of conversions provides substantial value to the class.

However, no practical means exist to assign a total value to the Costco settlement. In their

original motion for approval of settlement, Plaintiffs offered the valuation from the expert report

of Dr. Andrew Safir, who opines that the Costco settlement has a value in excess of $100

---

[52] *Id.* at n.10.

[53] ECF No. 1820 at 2.

[54] Judge Vratil entered her judgment on September 22, 2015 (ECF No. 4860). Four appeals from that judgment are pending in the Tenth Circuit: Nos. 15-3221, 15-3227, 15-3228, and 15-3254. The last numbered is Costco's appeal of its settlement.

million.[55]  Costco presented no opposing expert opinion, but in its opposition to Plaintiffs'

attorneys' fee motion it cites the opinion of Dr. David Henderson, an expert witness retained by

the Alkon objectors, who concludes no evidence exists that ATC will benefit the class.[56]  Having

stated in the same document that "the injunctive relief contemplated by the settlement results in a

very real benefit to settlement class members,"[57] however, the Court rejects any suggestion by

Costco that the settlement value is zero based on Dr. Henderson's declaration.

At this point, the Court need not make a finding as to the dollar value of the Costco

settlement.  Instead, the Court agrees with Costco that the injunctive relief contained in the

settlement results in a real benefit, and the lack of monetary relief is a factor in determining the

proper amount for attorneys' fees.  The Court turns to such determination.

---

[55] Exhibit 1 to Plaintiffs' Motion and Memorandum in Support of Final Approval of Class Action Settlement (ECF No. 1620-1).  "[A]bout 9 years after the conversion to ATC dispensers is anticipated to begin[,] over $100 million of projected benefits will have accrued to motor fuel purchasers at Costco outlets in the Conversion States."  *Id.* at 4.

Defendants' liaison counsel moved to exclude Safir's testimony.  S*ee* Defendants' Motion to Exclude Testimony of Andrew Safir (ECF No. 1308).  Judge Vratil overruled the motion without prejudice, subject to Defendants re-asserting their arguments "if and when the Court considers whether to certify a class as to damages under Rule 23(b)(3)."  Memorandum and Order (ECF No. 1675) at 36.  Defendants did not re-assert the argument.  The Alkon objectors later moved to strike Safir's affidavit, *see* Alkon Objectors' Response to the Plaintiffs' April 1 Briefing (ECF No. 1645),  but Judge Vratil concluded that she did not need to rely on the Safir affidavit in deciding whether to approve the proposed settlement.  Accordingly, she overruled as moot the motion to strike.  *See* Memorandum and Order (ECF No. 1707) at 24.

[56] *See* Costco's Opposition (ECF No. 2022) at 31 (citing Alkon Objectors' Opposition to Approval of Amended Settlement (ECF No. 1783) and Henderson Declaration (ECF No. 1783-1).  While Costco asserts that "Dr. Henderson . . . has . . . concluded that the value of the settlement is zero," ECF No. 2022 at 31, what Dr. Henderson stated in his affidavit is that "Dr. Safir's conclusion that the class would realize over $105 million in injunctive relief is based on erroneous premises [and] that . . . there is no evidence that ATC will benefit the class," ECF No. 13783-1 at 8.

[57] ECF No. 2022 at 25.

## C.    The *Johnson* Factors

The Court considers the *Johnson* factors to determine the reasonableness of Plaintiffs' fee award as to all settling Defendants, including those who have agreed to pay a sum certain.  Even though Rule 23(h) allows a court to award attorneys' fees and nontaxable costs that are authorized by agreement between the parties, the rule requires a court to award fees that are reasonable.[58]  The *Johnson* factors are as follows:

> (1)    The time and labor required.
> (2)    The novelty and difficulty of the questions.
> (3)    The skill requisite to perform the legal service properly.
> (4)    The preclusion of other employment by the attorney due to acceptance of the case.
> (5)    The customary fee.
> (6)    Whether the fee is fixed or contingent.
> (7)    Time limitations imposed by the client or the circumstances.
> (8)    The amount involved and the results obtained.
> (9)    The experience, reputation, and ability of the attorneys.
> (10)   The undesirability of the case.
> (11)   The nature and length of the professional relationship with the client.
> (12)   Awards in similar cases.[59]

In most respects, the Court's analysis of the factors applies equally to all settling Defendants.  In those instances in which the considerations differ between Costco and the remaining Defendants who have not opposed Plaintiffs' motion, the Court will so note.

With respect to the time and labor required, the Court notes the basic facts.  This MDL was transferred to Judge Vratil on June 18, 2007.  Within three months, she appointed liaison counsel for both Plaintiffs and Defendants, Plaintiffs designated co-lead counsel with Mr. Horn

---

[58] Fed. R. Civ. P. 23(h).

