**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: MOTOR FUEL TEMPERATURE | ) | |
| SALES PRACTICES LITIGATION | ) | |
| | ) | **MDL No. 1840** |
| (This Document Relates to All Cases) | ) | **Case No. 07-MD-1840-KHV** |
| | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Under the laws of 26 states (Alabama, Arizona, Arkansas, California, Delaware, Florida,

Georgia, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada,

New Jersey, New Mexico, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina,

Tennessee, Texas, Utah and Virginia), the District of Columbia, Puerto Rico and Guam, plaintiffs

allege various claims based on defendants' practice of selling motor fuel for a specified price per

gallon without disclosing or adjusting for temperature, and without disclosing the effect of

temperature on motor fuel.[1]  On February 17, 2016, Magistrate Judge Teresa J. James issued a report

and recommendations regarding plaintiffs' request for attorneys' fees under 29 class action

settlements.[2]  See Report And Recommendations (Doc. #4892).  This matter comes before the Court

---

[1]  On June 18, 2007, the Judicial Panel on Multidistrict Litigation ("MDL Panel")
designated this Court as the transferee court for federal cases challenging sales practices of motor
fuel retailers and refiners with regard to motor fuel temperature.  See Transfer Order (Doc. #1) filed
June 22, 2007.  For a complete overview of the factual and procedural history, see the Court's
Suggestion Of Remand And Final MDL Pretrial Order For Remanded Cases (Doc. #4671) filed
November 17, 2013 and Memorandum And Order [Granting Final Approval To 28 Settlements]
(Doc. #4851) filed August 21, 2015.  Following resolution, dismissal and remand of some claims,
the Court retains jurisdiction over claims against settling defendants to complete settlement approval
and class notice, and to resolve issues regarding attorneys' fees.  See, e.g., Supplement To
Suggestion Of Remand (Doc. #4732) filed March 24, 2014 at 2; Suggestion Of Remand And Final
MDL Pretrial Order For Remanded Cases (Doc. #4671) at 1.

[2]  The class action settlements involve the following defendants: (1) Costco Wholesale
Corporation; (2) BP Products North America Inc. and BP West Coast Products LLC (collectively,
(continued...)

on the <u>Alcon And Frank Objectors' Objection To Report And Recommendation</u> ("<u>Alcon And Frank</u>

<u>Objection</u>") (Doc. #4893), <u>Defendant Costco Wholesale Corporation's Objections To Report And</u>

<u>Recommendations Of Magistrate On Plaintiffs' Motion For Award Of Attorneys' Fees, Expenses,</u>

<u>And Class Representative Incentive Awards</u> ("<u>Costco Objection</u>") (Doc. #4894) and <u>Plaintiffs'</u>

<u>Partial Objection To Magistrate's February 17, 2016 Report And Recommendation</u> ("<u>Plaintiffs'</u>

<u>Partial Objection</u>") (Doc. #4895), all filed March 2, 2016.  For reasons stated below, the Court

sustains plaintiffs' objection and overrules the other objections.

## I.     Legal Standards

### A.     De Novo Review

In reviewing the magistrate judge report and recommendations, the Court treats plaintiffs'

motions for attorneys' fees as dispositive in nature.  See <u>Ins. Co. of N. Am. v. Bath</u>, Case No. 90-

8083, 1992 WL 113746, at *2 (10th Cir. May 27, 1992); Fed. R. Civ. P. 54(d)(2)(D) (court may refer

motion for attorneys' fees to magistrate judge as if it were dispositive pretrial matter).  Therefore,

the Court reviews de novo those portions of the magistrate report and recommendations to which

_____

[2](...continued)
"BP"); (3) CITGO Petroleum Company; (4) ConocoPhillips Company; (5) Exxon Mobil
Corporation, Esso Virgin Island, Inc. and Mobil Oil Guam, Inc. (collectively, "ExxonMobil");
(6) Motiva Enterprises LLC and Equilon Enterprises LLC d/b/a Shell Oil Products US (collectively,
"Shell"); (7) Sinclair Oil Corporation and its corporate affiliates (collectively, "Sinclair");
(8) Casey's General Stores, Inc.; (9) Dansk Investment Group, Inc. (formerly known as USA
Petroleum Corporation) ("Dansk"); (10) Sam's Club, Sam's East, Inc., Sam's West, Inc., Wal-Mart
Stores, Inc. and Wal-Mart Stores East, LLP (collectively, "Sam's"); (11) Valero Marketing and
Supply Company; (12) B-B Oil Company, Inc.; (13) Chevron U.S.A. Inc.; (14) Coulson Oil
Company, Inc.; (15) Diamond State Oil, LLC; (16) E-Z Mart Stores, Inc.; (17) Flash Market, Inc.;
(18) G&M Oil Company, Inc. and G&M Oil Co., LLC (collectively, "G&M Oil"); (19) J&P Flash,
Inc.; (20) Love's Travel Stops & Country Stores, Inc.; (21) M.M. Fowler, Inc.; (22) Magness Oil
Company; (23) Port Cities Oil, LLC; (24) Sunoco, Inc.; (25) Tesoro Refining and Marketing
Company LLC; (26) Thorntons Inc.; (27) United El Segundo, Inc.; (28) W. R. Hess; and (29) World
Oil Corp.

the parties object.  See 28 U.S.C. § 636(b)(1)(C).  In conducting a de novo review, the Court must

consider relevant evidence of record and not merely review the magistrate judge recommendation.

In re Griego, 64 F.3d 580, 584 (10th Cir. 1995).  When ruling on objections to magistrate judge

findings and recommendations, the Court may receive further evidence.  See 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b)(3).  Whether to receive additional evidence is committed to the Court's sound

discretion.  See Henderson v. Echostar Commc'ns Corp., No. 05-1473, 172 F. App'x 892, 895 (10th

Cir. 2006).

### B.    Attorneys' Fees

Under Rule 23(h), Fed. R. Civ. P., in a certified class action the Court may award reasonable

attorneys' fees and nontaxable costs which are authorized by law or the parties' agreement.

Fed. R. Civ. P. 23(h).[3]  The Court has broad authority in awarding attorneys' fees in class actions.

See Law v. Nat'l Collegiate Athletic Ass'n, No. 99-3355, 4 F. App'x. 749, 751 (10th Cir. 2001).

When a settlement creates a common fund or other common benefit, courts apply one of two

---

[3]       Rule 23(h) states as follows:

In a certified class action, the court may award reasonable attorneys' fees and
nontaxable costs that are authorized by law or by the parties' agreement. The
following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2),
subject to the provisions of this subdivision (h), at a time the court sets.
Notice of the motion must be served on all parties and, for motions by class
counsel, directed to class members in a reasonable manner.
(2) A class member, or a party from whom payment is sought, may object to
the motion.
(3) The court may hold a hearing and must find the facts and state its legal
conclusions under Rule 52(a).
(4) The court may refer issues related to the amount of the award to a special
master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Fed. R. Civ. P. 23(h).

methods to determine reasonable attorneys' fees: a percentage of the fund or the lodestar method.[4]

See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995).  The Tenth Circuit applies a

hybrid approach, which combines the percentage fee method with the specific factors traditionally

used to calculate the lodestar, i.e. the factors listed in Johnson v. Ga. Highway Express, Inc.,

488 F.2d 714 (5th Cir. 1974).[5]  See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).  The Court

must articulate specific reasons which demonstrate the reasonableness of the fee award.  See Brown

v. Phillips Petrol. Co., 838 F.2d 451, 454 (10th Cir.1988).

## II.     Overview Of Class Settlements

The 29 settlement agreements fall into two categories: (1) five so-called "ATC Settlements"

under which defendants agree to install automatic temperature compensation ("ATC") at retail motor

fuel pumps in certain settlement states, i.e. conversion states; and (2) 24 so-called

"Refiner Settlements" under which defendants agree to pay funds which will be allocated to each

settlement state to reimburse retailers or wholesalers selling retail motor fuel for expenses incurred

in installing ATC and/or for the state's department of weights and measures or other agency

responsible for regulating retail motor fuel dispensers to use to defray some state costs of

---

[4]      The lodestar method looks to prevailing market rates in the community and roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who paid by the hour in a comparable case.  See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 1672 (2010).