[59] *Johnson*, 488 F.2d at 717-19.

as chair of the lead counsel group, and Defendants established a steering committee.[60]  Judge

Vratil's Suggestion of Remand and Final MDL Pretrial Order for Remanded Cases sets forth a

comprehensive list (as of November 15, 2013) of orders she entered (protective, scheduling,

preliminary and final settlement approval, class certification, dispositive motions,

*Daubert/Kumho* and *in limine*), discovery conducted and trial.[61]  According to Plaintiffs'

counsel, between 2008 and 2011 the parties took almost 400 depositions and produced and

reviewed millions of pages of documents.  Plaintiffs have been represented by 13 law firms with

attorneys devoting more than 150,000 hours to this litigation.  Although Costco has taken issue

with some of Plaintiffs' time records, clearly counsel have devoted significant time and labor to

this MDL.  Moreover, Plaintiffs' counsel will continue to work to administer the settlements

during the multi-year implementation period contained in some of the settlements,[62] thereby

increasing the time and labor required.  Obviously, Plaintiffs' counsel have invested substantial

time and labor to this case over more than seven years, and will continue to do so in the future.

The difficulty and novelty of this case are illustrated in the following excerpt from

Plaintiffs' unopposed second attorneys' fee motion.

> Plaintiffs' claims involved the law of twenty-eight jurisdictions.
> Defendants raised procedural, jurisdictional, constitutional, and
> substantive arguments and defenses, such as the *Perlman* doctrine,
> equitable abstention, First Amendment concerns, *Burford*
> abstention, remand issues under *Lexecon*, the political question
> doctrine, the *Cohen* doctrine, primary jurisdiction, the *Noerr-Pennington* defense and field preemption.  Defendants initiated
> eight Court of Appeals and Supreme Court proceedings and sought

---

[60] *See* Suggestion of Remand and Final MDL Pretrial Order for Remanded Cases (ECF No. 4671) at 4-5.

[61] *Id.* at 7-23.

[62] *See* ECF No. 4827 at 10.

a ninth.[63]  Defendants filed more than *two hundred and fifty* dispositive motions that required a massive, coordinated effort by Plaintiffs' counsel.[64]

The Court finds that the questions in this case have been difficult and novel.

The Court jointly considers the third and ninth factors, i.e. legal skills required and counsel's ability, experience and reputation, neither of which it questions nor does Costco contest.  Plaintiffs' counsel addresses these factors as follows:

> The skills required of Plaintiffs' counsel in this case ran the gamut from complex MDL case management and civil discovery to highly specialized appellate advocacy and class-action trial expertise.  That expertise and skill was further necessitated by the fact that the defendants in this litigation included large, well-financed global companies represented by large, sophisticated, and capable defense firms.  Clearly, the expertise and skill required of Plaintiffs' counsel to assist with effectively steering this massive litigation was a cut above the average.
>
> Finally, in terms of the reputation of the attorneys involved, the Court has already noted those characteristics in Class Counsel through prior orders related to leadership and class certification.[65]

The Court agrees that Plaintiffs' counsel possess the skills requisite to properly provide the legal services essential to this case.  In addition, they possess the necessary experience, reputation and ability in the field of class actions and other complex litigation.

The Court also accepts Plaintiffs' representation that this case precluded Plaintiffs' lead counsel from other legal work since 2007.  Mr. Horn stated that he and Mr. Bender worked full-

---

[63] Defendants have since filed four additional appeals in the Tenth Circuit: Nos. 15-3221, -3227, -3228, and -3254.

[64] ECF No. 4827 at 6.

[65] *Id.* at 11 (citing Judge Vratil's orders of appointment in ECF Nos. 145, 150, 179, and order finding second part of adequacy element satisfied with respect to prosecution through qualified counsel in ECF No. 1707).

time on this case, and that Mr. Horn did not seek out other cases during the last eight years. The Court finds that Plaintiffs have satisfied the fourth factor.

With respect to the fifth and sixth factors, i.e. customary fee and fee arrangement, fee agreements in class actions typically are contingent upon a successful outcome. Counsel represent that the class Plaintiffs executed retainer agreements which allow Plaintiffs' counsel to receive a contingent fee "in line with the 30% sought herein," which counsel asserts are consistent with the contingency percentage typical in the marketplace.[66] With respect to the twelfth factor, the Court agrees that 30 percent is within the range of awards deemed reasonable in lengthy and complex cases.[67] The Court finds that the fifth, sixth and twelfth factors are satisfied.