[5]      Those factors are as follows: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. Rosenbaum, 64 F.3d at 1445; Johnson, 488 F.2d at 717-19.

implementing ATC at retail.  See Memorandum And Order [Granting Final Approval To 28 Settlements] (Doc. #4851) at 6-29.  The ATC Settlements are with Costco, Casey's, Dansk, Sam's Club and Valero.  The Refiner Settlements are with BP, CITGO, ConocoPhillips, ExxonMobil, Shell, Sinclair, B-B Oil, Chevron, Coulson Oil, Diamond State, E-Z Mart, Flash Market, G&M Oil, J&P Flash, Love's, M.M. Fowler, Magness Oil, Port Cities, Sunoco, Tesoro, Thorntons, United El Segundo, W. R. Hess and World Oil.

On April 24, 2012, the Court granted final approval of the Costco Settlement, i.e. the first ATC Settlement.  See Memorandum And Order [Granting Final Approval To Amended Costco Settlement] (Doc. #4248) filed April 24, 2012.  Under the settlement, Costco agreed to pay any attorneys' fees and costs which the Court awards.[6]  See id. at 13; Memorandum And Order [Granting Preliminary Approval To Amended Costco Settlement] (Doc. #2118) filed September 11, 2011. The Court deferred the issue of attorneys' fees under the Costco Settlement pending finalization of all settlements, so as to fashion a total fee award which comprehensively and equitably addresses the factors articulated in Johnson.  See Memorandum And Order [Granting Final Approval To Amended Costco Settlement] (Doc. #4248) at 40.[7]

On August 21, 2015, the Court granted final approval of the remaining 28 settlements, i.e.

---

[6]     The parties also agreed that class counsel would ask the Court to approve incentive payments of $2,000 to each subclass representative and that class counsel would deduct any such award from amounts awarded for attorneys' fees and costs.  See Memorandum And Order [Granting Final Approval To Amended Costco Settlement] (Doc. #4248) at 13.

[7]     Costco and plaintiffs first agreed to settle class claims against Costco in April of 2009.  See Memorandum And Order [Granting Preliminary Approval To Amended Costco Settlement] (Doc. #2118) filed September 11, 2011 at 2.  It took three years, however, for them to obtain final court approval of the settlement.  During that time, the parties obtained two preliminary court approvals, amended the settlement structure and served two rounds of class notice.  See, e.g., id.  By the time the Court granted final approval of the Costco Settlement, several other parties had announced settlements.

four ATC Settlements and 24 Refiner Settlements.  See Memorandum And Order [Granting Final

Approval To 28 Settlements] (Doc. #4851).  Under the non-Costco ATC Settlements, subject to

Court approval, defendants agreed to pay the following amounts for attorneys' fees:

|  | Attorneys' Fees |
|---|---|
| Casey's | $   700,000 |
| Dansk | $     58,000 |
| Sam's Club | $ 3,000,000 |
| Valero | $ 4,000,000 |
| TOTAL | $ 7,758,000 |

See id. at 18 n.31.[8]

---

[8]        Casey's, Sam's Club and Dansk also agreed to pay class representative incentive payments of $2,500, $2,000 and $1,000, respectively, to be deducted from amounts awarded for attorneys' fees and costs.  See Memorandum And Order [Granting Preliminary Approval To Dansk Settlement] (Doc. #4424) filed September 28, 2012 at 17, 19, 21.  The Valero Settlement is silent as to class representative incentive payments.  See Valero Amended Settlement, Exhibit 4 to Renewed Motion For Order Conditionally Certifying Settlement Classes, Preliminarily Approving Class Action Settlements, Directing And Approving Distribution Of Class Notice, Setting Hearing For Final Approval Of Class Action Settlements And Appointing Class Counsel (Doc. #4472) filed December 3, 2012.

Under the Refiner Settlements, defendants agreed to not oppose attorneys' fees and litigation costs of up to 30 per cent of the settlement amounts.  See id. at 16 n.26, 19-21.  The settlement amounts are as follows:

|  | Settlement Fund |
|---|---|
| BP | $ 5,000,000 |
| CITGO | $   900,000 |
| ConocoPhillips | $ 5,000,000 |
| ExxonMobil | $ 5,000,000 |
| Shell | $ 5,000,000 |
| Sinclair | $   800,000 |
| Chevron | $ 2,125,000 |
| BB Oil | $     21,000 |
| Coulson Oil | $     21,000 |
| Diamond State | $     21,000 |
| Flash Market | $     21,000 |
| J&P Flash | $     21,000 |
| Magness Oil | $     21,000 |
| Port Cities Oil | $     21,000 |
| W.H. Hess | $     21,000 |
| G&M Oil | $     40,000 |
| World Oil | $     40,000 |
| United El Segundo | $     40,000 |
| E-Z Mart | $     90,000 |
| Love's | $   105,000 |
| MM Fowler | $     23,500 |
| Sunoco | $     61,000 |
| Tesoro | $     50,000 |
| Thorntons | $     60,000 |
| TOTAL | $24,502,500 |

Id. at 15-16, 19-21; see also Second Motion For Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards And Memorandum In Support Thereof ("Motion For Attorneys' Fees Under 28 Settlements") (Doc. #4827) filed May 29, 2015 at 13-14.[9]

_____

[9]      Some defendants also agreed to pay certain amounts toward the cost of class notice. See Memorandum And Order [Granting Final Approval To 28 Settlements] (Doc. #4851) at 15-16, 19-21; Motion For Attorneys' Fees Under 28 Settlements (Doc. #4827) at 13 n.39.  Also, some defendants agreed to not oppose class representative incentive payments to be deducted from
(continued...)

-7-

Under the Costco Settlement, plaintiffs ask the Court to determine reasonable attorneys' fees, litigation expenses and class representative incentive payments.  See Motion For Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards And Memorandum In Support Thereof ("Motion For Attorneys' Fees Under Costco Settlement") (Doc. #1820) filed March 23, 2011.[10]  Under the remaining settlements, plaintiffs ask the Court to approve the amounts of attorneys' fees, expenses and class representative incentive payments to which the parties agreed. See Motion For Attorneys' Fees Under 28 Settlements (Doc. #4827).  To maximize the funds available for ATC conversion, plaintiffs do not seek attorneys' fees or expenses under those Refiner Settlements which involve funds less than $50,000.[11]  See id. at 4 n.4.

On November 19, 2015, the Court referred the motions for attorneys' fees to Magistrate Judge Teresa J. James for report and recommendation.  See Doc. #4884.  On the same day, Judge James held a hearing on the motions.

On February 17, 2016, Judge James issued her report and recommendations. See Report And Recommendations (Doc. #4892).  Judge James found that under all of the settlements, counsel are entitled to recover attorneys' fees and costs.  See id. at 5.  As to Costco, Judge James found that $3,800,000 constitutes a reasonable amount for attorneys' fees, expenses and class representative incentive payments.  See id. at 25-33.  As to the remaining settlements, Judge James found that the

---

[9](...continued)
amounts allocated for attorneys' fees.  See, e.g., Memorandum And Order [Granting Preliminary Approval To Dansk Settlement] (Doc. #4424) filed September 28, 2012 at 9-15.

[10]   On April 7, 2011, plaintiffs filed a sealed, un-redacted version of the Motion For Attorneys' Fees Under Costco Settlement.  See Doc. #1846-3.