As for the eighth factor, the amount involved and the results obtained, the Court recognizes that Plaintiffs' counsel achieved unprecedented and significant results in the ATC Settlements. As Judge Vratil noted, class members can achieve accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping.[68] At least 850 Casey's, Dansk, Sam's Club and Valero stations are included in the ATC Settlements.[69] As of August 2011, Costco operated approximately 240 warehouses in both conversion and non-

---

[66] ECF No. 4827 at 12 (citing orders entered in *Barnwell v. Corrections Corp. of Am.*, No. 08-02151 (D. Kan. Feb. 12, 2009) (approving attorneys' fee award of 33% of settlement fund) and in *Perry v. Nat'l City Bank*, No. 05-00891 (S.D. Ill. Mar. 3, 2008) (approving attorneys' fees and costs of 33% of settlement fund)).

[67] *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 n.2 (10th Cir. 1988) (collecting cases approving awards ranging from 22 percent to 37.3 percent).

[68] ECF No. 4248 at 32-33.

[69] *See* ECF No. 4827 at 7-8, n.23.

conversion states where gasoline is sold, of which 198 were in conversion states.[70] The results Plaintiffs obtained in the Fund Settlements are also extremely significant. If the Fund Settlements are reduced by the amount that Plaintiffs request for attorneys' fees, a total of $16,672,000 will be available from the 24 Fund Settlements to help facilitate a market transition to retail ATC.[71]

The Court finds irrelevant the seventh, tenth and eleventh factors, i.e. time limitations imposed by the client or the circumstances, undesirability of the case, and the nature and length of the professional relationship with the client.[72]

### D.      Reasonable Fees in Fund Settlements and non-Costco ATC Settlements

On balance, the Court finds that the *Johnson* factors support Plaintiffs' unopposed fee requests in the sum certain Fund Settlements requests of 30 percent, and Plaintiffs' unopposed sum certain fee requests in the ATC Settlements.[73] The Court recognizes that its ability to fully assess every relevant issue is hampered by coming to the case after the litigation is virtually concluded. But in addition to the enumerated factors, the Court notes the following issues which

---

[70] "Conversion states" are those in which Costco and others purchase fuel on a temperature-adjusted basis. ECF No. 4248 at 7. "Non-conversion states" are those in which Costco and others purchase fuel on a non-temperature adjusted basis.

[71] ECF No. 4827 at 17.

[72] As previously noted, the Tenth Circuit recognizes that rarely are all of the *Johnson* factors relevant. *Brown,* 838 F.2d at 456.

[73] As Plaintiffs point out, the $7,758,000 fee requested in the four ATC settlements would be the functional equivalent of a 30 percent fee in a $26 million common fund settlement. ECF No. 4827 at 12. Plaintiffs also assert that the settlements with the four ATC Defendants include, in the aggregate, "multiple more stations than those covered by the Costco settlement." *Id.* at 13. The Court discusses below this statement in relation to Costco fees, but notes that Plaintiffs' expert Dr. Safir assigned a benefit of greater than $100 million to the Costco settlement. Even discounting Dr. Safir's estimate by 75 percent, the fee request for the ATC settlements appears reasonable from the functional equivalent perspective.

support its assessment that the recommended awards in these twenty-eight settlements are reasonable.

The nearly 5,000 documents filed in this case are but one indication that the parties vigorously litigated their positions before Plaintiffs and these twenty-eight Defendants reached agreement to settle Plaintiffs' claims. The Court finds it relevant that the parties were able to reach agreement on attorneys' fees, either as a sum certain or a percentage cap, and that their agreements remain undisturbed as no settling Defendant opposes Plaintiffs' second fee motion. The Court considers the parties' agreements, reached after years of litigation, as affirmation of the reasonableness of the recommended awards. The Court notes the following statement that Judge Vratil made in her Memorandum and Order approving the twenty-eight settlements: "the Court has no doubt that the parties reached the proposed settlement through fair and honest negotiations. The settling parties are represented by top-notch lawyers who have vigorously litigated the cases for more than seven years."[74]

The Court also notes that Plaintiffs' counsel will deduct from their fee award the more than $4 million they have incurred in litigation expenses and $243,000 in requested class representative incentives, neither of which the Court finds to be unreasonable.[75] As a result, the amount that Plaintiffs' counsel would actually receive from the Fund Settlements is less than 30 percent.

---

[74] ECF No. 4851 at 29.

[75] The eighty class representatives exist at Judge Vratil's urging, and each has attested to his or her work in the case, provided deposition testimony and produced documents. Mr. Horn represents that this litigation would not have been possible without their commitment. *See* Plaintiffs' Hearing Ex. 1 at 7.