[11]   Twelve settlements fall in this category:  BB Oil, Coulson, Diamond State, Flash Market, G&M, J&P Flash, Magness, MM Fowler, Port Cities, United, World and W.H. Hess.

amounts to which the parties agreed are reasonable.  See id. at 22-24.  Specifically, under the non-Costco ATC Settlements, Judge James recommended total attorneys' fees of $7,758,000.[12]  See id. Under the Refiner Settlements, Judge James recommended total attorneys' fees of $7,189,800, broken down as follows:

|  | Settlement Fund | Attorneys' Fees |
|---|---|---|
| BP | $ 5,000,000 | $ 1,500,000 |
| CITGO | $ 800,000 | $ 240,000 |
| ConocoPhillips | $ 5,000,000 | $ 1,500,000 |
| ExxonMobil | $ 5,000,000 | $ 1,500,000 |
| Shell | $ 5,000,000 | $ 1,500,000 |
| Sinclair | $ 800,000 | $ 240,000 |
| Chevron | $ 2,000,000 | $ 600,000 |
| E-Z Mart | $ 90,000 | $ 27,000 |
| Love's | $ 105,000 | $ 31,500 |
| Sunoco | $ 61,000 | $ 18,300 |
| Tesoro | $ 50,000 | $ 15,000 |
| Thorntons | $ 60,000 | $ 18,000 |
| TOTAL | $23,966,000 | $ 7,189,800 |

See id. at 15, 36 n.113;[13] Motion For Attorneys' Fees Under 28 Settlements (Doc. #4827) filed

---

[12]  As noted, under the ATC Settlements, parties agreed to the following amounts for attorneys' fees:

|  | Attorneys' Fees |
|---|---|
| Casey's | $ 700,000 |
| Dansk | $ 58,000 |
| Sam's Club | $ 3,000,000 |
| Valero | $ 4,000,000 |
| TOTAL | $ 7,758,000 |

[13]  Pursuant to plaintiffs' request, Judge James recommended that as to Refiner Settlements, the Court award attorneys' fees only out of the settlement funds which equal or exceed $50,000.  See Report And Recommendations (Doc. #4892) at 5, 36 n.113.  Thus, Judge James recommended that the Court not award attorneys' fees under the following settlements:

|  | Settlement Fund |
|---|---|
| BB Oil | $ 21,000 |
| Coulson Oil | $ 21,000 |

(continued...)

May 29, 2015 at 13-14.[14]  The recommended fee awards include attorneys' fees, litigation expenses and class representative incentive payments.  See Report And Recommendations (Doc. #4892) at 14.

On March 2, 2016, three separate parties or groups of parties – (1) the Alkon and Frank Objectors,[15] (2) Costco and (3) plaintiffs – filed objections to the magistrate judge report and

---

[13](...continued)

| | | |
|---|---|---|
| Diamond State | $ | 21,000 |
| Flash Market | $ | 21,000 |
| J&P Flash | $ | 21,000 |
| Magness Oil | $ | 21,000 |
| Port Cities Oil | $ | 21,000 |
| W.H. Hess | $ | 21,000 |
| G&M Oil | $ | 40,000 |
| World Oil | $ | 40,000 |
| United El Segundo | $ | 40,000 |
| MM Fowler | $ | 23,500 |
| TOTAL | $ | 311,500 |

See id.; Motion For Attorneys' Fees Under 28 Settlements (Doc. #4827) at 13-14.

[14]     It appears that plaintiffs have calculated some but not all of the requested fees based on the total settlement amount, i.e. including funds which the parties earmarked for class notice. For instance, as to BP, plaintiffs request 30 per cent of total settlement funds including $100,000 for class notice but for Chevron, they have omitted funds earmarked for notice, i.e. $125,000, before calculating the 30 per cent fee.  The Court suspects that differences in individual settlement agreements may require this result but has not delved into agreement language to confirm this theory.  In any event, the Court finds that either calculation is reasonable.  See, e.g., Jackson v. Wells Fargo Bank, N.A., 136 F. Supp.3d 687, 718 (W.D. Pa. 2015) (calculating attorneys' fee percentage based on total value of settlement fund including costs of administration); Lake Forest Partners, L.P. v. Sprint Commc'ns Co., No. 1:12-cv-00999-AJS, 2013 WL 3048919, at *2 (W.D. Pa. June 17, 2013) (appropriate to base percentage on total amount of settlement fund, including expenses and expenses of administration); Weeks v. Kellogg Co., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *29 (C.D. Cal. Nov. 23, 2013) (post-settlement cost of providing notice to class can reasonably be considered benefit to class).

[15]     The Alkon Objectors are comprised of Amy Alkon, a member of the California subclass of the Costco Settlement, and Nicholas Martin, a member of the Indiana subclass of the Costco Settlement.  See Memorandum And Order [Granting Final Approval To Amended Costco

(continued...)

recommendations.  See Alcon And Frank Objection (Doc. #4893); Costco Objection (Doc. #4892);

Plaintiffs' Partial Objection (Doc. #4895).

## III.    Analysis

### A.    Alcon And Frank Objection

The Alcon and Frank Objectors jointly object to the magistrate judge report and recommendations.  See Alkon And Frank Objection (Doc. #4893).  Specifically, they assert that Judge James erred because (1) she did not focus on lack of benefit to the class, see id. at 6-10; (2) as to ATC Settlements, she should have placed a value of zero on the injunctive relief and calculated attorneys' fees based on the cash portion of the settlements, i.e. the amounts which defendants agreed to pay for attorneys' fees, see id. at 10-15; (3) as to Refiner Settlements, she should have calculated attorneys' fees based on a smaller percentage of gross settlement funds, see id. at 15-19; and (4) the Johnson factors do not justify the recommended fee amounts, see id. at 19-22.[16]

#### 1.    No Benefit To Class

The Alkon and Frank Objectors assert that Judge James erred because she did not

_____

[15](...continued)

Settlement] (Doc. #4248) at 18.  The Alkon Objectors objected to final approval of the Costco settlement.  See id. at 29-35.

The Frank Objectors are comprised of Theodore H. Frank, Melissa Holyoak and Adam Schulman.  See Memorandum And Order [Granting Final Approval To 28 Settlements] (Doc. #4851) at 23 n.42.  The Frank Objectors objected to final approval of settlements with BP, Chevron, CITGO, ConocoPhillips, ExxonMobil, Shell, Sinclair, Sunoco and Valero.  See id. at 23.

[16]    The Alkon and Frank Objectors also assert that the Court has a duty to ensure that attorneys' fees are divided fairly among class counsel.  See Alkon And Frank Objectors' Objection To Report And Recommendations (Dkt. 4892) (Doc. #4893) at 23-26.  The Court agrees with Judge James that absent an indication that plaintiffs' counsel are dissatisfied with their agreement regarding fee allocation, the Court need not involve itself in how counsel allocate the fee award among themselves.  See Report And Recommendations (Doc. #4892) at 35-36.

account for the fact that the settlements provide little or no benefit to class members.  See Alkon And Frank Objection (Doc. #4893) at 6-10.  This Court has found, however, and Judge James agreed, that the settlements provide real and substantial value to class members.  See Report And Recommendations (Doc. #4892) at 21-22, 35.  Specifically, by acquiring an option to purchase ATC fuel in conversion states, class members can achieve accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping.  See Memorandum And Order [Granting Final Approval To Amended Costco Settlement] (Doc. #4248) at 32-33.  Without an ATC option, class members do not know whether they receive warm or cool fuel, i.e. whether they are receiving less or more energy per gallon.  See id. at 33.  On the same day at the same retail gas station, the temperature of dispensed fuel can vary throughout the day while the price per gallon remains the same.  See id. (citation omitted).  Thus, fuel purchasers at the same station on the same day can pay the same price per gallon and receive different amounts of energy content per gallon. See id. (citation omitted).  Without ATC, fuel purchasers have no way to determine the temperature of the fuel which they purchase and therefore do not know whether they are receiving more or less energy content for their fuel dollar.  See id.  By gaining an option to purchase ATC fuel in conversion states, class members receive a material benefit – price transparency and fairness at the pump in knowing that they can get accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping.  See id.  Similarly, the Refiner Settlements benefit the class by providing funds to facilitate the implementation of ATC at motor fuel stations to help initiate a market transition to ATC.  See Memorandum And Order [Granting Preliminary Approval To BP And Other Settlements] (Doc. #4464) filed November 20, 2012 at 9-10.  The Court flatly rejects the assertion that the settlements provide little or no benefit to class

members.