At the hearing, Mr. Horn reiterated his commitment to remain active in these cases for an additional period of five to six years to monitor the settlements. Neither he nor any other counsel for Plaintiffs will be otherwise compensated for that representation. Mr. Horn offered no prediction of how much time he will spend during that period, but the commitment of future representation supports the Court's assessment that the recommended awards are reasonable.[76]

Plaintiffs' counsel seek no recovery of attorneys' fees from the twelve Fund Settlements that are less than $50,000, "in order to maximize the size of the funds available under those Settlements for distribution to weight-and-measures agencies."[77] The Court considers this effort to maximize relief to the class as a sign of reasonableness by Plaintiffs' counsel.

While the Court understands that reasonableness is to be assessed in relation to benefits the class members receive, a unique feature of this MDL is that many individuals who are not class members will obtain the same benefits, i.e. achieving accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping. Those benefits would not inure to individuals outside the class but for Plaintiffs' counsel's work in this matter. As Plaintiffs' counsel pointed out during the hearing, the class in this case exceeds 200 million people.

In sum, the Court recommends that the presiding district judge grant Plaintiffs' Second Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive Awards (ECF No. 4827) and enter an order awarding the amounts requested therein.

### D.     Reasonable Fee in Costco Settlement

---

[76] *Accord Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (recognizing class counsel's continuing obligation to class justifies lodestar multiplier and resultant fee).

[77] ECF No. 4827 at 14.

Plaintiffs filed their motion to recover attorneys' fees from Costco in April 2011. In their motion, Plaintiffs sought an award of reasonable attorneys' fees and expenses in the amount of $10 million. Although Mr. Horn stated at the hearing that he still believes that amount to be appropriate, Plaintiffs' counsel reduced their request to between $4 and $5 million in light of the totality of the circumstances. The circumstances to which counsel refers are the other ATC Settlements that include agreements on attorneys' fees.

Costco opposes Plaintiffs' fee request, both as to the methodology Plaintiffs suggest and the amount of the fees. Costco contends that the common benefit exception to the American Rule does not apply but that even in common benefit cases, the Tenth Circuit requires a full lodestar analysis of reasonable hours and hourly rates to calculate attorneys' fees. The Court has concluded that fees in this case should be determined using a percentage of fee approach, and that the Tenth Circuit does not require a full lodestar overlay. As a cross-check, however, particularly with respect to Costco where it is difficult to assign a value to the benefit, the Court will examine Plaintiffs' request in light of the lodestar factors.

Costco devotes most of its written opposition to irregularities it alleges in Plaintiffs' counsel's time records. At the hearing, however, Costco focused almost entirely on the early nature of its settlement with Plaintiffs. Counsel argued that Costco should derive a benefit from having settled early with an agreement that became a template for the other ATC Settlements, and before much of the discovery and motion practice occurred.

As noted above, Costco acknowledges that the injunctive relief of ATC will substantially benefit class members. Although it has not presented evidence to support a monetary value to that benefit, Costco questions the accuracy and reliability of Dr. Safir's methodology which underlies his opinion that the value of the Costco settlement is more than $100 million. Costco

argues that because it cannot predict which states will grant regulatory permission to use ATC for its retail sales, the monetary value of the settlement is likewise indeterminable.[78]  However, in response to a directive from Judge Vratil to reveal information in its possession relating to the issue of whether any conversion state allows or prohibits ATC, Costco provided no information that any conversion state purportedly prohibits ATC.  During the fairness hearing on Costco's first settlement, Costco's counsel agreed that he knew of no state that had expressly come forward with a decision that "you can't do this."[79]  Moreover, Plaintiffs assert that Costco's retail sales in California constitute a substantial portion of its sales in conversion states, and Judge Vratil noted that the director of California's division of measurement standards found that ATC at retail is permitted under California law.[80]

Judge Vratil deferred ruling on attorneys' fees until all settlements were finalized "so as to fashion a total fee award which comprehensively and equitably addresses all of the [*Johnson*] factors."[81]  Plaintiffs' reduction in their Costco fee request from $10 million to $4-$5 million implicitly acknowledges Judge Vratil's decision to issue a comprehensive order on attorneys' fees.  In its analysis of reasonableness, the Court must consider Costco fees relative to the fee agreements Plaintiffs reached with other settling Defendants.  In that regard, the Court considers the following statement by Plaintiffs in their motion seeking attorneys' fees in the other twenty-eight settlements:

---

[78] ECF No. 2022 at 30-31.

[79] ECF No. 2068 at 6.

[80] *See* ECF No. 4851 at 42 n.55 (citing September 13, 2011 letter from director Kristin J. Macey).

[81] ECF No. 4248 at 40.