## 2.    ATC Settlements

The Alkon and Frank Objectors assert that under the ATC Settlements, Judge James should have placed a value of zero on injunctive relief and calculated attorneys' fees based on the amounts which defendants agreed to pay for attorneys' fees.  See Alkon And Frank Objection (Doc. #4893) at 10-15.  Specifically, they assert that the Court should consider the amounts which defendants agreed to pay for attorneys' fees as a "constructive common fund" and from that amount, award 25 per cent as attorneys' fees.  Id.  The Alcon and Frank Objectors do not explain how they came up with the proposed allocation.[17]  More importantly, the Alkon and Frank Objectors ignore the fact that the ATC Settlements provide class members material benefit, i.e. price transparency and fairness at the pump in knowing that they can get accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping.  Memorandum And Order [Granting Final Approval To Amended Costco Settlement] (Doc. #4248) at 33.  Although the Court cannot quantify the benefit of ATC in dollars and cents, the settlements provide real and substantial

---

[17]    To the extent that the Alkon and Frank Objectors may assert that class members should receive money under the settlements, they overlook the fact that it would be impractical – and likely impossible – to distribute settlement funds to class members.  The total number of class members exceeds 100 million, see Memorandum And Order [Granting Final Approval To 28 Settlements] (Doc. #4851) at 25, and it is not possible to identify individual class members.  See, e.g., Memorandum And Order [Granting Preliminary Approval To 18 Settlements] (Doc. #4775) filed October 27, 2014 at 18 (plaintiffs cannot identify individual class members with reasonable effort).  Even if the parties could identify class members, it would be impractical – if not impossible – to allocate and distribute the settlement funds.  See, e.g., Memorandum And Order [Certifying Classes In Kansas Cases] (Doc. #1675) filed May 28, 2010 at 31-32 (questioning whether plaintiffs can establish common methods to prove individual class member damages, including temperature of dispensed fuel with respect to individual class member transactions).  Dividing total settlement funds of $24,502,500 equally among 100,000,000 class members would result in 24.5 cents for each class member.  ($24,502,500 / 100,000,000 = $0.245).

value to the class.[18]   As discussed below, the Court finds that under the <u>Johnson</u> factors the recommended fees are reasonable.

### 3.      Refiner Settlements

The Alkon and Frank Objectors assert that because the Refiner Settlements provide no money to class members, a fee of 30 per cent of gross settlement funds is excessive.  <u>See</u> <u>Alkon And Frank Objection</u> (Doc. #4893) at 15-19.   They assert that Judge James should have recommended a fee award of no more than ten per cent of gross settlement amounts.  <u>See</u> <u>id.</u> at 19.  The Alcon and Frank Objectors do not explain how they came up with the proposed ten per cent allocation.  Again, they ignore the fact that the Court has found that the Refiner Settlements provide class members substantial benefit.  Specifically, combined with the ATC Settlements, the Refiner Settlements are designed to help facilitate a market transition to ATC – the ultimate goal of this lawsuit and a material benefit to class members.   <u>See</u> <u>Memorandum And Order [Granting Preliminary Approval To BP And Other Settlements]</u> (Doc. #4464) at 10.  Moreover, because the recommended fee awards include litigation costs and class representative incentive payments, the effective percentage for attorneys' fees is closer to 23 per cent of gross settlement funds.[19]  As

---

[18]      The Alkon and Frank Objectors' assert that based on a 2009 report by the California Energy Commission ("CEC"), the Court can quantify the benefit conferred to class members.  <u>See</u> <u>Alkon And Frank Objection</u> (Doc. #4893) at 9-10, 13-14 (citing CEC Report (Doc. #1343-19) filed September 30, 2009).  The Court disagrees.  The CEC Report attempted to analyze the net cost-benefit to society that would result from mandating ATC at retail in California.  <u>See</u> CEC Report (Doc. #1343-19) at 1-2.  It did not evaluate the settlements at issue here or whether permissive ATC at retail would benefit consumers.  The CEC recommended that the California legislature should consider "whether the possible value of increased fairness, accuracy, and consistency of fuel measurement, in addition to the benefits quantified in the cost-benefit analysis, justify mandating ATC at California retail stations."  <u>Id.</u> at 3; <u>see</u> <u>also</u> <u>Memorandum And Order [Granting Final Approval To 28 Settlements]</u> (Doc. #4851) at 42-43 n.55.

[19]      As discussed, for the non-Costco settlements, Judge James recommended a total of
(continued...)

discussed below, the Court finds that under the <u>Johnson</u> factors the recommended fees are reasonable.

### 4.   <u>Johnson</u> Factors

The Alkon and Frank Objectors assert that the factors set forth in <u>Johnson</u> do not justify the recommended fee awards.  <u>See</u> <u>Alkon And Frank Objection</u> (Doc. #4893) at 19-22.[20]  As discussed below, the Court agrees with Judge James that under <u>Johnson</u>, the recommended attorneys' fees are reasonable.  <u>See</u> <u>Report And Recommendations</u> (Doc. #4892) at 18-29.[21]

_____

[19](...continued)
$14,947,800 in attorneys's fees, <u>i.e.</u> $7,189,800 under the Refiner Settlements and $7,758,000 under the ATC Settlements.  <u>See</u> <u>Report And Recommendations</u> (Doc. #4892) at 15, 36.  Of this amount, Judge James attributed $3,000,000 to litigation expenses and $243,000 to class representative incentive payments, leaving $11,704,800 in actual attorneys' fees.  <u>See</u> <u>id.</u> at 36 ($14,947,800 - $3,243,000 = $11,704,800).  Applied pro rata, attorneys' fees under the Refiner Settlements equal 48 per cent of total attorneys' fee award.  ($7,189,000 / $14,947,000 = 0.4809).  Based on a pro rata allocation, the Court attributes 48 per cent – or $1,556,640 – of the litigation expenses and class representative payments to the Refiner Settlements.  ($3,243,000 x .48 = $1,556,640).  Subtracting $1,556,640 in litigation expenses and class representative payments from $7,129,800 in total attorneys' fees leaves $5,573,160 in actual attorneys' fees under the Refiner Settlements.  ($7,129,800 - $1,556,640 = $5,573,160).  Based on total settlement funds of $23,966,000 (from settlements of $50,000 or more), actual attorneys' fees awarded under the Refiner Settlements constitute 23 per cent of the settlement amount.  ($5,573,160 / $23,966,000 = 0.2325).

[20]      As noted above, the <u>Johnson</u> factors are (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.  <u>Rosenbaum</u>, 64 F.3d at 1445; <u>Johnson</u>, 488 F.2d at 717-19.

[21]      Specifically, Judge James found that the recommended attorneys' fees are justified based on (1) the time and labor required; (2) the difficulty and novelty of the case; (3) the legal skills required and counsel's ability experience and reputation; (4) preclusion of other work; (5) customary fee arrangements; and (6) the amount involved and results obtained.  <u>See</u> <u>id.</u> at 18-21.

### a.    Refiner Settlements

Judge James recommended that under the Refiner Settlements, the Court award attorneys' fees of $7,189,800, including $1,556,640 in litigation expenses and class representative payments.[22] After subtracting litigation expenses and class representative payments, the recommended amount for attorneys' fees equals $5,633,160,[23] or approximately 23 per cent of the gross settlement fund.[24] See id. As discussed below, the Court finds that under Johnson, the recommended fees under the Refiner Settlements are reasonable.

As to the first factor, i.e. time and labor required, counsel have devoted more than nine years to this litigation. Counsel assert that in total they have spent over 150,000 hours on the MDL – time which they value at more than $55 million.[25] See Declaration Of Robert Horn ¶¶ 1, 4, Exhibit 2 to

---

[22]    As noted, for the Refiner Settlements and non-Costco ATC Settlements, Judge James recommended a total fee award of $14,947,800, including $3,243,000 in litigation expenses and class representative incentive payments.  Applied pro rata, the Court attributes $1,556,640 in litigation expenses and class representative incentive payments to the Refiner Settlements and $1,656,360 to the ATC Settlements ($3,243,000 x .48 = $1,556,640 under Refiner Settlements; $3,243,000 x .52 = $1,686,360 under non-Costco ATC Settlements).  See footnote 19, supra.

[23]    $7,189,800 - $1,556,640 = $5,633,160.

[24]    The Court notes that pursuant to plaintiffs' request, Judge James recommended that the Court not award attorneys' fees under settlements of less than $50,000.  If those amounts were included in these calculations, the effective fee percentage would be less than 23 per cent.

[25]    Based on these numbers, the average hourly rate equals $366.67 ($55,000,000 / 150,000 hours = $366.67 per hour).  Based on the Court's knowledge and experience in these proceedings, the Court believes that counsel could have easily spent a combined 150,000 hours on the MDL cases.  Because the Court declines to conduct a full lodestar analysis, it does not delve into whether the number of hours are reasonable or what is a reasonable billing rate for each time keeper.