The fee requested in the four ATC settlements ($7,758,000) would be the functional equivalent of a 30% fee in a $26,000,000 common fund settlement. Plaintiffs' expert Dr. Andrew Safir determined that the Costco settlement alone would produce more than $100 million in economic value to the class members. . . . The settlements with the four ATC defendants include, in the aggregate, multiples more stations than those covered by the Costco settlement.[82]

The Court is reluctant to take at face value the virtually untested expert opinion of Dr. Safir.[83] From the perspective of the other ATC Settlements, however, which Plaintiffs acknowledge "include, in the aggregate, multiple more stations than those covered by the Costco settlement,"[84] common sense suggests that the value of the other four ATC Settlements is greater than the value of the Costco settlement.[85] Extending that comparison to the relative fee requests, common sense further suggests that the collective attorneys' fee awarded in the four ATC Settlements should be higher than those awarded in the Costco settlement. The total recommended fee award for the four ATC Settlements is $7,758,000. If the number of stations covered by the four ATC Settlements is a "multiple" of the number of Costco stations, then perhaps $7,758,000 should be a "multiple" of the Costco fee award. Mr. Bender, who also appeared at the hearing on behalf of Plaintiffs, addressed this issue by stating that Plaintiffs are

---

[82] ECF No. 4827 at 12-13. One reading of the quoted passage is that Plaintiffs implicitly and significantly discount Dr. Safir's valuation of the Costco settlement by pointing out that the four ATC Defendants collectively operate multiple more stations than does Costco.

[83] The Court realizes that the Alkon objectors presented an opinion from Dr. Henderson, who evaluated Dr. Safir's opinion and concluded that there is no evidence that ATC will benefit the class. The Court has rejected the contention that there is zero value in the settlements, and Judge Vratil conclusively found to the contrary.

[84] ECF No. 4827 at 13. At the hearing, Mr. Horn stated that in terms of its size as a provider of gasoline, Costco is comparable to Valero or Sam's Club.

[85] Stated another way, it appears that Plaintiffs significantly discounted Dr. Safir's expert opinion regarding the benefit of the Costco settlement in the ATC Settlements.

asking for one-third of the actual time that counsel have in the case as opposed to asking for a multiple. The Court does not find this explanation compelling.

The Court extends this relative fee analysis a step further. During the hearing, Mr. Horn indicated that Sam's Club and Valero were comparable to Costco in terms of the quantity of gasoline provided. Those Defendants agreed to attorneys' fees of $3 million and $4 million, respectively. Based on the most recent information available in the record, Costco had 240 warehouses as of August 2011,[86] and has opened more since then. As of June 2015, Sam's Club and Valero had 343 stations and 850 stations, respectively.[87] While this unscientific comparison does not yield a precise number, it does suggest to the Court that the Costco fees (before making adjustment for the additional factors noted in the following two paragraphs) should be less than the $4 million the Court recommends for Valero, but perhaps in the range of the $3 million in fees the Court recommends for Sam's Club.

The Court is persuaded that Costco should receive a benefit from its early settlement. While the Court recognizes that Plaintiffs and Costco engaged in contentious and vigorous litigation which includes Costco participating in Defendants' original joint motion to dismiss Plaintiffs' Consolidated Amended Complaint, written discovery, significant informal discovery and settlement negotiations which spanned at least two years,[88] Plaintiffs continued to litigate the case against many other Defendants for a significant amount of time after Plaintiffs and Costco reached their initial agreement. The Kansas trial occurred after Judge Vratil had approved Costco's settlement, the parties later filed their dispositive and *Daubert* motions, and Plaintiff

---

[86] *See* ECF No. 2068 at 11.

[87] *See* ECF No. 4834 at 23.

[88] *See* ECF No. 2068 at 15-16.

negotiated the other twenty-eight settlements with Costco's settlement serving as a template for the other ATC Settlements. At the hearing, Costco's counsel Mr. McDowell stated, and Plaintiffs' counsel Mr. Horn agreed, that after April 2009, when Costco and Plaintiffs reached their first settlement agreement, the remaining Defendants would not communicate with Costco. The Court also finds compelling the fact that Plaintiffs' settlement with Costco became a template for later settlements and presumably expedited or facilitated those settlements.[89]

On the other hand, the Court understands that Plaintiffs cannot be assured that their litigation with Costco is complete. Costco has filed an appeal to the Tenth Circuit from Judge Vratil's approval of its settlement. It is unclear what impact if any a resolution of the attorneys' fees issue may have on the appeal. Presumably, Plaintiffs will have to brief and argue the appeal and litigation would resume if the Tenth Circuit reverses Judge Vratil's order.[90] In addition, the Court is mindful that Plaintiffs' counsel has committed to oversee the settlement throughout its implementation.