The Court notes that the total amount of attorneys' fees awarded under all settlements including litigation expenses and class representative incentive payments, i.e. $18,947,800, equals approximately 35 per cent of plaintiff's total estimated value of time spent on the case. ($7,189,800

(continued...)

Motion For Attorneys' Fees Under 28 Settlements (Doc. #4827).  In addition, after appeals are resolved, counsel will spend up to seven additional years to monitor and/or administer settlement funds.  See, e.g., Memorandum And Order [Granting Preliminary Approval To Dansk Settlement] (Doc. #4424) at 9.  Under the Refiner Settlements, after paying litigation expenses and class representative fees, counsel will receive $5,633,160 – close to 10 per cent of their estimated value of time spent on the case.[26]  See, e.g., Kay Co. v. Equitable Prod. Co., 749 F. Supp.2d 455, 469-70 (S.D. W. Va. 2010) (in performing lodestar cross check court may use counsel's estimate of hours working on case).  On these facts, the Court concludes that the time and labor required support a finding that the recommended fee award is reasonable.

As to the second factor, i.e. novelty and difficulty of questions presented, this case involved novel questions that were difficult and complex.  Plaintiffs asserted class claims which involved the law of 29 jurisdictions and complex liability and class certification issues. At every juncture, defendants raised procedural, jurisdictional, constitutional and substantive arguments and defenses such as the Perlman doctrine, equitable abstention, First Amendment concerns, Burford abstention, remand issues under Lexecon, the political question doctrine, the Cohen doctrine, primary jurisdiction, the Noerr-Pennington defense and preemption.  See, e.g., Suggestion Of Remand And Final MDL Pretrial Order For Remanded Cases (Doc. #4671) filed November 15, 2013. Defendants initiated multiple proceedings before the Tenth Circuit Court of Appeals and the United States Supreme Court and filed more than 250 dispositive motions which required a massive, coordinated

------

[25](...continued)
under Refiner Settlements + $7,758,000 under non-Costco ATC Settlements + $4,000,000 under Costco Settlement = $18,947,800.  $18,947,800 / $55,000,000 = .3445.)

[26]      $5,633,160 / $55,000,000 = 0.1024.

-17-

effort by plaintiffs' counsel to respond.  The novelty and difficulty of questions presented support that the recommended fee award is reasonable.

As to the third factor, i.e. skill requisite to perform the legal service properly, these proceedings required counsel to perform skills ranging from complex MDL case management and civil discovery to highly specialized appellate advocacy and class-action trial expertise.  Plaintiffs' counsel performed these skills with utmost quality and professional expertise.  The Court is confident that the class has benefitted from counsel's extraordinary efforts.  The skill requisite to perform the legal service properly certainly compels a conclusion that the recommended fee award is reasonable.

As to the fourth factor, i.e. preclusion of other employment by the attorneys due to acceptance of the case, counsel assert that their commitment to this litigation severely limited their ability to pursue other cases.  See Motion For Attorneys' Fees Under 28 Settlements (Doc. #4827) at 11-12.  The Court has no reason to doubt counsel's assertion.

As to the fifth factor, i.e. customary fee, courts routinely award attorneys' fees ranging from 20 to 30 per cent of settlement funds.  See, e.g., Torres v. Pet Extreme, No. 1:13-cv-01778-LJO-SAB, 2015 WL 224752, at *8 (E.D. Cal. Jan. 15, 2015) (usual range for common fund attorneys' fees range from 20 to 30 per cent); In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 532-33 (E.D. Mich. 2003) (range of 20 to 30 per cent generally awarded in Sixth Circuit); Consumers Gas & Oil, Inc. v. Farmland Indus., Inc., 863 F. Supp. 1357, 1364 (D. Col. 1993) (accepted range between 20 to 30 per cent).  Here, the effective percentage for attorneys' fees is 23 per cent, well within the customary range.  See, e.g., Consumers Gas, 863 F. Supp. at 1364 (approving 24 per cent fee).

As to the sixth factor, i.e. whether the fee is fixed or contingent, counsel took the case on a

contingency basis.  In so doing, counsel performed an enormous task over the course of many years, some working almost full-time, with the expectation of receiving their fee solely upon obtaining an award for the class.  Counsel spent millions of dollars out-of-pocket to pay litigation expenses and assumed a real risk of complete nonpayment.

As to the seventh factor, i.e time limitations imposed by the client or circumstances, this factor does not apply.

As to the eighth factor, i.e. the amount involved and results obtained, counsel negotiated the Refiner Settlements at a time when plaintiffs faced dim prospects of prevailing on their claims; they had lost at trial in the Kansas cases and on summary judgment in the California cases.  See, e.g., Memorandum And Order [Granting Final Approval To 28 Settlements] (Doc. #4851) at 41-42. Under the circumstances, counsel negotiated creative settlements designed to achieve the ultimate purpose of the lawsuit, i.e. to facilitate a market change to ATC.  Under the circumstances, the amount involved and results obtained are significant.  This factor supports a finding that the recommended fee award is reasonable.

As to the ninth factor, the Court is familiar with the experience, reputation and ability of plaintiffs' counsel and has no doubt that plaintiffs have immensely benefitted therefrom.

As to the tenth and eleventh factors, i.e. "undesirability" of the case and nature and length of the professional relationship with the client, these factors do not apply.

As to the twelfth factor, i.e awards in similar cases, as discussed, a fee award of 23 per cent is similar to those routinely granted in cases involving class settlement funds.  See, e.g., Kay, 749 F. Supp.2d at 466-67 (25 per cent benchmark common).

Based on the foregoing analysis, the Court finds that under Johnson, the recommended fee

award for the Refiner Settlements is reasonable.

**b.**     **Non-Costco ATC Settlements**

Judge James recommended that under the non-Costco ATC Settlements, the Court award attorneys' fees of $7,758,000, including $1,686,360 in litigation expenses and class representative payments. As discussed below, the Court finds that under <u>Johnson</u>, the recommended fees for the non-Costco ATC Settlements are reasonable.[27]

As to the first factor, <u>i.e.</u> time and labor required, counsel have devoted more than nine years to this litigation. Counsel estimate that they have spent over 150,000 hours working on the MDL, time which they value at more than $55 million. <u>See</u> Declaration Of Robert Horn ¶¶ 1, 4, Exhibit 2 to <u>Motion For Attorneys' Fees Under 28 Settlements</u> (Doc. #4827). In addition, after appeals are resolved, counsel will spend up to five additional years monitoring the installation of ATC under the settlements. <u>See, e.g.</u>, <u>Memorandum And Order [Granting Preliminary Approval To Dansk Settlement]</u> (Doc. #4424) at 16-23. Under the non-Costco ATC Settlements, after paying litigation expenses and class representative fees, counsel will receive $6,071,640 – or about 11 per cent of their estimated value of time spent on the case.[28] <u>See, e.g.</u>, <u>Kay</u>, 749 F. Supp.2d at 469-70 (in performing lodestar cross check court may use counsel's estimate of hours working on case). On these facts, the Court finds that the time and labor required support a finding that the recommended fee award is reasonable.

As to the second, third and fourth factors, <u>i.e.</u> novelty and difficulty of questions presented, skill required to perform the legal service properly and preclusion of other employment, these factors

---

[27]     The Court applies the <u>Johnson</u> factors to the Costco Settlement below, with regard to the Costco Objection.

[28]     $7,758,000 - $1,686,360 = $6,071,640.  $6,071,640 / $55,000,000 = 0.11.

support the recommended fee award for reasons stated with respect to the Refiner Settlements.

As to the fifth factor, i.e. customary fee, because the ATC Settlements provide injunctive relief which is difficult to quantify, the Court cannot determine whether the recommended fee awards are customary. The Court therefore does not apply this factor with regard to the non-Costco ATC Settlements.

As to the sixth factor, i.e. whether the fee is fixed or contingent, this factor supports the recommended fee award for reasons stated with respect to the Refiner Settlements.

As to the seventh factor, i.e any time limitations imposed by the client or circumstances, this factor does not apply.