Considering all of these factors, the Court recommends that the district court grant in part Plaintiffs' Motion for Award of Attorneys' Fees, Expense, and Class Representative Awards (ECF No. 1820) to the extent that Costco shall pay a total of $3,800,000. Recognizing that this amount is not the result of a precise percentage of fee award–but that it does reflect application of the *Johnson* factors and is reasonable–the Court next considers the lodestar method.

---

[89] The Court notes that Plaintiffs have provided no expert opinion to support the claimed benefits of the other twenty-eight settlements. Instead, they extrapolate from Dr. Safir's affidavit to support their attorneys' fee request as to those settlements.

[90] Mr. Horn cited this lack of finality as the reason for increasing the $3-$4 million Plaintiffs told Judge Vratil they would seek to the $4-$5 million award that Mr. Horn orally requested at the November 19, 2015 hearing. He also pointed out that Costco will not begin implementing ATC until its appeal is concluded.

E.      Lodestar

The Court is mindful that Plaintiffs' request for attorneys' fees "should not result in a second major litigation,"[91] and is fearful that such action would occur if the Court were to delve into eight years of Plaintiffs' time records and Costco's objections thereto, and attempt to isolate Plaintiffs' Costco hours among more than 150,000 hours logged by individuals in thirteen law firms.  Nevertheless, the Court makes the following observations.

When Plaintiffs filed their motion on April 7, 2011, they cited the following numbers: Class Counsel and the other members of the Plaintiffs' Steering Committee had devoted almost 65,000 hours of common joint time to the prosecution of this litigation, with a time-value in excess of $23 million.  These 65,000 hours exclude time from more than twenty-five other law firms that also had worked on the case.  By that same date, counsel had devoted an additional 2,200 hours specifically to matters relating to Costco, with a time-value of $1,159,835.70.[92]

Costco retained a legal auditing firm to review Plaintiffs' records, and attached to its response in opposition to Plaintiffs' motion a 1,025-page document related to that audit.[93] Costco complains that Plaintiffs had not identified the specific billing records that support their claimed fees of nearly $1.2 million.[94]  Costco devoted the bulk of its response to challenging Plaintiffs' time records, arguing that the records were unreliable and lacked specificity.  The problems Costco alleges include duplicative task entries by multiple timekeepers, vague or no

---

[91] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[92] ECF No. 1820 at 19-20.

[93] ECF No. 1820-2.

[94] The Court is uncertain how the auditor was able to prepare a 1,025-page submission without having the specific billing records it was auditing.

task descriptions, billing for background research, entries for clerical or routine de minimis tasks, double billing and identical tasks, excessive hourly rates and in one instance, a timekeeper billing for 32 hours in a single day.[95]

Plaintiffs' reply states that Plaintiffs had supplied detailed time records to Costco and contends that Costco's audit (which Plaintiffs dispute) revealed alleged billing irregularities amounting to approximately three percent of Plaintiffs' billed time.[96] Plaintiffs addressed the audit's criticisms, agreed with some, and concluded as follows:

> The amount of fees set forth in the records supplied to Costco totaled $36,026,606.05. After reductions reflecting billing judgment, the amount claimed by plaintiffs totaled $28,721,004.63. Costco, through its auditors, claims the amount is overstated by $976,642.72. Plaintiffs have agreed not to dispute $14,632.82 of that amount. This leaves a total of $962,009.90 that Costco claims should be either totally or partially denied.[97]

In its surreply, Costco takes issue with Plaintiffs' conclusion that the audit revealed alleged irregularities of three percent of Plaintiffs' billed time, and points out that the audit had examined only Costco-specific time.[98] Costco contends that the proper denominator for the equation[99] should not be $36 million, which represents the total fees that Plaintiffs claim with respect to all matters, but should be $1,133,467.82, the adjusted amount that Plaintiffs claim in

---

[95] *See* ECF No. 2022 at 16-29.

[96] *See* ECF No. 2068 at 16-17.

[97] ECF No. 2068 at 27.

[98] *See* ECF No. 2086 at 6-7.

[99] Percentage of alleged irregularities is arrived at by dividing the value of the erroneously included time by the value of claimed fees.

Costco-only fees.[100]  Changing the denominator results in a 32 percent billing irregularity.[101]

Assuming for the sake of argument that Costco's numbers are accurate, a 32 percent reduction of

$1,133,467.82 would result in Costco-only fees of $770,758.12.

Costco's audit admittedly did not perform the same analysis on the common joint time,

which Plaintiffs value at $23,282,847.25.[102]  The Court refuses to apply a 32 percent reduction to

the common joint time.  In the absence of audit information and analysis of the common joint

time, the Court instead reduces this number by 5 percent, resulting in a value of $22,118,705.