As to the eighth factor, i.e. the amount involved and results obtained, counsel negotiated the non-Costco ATC Settlements at a time when plaintiffs faced dim prospects of prevailing on their claims; they had lost at trial in the Kansas cases and on summary judgment in the California cases. See, e.g., Memorandum And Order [Granting Final Approval To 28 Settlements] (Doc. #4851) at 41-42. Under the circumstances, counsel achieved remarkable results: They convinced four defendants to install ATC motor fuel dispensers – the very relief which plaintiffs sought to achieve in these MDL proceedings. See id. at 30 (non-Costco ATC Settlements provide same relief which plaintiffs might obtain if they ultimately prevailed at trial). As noted, the ATC Settlements provide more value to the class than the Refiner Settlements. On these facts, the amount involved and results obtained support the recommended fee award.

As to the ninth factor, i.e. experience, reputation and ability of the attorneys, this factor supports the recommended fee award for reasons stated with regard to the Refiner Settlements.

As to the tenth and eleventh factors, i.e. "undesirability" of the case and nature and length

of the professional relationship with the client, these factors do not apply.

As to the twelfth factor, the Court is not aware of any awards in similar cases.  The Court notes, however, that it is making multiple fee awards in this case.  As noted, compared to the Refiner Settlements, the ATC Settlements provide far more value to the class: the ATC Settlements provide the actual relief sought in the litigation, i.e. installation of ATC, whereas the Refiner Settlements provide funds to help facilitate a market transition to ATC.  See Memorandum And Order [Granting Final Approval To 28 Settlements] (Doc. #4851) at 31-32.  Indeed, the fact that some retailers have already agreed to install ATC greatly enhances the value of the Refiner Settlements and chances of success thereunder.  See id. at 32 (considered together with ATC Settlements, Refiner Settlements reasonably calculated to initiate market transition to ATC).  The total fees for the non-Costco ATC settlements are close to the same amount as the total fees for the Refiner Settlements, which are in line with customary fees for class action settlements.  Under the circumstances, the Court finds that the recommended fees under the non-Costco ATC Settlements are reasonable.

Based on the foregoing analysis, the Court finds that under Johnson, the recommended fees for the non-Costco ATC Settlements are reasonable.

### B.    Costco Settlement

Under the Costco Settlement, Judge James recommended an attorneys' fee award of $3.8 million, including litigation expenses and class representative incentive payments.  See Report And Recommendations (Doc. #4892) at 25-33.   Costco objects to the magistrate judge recommendation on grounds that in determining the recommended fee award, Judge James (1) erroneously applied the common benefit exception to the American Rule, see Costco Objection

-22-

(Doc. #4894) at 8-12; (2) erroneously applied a percentage-of-fund approach, see id. at 12-20; and

(3) failed to perform a full lodestar analysis, see id. at 15-20.  Costco also asserts that under Johnson,

the recommended fee award of 3.8 million is unreasonably high.  See id. at 18-20.  Plaintiffs, on the

other hand, object that the recommended fee is unreasonably low.  See Plaintiffs' Partial Objection

(Doc. #4895) at 1.  Plaintiffs assert that a fee of $4 million is reasonable.  See id.

### 1.    Common Benefit Exception

Costco asserts that in determining reasonable attorneys' fees, Judge James

erroneously applied the common benefit exception to the American Rule.[29]  The common benefit

exception constitutes an equitable exception to the American Rule that absent a statute or enforceable

contract, a prevailing litigant is ordinarily not entitled to collect attorneys' fees from the losing party.

See Schell v. OXY USA Inc., 814 F.3d 1107, 1124-25 (10th Cir. 2016); Aguinaga v. United Food

& Commercial Workers Int'l Union, 993 F.2d 1480, 1481-82 (10th Cir. 1993).  Courts typically

employ the exception to deduct attorneys' fees from a common fund, or to assess attorneys' fees

from a defendant corporation in a shareholder derivative suit, to ensure that all fund recipients or

shareholders contribute to the cost of litigation from which they benefitted.  See Schell, 814 F.3d at

1126.

As noted, under the settlement agreement, Costco agreed to pay any attorneys' fees and costs

which the Court awards.[30]  See Memorandum And Order [Granting Final Approval To Amended

---

[29]    Specifically, Costco asserts that the common benefit exception does not apply
because (1) the settlement does not confer a substantial benefit to class members; (2) it is premature
and/or impossible to assign a monetary value to the settlement; and (3) the valuation prepared by
Dr. Andrew Safir in 2010 is not reliable.  See Costco Objection (Doc. #4894) at 8-15.

[30]    Specifically, Costco agreed as follows:

(continued...)

Costco Settlement] (Doc. #4248) at 13.  In light of the parties' agreement, the Court need not find

a common law exception to the American Rule in order to award attorneys' fees.  Cf. Schell,

814 F.3d at 1125-26 (where no independent statutory or contractual basis for attorneys' fee award,

determining whether common benefit exception applied).  Rather, the Court need only determine a

fee which is reasonable.  See Fed. R. Civ. P. 23(h); Wing v. Asarco Inc., 114 F.3d 986, 988 (9th Cir.

1997).  The Court overrules Costco's objection on this ground.

### 2.      Percentage-Of-Fund

Costco asserts that Judge James erroneously determined the amount of attorneys' fees

based on a percentage-of-settlement fund method.  See Costco Objection (Doc. #4894) at 12-15.  The

Court agrees that because no settlement fund exists and the Court cannot easily quantify the value

of injunctive relief, the Court cannot determine attorneys' fees based on a percentage-of-settlement

fund method.  See Costco Objection (Doc. #4894) at 12-15.  The Court disagrees, however, that

Judge James determined her fee recommendation based on a percentage of any fund or other

settlement value.[31]

Judge James found that the Costco Settlement confers substantial benefit to class members

---

[30](...continued)
Class Counsel may apply to the District Court for an award of fees and costs in this
Action (the "Fee Application").  Costco agrees to pay any fees and costs awarded by
the Court and such payment shall not reduce any of Costco's obligations to the
Settlement Class pursuant to this Amended Settlement Agreement.

Costco Amended Settlement Agreement, Exhibit A to Doc. #1769 filed February 4, 2011.  As noted,
the Court has approved the Costco Settlement as fair, reasonable and adequate under Rule 23(e)(2).
See Memorandum And Order [Granting Final Approval To Amended Costco Settlement]
(Doc. #4248) at 13.

[31]      Although Judge James stated that she was using a "percentage of fee" approach for
Costco, she did not actually calculate a percentage of fees or settlement fund.  Report And
Recommendations (Doc. #4892) at 25-29.

and that it is not possible to determine the value of that benefit.  See Report And Recommendations (Doc. #4892) at 12, 16.  Noting that the Court had indicated that it would consider the Costco attorneys' fees in conjunction with attorneys' fees under the other settlements, Judge James looked to the non-Costco ATC Settlements to determine a reasonable amount.  See id. at 26-29.  Specifically, Judge James performed a "relative fee analysis."  Id. at 28.  She noted that the Costco Settlement is comparable to the settlements with Sam's Club and Valero, under which defendants agreed to pay $4 million and $3 million, respectively.  See id. at 28.  Based on this comparison, Judge James concluded that an award of $3.8 million is reasonable under the Costco Settlement.  See id. at 29.  Judge James also performed a lodestar cross-check to confirm that the recommended fee award of $3.8 million is reasonable.  See id. at 30-33.

The approach which Judge James applied to determine a reasonable attorneys' fee is precisely the type of determination which the Court contemplated when it deferred considering the Costco fees until all settlements were finalized.[32]  See Memorandum And Order [Granting Final Approval To Amended Costco Settlement] (Doc. #4248) at 39 (deferring Costco Settlement attorneys' fee award to fashion total fee award which comprehensively and equitably addresses Johnson factors).  The Court overrules Costco's objection on this ground.

---

[32]     The Court notes that its decision to defer determining the Costco fees resulted in a drastic reduction in the amount of fees which plaintiffs requested under the settlement.  Initially, plaintiffs sought $10 million based on their expert opinion that the Costco Settlement conferred on class members a net benefit of more than $100 million.  See Motion For Award Of Attorneys' Fees, (Doc. #1820) at 11-15.  After the Court indicated its intent to to fashion a fee award in relation to all settlements, plaintiffs advised the Court that under the Costco Settlement, attorneys' fees in the range of $3 million to $5 million would be reasonable.  See Report And Recommendation (Doc. #4892) at 16, 26.