The Court is aware of no evidence from which it could calculate how much of that time should

be attributable to Costco.  At the hearing, Mr. Horn described the time as indivisible but offered

one comparison for the Court's consideration: Costco has calculated its cost to provide notice to

the class at $2.6 million, and the highest notice cost for any other Defendant is $200,000.

Unfortunately, the Court does not find that comparison helpful.  Considering, however, that the

numbers related above were current only as of April 2011, which was before Judge Vratil gave

final approval to the Costco settlement, the Court conservatively assigns 5 percent of the

common fees to Costco, or an amount of $1,105,935.  Adding this to the Costco-only time at

$770,758.12 equals a total fee amount of $1,876,693.

The Court considers this sum of $1,876,693 to be an artificially low starting point.

Plaintiffs obviously have spent considerable additional time since April 2011, although most of

that time related to Defendants other than Costco.  The Court also recognizes that from 2007 to

---

[100] ECF No. 2086 at 6.

[101] *Id.* at 7.

[102] ECF No. 1820-2 at 2.  Plaintiffs describe this as a lodestar amount, and list a higher rate of
$27,709.774.65 as lodestar Costco rates.  *Id.*

2010 the billing rates for lawyers were lower than current rates, and no mention has been made of assigning a current value to fees that span the entire litigation period. Plaintiffs presumably will incur fees related to Costco's appeal of Judge Vratil's order approving its settlement. Finally, the Court considers the work that Plaintiffs' counsel will do in the future to monitor the settlements, work which clearly will relate to Costco. Taking into account all of these factors, the Court finds that $3,800,000 is a reasonable award.

## V.    CLASS MEMBERS' OBJECTIONS

### A.    Objections to Attorneys' Fees Related to Costco

Two sets of class members filed objections to Plaintiffs' motion for attorneys' fees related to Costco. The Alkon Objectors renewed opposition they first asserted when Judge Vratil considered the parties' motion for approval of their amended settlement, arguing that Plaintiffs have created no value for the class and are entitled to no attorneys' fees.[103] The Court rejects the Alkon Objectors' objections, having decided that the injunctive relief of the ATC settlement does provide a substantial benefit of value to the class.

The McKerley Objectors raise a number of arguments in cursory fashion.[104] They argue that a percentage of fund approach to awarding fees is inappropriate and that the Court should apply the lodestar approach. The Court has concluded otherwise for the reasons discussed above. They further argue that because the Costco settlement provides no monetary relief and members of the general public will also benefit from the settlement, $10 million is too great an award. Although not for those reasons, the Court agrees that $10 million is too great an award.

---

[103] *See* Alkon Objectors' Renewed Opposition to Motion for Attorneys' Fees (ECF No. 1869).

[104] *See* McKerley Objectors' Opposition to Plaintiffs' Motion for Attorney's Fees, Expenses and Class Representative Incentive Awards (ECF No. 1870).

The McKerley Objectors also argue that the Costco-specific time that Plaintiffs recorded in their motion does not justify an award of $10 million. The Court agrees. The McKerley Objectors contend that Plaintiffs did not address the fourth (preclusion of other employment) and tenth (undesirability of case) *Johnson* factors, so those factors do not weigh in favor of Plaintiffs' request. Mr. Horn did address the fourth issue at the hearing to the Court's satisfaction, and the Court concluded that the tenth factor is not relevant to this case. The Court rejects the McKerley Objectors' objections.

### B. Objections to Attorneys' Fees Related to Twenty-Eight Settlements

The Frank Objectors filed the only objection to Plaintiffs' motion for attorney fees with respect to the twenty-eight settlements.[105] The Frank Objectors also filed an objection related to nine of the settlements in which they assert they are class members.[106] Judge Vratil found the objections to the settlements to be without merit.[107]

As Plaintiffs point out, the Frank Objectors' arguments are necessarily limited to the attorneys' fee requests as to the nine settlements in which they are class members. The Frank Objectors devote much of their brief to arguments that they have previously raised and that Judge Vratil thoroughly considered. For the reasons stated in Plaintiffs' opposition,[108] the Court rejects the argument that the settlements do not produce a class benefit justifying attorneys' fees

---

[105] Frank Objectors' Opposition to Second Motion for Award of Attorneys' Fees (ECF No. 4870). The Court granted Plaintiffs leave to file a reply. *See* Plaintiffs' Reply to the Frank Objectors' Opposition to Plaintiffs' Second Motion for Attorney Fees (ECF No. 4879-1).

[106] ECF No. 4808. The nine include Valero, BP, Chevron, Citgo, Conoco, ExxonMobil, Shell, Sinclair and Sunoco. The first is an ATC Settlement and the rest are Fund Settlements. *See* ECF No. 4879-1 at 2.

[107] ECF No. 4851 at 34-45.