### 3.    Lodestar

Costco asserts that Judge James erred because she did not engage in a full lodestar analysis. See Costco Objection (Doc. #4894) at 15-18. The Court disagrees. The Costco Settlement does not address how the Court should determine a reasonable fee. Under the circumstances, the Court has discretion to fashion a fee award under any method which is reasonable. See, e.g., Wing, 114 F.3d at 988. In so doing, the Court need not conduct a full-blown lodestar analysis. See, e.g., Rosenbaum, 64 F.3d at 1447 (in determining reasonable fees under settlement which provides common benefit to class, court need not follow approach of statutory fee cases); Brown, 838 F.2d at 456 (in determining reasonable fees under settlement which provides common fund which benefits class, court need not use lodestar formulation when reasonable fee is derived by giving greater weight to other Johnson factors).

In determining reasonable attorneys' fees, the essential goal "is to do rough justice, not to achieve auditing perfection." Fox. v. Vice, 563 U.S. 826, 838 (2011) (fee award under 42 U.S.C. § 1988). In this case, a complete lodestar analysis would require huge and burdensome satellite litigation.[33] In light of the Court's nine-year history and understanding of the litigation, the Court

---

[33]    The parties' briefing on the Costco fee issue exceeds 1,600 pages. See Plaintiffs' Response To Costco Wholesale Corporation's Objection Doc. (#4894) Regarding The Magistrate Judge's Report And Recommendation On Attorney Fees (Doc. #4899) filed March 21, 2016 at 3. As of April 7, 2011, plaintiffs claimed that they had spent over 2,200 hours specific to Costco matters, 18,000 hours specific to other defendants and 65,000 hours of common joint time to prosecute the case. Motion For Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards And Memorandum In Support Thereof (Doc. #1846-3) filed April 7, 2011 (under seal) at 19-20. In response to plaintiff's motion, Costo hired a legal fee auditing expert to perform an "extensive review" of plaintiffs' "voluminous" billing records. Defendant Costco Wholesale Corporation's Opposition To Plaintiffs' Motion For Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards ("Costco Opposition To Fee Motion") (Doc. #2022) filed August 5, 2011 (under seal) at 10-11. That audit resulted in a declaration with 29 exhibits which exceed 1,000 pages. See Declaration Of Michael J. Brychel, Exhibit B to Costco Opposition To Fee (continued...)

believes that it can fairly and equitably determine a reasonable fee for the Costco Settlement by comparing it to reasonable attorneys' fees awarded under similar settlements and applying the Johnson factors. This approach is consistent with the Supreme Court's admonishment that a request for attorneys' fees "should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (regarding fees to prevailing plaintiff under 42 U.S.C. § 1988). Under the circumstances, the Court declines to conduct a full-blown lodestar analysis.[34] The Court overrules Costco's objection on this ground.

### 4. **Johnson** Factors

As noted, under the Costco Settlement, Judge James recommended a fee award of $3,800,000, including litigation expenses and $42,000 in class representative payments.[35] See Report

---

[33](...continued)
Motion (Doc. #2022). To perform a complete lodestar analysis, the Court would need to review these time records and determine reasonable hours and fees for Costco-specific time and a reasonable percentage of common time to allocate to Costco. Also, the Court would need to determine the reasonable amount of time which counsel has spent on Costco-related matters since April of 2011. Those matters include obtaining final approval of the Costco Settlement including dealing with objectors and potential interveners, litigating the amount of attorneys' fees, dealing with objectors and their attempted appeal of the settlement approval, briefing the issue of final judgment with respect to the Costco Settlement, and litigating Costco's attempt to get out of its obligations under the settlement including its attempted appeal of the Court's denial thereof. See Letter From Plaintiffs' Counsel (Doc. #4888) filed November 24, 2015. Finally, the Court would need to determine a reasonable hourly rate for dozens of timekeepers and multiply that rate by the reasonable number of hours spent by each timekeeper.

[34]     In light of this ruling, the Court does not address Costco's assertion that plaintiffs did not maintain adequate time records. See Costco Objection (Doc. #4894) at 16-17. The Court lacks sufficient resources to conduct this analysis within any meaningful time frame. If it were to conduct a full-blown lodestar analysis, it would be required to appoint a special master to superintend that process. This appointment would cause additional delay and expense to the parties, and would be inconsistent with the Court's obligation to dispose of the fee issues in a just, speedy and inexpensive manner.

[35]     Judge James found that the recommended fee award included class incentive
(continued...)

And Recommendations (Doc. #4892) at 18-29.  Costco asserts that under the Johnson factors and totality of circumstances, the recommended fee award is unreasonably high.  See Costco Objection (Doc. #4894) at 18-20.  Plaintiffs assert that the recommended fee is unreasonably low and urge the Court to increase it to $4,000,000.  See Plaintiffs' Partial Objection (Doc. #4895) at 1.  For reasons stated below, the Court agrees with plaintiffs that under Johnson, $4,000,000 is a reasonable fee.[36]

As to the first factor, i.e. time and labor required, because plaintiffs reached a settlement with Costco three years before the other settlements, counsel spent less time and labor litigating their claims against Costco compared to the other defendants.  As noted, plaintiffs and Costco agreed to settle their claims in April of 2009 and obtained final approval in April of 2012.  The other defendants agreed to settle in April of 2012 and obtained final approval in August of 2015.  In April of 2011, plaintiffs claimed that they had spent 2,200 hours on Costco-specific time, which they valued at over $1,000,000.[37]  In addition, plaintiffs asserted that they had spent 65,000 hours of common joint time in the MDL proceedings which they valued at over $23,000,000.[38]  See Motion

---

[35](...continued)
payments of $2,000 each to 21 subclass representatives ($2,000 x 21 = $42,000).  See Report And Recommendations (Doc. #4892) at 36.  Judge James did not specify what the amount of litigation expenses were included in the recommended fee amount.  As of April 4, 2011, plaintiffs claimed that counsel had incurred $279,855.01 in costs attributable solely to Costco.  See Motion For Award Of Attorneys' Fees, (Doc. #1820) at 23.

[36]    In fact, in light of the ground-breaking results which plaintiffs achieved under the Costco Settlement, the Court might be inclined to award more than $4 million.  The fact that plaintiffs have limited their request to $4 million is an excellent example of their professionalism, good judgment and restraint in requesting a reasonable fee.

[37]    Based on these numbers, the average hourly rate equals $454.55 ($1,000,000 / 2,200 hours = $454.55 per hour).

[38]    Based on these numbers, the average hourly rate equals $353.85 ($23,000,000 / 65,000 hours = $353.85 per hour).

underline>For Award Of Attorneys' Fees, (Doc. #1820) at 19.  The Court notes that at least some of the common time should be attributed to Costco, but it has no way to determine how much.  After April of 2011, plaintiffs continued to spend a significant amount of time on Costco-related matters.  <u>See Letter From Class Counsel</u> (Doc. #4888) filed November 24, 2015 (outlining Costco-related tasks including obtaining settlement approval, litigating attorneys' fees and responding to Costco's attempts to undo settlement in this Court and on appeal).  On this record, the Court finds that counsel have spent a significant amount of time and labor on their claims against Costco.  This factor supports a fee award of $4 million.

As to the second, third and fourth factors, <u>i.e.</u> novelty and difficulty of questions presented, skill required to perform the legal service properly and preclusion of other employment, these factors support the fee award for reasons stated with respect to the Refiner Settlements.

As to the fifth factor, <u>i.e.</u> customary fee, because the Costco Settlement provide injunctive relief which is difficult to quantify, the Court cannot determine whether the recommended fee award is customary.  The Court therefore does not apply this factor with regard to the Costco Settlement.

As to the sixth factor, <u>i.e.</u> whether the fee is fixed or contingent, this factor supports the recommended fee award for reasons stated with regard to the Refiner Settlements.

As to the seventh factor, <u>i.e</u> any time limitations imposed by the client or circumstances, this factor does not apply.