[108] *See* ECF No. 4879-1 at 3-14.

for the nine settlements at issue. The Court agrees with the Frank Objectors that a percentage of fund methodology is appropriate in these settlements, and that attorneys' fees in class actions do not warrant rubber stamp approval merely because the parties have agreed to them. Indeed, Rule 23(h) permits a court to award only fees that are reasonable, whether the award is based on legal authority or results from agreement of the parties.[109]

With respect to the argument that the value of the Valero settlement is zero, as stated earlier, the Court finds that the injunctive relief in this ATC Settlement has substantial value.

The Frank Objectors contend that the Fund Settlements are *cy pres* payments and that awarding attorneys' fees on that basis is against legal authority and constitutes bad public policy. For the reasons stated in Plaintiffs' reply,[110] the Court rejects this argument. Even if the Fund Settlements are considered true *cy pres* distributions, Judge Vratil has observed that this could in fact be a classic case for application of a *cy pres* approach.[111]

Finally, the Frank Objectors argue that the Court would impermissibly delegate its duty to award reasonable fees if it allows Plaintiffs' counsel to allocate the fee award among themselves. They cite the 2008 Fifth Circuit opinion in *In re High Sulfur Content Gasoline Products Liability Litigation*, 517 F.3d 220 (5th Cir. 2008), in support of their argument. The Court finds the case inapplicable. In *High Sulfur*, the district court appointed plaintiffs' lead counsel to divide a lump sum attorneys' fee award among more than six dozen lawyers, and accepted lead counsel's allocation without requiring supporting data or allowing other plaintiffs'

---

[109] Fed. R. Civ. P. 23(h).

[110] ECF No. 4879-1 at 11-14.

[111] *See* Memorandum and Order (ECF No. 4464) at 10-13 (granting preliminary approval to seven settlements).

attorneys to object.[112]  Many attorneys challenged their awards, and the Fifth Circuit vacated the order approving the allocation and remanded.  Clearly, all of the attorneys who had represented plaintiffs had not agreed on a fee allocation.  Unlike the situation in *High Sulfur*, there is no indication that any Plaintiffs' counsel is dissatisfied with the agreement among them in allocating an award of fees.  The Court sees no reason to involve itself in how Plaintiffs' counsel allocate the fee award among themselves.  The Court rejects the Frank Objectors' Objections in toto.

### RECOMMENDATIONS

**IT IS THEREFORE RECOMMENDED THAT** Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Class Representative Awards (ECF No. 1820) be **GRANTED IN PART** as follows: The Court **RECOMMENDS** that Plaintiffs' counsel be awarded a total of **$3,800,000**, which includes attorneys' fees, expenses and a class incentive fee of $2,000 to each of the twenty-one subclass representatives listed in Judge Vratil's order approving the Costco settlement, ECF No. 4248 at 9 n.9.

**IT IS FURTHER RECOMMENDED THAT** Plaintiffs' Second Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive Award (ECF No. 4827) be **GRANTED** as follows:  The Court **RECOMMENDS** that Plaintiffs' counsel be awarded a total of **$14,947,800** in the aggregate in relation to the twenty-eight class-action settlements,[113] which includes attorneys' fees in the amount of $11,706,800; expenses in the amount of $3,000,000;

---

[112] The court also adopted lead counsel's proposed order to seal the individual awards following an ex parte hearing.

[113] The amount recommended as to each of the settling Defendants is the amount listed on pages 4 and 14 of Plaintiffs' Second Motion for Award of Attorneys' Fees, Expenses, and Class Representative Incentive Award.  *See*  ECF No. 4827 at 4, 14.

and a total of $243,000 in incentive payments to the eighty subclass representatives as identified in Exhibit 1 to Plaintiffs' Second Motion (ECF No. 4827-1) and in the amounts listed therein.[114]

Respectfully submitted.

Dated this 17th day of February, 2016, at Kansas City, Kansas.

*s/ Teresa J. James*
Teresa J. James
United States Magistrate Judge

---

[114] The Court notes that the Costco subclass representatives are all subclass representatives in one or more of the twenty-eight settlements. The parties did not raise the issue, and no Defendant has challenged making double payments to those twenty-one subclass representatives who served as representatives both as to Costco and as to one or more of the twenty-eight settlements. The Court further notes an inconsistency in Plaintiffs' Exhibit 1 from the November 19, 2015 hearing, which states that the "incentive payments for all representatives across all 29 settlements totals $249,000," citing ECF No. 4827-1. However, the total amount of the eighty incentive payments listed in ECF No. 4827-1 is $243,000, and it includes only the twenty-eight settlements. Absent argument from the parties, the Court does not recommend a reduction in subclass representative payments.