As to the eighth factor, <u>i.e.</u> the amount involved and results obtained, counsel achieved unprecedented results in negotiating the Costco Settlement.  Although plaintiffs faced real uncertainty as to whether they could prove liability on their claims, <u>see Memorandum And Order [Granting Final Approval To Amended Costco Settlement]</u> (Doc. #4248) at 29, they had not yet

suffered defeat in the Kansas trial and on the California summary judgment motions. At a time when all other defendants were fighting plaintiffs' claims tooth and nail, plaintiffs convinced Costco to provide the very relief which they sought in the litigation, i.e. to install ATC at retail motor fuel pumps. At that time, to convince a motor fuel retailer to install ATC constituted an unprecedented paradigm shift in a market which had strenuously resisted any attempts to allow ATC at retail. Furthermore, to effectuate the Costco Settlement, plaintiffs expended tremendous resources to work through various wrinkles regarding structure of the settlement and class notice – efforts which later became a template for other settlements. See, e.g., Memorandum And Order (Doc. #1273) filed August 13, 2009 (preliminarily approving original Costco settlement); Memorandum And Order (Doc. #1707) filed August 13, 2010 (overruling final approval of original Costco settlement due to structure of settlement); Order (Doc. #1841) filed April 5, 2011 (requiring renewed class notice for amended Costco settlement); Memorandum And Order (Doc. #1952) filed June 8, 2011 (overruling plaintiffs' request to find notice requirement satisfied); Memorandum And Order (Doc. #2118) filed September 22, 2011 (granting preliminary approval of amended Costco settlement, requiring parties to submit revised class notice). Under the circumstances, the amount involved and results obtained support a fee award of $4,000,000.

As to the ninth factor, i.e. experience, reputation and ability of the attorneys, this factor supports the fee award for reasons stated with regard to the Refiner Settlements.

As to the tenth and eleventh factors, i.e. "undesirability" of the case and nature and length of the professional relationship with the client, these factors do not apply.

As to the twelfth factor, i.e. awards in similar cases, the Court agrees with Judge James that

-30-

the Costco Settlement is similar to the settlements with Sam's Club and Valero.[39]  See Report And Recommendations (Doc. #4892) at 28.  Under those settlements, the Court has approved reasonable attorneys' fees of $3 million and $4 million, respectively.  Costco asserts that based on number of stations, it should pay less in fees than Sam's Club.  See Costco Objection (Doc. #4894) at 15.  The number of stations, however, is not necessarily a relevant comparison.[40]  Even though Costco may have fewer stations, the Court finds that a fee at the top of the range is reasonable.  Specifically, the Court finds that with regard to the Costco Settlement, counsel should be rewarded for devoting significant resources as follows: (1) achieving a ground-breaking results under which the first major retailer agreed to install ATC; (2) exerting extraordinary efforts to structure a settlement which created a template for other settlements; (3) litigating the amount of attorneys' fees under the settlement; and (4) responding to Costco's attempts to undo the settlement before this Court and on appeal to the Tenth Circuit.  In addition, plaintiffs still face the possibility that Costco will appeal this or other rulings.  On the other hand, the Sam's Club and Valero Settlements have required significantly fewer resources from plaintiffs.  With those settlements, plaintiffs had the benefit of the Costco template and were able to combine resources to obtain court approval and provide class

---

[39]  Dansk is a small retailer with relatively few stations in California.  See Plaintiffs' Motion And Memorandum In Support Of Final Approval Of Class Action Settlements (Doc. #4834) filed June 8, 2015 at 20.  Casey's has more stations; however, it operates only in the Midwest, where ATC arguably will have less impact than in warmer states.  See, e.g., id.

[40]  Based on information available to the Court, Sam's Club will convert motor fuel dispensers to ATC at 343 stations, while Valero will convert to ATC at 850 stations.  See Plaintiffs' Motion And Memorandum In Support Of Final Approval Of Class Action Settlements (Doc. #4834) filed June 8, 2015 at 20.  As of August of 2011, Costco planned to convert to ATC at 198 stations.  See Plaintiffs' Reply To Defendant Costco Wholesale Corporation's Opposition To Plaintiffs' Motion For Award Of Attorney Fees, Expenses, And Class Representative Awards (Doc. #2068) filed August 24, 2011 at 11.  Costco has presumably added more stations over the last five years, but the Court has no information in this regard.

notice for 28 settlements at one time.  Also, those defendants did not engage in hard-fought litigation regarding attorneys' fees or attempts to undo their settlements.  In light of the resources which plaintiffs devoted to the Costco Settlement and the results achieved thereunder, the Court finds that attorneys' fees of $4 million are reasonable as compared to similar fee awards under the Sam's Club and Valero Settlement.

Based on the foregoing analysis, the Court finds that under <u>Johnson</u>, a fee award of $4 million for the Costco Settlement is reasonable.[41]

**IT IS THEREFORE ORDERED** that the <u>Alcon And Frank Objectors' Objection To Report And Recommendation</u> (Doc. #4893) and <u>Defendant Costco Wholesale Corporation's Objections To Report And Recommendations Of Magistrate On Plaintiffs' Motion For Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards</u> (Doc. #4894), both filed March 2, 2016, be and hereby are **OVERRULED**.

**IT IS FURTHER ORDERED** that <u>Plaintiffs' Partial Objection To Magistrate's February 17, 2016 Report And Recommendation</u> (Doc. #4895) filed March 2, 2016 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that for reasons stated above, with regard to the Refiner

---

[41]    The Court agrees with Judge James that a lodestar cross-check confirms that the Costco fee award is reasonable.  <u>See</u> <u>Report And Recommendations</u> (Doc. #4892) at 31-32. Judge James found that as of April 2011, a conservative estimate of Costco-specific time and Costco's allocation of shared time would equal a lodestar fee of $1,876,693.  <u>See</u> <u>id.</u> at 32.  In light of the circumstances set forth above, mainly the fact that counsel achieved remarkable results in negotiating the Costco Settlement and the tremendous amount of resources which plaintiffs have been required to spend to finalize the settlement and litigate attorneys' fees thereunder, the Court finds that increasing that amount to $4 million is reasonable.  <u>See, e.g.</u>, <u>Fox</u>, 563 U.S. at 838 (court may take into account its overall sense of suit and use estimates in calculating and allocating attorneys' time).

Settlements and non-Costco ATC Settlements, the Court adopts the magistrate judge Report And Recommendations (Doc. #4892) filed February 17, 2016.  With regard to the Costco Settlement the Court awards reasonable attorneys' fees in the amount of $4,000,000, inclusive of attorneys' fees, litigation expenses and class representative incentive payments.

**IT IS FURTHER ORDERED** that the Motion For Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards And Memorandum In Support Thereof (Doc. #1820) filed March 23, 2011 be and hereby is **SUSTAINED in part**.  Under the Costco settlement, the Court awards reasonable attorneys' fees in the amount of $4,000,000, inclusive of attorneys' fees, litigation expenses and incentive payments of $2,000 to each subclass representative listed in the Memorandum And Order [Granting Final Approval To Amended Costco Settlement] (Doc. #4248) filed April 24, 2012 at 9-12 n.9.

**IT IS FURTHER ORDERED** that the Second Motion For Award Of Attorneys' Fees, Expenses, And Class Representative Incentive Awards And Memorandum In Support Thereof (Doc. #4827) filed May 29, 2015 be and hereby is **SUSTAINED**.

Under the ATC Settlements, the Court awards reasonable attorneys' fees in the following amounts, including litigation costs and class representative incentive payments:

|  | Attorneys' Fees |
|---|---|
| Casey's | $   700,000 |
| Dansk | $     58,000 |
| Sam's Club | $ 3,000,000 |
| Valero | $ 4,000,000 |
| TOTAL | $ 7,758,000 |

Under the Refiner Settlements of $50,000 or more, the Court awards reasonable attorneys'

fees in the following amounts, including litigation costs and class representative incentive payments:

|  | Attorneys' Fees |
|---|---|
| BP | $ 1,500,000 |
| CITGO | $   240,000 |
| ConocoPhillips | $ 1,500,000 |
| ExxonMobil | $ 1,500,000 |
| Shell | $ 1,500,000 |
| Sinclair | $   240,000 |
| Chevron | $   600,000 |
| E-Z Mart | $    27,000 |
| Love's | $    31,500 |
| Sunoco | $    18,300 |
| Tesoro | $    15,000 |
| Thorntons | $    18,000 |
| TOTAL | $ 7,189,800 |

Dated this 24th day of August, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge